John Anthony Gentry
208 Navajo Court
Goodlettsville, TN 37072

FILED

2017 FEB 27 AM 11: 57

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

February 26, 2016

Tennessee Board of Judicial Conduct
Timothy R. Discenza, Disciplinary Counsel
P.O. Box 50356
Nashville, TN 37205

**RE: Formal Complaint of Judicial Misconduct by Judge Joe H. Thompson**

**PRELIMINARY STATEMENT**

This complaint requests The Tennessee Board of Judicial Conduct to exercise its jurisdiction under Tenn. Code Ann. § 17-5-301 pertaining to <u>TN Supreme Court Rule 10: Code of Judicial Conduct</u> to address the Judicial Misconduct of newly appointed Circuit Court Judge Joe H. Thompson. ***In this complaint, I will provide irrefutable AND substantiated factual basis proving beyond any doubt the misconduct of Judge Thompson in direct violation of several Rule 10 Canons and Canon Rules and Rule 10B.***

Judge Thompson has demonstrated a lack of integrity, an obvious bias and loss of impartiality, a failure to fulfill judicial responsibilities timely, a lack of competence and legal knowledge, a denial of litigant's right to be heard, a failure to disqualify and a failure to respond to lawyer misconduct. **Judge Thompson's misconduct is in violation the following Canons and Rules of Judicial Conduct; Canon 1 - Rules 1.1 and 1.2, Canon 2 - Rules 2.1, 2.2, 2.3, 2.5, 2.6, 2.11, and 2.15.**

Judge Thompson has repeatedly violated my right to be heard and he uses judicial reprisal to silence my objections to his misconduct in a clear, prevalent and dangerous abuse of power. **Judge Thompson's bias is so pervasive and, so ubiquitous, that he has even made false statements in open court to cover up the fact that he violated my basic right to be heard**, thus demonstrating an undeniable lack of integrity crucial to the judicial process.

It is my strong belief that left unchecked, Judge Thompson will continue to cause gross miscarriages of justice that will utterly destroy many lives in Sumner County. It is my sincere hope that in filing this complaint, Judge Thompson will be notified that his misconduct will not be tolerated.



EXHIBIT 1

1

It is morally reprehensible and staggeringly dangerous to litigants that a judge would lie about the performance of his duties (or lack thereof) to cover up his own misconduct! I beg this tribunal to consider the facts presented in this complaint, and the welfare of those litigants who come after me and to take immediate corrective action.

I came to Judge Thompson's court seeking protection from my wife's malicious behavior in violation of statutory injunction during a divorce proceeding. Instead of finding protection, I found judicial misconduct in Judge Thompson so pervasive and so prevalent, that I have been decimated economically and emotionally through what is in effect and in fact bully behavior by Judge Thompson and a clear abuse of power. Litigating before Judge Thompson has been such a debilitating and traumatic experience for me, that without any recourse whatsoever, I turned to alcohol to anesthetize myself against the anger, frustration and injustice I have suffered because of Judge Thompson's misconduct. I am a man of strong character and it is no easy task to break the will of someone like me. Litigating before Judge Thompson has completely destroyed my faith in finding justice in the legal system. His misconduct has so injured me that in addition to this complaint, I have contacted the news media to gain public attention in hope of preventing his misconduct and in hope of helping other litigants navigate Judge Thompson's blatant misconduct. It is my hope that this tribunal will address and correct this matter of judicial misconduct as soon as possible in an effort to ensure fairness in future cases and to prevent further harm to other litigants such as myself.

Initially, I had thought Judge Thompson's animosity toward me was of a personal nature. However, as I sat in the courtroom and watched him preside over other cases heard prior to mine, I witnessed seething anger on the faces of other litigants (attorney's, plaintiff's and defendant's) and also observed a pattern of judicial misconduct exhibited by Judge Thompson. The actions of Judge Thompson refusing to fairly hear me, interrupting me time and time again and denying me the opportunity to fairly present my arguments, I perceived as a bias against myself acting as Pro Se. However, as I've watched Judge Thompson demonstrate the same misconduct to licensed attorneys presenting before me, I've recognized that I am not alone in my unjust treatment.

Since Judge Thompson's appointment to the bench, there has been a "changing of the guard" and posting of new rules on the courthouse entrance which are symptomatic of his judicial misconduct. Before Judge Thompson's appointment, there had been an elderly Sherriff's Deputy

2

appointed to his courtroom and a short middle aged female managed the front desk monitoring the courtroom cameras and checking in people at the front door. Neither of these two deputies were physically intimidating in any way (both very nice deputies who did their job well).

In August or September, 2015, the ***entire*** staff of Sherriff Deputies was replaced with young, more physically intimidating male personnel. Also, new rules issued by Judge Thompson not allowing ***cell phones(cameras)***, ***video recording devices***, purses, backpacks, etc., were posted and enforced at the entrance to the courthouse See **EXHIBIT 6.** These changes were made because his courtroom has so far departed from the accepted and usual course of judicial proceedings that it has become a circus of injustice controlled through censorship, intimidation and judicial reprisal. Because Judge Thompson does not administer justice though reason, rule of law or a fair assessment of facts, Judge Thompson's court has become unruly which he now veils and conceals from the public eye by imposing new rules disallowing cell phones and recording equipment in the courthouse building. Prior to Judge Thompson's appointment, these "***precautions***" were unnecessary because fairness and justice prevailed.

Incredulously during a brief hearing on September 15, 2015, the new deputy in Judge Thompson's courtroom instructed me to take my hand out of my pocket as though I might have a concealed weapon in my pocket! My hand in my pocket was simply a comfortable way for me to stand and address the court. I am a business professional and a 50-year-old Certified Public Accountant and in no way was my behavior threatening. The September 15 transcript clearly demonstrates my respect to the court even while being denied my right to be heard See **EXHIBIT 3.** I can only imagine the behavior in the courtroom that would cause a deputy concern, so much so, that he would instruct me to remove my hand from my pocket.

Everyone including judges make mistakes. However, in this litigant simply questioning Judge Thompson's decisions he uses punitive and retaliatory measures as a means to hide his errors and silence any objections to his rulings. This behavior not only demonstrates his unwillingness to accept responsibility and to redress his errors but shows a clear abuse of power. I have tried again and again to be fairly heard in Judge Thompson's court to no avail.

Judge Joe H. Thompson, Circuit Judge in The Circuit Court for Sumner County, Tennessee at Gallatin, has consistently and blatantly conducted himself in direct violation of TENN. SUP. CT. R.

Case 3:17-cv-00020   Document 19-1   Filed 02/27/17   Page 3 of 56 PageID #: 102

10 and 10B, Tennessee Code of Judicial Conduct. I will provide irrefutable factual basis demonstrating Judge Thompson's obvious and dangerous misconduct. In this complaint, I will state the facts supporting my assertions and an analysis of the Rules and Canons violated clearly demonstrating Judge Thompson's misconduct.

As evidence supporting my assertions of Judge Thompson's misconduct, the following documents are submitted.

Addendum 1: Statement of the Facts of the Case

# EXHIBITS/EVIDENCE SUPPORT ASSERTIONS OF JUDICIAL MISCONDUCT

EXHIBIT No. 1: Transcript February 9, 2016 - Hearing of several motions

EXHIBIT No. 2: Transcript March 10, 2015 - Hearing on Petition for Contempt

EXHIBIT No. 3: Transcript September 15, 2015 - Hearing of Motion to Reconvene

EXHIBIT No. 4: Transcript October 27, 2015 - Hearing of Motion for Permission for Interlocutory Appeal and Motion to Compel Life/Health Insurance

EXHIBIT No. 5: Transcript November 3, 2015 - Motion for Rule 9 Interlocutory Appeal and Motion to Compel Life/Health Insurance

EXHIBIT No. 6: Image of Judge Thompson's new "Courthouse Rules"

EXHIBIT No. 7: Response to Wife's Motion to Clarify The Judgement Amount Garnished from Husband's Bank Account

EXHIBIT No. 8: Husband's Response to Wife's Motion to Quash Subpoena to Katie Lohr

EXHIBIT No. 9: Order dismissing Petition for Contempt dated March 19, 2015 reflecting Judge Thompson would rule soon after March 23.

EXHIBIT No. 10: Order dated July 13, 2015 denying Husband's Motion for Pendente Lite Support and his Motion to Determine Control of Business and Partner Compensation and for Other Relief

4

EXHIBIT No. 11: Order denying Motions to Recuse, Reconvene, Return Stock Certificate, Set Trial to Substantiate Ownership.

EXHIBIT No. 12: <u>Motion to Reconvene and Complete Hearing for Petition For Contempt</u>

EXHIBIT No. 13: Objection to court order signed September 9 denying Defendant/Husband's Motion to Recuse or Reconvene

EXHIBIT No. 14: Opposing Counsel's Findings of Fact and Conclusions of Law in Support of Order Denying Husband's Motion to Request The Honorable Judge Thompson to Recuse Himself

EXHIBIT No. 15: Unsigned order granting withdrawal of Husband's counsel for non-payment of legal fees.

EXHIBIT No. 16: Matters Before The Court "heard" on February 9, 2016 listing of motions provided by Defendant/Husband to the court.

EXHIBIT No. 17: Response to Wife's Motion to Quash Any and All Party Subpoenas and Provide Date Certain for Discovery Update Prior to Trial.

EXHIBIT No. 18: Motion to Request The Court To Review Financial Positions of Plaintiff and Defendant.

# I. VIOLATION OF DEFENDANT/HUSBAND'S BASIC RIGHT TO BE HEARD AND FALSE STATEMENTS MADE BY JUDGE THOMPSON

At the beginning of hearing on February 9, 2016, the following dialogue took place.

> MR. LANKFORD: Good morning, Your Honor. Brent Lankford on behalf of Ms. Gentry. Mr. Gentry has four motions on today's docket. We have three. Ours are relatively easy to depose of. I think we need to start with Mr. Gentry's motions.
> MR. GENTRY: First motion I'd like to discuss, Your Honor, opposing counsel --
> THE COURT: Hold on, Mr. Gentry. Which motions do you think you have, Mr. Gentry?

MR. GENTRY: I have a list if that would be helpful for Your Honor. THE COURT: Sure. **EXHIBIT 1 p. 3**

In this opening dialogue, it is apparent that Judge Thompson was not informed or aware of what motions were being heard. Opposing counsel, Mr. Lankford anticipates that Judge Thompson is not informed regarding what matters are to be heard and states, "Mr. Gentry has four motions on today's docket. We have three." Judge Thompson did not respond to opposing counsel in any way indicating he knew what matters were before the court.

As I began to introduce my first motion (true to form), Judge Thompson interrupts me with a rather degrading form of question asking "***Which motions do you think you have, Mr. Gentry***?" This question first demonstrates bias and condescension in asking me *what motions I 'think' I have*. I am an intelligent businessman and CPA. I completed my college degree Cum Laude in 2.5 years with a 3.6 GPA and I'm a first-time pass CPA[1]. I was well aware of my own concise, well-presented and well-substantiated motions and responses to motions that I filed to be heard that day. I respectfully responded that I had a listing of motions to be heard if that would be helpful to the court, to which Judge Thompson responded "*Sure*" **EXHIBIT 16.** Judge Thompson then took approximately fifteen (15) to thirty (30) seconds to read the listing I provided him with.

It is important to recognize that in Judge Thompson accepting my listing of motions to be heard – and that consistent with Mr. Lankford's introduction, and consistent with Judge Thompson's question about what motions I 'thought I had' - Judge Thompson was clearly not aware of what motions were to be heard regarding this divorce case on that day and therefore he did not read my motions or responses to Wife's motions prior to the beginning of the hearing. Had Judge Thompson read my motions and response to motions, he would have declined the list I volunteered, stating he was well of aware of what motions were on the docket – which he did not do. Considering Judge

---

[1] Most college graduates take 4 to 5 years to complete their college education. Cum Laude represents a top 10% of the class performance and only 10% of CPA candidates pass all parts of the CPA exam on their first attempt.

Thompson's degrading and condescending form of the question "Which motions do you 'think' you have..." one would expect a more sarcastic response from Judge Thompson such as for example 'I don't need a list, I'm well aware of the matters to be heard having read them'. But Judge Thompson *did not* make a response such as this because he clearly was not knowledgeable regarding the matters to be heard in this case and had not read my motions or responses to motions. Additional proof of the fact that Judge Thompson did not read my motions and responses to motions will be provided below.

Furthermore, Judge Thompson's demeaning question, "***Which motions do you think you have, ...***?" also indicates bias in that Judge Thompson has no intention of hearing any of my motions or responses to Wife's motions.

Without having read my Response to Wife's Motion to Quash, and without allowing me to present any argument whatsoever, Judge Thompson wantonly granted Wife's Motion to Quash Subpoena to Kati Lohr. This ruling was made without hearing my arguments and without reading my written response to Wife's Motion to Quash, and this is a violation of my basic right to be heard and demonstrates a predisposition to rule without hearing arguments indicative of strong bias. Regarding this assertion, the following dialogue took place.

> THE COURT: All right. I'm going to take these in the order Mr. Gentry has them listed. Wife has a motion to quash the husband's subpoena of Kati Lohr. That is granted.
> MR. GENTRY: Your Honor, you don't hear arguments on that?
> THE COURT: Do you know what the scope of the psychologist/client privilege is in Tennessee?
> MR. GENTRY: And this is what I'd like to explain to the Court. I'm not asking to violate privilege at all.
> THE COURT: What do you want?
> MR. GENTRY: What I'm asking to testify is communication between Ms. Lohr and myself. I'm not asking for any communication for any privileged material.
> THE COURT: What?
> MR. GENTRY: Ms. Lohr sent me an e-mail. Pardon me?

7

THE COURT: I don't understand what you're asking for.

MR. GENTRY: I would like Ms. Lohr to testify to an e-mail that she sent to me. It has nothing to do with privilege, Your Honor.

THE COURT: What's the purpose of that e-mail?

MR. GENTRY: If I could have just a moment.

THE COURT: Just tell me.

MR. GENTRY: Can I --

THE COURT: No. See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else. So don't look for your papers. What is the purpose of the e-mail? Why would you want to get that into evidence?

MR. GENTRY: Ms. Gentry made a false statement saying -- it was a harassing statement to me, saying that I had a mental illness and that her counselor said that in years she's never met anybody with a mental illness as strong as mine. So I e-mailed Ms. Lohr and said did she possibly say something like this and Ms. Lohr responded no, she did not. This substantiates Ms. Gentry's off-the-cuff statements of making false statements. Ms. Gentry doesn't -- it's just a knee jerk reaction for her. And this will further substantiate similar off-the-cuff false statements that Ms. Gentry has made.

THE COURT: Your motion's granted, Mr. Lankford, on that one. **EXHIBIT 1 p. 9-11**

In the above dialogue between myself and Judge Thompson, there are several easy conclusions which can be drawn. (1) a predisposition by Judge Thompson to rule without hearing argument, (2) that Judge Thompson did not read my Response to Wife's Motion to Quash and, (3) a strong bias against myself, and (4)Judge Thompson's suppression of evidence demonstrating Wife's violation of statutory injunction.

First, in his statement "I'm going to take these in the order Mr. Gentry has them listed" indicates Judge Thompson is relying on the list I provided at the beginning of the hearing **EXHIBIT 16**. This further reflects Judge Thompson's lack of familiarity with the matters at hand.

Next, Judge Thompson grants Wife's motion to quash without hearing any argument from me. Also, in the above continuing dialogue, it is quite evident that Judge Thompson did not read my

Response to Wife's Motion to Quash **EXHIBIT 8.** Had Judge Thompson read my Response to Wife's Motion to Quash, Judge Thompson would know that I did in fact understand the "...scope of the psychologist/client privilege." and that my subpoena did not violate the applicable statute T.C.A. § 63-11-213 referenced in my response to Wife's motion to quash.

Furthermore, had Judge Thompson read my Response to Wife's Motion to Quash, Judge Thompson would have been familiar with the email to which I was referring. This is important to note because it further substantiates Judge Thompson's later false statement, that he had read my motions and responses and that Judge Thompson made this false statement to cover up his misconduct of violating my basic right to be heard.

What reason possibly could Judge Thompson have for suppressing this evidence of Wife's harassment? Certainly this is an action and ruling by Judge Thompson intended to harm my case demonstrating not just bias but an abuse of power. In reading Wife's Motion and my response, any legal professional can plainly see there was absolutely no reason for Judge Thompson to grant Wife's motion to quash except in bias and harassment of this litigant.

Lastly, Judge Thompson's statement, "*See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else.*" This statement by Judge Thompson demonstrates bias at several levels.

First, in reading my Response to Wife's Motion to Quash, it is evident that I **do understand** the law and applicable statute. Such a statement by Judge Thompson makes it impossible for me to present *any* legal arguments in that Judge Thompson's statement here invalidates any legal argument that I present, as has been the case time and time again during these proceedings.

Next, this remark by Judge Thompson's is a perplexing non sequitur statement that demonstrates bias and a failure to recognize my basic rights in a judicial proceeding. ***It is Wife's motion to quash that is causing this matter to be heard by the court – not mine***!  I was simply trying to preserve my evidence and testimony, necessary to making my case in the final hearing.  Any Judge or legal professional reading my response to Wife's motion to quash, can plainly see that my arguments and statutory analysis are a reasonable and legally substantiated response to Wife's motion to quash.  It is illogical that Judge Thompson accuses me of wasting the court's time except in that it demonstrates his clear bias.  Judge Thompson in his bias here is simply assigning blame for Wife's baseless motion to quash, onto my shoulders and this does not follow basic logic.  Judge Thompson states he is being patient with me while interrupting my first sentence?  This is not patience!  This is the opposite of patience and clear bias and harassment by Judge Thompson directed toward me.

On a final note regarding this statement by Judge Thompson, throughout these proceedings, Judge Thompson has consistently interrupted and not allowed me the fair opportunity to present all of my evidence and not allowed me to complete my arguments.  Initially, I had thought perhaps, this was due to being on the 8AM docket reserved for motions expected to be resolved in 10 minutes or less.  To ensure time on the docket to be properly heard, I specifically scheduled my motions to be heard on the 9AM docket.  Scheduling my motions on the 9AM docket verses the 8AM docket necessitated my having to wait an additional several weeks to be heard.  I should have the same right to be heard as everyone else in the courtroom.  Judge Thompson's statement, "*see all these people*" shows a strong bias against me, in that in Judge Thompson's eyes, I do not have the same right to be heard.  It is painfully obvious to me now, that due to extreme bias, Judge Thompson likely never had any interest in fairly hearing any matters presented by me.  It becomes even more obvious in the further analysis below, of Judge Thompson's bias and refusal to allow me to be fairly heard.

A few moments later, the following dialogue took place;

THE COURT: All right. Wife's motion to clarify judgment amount garnishment. That's just there was an additional amount?

MR. LANKFORD: Yes, Your Honor. We came forward on that. There's a levy. Mr. Gentry's motion represented one number. We haven't received the answer from the garnishee. What I would point out to the Court is Mr. Gentry was ordered to pay $800, 400 on the first Monday of each month starting in January. He's not done that. I believe he's paid $194.17. We'd ask that order reflect that the garnished amount of $4,181.21 from US Bank be released to Ms. Gentry and Mr. Gentry be ordered to pay $605.83 to catch up what he should have paid and that he continue paying $400 the first Monday of each month until final hearing. Those monies will be held by the clerk, but not the lump sum, the 4,000. That will be paid out.

MR. GENTRY: Your Honor, if you would, my motion on my financial position, you'll see I absolutely cannot afford it. I would ask the Court to take a moment and read my response to their motion. These attorney fees should have never been awarded.

THE COURT: **All right. That motion is granted. Wife's motion to quash any and all subpoenas, that's granted, too.** And your supplemental deadline is set. No more subpoenas to -- is there anything else you think you need from her that you don't have, Mr. Gentry? **EXHIBIT 1 p. 12**

In asking this question, "… is there anything else you think you need from her that you don't have, Mr. Gentry?" In asking this question, it is plainly obvious that Judge Thompson did not read my motions or response to motions. If Judge Thompson had read my motions, he would know Wife failed to disclose bank and credit card accounts and failed to respond to discovery and that I did in fact need quite a lot of information that should have been provided by Wife months ago in response to discovery and subpoena. This is undeniable evidence that Judge Thompson did not read my pleadings properly filed to be heard that day. Please briefly read **EXHIBIT 17** and it will become plainly obvious Judge Thompson did not read any of my filings to be heard that day.

MR. GENTRY: Pardon me, Your Honor?

THE COURT: Is there anything else from her that you think you need?

MR. GENTRY: **You know, Your Honor, I think that this Court just isn't going to hear me on that matter. You rule before I make my arguments. And I would like to state that for the record, that with the Court not**

> **hearing any arguments from myself that the Court just disregards me**
> **and issues a ruling. I think just to make – EXHIBIT 1 p. 13**

Now here, it is pretty clear who just interrupted who in this dialogue. This is just quite simply Judge Thompson blatantly interrupting me so as to prevent my making a statement for the record of his violation of my basic right to be heard. Incredibly, Judge Thompson blames me for the interruption.

> THE COURT: There's going to be one of us that talks at a time. It's not going to be you. It's going to be me. **I read everything. So I've read your responses.** I'm as patient with you as I know how to be. **You don't understand. You're not trained as a lawyer. You don't understand how to plead things.** A lot of times the things that you ask for are things that you really didn't have the right. **What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I read them. I don't need to hear the same thing that I've already read.**
> MR. GENTRY: Just a quick question, Your Honor. **So you've read my response to their motion to rule on the garnishment?**
> THE COURT: **Yes.**
> MR. GENTRY: So you would note that I'm without representation. Obviously, I'm not doing very well at it, and it's because of what has happened during the pendency of this hearing. It's not my fault that I should be without representation. If you would have read my response to their motion, it's a precedence set more than 150 years ago that a spouse should not be without representation. And yet here I am –
> THE COURT: Done. We're done. **EXHIBIT 1 p. 11-14**

I would first like to note, as substantiated in all of the above analysis and transcript dialogue and as will be further evidenced below, that obviously Judge Thompson did not in fact read any of my Motions or Responses to Motions to be heard on February 9, 2016. I would like the Board of Judicial Conduct to know that I recognized this fact during the hearing but out of respect for the office of the judiciary, I did not publically and directly reference false statements by the court although Judge Thompson had plainly lied about reading my motions or responses.

In every hearing of matters in this case, Judge Thompson has made statement's like the one above stating "I'm not trained as a lawyer", "don't understand how to plead things", "don't understand the law" and similar remarks. These are plainly the statements of a biased Judge. If Judge Thompson would recognize my basic right to be heard and allow me to present my arguments and allow me to be heard, if he would read my motions and responses to motions, he would know I do understand law and that my arguments are presented and supported by common and statutory law. Judge Thompson states "You don't understand how to plead things" while ignorant of my pleadings. I encourage this investigation to take a few moments and read for example **EXHIBIT 17**, which is my complete response including exhibits, to Wife's Motion Quash all Party Subpoenas. I think any legal professional would agree my motion is well stated and substantiated. For Judge Thompson to make a statement like this demonstrates that he does not read my motions, does not allow me to present arguments, and that he is plainly biased against me. This statement alone gives proof to numerous violations of judicial conduct including lack of integrity, violation of right to be heard, bias and loss of impartially and failure to recuse.

Furthermore, it is because of Judge Thompson's own misconduct and lack of legal knowledge that I am without representation and out of necessity, I have had to educate myself on civil procedure, statutory law and the code of judicial conduct. With regard to Judge Thompson's misconduct and my loss of legal representation, Judge Thompson's misconduct is plainly evidenced my <u>RESPONSE TO WIFE'S MOTION TO CLARIFY THE JUDGEMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT.</u>

Further exasperating my lack of legal representation is my inability to hear all of the dialogue that takes place in the courtroom. I served honorably for more than eight years in Special Operations units and I am a disabled veteran with a severe hearing impairment. I am completely deaf in one ear and I have significant hearing loss in the other ear. Because of the poor acoustics in the courtroom

and hearing assist equipment that does not work properly, I often do not hear and often misinterpret portions of the dialogue.

Had Judge Thompson read my, <u>RESPONSE TO WIFE'S MOTION TO CLARIFY THE JUDGEMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT</u> **EXHIBIT 7**, it seems unlikely that any judge would grant Wife's motion except out of bias and judicial reprisal.

Without any discussion whatsoever, even from opposing counsel, Judge Thompson grants Wife's motion to quash all subpoenas with the statement "*Wife's motion to quash any and all subpoenas, that's granted, too*". Judge Thompson ruled so quickly and also because my hearing impairment, I didn't even understand what happened. Turning to opposing counsel, I asked;

> MR. GENTRY: We haven't addressed your motion to quash all subpoenas, have we? **EXHIBIT 1 p. 15**

Judge Thompson then interjected and the following dialogue then took place;

> THE COURT: We just did.
> MR. GENTRY: Your Honor, the reason that I filed this is because Ms. Gentry --
> THE COURT: Stop. He filed the motion. You didn't file the motion. He filed a motion to --
> MR. GENTRY: Don't I get to respond?
> THE COURT: No. I read your responses. **EXHIBIT 1 p. 15**

How possibly can I expect a fair hearing under these circumstances where Judge Thompson rules so fast I don't even know what is happening? Judge Thompson's lighting fast ruling on the matter of quashing all party subpoenas demonstrates extreme bias against me. As evidenced above and further substantiated in the immediately following paragraphs below, Judge Thompson did not read any of my motions or responses to motions, contrary to Judge Thompson's statements that he did read them. How can a litigant expect a fair hearing when a judge issues rulings based on motion titles **EXHIBIT 16** listed on a piece of paper without hearing arguments from either side?

Case 3:17-cv-00020   Document 19-1   Filed 02/27/17   Page 14 of 56 PageID #: 113

Furthermore, any judge or legal professional who would have actually read my motion can plainly see Wife's motion to quash should have been dismissed. How can a judge suppress evidence required in discovery? How can a judge suppress evidence of a spouse hiding assets and failing to disclose bank and credit card accounts that should have been disclosed in discovery? In reading my RESPONSE TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL **EXHIBIT 17**, it is obvious that Wife's motion to quash any and all subpoenas should have been dismissed. In Judge Thompson granting Wife's motion, it is painfully obvious Judge Thompson did not read my response - again contrary to his statements in open court. This ruling by Judge Thompson reflects extreme bias, it further demonstrates a violation of my basic right to be heard, and it evidences a serious breach of integrity – which is judicial misconduct of the worst kind.

At the end of the hearing, the following dialogue took place;

> THE COURT: Review financial position and review credibility. Mr. Lankford, is there anything that you see in any of those motions that shouldn't be addressed at the final hearing?
> MR. LANKFORD: No, Your Honor. And the other thing, Your Honor, I just want to point out that we have two days for this. Mr. Gentry has attached over a hundred pages of spreadsheets. I have serious concern if he plans to go through that at final hearing in two days.
> THE COURT: It will be done in two days.
> MR. LANKFORD: I'm hoping. But no, Your Honor, nothing that can't be addressed at final hearing.
> THE COURT: You'll do the orders, Mr. Lankford.
> MR. LANKFORD: And I'd ask the Court to reserve attorney fees.
> THE COURT: We'll do. All right. Thank you. **EXHIBIT 1 p. 16**

There are two disturbing conclusions to draw from this dialogue. First, in asking the question, *"Review financial position and review credibility. Mr. Lankford, is there anything that you see in any of those motions that shouldn't be addressed at the final hearing?"* If, as Judge Thompson has stated,

15

that he read "everything", why would he ask opposing counsel this question? Judge Thompson asks this question because he has no knowledge of the content of those motions - despite his several statements that he did read my motions and responses to motions. This substantiates beyond any doubt that Judge Thompson made false statements asserting that he had read my motions and responses to motions. Judge Thompson stated;

> **"I read everything. So I've read your responses"** EXHIBIT 1 p. 13
>
> **What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I read them. I don't need to hear the same thing that I've already read.** EXHIBIT 1 p. 13-14
>
> MR. GENTRY: Just a quick question, Your Honor. **So you've read my response to their motion to rule on the garnishment?**
> THE COURT: **Yes.** EXHIBIT 1 p. 14
>
> MR. GENTRY: Don't I get to respond?
> THE COURT: **No. I read your responses.** EXHIBIT 1 p. 15

Also, it is incredibly biased of the court to ask Wife's counsel about the validity of my motions. This reflects the fact of a one sided case which has been true in this case since the inception of these proceedings. How can I possibly hope for a fair hearing in a one sided trial?

Meaning no disrespect to the office of the judiciary, but it is plain and obvious that Judge Thompson made false statements in court in a poorly veiled attempt to hide his misconduct of violating my right to be heard.

If Judge Thompson would have read my <u>MOTION TO REQUEST THE COURT TO REVIEW FINANCIAL POSITIONS OF PLANTIFF AND DEFENDANT,</u> EXHIBIT 18 he would know that his garnishment ruling was causing me great financial harm. This ruling is forcing me pay bills late, destroying my financial credit rating which affects my ability to earn a living. I am in such fear of

16

judicial reprisal that I anticipate Judge Thompson will incarcerate me if I fail to make monthly payment of attorney fees to wife even though I cannot afford my own counsel and cannot afford to pay my own bills. This behavior by Judge Thompson causes great emotional and financial harm to myself and this is true while attorney fees should never have been awarded in the first place as substantiated in my RESPONSE TO WIFE'S MOTION TO CLARIFY THE JUDGEMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT, a document the court obviously did not take the time to read. In addressing this motion, Judge Thompson's below question reflects he did not read Wife's motion nor did he read my response.

> THE COURT: All right. Wife's motion to clarify judgment amount garnishment. That's just there was an additional amount? EXHIBIT 1 p. 11

The below dialogue between opposing counsel and Judge Thompson indicates that I will not be able to present my proof at trial and that Judge Thompson will intentionally suppress my evidence. Effectively, Judge Thompson is stating, 'I don't care what evidence he has, the hearing will last only two days'. This statement by Judge Thompson also demonstrates bias and a predisposition to issue a ruling without hearing fair arguments or viewing evidence from both sides.

> "MR. LANKFORD: No, Your Honor. And the other thing, Your Honor, I just want to point out that we have two days for this. Mr. Gentry has attached over a hundred pages of spreadsheets. I have serious concern if he plans to go through that at final hearing in two days.
> THE COURT: **It will be done in two days. EXHIBIT 1 p. 16**

(1)When one considers, Judge Thompson did not know what motions were on the docket, (2)when one considers Judge Thompson did not know my arguments against quashing the Kati Lohr subpoena and that he didn't know about the email referenced, (3) when one considers Judge Thompson suppressed discovery and testimony, (4) when one considers his granting Wife's motion

to clarify - despite my lack of financial resources, (5) when one considers Judge Thompson's question to opposing counsel about my motions to review financial positions and review credibility, the only conclusion that can be drawn is that Judge Thompson falsely stated he had read my motions or responses to motions and that Judge Thompson made these false statements to hide his misconduct of violating my right to heard.

In the case Wilder v. Wilder, 863 SW 2d 707 - Tenn: Court of Appeals, Western Section 1992, The Court of Appeals stated that false statements made by an officer of the court, "offends the basic principles underlying our judicial system. ***Such an offense to our judicial system is particularly repulsive when committed by an officer of the court and member of the judiciary***.... ... it attacks the very foundation of our judicial system." This misconduct by Judge Thompson violates nearly every Rule and Canon of the Code of Judicial Conduct and is repulsive and reprehensible behavior that should not be tolerated.

## II. FURTHER EXAMPLES OF STATEMETS BY JUDGE THOMPSON INDICATING BIAS AND LOSS OF IMPARTIALITY

Without hearing any of my arguments, and without reading my response to Wife's motion to quash, Judge Thompson wantonly granted Wife's motion to quash all party subpoenas. My RESPONSE TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL EXHIBIT 17 clearly identified newly discovered accounts that Plaintiff/Wife failed to disclose in discovery which I subsequently subpoenaed. Tennessee law favors discovery and Judge Thompson's denial of access to me of Wife's undisclosed credit and bank accounts demonstrates clear bias. Plaintiff/Wife may

18

very well be funneling funds out of our jointly owned business and hiding cash assets and yet Judge Thompson quashes my subpoena to obtain evidence.

Judge Thompson's refusal to allow me to present my arguments, is a clear violation of my basic right to be heard and a clear demonstration of bias. As stated above, Judge Thompson was not even aware of what Motions were being heard so clearly Judge Thompson did not read my response to Wife's motion to quash. Incredibly, Judge Thompson so quickly ruled on this matter, that I turned to opposing counsel and inquired "Did he just rule on that motion already?" It is painfully obvious that a litigant who is refused the basic right to argue his case cannot expect a fair or impartial hearing. Furthermore, how possibly can a judge make a fair and equitable division of marital assets if one party is hiding non-disclosed assets and the court is facilitating non-disclosure?

In Judge Thompson ruling without hearing argument from both sides, it is clear that Judge Thompson had no intention of considering my arguments. This is a clear violation of Canon 2 Rule 2.6 Ensuring the Right to be Heard. In making a ruling without hearing my arguments, it is a clear demonstration of bias and violates Canon 1 in that Judge Thompson demonstrates impropriety and loss of impartiality.

> **When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification.** "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial." Leighton, 414 S.W.2d 419, 420 (Tenn. 1967) The *Leighton* court quoted with approval language in *In Re Cameron:* Beyond question, **it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice.** *Id.* at 421 (quoting *In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 77 (1912)).

Even if in his response to this complaint of not being heard, Judge Thompson fabricates some ridiculous excuse and makes up another lie saying he "misspoke" about reading my motions and responses to Wife's motions and that he did not lie (although he obviously did lie), Judge Thompson is still guilty of violating my right to be heard. Either of these offenses is serious misconduct by a judge. Judge Thompson has without a doubt 'painted himself into a corner' and impeaches himself on one or the other counts of misconduct. In this case though, Judge Thompson is guilty of both measures of misconduct, he lied about reading all my motions and he violated my right to be heard in violations of Canon 1 Rule 1.2 Promoting Confidence in the Judiciary and Canon 2 Rule 2.6 Ensuring the Right to Be Heard. Canon 1 Rule 1.2 Comment [3] states;

> Conduct that compromises or appears to compromise the independence, **integrity**, and impartiality of a judge undermines public confidence in the judiciary. Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms.

This is staggeringly dangerous behavior in a Judge, to lie about the performance of his duties in an effort to cover up his misconduct of violating a litigant's right to be heard. In Judge Thompson lying about having read my motions, which he clearly did not, Judge Thompson violates Canon 1 Rule 1.2 in undeniable judicial misconduct. In making a ruling before and without my being allowed to present my arguments, Judge Thompson is in clear violation of Canon 2 Rule 2.6 another instance of judicial misconduct. Because this behavior by Judge Thompson also demonstrates bias, Judge Thompson is also guilty of further misconduct in violation of Rule 2.2 Impartiality and Fairness, Rule 2.3 Bias, Prejudice, and Harassment and Rule 2.11 Disqualification.

**A.** **In not awarding Pendente Lite support, and in failing to rule on support for almost four (4) months, and in granting Defendant/Husband's counsel's motion to withdraw due to**

**non-payment, Judge Thompson, demonstrates a lack of understanding of the issues of the case, and a failure to perform the duties of his office impartially, competently and diligently.**

During the March 10, 2015, hearing on Petition for Contempt or in The Alternative Motion for Pendente Lite Support, the following statements were made;

> THE COURT: Yeah. I'm going to let him submit his expense statement. You know, here's the thing. On temporary support, it's just that. It's temporary. I think there might have been some testimony about a mortgage payment already. I sort of know what utility bills look like. And they eat out a lot. So I've got a pretty good idea. I'm going to make a ruling after he submits an expense statement. If you want to file an objection to it, I'm going to let you. **But I'm going to get something in place, depending on what her ability to pay is.** EXHIBIT 2 Tr. 182

In the above statement, Judge Thompson is clearly stating he is going to "get something in place" with regards to partner compensation or Pendente Lite support. In the below statement, Judge Thompson should know (and his question indicates such), that since I had not been replaced and because Wife states she and an employee have been able to take over my duties, there should be a cost savings to the business equal to my previous compensation and benefits of approximately $8,000 per month, demonstrating Wife's **"ability to pay"** In fact, Judge Thompson's statement – "We're not going to sit here and cross-examine....", indicates he is 'cutting to the chase' on Wife's ability to pay.

> THE COURT: All right. This is what we're going to do. We're not going to sit here and cross-examine each other over these things we've had at the last minute. Let me do this. Ms. Gentry, have you replaced Mr. Gentry? Has his position been filled at Sweet Wise?
> THE WITNESS (Wife): He has not been replaced. **We've actually found that between Dancho and I that we're able to handle the duties that he had.** EXHIBIT 2 Tr. 204

21

In the below statement, Judge Thompson is clearly stating he will make a ruling after the 23rd (March 23, 2015).

> THE COURT: **Right, the 23rd. And then I'll make a ruling --** I'm going to tell you right now, it's going to be as temporary support. To the extent I award anything, it will be as temporary support. It won't be -- because we just don't have enough proof on the other issue yet, and I want to give Ms. Gentry a chance to tell her side of the story. I'm not saying that I'm awarding anything, but if I do, it will be as temporary support. **EXHIBIT 2 Tr. 211**

In the below dialogue, Judge Thompson further defines he will make a ruling after the 23rd (March 23, 2015) and indicates that if additional information isn't needed, he'll make a ruling. Judge Thompson's wording indicates he'll make a ruling soon after the 23rd.

> MS. PERKY: Just a little bit of thought. My client, I know, the minute we get out of here is going to ask me when he finds out if he's going to get support and how much it's going to be, **because he really is destitute at this point.** So can Your Honor guide me as to how to advise my client?
> THE COURT: Well, I'm asking for objections to these income and expense statements to be submitted on or before the 23rd, I think was our deadline day. So I'm not going to make any ruling before the 23rd, because I need to know if your attorney objects to anything Ms. Gentry has put in, and if Ms. Taylor objects to anything you've put in. *So as soon as I get that,* assuming I don't feel I need any additional information, *I'll make a ruling.* All right? **EXHIBIT 2 p. 218/219**

On March 19, 2015, Judge Thompson signed an order stating "***parties to exchange income and expense statements for the first time at March 10, 2015 hearing. Parties have until March 23, 2015 to file responses to income and expense statements, <u>then Court will rule on Motion</u>.***" **EXHIBIT 9**

Then, a few times over the next couple months, my counsel inquired through Judge Thompson's secretary about a ruling on temporary support. Judge Thompson's secretary responded initially that Judge Thompson was "working on it" and then later Judge Thompson's secretary

22

responded stating "you will be notified" when a decision had been made. In contradiction to Judge Thompson's own statements, no support was ordered and Judge Thompson did not issue a timely ruling as he stated he would.

Exactly ninety (90) days later, on June 8, 2015 Judge Thompson heard and granted my counsel's Motion to Withdraw due to non-payment of legal fees **EXHIBIT 15**. On this same date, I inquired about support or partner compensation and Judge Thompson said he wasn't going to anything until the continuation hearing set to be heard July 1, 2015 in direct contradiction of his statements on March 10, 2015 and the order he signed on March 19, 2015 causing great harm to me including a loss of my legal representation.

TENN. SUP. CT. R. 10, Canon 2, Rule 2.1 states;

> The duties of judicial office, as prescribed by law, shall take precedence over a judge's personal an extrajudicial office.

TENN. SUP. CT. R. 10, Canon 2, Rule 2.5 (A)states;

> A judge shall perform judicial and administrative duties competently, **promptly and diligently**.

TENN. SUP. CT. R. 10, Canon 2, Rule 2.5, Comments [1], [2] [3], [4] and [5] state;

> [1] Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.

> [2] A judge should seek the necessary docket time, court staff, expertise, and resources to discharge all adjudicative and administrative responsibilities.

> [3] **Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties**, to be punctual in attending court and **expeditious in determining matters under submission**, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end.

23

**[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay.** A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

**[5] A judge is required by law to promptly dispose of cases.** *See, e.g.*, **Tenn. Code Ann. § 20-9-506 (in a non-jury case, judge must render decision and enter judgment within sixty days of completion of trial); Tenn. Code Ann. § 40-30-111(d) (court must rule within sixty days of conclusion of proof;** final disposition of capital case must be made within one year of filing of petition); S. Ct. R. 11, § III(c) (no case may be held under advisement for more than sixty days; motions or other decisions that delay trial or final disposition shall not be held under advisement for more than thirty days, absent most compelling of reasons).

TENN. SUP. CT. R. 10, Canon 2, Rule 2.6 (A)states;

A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.

Although Judge Thompson stated he would rule on temporary support soon after March 23rd, 2015. Incredulously Judge Thompson did not issue his ruling until July 13, 2015, or 125 days after the March 10, 2015 hearing date! During this period, the marital home was nearly lost and only **10 days away from the mortgage holder initiating foreclosure** proceedings. I was made completely destitute, and unable to afford basic necessities including food and utilities. In fact, my utilities and health insurance were cut off for non-payment. As referenced above, Judge Thompson was made aware that I was destitute, maxed out on credit cards and at the time of the hearing, already one month behind on the mortgage on the marital residence. Obviously, it would not serve the courts intent and would not have been in anyone's best interest, including Wife, to lose the marital residence to foreclosure. Meanwhile, Wife refurnished her home including a new pool table and sent her son on a snowboard trip to Europe and continued to more than maintain her standard of living prior to the

24

divorce proceedings having access to not only her own but also my business income. So, while Wife's standard of living improved dramatically and effectively doubled, I was not only destitute but fell into almost $90,000 debt acquired to finance my legal representation, to pay for basic necessities including the mortgage on the marital residence, and to acquire transportation.

Of perhaps even greater concern though, while Wife comes to court with a legal team including a Para-legal and not one but two attorneys - my counsel withdraws for non-payment and I'm left to represent myself Pro Se with no other alternative for legal representation.

In *Fox v. Fox,* 657 S.W.2d 747 (Tenn.1983), our supreme court stated:

> It was established **over a century ago** that trial courts have wide discretion in requiring a husband to pay for the reasonable necessities of his wife, including expenses of divorce litigation. The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. *Thompson v. Thompson,* 40 Tenn. 527, 529 (1859).
> **If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel**

First, regardless how Judge Thompson ultimately ruled whether ordering temporary support or not, *Judge Thompson should have ruled timely __which he did not__ in violation of Rule 2.5.* Tennessee Code Annotated clearly requires that Judge Thompson should have ruled within sixty (60) days. Since Judge Thompson himself set a deadline of March 23rd, 2015 for submitting objections and final arguments, his ruling should have been issued at least by May 22, 2015. It took Judge Thompson more than double the prescribed time specified in TCA §'s 20 and 40.

Furthermore, as stated in Canon 2, Rule 2.5 a judge is required to perform his duties promptly and diligently. A judge is also required to devote adequate time to his duties and he is required to

demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. Without a doubt, Judge Thompson did not adhere to the requirements of Tennessee Code Annotated or to Code of Judicial Conduct and clearly failed to provide timely resolution to a pending matter. Whether or not TCA §'s 20 and 40 apply in this matter or not, Rule 10: Code of Judicial Conduct requires that a judge perform their duties promptly and diligently and that judges dispose of matters promptly and efficiently and demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary delay. Judge Thompson's failure to timely resolve this matter before him caused me incredible financial difficulty (including loss of health insurance and ruined credit), emotional trauma to myself and nearly resulted in the foreclosure and loss of the marital residence.

Finally, TENN. SUP. CT. R. 10, Canon 2, Rule 2.5, Comment [1] states "Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office". Accordingly, basic competence and legal knowledge requires that Judge Thompson should have had knowledge of legal precedence set more than one-hundred and fifty years ago that a spouse "**should not be denied access to the courts**" because they cannot procure or afford counsel.

Judge Thompson should have recognized my loss of representation compared to Wife's legal team (a paralegal *and* two (2) attorneys) as a denial of my access to the courts. Judge Thompson was quite aware of the cost savings to the business in Wife not paying my compensation (referenced above). Knowing Wife's ability to pay according to her own statement referenced above "*He has not been replaced. We've actually found that between Dancho and I that we're able to handle the duties that he had*" Judge Thompson should not have delayed in a ruling on the issue of support and Judge

26

Thompson should not have allowed me to lose my legal representation. This failure by Judge Thompson to promptly and diligently dispose of a pending matter is **_unmistakable judicial misconduct_**. This failure by Judge Thompson to recognize my loss of legal representation is also a denial of access to the courts and violation of my right to be heard in violation of Canon 2 Rule 2.6 - Ensuring the Right to be Heard. Regarding violation of Rule 2.6, further and numerous violations of this rule will be discussed below in this complaint.

Again, in _Fox v. Fox, 657 S.W.2d 747 (Tenn.1983),_ the Tenn. supreme court stated:

> It was established over a century ago that trial courts have wide discretion in requiring a husband to pay for the reasonable necessities of his wife, including expenses of divorce litigation. **The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial.** _Thompson v. Thompson,_ 40 Tenn. 527, 529 (1859). If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel

In _Powell v. Powell 124 SW 3d 100 - Tenn: Court of Appeals, 2003,_ the Court of Appeals of Tennessee, at Jackson stated:

> Attorney's fees constitute alimony _in solido,_ and Tenn.Code Ann. § 36-5-101(d)(2002) sets forth the relevant factors to consider when making an alimony award. _Houghland v. Houghland,_ 844 S.W.2d 619, 623 (Tenn.Ct.App.1992). **Need is the critical factor to be considered in making an award of alimony, and an award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees.** _Lancaster v. Lancaster,_ 671 S.W.2d 501, 503 (Tenn.App.1984); _Thompson v. Thompson,_ 797 S.W.2d 599 (Tenn.App.1990). As the award of witness fees also took the form of alimony, need would also be the controlling factor in determining the propriety of an award of such fees.

On September 9, 2015, Judge Thompson signed an order dismissing my motions and irrationally awarded attorney fees to Wife. When this court signed the order on September 9th, awarding attorney fees to Wife, Wife not only had more than adequate resources to defray her legal expense, but the court assessed legal fees against the **disadvantaged spouse** who could not afford Wife's legal expense. Obviously, if I could not afford my own legal fees, how could I possibly afford Wife's attorney fees?

Perhaps this court awarded legal fees to Wife as a measure to dissuade me from filing frivolous motions and wasting the courts valuable time?

> "Successful litigants should not have to bear the expense and vexation of groundless appeals." *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 586 (Tenn.1977). An appeal is frivolous when it has **"no reasonable chance of success,"** *Jackson v. Aldridge,* 6 S.W.3d 501, 504 (Tenn.Ct.App. 1999), or is **"so utterly devoid of merit as to justify the imposition of a penalty,"** *Combustion Eng'g, Inc. v. Kennedy,* 562 S.W.2d 202, 205 (Tenn.1978). We exercise our discretion under the statute sparingly so as not to discourage legitimate appeals. *See Davis,* 546 S.W.2d at 586. However, failure to even cite to or argue for a justifiable extension of the law controlling the resolution of a given case is an indication that an appeal may be frivolous. *Jackson,* 6 S.W.3d at 504 (citing *Wells v. Sentry Ins. Co.,* 834 S.W.2d 935, 938-39 (Tenn.1992)).

By this court's own ruling on November 3, 2015, and upon hearing my Rule 9 Motion and the merit of my motion to reconvene and regarding improper Directed Verdict ruling, and my not being allowed to cross examine and failure to properly continue the hearing, the court for the first time heard my arguments **and the court - even after a repeated request by opposing counsel. ruled to defer attorney fees until the final hearing**. This clearly demonstrates that my original motions to reconvene were not frivolous. During the November 3, 2015 hearing, the following dialogue took place.

MR. GENTRY:· I have asked the Court and I hope that I'm able to present today, I have asked the court to reconvene because the March 10th petition for a contempt hearing was not fair. There were rules and procedures that weren't followed.

THE COURT:· Okay.

MR. GENTRY:· I have been trying to get this out to the Court and I haven't been able to present this to the Court in months. I have been trying since August. **EXHIBIT 5 p. 6/7**

MR. GENTRY:· May I respond to that, Your Honor, briefly?· As I mentioned, I have tried to present why I wanted to reconvene the hearing and I promise you what I will present today you have not heard because I haven't had a chance to say it. **EXHIBIT 5 p. 8 NOTE**: I was twice not allowed to present the merit of his motion to reconvene during either of the brief hearings on August 7, 2015 or on September 15, 2015 despite repeated requests to be heard.

MR. GENTRY:· …I asked this Court on August 7th and September 15th to reconvene for these reasons. Because of my nervousness, because this thing has been dragged out, you haven't heard this from me before, have you, Your Honor? These are the things that I wanted to tell you on August 7th and September 15th but I wasn't allowed. · · · Mrs. Taylor says, as long as I have a chance to cross-examine and we don't have a ruling. When I asked to cross-examine, I get penalized and have to pay their attorney fees. That's not fair. · · · All I have wanted in this case is a fair chance to be heard and to cross-examine their witness and present my evidence that will show that all of their allegations of my misconduct are fabricated and false. **EXHIBIT 5 p. 16/17**

THE COURT:· I'm going to reserve on the attorneys' fees until the final hearing as well. Reserve that issue as well. All right. Thank you. **EXHIBIT 5 p. 54**

On November 27, 2015, $3,891.76 was garnished from my personal bank account. On 12/17/2015, an additional $205.83 was garnished from my bank account. Total amount garnished $4,097.59

So what happened that caused this failure in the judicial process? What are the underlying causes? As a business consultant with more than twenty (20) years' experience, the factors that

29

caused this misconduct easily recognizable. Quite simply this is a matter of a new judge being simply overwhelmed by his new responsibilities. It is also a matter of a new judge acquiescing to an assertive attorney caused by his own lack of legal knowledge and bench experience.

However, when a person assuming responsibilities of this magnitude refuses to recognize their mistakes and conducts themselves in such a manner that they bully, intimidate and use judicial reprisal to silence objections to their mistakes, then they cross a line from making understandable mistakes to an abuse of office. When a judge places his own self image as a priority over ensuring justice, this behavior then becomes judicial misconduct in that it becomes a willful and intentional failure to comply with the law and with the Code of Judicial Conduct. This behavior by Judge Thompson totally destroys the public's confidence in a competent judiciary. This kind of behavior will destroy the lives of the same people who are supposed to be protected by the judiciary.

Regarding the issue of support, Judge Thompson also made below statement in response to Wife's counsel's statement;

> MS. TAYLOR: Oftentimes, a Court will not modify a temporary order once it's down.
> THE COURT: *Oh, no, no. Look, no, no, no. I've modified temporary awards, and I've even taken into account an erroneous temporary award or an award of temporary support that I ordered based upon one set of proof in the temporary hearing, and later on in the final hearing had a vastly different story. And I took that into account in the final disposition.* EXHIBIT 2 p. 213

Recognizing Judge Thompson's short time on the bench and hearing the hesitation in his voice and his words of delay "*Oh, no, no. Look, no, no, no*" while pondering a response, it is quite clear this is a false statement made by Judge Thompson. It is my sincere hope that the tribunal reviewing this complaint will require Judge Thompson to demonstrate and show proof of his ever having "modified

temporary awards" prior to March 10, 2015. I believe Judge Thompson will not be able to provide such proof because very likely he has never modified a temporary award. Judge Thompson's response here demonstrates a lack of confidence and an acquiescence or deference, to wife's counsel - an experienced and practiced attorney with a strong assertive personality. Judge Thompson's response here is reminiscent of an adolescent seeking approval. Obviously, a judge making false statements in this manner calls into question his fitness to serve. False statements of this nature indicate an underlying issue symptomatic of an absence of confidence caused by lack of competence and legal knowledge.

**B. In hearing and denying Defendant/Husband's Motion to Recuse or Reconvene hearing on Petition for Contempt and in awarding attorney fees to Wife, Judge Thompson unequivocally made in improper ruling. demonstrated bias, and abused his power of office.**

At the start of the hearing on August 7, 2015 to hear my motion to recuse or reconvene, As I was communicating my arguments, Judge Thompson began shaking his head and chuckling to himself. Clearly showing a preconception and bias towards me. Even if my arguments were not valid, which they were, it is not appropriate for a Judge to belittle a litigant in this manner. It demonstrates bias as well as a lack of professionalism.

During this hearing I had hoped to present the following but Judge Thompson would not permit me to be fully heard and I was not allowed to present the below arguments on why the hearing should reconvene. It was not until three hearings later until I was finally able to present these arguments as evidenced in the November 3, 2015 transcript **EXHIBIT 5**.

> MR. GENTRY: I asked this Court on August 7th and September 15th to reconvene for these reasons. Because of my nervousness, because this thing has been dragged out, you haven't heard this from me before, have you, Your

31

Honor? These are the things that I wanted to tell you on August 7th and September 15th but I wasn't allowed. **EXHIBIT 5 p. 16**

During the March 10, 2015 hearing of my <u>Second Amended Petition for Civil Contempt, Or,</u>

<u>In The Alternative Motion for Pendente Lite Support</u>, the following statements were made;

Speaking to Ms. Taylor (Wife's counsel), Judge Thompson stated:

> "… *That's what we're going to do today. And then, **obviously**, you'll be able to question him.* ***You'll be able to cross examine him***." **EXHIBIT 2 p. 179/180**

Clearly in making this statement, Judge Thompson recognizes that cross examination is essential to a fair and impartial judicial proceeding, stating "obviously" counsel for wife would be able to cross examine a witness.

Regarding the same issue of testimony, Ms Taylor stated to the court:

> "*As far as continuing with Ms. Gentry's testimony, I just – I mean, the direct and cross could go on, if it's like Mr. Gentry's, another few hours*" **EXHIBIT 2 P. 177**

In Ms. Taylor making this statement, opposing counsel also recognizes that direct and cross examination are appropriate to any judicial proceeding. Opposing counsel's statement also demonstrates the expectation of Mrs. Gentry's testimony and direct and cross examination.

Judge Thompson also further stated:

> "*I want to hear Ms. Gentry's full story on what her role in the business has been, as opposed to Mr. Gentry's story*" **EXHIBIT 2 p. 210**

In making this statement, Judge Thompson not only indicates he is interested in hearing Mrs. Gentry's full testimony but that he desires her testimony.

Ms Taylor also made the following statement to the court:

> "***As long as I have a chance to cross-examine it and we don't have a ruling today***" **EXHIBIT 2 p. 181**

In reviewing the above statements, it is important to note several facts. (1) Obviously, direct examination and cross examination of witnesses is basic to any judicial proceeding. Judge Thompson clearly recognizes this essential element of the judicial process when he made the statement to Ms. Taylor that "obviously" she would be able to question and cross examine a witness's testimony. (2) This *__is not__* a situation where a court does not require further testimony and has heard sufficient testimony and reviewed sufficient evidence to make a just ruling. As reflected in above statements, opposing counsel clearly expects direct AND cross examination of Wife's testimony. Furthermore, Judge Thompson not only expects to hear Wife's continued testimony but states "*__I want to hear Ms. Gentry's__*" testimony thus voicing desire or anticipation to hear Wife's continued testimony. (3) In Judge Thompson not disagreeing with opposing counsel's demanding statement "*As long as I have a chance to cross-examine and we don't have a ruling today*" both opposing counsel *and* Judge Thompson agree a ruling should not be made without proper direct exam AND cross examination of witnesses. Judge Thompson's response is not perfectly clear, but likely Judge Thompson's subsequent remark "Yeah" EXHIBIT 2 p. 182 appears to be positive affirmation that a ruling should not be made without proper direct examination and cross examination of witnesses. In reading the full transcript in this regard, it is obvious that all parties expected Mrs. Gentry's testimony to continue with both direct and cross examination.

However, in an obvious departure from the accepted and usual course of judicial proceedings and in contrast and contradiction to the above transcribed statements, opposing counsel was permitted direct examination of Wife's testimony **while my cross examination of Wife's testimony was denied**. Much of the fault for this obvious departure from basic judicial proceedings is a direct result of my loss of legal representation.

33

Furthermore, not only was cross examination of Wife's testimony not permitted but an adverse ruling was made against me in contradiction to opposing counsel's own demand to the court *and* the court's agreement that a ruling not be made without proper cross examination. The transcript index EXHIBIT 2 p. 2 clearly reflects Direct Examination without Cross-Examination. It is my assertion that had I been allowed proper judicial procedure and afforded proper opportunity to cross-exam Wife's testimony; evidence and testimony would have clearly demonstrated Wife's perjurious statements to the court and contempt of statutory injunction.

On August 7, 2015, my Motion to Request the Honorable Judge Thompson to Recuse Himself and Declare a Mistrial of Petition for Contempt Hearing or in the Alternative Reconvene Hearing for Contempt was briefly heard. As I began to present my arguments, Judge Thompson started shaking his head and chuckling to himself, interrupted me and asked me to state why I wanted him to recuse himself. Judge Thompson then only briefly heard arguments why he should recuse himself. Judge Thompson did not allow me to present the merit of my alternative motion to reconvene and in this regard I was not fairly heard. The merit of this motion is as stated above regarding cross-examination of Wife's testimony. The merit of this motion also includes the court's failure to proceed according to the essential requirements of the law as will be discussed below regarding directed verdict procedural rules.

In denying my Motion to Reconvene Husband's Petition for Contempt, Judge Thompson is demonstrating not just the appearance of loss of impartiality but an actual bias. Judge Thompson assured opposing counsel a ruling would not be made without providing the proper procedure of cross examination of testimony. Yet when I ask for the same fair treatment, my motion is not only denied, I'm not even allowed to be heard! In reading the transcript from the March 10, 2015 hearing on

34

Husband's Petition for Contempt it is quite obvious that everyone - Wife, Wife's counsel, Judge Thompson, and Husband all anticipated continuation of Wife's testimony. This failure to proceed according to the basic judicial process occurred as a result of Judge Thompson's failure to rule on support causing Husband's loss of legal representation. It is obvious it was the intent of everyone involved that the continuance hearing on July 1st would resume with Wife's continued testimony and cross examination. This is clearly evident in the March 10, 2015 transcript.

On September 9th Judge Thompson signed a court order **EXHIBIT 11** denying my Motion to Recuse or Reconvene. First it is important to note, that Judge Thompson's order is flawed in that the order simply denies my Motion to Recuse - Tenn. Sup. Ct. R. 10B 1.03 states;

> "*Upon the filing of a motion pursuant to section 1.01 (recusal), the judge shall act promptly by written order and either grant or deny the motion. **If the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion***"

As the signed order clearly shows **EXHIBIT 11**, ***Judge Thompson's order did not satisfy the requirements of Tenn. Sup. Ct. R. 10B 1.03*** in that no grounds for denial of recusal were stated. Furthermore, upon receipt of a draft copy of this order and notice of submission to the court (prepared by opposing counsel), I filed an objection to the order on August 28, 2015 **EXHIBIT 13**. In this objection, I pointed out the deficiency of the order not satisfying Tenn. Sup. Ct. R. 10B 1.03. Among other objections, I further stated objection to the awarding of attorney fees which (to the best of my knowledge) was not discussed during the August 7, 2015 hearing. In Judge Thompson signing that order (flawed as it is regarding denial of motion to recuse), strongly indicates that Judge Thompson did not read my objection violating my right to be heard.

When a motion to recuse is made, a judge should grant the motion whenever his or her "impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C), Tenn.Sup.Ct.R. 10, *State v. Jimmy D. Dillingham,* No. 03C01-9110-CR-319, 1993 WL 22155 (Tenn. Crim. App., Knoxville, Feb. 3, 1993).

Tennessee, like many jurisdictions, employs an objective rather than a subjective standard. Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, *Lackey v. State,* 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978), *cert. denied* (Tenn. 1979), recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. *State v. Cash,* 867 S.W.2d 741 (Tenn. Crim. App. 1993).

In an eloquent opinion by Justice Neil, the Supreme Court emphasized not only that justice be administered, but that there be no appearance that it is not administered. 151 S.W. at 76. *See Leighton v. Henderson,* 220 Tenn. 91, 414 S.W.2d 419, 421 (1967) (quoting *Cameron* with approval).

When considering a motion to recuse, a trial court must consider more than whether or not the judge has a personal bias against the movant. In *Cameron,* the Tennessee Supreme Court stated not only that "justice shall be administered, but that [the public] shall have no sound reason for supposing that it is not administered." 126 Tenn. at 658, 151 S.W. at 76 (emphasis added). To maintain public confidence, 823*823 courts must avoid the appearance of partiality as well as partiality itself.

It is also worthy to note regarding satisfaction of Tenn. Sup. Ct. R. 10B 1.03 that (1) My objection was submitted August 28, 2015. (2) the order denying motion to recuse was signed by Judge Thompson September 9, 2015. (3) on September 15, 2015 while another motion was being heard, opposing counsel submitted to the court **EXHIBIT 3** p. 12 the document, <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO RECUSE HIMSELF</u> (EXHIBIT 16). ***Apparently, opposing counsel <u>did read</u> my Objection to the order signed on***

***September 9, 2015 and opposing counsel was attempting assist Judge Thompson to satisfy his***

***obligation to state in writing the grounds for denial of my motion to recuse.*** During the September

15, 2015 hearing, Wife's counsel made the following statement to the court.

> MR. LANKFORD: We have proposed findings of fact and conclusions of law on the motion to recuse that we've presented to the Court. And we can provide that to the Court in a word document.
> THE COURT: Can you send that to scheduling?

To date, I have not received a copy of this document signed by Judge Thompson. This

demonstrates a lack of legal knowledge despite both myself as Pro Se AND Wife's counsel giving

notice to Judge Thompson about his responsibilities under Rule 10B. Even with both sides

"babysitting" Judge Thompson in this regard – still he fails to recognize or fulfill his responsibilities

under Rule 10B. This further demonstrates a judge overwhelmed by his responsibilities and a lack of

competence, thoroughness and legal knowledge in violation or Canon 2 Rule 2.5.

Of particular note for The Tennessee Board of Judicial Conduct to consider regarding apparent

and demonstrated bias by Judge Thompson is his use of Judicial Reprisal against me in the awarding

of attorney fees to Wife. During the March 10, 2015 hearing on petition for contempt, the court stated

"*obviously*" **EXHIBIT 2 p. 180** opposing counsel would be able to cross examine a witness.

Opposing counsel demanded of the court that a ruling not be made without her having to have a

chance to cross examine which the court affirmed **EXHIBIT 2 p. 181**. Yet when I attempt to ask for

the same fair treatment, to be allowed to cross exam Wife's testimony, the court did not allow me to

present the merit of my argument. Surprisingly, the court even goes a step further and penalizes me

and orders me to pay Wife's legal fees for defending against this motion in the amount of $4,134.21

(a rather large fee for a briefly heard motion).

When considering the following facts:

- The court heard testimony that I was behind on his mortgage and without income and his credit lines exhausted. **EXHIBIT 2 p. 176**
- My counsel withdrew for non-payment and I was without legal representation **EXHIBIT 15.**
- Wife is represented by two attorneys and a paralegal in court while I am forced to act Pro Se
- The court stated "obviously" opposing counsel could cross exam a witness **EXHIBIT 2 p. 179,180.**
- Opposing counsel demanded a ruling not be made without opportunity to cross exam **EXHIBIT 2 p. 181.**
- I am penalized over $4,000 for simply asking for the same fair treatment and opportunity to cross exam **EXHIBIT 11.**
- Wife stated she is earning $78,000 annually **EXHIBIT 2 p. 200**
- Wife stated that she has not replaced me in the business **EXHIBIT 2 p. 204** which creates additional income to the business.

Not only is this a clear demonstration of bias against me obvious, but this is also a plain and palpable

abuse of office.

> It is well-settled that "the right to a fair trial before an impartial tribunal is a fundamental constitutional right" Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting State v. Austin, 87 S.W..3d 447, 470 (Tenn. 2002)). Under Tenn. Const. Art VI § 11, Tenn. Code Ann. § 17-2-101 (2009), and Tennessee Supreme Court Rule 10 (Code of Judicial Conduct).
> Additionally, the courts have emphasized that "the preservation of the public's confidence in the judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn.App.1998) (citations omitted). Therefore, even in cases wherein a judge sincerely believes that he can preside fairly, and impartially, he should recuse himself if a reasonable person in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560,564—65 (Tenn. 2001) (quoting Alley v. State, 882 S.W 2d 810, 820 (Tenn. Crim App. 1994)). It is an objective test and it is designed to avoid both actual bias and the appearance of bias, "since the appearance of bias is an injurious to the integrity of the judicial system as actual bias" Id. 565 (citation omitted)

Additionally, although "bias" and "prejudice" general "refer to a state of mind or attitude that works to predispose a judge for or against a party[.] ... [n]ot every bias, partiality or prejudice merits recusal," Alley v. State, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994), Rather, "[t]o disqualify, prejudice must be of a personal character, *directed at the litigant*, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case/'" Id. ) quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)), "*Personal bias involves an antagonism toward the moving party*, but does not refer to any views that a judge may have regarding the subject matter at issue." Id (citing United States v. Baker, 441 F.Supp.612, 616 (M.D. Tenn. 1977); 46 Am.Jur.2d "Judges" § 167 (1969)). "*However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial.*" Id. (citing Baker, 441 F.Supp. at 617). Disqualification of a judge "**is required 'when a person of ordinary prudence in the judge's position knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality'**" Hokker v. Haslam, 393 S.W.3d 156,161 (Tenn. 2012) (quoting State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001))).

It is quite apparent that preferential treatment is granted opposing counsel in that opposing counsel "obviously" is allowed cross examination of a witness while I am denied same fair judicial process. It is also quite obvious that preferential treatment is granted opposing counsel in that opposing counsel is affirmed that a ruling will not be made without an afforded opportunity of cross exam while I am denied same fair judicial process. It is again quite obvious that while opposing counsel can demand and receive positive affirmation of opportunity to cross exam that when I make the same request, not only am I denied equal and fair judicial process, I am penalized and ordered to pay more than $4,000 for making the same and simple fair request for fair judicial process. Clearly any reasonable person or any person of ordinary prudence in the judge's position possessing knowledge of all the facts known to the judge would not only question the judge's impartiality in this matter but would also certify such actions as a clear and palpable abuse of discretion. As stated above,

*"**However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial**."* Id. (citing Baker, 441 F.Supp. at 617).

Again, as stated above - In reading the transcript from the March 10, 2015 hearing on my Petition for Contempt, it is quite obvious that everyone - Wife, Wife's counsel, Judge Thompson, and myself all anticipated continuation of Wife's testimony. This failure to proceed according to the basic judicial process occurred as a result of Judge Thompson's failure to rule on support causing my loss of legal representation. It is obvious it was the intent of everyone involved that the continuance hearing on July 1st would resume with Wife's continued testimony and cross examination.

It is furthermore quite obvious, that I did not receive a fair trial even despite my continued attempts to ask for fair and equal treatment.

In further consideration of the following and above stated facts:

- The court heard testimony that I was behind on his mortgage and without income and his credit lines exhausted. **EXHIBIT 2 p. 176**
- My counsel withdrew for non-payment and I was without legal representation **EXHIBIT 15.**
- Wife is represented by two attorneys and a paralegal in court while I am forced to act Pro Se
- I am penalized over $4,000 for simply asking for the same fair treatment and opportunity to cross exam **EXHIBIT 11.**
- Wife stated she is earning $78,000 annually **EXHIBIT 2 p. 200**
- Wife stated that she has not replaced me in the business **EXHIBIT 2 Tr. 204** which creates additional income to the business. In exhibit 7 Summary of my compensation of benefits and compensation, my total compensation is almost $9,000 per month **EXHIBIT 2 p. 92**

In Judge Thompson awarding attorney fees to Wife, Judge Thompson not only demonstrates bias but a clear abuse of power and/or a complete lack of understanding or disregard of statutory and common law pertaining to divorce proceedings. In the case Powell v. Powell, 124 S.W.3d 100 (Tenn.

Ct. App.2003), the Court of Appeals of Tennessee at Jackson, made the following legal assessment

regarding the award of legal fees is a divorce proceeding;

### *Award of Legal Fees*

In an order entered January 29, 2002, the trial court ordered that Mr. Powell pay Mrs. Powell "her legal fees . . . together with her accounting witness fees . . . as alimony in solido." These costs amounted to $98,523.00. Mr. Powell asserts that the award of these fees was improper because Mrs. Powell has the financial ability to pay these costs herself.

Attorney's fees constitute alimony *in solido,* and Tenn.Code Ann. § 36-5-101(d)(2002) sets forth the relevant factors to consider when making an alimony award. *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn.Ct.App.1992). Need is the critical factor to be considered in making an award of alimony, and an award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees. *Lancaster v. Lancaster,* 671 S.W.2d 501, 503 (Tenn.App.1984); *Thompson v. Thompson,* 797 S.W.2d 599 (Tenn.App.1990). As the award of witness fees also took the form of alimony, need would also be the controlling factor in determining the propriety of an award of such fees. In *Fox v. Fox,* 657 S.W.2d 747 (Tenn.1983), our supreme court stated:

The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial... . If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel.

**Incredulously, not only did Judge Thompson award legal fees to a spouse without need,**

**but he assessed those legal fees against the disadvantaged spouse!**  Again, as the facts of the case

demonstrate:

- Judge Thompson heard Testimony that Wife earns $78,000 per year **EXHIBIT 2** p. 200

- Judge Thompson heard testimony that wife and another employee assumed my role in the business **EXHIBIT 2 p. 204** creating a cost savings and additional profit equal the Husbands compensation and benefits of more than $8,000/month or $96,000 annually.
- Judge Thompson heard testimony that I was unemployed, maxed out on credit cards and destitute. **EXHIBIT 2 p. 176**
- Wife is represented in court with a legal team of two attorneys and a paralegal while Husband is forced to represent himself Pro Se.
- 

For Judge Thompson to award attorney fees to wife demonstrates a retaliatory response by Judge Thompson against me for asking him to reconvene the hearing or recuse himself. The awarding of attorney fees to wife, demonstrates a complete lack of awareness or comprehension of the facts of the case. It furthermore demonstrates an abuse of power in that Judge Thompson is using a punitive measure to silence dispute of his ruling and to silence objection to the mistake of not properly continuing the hearing.

It might be worth noting that Wife did perjuriously (allegedly) state that she didn't have the means to support Husband and was borrowing money from her parents **EXHIBIT 2 p. 203**. However, any reasonably intelligent person would assume Judge Thompson would be able to put two and two together. Judge Thompson clearly recognized that I was without representation because I could not afford it - Judge Thompson approved my counsel's withdrawal for non-payment **EXHIBIT No. 15**. Judge Thompson could plainly see Wife's representation by two attorneys in court while I had no legal representation. Judge Thompson heard testimony that I had not been replaced in the business thus creating a significant cost savings to the business. Judge Thomson heard Wife's testimony that she makes $78,000 per year and the business pays for her personal vehicle, gas, phone and cable utilities, etc. Knowing all of these facts, Judge Thompson must know that Wife did not have need to have attorney fees reimbursed. Judge Thompson must know Husband cannot afford representation for himself so how could Husband possibly afford Wife's "dream team" representation? Awarding

42

attorney fees to wife as Judge Thompson did is quite obviously a punitive measure of judicial reprisal assessed with the sole intent to silence Husband's objections to an unfair process and unfair ruling.

Rather than ensuring justice be served, Judge Thompson is apparently more concerned about preserving his own self-image. This becomes evident upon further analysis of the proceedings in this case.

During the September 15th hearing on Husband's <u>Motion to Reconvene and Complete Hearing for Petition For Contempt</u>, Judge Thompson stated:

> Again, I'm awarding them their attorney's fees. Every time you bring up this petition for contempt, you're going to come here and I'm going to deny it unless there is something completely unforeseen. And I don't see it yet. And they're going to get their attorney's fees every time. Every time. **EXHIBIT No. 3 p 11**

Obviously in this statement, Judge Thompson is using punitive measures to silence my objections. This is a clear abuse of power by Judge Thompson and a violation of my right to be heard. In Judge Thompson's statement "… unless there is something completely unforeseen." one might think that Judge Thompson's assessment of attorney fees a justified measure to discourage a frivolous motion or a wasting of the court's valuable time. However, in two attempts to be heard on the merit of his motion to reconvene, I was not allowed to present his arguments. So of course Judge Thompson cannot see any unforeseen facts or circumstances! He won't even allow this litigant to speak or respond! So, how could he possibly be made aware of any unforeseen facts when he will not even allow me to present my arguments or respond to opposing counsel's arguments? (See section C. below) This is a clear violation of my basic right to be heard and Judicial misconduct!

During the November 3rd hearing of Husband's <u>Motion to Grant Interlocutory Appeal or In the Alternative Provide Alternative Resolution to Appeal</u>, it became apparent that my arguments to

reconvene the hearing on his Petition for Contempt were in fact reasonable and valid in that for the first time, Judge Thompson did not award attorney fees to Wife. When I was finally allowed to present the merit of my motions to reconvene **EXHIBIT No. 5 p. 11-17** *especially 16-17,* Judge Thompson reserved to rule on Wife's attorney fees until the final hearing **EXHIBIT No. 5 p. 54**. This demonstrates the punitive nature Judge Thompson's assessment of attorney fees initially and his previous refusal to allow this litigant to be fairly heard. In reading the November 3rd Transcript, it is apparent that my Motions to Reconvene were reasonable and not at all frivolous. Judge Thompson himself affirms this when he rules to reserve awarding of legal fees until the final hearing. This clearly demonstrates, attorney fees should not have been awarded in the first place.

The punitive and retaliatory nature of Judge Thompson's awarding of attorney fees to Wife becomes even more apparent in a subsequent hearing on December 15, 2015. On November 27, 2015, Wife garnished Husband's entire balance in his personal bank account in the amount of $3,891.79 yet again putting husband in a position of being unable to afford basic necessities. In response to this garnishment, I filed a new motion – Motion to Defer Payment of Attorney Fees Awarded to Wife and Refund Attorney Fees Garnished from Husband's Bank Account and to Release Further Garnishment from Husbands Bank Account. During this motion, I made the *"tactical mistake"* of referencing statements from the March 10th hearing on Husband's Petition for Contempt which clearly angered Judge Thompson. During the hearing of Husband's Motion to Defer Payment of Attorney..., I referenced contradictory statements by Judge Thompson stating he would award support but did not. I began to reference perjurious statements made by Wife during the March 10th hearing and Judge Thompson interrupted my arguments and would not allow me to continue presentation of my arguments for deferring payment of attorney fees. Judge Thompson

44

become agitated and then not only denied My Motion to Defer payments, but he ordered Husband to make very hefty $400 monthly payments toward Wife's attorney fees which I can ill afford. Again this is an abuse of power by Judge Thompson. It is a retaliatory measure punishing Husband for discussing testimony and statements made during the March 10th hearing on Husband's Petition for Contempt. This is a measure of judicial reprisal against Husband to intimidate him against further discussion of the March 10th hearing.

Canon 2 of The Code of Judicial Conduct states "A judge shall perform the duties of judicial office impartially, competently and diligently." Rule 2.2 states "A judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially. Rule 2.3 states, "A judge shall perform the duties of judicial office, including administrative duties without bias or prejudice. Rule 2.3 Comment [1] states a judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding. Judge Thompson violates all of these rules as evidenced above

### C. In hearing Defendant/Husband's Motion to Reconvene, Judge Thompson demonstrated bias in not allowing Defendant/Husband to be fairly heard.

In my second attempt to be fairly heard by the Circuit Court, my Motion to reconvene was briefly heard on September 15, 2015. As can be seen in the transcript, my opening remarks were interrupted by Judge Thompson on more than one occasion EXHIBIT 3 p. 3-4. Most importantly though, after only being allowed approximately one and one-half minutes to argue the merit of my case, I was never allowed to speak again despite repeated reasonable and respectful requests by myself to do so. After making my brief statement to the court, the court asked for a response from opposing co-counsel, Mr. Brent Lankford. Mr. Lankford's first statement and opening remarks were very misleading in that it indicated to the court that the motion before the court at that time had already

been heard not once but four times. In fact, however, the merit of my Motion to Reconvene had not been heard at all – not even once. As stated above, On August 7, 2015, my <u>Motion to Request the Honorable Judge Thompson to Recuse Himself and Declare a Mistrial of Petition for Contempt Hearing or in the Alternative Reconvene Hearing for Contempt</u> was heard but I was never allowed to present the merit of his motion to reconvene. I was not able to financially afford transcripts for that hearing and opposing counsel currently refuses my offer to pay one-half the fee for a copy of that transcript. However, the transcript from that hearing would clearly show that the, I was not allowed to present the merit of his motion to reconvene.

After Mr. Lankford's response to my opening statement, I respectfully requested permission to speak and argue my case several times without success;

> *"May I respond, Your Honor?"* **EXHIBIT 3 p. 8**
> *"Can I address that just briefly, Your Honor?"* **EXHIBIT 3 p. 9,**     line 24/25
> *"I haven't been heard multiple times"* **EXHIBIT 3 p. 10**
> *"You won't hear me, Your Honor?* **EXHIBIT 3 p. 10**
> *"I'm just disappointed that the court won't hear me."* **EXHIBIT 3 p. 12**

In response to each of my above respectful requests, Judge Thompson unequivocally denied me the opportunity to be heard **EXHIBIT 3 Tr 8-12**. During this exchange between Judge Thompson and myself, I simply desired to explain to the court my arguments of not being fairly heard on March 10th Petition for Contempt and that I should have been allowed the same fair opportunity of cross exam and also that a directed verdict should not have been made nor granted in contradiction of civil procedure (contradiction of civil procedure to be discussed further below). Judge Thompson was obviously disinterested in hearing any of my statements or arguments thus demonstrating Judge Thompson's antagonism toward and bias against me.

Furthermore, I was not allowed to discuss my concerns about the loss of patent application.

EXHIBIT 3 p. 4, line 3-7 During the March 10th Petition for Contempt Hearing, during direct exam,

I was questioned and testified as follows:

> Question *"Would you like for the Court to specifically restrain and enjoin Ms. Gentry from representing to any person or entity that you're not a co-inventor of THE MAT during the pendency of this proceeding or to undermine your status as the co-inventor?*
> Answer. *"Yes, I would."* EXHIBIT 2 p. 99

Later the court stated;

> *"Also, this patent issue I'm really concerned about. I don't want the patent -- I don't want these -- it's not going to do either one of these folks any good to have this patent process short-circuited. What I'm most interested in is getting the patent approved, if we can, and then this Court having the ability to either allocate the patent or the revenue from the patent based upon the proof.* EXHIBIT 2 p. 209/210

It is a basic right of every litigant to be fairly heard and it is a basic right of every litigant to

an impartial and unbiased court and judicial proceedings.

> Tennessee Supreme Court Rule 10 Canon 2 states (Code of Judicial Conduct); *"A judge shall **perform the duties of judicial office impartially**, competently and diligently"* Tennessee Supreme Court Rule 10 Canon 2, Rule 2.1, (Code of Judicial Conduct)
> Rule 2.2 Comment [4] further states; *"**It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard.**"* This comment also implies that if reasonable accommodations *are not* made on behalf of Pro Se litigants, then effectively they are not being fairly heard.
> Tennessee Supreme Court Rule 10 Canon 2, Rule 2.3 (A) states; *A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.*
> Tennessee Supreme Court Rule 10 Canon 2, Rule 2.6 (A) states; "***A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.***
> *And* Tennessee Supreme Court Rule 10 Canon 2, Rule 2.6, Comment [1] states; **"The right to be heard is an essential component of a fair and impartial**

47

**system of justice**. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed.

In both motions that I filed; (1) <u>Motion to Request the Honorable Judge Thompson to Recuse Himself and Declare a Mistrial of Petition for Contempt Hearing or in the Alternative Reconvene Hearing for Contempt</u> and (2) <u>Motion to Reconvene and Complete Hearing for Petition for Contempt</u>, I was never afforded the opportunity to present the merit of my motions as discussed above. Furthermore, I was unequivocally denied the right to even respond to opposing counsel's statements. Clearly this demonstrates an obvious bias against me and a violation of my right to be heard.

Additionally, in the court not making any accommodation whatsoever for a Pro Se litigant to be heard, Judge Thompson effectively prevented me from being fairly heard. Tennessee Supreme Court Rule 10 Canon 2 Rule 2.2, Comment [4] states; "*It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard.*" The intent of the Supreme Court in this comment is to encourage the lower courts to allow some level of discretionary accommodations for Pro Se litigants. This comment also *implies* that **to not make any accommodations** for a Pro Se litigant is to deny Pro Se litigants from being fairly heard. In Judge Thompson's utter refusal to allow me to respond, Judge Thompson violated my right to be heard and demonstrated bias and animosity toward me.

**D. In a scheduled hearing of Defendant/Husband's Motions on October 27, 2015, Judge Thompson, ruled on Motion without hearing any facts or arguments demonstrating clear bias against Defendant/Husband.**

Due to a scheduling error by the clerk's office, my Motions were not properly scheduled on the docket. The clerk's office had scheduled to be heard my Motion to Compel Health Insurance and

Life Insurance and it was also communicated by the clerk's office that my arguments for a Rule 9 Interlocutory Appeal would be heard. It is worth noting that even in something as simple as whether a Notice of Hearing was properly filed, Judge Thompson immediately assumes I failed to properly file the Notice. This exchange between the court and myself is important in that together with later dialogue, the court demonstrates a pattern of predisposition to completely disregard my arguments, even before hearing them. The following dialogue took place **EXHIBIT 4 p 5**;

> The Court: You never filed a notice of hearing.
> Mr. Gentry: I filed a notice of appeal, yes, sir.
> The Court: A notice of hearing on this motion. You never filed a notice of hearing.
> Mr. Gentry: I did file a notice of hearing.
> The Court: Well, it's not – no you didn't. It's not on the docket. Your notice of appeal –
> Mr. Gentry: I have a confirmation email with me sir –
> The Court: It's not an email. It's a notice of hearing. It's a separate written document. Do you have a separate written document?
> Mr. Gentry: Yes, sir, I have a notice of hearing right here.
> The Court: Let's see it. I'm not hearing it today, but let me see what happened in the clerk's office.

This may seem an innocuous exchange but it demonstrates Judge Thompson's predisposition to disregard my statements. Without asking if I had any evidence to support my statement, Judge Thompson states *"You never filed a notice of hearing"* After presenting a copy of the Notice of Hearing and a copy of an email from scheduling, the court recognized the error was caused by the clerk's office and not by me **EXHIBIT 4 p. 7**

Of critical importance demonstrating Judge Thompson's bias and animosity toward me is evident in Judge Thompson's next statement.

> ***"By the way, I'm treating your request for an appeal as a request for an interlocutory appeal and that's denied. So you can't file an appeal until the case is over unless there's a unique question of law."*** **EXHIBIT 4 p. 6**

***In this statement, without hearing any arguments whatsoever, and without reviewing any facts at issue, Judge Thompson wantonly denies me permission for interlocutory appeal***. As the dialogue continues, I respectfully ask the court to fairly hear my matter in hope of avoiding the appeal process and causing unnecessary burden on the court system. As is evidenced in the continued dialogue, Judge Thompson is not interested in hearing any information whatsoever regarding appeal **EXHIBIT 4 p. 6,7**

Shortly later, I again asked Judge Thompson to hear the matter on appeal and the court agreed. It is important to note that it was only after I indicated to the court that he would seek relief under a Rule 10 appeal, that Judge Thompson agreed to hear my Rule 9 request. I then respectfully asked for fifteen (15) or twenty (20) minutes of the court's time at a later date to discuss the matter and Judge Thompson instructed me to keep my argument to five (5) or ten (10) minutes **EXHIBIT 4 p. 10**. In hoping to be fairly heard and allowed sufficient time to present the merit of my argument, I stated to the court there were serious issues to be addressed including misconduct by opposing counsel. Judge Thompson immediately interrupted Defendant/Husband stating;

> *"Stop, Stop, Stop, We've had four or five hearings on this and you keep accusing her of misconduct."*

In fact, the transcripts clearly show that not one single time has opposing counsel's alleged misconduct been discussed with the court – not once. Here, Judge Thompson demonstrates clear animosity toward me and again prejudges without hearing any argument and without reviewing any evidence.

It is also important to note, opposing counsel's desire to take advantage of Judge Thompson's

Denial of my Rule 9 Appeal request.

> "*One thing, Your Honor, I'll prepare the order on the notice of appeal*"

Obviously, opposing counsel recognized Judge Thompson's denial without hearing any

argument or reviewing any evidence.  **EXHIBIT 3 p. 13**

> **When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification.** "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial." Leighton, 414 S.W.2d 419, 420 (Tenn. 1967). In *Leighton*, the Tennessee Supreme Court reversed and remanded for new trial a case in which the trial court stated, among other things, "*I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition....*" *Id.* The *Leighton* court quoted with approval language in *In Re Cameron*: Beyond question, **it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice.** *Id.* at 421 (quoting *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 77 (1912)). Often parties allege that comments made by the judge demonstrate bias or prejudice. **An expression of opinion of the case prior to hearing the evidence is indicative of bias.** *Kail v. State,* 528 N.E.2d 799, 804 (Ind. App. 1988). **Remarks which suggest that the judge has taken a position favorable or unfavorable to a party also indicate bias.** *LaBow v. LaBow,* 13 Conn. App. 330, 537 A.2d 157, 164 (1988); *Brown v. St. George Island, Ltd.,* 561 So.2d 253, 257 (Fla. 1990) (judge who refused to admit affidavit stating, "I wouldn't believe him anyway," should be disqualified).

When Judge Thompson made the statement, "*By the way, I'm treating your request for an*

*appeal as a request for an interlocutory appeal and that's denied.  So you can't file an appeal until*

*the case is over unless there's a unique question of law.*" **EXHIBIT 4 Tr. 6**, this is *exactly* (emphasis

added), the same kind of statement as " "*I don't care what proof is in the record...*" made by the court

in the Leighton case referenced above.  Effectively Judge Thompson is stating 'I don't care what the

arguments are', 'I don't care what the evidence shows' --- Motion Denied!  It is quite obvious in

Judge Thompson's statement that he had "prejudged" and "already decided" my Rule 9 request.  It is

further evident that Judge Thompson has taken an unfavorable position indicating actual bias.  The

same is true of my issue with alleged misconduct by opposing counsel.  Judge Thompson's response,

indicates he has already prejudged that issue as well.

**E. During November 3, 2015 hearing of Defendant/Husband's Motion to Grant Rule 9 Appeal, Judge Thompson demonstrated further predisposition to prejudge matters before hearing arguments or viewing evidence.**

First, I would like this investigation to understand that alleged misconduct by opposing

counsel is being addressed by The Board of Professional Responsibility of the Supreme Court of

Tennessee.  I hesitantly mention alleged misconduct of opposing counsel in this appeal only to further

demonstrate Judge Thompson's predisposition to prejudge my arguments.  The matter of opposing

counsel's alleged misconduct is obviously not a matter of concern for this investigation.  The matter

of Judge Thompson's predisposition to prejudge matters in this case however is of critical importance

demonstrating his bias against me.

During the November 3rd hearing, the following dialogue took place;

> MR. GENTRY: "…. As a final note in this, the reason that I think all of this
> happened, Your Honor, is because of gross misconduct by Ms. Taylor.  May I
> approach the bench on this matter your honor?" [2]
> THE COURT: Absolutely not.
> MR. GENTRY: Okay.
> THE COURT: No.  If you are going to allege that an attorney committed
> misconduct, you're going to do it in open court.

---

[2] In requesting to approach the bench, Appellant was simply attempting to be discretionary about discussing alleged misconduct in open court.  The request to approach the bench was being made out of courtesy to opposing counsel and to maintain confidentiality of a complaint still under investigation by The Board of Professional Responsibility while at the same time attempting to be fairly heard.

MR. GENTRY: It would take me about six minutes to present to present you with evidence that Ms. Taylor submitted false statements to this Court in written form and she also made false and misleading statements to this Court.

THE COURT: All right. First of all, let's make sure you understand, you are a layperson. You are not represented by counsel. You are not trained in the law. I mean this in the purest sense of the word.

You have a certain level of ignorance with respect to rules of procedure, rules of professional responsibility as they relate to attorneys. She doesn't make statements. Witnesses make statements. Lawyers advocate. And they are charged with the duty to zealously advocate the position of their clients.

Now, if you are going to make statements that she committed professional misconduct, the first thing I'm going to ask you to do before you make one statement is cite me which rule are you alleging she violated?

MR. GENTRY: Rule 3.3 Candor Toward Tribunal, Your Honor. [3]

THE COURT: All right. So what are saying she did that violated that rule?

MR. GENTRY: Your Honor, she submitted false evidence to this Court. There's - -

THE COURT: What is your evidence?

MR. GENTRY: There is a few cases –

THE COURT: What is your evidence that she knew it was false?

MR. GENTRY: May I present it to you, Your Honor?

THE COURT: No. I'm asking you to tell me. **EXHIBIT 5 p. 17/19**

As cited above, **it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it**, and has announced that decision in advance of the hearing. **It is equally true that such compulsion is a denial of justice.** *Id.* at 421 (quoting *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 77 (1912)). As also cited above, **an expression of opinion of the merits of the case prior to hearing the evidence is indicative of bias.** *Kail v. State*, 528 N.E.2d 799, 804 (Ind. App. 1988). Remarks which suggest that the judge has taken a position favorable or unfavorable to a party also indicate bias. *LaBow v. LaBow*, 13 Conn. App. 330, 537 A.2d 157, 164 (1988).

---

[3] The transcript actually reads "Rule 3.3, *accounting for* tribunal, Your Honor". This is a transcription error by the court reporter. Appellant's correct response is as stated above. On September 18, 2015 (appx 1.5 months before this hearing), Appellant submitted a twenty-five (25) page complaint against opposing counsel alleging misconduct including Rule 3.3 Candor Toward the Tribunal and appellant was well aware of the correct terminology.

Case 3:17-cv-00020   Document 19-1   Filed 02/27/17   Page 53 of 56 PageID #: 152

In this dialogue between myself and Judge Thompson, it is immediately apparent that Judge Thompson has already prejudged and formed an opinion on the matter of misconduct by opposing counsel prior to hearing any argument or viewing any evidence. It is also evident that Judge Thompson is demonstrating a certain level of animosity toward me in this exchange. Prior to hearing any of my arguments, Judge Thompson immediately assumes my ignorance of "*rules of procedure*" and "*professional responsibility as they relate to attorneys.*" Furthermore, Judge Thompson immediately challenges me to "*cite me which rule she violated by number*" (which I readily responded to). It would appear that Judge Thompson was attempting to dismiss the issue entirely and perhaps hide opposing counsel's misconduct by challenging me to cite the exact rule violated.

It is further worthy to note that Judge Thompson twice interrupted me as I was attempting to communicate the merit of my argument and I had to ask "*May I present it to you, Your Honor?*" My attempted responses, as reflected in the transcript, were concise, on point and relevant. The court responded "No, I'm asking you to tell me." Which is exactly what I was trying to do. In trying to communicate the merit of my argument, the court interrupted not once but twice demonstrating obvious bias and animosity toward me.

I then went on to present to the court, two undeniable and irrefutable examples of opposing counsel's false written statements submitted to the court EXHIBIT 5 p. 19,20 and also an example of a misrepresentation of facts [4] communicated by opposing counsel to the court during the March 10, 2015 hearing on my Petition for Contempt. In reviewing the transcript, Judge Thompson

---

[4] TENN. Sup. CT, R.8 Tennessee Rules of Professional Conduct, Rule 8.4 Misconduct: It is professional misconduct for a lawyer to; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice.

54

completely disregarded the obvious false statements made by opposing counsel and then demonstrated disinterest and argued against my assertion of misconduct by misrepresenting facts **EXHIBIT 5 p. 20-25. Ignoring false statements made by an officer of the court and not reporting them to the Board of Professional Conduct is a violation of Judicial Conduct.** Canon 2, Rule 2.15 (B) states, "A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority.

The facts of the case show that I am a Certified Public Accountant **EXHIBIT 2 Tr. 107.** CPAs like attorneys are subject to rules of professional conduct. In fact, many rules for CPAs pertaining to impartiality and investing in financial markets are quite comprehensive. Also, understanding and applying tax law is not so dissimilar to understanding and applying statutory or common law pertaining to family law matters. Furthermore, as a CPA (formerly practicing auditor and tax return preparer), I am well aware of and quite capable of interpreting rules of conduct. As it happens in this matter, (I again hesitantly state), I prepared and submitted a twenty-five (25) page formal complaint to the Board of Professional Responsibility (and more than 100 pages of supporting evidence) alleging numerous violations by opposing counsel of the following rules of conduct; Rule 3.3 Candor Toward Tribunal, Rule 3.2 Expediting Litigation, Rule 3.4 Fairness to Opposing Party and Counsel, Rule 3.5 Impartiality and Decorum of the Tribunal and Rule 8.4 Misconduct. This document was submitted to the Board of Professional Responsibility on September 18, 2015 forty-six (46) days prior. At the time of the November 3rd hearing, demonstrating that I was quite familiar with TENN. Sup. CT, R.8 Tennessee Rules of Professional Conduct. For Judge Thompson to state his belief about my ignorance of law, procedure and rules of conduct *before* (emphasis added) hearing

any argument or examining any evidence clearly demonstrates Judge Thompsons' bias against Defendant/Husband and his predisposition to adversely prejudge matters in this case.

In conclusion, I have clearly stated and substantiated severe and numerous violations of the Code of Judicial Conduct by Judge Thompson. Judge Thompson's bias, lack of diligence, and lack of integrity have caused me severe financial hardship and severe emotional trauma. No litigant should be subjected to this kind of behavior by an officer of the court. Judge Thompson's actions reflect severe impropriety and a failure to establish and maintain a high standard of conduct required of the judiciary.

I am grateful to the Tennessee Board of Judicial Conduct for their time in reviewing this matter. I know there is a great amount evidence to sift through in this case. It would have been my preference to receive a fair hearing, rather than having to burden this board with this matter. As evidenced in the transcripts, I have been respectful to Judge Thompson at all times while still trying to preserve my right to be heard. It is also evident in the transcripts that I have tried several times to resolve this matter with Judge Thompson without success because he refuses recognize my right to be heard.

Respectfully submitted,

_____

John A Gentry, CPA
Pro Se
208 Navajo Court
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net