FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

2017 FEB 27 AM 11: 57
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| **JOHN ANTHONY GENTRY, sui juris/pro se** ) | |
| ) | |
| Plaintiff ) | |
| ) | **CASE NO. 3:17-0020** |
| vs. ) | |
| ) | |
| **THE TENNESSEE BOARD** ) | |
| **OF JUDICIAL CONDUCT;** ) | |
| **THE HONORABLE JUDGE CHRIS,** ) | **JURY DEMANDED (12)** |
| **CRAFT, individual and official capacity;** ) | |
| **TIMOTHY R. DISCENZA, individual and** ) | |
| **official capacity; UNNAMED MEMBERS OF** ) | |
| **INVESTIGATIVE PANEL, individual and** ) | |
| **official capacity; UNNAMED** ) | |
| **LIABILITY INSURANCE CARRIER(S),** ) | |
| **THE STATE OF TENNESSEE** ) | |
| ) | |
| Defendants ) | |

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Local Rules, U.S. District Court, Middle District of Tennessee, Rule 7.01 (a), this memorandum of law is properly filed in Support of Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 3

II.  FACTS ................................................................................................................ 6

1

A. The Parties .................................................................................................... 6

   1. Plaintiff JOHN ANTHONY GENTRY et al. ............................................... 6

   2. The Defendant ........................................................................................... 6

B. Defendants' Deceptive Policy Practices ......................................................... 7

   1. Defendants' Misrepresent That They Will Provide Proper Oversight of Judges ............ 8

   2. Defendants' Deceptive Website ................................................................ 8

   3. Defendants' Intentionally Fail to Provide Oversight of Judges ................... 9

   4. Defendants' Misrepresent Why Complaints are Dismissed ....................... 10

III.    A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS ........................................................................................ 12

A. This Court Has the Authority to Grant Requested Relief ................................ 12

B. Plaintiff Meets the Standard for Granting a Class Action Groups Request for a Preliminary Injunction .......................................................................... 13

   1. Plaintiff Has Demonstrated his Likelihood to Succeed on the Merits ........... 13

IV.    THE SCOPE OF THE PROPOSED TRO IS APPROPRIATE IN LIGHT OF DEFENDANTS' CONDUCT ....................................................................... 18

A. Conduct Relief ............................................................................................... 18

B. Preservation of Records ................................................................................. 19

C. Expedited Discovery ...................................................................................... 19

D. CONCLUSION .............................................................................................. 20

**Cases**

Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) 18

Atascadero State Hospital v. Scanlon, 473 US 234 - Supreme Court 1985 ................................ 15

Benham Jewelry Corp. v. Aron Basha Corp., 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y.July 18, 1997) ................................................................................ 20

Califano v. Yamasaki, 442 US 682 - Supreme Court (1979) ........................................................ 6

ederal Express Corp. v. Federal Expresso, Inc., 1997 U.S. Dist. LEXIS 19144, at * 6 (N.D.N.Y. Nov. 24, 1997) ................................................................................. 19

Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976 ............................................................ 15

Flynt Dist. Co., Inc. v. Harvey, 734 F .2d 1389, 1394 (9th Cir. 1984) ........................................ 13

FSLIC v. Dixon, 835 F.2d 554, 562 (5th Cir. 1987) .................................................................... 19

FTC v. Affordable Media, LLC, 179 F. 3d 1228 - Court of Appeals, (9th Circuit 1999) ............ 17

FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996) ............................................ 12, 13

Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1994)...................... 12
Heideman v. S. Salt Lake City, 348 F. 3d 1182, 188 (10th Cir. 2003)......................................... 13
Hutto v. Finney, 437 US 678 - Supreme Court 1978................................................................ 15
Munaf v. Geren, 553 U.S. 128 S.Ct. 2207, 2218-2219, 171 L.Ed.2d 1 (2008) ........................... 18
University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981)................................... 13
Wal-Mart Stores, Inc. v. Dukes et al.131 S.Ct. 2541 (2011)....................................................... 6
Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) 18
Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365 - Supreme Court (2008)..... 18

**Rules**
Fed. R. Civ. P. Rule 65 .............................................................................................................. 12
TENN. SUP. CT. R. 10, Canon 2, Rule 2.1 ............................................................................. 10
TENN. SUP. CT. R. 10, Canon 2, Rule 2.2 ............................................................................. 10
TENN. SUP. CT. R. 10, Canon 2, Rule 2.3 ............................................................................. 10
TENN. SUP. CT. R. 10, Canon 2, Rule 2.5 (A) ....................................................................... 10
TENN. SUP. CT. R. 10, Canon 2, Rule 2.5, Comments [1], [2] [3], [4] and [5] ......................... 10
TENN. SUP. CT. R. 10, Canon 2, Rule 2.6 (A) ....................................................................... 10
TENN. SUP. CT. R. 10B 1.03 .................................................................................................. 10

## I.   INTRODUCTION

Plaintiff(s) respectfully requests that this Court, Pursuant to Federal Rules of Civil Procedure, Rule 65, issue a temporary restraining order and preliminary injunction against Defendant, the Tennessee Board of Judicial Conduct, requiring Defendant to provide Equal Protection under the law and issue order restraining and enjoining Defendant from destroying, disposing or otherwise concealing any evidence that may be pertinent to this case. A proposed order is attached to this memorandum.

Defendant in this case has a responsibility, required of them by statutory law, to provide oversight of judges and to ensure that judges conduct themselves according to the requirements of the United States Constitution and Code of Judicial Conduct. This is a grave and sacred trust that which Plaintiff asserts, Defendant routinely and callously disregard as a matter of policy.

3

Many litigants, such as Plaintiff in the underlying litigation, enter a court of law expecting a fair and impartial judge to render fair rulings according to the law of the land. Unfortunately, like plaintiff, many litigants in Tennessee instead find judges who have no regard for rules of procedure, no regard for the law of the land, and no regard for those rights protected by the U.S. Constitution.

Plaintiff asserts that this unfortunate and routine experience of litigants being forced to try their cases before of judges who have no regard for rules of procedure, law of the land, and rights protected by the U.S. Constitution, is the direct result of Defendants intentional, knowing, wrongful and routine dismissal of complaints against judges. The sheer number of complaints against judges filed with the Board of Judicial Court evidences this statement to be true.

Lest they be held in contempt, litigants who are treated unfairly in state courts have no voice, not even through the right of free speech, to speak out against injustice occurring in state courtrooms, **and their only form of protection against injustice and rights violations, is through a complaint to the Defendants, the Tennessee Board of Judicial Conduct**.

In fact, Tennessee courts play 'watchdog' and monitor litigants' social media pages in an effort to 'catch' litigants speaking out against injustice, and then hold those who speak out in contempt of court. This is one of many ways that corrupt courts protect and insulate themselves from public scrutiny. This behavior by the courts amounts to entrapment and censure of free speech. In the underlying litigation to this case, both Kathryn Strong, Clerk of the Circuit Court for Sumner County and James Hivner, Clerk of the Appellate Court, have visited Plaintiff's personal Facebook social media page, in an effort to 'catch' Plaintiff speaking out against injustice.

4

This of course begs the question; "Why would court clerks visit litigants' personal social media pages?" except in an effort to 'catch' a litigant speaking out against injustice. This further begs the question; "Why would the court clerks "expect" a litigant to speak out against injustice?", other than in knowing that injustice is in fact being perpetrated against a litigant.

There is a substantial likelihood that Plaintiff will establish at trial, that complaints against judges filed with the Defendant, the Tennessee Board of Judicial Conduct, are only filed after repeated abuses of discretion by state court judges, repeated violations of rules of procedure, repeated violations of constitutionally protected rights, and repeated disregard for the law of the land.

There is a substantial likelihood that Plaintiff will establish at trial, that other complaints against judges, similar to Plaintiff's complaint, also detailed and evidenced repeated abuses of discretion by state court judges, repeated violations of rules of procedure, repeated violations of constitutionally protected rights, and repeated disregard for the law of the land.

Since it is the responsibility of the Defendant, required by statutory law, to protect litigants from judges who willfully violate the Code of Judicial Conduct and repeatedly abuse discretion, repeatedly violate rules of procedure, repeatedly violate constitutionally protected rights, and repeatedly disregard the law of the land, it is probable beyond doubt, that exposure of Defendant's callous and wrongful dismissal of complaints against judges, will cause the Defendants great embarrassment, and will expose corruption intended to hide the underlying corruption of state courts.

5

It is because of this likely embarrassment and exposure of corruption, that Defendants will most certainly make every effort to prevent discovery and there is a substantial likelihood that Defendant will even destroy, or otherwise dispose of, evidence to hide their wrongful conduct. It is because of Defendant's failure to provide Equal Protection under the law, that litigants must suffer unfair and biased courts. Continued failure of Defendant to provide Equal Protection under the law will only result in further and unnecessary injuries to litigants. It is for these reasons, Plaintiff seeks an Emergency Restraining Order and Preliminary Injunction against Defendant.

## II. FACTS

### A. The Parties

#### 1. Plaintiff JOHN ANTHONY GENTRY et al.

Plaintiff and other unnamed Plaintiffs are individuals and citizens of the United States of America and the State of Tennessee. Plaintiffs are provided certain protections including Equal Protection under the law provided for in the United States Constitution. As described in detail below and in Plaintiff's Verified Complaint, Federal Rules of Civil Procedure and United States Code authorizes individuals to initiate United States District Court proceedings is proper cases to seek permanent relief to enjoin violations of the U.S. Constitution and to secure such equitable relief as may be appropriate in each case, including class action redress. See, e.g., *Wal-Mart Stores, Inc. v. Dukes et al.131 S.Ct. 2541 (2011)* and *Califano v. Yamasaki, 442 US 682 - Supreme Court (1979)*

#### 2. The Defendant

6

Defendant STATE OF TENNESSEE was and is a statewide political subdivision entity of the United States of America, one (1) of fifty (50) several States and Commonwealths, and a unit of government addressed through its chief executive, the Governor thereof.

Defendant BOARD OF JUDICIAL CONDUCT was and is an agency of the State of Tennessee, governmental, or quasi-governmental entity. The BOARD OF JUDICIAL CONDUCT is a governmental entity responsible for providing "*an orderly and efficient method for making inquiry into*" state "*judge's manner of performance of duty*" Tenn. Code Ann. *§17-5-101*, which includes adherence to Tenn. Sup. Ct. Rule 10 Code of Judicial Conduct, and to the provisions of the U.S. Constitution.

Defendant, HONORABLE JUDGE CHRIS CRAFT was and is the Board Chair, of the Board of Judicial Conduct

Defendant, TIMOTHY R. DISCENZA was and is the Disciplinary Counsel of the Board of Judicial Conduct.

Defendant(s), UNNAMED MEMBERS OF INVESTIGATIVE PANEL were and are Investigative Panel Members of the Board of Judicial Conduct.

Defendant(s), UNNAMED LIABILTY INSURANCE CARRIERS were and are malpractice and or liability insurance carriers for the insureds; THE STATE OF TENNESSEE, THE BOARD OF JUDICIAL CONDUCT, HONORABLE JUDGE CHRIS CRAFT, TIMOTHY R. DISCENZA, and UNNAMED MEMBERS OF INVESTIGATIVE PANEL

## B. Defendants' Deceptive Policy Practices

### 1. Defendants' Misrepresent That They Will Provide Proper Oversight of Judges

The Board of Judicial Conduct's Website states; *"The Board of Judicial Conduct was created by the legislature **to investigate and, when warranted, act on complaints against judges"***. The Board of Judicial Conduct's Website further states;

> The Tennessee Board of Judicial Conduct was created by the legislature to:
> 1. **Provide an orderly and efficient method for making inquiry into**:
> - The physical, mental and/or moral fitness of any Tennessee judge;
> - **Whether the judge committed judicial misconduct;**
> - **Whether the judge committed any act calculated to reflect unfavorably upon the judiciary of the state or bring it into disrepute or which may adversely affect the administration of justice in the state**
> 2. **Provide a process by which appropriate sanctions may be imposed;**
> 3. **Implement constitutional provisions by providing a procedure for the removal of judges.**

The facts will show, and as already evidenced in statistics of case dispositions published and publicly displayed on their own website, that the Board of Judicial Conduct, through gross negligence and other misconduct, routinely fails to fulfil their responsibilities required by statutory law and in so doing, fail to provide Equal Protection under the law.

### 2. Defendants' Deceptive Website

The Board of Judicial Conduct's website directs litigants to file a complaint against a judge who engages in judicial misconduct. On the page https://www.tncourts.gov/boards-commissions/court-judiciary/faqs, The website details what misconduct the Board of Judicial Conduct may consider and states

### What is judicial misconduct?

8

*"Judicial misconduct generally is "willful misconduct" that is in violation of the Code of Judicial Conduct, which is Tennessee Supreme Court Rule 10. The Code of Judicial Conduct lists various rules about how a judge should conduct himself or herself in court and out of court".*

**What are some things that the Board of Judicial Conduct may not consider?**
*"...A complaint must specifically set forth exactly what the judge did that you believe was unfair or biased".*

**What will the Board of Judicial Conduct do with my complaint?**
*"The disciplinary counsel will review your complaint and send it to a three member investigative panel to determine whether or not to investigate it further. If the complaint does not include facts which show grounds for judicial misconduct, the investigative panel will dismiss the complaint and notify you and the judge of the dismissal".*

*"If the complaint contains information about a judge that sets out facts which, if true, indicate judicial misconduct, the disciplinary counsel will conduct a preliminary investigation. If evidence exists supporting the allegations, the investigative panel may authorize a full investigation, in which the judge will be required to respond in writing".*

*"Once the full investigation is completed, the investigative panel may dismiss the case; recommend a disciplinary action, such as a private or public reprimand or censure, a deferred discipline agreement with the judge (waiting to see if the judge corrects the behavior or fulfills certain requirements placed on the judge); refer the case to another agency such as the Tennessee Bureau of Investigation; or file formal, public charges against the judge".*

Defendants tout fulfillment of responsibility to provide oversight of judges by publicly posting what few complaints they actually act upon that resulted in formal charges against a judge.

### 3. Defendants' Intentionally Fail to Provide Oversight of Judges

In Plaintiff's fifty-three n page complaint against Judge Joe H Thompson, Plaintiff plainly satisfied the requirements for filing a complaint with the Board of Judicial Conduct and Plaintiff evidenced numerous examples of judicial misconduct by Judge Joe H Thompson in his complaint

9

See **EXHIBIT 1**. In the opening paragraph of Plaintiff's complaint filed with the Board of Judicial Conduct, Plaintiff stated; "*In this complaint, I will provide irrefutable factual basis substantiating beyond any doubt the misconduct of Judge Thompson in direct violation of several Rule 10 Canons and Canon Rules*". In Plaintiff's complaint to the Board of Judicial Conduct, Plaintiff complained of and evidenced judicial misconduct by Judge Joe H Thompson and his violation of the following canons and rules of judicial conduct;

> TENN. SUP. CT. R. 10, Canon 2, Rule 2.1
> TENN. SUP. CT. R. 10, Canon 2, Rule 2.2
> TENN. SUP. CT. R. 10, Canon 2, Rule 2.3
> TENN. SUP. CT. R. 10, Canon 2, Rule 2.5 (A)
> TENN. SUP. CT. R. 10, Canon 2, Rule 2.5, Comments [1], [2] [3], [4] and [5]
> TENN. SUP. CT. R. 10, Canon 2, Rule 2.6 (A)
> TENN. SUP. CT. R. 10B 1.03

Statistical analysis of case dispositions on Defendants' website proves that Defendants callously and wrongfully dismiss complaints against judges and only provide protection under the law to members who are legal professionals while dismissing complaints filed by citizens who are not members of the legal profession (See Verified Complaint Docket Entry 1).

### 4. Defendants' Misrepresent Why Complaints are Dismissed

In response to Plaintiff's complaint to the Board of Judicial against Judge Joe H Thompson, the Board of Judicial Conduct dismissed Plaintiff's complaint with what appears to be a "blanket response" to all complaints filed with the Board of Judicial Conduct by persons who are not legal professionals See **EXHIBIT 2**. In the Defendants' letter of dismissal of Plaintiff's complaint, signed by Defendant Judge Chris Craft, Board Chair, the letter stated;

"At its core, your complaint appears to be a reflection mostly of dissatisfaction with a decision or series of decisions made by a judge. The appellate courts, not the Board, generally handle legal questions. Even if you think a judge has made a wrong ruling, that is not a breach of ethics or a violation of the Code of Judicial Conduct that would ordinarily be handled by this Board.

Accordingly, your complaint has been dismissed and our file has been closed. Nevertheless, the Board of Judicial Conduct thanks you for your interest in preserving the integrity of our judicial system."

In Plaintiff's complaint, Plaintiff did not complain of the erroneous rulings by Circuit Court Judge Joe H Thompson. Plaintiff complained of Judge Joe H Thompson's numerous violations of the Code of Judicial Conduct, including a failure to rule timely in violation of statutory code as well as in violation of the Code of Judicial Conduct. In a phone call to the Board and Judicial Conduct, speaking with Defendant Timothy R. Discenza, Plaintiff reiterated that fact that his complaint was not about rulings but was about judicial misconduct. Defendant Discenza simply responded that Plaintiff just wasn't happy about the rulings of the judge. Plaintiff's complaint filed with the Board of Judicial Conduct evidences Defendant Discenza's statement to be false and untrue.

Since more than one complaint against a judge is filed per day on average with the Board of Judicial Conduct, and because substantially all of the complaints are dismissed for reasons of "complaint about ruling", "no jurisdiction" and/or "inadequate factual basis", it is substantially likely that many complaints, like Plaintiff's, are wrongfully dismissed complaints against judges.

Although Defendants' website proclaims that "*If the complaint contains information about a judge that sets out facts which, if true, indicate judicial misconduct, the disciplinary counsel will conduct a preliminary investigation*", this is obviously untrue considering the number of

11

complaints dismissed. The law of averages and common sense dictate that a higher number percentage of complaints should result in an investigation with resulting reprimand and or public censure.

## III. A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS

### A. This Court Has the Authority to Grant Requested Relief

Pursuant to Fed. R. Civ. P. Rule 65, this Court has the authority to issue and grant the relief sought by Plaintiff and unnamed Plaintiffs, pursuant to its inherent equitable powers to enforce its Permanent Injunction, preserve the status quo, and provide for complete equitable relief, including redress to class action plaintiffs harmed by Defendants' failure to provide Equal Protection under the law. When, as here, the public interest is implicated, this Court's equitable powers "assume an even broader and more flexible character than when only a private controversy is at stake". FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996) (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946). In the case FTC v. Gem Merch. Corp, the 11th Circuit Ct. of Appeals, citing the Supreme Court case Hecht Co. v. Bowles, stated;

> u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. **And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.** Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1994).
> Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.

12

Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. Porter, 328 U.S. at 398, 66 S.Ct. at 1089 (citations omitted). FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996) (at 469)

## B. Plaintiff Meets the Standard for Granting a Class Action Groups Request for a Preliminary Injunction

### 1. Plaintiff Has Demonstrated his Likelihood to Succeed on the Merits

Generally, the Plaintiff(s) meets its burden of on the likelihood of success issue if it shows preliminarily, by affidavit or other proof, that it has a fair and tenable chance of ultimate success on the merits. Moreover, in considering an application for a TRO or preliminary injunction, the Court has the discretion to consider hearsay evidence. Flynt Dist. Co., Inc. v. Harvey, 734 F .2d 1389, 1394 (9th Cir. 1984) (even inadmissible evidence may be given some weight when to do so serves the purpose of preventing irreparable harm before trial); see also Heideman v. S. Salt Lake City, 348 F. 3d 1182, 188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings."). In the case University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981), the Supreme Court stated;

> The purpose of a preliminary injunction is merely **to preserve the relative positions of the parties until a trial on the merits can be held**. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981) (at 395)

### a. Defendants have violated the fourteenth amendment of the U.S. Constitution

13

The Fourteenth Amendment of the United States Constitution provides for equal protection under the law for all citizens. In the case, Cleburne v. Cleburne Living Center, Inc., 473 US 432 - Supreme Court 1985, the Supreme Court stated;

> **The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.** Plyler v. Doe, 457 U. S. 202, 216 (1982).

> The general rule gives way, however, when a statute classifies by race, alienage, or national origin. **These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy — a view that those in the burdened class are not as worthy or deserving as others.** For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. McLaughlin v. Florida, 379 U. S. 184, 192 (1964); Graham v. Richardson, 403 U. S. 365 (1971). **Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution.** Kramer v. Union Free School District No. 15, 395 U. S. 621 (1969); Shapiro v. Thompson, 394 U. S. 618 (1969); Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535 (1942).

The facts in this case, evidenced in Plaintiff's Verified Complaint and on Defendants' own website are so simple, obvious, and easy to comprehend, the likely success on the merits of Plaintiff's claims and causes of action is undeniable. The facts plainly show that substantially all complaints (if not in fact all complaints), filed with, and acted upon by the Board of Judicial Conduct, are only complaints filed by legal professionals. Conversely substantially all complaints (if not in fact all complaints), filed with and dismissed by the Board of Judicial Conduct, are complaints filed by citizens who are not members of the legal profession. Defendants' failure to

14

provide Equal Protection is obvious and evidenced on their own website and success on the merits is not only probably but almost a certainty in a fair court of law.

### b. Defendants are individuals jointly and severally liable for laws violations

First, it is important to note States and state agencies are liable for injunctive and monetary relief. In the case, Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976, the Supreme Court stated;

> The principal question presented by these cases is whether, as against the shield of sovereign immunity afforded the State by the Eleventh Amendment, Edelman v. Jordan, 415 U. S. 651 (1974), **Congress has the power to authorize federal courts to enter such an award against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment.** The Court of Appeals for the Second Circuit held that the effect of our decision in Edelman was to foreclose Congress' power.

The Supreme Court affirmed it previous decision in the case, Atascadero State Hospital v. Scanlon, 473 US 234 - Supreme Court 1985. In this case, the Supreme Court stated;

> Moreover, the **Eleventh Amendment is "necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment,"** that is, by Congress' power "to enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." Fitzpatrick v. Bitzer, 427 U. S. 445, 456 (1976). As a result, when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent.

The Supreme Court also affirmed the same in Hutto v. Finney, 437 US 678 - Supreme Court 1978 as follows;

> But time has not stood still. Two Terms ago, we decided *Fitzpatrick* v. *Bitzer,* which for the first time in the recent history of the Court asked us to decide **"the question of the relationship between the Eleventh Amendment and the enforcement power granted to Congress under § 5 of the Fourteenth Amendment."** *Id.,* at 456. **There we concluded that**

**"the Eleventh Amendment, and the principle of state sovereignty which it embodies, . . . are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment."** *Ibid.* (Citation omitted.) And we went on to hold:

> **"Congress may, in determining what is `appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."** Ibid.

Then, in *Monell* v. *New York City Dept. of Social Services, supra,* decided only weeks ago, **we held that the Congress which passed the Civil Rights Act of 1871, now § 1983—a statute enacted pursuant to § 5 of the Fourteenth Amendment, see 436 U. S., at 665—"*did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."** *Id.,* at 690. This holding alone would appear to be enough to vitiate the vitality of *Fitzpatrick's* explanation of *Edelman.*

Moreover, central to the holding in *Monell* was the conclusion that the Act of Feb. 25, 1871, ch. 71, § 2, 16 Stat. 431, provided a definition of the word "person" used to describe the class of defendants in § 1983 suits. Although we did not in *Monell* have to consider whether § 1983 as properly construed makes States liable in damages for their constitutional violations, **the conclusion seems inescapable that, at the very least, § 1983 includes among possible defendants "a class . . . which literally includes States."** *Edelman* v. *Jordan,* 415 U. S., at 672. This follows immediately from the language of the Act of Feb. 25, 1871:

> "[I]n all acts hereafter passed . . . the word `person' may extend and be applied to bodies politic and corporate . . . unless the context shows that such words were intended to be used in a more limited sense . . . ."

**The phrase "bodies politic and corporate" is now, and certainly would have been in 1871, a synonym for the word "State."** See, *e. g., United States* v. *Maurice,* 26 F. Cas. 1211, 1216 (No. 15,747) (CC Va. 1823) (Marshall, C. J.) ("The United States is a government and, consequently, a body politic and corporate"). See also *Pfizer Inc.* v. *Government of India,* 434 U. S. 308 (1978).

16

Given our holding in *Monell,* the essential premise of our *Edelman* holding—that no statute involved in *Edelman* authorized suit against "a class of defendants which literally includes States," 415 U. S., at 672—would clearly appear to be no longer true. **Moreover, given *Fitzpatrick's* holding that Congress has plenary power to make States liable in damages when it acts pursuant to § 5 of the Fourteenth Amendment, it is surely at least an open question whether § 1983 properly construed does not make the States liable for relief of all kinds, notwithstanding the Eleventh Amendment. Whether this is in fact so, must of course await consideration in an appropriate case.**

In addition to the agency or state Defendants, individual Defendants, the Honorable Judge Chris Craft, Timothy R. Discenza, and Unnamed Members of the Investigative Panel are also liable for injunctive and monetary relief for law violations committed by the agency Defendants. To obtain an injunction against an individual, Plaintiff must show that the individual either had the authority to control unlawful activities or participated directly in the time. See FTC v. Affordable Media, LLC, 179 F. 3d 1228 - Court of Appeals, (9th Circuit 1999) at 1234. As stated above, Defendants Honorable Judge Chris Craft and Timothy R Discenza directly participate in wrongful dismissal of complaints. The same is true of Unnamed Members of the Investigative Panel.

### c. The Equities Weigh in Favor of Granting Injunctive Relief

The public interest in ordering Defendant's not destroy or dispose of evidence far outweighs any interest Defendants may have in destroying, disposing or otherwise concealing evidence in this matter. The same is true in requiring Defendants to provide Equal Protection under the law. In balancing the equities between parties, the public equities must be given greater weight. FTC v. Affordable Media, LLC, 179 F. 3d 1228 - Court of Appeals, (9th Circuit 1999) (at 1236). Since Defendants can have no vested interest in destroying, disposing or otherwise

17

concealing evidence, a balance of equities tips decidedly toward granting the requested relief.

Amoco Production Co. v. Gambell, 480 US 531 - Supreme Court (1987). Conversely, Defendants

do have a vested interested in providing Equal Protection under the law and providing proper

oversight of judges. Defendants have such a vested interest because it is the job to do so as required

by Tennessee Statute. In Amoco v. Gambell, the Supreme Court stated;

> In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. **Although particular regard should be given to the public interest...**,

Also, in the case, Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365 - Supreme Court (2008)

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, **that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest**. See Munaf v. Geren, 553 U.S. 128 S.Ct. 2207, 2218-2219, 171 L.Ed.2d 1 (2008); Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365 - Supreme Court 2008 (at 374).

## IV. THE SCOPE OF THE PROPOSED TRO IS APPROPRIATE IN LIGHT OF DEFENDANTS' CONDUCT

### A. CONDUCT RELIEF

To prevent irreparable harm to Plaintiff(s) claim and causes of action, the proposed

temporary restraining order prohibits Defendants from destroying, disposing of or otherwise

concealing evidence. To prevent future irreparable harm, the proposed order also requires

18

Defendants to provide Equal Protection under the law as they are already required by statutory law. As discussed above, this Court has broad equitable authority under Fed. R. Civ. P. and case law precedence to grant ancillary relief necessary to accomplish complete justice. These prohibitions do no more than order Defendants comply with discovery and Fed. R. Civ. P. and simply require Defendant to perform their jobs as they are already required but fail to perform.

## B.   PRESERVATION OF RECORDS

The proposed order contains a provision directing Defendants to preserve records, including electronic records, and evidence. It is appropriate to enjoin Defendants charged with deception and failure to provide Equal Protection from destroying evidence and doing so would place no significant burden on them. See SEC v. Unifund SAL, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990). (characterizing such orders as "innocuous"). Because Defendants' agency acts under a standard of confidentiality, Defendants could easily delete relevant evidence. The same is true of directing Defendants to provide Equal Protection under the law, as this places no additional burden upon Defendants except to require them to do the job they are already paid to perform but which they do not.

## C.   EXPEDITED DISCOVERY

Plaintiff also seeks limited expedited discovery to identify possible additional plaintiffs. These types of discovery orders reflect the Court's broad and flexible authority in equity to grant preliminary emergency relief in cases involving public interest. See Porter, 328 u.S. at 398: FSLIC v. Dixon, 835 F.2d 554, 562 (5th Cir. 1987); Federal Express Corp. v. Federal Expresso, Inc., 1997 U.S. Dist. LEXIS 19144, at * 6 (N.D.N.Y. Nov. 24, 1997) (early discovery "will be appropriate in

some cases, such as those involving requests for a preliminary injunction") (quoting commentary to Fed. R. Civ. P. 26(d)); Benham Jewelry Corp. v. Aron Basha Corp., 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y.July 18, 1997) (courts have broad powers to grant expedited discovery).

## D. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the proposed Temporary Restraining Order a Preliminary Injunction to halt Defendants' violations of the Fourteenth Amendment of United States Constitution.

Respectfully submitted,

John Anthony Gentry, CPA, Pro Se
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649
john.a.gentry@comcast.net

20

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

On this the 27th day of February, 2017

John Anthony Gentry, CPA

**Oath**

**State of Tennessee** )
**County of** DAVIDSON )


I, John Anthony Gentry, after being first duly sworn according to law, do hereby make oath and affirm that all statements included in **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** are true and correct to the best of my knowledge, information and belief

_____
John Anthony Gentry


Sworn to and subscribed before me, this
the 27 day of Feb , 2017

Notary Public _____

My Commission Expires 11-3-20

22