# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | |
|---|---|
| **JOHN ANTHONY GENTRY, sui juris/pro se** ) | |
| ) | |
| Plaintiff ) | |
| ) | **CASE NO. 3:17-0020** |
| vs. ) | |
| ) | |
| **THE STATE OF TENNESSEE;** ) | |
| **PAMELA ANDERSON TAYLOR;** ) | |
| **BRENTON HALL LANKFORD;** ) | **JURY TRIAL DEMANDED(12)** |
| **SARAH RICHTER PERKY;** ) | |
| **UNNAMED LIABILITY INSURANCE** ) | |
| **CARRIER(S); Et al** ) | |
| ) | |
| Defendants ) | |

## AMENDED VERIFIED COMPLAINT

Comes now Plaintiff, JOHN ANTHONY GENTRY, Pro Se and Sui Juris, and in direct

support of this Verified Complaint, and through the various jurisdiction of this United States

District Court provided for under at least; Article III § 2 U.S. Const., 28 USC § 1331, 28 USC

§ 1343, 18 USC §1965, and 18 USC § 1512, herein alleges, states, and provides the following:

Pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), Plaintiff amends. ///

## Table of Contents

NATURE OF CASE ........................................................................................................ 3

PARTIES ....................................................................................................................... 5

JURISDICTION AND VENUE ..................................................................................... 6

GENERAL ALLEGATIONS .......................................................................................... 7

FIRST CAUSE OF ACTION ......................................................................................... 12

    Honest Services, Breach of Fiduciary Duty, Scheme To Commit Fraud, Witness Tampering,
    Racketeering, Violation of Due Process and Obstructing Justice ....................................... 12

1

Claim and Statement of Facts ................................................................................................ 14

    Plaintiff Betrayed By His Own Attorney in Racketeering Scheme .......................................... 14

SECOND CAUSE OF ACTION ................................................................................................ 17

  Extortion, Racketeering, Witness Tampering, Violation of Due Process .......................................... 17

  and Obstructing Justice ................................................................................................ 17

    Claim and Statement of Facts ................................................................................................ 18

      Extortion - Fraudulent Awarding of Attorney's Fees First Time ............................................. 18

      Extortion - Judicial Reprisal Intended to Silence Plaintiff ................................................. 21

      Extortion - Fraudulent Awarding of Attorney's Fees Second Time .................................... 22

      Fraudulent Findings and Conclusions, and Violation of Right To Be Heard ............................ 25

      Conspiracy to Obstruct Evidence, and Violate Right To Be Heard .......................................... 27

      Subordinated Perjury and Corrupt Prevention of Testimony .................................................. 29

THIRD CAUSE OF ACTION ................................................................................................ 31

  Honest Services, Racketeering, Gross Negligence, Violations of Fourteenth Amendment ............. 31

  Right of Due Process, Failure to Provide Equal Protection, Breach of Fiduciary Duty ................... 31

    Claim and Statement of Facts ................................................................................................ 32

      The Board of Judicial Conduct ................................................................................................ 32

      The Board of Professional Responsibility ................................................................................ 37

      The Tennessee Court of Appeals at Nashville ......................................................................... 39

        Wrongful Dismissal of Plaintiff's Rule 10 Appeal, Concealing Records ............................. 40

        Attempts to wrongfully dismiss Rule 3 Appeal, extortion, and concealment of records ...... 43

        Attempt at entrapment ................................................................................................ 51

Requested Relief ................................................................................................ 52

Additional Statement of Facts ................................................................................................ 53

  Board of Judicial Conduct ................................................................................................ 53

  Obvious Perjury ................................................................................................ 57

  Corrupt Inducement to Withhold Testimony ................................................................................ 64

Witness List ................................................................................................ 68

Oath ................................................................................................ 72

2

# NATURE OF CASE

At its core, this case is about the corruption of a state's legal system at all levels. One that determines the outcome of cases not based on facts, evidence, or law of the land, but instead on corrupt self-serving personal interests of attorneys, and arms and agents of the state.

This is a case alleging Defendant, State of Tennessee, through its agents and arms of the state, individually and together, and or, in their official capacity, conspire and actively engage in "**corrupt racketeering activities**" with other agents and arms of the state, and officers of the court (attorneys). The State, its agents, arms of the state, and officers of the court, have though a "**breach of fiduciary duty**", "**monopoly**", "**intentional gross negligence**", and through "**corrupt racketeering activities**" and or, as a matter of unconstitutional policy, conspired, aided, abetted and violated Plaintiff's rights protected under the Constitution of the United States and State Constitution, and have violated federal laws as follows: denial of due process, conspiracy to defraud, extortion, obstruction of justice, evasion of subpoenas, witness tampering, concealment of records, failing to provide Equal Protection under the law, and failing to provide "Honest Services"; causing Plaintiff to be wrongfully denied his property under color of law, causing him great financial loss and personal harm.

The "**Corrupt Racketeering Activities**" of the State of Tennessee, occurring through its agents, agencies, courts, and "arms of the state", in conspiracy with each other and with attorney officers of court, are broad and well entrenched, and the pattern of these corrupt activities is plain and obvious, as the facts of this case prove. Corrupt Racketeers in Tennessee

3

are so emboldened, they hardly even bother to hide their corruption anymore. One need only look with open eyes to see this is true.

The underlying greed, that is the catalyst of these "**Corrupt Racketeering Activities**" will never abate, for greed has an insatiable appetite and knows no boundaries. Under this current system of racketeering by the legal profession; human and constitutional rights will continue to crumble away until we reach a tipping point like that of the "Suffrage Movement". Indeed, we are near that tipping point now, as this case, and others like it, are not unlike the federal lawsuits that began the "Suffrage Movement" in the 1870's, and like those cases of the suffrage movement demanding a woman's right to vote, these cases today, demanding protection of constitutional rights, are being wrongfully dismissed in courts throughout the country. Our forefathers saw this coming and wrote into our constitution inalienable rights and protections of the fourteenth amendment, and those rights are to be protected by the federal courts.

The people are suffering grave violations of rights guaranteed by the U.S. Constitution. This suffering often leads to substance abuse, and even suicide by those whose rights have been violated by the very courts where they sought protection and fairness. Instead of finding protection and fairness, litigants often find themselves subjected to judicial reprisals, extortion, fraud, abuse of process, and complete disregard of fundamental rights.

This case is about fighting for and preserving natural, and human rights already set forth in our federal constitution. This court has a solemn responsibility and duty to protect the U.S. Constitution and the rights of the people guaranteed therein.

4

# PARTIES

1. At all relevant times herein, Plaintiff JOHN ANTHONY GENTRY resides at 208 Navajo Court, Goodlettsville, Sumner County, Tennessee, 37072, (615) 351-2649.

2. At all relevant times herein, Defendant PAMELA ANDERSON TAYLOR was and is a Member attorney of Stites and Harbison, PLLC, with her principal office located at 401 Commerce Street, Suite 800, Nashville, Davidson County, Tennessee, 37219. Defendant PAMELA ANDERSON TAYLOR is sued in both her individual person, as a member partner in the firm Stites and Harbison, PLLC, and as an officer of the court, as well as for divestitures to the extent allowed.

3. At all relevant times herein, Defendant BRENTON HALL LANKFORD was and is an attorney of Stites and Harbison, PLLC, with his principal office located at 401 Commerce Street, Suite 800, Nashville, Davidson County, Tennessee, 37219. Defendant BRENTON HALL LANKFORD is sued in both his individual person, and as an officer of the court, as well as for divestitures to the extent allowed.

4. At all relevant times herein, Defendant SARAH RICHTER PERKY was an attorney of Hollins, Raybin & Weismann, P.C. and Defendant SARAH RICHTER PERKY'S former principal office was located at 424 Church Street, Suite 2200, Nashville, Davidson County, Tennessee, 37219. Defendant SARAH RICHTER PERKY is current a member partner of Thompson Burton with her principal office now currently located at One Franklin Park, 6100 Tower Circle, Suite 200, Franklin, Tennessee 37067. Defendant SARAH RICHTER

5

PERKY is sued in both her individual person, and as an officer of the court, as well as for divestitures to the extent allowed.

5. At all relevant times herein, Defendant STATE OF TENNESSEE was and is a statewide political subdivision entity of the United States of America, one (1) of fifty (50) several States and Commonwealths, and a unit of government addressed through its chief executive, the Governor thereof. Defendant STATE OF TENNESSEE is sued in its individual, vicarious, and *respondeat superior* capacities for acts and/or inactions leading to violations of rights and privileges guaranteed by the fourteenth amendment of the Constitution of The United States, both by it and its subordinates described herein, committed necessarily outside and against the law, and is sued in its official capacity for the various purposes of certain injunctive, punitive, and declaratory relief herein.

6. At all relevant times herein, Defendant(s), UNNAMED LIABILTY INSURANCE CARRIERS were and are the malpractice, and or liability insurance carriers for the insureds; THE STATE OF TENNESSEE, PAMELA ANDERSON TAYLOR, BRENTON HALL LANKFORD, SARAH RICHTER PERKY, and are sued for the liability protection guaranteed to the Defendants named herein.

## JURISDICTION AND VENUE

7. This District Court of the United States has original, concurrent, extraterritorial, and supplementary jurisdiction over this cause of action. Plaintiff claims federal jurisdiction pursuant to Article III § 2 U.S. Const., 28 USC § 1331, 28 USC § 1343, 18 USC §1965,

6

and 18 USC § 1512 which extends the jurisdiction to cases arising under the U.S. Constitution and U.S. Code.

8. The District Court of the United States is an Article III court with authority to hear questions arising under the Constitution, Laws, and Treaties of the United States, including but not limited to, the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. See the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

9. This Court has well established authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and pursuant to Fed. R. Civ. P. Rule 57.

10. Because Defendant(s) principal offices and Plaintiff's residence are both located in Middle Tennessee, and because the allegations contained in this complaint are alleged to have occurred in Middle Tennessee, proper venue for this complaint is in the United States District Court for the Middle District of Tennessee.

## GENERAL ALLEGATIONS

11. Plaintiff cites as controlling authority *Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 – Supreme Court, (1978)*, and references *Conley v. Pryor, U.S. District Ct., D. Kansas, (2015); Mitchell v. TOWNSHIP OF PEMBERTON, et al, U.S. District Court, D. New Jersey. (2010); Hansen v. Williamson, 440 F. Supp. 2d*

7

*663, U.S. District Court, E.D. Michigan, S.Div. (2006);* and *Wright v. Stickler, 523 F. Supp. 193 – U.S. District Court, N.D. Illinois, E. D. (1981).*

12. The federal courts, with Monell and subsequently Conley, Mitchell, Hansen, Wright and other cases, have determined concisely and affirmed repeatedly that "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity [person] is responsible under § 1983" [See Monell, at 694-695]

13. Plaintiff cites *Ex Parte Young,* regarding claims against state officials in their individual capacities for violations of federal constitutional or statutory rights committed during official duties. [See Huang v. Johnson, 274 F.3d 682 (2d Cir. 2001).]

14. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1983 for violations of certain protections guaranteed him by the Fourteenth Amendment of the federal Constitution, by the Defendants under color of law. Title 42 U.S. Code § 1983 states;

> **Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory** or the District of Columbia, **subjects, or causes to be subjected, any citizen of the United States** or other person within the jurisdiction thereof **to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress**, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia

8

15. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1985 for conspiracy to interfere

and violate certain protections guaranteed him by the Fourteenth Amendment of the federal

Constitution, by the Defendants under color of law . Title 42 U.S. Code § 1985 states;

> **If two or more persons in any State or Territory conspire** or go in disguise
> on the highway or on the premises of another, **for the purpose of depriving,
> either directly or indirectly, any person or class of persons of the equal
> protection of the laws, or of equal privileges and immunities under the laws;
> or for the purpose of preventing or hindering the constituted authorities of
> any State or Territory from giving or securing to all persons within such
> State or Territory the equal protection of the laws;** or if two or more persons
> conspire to prevent by force, intimidation, or threat, any citizen who is lawfully
> entitled to vote, from giving his support or advocacy in a legal manner, toward
> or in favor of the election of any lawfully qualified person as an elector for
> President or Vice President, or as a Member of Congress of the United States;
> or to injure any citizen in person or property on account of such support or
> advocacy; in any case of conspiracy set forth in this section, **if one or more
> persons engaged therein do, or cause to be done, any act in furtherance of
> the object of such conspiracy, whereby another is injured in his person or
> property, or deprived of having and exercising any right or privilege of a
> citizen of the United States, the party so injured or deprived may have an
> action for the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.**

16. Plaintiff brings this suit pursuant to 18 USC § 2 (a)(b) for aiding, abetting, and willfully

causing offenses against the United States and its Citizens. 18 USC § 2 (a)(b) states;

> (a) Whoever commits an offense against the United States or aids, abets,
> counsels, commands, induces or procures its commission, is punishable as a
> principal.
> (b) Whoever willfully causes an act to be done which if directly performed by
> him or another would be an offense against the United States, is punishable as a
> principal.

17. Plaintiff brings this suit pursuant to 18 USC § 1346 for deprivation of "Honest Services"

provided for him under state statute, U.S. Constitution, and legal and binding contract.

9

18. Plaintiff brings this suit pursuant to 18 USC § 1341 for an intentional scheme by Defendants to defraud Plaintiff of property.

19. Plaintiff brings this suit pursuant to 18 USC § 1961 for Defendants' engagement in **"Racketeering Activities"** involving extortion and subpoena evasion, pursuant to 18 USC § 1512.

20. Plaintiff brings this suit pursuant to 18 USC § 1512 for concealment of records in official proceedings, witness tampering, and evading the legal process of summoning a person to produce a record and or document to be used in an official proceeding.

21. Plaintiff further brings suit for complete and utter failure of the State to protect natural constitutional rights. The state has a **Fiduciary Duty** which has conventionally been the "Standard of Practice" and is defined as follows:

> *Fiduciary Duty:* is a legal duty to act solely in another party's interests. Parties owing this duty are called **fiduciaries.** The individuals to whom they owe a duty are called **principals.** Fiduciaries may not profit from their relationship with their principals unless they have the principals' express informed consent. They also have a duty to avoid any conflicts of interest between themselves and their principals or between their principals and the fiduciaries' other clients. *A fiduciary duty is the strictest duty of care recognized by the US legal system.*

22. The government of the State of Tennessee hinges on this very same definition as its continued existence requires **"Consent of the Governed"** and plainly **declares** power is **"inherent in the people"**. Article I § 1 of the Constitution of the State of Tennessee states:

> That all power is **inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times,**

10

**an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper**.

23. Since the power of the government is inherent in the people, the State has a Fiduciary Duty to its people, and any and every action taken, must be done so with the utmost of care, attention to detail, empathy, and in the interest of the Individual Rights and Freedoms. This Fiduciary Trust has been granted by the people and "**Entrusted**" to the State Government, and it is the State's responsibility to earn that "**Trust**" every day and Serve the Public Trust.

24. This is a "Trust" granted by the people, that is being ignored each and every day in the State of Tennessee's courts. When citizens complain to the State of this breach of trust and fiduciary duty caused by corrupt judicial officials acting in conspiracy with attorney officers of the court, complaint after complaint against an officer of the court and member of the judiciary is wrongfully dismissed, despite gross violations of constitutionally guaranteed rights that are being violated at the whim of an entrenched "**Racketeering Enterprise**"

25. This "**Trust**" must be taken back by the people, so as to preserve and protect the U.S. Constitution, and this U.S. District Court having the authority, duty, and solemn responsibility of protecting Constitutional Rights, must set the State back on its course of preserving the natural rights of U.S. Citizens.

26. To add injury on top of injury, this transpires all while the State government permits and maintains a monopoly of the legal profession and fails to police itself. Courts of equity, corrupted by the legal profession, often result in one party being forced to represent oneself as pro se, as has happened in the case underlying this litigation. In this setting, the legal

11

profession and the courts are acting as a "**for profit legal monopoly**" in clear violation of Anti-Trust laws put in place by our federal legislatures.  One can only find justice if he pays into the "**Corrupt Racketeering Enterprise**," and pro se litigants are actively discriminated against and bullied at every level of legal system and can thus find no justice.

> **Monopoly:** Market situation where one producer (or a group of producers acting in concert) controls supply of a good or service, and where the entry of new producers is prevented or highly restricted. Monopolist firms (in their attempt to maximize profits) keep the price high and restrict the output, and show little or no responsiveness to the needs of their customers.

27. As a pro se litigant in state court, the State government, through its agencies and "arms of the state" has made every attempt to deny Plaintiff due process and Equal Protection under the law through corrupt and monopolistic racketeering activities.  Plaintiff cannot even seek out legal counsel to represent him in this matter because the legal community "**protects itself**" and will not take action against "**one of its own**" which is the purest form or monopoly.

## FIRST CAUSE OF ACTION

**Honest Services, Breach of Fiduciary Duty, Scheme To Commit Fraud, Witness Tampering, Racketeering, Violation of Due Process and Obstructing Justice**

(18 U.S.C § 1346, 1341, 1512 and 1961.  42 U.S.C § 1983, 1985)

28. This Honorable Court has jurisdiction to hear this cause of action.  Plaintiff incorporates paragraphs 7 – 27 above by reference.

29. Venue is proper as the proximate causes leading to injury, were incurred in the Middle Section of Tennessee.

12

30. Plaintiff trusted an attorney and officer of the court, to follow his directive to enforce statutory injunction and demand a court proceeding. This attorney, whom Plaintiff paid retainer, and trusted to act as his Fiduciary intentionally failed him, conspired against him, and betrayed his trust.

31. On February 3, 2015, at approximately 1:00 PM, at the law offices of Hollins, Raybin and Weissman, located at 424 Church Street, Suite 2200, Nashville, TN 37219, Defendant SARAH RICHTER PERKY and Plaintiff JOHN ANTHONY GENTRY entered into a binding contract for legal services **EXHIBIT A**.

32. Defendant SARAH RICHTER PERKY represented to Plaintiff that she had significant legal experience in complex divorce cases, and that she could adequately represent Plaintiff in a court of law. Plaintiff would have this Honorable Court know that the underlying case was in fact not "complex," but that "manufactured complexity" of the case arose due to "**vexatious litigation**."

33. Plaintiff alleges Defendant SARAH RICHTER PERKY conspired with opposing counsel to present "**intentionally weak arguments**" on behalf of Plaintiff, intentionally **deprived Plaintiff of "Due Process"** which includes competent legal representation, deprived Plaintiff of "**Honest Services**" through engaging in "**Racketeering Activities**" as part of an intentional "**scheme to defraud**" Plaintiff of property and "**intentionally caused, aided, and abetted, evasion of the legal process**" of summoning a person to produce a record or document to be used in a legal proceeding.

## Claim and Statement of Facts

### *Plaintiff Betrayed By His Own Attorney in Racketeering Scheme*

34. On March 10, 2015, at approximately 3:30 PM, at the Sumner County Courthouse located at 100 Public Square, Gallatin, Tennessee, 37066, Plaintiff alleges Defendant SARAH RICHTER PERKY made a false statement to the Court and in so doing committed fraud on the court, breached her Fiduciary Duty to Plaintiff, and intentionally violated his right of due process which includes competent legal representation.

35. In her statement to the Court, Defendant SARAH RICHTER PERKY **falsely stated** to the court that "… *I've done extensive research*" and that "*The Court of Appeals has held on numerous times that you can have an implied business relationship…*" which was an **intentionally false and weak argument**.

36. Plaintiff, as subsequent pro se in the underlying litigation, after only a brief google search identified dozens, if not hundreds, of appellate court opinions, and statutory law supporting his business interest as plainly marital property through the doctrines of commingling, transmutation, and statutory law (preservation and appreciation). Obviously, Defendant SARAH RICHTER PERKY's statement that she had "*done extensive research*" was an intentionally false statement.

37. In an earlier case heard before the Court of Appeals at Nashville, Berg v. Berg, Case No. M2013-00211-COA-R3-CV, Defendant SARAH RICHTER PERKY provided legal representation involving the same issue of a business that was separate property prior to the marriage. The Ct. of App. opinion in that case, was filed in the record on June 25, 2014,

14

only months before Plaintiff's hearing on March 10, 2015, so of course Defendant SARAH RICHTER PERKY knew the legal arguments of transmutation, commingling, and preservation and appreciation, and it is obvious she intentionally withheld those arguments in breach of Fiduciary Duty and scheme to defraud property as part of a racketeering conspiracy.

38. In Case No. M2013-00211-COA-R3-CV, the Ct of App. opinion stated: "The classification of the **Berg entities as marital versus separate property was a hotly contested issue at trial**.", and "*Wife presented no expert testimony, relying on her own estimates for valuation and lay testimony to convince the trial court that **transmutation and commingling** had occurred and that re-organization of the Berg entities in the 1990s from general partnerships into limited liability companies **converted the business interests into marital property**.*"

39. Defendant SARAH RICHTER PERKY also provided representation in a Davidson County Circuit Court case 14D2466 SOLESBY, ADAM GREGORY vs SOLESBY, JENNIFER MORGAN, another case involving a business as marital property.

40. Plaintiff alleges Defendant SARAH RICHTER PERKY was quite knowledgeable about the issues in Plaintiff's case, based on her experience in the Berg case. Plaintiff alleges Defendant SARAH RICHTER PERKY conspired with opposing counsel to present intentionally false and weak arguments so as to defraud Plaintiff of his property, and deny him due process as part of "**Racketeering**" enterprise.

15

41. On or about May 8, 2015, Plaintiff instructed Defendant SARAH RICHTER PERKY to subpoena GoDaddy email account records, pertaining to emails proving his business ownership that were deleted. Plaintiff asserts competent counsel should not need instruction from a client in this regard.

42. On May 12, 2015, Plaintiff received a copy of the subpoena to be submitted that was prepared in error of Plaintiff's instructions and Plaintiff requested revision. Plaintiff asserts this error was intentional and certainly a breach of fiduciary duty. The amended subpoena was filed with the clerk of the court and issued to GoDaddy on or about May 13, 2015.

43. On June 12, 2015, Plaintiff's ex-wife received notification from GoDaddy regarding Plaintiff's subpoena and notified her counsel who then promptly filed a motion to quash, due to the fact that Defendant SARAH RICHTER PERKY had failed in her basic responsibility to provide notice of the issuance of the subpoena on May 13, 2015.

44. Plaintiff alleges Defendant SARAH RICHTER PERKY's actions in failing obtain evidence of her own initiative on Plaintiff's behalf, initial error in preparing the subpoena, and subsequent error to provide proper notice to opposing party, were all intentional acts made in conspiracy with opposing counsel to deny Plaintiff due process, to interfere in summoning a person to produce a record to be used in an official proceeding, as part of corrupt "**Racketeering Activities**" See **EXHIBIT B** supporting. 43 above.

45. Plaintiff asserts and alleges that there can be no good cause for Defendant SARAH RICHTER PERKY; (1) making an intentionally false statement that she had "*done extensive research*", (2) intentionally withholding valid legal arguments, and (3) intentionally

16

interfering with Plaintiff obtaining subpoenaed documents, except for the fact that she must have been in collusion with opposing counsel, in a scheme to defraud Plaintiff of his property and right of due process. This scheme therefore, must by default, include some form of pecuniary return involving kickbacks, be they in the form of actual financial gain or in the form of '*you win this case, I get to win the next case*'.

## SECOND CAUSE OF ACTION

### Extortion, Racketeering, Witness Tampering, Violation of Due Process and Obstructing Justice
(18 U.S.C § 1512, 1341, 1951, 1952, and 1961. 42 U.S.C § 1983, 1985)

46. This Honorable Court has jurisdiction to hear this cause of action. Plaintiff incorporates paragraphs 7 – 27 above by reference.

47. Venue is proper as the proximate causes leading to injury, were incurred in the Middle Section of Tennessee.

48. Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, conspired with the Honorable Judge Joe H. Thompson to (1) engage in corrupt racketeering activities, (2) extort money from Plaintiff, (3) deny Plaintiff due process, (4) deprive Plaintiff of his property, (5) deny Plaintiff Equal Protection under the law, (6) corruptly induced withholding of testimony, and (7) obstruct subpoenaed evidence.

49. Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, in furtherance of federal law violations referenced in ¶ 48 above, committed acts of fraud, constructive fraud, abuse of process, and intentional infliction of emotional distress for which they are being sued in state court and which is a separate cause of action that is still

ongoing in state court at this time. Those causes of action in state court are separate and distinct from this federal jurisdiction cause of action which is for violation of federal laws including in part, **"Racketeering"**, **"Extortion through public official"**, **"conspiracy to violate due process"**, etc.

50. **Plaintiff alleges, The Honorable Judge Joe H. Thompson conspired with, and granted leave to Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR to decide matters for themselves and issue rulings of the court, that Judge Thompson would then execute without question, and even against his own instructions and intent.** The facts proving this assertion are irrefutable and show a plain pattern of **"Corrupt Racketeering Activities"** including; **"Extortion"**, **"Violation of Due Process"**, **"Subpoena Evasion"**

## Claim and Statement of Facts

### *Extortion – Fraudulent Awarding of Attorney's Fees First Time*

51. Black's law dictionary defines "Extortion" as follows;

> **Any oppression by color or pretense of right, and particularly the exaction by an officer of money, by color of his office, either when none at all is due, or not so much is due.** or when it Is not yet due. Preston v. Bacon, 4 Conn. 4S0.**Extortion consists in any public officer unlawfully taking, by color of his office, from any person any money or thing of value that is not due to him. or more than his due.** *Black's Sec. Ed.*

52. 18 USC § 1951(b)(2) defines extortion as follows;

> The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, **or under color of official right.**

53. 18 USC § 1952 states (excerpts);

> (a) Whoever… **uses the mail**…, with intent to—
>    (1) **distribute** the **proceeds** of any unlawful activity;
> (b) As used in this section (i) "unlawful activity" means
>    (2) **extortion**

54. All of the above definitions and criteria for extortion are plainly evident in this case. Under color of law, Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR conspired with the Honorable Judge Joe H. Thompson, and unlawfully ordered Plaintiff to pay his opposing party's attorney's fees. There was no legal basis whatsoever to order Plaintiff to pay attorney fees as evidenced below.

55. As one of several scams engaged in by the parties of this case, this **"Racketeering Scam"** is to wrongfully force a litigant into a pro se status, then falsely claim frivolous motions are filed by the pro se, to which the judge in conspiracy and collusion readily agrees, and then **"fraudulently sanctions"** the pro se for attorney's fees under the false pretense of frivolity, for which the judge in conspiracy and collusion then "rules" and "orders". This scam is intended as a means to silence the pro se, and/or extort money from the pro se. The pro se is then forced under threat of contempt of court, to pay the illegally ordered sanction which is plain and simple extortion. The proof and evidence regarding this extortion is irrefutable.

56. On or about the 27 August, 2015, Defendant BRENTON HALL LANKFORD and Defendant PAMELA ANDERSON TAYLOR conspired with the Honorable Judge Joe H. Thompson, to extort money from Plaintiff and tendered an order to the Clerk of the Court

located at Sumner County Courthouse, that fraudulently awarded attorney's fees to their client in the amount of four-thousand, one-hundred, thirty-four dollars and twenty-one cents ($4,134.21) without a ruling of the court, in plain violation of Tenn. R. Civ. P. Rule 11.03 and in plain contradiction of Tennessee common law.

57. This order also fraudulently stated that Plaintiff was *voluntary pro se,* while in fact he was ***involuntary pro se***, which was another false "ruling" by Defendants, made in an effort to later deny Plaintiff due process in appellate proceedings.

58. Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR also sent this fraudulent document including extortion to Plaintiff through U.S. Mail. The Sumner County Court Clerk's office also mailed a copy of the order to Plaintiff according to their standard practice of providing notice.

59. In conspiracy with Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, the Honorable Judge Joe H. Thompson signed the fraudulent order on September 9, 2015, and the order was entered into the record on the same day.

60. The attorney's fees fraudulently awarded to their client were later partially garnished from Plaintiff's bank account on November 27, 2015, in the amount of three-thousand, eight-hundred, ninety-one dollars and seventy-six cents ($3,891.76) and Plaintiff was forced, despite the illegality of the award, **through fear** of being held contempt of court, to remit the balance of the fraudulently awarded attorney's fees to the Sumner County Clerk.

61. Pursuant to Tennessee Common Law, a court **cannot** award attorney's fees **unless there is need by one party and ability to pay by the other**. In the underlying litigation to this case neither was true and in fact Judge Thompson ruled so.

62. Attorney's fees can also be awarded as sanction pursuant to Tenn. R. Civ. P. Rule 11.03 which also was not true in this case. The order awarding attorney's fees did not state in any way whatsoever that Plaintiff was being sanctioned, nor was a separate motion to sanction filed by Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, nor was an order issued by the court instructing Plaintiff to explain why he should not be sanctioned, nor was the safe harbor provision in Rule 11.03 adhered to, which are all requirements for sanction of attorney's fees pursuant to Rule 11.03.

63. Plaintiff alleges this awarding of attorney's fees was most obviously, a conspiracy between Defendants BRENTON HALL LANKFORD, PAMELA ANDERSON TAYLOR and Judge Thompson, and collusion to extort money from Plaintiff and to keep him silent and dissuade him from seeking further "protection" from the court in subsequently filed motions. This was a plain and obvious "**Racketeering Scam**" against Plaintiff. See **EXHIBIT C** supporting Plaintiff's assertions in ¶ 54 – 63 above.

*Extortion - Judicial Reprisal Intended to Silence Plaintiff*

64. During a hearing on December 15, 2015, at the Sumner County Courthouse at approximately 8:00 AM, Plaintiff begged Judge Thompson to order the attorney's fees garnished from his bank account be returned, and that a decision regarding attorney's fees be deferred until the final hearing. Plaintiff complained in his written motion that he could

not afford his own legal counsel, could not afford health insurance, and could not pay his mortgage nor provide for his own basic needs.

65. In response to Plaintiff's plea for mercy, in a plain abuse of office, as a judicial reprisal, in conspiracy with Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, and as a corrupt "**Racketeering Scam of Extortion**", intended to silence Plaintiff's objections, and deny him due process, not only did Judge Thompson deny Plaintiff's motion to defer awarding of attorney's fees, Judge Thompson then maliciously ordered Plaintiff to escrow an additional $400 per month with the Clerk's Office, despite the facts that Plaintiff could not afford his own basic needs. See **EXHIBIT D** supporting Plaintiff's assertion in ¶¶ 64 – 65 above.

66. Plaintiff further alleges, Defendants BRENTON HALL LANKFORD, PAMELA ANDERSON TAYLOR and SARAH RICHTER PERKY, together with Judge Joe H. Thompson, conspired to deny Plaintiff income from his business and patent pending product and/or Pendente Lite Support so as to force Plaintiff into an involuntary pro se status so that they could extort money from Plaintiff in the form of fraudulently awarded attorney's fees and deprive him of his property without due process of law.

*Extortion - Fraudulent Awarding of Attorney's Fees Second Time*

67. During the final hearing of the underlying litigation, on May 3, 2016 at the Sumner County Courthouse, despite Plaintiff's involuntary pro se status, and despite Judge Thompson's repeated efforts to obstruct testimony and evidence, Plaintiff proved opposing party's

multiple material perjuries and Plaintiff won Judge Thompson over to rule in his favor. The transcripts of that hearing prove that this is a true statement.

68. Plaintiff asked Judge Thompson to return the escrowed attorney fees and Plaintiff asserts the transcripts show that it was Judge Thompson's intent to return escrowed attorney's fees that Plaintiff paid to the Court Clerk.

69. Plaintiff also asked the Court to return the attorney's fees garnished from his bank account referenced in ¶ 60 above. In response to Plaintiff's request for return of those fees, Defendant BRENTON HALL LANKFORD falsely stated that Plaintiff was sanctioned those attorney's fees under Rule 11 which is not true as evidenced in ¶ 62 above.

70. In response to Plaintiff's request for return of attorney's fees awarded against him, Judge Thompson stated:

> THE COURT: **I'M NOT GOING TO MAKE A DECISION ON THAT TODAY.** I WANT TO GO BACK AND I WANT TO REVIEW THE FILE. I CAN MAKE THAT DECISION BEFORE YOU SUBMIT YOUR FINDINGS OF FACT AND CONCLUSIONS OF LAW **May 3, 2015 Transcript Volume 4 p. 467**

71. Judge Thompson also made the following statement providing clear evidence of his conspiracy with Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR, and his earlier permission given to them to decide matters themselves and issue **"their own rulings of the court"**. Obviously, **a judge should never have a need to tell an attorney to reserve decisions for resolution by the court, because all matters should always be resolved by the court**. This is **plain evidence of illegal, corrupt racketeering activities** engaged in by Defendants. Specifically, Judge Thompson stated:

23

> THE COURT: …I believe I'm going to declare the parties divorced …, which means that you're divorced effective today. **And, Mr. Lankford, if you want to submit a decree declaring the parties divorced today <u>RESERVING ALL OTHER ISSUES FOR RESOLUTION BY THE COURT</u>, we'll go ahead and sign that.**
> **The Court further stated; …<u>BUT I THINK I'M GOING TO SIMPLY DECLARE THE PARTIES DIVORCED TODAY</u>.**
> MR. LANKFORD: Thank you, Your Honor. **May 3, 2015 Transcript Volume 4 p. 468**

72. On May 6, 2016, Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR tendered an order to Judge Thompson per his instruction titled "FINAL DECREE GRANTING DIVORCE AND **RESERVING ALL OTHER ISSUES**". This order was executed on May 12, 2016 and entered into the record on the same day at 8:40 AM.

73. On June 14, 2016, in a fax filing from the offices of Stites and Harbison, time stamped at 15:00:03, Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR faxed filed a fraudulent order to the Sumner County Clerk's Office.

74. This order was obviously tendered against the very specific instructions of Judge Thompson and against his intent. In this order, Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR awarded escrowed attorney's fees to their client in the amount of one-thousand, four-hundred, five dollars and eighty-three cents (1,405.83) and ruled on matters in plain contradiction of Judge Thompson's rulings during proceedings.

75. Plaintiff alleges that through "**Corrupt Racketeering Activities**", Defendants BRENTON HALL LANKFORD and PAMELA ANDERSON TAYLOR and/or their law firm Stites & Harbison, have control over judges like Judge Thompson in the State of Tennessee, so much

so, that they can defy them, and tell those judges how they want them to rule, even against a judge's own desire and intent.

76. Plaintiff alleges that this kind of power over the courts can only exist through judges receiving bribes, kickbacks and/or other forms of pecuniary/illegal compensation or coercion. See **EXHIBIT E** supporting Plaintiff's assertion in ¶¶ 67 – 76 above.

### *Fraudulent Findings and Conclusions, and Violation of Right To Be Heard*

77. On September 15, 2015, at approximately 8:15 AM, at the Sumner County Courthouse, Defendant BRENTON HALL LANKFORD, in a racketeering conspiracy with Judge Joe H Thompson and Defendant PAMELA ANDERSON TAYLOR, tendered a fraudulent document directly to Judge Thompson, in an effort to deny Plaintiff due process of a Petition for Recusal Appeal in appellate court.

78. This document was filed in plain violation of Local Court Rules and in plain violation of Tenn. R. Civ. P., and even more disturbing is that this document was fraudulently portrayed as coming from Judge Thompson's hand, with a certificate of service from the Court Clerk when in fact the certificate of service should have been from Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD. This document was also unsigned (another procedural rule violation) and notice was not provided to Plaintiff.

79. Since the document was fraudulently portrayed as coming from the court's hand, and not as a proposed order prepared by Defendants PAMELA ANDERSON TAYLOR and

BRENTON HALL LANKFORD, this was a plain attempt to obstruct justice following the pattern of their corrupt racketeering activities.

80. Defendant BRENTON HALL LANKFORD, also offered to email this fraudulent document directly to Judge Thompson in a Microsoft Word format so that he could edit the document if desired, an offer Judge Thompson accepted which is also in violation of procedural rules.

81. Defendants' tendering of this fraudulent document is plain evidence of "**Corrupt Racketeering Activity**" and that the Defendants tell judges what orders and findings and conclusions to issue and execute upon the helpless victims of their corruption.

82. During the September 15, 2015, hearing, Defendant BRENTON HALL LANKFORD falsely stated and portrayed to the court, that this document was a "response" to Plaintiff's objection to the previously executed order which was fraudulent and in defect of Tenn. Sup. Ct. R. 10B § 1.03. The document was not a "response" from Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD. This was a plainly fraudulent document intended to deny Plaintiff right of due process as part of a "Racketeering Conspiracy" between Judge Thompson and Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

83. **EXHIBIT F** is the unsigned copy of the document handed to Judge Thompson, plainly showing it was intended to be portrayed as a document from the Court's hand. **EXHIBIT G** is the copy Defendant BRENTON HALL LANKFORD signed after Plaintiff complained in court that he had not received notice. The transcript evidencing this corrupt activity is attached as **EXHIBIT H**. See transcript page 12, line 12, through page 13.

26

84. The **EXHIBIT H** transcript also shows a "**disturbing**" dialogue where Plaintiff was denied right of due process which includes a right to be heard. The transcript provides further evidence of conspiracy between Judge Thompson and Defendant BRENTON HALL LANKFORD to commit "**Corrupt Racketeering Activities**" which included denying Plaintiff's right to be heard and incorporating fraudulent documents into a court of record.

### Conspiracy to Obstruct Evidence, and Violate Right To Be Heard

85. In a letter dated January 29, 2015, Plaintiff's counsel requested an update on discovery that was not provided as required by Tenn. R. Civ. P. Discovery had been previously requested on November 6, 2014. Plaintiff's counsel did not receive a response from Defendant PAMELA ANDERSON TAYLOR.

86. During a hearing on March 10, 2015, still without Plaintiff having received discovery, the Court ordered Defendant PAMELA ANDERSON TAYLOR's client to comply with discovery.

87. On May 8th, 2015, Defendant PAMELA ANDERSON TAYLOR's client partially complied with the discovery order, but intentionally failed to provide many of the requested documents. In a cover letter to the discovery documents provided, Defendant PAMELA ANDERSON TAYLOR stated her client was "very busy" and would comply later. The requested documents were never provided.

88. Since Defendant PAMELA ANDERSON TAYLOR's client would not comply with a court order to provide documents required in discovery despite repeated requests, Plaintiff issued a subpoena for the documents.

89. In response to Plaintiff's subpoena, Defendant PAMELA ANDERSON TAYLOR filed an illegal motion to quash "**any and all subpoenas**"

90. On February 9, 2016 at approximately 9:30AM in the Sumner County Courthouse, while refusing to hear oral arguments by Plaintiff, and without having read Plaintiff's written responses to Defendant PAMELA ANDERSON TAYLOR's illegal motions to quash, Judge Joe H Thompson granted Defendant PAMELA ANDERSON TAYLOR's motions including a Motion to Quash Any And All Subpoenas.

91. These actions by Defendant PAMELA ANDERSON TAYLOR and Judge Joe Thompson were not only in plain violation of due process, discovery rules, and contradictory to case law, but these actions were a plain and obvious conspiracy to obstruct Plaintiff's evidence and **evade subpoenaed records** production, as part of a clear pattern of "**Corrupt Racketeering Activities**".

92. During the same hearing on September 15, 2015, Defendant BRENTON HALL LANKFORD openly conspired with Judge Thompson during proceedings to obstruct Plaintiff's evidence and testimony in the final hearing to come, and that no matter what evidence Plaintiff had to present to the court, proceedings would conclude in two days and no more.

28

93. **EXHIBIT I** is attached which includes the orders, letters, and transcripts proving Plaintiff's assertions in ¶ 85 – 92 above. The transcript included in **EXHIBIT I** is rather disturbing evidence of "**Racketeering Corruption**" and "**Subpoena Evasion**" and "**Violation of Due Process**" (right to be heard)

### *Subordinated Perjury and Corrupt Prevention of Testimony*

94. Plaintiff alleges as part of their "**Corrupt Racketeering Scheme**," Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, conspired with Judge Thompson and Katherine Wise Gentry to subordinate, multiple material perjurious testimony.

95. Plaintiff further alleges Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, conspired with Judge Thompson to corruptly cause withholding of testimony during official proceedings.

96. Plaintiff alleges the "Corrupt Racketeering Scheme" of subordinating material perjury and causing testimony to be withheld was to **allow the court to "rob" Plaintiff** of his rightful income and property.

97. During two proceedings during which Katherine Wise Gentry testified before the court, Katherine Wise Gentry intentionally and knowingly gave perjurious testimony. The facts establishing her perjury are irrefutable and undeniable.

98. Plaintiff asserts, having personally known Katherine Wise Gentry for several years, that she would not intentionally give material perjurious testimony without assurances from Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD that

she would not be charged with perjury, and that Judge Joe H. Thompson would not initiate any criminal action against her. According to Tennessee statute, material perjury is a felony crime in Tennessee.

99. Plaintiff alleges that obvious material perjury goes unpunished in Tennessee because of the "Corrupt Racketeering Scheme" and due to the conspiracy between corrupt racketeering attorneys and the judges who conspire with them.

100. Plaintiff asserts Katherine Wise Gentry will testify at trial that she was provided assurances that her perjury would go unpunished.

101. Since it is a plain and undeniable fact that Katherine Wise Gentry did give obvious perjurious testimony, and due to the fact that Judge Joe H. Thompson obviously knew Katherine Wise Gentry gave repeated material perjurious testimony, the fact of the conspiracy between PAMELA ANDERSON TAYLOR, BRENTON HALL LANKFORD, Katherine Wise Gentry and Judge Joe H. Thompson is obvious and undeniable.

102. Plaintiff further alleges, and the facts easily prove, as part of their "**Racketeering Scheme**," Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, in conspiracy with Judge Joe H. Thompson, caused the withholding of Plaintiff's testimony and cross-examination of Katherine Wise Gentry during official proceedings, which is a crime under 18 USC § 1512, punishable by fine or imprisonment.

103. Plaintiff alleges this crime under 18 USC § 1512, was committed by Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD and Judge Joe H. Thompson in conspiracy together, as part of their "Racketeering Scheme" intended to

**deprive and rob** Plaintiff of his income and property. See Additional Statement Of Facts section below, evidencing Plaintiff's assertions in ¶¶ 94 – 102 above.

## THIRD CAUSE OF ACTION

**Honest Services, Racketeering, Gross Negligence, Violations of Fourteenth Amendment Right of Due Process, Failure to Provide Equal Protection, Breach of Fiduciary Duty**
(18 USC 1346, 1961, 42 U.S.C § 1983 and 1985, Fourteenth Amendment of the U.S. Constitution)

104.   This Honorable Court has jurisdiction to hear this cause of action. Plaintiff incorporates paragraphs 7 – 93 above by reference.

105.   Venue is proper as the proximate causes leading to injury, were incurred in the Middle Section of Tennessee.

106.   Plaintiff alleges that the malicious **"Corrupt Racketeering Activities"** described above are corrupt activities that occur nearly every day in courtrooms across Tennessee. Plaintiff Alleges that Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, other attorneys like them, and many judges across Tennessee are well practiced in their **"Corrupt Racketeering Activities"**.

107.   The unfortunate corruption of the State Courts cannot exist, except for the fact that the agencies put in place to provide oversight, are no longer functioning as intended and *"the fox is watching hen house"*. Those State agencies that are not functioning as intended are the Tennessee Board of Judicial Conduct, the Tennessee Board of Professional Responsibility and the Tennessee Court of Appeals.

31

108.    Plaintiff alleges that these State agencies and "arms of the state" engage in "**Corrupt Racketeering Activities**" (18 USC 1961) and fail to provide "**Honest Services**" (18 USC 1346) in a concerted and entrenched pattern designed to "**protect corrupt interests**" and in doing so, receive some sort of pecuniary compensation, be it bribes or "**kickbacks**" that may take the form of paid vacations known as "**retreats**". The "**bad actors**" of the State may also receive "**retainers without service**", "**interest free loans**", "**future job offers**" or other forms of pecuniary compensation. Plaintiff is a Certified Public Accountant and strong in forensic accounting and identifying fraud, and Plaintiff asserts discovery will prove Plaintiff's allegations true. Plaintiff makes this allegation pertaining to all of the state agencies and "arms of the state" in the following Claims and Statement of Facts.

### Claim and Statement of Facts

*The Board of Judicial Conduct*

109.    Plaintiff alleges that as part of a conspiratorial racketeering enterprise, The Tennessee Board of Judicial Conduct, intentionally ignores valid complaints against judges.

110.    The simple fact that the Board of Judicial Conduct receives on average 1.48 complaints per day, calculated as {[(350+411+404+381 complaints per year)/4 years] / (52 weeks * 5) days}, evidences beyond doubt that there is a serious problem with the judiciary in Tennessee.

111.    As further evidence, Plaintiff asserts that these complaints are not filed lightly nor are they filed after only one unjust decision. Litigants, like Plaintiff initially walk into a court of law expecting a fair and impartial court. At receiving a first unjust ruling, these litigants

32

believe that when they get back into court the next time, they will present evidence to disprove false assertions made by the opposing party, and the court will then rule fairly. It isn't until after several unjust rulings, often occurring over a period of several months, that litigants finally recognize the corruption to which they are being subjected, and file a complaint with the Board of Judicial Conduct.

112.    In Plaintiff's case, the situation described in the above paragraph is exactly what happened to him. It wasn't until the above referenced hearing on February 9, 2016, that Plaintiff finally realized the corruption to which he was being subjected, after which Plaintiff sought the protection of his State government through the Board of Judicial Conduct and his government failed him completely.

113.    Plaintiff suffered through numerous corrupt hearings before finally filing a complaint with the Board of Judicial Conduct. These hearings were heard on March 10, 2015, June 8, 2015, July 1, 2015, August 7, 2015, September 15, 2015, November 3, 2015, December 15, 2015, and February 9, 2016.

114.    Only some of evidence of the validity Plaintiff's complaint to the Board of Judicial Conduct against the Honorable Judge Joe H Thompson is evidenced above. There were numerous other rights violations, and violations of Tenn. Sup. Ct. R. 10, Code of Judicial Conduct made by Judge Thompson against Plaintiff. Plaintiff earlier provided this Honorable District Court with a copy of the complaint he filed with the Board of Judicial Conduct. That document is "exhibit 1" attached to Docket Entry 19 of this case and Plaintiff

hereby incorporates that document as an exhibit to this Amended Verified Compliant supporting the above assertions.

115.    Plaintiff asserts that **"bad actor"** members and agents of the Board of Judicial Conduct are actively engaging in corrupt racketeering activities and intentionally through conspiracy and gross negligence, ignore valid complaints against judges, so as to **"protect"** the **"corrupt" "racketeering activities"** occurring in state court proceedings.

116.    On or about February 26, 2016, Plaintiff properly filed a fifty-six-page complaint (referenced above) against The Honorable Judge Joe H Thompson with the Board of Judicial Conduct. The Board of Judicial Conduct assigned **File No. B16-6458** to Plaintiff's Complaint. In this Complaint, Plaintiff detailed and evidenced the trial court judge's numerous violations of due process, numerous violations of Tennessee Sup. Ct. R. 10 - Code of Judicial Conduct, false statements, and violations of Tennessee statutory code. Plaintiff's complaint was not "mostly of dissatisfaction with a decision, or series of decision made" by the trial court judge. Plaintiff's complaint was about violations of due process and violations of the Judicial Code of Conduct.

117.    In a letter dated March 11, 2016, Plaintiff's complaint was dismissed. In this letter, the Board of Judicial Conduct stated;

> "In deciding whether or not the Board can successfully sanction a judge, the investigative panel must also consider that in order to discipline a judge, the proof of ethics violation must be "clear and convincing" Tenn. Code Ann. § 17-5-308. The investigative panel did not feel such a burden could be met in this case.
>
> **At its core, your complaint appears to be a reflection mostly of dissatisfaction with a decision or series of decisions made by a judge.**

> **The appellate courts, not the Board, generally handle legal questions**. Even if you think a judge has made a wrong ruling, that is not a breach of ethics or a violation of the Code of Judicial Conduct that would ordinarily be handled by this Board.
>
> Accordingly, your complaint has been dismissed and our file has been closed. Nevertheless, the Board of Judicial Conduct thanks you for your interest in preserving the integrity of our judicial system."

118.    In prior public reprimands made by the Board of Judicial Conduct, the Board of Judicial Conduct, has publicly reprimanded judges for exactly the same complaints of which Plaintiff complained.

119.    On average, during the period 2012 through 2016, the Board of Judicial Conduct dismisses ninety-six percent of all complaints filed without taking action.

120.    Case dispositions posted by the Board of Judicial Conduct on their website at https://www.tncourts.gov/node/1367367, prove that ninety-six percent of all complaints filed are dismissed without taking action.

121.    Plaintiff asserts Defendants didn't read his complaint and as active members of a corrupt racketeering enterprise, dismissed Plaintiff's complaint through the false assertion; "*At its core, your complaint appears to be a reflection mostly of dissatisfaction with a decision or series of decisions made by a judge*". Plaintiff's Complaint did not challenge rulings of the judge. Plaintiff's Complaint was about violations of due process and judicial misconduct.

122.    Plaintiff alleges, as a matter of practice and policy, The Tennessee Board of Judicial Conduct, an agency of the State of Tennessee, failed to provide Plaintiff Equal Protection under the law, a right that is guaranteed by the fourteenth amendment of the Constitution of the United States.

35

123. Plaintiff alleges, as a matter of practice and unwritten policy, The Tennessee Board of Judicial Conduct, an agency of the State of Tennessee, fails to provide Equal Protection under the law, and through intentional gross negligence; aided, abetted and caused violations of constitutionally protected rights against Plaintiff.

124. Plaintiff alleges and the evidence on Board's own website proves, that the only complaints upon which the Board acts are complaints filed by members of the legal profession, who are other members of the "Corrupt Racketeering Enterprise". Since the Board **only protects "its own"**, the Board and the State fail to provide Equal Protection under the law.

125. Plaintiff alleges that review of other complaints dismissed, will show a plain pattern of wrongful dismissal of complaints against judges, and that these complaints are dismissed so as to protect a **"Corrupt Racketeering Enterprise"**

126. Since it is a matter of policy and practice by the Board of Judicial Conduct, to not provide equal protection under the law, the Defendant, State of Tennessee is also in violation of the fourteenth amendment of the Constitution of The United States. Review of other complaints dismissed compared the few acted upon will further prove this is true in addition to the evidence already on the Board's website.

127. Due to the fact that the Board of Judicial Conduct's panel of members, overseen by the board chair, to process complaints filed with Defendant Board of Judicial Conduct, intentionally and wrongfully dismiss complaints, The Defendant State of Tennessee, by and through its agents, agencies, and arms of the State, by default, have conspired with the

judges and attorneys complained of, and are equally guilty of the extortion, racketeering, conspiracy, rights violations, subpoena evasion, and deprivation of property that took place in the underlying litigation.

### *The Board of Professional Responsibility*

128.     As stated above, the unfortunate corruption of the State Courts cannot exist, except for the fact that the agencies put in place to provide oversight, are no longer functioning as intended, and *"the fox is watching hen house"*. Another of those State agencies that is not functioning as intended is the Tennessee Board of Professional Responsibility.

129.     Plaintiff alleges that as part of a conspiratorial racketeering enterprise, The Tennessee Board of Professional Responsibility, intentionally ignores valid complaints against attorneys.

130.     Plaintiff asserts that **"bad actor"** members and agents of the Board of Professional Responsibility are actively engaging in corrupt racketeering activities, and intentionally through conspiracy and gross negligence, ignoring valid complaints against attorneys so as to **"protect corrupt racketeering activities"** occurring in and pertaining to state court proceedings.

131.     On or about September 18, 2015, Plaintiff submitted a twenty-five (25) page complaint against Defendant PAMELA ANDERSON TAYLOR detailing numerous violations of the Tennessee Rules of Professional Conduct.  That complaint is attached as **EXHIBIT J**.

132.  To prove his allegations of attorney misconduct by Defendant PAMELA ANDERSON TAYLOR, Plaintiff attached exhibits "A" through "U" to his complaint.

133.  Initially, Plaintiff's complaint was being investigated by Elizabeth C Garber, who was at the time, in the role of Disciplinary Counsel. Elizabeth C Garber was assigned as investigator and requested responses and counter responses to Plaintiff's complaint between the approximate period September 18, 2015, and February 3, 2016.

134.  During the period between September 18, 2015, and February 3, 2016, Defendant PAMELA ANDERSON TAYLOR, ceased her misconduct and began to comply with the Rules of Professional Responsibility.

135.  In a letter dated February 9, 2016, Plaintiff was notified by Steven J. Christopher, Disciplinary Counsel for the Board of Professional Responsibility that the case had been reassigned to him.

136.  In a letter dated March 23, 2016, despite overwhelming evidence of attorney misconduct and numerous violations of Rules of Professional Responsibility by Defendant PAMELA ANDERSON TAYLOR, Plaintiff's complaint was wrongfully dismissed. The letter was signed by Steven Christopher. The letters referenced in ¶ 125,126 above are attached as **EXHIBIT K**.

137.  Subsequent to dismissal of Plaintiff's complaint against Defendant PAMELA ANDERSON TAYLOR to the Board of Professional Responsibility, Defendant PAMELA ANDERSON TAYLOR not only resumed her activities of misconduct, she escalated them

and became completely unresponsive to Plaintiff's repeated requests to comply with a discovery order.

138.    Plaintiff alleges, that like the Board of Judicial Conduct, The Board of Professional Responsibility does not provide "**Equal Protection under the law**" and citizens and litigants like Plaintiff are left to be preyed upon by corrupt attorney officers of the court.

139.    Plaintiff further alleges that when a corrupt attorney is a member of the "**Corrupt Racketeering Enterprise**" and a member of a powerful law firm like Stites and Harbison, the State, through its arms and agents refuses to provide Equal Protection under the law.

140.    Due to the fact that the Board of Professional Responsibility, through its Disciplinary Counsels, are required by statute and duty to process complaints filed with Board of Professional Responsibility, and then intentionally and wrongfully dismiss complaints, and because the Defendant State of Tennessee has a Fiduciary Duty to protect its citizens, The Defendant State of Tennessee, by and through its agents, agencies, and arms of the State, by default, have conspired with the attorneys complained of, and are equally guilty of the extortion, racketeering, conspiracy, rights violations, subpoena evasion, and deprivation of property that took place in the underlying litigation.

### *The Tennessee Court of Appeals at Nashville*

141.    And yet again, as stated above, the unfortunate corruption of the State Courts cannot exist, except for the fact that the agencies put in place to provide oversight, are no longer functioning as intended, and here again is another "*fox is watching hen house*": the Tennessee Court of Appeals.

142.    As part of an obvious **"Racketeering Scheme"**, and in conspiracy with Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, various appellate court judges and clerks of the Tennessee Court of Appeals, have made every effort to deny Plaintiff a fair appellate hearing.  The corrupt actions taken by the Court of Appeals, include wrongful dismissal of Plaintiff's Petition for Recusal Appeal, several attempts to cause his Rule 3 Appeal to be dismissed, concealment of court records, ignoring and encouraging attorney misconduct, issuing an appellate court order with an intentionally misleading title, and an attempt at entrapment of Plaintiff for Contempt of Court.  Not only are these violations of Plaintiff's constitutionally guaranteed right of due process, but these are actions of a **"Corrupt Racketeering Enterprise"** intended to deprive Plaintiff of his property, and to conceal the **"Racketeering Activities"** that Plaintiff suffered in Circuit Court.

***Wrongful Dismissal of Plaintiff's Rule 10 Appeal, Concealing Records***

143.    On or about August 22, 2016, in the Tennessee Supreme Court Building, Plaintiff filed a Petition for Rehearing in the Tennessee Court of Appeals, Case No. M2016-01731-COA-T10B-CV.  The Court of Appeals, correctly determined that Plaintiff's filing was not a Petition for Rehearing but was instead Petition for Recusal Appeal and **ordered a response from the opposing party**.

144.    Plaintiff alleges that upon knowing **"elite members"** of the **"Corrupt Racketeering Enterprise"**, (Stites and Harbison attorneys) were involved in Plaintiff's recusal appeal, the

40

judges and clerks began taking steps to conceal the record and dismiss Plaintiff's recusal appeal. The evidence of this fact is obvious.

145.  **EXHIBIT L** attached, is the document history of Plaintiff's Recusal Appeal case. The document history plainly shows a "Response To Order" filed on September 8, 2016, filed by Plaintiff.

146.  **EXHIBIT L** plainly shows that the document is not available for download or public viewing as are the other records.

147.  The "Response To Order" filed on September 8, 2016 is actually titled as "Supplemental Petition for Recusal Appeal And Response to Appellate Court Order Dated September 1, 2016." This document is attached as **EXHIBIT M**.

148.  Plaintiff alleges the appellate court judges and clerks of the court, in conspiracy with Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD and/or members of the law firm Stites & Harbison, intentionally excluded this document from being public record, because it evidences the "**Corrupt Racketeering Activities**" of PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD and Judge Joe H Thompson. The appellate court judges also refused to consider this supplemental pleading.

149.  Plaintiff alleges exclusion of this document was no mere error of the appellate court clerks because it is part of a clear pattern of concealment as further evidenced below.

150.  Also not properly included in the record and available for download and public viewing is a document titled "Response To Appellant's Petition for Rehearing Before A Different Judge", attached as **EXHIBIT N**, prepared by Defendants, PAMELA ANDERSON

41

TAYLOR and BRENTON HALL LANKFORD. and filed on September 30, 2016. **EXHIBIT L** plainly shows this document not available for download and public view.

151.   Plaintiff alleges this document was concealed from public view for the same reasons stated in ¶ 147 above.

152.   Plaintiff further alleges that these documents; **EXHIBITS M** and **N**, intentionally concealed from public view, together with Plaintiff's "Appellant's Response To Wife's Motion To Dismiss Husband's Rule 10B Petition For Recusal Appeal" filed on September 12, 2016 prove that his Petition for Recusal Appeal should not have been dismissed.

153.   Plaintiff alleges, it is a common corrupt practice of the Court of Appeals to rely on obviously false statements and misrepresentations by attorneys engaging in racketeering activities, as a means to wrongfully dismiss pro se cases, in a conspiratorial and concerted effort to protect **"corrupt interests"** of **"Racketeering Activities"** that occur in state courts on most any given day.

154.   On October 6, 2016, the court of appeals issued an order dismissing Plaintiff's Petition for Recusal Appeal, stating that Plaintiff's appeal "appears to be untimely" which is not true. The evidence will show that in fact, Plaintiff's recusal appeal was in fact timely filed. Any non-corrupt judge or reasonable person would agree.

155.   In its order dismissing Plaintiff's recusal appeal, the appellate court also stated; "… husband has filed a Tenn. R. App. P. 3 notice of appeal, Appeal M2016-01765-COA-R3-CV. Thus the Tenn. R. App. P 3 appeal is now the proper method to appeal the recusal order. This "flawed logic" implies a Rule 3 appeal precludes a Rule 10 appeal, which is

42

obviously a false and failed assertion used as further unjust reason to dismiss Plaintiff's recusal appeal.

156.     Even if it were true, that Plaintiff's recusal appeal was not timely filed, pursuant to Rules of Appellate Procedure Rule 2, the court of appeals can suspend any of the appellate court rules in the interest of expediting upon any matter.

157.     According to simple logic and common sense, "Why would an appellate court desire to subject itself to a voluminous record in a Rule 3 appeal, when the court could have more simply disposed of the Rule 10 appeal through a simple suspension of rule?

158.     Plaintiff asserts this corrupt decision was made in an effort to subject a pro se litigant to the "many" and "difficult to satisfy" rules pertaining to a Rule 3 appeal, and also to unnecessarily extend the litigation, thereby increasing the revenues paid to Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD by the opposing party and then later assign those costs to Plaintiff as "punishment" for his tireless pursuit of justice, another method of extortion by "**bad actors**", "**racketeers**" and "**arms of the state**".

***Attempts to wrongfully dismiss Rule 3 Appeal, extortion, and concealment of records***

159.     Having been wrongfully denied a fair hearing of his Petition for recusal appeal, Plaintiff then turned to efforts of have his Rule 3 appeal as of right heard.

160.     Having no need, and only as a matter of creating unnecessary cost and burden on Plaintiff, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, counter-designated the record for appeal to include all documents, all

transcripts, all exhibits, requests for instruction, summons and trail briefs. This document is attached as **EXHIBIT O**.

161.    This is one of many of the "Racketeering Scams" Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD use to cheat Pro Se litigants out of a fair appellate hearing.    Although Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD had no use whatsoever for many of the transcripts counter designated, they counter designated them in hope that Plaintiff could not afford the transcripts, or might forget to include them in the record upon which circumstance they would move for dismissal, a motion Plaintiff asserts the Court of Appeals would happily grant in a plain denial of justice. The intent of their counter designation is plain to see when reading the document.  Plaintiff asserts examination of court records, in the circuit courts and appellate court will prove this assertion true.

162.    Since Plaintiff's petition for recusal appeal was more than fifty pages alone, and he was instructed to raise recusal issues in his Rule 3 appeal, and because appellant briefs are limited to fifty pages, Plaintiff's sought the appellate court's permission to exceed the brief page limitation. True to form, the Court of Appeals denied Plaintiff's request. In his Motion to Extend Brief Page Limitation, Plaintiff made the appellate court aware that he intended to raise more than 30 issues of error and wrongdoing that occurred in the trial court. The appellate court simply denied Plaintiff's motion without explanation.

163.    For the reasons stated above, Plaintiff asked the appellate court judges to recuse themselves based on an appearance of bias, a reason for which case precedence and the

judicial code of conduct say should be readily granted. Plaintiff asserts that if a litigant wants a judge to step down based on an appearance of bias, a judge should readily do so, and the only reason a judge would want to hang onto to a case, is to subject the litigant to more "Corrupt Racketeering Activities" which is true in this case. Plaintiff also asserts the appellate court judges refused to recuse so they could continue protect and hide corrupt trial court proceedings.

164.    Upon the appellate court's refusal to recuse, Appellant promptly requested a Court Review of the recusal denial.

165.    In a Court Review Opinion, the appellate court effectively "instructed" Plaintiff to restrict his issues to three or four, which Plaintiff asserts is a violation of a right to be heard. Plaintiff's thirty plus issues requiring appellate review were not "sundry issues", they were substantive matters of fraud, abuse of process, and serious errors of court that required appellate review.

166.    The Appellee's Brief was originally due to be filed on March 10, 2015. Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, requested an extension until March 31, 2017, which the appellate court granted.

167.    Plaintiff alleges the motion for extension to file, was just another very obvious part of their pattern of obvious "Racketeering Schemes" intended to cheat Plaintiff out of a fair appellate hearing, the appellate court's order granting Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD's motion for extension of time was issued

with an intentionally misleading title. The title of this order is "**Order Related to Extension**

**– Granted**". This "Order" is attached as **EXHIBIT P**.

168.    The title of this "Order" was obviously misleading considering the detail of its contents

which are as follows;

> Pursuant to Tenn. R. App. P. 6, the appellant filed a cash bond in the
> amount of $1000. A $1000 cash bond is considered sufficient in the
> absence of specific direction from the court as to some other amount.
> Tenn. R. App. P. 6, *Advisory Commission Comments*. **The clerk has
> notified the court that, due to the numerous filing in the appeal, the
> costs on appeal already exceed $1000. Accordingly, the $1000 cash
> bond is no longer sufficient** to secure the payment of the costs as
> required by Tenn. R. App. P. 6, and the appellant will need to file an
> additional cash bond.
>
> In addition, the appellee has filed a motion requesting a twenty-one day
> extension of time within which to file her brief. The appellant opposes
> the motion. The court finds good cause to grant the extension of time. It
> is, therefore, ordered that the time for filing the appellee's brief is
> extended through March 31, 2017.
>
> **It is further ordered that the appellant shall file an additional $1000
> cash bond with the clerk of this court within fourteen (14) days
> following the entry of this order**.

169.    Plaintiff alleges that this "Order" was plain and simple extortion and an attempt to cheat

Plaintiff out of a fair hearing.

170.    After the issuance of the order, the total court costs assessed in the case was $1,041.00.

Attached is **EXHIBIT Q** which is a detailed schedule of court costs.  Subtracting out the

fee for Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL

LANKFORD's "Motion for Extension to File – Brief" charge and subsequent charges, the

total costs assessed prior to the extension motion was $948.

46

171.   Plaintiff alleges Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD conspired with the appellate court judge(s) to file an unnecessary motion to extend time to file, so as to drive costs to exceed the original $1,000 cost bond posted by Plaintiff.

172.   Further considering that all of the record had been received, and that subsequent costs would be minimal and nowhere near $1,000, Plaintiff asserts it was a abuse of discretion to order Plaintiff to post an additional $1,000 cost bond.

173.   Plaintiff alleges, when you put all the facts together, (1) the fact of a misleading title of the order, (2) Defendant's motion causing costs to exceed $1,000, (3) the fact that the Court of Appeals wrongfully dismissed Plaintiff's recusal appeal, (4) the fact the Court of Appeals would dismiss Plaintiff's appeal if Plaintiff didn't post the additional $1,000 within 14 days, (5) the additional facts evidencing concealment of the record from the public (stated above and as further evidenced below), (6) the future motion to dismiss appeal that included false statements and misrepresentation of fact (evidenced below), when one puts all of these facts together, the evidence is plain and obvious that the above order was part of a "Racketeering Scheme" to deprive Plaintiff of a fair appellate hearing and to deprive him of property. This is especially true when further considering the clear grounds for appeal stated in Plaintiff's Appellant's Brief.

174.   Furthermore, Plaintiff alleges that the appellate court judges have already prejudged the case, and that Plaintiff will lose, and that he will be responsible for all the court costs with none being allocated to the opposing party.

175. Since Plaintiff was intelligent enough to see through the above "Racketeering Scheme" of Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD in conspiracy with the appellate court judge(s), Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD enacted their next "Racketeering Scheme" which was to have Plaintiff's appeal dismissed through sanction and they filed a Motion to Dismiss that included intentionally false statements and misrepresentations of fact.

176. Plaintiff filed a response to Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD's motion to dismiss that evidenced their misconduct of making false statements and misrepresentations of fact. Plaintiff's response included exceptionally strong arguments of law and he was fortunately able to avoid yet another wrongful attempt at dismissal.

177. In conspiracy with Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, the Court of Appeals Judges and clerks of the court conspired to conceal the record that evidenced the misconduct of Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

178. On March 3, 2017, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD filed three documents as follows;

- Appellee's Motion for Extension of Time To File Brief
- Appellee's Motion To Dismiss Appeal
- Memorandum In Support of Appellee's Motion To Dismiss Appeal

179.  On March 4, 2017, Plaintiff emailed Defendant PAMELA ANDERSON TAYLOR giving her notice that he was going to file a motion to sanction due to the false statements made in her Memorandum In Support of Appellee's Motion to Dismiss Appeal.

180.  Approximately **three hours** after Defendant PAMELA ANDERSON TAYLOR received the email in ¶ 169 above, Defendant PAMELA ANDERSON TAYLOR emailed a document to Plaintiff titled; "Correction To Memorandum In Support of Appellee's Motion To Dismiss". This "correction" evidenced the fact that Plaintiff did in fact include a "Standard of Review" required by the appellate rules of procedure for brief content.

181.  Plaintiff alleges Defendant PAMELA ANDERSON TAYLOR, intentionally made a false statement and that in three hours, she could not have possibly scoured Plaintiff's 160 page Appellant's Brief, found her error, prepared a correction, and filed it with the court during that brief time.

182.  Since Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD's Memorandum In Support of Appellee's Motion To Dismiss Appeal contained a fraudulent statement, Plaintiff alleges the appellate court judge(s) and clerk(s) of the court conspired to conceal and exclude this document from the appellate court record. A copy of this document is attached as **EXHIBIT R**.

183.  Attached also is **EXHIBIT S** which is a print out of the case document history from the appellate court's website. As evidenced in **EXHIBIT S**, there are only three documents shown as filed on March 3, 2016.  Those documents are;

- Appellee's Motion for Extension of Time To File Brief

- Appellee's Motion To Dismiss Appeal
- Correction To Memorandum In Support of Appellee's Motion to Dismiss Appeal

184. Plaintiff asserts that the appellate court judge(s) and appellate court clerk(s) have conspired with Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD and intentionally concealed and not included **EXHIBIT R** in the record.

185. Also previously not included in the appellate court record as of August 7, 2016 was Plaintiff's "Memorandum Supporting Response To Motion To Dismiss And Motion To Amend And For Extension of Time". Attached as **EXHIBIT T**.

186. Plaintiff asserts **EXHIBIT T** was not properly included in the record and available for public viewing because it evidences the misconduct of Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

187. On March 9, 2017 at approximately 9:00 AM, in the Tennessee Supreme Court Building, Plaintiff complained to Court Clerk Lisa March that three documents were not properly included in the Record. Those documents being **EXHIBIT R**, **EXHIBIT T**, and "Plaintiff's (Appellant's) Response To Appellee's Motion To Dismiss Appeal And Appellant's Motion To Amend And For Extension of Time".

188. Court Clerk Lisa Marsh thanked Plaintiff for pointing out the error of the Clerk's Office and assured him all the documents would be uploaded for online access. Despite Plaintiff's request that all of these documents be made available online, **EXHIBIT R** is still not properly entered into the record and available for public viewing or download. Plaintiff asserts this is intentional concealment of court records, so concealed from the pubic as to

50

hide the misconduct of Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

189.     In further evidence of the Court of Appeals conspiracy to conceal court records, Plaintiff also attaches **EXHIBIT U**, which is his "Motion for Clarification of Appellate Court Online Case History and Document Access." Not surprisingly, this document evidencing the Court of Appeals conspiracy to conceal court records, is also not included in the record and appellate court document history although the court issued an order in response to **EXHIBIT U**. This order is included as the last page of **EXHIBIT U**.

190.     Considering the types of documents excluded, while other documents are not excluded, it is obvious that the Court of Appeals judge(s) and Court Clerk(s) are conspiring to conceal court records.

*Attempt at entrapment*

191.     During appellate court proceedings, Plaintiff noticed a "friend suggestion" on his personal Facebook page for Jim Hivner. Mr. Jim Hivner is the Clerk of the Appellate Courts. Attached is **EXHIBIT V** which is a screen shot of Plaintiff's personal Facebook page.

192.     Plaintiff alleges that Mr. Hivner, or one of the other appellate court staff or judges, used that Facebook account to view Plaintiff's personal Facebook page, in an effort to find evidence of Plaintiff speaking disrespectfully about the Court of Appeals which is something Plaintiff would never do out of respect for the judiciary.

193. Plaintiff is not friends with Mr. Hivner and Plaintiff does not have any mutual friends with Mr. Hivner. Plaintiff alleges Mr. Hivner would not have been suggested as a friend by Facebook algorithms, except for the fact that he searched Plaintiff's name and viewed Plaintiff's Facebook page digging for evidence to use against Plaintiff.

194. Plaintiff asks; "Why would an appellate court staff member seek evidence of complaints against the judiciary, except for the fact the appellate court staff knew Plaintiff was being treated wrongfully?"

195. Plaintiff asserts to deny justice to a litigant, and then seek out evidence of that litigant complaining in a public forum is a form of entrapment.

196. Plaintiff asserts this is a common practice used by "Racketeering Enterprises" to silence complaints of wrongful treatment of litigants, hold them in contempt of court, and potentially fine or incarcerate a litigant for speaking out against injustices that never should have occurred in the first place.

## Requested Relief

197. Summary of damages suffered by Plaintiff;

## Summary of Damages and Valuations

| Description | Damage Suffered |
| --- | --- |
| Fraudulently Awarded Attorney Fees | 4,134 |
| Fraudulently Awarded Escrowed Attorney Fees | 1,406 |
| Income During Pendency 19 months 8,800/month | 167,200 |
| Business Valuation 50% | 150,000 |
| Harm From Physical and Emotional Distress | 250,000 |

52

| Description | Annual Damage Suffered | Approximate Present Value of Damage 10 years 5% discount rate |
|---|---|---|
| 10 Year Loss of Business Income | 100,000 | 772,173 |
| Income from patent pending product $821,000 ÷ 3 yrs | 273,667 | 2,113,181 |
| **Total Damages Suffered by Plaintiff** | | $ 3,458,095 |

# Additional Estimated Damages

Litigation costs, parking, postage, printing, labor, etc. $........
Time off from work $ ........

# Additional Statement of Facts

### *Board of Judicial Conduct*

198.    Below is a summary of case dispositions reported by the Board of Judicial Conduct;

| Disposition | 2012-13 | 2013-14 | 2014-15 | 2015-16 | Total |
|---|---|---|---|---|---|
| Dismissed, compliant about ruling | 209 | 253 | 228 | 255 | 945 |
| Dismissed, no jurisdiction | 15 | 8 | 23 | 9 | 55 |
| Dismissed, inadequate factual basis | 99 | 98 | 105 | 93 | 395 |
| Dismissed with warning | 11 | 19 | 19 | 3 | 52 |
| Dismissal after full investigation | 0 | 1 | 1 | 0 | 2 |
| Deferred dicipline agreement | 1 | 1 | 1 | 2 | 5 |
| Private Reprimand | 8 | 1 | 3 | 6 | 18 |
| Public reprimand | 5 | 4 | 2 | 6 | 17 |
| Public censure | 1 | 3 | 2 | 0 | 6 |
| Other | 0 | 5 | 4 | 5 | 14 |
| Retired complaint, no longer a judge | 1 | 17 | 15 | 2 | 35 |
| Cease and Desist Order | 0 | 1 | 1 | 0 | 2 |
| | 350 | 411 | 404 | 381 | 1546 |

199. Below is a percentage analysis of case dispositions reported by the Board of Judicial Conduct;

| Complaint Disposition | Complaint Count | % of Total |
|---|---|---|
| Dismissed, compliant about ruling | 945 | 61% |
| Dismissed, no jurisdiction | 55 | 4% |
| Dismissed, inadequate factual basis | 395 | 26% |
| Dismissal after full investigation | 2 | 0% |
| Retired complaint, no longer a judge | 35 | 2% |
| Dismissed with warning | 52 | 3% |
| Cease and Desist Order | 2 | 0% |
| Deferred dicipline agreement | 5 | 0% |
| Other | 14 | 1% |
| Private Reprimand | 18 | 1% |
| Public censure | 6 | 0% |
| Public reprimand | 17 | 1% |
| Grand Total | 1546 | 100% |
| | | |
| Total Dismissed Without Disclipine | | 96% |

200. Below is a graphical representation of case dispositions reported by the Board of Judicial Conduct;



**Case Dispositions Q2 YTD 2012-2016**

201. Below is a summary description of public disciplinary actions taken against judges by the Board of Judicial Conduct. As evidenced below, substantially all complaints acted upon by the Board of Judicial Conduct are only complaints filed with the Board of Judicial Conduct by members of the legal profession (attorneys, judges, courthouse employees).

| Year | Summary of Reason For Public Disciplinary Action |
|------|--------------------------------------------------|
| **2016** | |
| Anderson Jr., Bill | Used office to secure friends release from jail |
| Davenport, Donna | Attorney complaint - notified subsequent judge of his biases |
| Cross, Michael | Relationship with attorney not disclosed |
| Walker, Allegra | Ex parte communication to Dist. Atty General |
| Grimes, Ray | Relationship with attorney (spouse) not disclosed |
| **2015** | |
| Atherton, Jeffrey | Dismissed complaint for same sex divorce |
| Holley, Reese | Ordered public service and donation to specified charities |
| Newell, Robert | Attorney complaint - court misconduct |
| **2014** | |
| Moreland, Casey | Secured release of attorney friend's client from jail |
| Soloman, Carol L. | Relationship with attorney not disclosed (campaign treas.) |
| Ballew, Luann | Changed child's first name against objection of parents |
| **2013** | |
| Kittrell, Connie | Dismissal of citation issued to family member |
| McKenzie, James W. | Misconduct with spouse of court employee |
| Wilson, John K. | Injudicious treatment directed at particular law firm |
| Baliles, Billy D. | Altered child custody without due process and ex parte communications |
| **2012** | |
| Gasaway, John | Judge's wife left law firm, refused to recuse, posted recusal denial publicly |
| Houston, Johnny D. | Publicly stated he wished it could "pull a trap door" send them straight to hell" |
| Randolph, Sheridan C. | Held hearing on defendant in case where judge was the victim |
| Smith, Jimmy C. | Presided over an action involving his son |
| Bell, John A. | Delay of bonds set in DUI cases, while serving in the military in Germany |
| Jackson, A. Andrew | Holding parties in contempt without hearing or counsel |
| Moon, Jr., Robert L. | Two attorneys and judge complaint - ordering incarceration without Due Process |

55

## 2011

| | |
|---|---|
| Zachary, Ronnie | Excessive punishment |
| | Judge and Atty. complaint - inappropriately summoned atty., questioned other |
| Bales, David | judge in front of media |
| Baumgartner, Richard R. | Suspension for felony charge |
| Hamilton, Jim T. | Executed ex parte orders without approval of DA |
| | Used office to collect funds and display "Citizens Heritage Display" in courtroom |
| Taylor, James | lobby |

## 2010

| | |
|---|---|
| Dumas, Gloria | Hired daughter as court officer |
| McKenzie, James W. | Judge as landlord permitted attorney renter to appear in his court |
| Russell, F. Lee | Excessive delay in entering orders |

## 2009

| | |
|---|---|
| Blackett, Carolyn Wade | **Failed to rule for seven years while statutes require sixty days to one year** |
| | Attorney complaint - threatened contempt if atty. did not appear, refused |
| Moore, Durwood G. | substitute counsel |
| | Ordered drug test on courtroom spectator was neither litigant, defendant |
| Moore, Durwood G | or a person w/ court business |
| Potts, Terry W. | Ordered to cease and desist political activities for non-judicial position |
| Rich, Charles | Attorney complaint - Judge refused to rule on custody case for months |
| Walton, John W. | Judge made demeaning statements in open court about Gen. Sessions Clerk employees |

## 2008

| | |
|---|---|
| Bell, John A. | Judge appointed probation service owned by wife |
| Darby, Ronald E. | Judge's suspension ordered on indictment for two counts of Official Misconduct |
| Glover, Burton D. | Judge received corporate donations in excess of $1,000 |
| Humphrey, Dennis W. | Incarcerated a person without personal service of process |
| Jackson, A. Andrew | Jailed juveniles who judge thought might be illegal aliens |
| Rich, Charles | **Refusal to make findings of fact conclusions of law delaying ability to appeal.** |

202.    As noted in the above charts and graphs, the Board of Judicial literally dismisses

hundreds of cases each and every year. These facts show that the only complaints acted

upon by the Board of Judicial Conduct are complaints made by members of the legal profession.

### *Obvious Perjury*

203.    As one of many examples of perjurious testimony made by Katherine Wise Gentry is her testimony regarding who desired divorce in the underling litigation. The below example is only one of many. Katherine Wise Gentry also gave obvious perjurious testimony about her inability to provide Pendente Lite Support (which was necessary because she wrongfully terminated Plaintiff's employment in violation of statutory injunction). Katherine Wise Gentry also gave material perjurious testimony about who came up with idea, and who created their patent pending product sold around the world.

204.    Katherine Wise Gentry perjuriously first testified she was the one who desired divorce. Then she changed her testimony and stated both spouses desired a divorce. The facts prove beyond any doubt Katherine Wise Gentry's perjury and that it was Husband who desired divorce caused by Katherine Wise Gentry's serious anger management issues and that more than anything Katherine Wise Gentry desperately wanted to preserve the marriage. Katherine Wise Gentry's perjurious testimony included the following;

> Q. Ms. Gentry, one of your statements was Mr. Gentry belittled you, chased you around the house. Sounds like he was a pretty awful person, wasn't he?
> A. **I can testify that he was.**
> Q. **So isn't it true that Mr. Gentry was the one that wanted out of the marriage and not yourself?**
> A. **We both wanted out of the marriage.**
> Q. **Isn't it true that Mr. Gentry made the final decision to get a divorce?**

A. **I filed for divorce.**
MR. GENTRY: **I would say that the witness is being non-responsive when I asked wasn't it Mr. Gentry who made the final decision for divorce.**
THE COURT: **And she answered she filed for divorce.** If you're asking me to require her to be responsive, I'm telling you she's responsive. Next question.
BY MR. GENTRY:
Q. **So your answer is you were the one that made the final decision to get divorced; is that correct?**
A. **Yes. I filed for divorce.** (*May 2, 2016 Tr. p. 161 - 162*)

205.   As noted above, Katherine Wise Gentry plainly states it was her final decision to divorce and falsely affirms Husband was a 'pretty awful person'. As the evidence shows, Katherine Wise Gentry perjuriously states "*We both wanted out of the marriage*". Katherine Wise Gentry's perjurious statement becomes obvious as is evidenced in her own email correspondence to Husband. Katherine Wise Gentry's testimony during Cross Examination continued as follows;

BY MR. GENTRY:
Q. Do you remember this e-mail exchange?
A. Yes.
Q. So on June 23rd, I had asked if you would bring by the stock certificate and you didn't respond. You instead responded I haven't unpacked everything yet. My corporate book is at the bottom of one of them. I'll check the one in storage as soon as I get a chance. So why didn't you tell Mr. Gentry you weren't going to give him the stock certificate?
A. As we were getting a divorce, I don't feel a lot of obligation to give him information.
Q. And Mr. Gentry continued to ask for it several times, When do you think you'll get a chance. Can you look today? This is important to me. I feel like you're ignoring it. **And then from there, Mr. Gentry responded and said, "From the lack of response, it's pretty obvious you don't care or love me. I'm sorry our marriage can't work out. You can't communicate sufficiently. Since you've already paid for**

your lawyer, check with your attorney to see what the next steps are. "Do you remember that communication?

A. **Yes**.

Q. **And then you responded back to Mr. Gentry and said you loved him very much, wished that there was anything that we could do about saving the marriage. And then you asked, "So is this your final decision about getting a divorce? I'm hoping it's not and you'll give us a chance a different way. I still think our marriage can be saved." Do you remember saying that as well?**

A. Correct. **Yes**.

Q. **So then in my response, I said, "Yes. This is my decision. I can't be married to someone who doesn't care about me. I can't be married to someone who is slowly killing me." Mr. Gentry said, "Yes. This is my final decision." So isn't it true that it was Mr. Gentry who wanted the final divorce, not yourself?**

A. And you had said that once before in the last counseling session. So again, I will repeat what I said before. **Both of us wanted a divorce.** As someone who takes marriage seriously, I don't want to be in a terrible marriage, obviously, but I do take marriage seriously. And if there's steps you can take to correct that and fix it, I wanted to do that. I left everything on the table. Did everything that I could. And I don't feel bad about it. (*VOL XXXIV v. 2, May 2, 2016 Tr. p. 237 - 239*)

206.   As evidenced in this email, between Plaintiff and Katherine Wise Gentry, Katherine Wise Gentry asked Husband to confirm if this was his final decision to divorce which he affirmed.   The evidence also proves Husband's stock certificate was maliciously taken by Katherine Wise Gentry.

In detail, Husband stated in his emails to Katherine Wise Gentry as follows;

> **Email dated June 23, 2015**
> Are you coming by the store today? If so, can you bring by the stock certificates?
> If not, do you mind if I stop by your house and pick them up?
> Thanks, (*EX Vol III p. 582*)

Katherine Wise Gentry responded;

> **Email dated June 23, 2015**

I haven't unpacked everything yet. My corp book is prob at the bottom of one of them. I'll check the ones in storage as soon as I get a chance. (*EX Vol III p. 582*)

Husband sent a follow up email to which Katherine Wise Gentry did not respond;

**Email dated June 23, 2015**
When do you think you will get a chance? Can you look today?
I really want to give Danco his certificate and I'd like to have mine as well. (*EX Vol III p. 581*)

Husband sent another follow up email the next day again to which Katherine Wise Gentry also did not respond;

**Email dated June 24, 2015**
This is important to me and I'm feeling like you're ignoring this. Can you please take care of this today? (*EX Vol III p. 581*)

207.    In frustration of obvious bullying by Katherine Wise Gentry, Husband then sent an email instructing Katherine Wise Gentry he wanted to move forward with the divorce and stated;

**Email dated June 25, 2015**
**From the lack of response on this it is pretty obvious you don't love or care about me.** I'm sorry our marriage can't work out. I guess it should be pretty obvious to you now that we cannot communicate sufficiently to resolve even minor differences.

**Since you have already paid for your lawyer, please check with your attorney to see what the next steps are.** Please also ask your attorney to draft an MDA for my review.

If you have other thoughts on how to proceed with the divorce, I welcome your input. (*EX Vol III p. 581*)

Katherine Wise Gentry responded to Husband's email and stated;

**I love and care about you very much. I wish desperately that you felt the same about me. I feel that if you had some time alone in the house, without Danco there to entertain you, that you could have the time to think more about what you might be missing. The timing never seems to work out very well for me for much of anything, this**

**included. Me leaving, as I've said a dozen times, was to try to wake you up. <u>It was a desperate attempt to save us, and it's what I want more than anything.</u>** As you say, if something doesn't work, try something different. After spewing lengthy emails at you, I decided to keep them shorter and send ONLY positive loving messages. You asked me to stop that, too, said it made you uncomfortable. **Now I'm trying to leave you alone, and you say I must not love or care about you. I wish more than anything that we could try a date. No topics of conversation about anything heavy, just some time together. We can't do that with Danco here. Well, we could if you wanted to. I'm sure he would be fine with it.**
**<u>So is this your final decision, the one you told Deb you had to think about? I'm hoping it's not</u> and that you will give this a chance a different way. I still think our marriage can be saved.** (*EX Vol III p. 581*)

208.   In analyzing Katherine Wise Gentry's above statement, there are several important facts

to note.

1.   Katherine Wise Gentry does not mention Husband's stock certificates that she has maliciously taken possession of.
2.   Katherine Wise Gentry states she loves and cares about Husband.
3.   Katherine Wise Gentry states if Husband were alone in the house, he might realize what he is missing.
4.   Katherine Wise Gentry states the timing never seems to work out for her for much of anything.
5.   Her leaving was a "desperate attempt" to save the marriage.
6.   She wants to preserve the marriage more than anything.
7.   Her leaving Husband alone causes Husband to say Katherine Wise Gentry doesn't love or care about him.
8.   She asks if this is Husband's final decision and that she hopes it is not.

In response to Katherine Wise Gentry's above email, Husband responded stating;

**I had to ask you five times about getting Fern back, I still have no response about stock certificates**. You really don't care about me. Not really. I'm guessing you **are using situations like this to hurt me and that is not love**.

61

When it comes to settling differences of opinion expecially (sic) when it is about Logan or you being meant (sic) to me, we are INCAPABLE of communicating and resolving the matter.
**Yes, this is my final decision. I can't be married to someone who doesn't care about me.** I can't be married to someone who is slowly killing me with stress.
**I loved you once but now I only feel hurt in our marriage at every turn.** *(EX Vol III p. 581)*

During Husband's Direct Examination testimony, he testified as follows;

MR. GENTRY: So after Kathy moved out, I asked her several times, and we saw that in the evidence with Ms. Gentry, where **I asked her several times to return them (stock certificates).** Because of that, **it just felt like bullying. She's using it as a form of control over me to try to preserve the marriage.** And I was fed up with it and said, you know**, I'm done with this. I'm not going to be bullied anymore. I'm done with this marriage.** And it was at that point shortly thereafter that Ms. Gentry, I believe, she went into my e-mail account and deleted (emails). There was a lot of conversations about ownership of the business. *(VOL XXXV v. 3, May 3, 2016 Tr. p. 336)*

209.    The evidence and testimony plainly show that in a misguided attempt to preserve the marriage, Katherine Wise Gentry took possession and refused to return Husband's stock certificate. It was because of Katherine Wise Gentry's bullying behavior related to her anger management issues, that Husband made the final decision to effect a divorce from Katherine Wise Gentry.    Katherine Wise Gentry's Cross Examination during the final hearing continued as follows;

**Q. It doesn't sound like you wanted a divorce. You said, "I love you and care about you very much. I wish desperately that you felt the same about me. I wish we had some time alone in the house, that you have had the time to think about what you might be missing." Wasn't it just trying to make Mr. Gentry lonely as a way to try to save the marriage?**

62

A. **Not necessarily.** Again, my effort was to be able to sleep at night and knowing I left everything on the table. It wasn't as any sort of punishment. It was just a general respect for marriage. No, I don't want to be in a marriage that's bad and painful. But I'm also not going to throw something away without checking all the boxes of things that I should have done.

THE COURT: All right. Are you wanting to make that an exhibit?

MR. GENTRY: Yes, sir, Your Honor.

THE COURT: That will be Exhibit No. 30. (*VOL XXXIV v. 2, May 2, 2016 Tr. p. 239 – 240*)

210. During the final hearing on May 3, 2016 Husband testified about Katherine Wise Gentry's severe anger management issues that were escalating to violence and evidenced Katherine Wise Gentry's perjurious statement that both spouses desired divorce from each other when in fact Husband desired divorce while Katherine Wise Gentry "desperately" wanted to preserve the marriage.

Husband's testimony continued as follows;

This next e-mail chain in here, Ms. Gentry says I'm desperate. This is dated June of 2014. She says she's desperate to try something else. **"I'll say it again. It's no secret. I want to fix things."** She goes on to say, **"I am willing and it's what I want more than anything."** She said I forgive her for snapping at me, which isn't true. It's not important. What's most important in here is she says, "You want to talk about it. It's over. There's room for mistake and forgiveness. **I'm not saying it's okay that I snapped at you. Something was weighing on me. I lost myself for a second. In general, it's rare that I do that now, but you are still so raw from it and I take responsibility for that." And what she's referring to being raw from it, it happened a lot that she would just go off and freak out about nothing.**

She goes on to say, **"I'm going to fix this and I want to be married to you. My steadfast goal is to continue to work on myself. I have an intensive session planned with Kathy, who will be working on me holding myself accountable."** (*VOL XXXV v. 3, May 3, 2016 Tr. p. 349 - 350)*

Husband's testimony further continued;

> This next one (email evidence), Ms. Gentry says, **"I love you too much. It just broke my heart. It destroyed me you didn't want to fight for it as much as I did. I felt thrown away like garbage."**
> And I think that's the whole issue of the divorce is that she felt thrown away like garbage. And she became angry because of it and just did everything she could to destroy me. She felt like I was destroying her. That's just when everything went bad after that. (*VOL XXXV v. 3, May 3, 2016 Tr. p. 350*)

211.    The evidence Husband presented at trial, proved beyond any doubt that it was Husband who wanted the divorce because of Katherine Wise Gentry's anger management issues. The evidence presented at trial proved beyond any doubt that Katherine Wise Gentry materially perjured herself about who wanted the divorce and grounds for divorce. The evidence, plainly shows that it was Katherine Wise Gentry's anger issues that caused her to lash out at Husband and do everything she could to destroy him. The evidence plainly shows that Katherine Wise Gentry "desperately" wanted to preserve the marriage. Katherine Wise Gentry's material perjury in this regard is obvious, material, and undeniable as are the other perjuries detailed in Husband's Proposed findings and conclusions.

### *Corrupt Inducement to Withhold Testimony*

212.    Plaintiff alleges, as part of the "Racketeering Scheme" between Defendants BRENTON HALL LANKFORD, PAMELA ANDERSON TAYLOR, and Judge Joe H. Thompson, they conspired together to induce Plaintiff to withhold testimony. This conspiracy is plain and obvious.

213.    During the previous September 15, 2015 hearing, as referenced below, the trial court

indicated Plaintiff would be allowed cross examination of Katherine Wise Gentry, and

would be provided an opportunity to show that she perjured herself during the initial hearing

of Plaintiff's Petition for Contempt held on March 10, 2015. During the September 15,

2015 hearing, the following statements were made;

> THE COURT: What sort of motion do you want to reconvene?
> MR. GENTRY: I did not have an opportunity to cross-examine Ms.
> Gentry. Ms. Taylor stated -- during the hearing Ms. Taylor stated that
> she should have been allowed to cross-examine and that a ruling should
> not be issued without her having an opportunity to cross-examine. I was
> not given that fair opportunity. **If I could show the Court and have an
> opportunity to cross-examine Ms. Gentry, I can assure you that all
> of the behavior that my wife has delegated as improper on my part
> is just ridiculous allegations.**
> THE COURT: **And you don't think you're going to get that
> opportunity at the final hearing?** *(September 15, 2015 Tr. p. 4 – 6)*

214.    During the final hearing, Plaintiff attempted to show the trial court that Wife perjured

herself but the trial court would not allow Plaintiff's line of questioning and would not allow

Plaintiff to present evidence that would prove Wife's perjury. Obstructing evidence and

suppressing testimony in this manner is not only a violation of Plaintiff's right to be heard,

it is a federal law violation under 18 USC § 1512. During the final hearing the following

dialogue took place;

> THE COURT: Mr. Lankford objected to the e-mails coming in on the
> grounds of relevance. How are these relevant to the issues in the
> divorce?
> MR. GENTRY: **Ms. Gentry has presented evidence and testified that
> the business was not profitable. These e-mails will show that she
> knows that the business is quite profitable and does very well, along**

**with when we get into other valuation, there will be further evidence to show that as well, Your Honor.**

THE COURT: She's testified that the business is profitable. The last question you asked her, she testified that the business was making a profit.

MR. GENTRY: It's contradictory.

MR. LANKFORD: We'll withdraw our objection on that. I wanted to make a point.

THE COURT: **I may still have a problem that it's cumulative. She's not contesting that the business is profitable.** Did I misunderstand your testimony, Ms. Gentry?

THE WITNESS: No. That's correct. Our last return showed a profit.

THE COURT: Why do we need to get into this if she's saying that the business is profitable?

MR. GENTRY: **During the March hearing, she communicated to the Court that the business was not profitable. And she deceived this Court and she didn't provide support.**

THE COURT: That was more than two years ago. She's testifying today the business is profitable. So what are you trying to prove --

MR. GENTRY: I think it was profitable two years ago as well, Your Honor.

THE COURT: You can move on from this. If she's testifying that it's profitable, you don't need to prove that it's profitable. (*VOL XXXIV May 2, 2016 Tr. p. 247 – 249*)

215.    Although the trial court assured Plaintiff he would be allowed the opportunity to cross examine Wife and prove her perjury, the trial court was plainly obstructing Plaintiff's testimony and evidence and manipulating proceedings in violation of Plaintiff's right to be heard. Furthermore, since the Circuit Court Judge agreed Wife testified that the business was profitable in direct contradiction of her previous testimony, it must be true the Circuit Court Judge must have known that Wife perjured herself. During the March 10, 2015 hearing Wife testified as follows;

THE WITNESS: When he calls it profit, that's not so much going into we had that money laying around. What it is, yes, it pays our salaries,

hourly employees' wages. It pays rent. **When you look at our tax returns, it's not a profitable company.** We don't have that money laying around. (VOL XXXVII March 10, 2015 Tr. p. 205)

216.     It is rather obvious, that Judge Thompson manipulated proceedings and prevented

testimony that would prove beyond doubt Wife's perjury, in a plain violation of Husband's

constitutionally guaranteed right of due process as well as a violation under 18 USC § 1512.

> THE COURT: Let me ask you this question, Mr. Gentry. I know that grounds for divorce are at issue in this marriage. And Ms. Gentry didn't spend a lot of time on it. And I think I've heard enough on grounds from you, all right, to make a decision as far as grounds for divorce. With respect to -- and I'm looking at your outline here. **With respect to her harassing you in the workplace, taking your car, worst harassment in the workplace, those really all go to grounds. Am I missing something?**
>
> MR. GENTRY: **Yes, sir.**
>
> THE COURT: Tell me what --
>
> MR. GENTRY: The business is marital property. It's my assertion. I contributed a lot to the business.
>
> THE COURT: I understand that. Whether she harassed you or not really doesn't go to whether you have an ownership interest in the property.
>
> MR. GENTRY: **I'm arguing that I should never have been denied my income during pendency. I never should have lost that income.**
>
> THE COURT: **I understand your argument with respect to that. But the issues for today are whether or not you have contributed sufficiently to Sweet Wise to be afforded appreciation in the value of the company or whether there's been some act of transmutation or commingling or a gift such that you should have an ownership interest in the property that makes it marital property.** So there's interesting blurring of lines here, because you were an employee of the business. **This is not a case for wrongful termination or some sort of employment related legal action. That testimony and that proof might be relevant in that type of a case. But in this type of a case, what I'm really interested in is what did John Gentry do to assist Sweet Wise, to develop Sweet Wise. I think you're going to get to that.**
>
> MR. GENTRY: Yes. I have some of that, Your Honor.

67

THE COURT: But I'm not sure that harassment in the workplace would go to much more than grounds for divorce.

MR. GENTRY: **It's also harassment is a violation of statutory injunction, Your Honor. And I would like the Court to reconsider that.**

THE COURT: Right.

MR. GENTRY: In light of the evidence of what I've testified to and evidence that I'd like to show the Court.

THE COURT: All right**. Let's do this. I want you to move to what you did in the business.** Okay? To benefit the business, to grow the business, to make the business more valuable, I want you to move to that topic. Okay?

MR. GENTRY: **I did have a section in here where Ms. Gentry was attempting to subordinate perjury from my former wife.**

THE COURT: You can take that up with the district attorney. This isn't a criminal case.

MR. GENTRY: **Well, it's a violation of statutory injunction**.

THE COURT: **But the issues for the divorce, we have to pair down the issues for the divorce today.** So what I'm interested in is what you did to grow Sweet Wise, to contribute to Sweet Wise to make it more valuable. All right?

(May 3, 2015 Tr. p. 357 – 360)

217. As the transcript evidence shows, the Circuit Court Judge simply would not allow Husband to obtain testimony that would evidence Wife's malicious violations of statutory injunction. Although Husband repeatedly attempted to prove Wife's violation of statutory injunction, the Circuit Court Judge would instruct Husband to "move on" time and time again.

## Witness List

**JUDGE CHRIS CRAFT**
511 Union Street, Suite 600
Nashville, Tennessee, 37219

**TIMOTHY R. DISCENZA,**
511 Union Street, Suite 600
Nashville, Tennessee, 37219

**JUDGE JOE H THOMPSON**
100 Public Square
Gallatin, Tennessee, 37066

**MS. ASHLEY WEST**
100 Public Square
Gallatin, Tennessee, 37066

**JUDGE AMANDA MCCLENDON**
1 Public Square, Suite 510
Nashville, Tennessee, 37201

**JUDGE ANDY D. BENNETT**
Supreme Court Building
401 7th Avenue North, Suite 218
Nashville, Tennessee, 37219-1407

**MR. JIM HIVNER**
Supreme Court Building
401 7th Avenue North, Suite 218
Nashville, Tennessee, 37219-1407

**JUDGE RICHARD H. DINKINS**
Supreme Court Building
401 7th Avenue North, Suite 208
Nashville, Tennessee, 37219-1407

**JUDGE W. NEAL McBRAYER**
Supreme Court Building
401 7th Avenue North, Suite 204
Nashville, Tennessee, 37219-1407

**KATHERINE WISE GENTRY**
**115 Fieldcrest Circle**
**Hendersonville, TN 37075**

**JUDGE FRANK G. CLEMENT, Jr.**
Supreme Court Building
401 7th Avenue North, Suite 215
Nashville, Tennessee, 37219-1407

**LISA MARSH**
Supreme Court Building
401 7th Avenue North, Suite 215
Nashville, Tennessee, 37219-1407

**JUDGE THOMAS R. FRIERSON, II**
505 Main Street, Suite 318
Knoxville, Tennessee, 37902

**JUDGE KENNY ARMSTRONG**
100 Peabody Place, Suite 1145
Memphis, Tennessee, 38103

**STEVEN J. CHRISTOPHER**
10 Cadillac Drive, Suite 220
Brentwood, Tennessee, 37027

**ELIZABETH C. GARBER**
10 Cadillac Drive, Suite 220
Brentwood, Tennessee, 37027

**IRWIN KUHN**
150 4th Avenue North, Suite 1050
Nashville, Tennessee, 37219

**TOM LAWLESS**
150 4th Avenue North, Suite 1050
Nashville, Tennessee, 37219

**WHEREFORE PREMISES CONSIDERED, PLAINTIFF PRAYS UPON THE COURT TO ISSUE EQUITABLE RELIEF AS FOLLOWS:**

1. For this complaint to be filed and causing a summons to be issued upon the Defendant;

2. The Plaintiff receive requested relief under the jurisdiction of this United States District Court;

3. To proceeding with trial on the matters of controversy and federal questions raised in this complaint;

4. For appropriate declaratory and injunctive relief, and/or to further decide any supplementary matters.

5. For a jury to be empaneled, try the facts of this case and render damages consistent;

6. Award Plaintiff his costs of litigation;

7. Award Punitive Damages sufficient to prevent future gross negligence against future complainants.

8. For the federal court to issue order upon the State to put in place proper oversight of the Board of Professional Responsibility and Board of Judicial Conduct. See **EXHIBIT W** proposed legislation in Arizona.

9. For such general and further relief as this Court deems appropriate and just and to which Plaintiff is entitled.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

70

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

On this the 16th day of March, 2017

John Anthony Gentry, CPA

## Oath

**State of Tennessee** )
**County of** _Maury_ )

I, John Anthony Gentry, after being first duly sworn according to law, do hereby make oath, verify, state, and affirm, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all statements included in the above and foregoing Amended Verified Compliant, are true and correct representations, to the best of my knowledge, information and belief

John Anthony Gentry

Sworn to and subscribed before me this
the _16_ day of _March_, 2017

Notary Public _Karen Peters_

My Commission Expires _5/22/2019_