# H R & W | HOLLINS | RAYBIN | WEISSMAN

## ATTORNEYS AT LAW

John J. Hollins, Jr.  |  David L. Raybin  |  David J. Weissman
Sarah Richter Perky  |  Benjamin K. Raybin  |  Ashley A. Farrell

February 3, 2015

## CONTRACT FOR LEGAL SERVICES

<u>PERSONAL AND CONFIDENTIAL</u>

Mr. John Gentry
john.a.gentry@comcast.net

>   *RE:  Divorce*

Dear John:

This letter shall serve as a binding contract and shall confirm our agreement wherein you have employed the firm of Hollins, Raybin & Weissman, P.C. to represent you in a domestic relations action. By your signature on this contract, you agree to all of the terms herein and agree to be personally responsible for same, including but not limited to payment of all attorney fees and costs. In the event you are, on behalf of another, retaining the firm to provide representation, you agree by your signature on this contract to be personally responsible for all terms contained herein, including but not limited to payment of all attorney fees and costs.

### ATTORNEY FEES

You have paid the firm a non-refundable retainer fee of $4,000 as an advance on attorney fees. Non-refundable means this retainer is immediately earned in full by me and the firm. This is because, by accepting representation on this matter, we have reserved a sufficient amount of time and committed to expending same to be available to provide effective representation. In doing so, we are precluded from accepting other clients. Additionally, there is a substantial likelihood that we will be precluded from accepting other clients due to conflicts of interest that will arise by virtue of our relationship. Once the initial $4,000 retainer fee has been exhausted, then you will be required to pay an additional $4,000 in order for us to proceed with your case. This will be required each time the $4,000 retainer fee is exhausted. Should you fail to pay the requested amount within thirty (30) days of receipt of request for same, we are not obligated to expend any additional time or cost on this matter on your behalf and may move to withdraw instantly. **EXHIBIT A**

---

Fifth Third Center, 424 Church Street, Suite 2200  |  Nashville, Tennessee 37219
P. 615-256-6666  |  F. 615-254-4254  |  www.hollinslegal.com

Case 3:17-cv-00020 Document 32-1 Filed 03/16/17 Page 1 of 241 PageID #: 296

Sarah Richter Perky will bill against this retainer at a rate of $275 per hour. Other attorneys in our firm, paralegals, and other litigation support staff will be utilized in an effort to maximize the effectiveness of your representation in a cost-efficient manner. Work performed on this matter by shall be billed at their hourly rate ranging from $275 to $400 per hour. Work performed by the paralegal shall be billed at $175 per hour. Work performed by litigation support staff shall be billed at $75 per hour. Sarah Richter Perky will directly supervise all work performed by support personnel to ensure it is of the highest quality. You will be charged for all work performed on this matter. This includes but is not limited to appearance at court proceedings, attendance of depositions, conferences, telephone calls, emails, text messages, meetings with experts, and any other work performed on this matter.

## COSTS

In addition to attorney fees, you agree to be solely responsible for and to timely pay all costs incurred on this matter. This is a <u>completely separate</u> item from the attorney fee retainer. Costs include but are not limited to such items as expert witness fees, necessary medical and/or psychological examinations, Qualified Domestic Relationship Order (QDRO) preparation (if necessary), court costs, filing fees, court reporter bills, courier expenses, computerized legal research, photographic duplication, out of town travel expenses, investigation fees and the like. Should you fail to pay the requested amount within thirty (30) days of receipt of request for same, our firm is not obligated to expend any additional time or cost on this matter on your behalf and may move to withdraw instantly.

## BILLING

The firm attempts to issue monthly statements of fees and costs. If at any time you would like a statement you may request one. This billing statement includes a detailed description of services rendered and expenses incurred on a periodic basis. Statements are due upon receipt and are payable regardless of the outcome or status of the matter involved. In the event the statement for either fees or costs is not paid upon receipt, you agree to pay interest at a rate of 10% per month for each item over thirty (30) days old.

Mr. John Gentry
February 3, 2015
Page 3

## COLLECTION

Should you fail to pay your account in full within thirty (30) days of billing, we are authorized to withdraw as counsel for you, and to take such other steps as deemed appropriate. You will execute any documents necessary to allow our firm to withdraw at that point. After we have withdrawn or are discharged, we shall still have the authority to pursue collection against you or your spouse for any fees or expenses due to our firm. Should we take action to collect fees and expenses owing our firm, you will pay for the time, fees and expenses involved in such collection. You agree that any fee disputes shall be handled in front of an arbitrator in Davidson County and governed by the laws of the State of Tennessee.

## COOPERATION

As with most legal matters, it is not possible to predict what the results will be. Although we can make no guarantee as to the outcome of any legal matter we will handle on your behalf, all matters will be handled in a professional and efficient manner and to the best of our ability.

During the course of the case, you will be requested to furnish information and/or documents. Our ability to prepare the case for trial or settlement depends a great deal on the assistance you render. You agree to promptly complete any paperwork requested and to promptly supply any documents requested.

You agree to promptly advise of any changes of address, phone number, email address or any other pertinent information.

## WITHDRAWAL

You understand and agree that failure to cooperate including failing to disclose information or affirmatively misrepresent information is a ground for our withdrawal. You further agree that other grounds include failure to follow our instructions, failure to timely pay the monthly statement, or engaging in disruptive or abusive language. Finally, you understand this is not an all-inclusive list but rather is illustrative. Written notification of withdrawal will be effective upon filing and mailing a copy to you.

## NO OTHER REPRESENTATION

Unless otherwise agreed in writing, Hollins, Raybin & Weissman, P.C. or any representative thereof is not obligated to and does not represent you in any other matters, even though they may flow from this matter. Should you wish to retain Hollins, Raybin & Weissman, P.C. or any representative thereof on any other matters, they shall be governed by separate written agreement.

## UNDERSTANDING AND ACCEPTANCE

You agree that the contents of this agreement have been discussed between you, Hollins, Raybin & Weissman, P.C. or any representative thereof on behalf of the firm in detail. You fully understand all of the provisions contained herein and enter in to this contract free of undue influence, duress or any other basis that would impair your judgment or ability to contract. You have been advised of the right to seek the advice of other counsel as to your case in general and this contract in particular. Being fully informed, you select the firm of Hollins, Raybin & Weissman, P.C. to represent you on this matter.

Very truly yours,

*HOLLINS, RAYBIN & WEISSMAN, P.C.*

*Sarah Richter Dulley*

Accepted and agreed to this _3rd_ day of _Feb_____, 2014.

_____
Signature
208 Navajo Court
Goodlettsville TN 37072
Address
10 / 20 / 65
Date of Birth
551 08 4089
Social Security Number

john.a.gentry@comcast.net
+ Font Size -

### RE: PLEASE SUBPOENA ASAP

**From :** Robyn Gornicki-Davis <RDavis@hollinslegal.com>

Tue, May 12, 2015 08:44 AM

**Subject :** RE: PLEASE SUBPOENA ASAP

**To :** john a gentry <john.a.gentry@comcast.net>

📎 2 attachments

Please see attached.

Sincerely,

Robyn Gornicki-Davis
Paralegal for John Hollins, Jr. and Sarah Richter Perky
*Hollins, Raybin & Weissman, P.C.*
Fifth Third Center
424 Church Street, Suite 2200
Nashville, Tennessee 37219
615-256-6666
615-254-4254 - fax
rdavis@hollinslegal.com
www.hollinslegal.com

This e-mail transmission contains information that is confidential and may be privileged. It is intended only for the addressee(s) named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.

IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT B

https://web.mail.comcast.net/zimbra/h/printmessage?id=54306&tz=America/Chicago&xim=1

**From:** John Gentry [mailto:john.a.gentry@comcast.net]
**Sent:** Tuesday, May 12, 2015 8:35 AM
**To:** Sarah Richter
**Cc:** Robyn Gornicki-Davis
**Subject:** Re: PLEASE SUBPOENA ASAP

also, sorry to micro manage but can I review the subpoena before it goes out?

it is critical to me and my defense and I want to make sure it is as perfect as can be

- John

On May 12, 2015, at 8:20 AM, Sarah Richter <sperky@hollinslegal.com> wrote:

Hi John:

Robyn is working on the subpoena but you will have to directly pay for any charges for the subpoena as the firm cannot pay these out of pocket costs with your outstanding bill. Are you okay with that?

**Sarah Richter Perky**
Hollins, Raybin & Weissman, P.C.
Fifth Third Center
424 Church Street, Suite 2200
Nashville, Tennessee 37219
Telephone: 615-256-6666
Fax: 615-254-4254
E-Mail: SPERKY@HWYLAW.COM
*To learn more about our practice, please visit our website below:*
WEB: http://www.hwylaw.com/

**NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or disseminate this message or any attachment. If you have received this message in error, please call the sender immediately at (615) 256-6666 and delete all copies of the message and any attachment. Neither the transmission of this message or any attachment, nor any error in transmission or misdelivery shall constitute waiver of any applicable legal privilege.**

**From:** john.a.gentry@comcast.net [mailto:john.a.gentry@comcast.net]
**Sent:** Monday, May 11, 2015 9:22 AM
**To:** Sarah Richter

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 6 of 241 PageID #: 301

CFINITY Connect

Subject: Re: PLEASE SUBPOENA ASAP

I added two highlighned items. Please lets discuss when you have a moment and get this out as quick as possible.

---

**From:** "john a gentry" <john.a.gentry@comcast.net>
**To:** "Sarah Richter" <sperky@hollinslegal.com>
**Sent:** Friday, May 8, 2015 5:41:04 PM
**Subject:** PLEASE SUBPOENA ASAP

I love companies like GoDaddy. See below response.

I reviewed the link - https://www.godaddy.com/agreements/showdoc.aspx?pageid=CIVIL_SUBPOENA . It is Subpoena Policy/Attorney Tips.

Per review of the link, no need to subpoena copies of deleted emails as GoDaddy will not provide. However, I expect their logs will show and they can provide information regarding the following and this is what I'd like to Subpoena;

● Did anyone call into tech support on our about July 6th, 2014?
● Does GoDaddy accurately maintain logs noting when customers call in along w/ purpose of call?
● Did anyone log in as administrator on or about July 6th 2014 and reset passwords for any Sweet Wise email accounts?
● Does GoDaddy accurately maintain logs of when administrators log in and/or reset passwords?
● Were numerous emails deleted from the email accounts of johng@sweetwise.com and danco@sweetwise.com on or about July 6th, 2014?
● On or about July 6th, 2014, did GoDaddy implement any "upgrades and have some glitches" that would cause any of the following issues?

    ● Deleted/lost emails
    ● Resetting of passwords
    ● Receiving of multiple copies of emails
    ● "ghost emails" - emails sent and received to and from the same godaddy email address with no content
    ● Complaints from multiple customers on or about July 6th, 2014 regarding the above "complaints"

I would like to send the subpoena via overnight UPS/FedEx (signature required) to

Compliance Department
GoDaddy.com, LLC
14455 North Hayden Rd., Suite 219

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,    )
       Plaintiff/Wife,          )
                             )
v.                          )    No. 2014CV393
                             )
JOHN ANTHONY GENTRY,    )
       Defendant/Husband.    )

---

## EXHIBIT TO GODADDY SUBPOENA

---

RE:    domain www.sweetwise.com
        Customer Number – 539263

Please provide the following information regarding the above referenced domain and/or customer number

- Did anyone call into tech support on or about July 6th, 2014?
- Did anyone log in as administrator on or about July 6th 2014 and reset passwords for any Sweet Wise email accounts?
- Were numerous emails deleted from the email accounts of johng@sweetwise.com and danco@sweetwise.com on or about July 6th, 2014?
- On or about July 6th, 2014, did GoDaddy implement any "upgrades and have some glitches" that would cause any of the following issues?
    - Deleted/lost emails

    - Resetting of passwords

    - Receiving of multiple copies of emails

    - "ghost emails" - emails sent and received to and from the same godaddy email address with no content

    - Complaints from multiple customers on or about July 6th, 2014 regarding the above "complaints"

Gentry

**From :** Robyn Gornicki-Davis <RDavis@hollinslegal.com>
Tue, May 12, 2015 12:03 PM

**Subject :** Gentry
2 attachments

**To :** john a gentry <john.a.gentry@comcast.net>

Please review again.

Sincerely,

Robyn Gornicki-Davis
Paralegal for John Hollins, Jr. and Sarah Richter Perky
Hollins, Raybin & Weissman, P.C.
Fifth Third Center
424 Church Street, Suite 2200
Nashville, Tennessee 37219
615-256-6666
615-254-4254 - fax
rdavis@hollinslegal.com
www.hollinslegal.com

This e-mail transmission contains information that is confidential and may be privileged. It is intended only for the addressee(s) named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.

IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Your message is ready to be sent with the following file or link attachments:

Attachment GoDaddy Subpoena.
Subpoena GoDaddy Sumner Chancery

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments. Check your e-mail security settings to determine how attachments are handled.

**Attachment GoDaddy Subpoena..docx**
18 KB
**Subpoena GoDaddy Sumner Chancery.doc**
66 KB

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,  )
    Plaintiff/Wife,  )
      )
v.  )    No. 2014CV393
      )
JOHN ANTHONY GENTRY,  )
    Defendant/Husband.  )

---

## EXHIBIT TO GODADDY SUBPOENA

---

RE:    domain www.sweetwise.com
           Customer Number – 539263

Please provide the following information regarding the above referenced domain and/or customer number:

- Did anyone call into tech support on or about July 6th, 2014?
- Did anyone log in as administrator on or about July 6th 2014 and reset passwords for any Sweet Wise email accounts?
- Were numerous emails deleted from the email accounts of johng@sweetwise.com and danco@sweetwise.com on or about July 6th, 2014?
- On or about July 6th, 2014, did GoDaddy implement any "upgrades and have some glitches" that would cause any of the following issues?
  - Deleted/lost emails
  - Resetting of passwords
  - Receiving of multiple copies of emails
  - "ghost emails" - emails sent and received to and from the same godaddy email address with no content
  - Complaints from multiple customers on or about July 6th, 2014 regarding the above "complaints"

Please also provide the following:

- Does GoDaddy accurately maintain logs noting when customers call in along with the purpose of the call?
- Does GoDaddy accurately maintain logs of when administrators log in and/or reset passwords?

john.a.gentry@comcast.net

± Font Size ±

**RE: GoDaddy Procedure**

**From :** Sarah Richter <sperky@hollinslegal.com>

**Subject :** RE: GoDaddy Procedure

Fri, Jun 19, 2015 10:37 AM

🖉 1 attachment

**To :** john a gentry <john.a.gentry@comcast.net>, Robyn Gornicki-Davis <RDavis@hollinslegal.com>

John:

Attached is the letter Robyn sent to Ms. Taylor on 6/15 addressing the subpoena. While I cannot provide legal advice, Ms. Taylor received notice of the subpoena prior to any documents being issued preserving her right to object which is the purpose of the notice requirement.

**Sarah Richter Perky**
Hollins, Raybin & Weissman, P.C.
Fifth Third Center
424 Church Street, Suite 2200
Nashville, Tennessee 37219
Telephone: 615-256-6666
Fax: 615-254-4254
E-Mail: SPERKY@HWYLAW.COM
*To learn more about our practice, please visit our website below.*
WEB:  http://www.hwylaw.com/

**NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or disseminate this message or any attachment. If you have received this message in error, please call the sender immediately at (615) 256-6666 and delete all copies of the message and any attachment. Neither the transmission of this message or any attachment, nor any error in transmission or misdelivery shall constitute waiver of any applicable legal privilege.**

**From:** john.a.gentry@comcast.net [mailto:john.a.gentry@comcast.net]
**Sent:** Thursday, June 18, 2015 7:01 PM
**To:** Sarah Richter; Robyn Gornicki-Davis
**Subject:** GoDaddy Procedure

Please see attached Motion to Quash.

This subpoena was critical to my case and because of your failure to follow simple procedure, my GoDaddy subpoena is going to be quashed.

I would like for you to propose a settlement as this is clearly malpractice.

Alternatively, I would be grateful and I would prefer if you could provide some form of proof that the subpoena was provided to Ms. Taylor.

Sincerely,

John A Gentry, CPA

# HOLLINS | RAYBIN | WEISSMAN
## ATTORNEYS AT LAW

John J. Hollins, Jr. | David L. Raybin | David J. Weissman
Sarah Richter Perky | Benjamin K. Raybin | Ashley A. Farrell

June 15, 2015

Pamela A. Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219

     **Re:** *Gentry v. Gentry*

Dear Pam:

     Enclosed is a copy of the GoDaddy Subpoena issued and served in the above referenced matter which I was certain I had sent you the same day it was served. I apologize for any confusion in this regard.

     We have not received any documents responsive to the subpoena.

          Sincerely,

          HOLLINS, RAYBIN & WEISSMAN, P.C.

          Robyn Gornicki-Davis
          Paralegal for Sarah Richter Perky

/rlgd
Enclosure
Cc:     John Gentry


**ORIGINAL**

| STATE OF TENNESSEE SUMNER COUNTY CIRCUIT COURT | **SUBPOENA** ☒ TESTIMONY/PRODUCTION REQUIRED (SEE NOTICE BELOW) ☐ MEDICAL RECORDS (SEE HIPAA REQUIREMENT BELOW) | CIVIL ACTION ∴ STATE DOCKET NO. 2014CV393 |
|---|---|---|

| PLAINTIFF **Katherine Wise Gentry** | DEFENDANT vs. **John Anthony Gentry** |
|---|---|

TO: (Name, Address, & Telephone Number of Witness)
Compliance Department
GoDaddy.com, LLC
14455 North Hayden Rd., Suite 219
Scottsdale, AZ 85260          FAX #(480) 624-2546

Method of Service:
☐ Sumner County Sheriff
☒ Personal Service
☐ Out of County Sheriff

You are hereby commanded to appear at the time, date and place specified for the purpose of giving testimony. In addition, if indicated, you are to bring the items listed. Failure to appear may result in contempt of Court which could result in punishment by fine and/or imprisonment as provided by law.

| TIME 10:00 a.m. | DATE June 17, 2015 | ITEMS TO BRING: See attached. |
|---|---|---|

PLACE:    HOLLINS, RAYBIN & WEISSMAN, P.C.
424 Church Street, Suite 2200
Nashville, TN 37219
615-256-6666
615-254-4254 – fax

Appearance will be waived if documents are provided prior to date. Please call Sarah Richter Perky at 615-256-6666 with any questions.

For all costs related to this subpoena please call 615-351-2649.

This subpoena is being issued on behalf of
☐ PLAINTIFF    ☒ DEFENDANT

☒    Additional List Attached
DATE ISSUED:

Attorney: (NAME, ADDRESS & TELEPHONE NUMBER)

Sarah Richter Perky, Esq.
424 Church Street, Suite 2200
Nashville, Tennessee 37219
615-256-6666

**KATHRYN STRON**
Circuit Clerk

BY: _P. Freeland_
Deputy Clerk

ATTORNEY'S SIGNATURE: X _Sarah Richter Perky_
DESIGNEE:

DESIGNEE'S SIGNATURE:

ADA
FOR ASSISTANCE CALL
615-451-6023

☒    Testimony/Production required,

<u>TESTIMONY/PRODUCTION NOTICE</u>

The failure to serve an objection to this Subpoena within twenty-one (21) days after the day of service of the Subpoena waives all objections to the subpoena, except the right to seek the reasonable costs for producing books, papers, documents, electronically stored information, or tangible things.

☐ Medical Records Requested - HIPAA Notice Required

**HIPAA NOTICE**

A copy of this subpoena has been provided to counsel for the patient or the patient by mail or facsimile on the _____ day of _____ 20____, so as to allow him/her twenty-one (21) days to:

(A)    Serve the recipient of the Subpoena by facsimile with a written objection to the Subpoena, with a copy of the notice by facsimile to the party that served the Subpoena, and

(B)    Simultaneously file and serve a Motion for a Protective Order consistent with the requirements of T.R.C.P. 26.03, 26.07 and Local Rule §22.10.

If no objection is made within twenty-one (21) days of the above date, you shall process this Subpoena and produce the documents by the date and time specified in the Subpoena. The signature of counsel or party on the Subpoena is certification that the above Notice was provided to the patient.

SUBMIT: Original, Witness Copy & File Copy

## RETURN OF SERVICE

| Check one: (1 or 2 are for the return of an authorized officer or attorney; an attorney's return must be sworn to; 3 is for the witness who will acknowledge service and requires the witness's signature.) |
| --- |
| 1. ☐ I certify that on the date indicated below I served a copy of this Subpoena on the witness stated above by: |
| 2. ☐ I failed to serve a copy of this Subpoena on the witness because: |
| 3. ☐ I acknowledge being served with this Subpoena on the following date: |

| Sworn to and subscribed before me on this _____day of _____, 20___. | DATE OF SERVICE: |
| --- | --- |
| Signature of ☐ Notary Public or ☐ Deputy Clerk<br><br>My Commission Expires: | SIGNATURE OF WITNESS, OFFICER, ATTORNEY OR ATTORNEY'S DESIGNEE? |

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

FILED
_____ /:35 ___ P M

MAY 1 3 2015

CIRCUIT COURT CLERK
BY_____ 0k___ D.C.

KATHERINE WISE GENTRY,  )
    Plaintiff/Wife,  )
                       )
v.  )      No. 2014CV393
                       )
JOHN ANTHONY GENTRY,  )
    Defendant/Husband.  )

---

## EXHIBIT TO GODADDY SUBPOENA

---

RE:    domain www.sweetwise.com
         Customer Number -- 539263

Please provide the following information regarding the above referenced domain and/or customer number:

- Did anyone call into tech support on or about July 6th, 2014?
- Did anyone log in as administrator on or about July 6th 2014 and reset passwords for any Sweet Wise email accounts?
- Were numerous emails deleted from the email accounts of johng@sweetwise.com and danco@sweetwise.com on or about July 6th, 2014?
- On or about July 6th, 2014, did GoDaddy implement any "upgrades and have some glitches" that would cause any of the following issues?
  - Deleted/lost emails

  - Resetting of passwords

  - Receiving of multiple copies of emails

  - "ghost emails" - emails sent and received to and from the same godaddy email address with no content

  - Complaints from multiple customers on or about July 6th, 2014 regarding the above "complaints"

Please also provide the following:

- Does GoDaddy accurately maintain logs noting when customers call in along with the purpose of the call?
- Does GoDaddy accurately maintain logs of when administrators log in and/or reset passwords?

✻ ✻ ✻ Communication Result Report ( May. 13. 2015 4:41PM ) ✻ ✻ ✻

Date/Time: May. 13. 2015 4:40PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 9578 | Memory TX | 14806242546 | P. 3 | OK | |

---

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size

E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

---

**XFINITY Connect**                                                        john.a.gentry@comcast.net
                                                                                    ± Font Size -

**RE: Gentry**

**From :** compliancemgr <compliancemgr@godaddy.com>                    Wed, Jun 17, 2015 07:30 PM
**Subject :** RE: Gentry
**To :** john a gentry <john.a.gentry@comcast.net>

Thank you for your email.  We received notice from our customer that he intends on filing an objection to
the subpoena we received.  We have given him until the end of business on 19 June 2015 to send us a copy
of the objection/motion to quash.  If we do not receive an objection by that time, we will be forwarding the
documents to your attention.

Please let me know if you have any additional questions.

Regards,

A. Maddux
Compliance Specialist

**From:** John Gentry <john.a.gentry@comcast.net>
**Sent:** Tuesday, June 16, 2015 10:04 AM
**To:** legal
**Subject:** Fwd: Gentry

Dear Sir or Madam,

Please see attached subpoena faxed to GoDaddy on 5/13/2015

Is it possible to check the status of this?

Can you provide contact information for someone who might be able to assist me.

I have a July 1 court date that this is needed for

I'm grateful for any assistance you can provide.

- John

Begin forwarded message:

>   **From:** Robyn Gornicki-Davis <RDavis@hollinslegal.com>
>   **Date:** June 15, 2015 at 5:07:09 PM CDT
>   **To:** "john.a.gentry@comcast.net" <john.a.gentry@comcast.net>
>   **Subject: Gentry**
>
>   Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 17 of 241 PageID #: 312
>   For your records.

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY, )
)
    Plaintiff, )
)
v. )   **Case No. 2014CV393**
)
JOHN ANTHONY GENTRY, )
)
    Defendant. )
)

## MOTION TO QUASH SUBPOENA ISSUED MAY 13, 2015

The Defendant, John Anthony Gentry ("Husband"), has issued a subpoena *duces tecum* to GoDaddy.com, LLC ("GoDaddy"). The Plaintiff, Katherine Wise Gentry ("Wife"), by and through counsel, and pursuant to Rule 45 of the Tennessee Rules of Civil Procedure, moves the Court to quash the subpoena issued on May 13, 2015. In support of this Motion, Wife would show as follows:

1.    On May 13, 2015, Husband issued a subpoena to GoDaddy in which it was requested to appear to testify and produce certain documents. **See Exhibit A.**

2.    However, the May 13, 2015 subpoena failed to comply with Rule 45.02 of the Tennessee Rules of Civil Procedure. Particularly, Husband did not serve Wife with a copy of the subpoena. See Tenn. R. Civ. P. 45.02 ("Copies of the subpoena *must* be served pursuant to Rule 5 *on all parties*, and all material produced must be made available for inspection, copying, testing or sampling by all parties.") (emphasis added).

3.    Wife only learned that the subpoena had been issued when she received an email from GoDaddy on June 12, 2015. **See Exhibit B.**

Based on the foregoing, the subpoena should be quashed as it does not comply with Rule 45.02 of the Tennessee Rules of Civil Procedure.

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 18 of 241 PageID #: 313

Respectfully submitted,

*Pamela A. Taylor*

Pamela A. Taylor (Sup. Ct. No. 013264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2490
Telephone: (615) 782-2212

*Attorneys for Plaintiff, Ms. Gentry*

## THIS MATTER IS EXPECTED TO BE HEARD ON THE 1ST DAY OF JULY AT 9:00 A.M.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage-prepared, to John Gentry, 208 Navajo Court, Goodlettsville, TN 37072, this 18th day of June, 2015.

Pamela A. Taylor

Case 3:17-cv-00020 Document 32-1 Filed 03/16/17 Page 20 of 241 PageID #: 315

3:00 P.M.

SEP 09 2015

KATHRYN STRONG, CLERK
BY _____ D.C.

KATHERINE WISE GENTRY, )
)
Plaintiff, )
)
v. )  Case No. 2014CV393
)
JOHN ANTHONY GENTRY, )  NOTICE OF ENTRY
)  REQUESTED
Defendant. )
)
)

## ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO RECUSE HIMSELF AND TO DECLARE A MISTRIAL OF PETITION FOR CONTEMPT HEARING OR IN THE ALTERNATIVE TO RECONVENE HEARING FOR PETITION FOR CONTEMPT AND HUSBAND'S MOTION TO COMPEL WIFE TO RETURN HUSBAND'S STOCK CERTIFICATE & SET EQUAL DISTRIBUTION OF BUSINESS INCOME OR IN THE ALTERNATIVE SET TRIAL DATE TO SUBSTANTIATE HUSBAND'S CLAIM OF STOCK OWNERSHIP

This matter came to be heard on the 7th day of August, 2015 before the Honorable Joe H. Thompson upon Defendant's, John Anthony Gentry ("Husband"), Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the alternative to Reconvene Hearing for Petition for Contempt and Husband's Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the alternative Set Trial Date to Substantiate Husband's Claim of Stock Ownership. Upon a review of the record as a whole, arguments and statement of Wife's counsel and Husband, voluntarily representing himself *pro se* without an attorney, the Court finds that Husband's Motions are not well-taken and, therefore denied.

It is therefore ORDERED, ADJUDGED AND DECREED that Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition


RECEIVED
9/3/15

# EXHIBIT C

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 21 of 241 PageID #: 316

for Contempt Hearing or in the alternative to Reconvene Hearing for Petition for Contempt is denied.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the alternative Set Trial Date to Substantiate Husband's Claim of Stock Ownership is denied.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband is restrained and enjoined from coming about the office of Wife's counsel, Stites & Harbison PLLC, located at 401 Commerce Street, Suite 800, Nashville, TN 37219 during the pendency of this action.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband shall pay Wife the sum of $4,134.21 for attorney's fees and expenses rendered in connection with Wife being required to defend Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the alternative to Reconvene Hearing for Petition for Contempt and Husband's Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the alternative Set Trial Date to Substantiate Husband's Claim of Stock Ownership. Husband shall pay Wife the subject attorney's fees within fifteen (15) days of the entry of this Order. If Husband fails to pay Wife the subject attorney's fees within fifteen (15) days of the entry of this Order, Wife shall be, and is hereby, awarded a judgment against Husband upon which execution may issue.

It is so **ORDERED.**

ENTERED this 9TH day of September, 2015.

Joe H. Thompson, Circuit Court Judge

APPROVED FOR ENTRY:

_[signature]_

Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200

Counsel for Plaintiff, Katherine Wise Gentry

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage-prepared, to John Gentry, 208 Navajo Court, Goodlettsville, TN 37072, this 27<u>th</u> day of August, 2015, and sent via email at johng@estartsolutions.com.

_P Taylor by permission BHL #030223_

Pamela A. Taylor

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,
    **Plaintiff/Wife**

v.

JOHN ANTHONY GENTRY
    **Defendant/Husband**

)
)
)
)
)
)
)

No. 2014CV393

**DENIAL OF ENTRY REQUESTED**

---

## OBJECTION TO ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONONORABLE JUDGE THOMPSON TO RECUSE HIMSELF AND TO DECLARE A MISTRIAL OF PETITION FOR CONTEMPT HEARING OR IN THE ALTERNATIVE TO RECONVENE HEARING FOR PETITION FOR CONTEMPT AND HUSBAND'S MOTION TO COMPEL WIFE TO RETURN HUSBAND'S STOCK CERTIFICATE AND SET EQUAL DISTRIBUTION OF BUSINESS INCOME OR IN THE ALTERNATIVE SET TRIAL DATE TO SUBSTANTIATE HUSBAND'S CLAIM OF STOCK OWNERSHIP

---

Defendant/Husband strongly objects to order prepared by Wife's counsel Pamela Taylor. First and foremost, the order is not in proper form for endorsement by this honorable court. Defendant/Husband begs the court to not sign order prepared by Wife's counsel. Defendant/Husband begs the court to first hear Husband's Motion set to be heard on the 15th of September before making a final ruling in this matter and signing any order or making any entry pertaining to this matter.

1. Meaning no disrespect to this honorable court, RULE 10B paragraph 1.03 as amended to Rule 10: Code of Judicial Conduct states:

> Upon the filing of a motion pursuant to section 1.01, the judge shall act promptly
> by written order and either grant or deny the motion (to disqualify/recuse). If the
> motion is denied, *the judge shall state in writing the grounds upon which he or she
> denies the motion.*

2. Since the order prepared by Ms. Taylor's office does not satisfy Rule 10B paragraph 1.03 and does not state grounds for denial of motion, it is not in proper form for endorsement by this honorable court and should not be signed.

3. Husband strongly protests Ms Taylor's last sentence of first paragraph where the order states "Upon a review of the record as a whole, arguments and statement of Wife's counsel and Husband, *voluntarily representing himself pro se without an attorney....*"

4. Husband begs the court to recognize that Husband *is not* (emphasis added) representing himself "*voluntarily*". Unfortunately, Husband has no alternative but to try to represent himself because he has been bankrupt by wife's malicious behavior and Husband's counsel has withdrawn because Husband was unable pay attorney fees and legal expenses.

5. Husband remains unable to pay his previous counsel over $10,000 owed, and has no financial means whatsoever to afford a retainer fee for new counsel. Ms Taylor also knows husband is without medical insurance because he could not even afford to pay his medical insurance premiums.

6. This statement suggesting that husband is *voluntarily Pro Se* is a good example (one of many) of how Ms. Taylor has misled this court time and time again by making false statements and misrepresenting facts to this honorable court.

7. During the brief hearing of Motions on August 7th, 2015, there was never any discussion in any way shape or form or any ruling by the court about Plaintiff/Wife being awarded attorney fees. Husband believes it is presumptuous and disrespectful to the court for Wife's counsel to attempt to make a ruling on awarding attorney fees on the court's behalf.

8. Husband is without Medical Insurance while currently in need of medical care which he cannot afford and Husband's lack of medical care may result in permanent irreversible damage. Since husband cannot afford medical care, he certainly cannot afford Wife's

expensive "Dream Team" legal expense. As stated in item five (5) above, Husband cannot even afford his own legal expense and is without desperately needed legal representation. Husband's Motion was filed in sincerity in hope of finding fairness and was in no way intended to be frivolous and there is no justification for awarding wife reimbursement of her legal fees.

9. Husband's Motion heard on August 7th included a request to reconvene in the alternative to recusal. Husband's alternative motion to reconvene was not heard or discussed with the court in any way shape or form and the court did not make a ruling in regards to this alternative part of Husband's Motion either.

10. It is further presumptuous and disrespectful to the court for Wife's counsel to attempt to make a ruling on the court's behalf regarding Husband's alternative Motion to reconvene as well.

11. Husband respectfully begs this honorable court to postpone entry of an order in this matter until Husband's complete motion is heard.

12. As stated in item nine (9) above, Husband's Motion heard on August 7th included an alternative Motion to reconvene which was not discussed at all. Due to husband's Pro Se status, nervousness and inexperience before the court, Husband neglected to make the court aware and initiate a discussion and present arguments as to why the court should reconvene and begs the courts understanding.

13. Husband begs this honorable court to review Husband's Motion set to be heard on 15 September, 2015 before entering an order in this matter. See attached **Exhibit A** copy of Motion filed. With emphasis added, Husband begs court to recognize Husband's sincerity detailed in item 6 of **Exhibit A**

14. Husband begs only two to three minutes of the court's time to hear his oral arguments in addition to those arguments presented in his Motion (**Exhibit A**) set to be heard on 15 September before entering an order in this matter.

15. Husband only begs a few moments of this honorable courts time and a fair chance to be heard.

16. Husband is grateful for the courts patience and understanding as he tries to muddle his way through defending himself without representation.

ORDER PREPARED BY MS TAYLOR NOT APPROVED FOR ENTRY

John A. Gentry, CPA
Pro Se Counsel
208 Navajo Court
Goodlettsville, TN 37072
Telephone 615-351-2649

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage prepaid, to Pamela A Taylor, SunTrust Plaza, 401 Commerce Street, Suite 800, Nashville, TN 37219-2490 this 28th day of August, 2015 and sent vial email to pamela.taylor@stites.com.

John A. Gentry, CPA
Pro Se Counsel

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

FILED
AUG 27 2015
BY KATHRYN STRONG, CLERK
D.C.

| | | |
|---|---|---|
| KATHERINE WISE GENTRY, | ) | |
|     Plaintiff/Wife | ) | |
| | ) | |
| v. | ) | No. 2014CV393 |
| | ) | |
| JOHN ANTHONY GENTRY | ) | |
|     Defendant/Husband | ) | |

---

## MOTION TO RECONVENE AND COMPLETE HEARING FOR PETITION FOR CONTEMPT.

---

The Defendant/Husband, John Anthony Gentry, files this Motion to request that The Honorable Judge Thompson reconvene and complete the trial of Defendant's Petition for Contempt.

1. Defendant/Husband begs the court to hear complete testimony and view complete evidence in this matter.

2. Husband would have shown that not only was Husband's de minimus meal spending appropriate and reasonable but Husband would have shown that ALL of Wife's allegations of misconduct, inappropriate spending, theft of Google account, drinking and driving etc. were without merit and based on fabricated or anecdotal evidence used to cover wife's disregard of statutory injunction.

3. If Husband were properly allowed to cross examine Wife, Husband would have readily refuted all of Wife's allegations. Husband's case strategy was strongly based and dependent on cross exam of Wife.

4. Imagine if the court heard Husband's testimony about Wife, and her cancelling his bank and credit cards, her bullying of husband and eliminating his hard earned benefits one by one and

then ultimately terminating his employment just two weeks before Christmas. Imagine the court's opinion without Ms. Taylor's cross exam! That is exactly the injustice Husband has endured in not being allowed to cross examine Wife.

5. If a reconvene of the hearing of Husband's Petition for Contempt is granted, Husband will clearly demonstrate that all of Wife's allegations of misconduct are completely unfounded.

6. Husband believes so strongly in his case and this motion that if properly heard, if the court later determines this motion and a reconvene of hearing unworthy of the court's time, Husband agrees in advance to pay Wife's additional legal fees and Husband will perform community service at the courts discretion.

**WHEREFORE, PREMISES CONSIDERED, DEFENDANT PRAYS;**

1. Husband begs this Honorable Court to reconvene the hearing on Petition for Contempt and allow Mrs. Gentry to complete her testimony and allow a proper cross examination of her testimony.

2. Husband begs the court to give him a fair chance to present his case and is grateful for the courts consideration in this matter.


Respectfully submitted,

John Anthony Gentry, CPA
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649
Representing Himself

**THIS MOTION IS SET TO BE HEARD ON 15TH DAY OF SEPTEMBER AT** 
**8:00 A.M.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via ~~Hand Delivery~~ U S Mail to;

Pamela A. Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Attorney for Mrs. Gentry

On this the 20th day ~~of July, 2015~~
27th day of Aug., 2015

John Anthony Gentry, CPA

 208 NAVAJO CT
GOODLETTSVLLE TN 37072-3338

Account Number:
1 512 0551 9524

Statement Period:
Nov 14, 2015
through
Dec 11, 2015

Page 2 of 4



## (CONTINUED)

### ASY CHECKING
.S. Bank National Association

Account Number 1-512-0551-9524

#### Deposits / Credits (continued)

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 27 | Overdraft Protection | Transfer From Line Ending in 9524 | 2700004589 | 5.00 |
| | | | 2700004586 | 12.50 |
| Nov 27 | OD Protection Fee Waived | | 0100004458 | 50.00 |
| Dec 1 | Overdraft Protection | Transfer From Line Ending in 9524 | | |

| | | Total Deposits / Credits | $ | 7,067.50 |
|---|---|---|---|---|

#### Card Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 27 | Fee | ATM Withdrawal At Other Network | 2700004584 | $ 2.50 |

Card Number: xxxx-xxxx-xxxx-9708

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 27 | ATM Withdrawal | H S B C COZUMEL, QUI | | $ 14.15- |
| | Exchg Amt: $14.15 | Serial No. 022244213355PLUSTERM | | |
| | Orig Curr:233.35 | Currency Type: MEXICAN PESO | | |
| Nov 27 | Intl Processing Fee | On 112615 COZUMEL, QUI | | 0.42- |
| | H S B C / | REF # 022244213355PLUSTERM MX1 | | |

| | Card 9708 Withdrawals Subtotal | $ | 14.57- |
|---|---|---|---|
| | Total Card Withdrawals | $ | 17.07- |

#### Other Withdrawals

| Date | Description of Transaction | | Ref Number | Amount |
|---|---|---|---|---|
| Nov 16 | Internet Banking Payment | To Reserve Line | | $ 186.57- |
| Nov 16 | Electronic Withdrawal | To BARCLAYCARD US | | 500.00- |
| | REF=15320010782235 N | 2510407970CREDITCARD334580048 | | |
| Nov 16 | Electronic Withdrawal | To CAPITAL ONE | | 1,250.00- |
| | REF=15320009099154 N | 9279744991ONLINE PMT531839919195905 | | |
| Nov 17 | Electronic Withdrawal | To MERRICK BANK COR | | 605.15- |
| | REF=15320017505597 N | 9000002935ONLINEPYMT666600046776194 | | |
| Nov 18 | Electronic Withdrawal | From NASHVILLE ELECT | | 91.88- |
| | REF=15322005885005 N | ONLINE PMT9500000000 | | |
| Nov 20 | Electronic Withdrawal | From GREAT LAKES | | 150.73- |
| | REF=15323007636616 Y | STUDENT LN1391090394 | | |
| Nov 20 | Electronic Withdrawal | To MBFS.COM | | 457.42- |
| | REF=15323008285198 N | 9208653034AUTO PAY 07004052700 | | |
| Nov 23 | Electronic Withdrawal | From PIEDMONT N. G. | | 34.07- |
| | REF=15324011808828 N | DRAFT 0000008413 | | |
| Nov 23 | Electronic Withdrawal | To CAPITAL ONE | | 500.00- |
| | REF=15327007750461 N | 9279744991ONLINE PMT532539919176165 | | |
| Nov 27 | OD Protection Fee | | 2700004585 | 12.50 |
| Nov 27 | TN GARNISHMENT - | KATHERINE WISE GE NTRY | | 3,891.76- |
| Dec 1 | OD Protection Fee | | 0100004455 | 12.50 |
| Dec 1 | Electronic Withdrawal | From PRUDENTIAL | | 33.75- |
| | REF=15334013437172 N | INS PREM 9478857501 | | |

| | Total Other Withdrawals | $ | 7,726.33- |
|---|---|---|---|

#### Checks Presented Conventionally

| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|---|---|---|---|---|---|---|---|
| 019 | Nov 23 | 8056728637 | 55.08 | 1020 | Nov 23 | 8055518405 | 73.36 |

| | Conventional Checks Paid (2) | $ | 128.44- |
|---|---|---|---|

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,  )
    Plaintiff/Wife  )
                     )
v.  )    No. 2014CV393  **FILED**
                   )                 _3:43 p_
JOHN ANTHONY GENTRY  )
    Defendant/Husband  )          DEC 0 9 2015

KATHRYN STRONG, CLERK
BY _____ D.

## MOTION TO DEFER PAYMENT OF ATTORNEY FEES AWARDED TO WIFE AND REFUND ATTORNEY FEES GARNISHED FROM HUSBANDS BANK ACCOUNT AND TO RELEASE FURTHER GARNISHMENT FROM HUSBANDS BANK ACCOUNT

The Defendant/Husband, John Anthony Gentry, files this Motion to request that The Honorable Judge Thompson grant financial relief to Husband to defer payment to Wife of awarded attorney fees until after the final hearing. Defendant/Husband further requests the court to instruct Wife to refund back to Husband $3,891.76 garnished from Husband's bank account and to further instruct Wife to file garnishment release with Husband's bank to prevent further garnishments.

1. On November 27, 2015 $3,891.76 was garnished from Husband's personal bank account without warning. See EXHIBIT 1

2. These funds were to earmarked to pay for Husband's mortgage, auto loan, utilities, food and other basic needs.

3. Wife is not in dire need of reimbursement of legal fees. Please see EXHIBITS 2, 3, 4, 5, 6, 7, 8, 9 10, 11, 12.

4. Husband is without and cannot afford healthcare or health insurance. See EXHIBIT 13.

# EXHIBIT D

5. Husband is without and cannot afford legal representation. Husband still owes former counsel more than $10,000. As a matter of conscious, Husband cannot retain new counsel (even if he could afford) without first paying off existing debt to formal counsel. The court should be aware of this as the court approved prior counsel's withdrawal due to non-payment.

6. While Husband is without legal representation, wife consistently brings not one but two attorneys with her to hearings regarding divorce matters.

**WHEREFORE, PREMISES CONSIDERED, DEFENDANT PRAYS;**

1. That The Honorable Judge Joe Thompson will order wife to immediately return to Husband funds garnished from Husband's bank account in the amount of $3,891.76

2. That The Honorable Judge Joe Thompson will order wife to file a release from garnishment with Husband's bank to prevent future garnishments.

3. Other relief as determined appropriate by The Honorable Judge Joe Thompson.

Respectfully submitted,

John Anthony Gentry, CPA
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649
Representing Himself

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

| | | |
|---|---|---|
| KATHERINE WISE GENTRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2014CV393 |
| | ) | |
| JOHN ANTHONY GENTRY, | ) | **NOTICE OF ENTRY** |
| | ) | **REQUESTED** |
| Defendant. | ) | |

## <u>ORDER REGARDING HUSBAND'S MOTION TO DEFER PAYMENT OF ATTORNEY FEES AWARDED TO WIFE AND REFUND ATTORNEY FEES GARNISHED FROM HUSBAND'S BANK ACCOUNT AND TO RELEASE FURTHER GARNISHMENT FROM HUSBAND'S BANK ACCOUNT AND WIFE'S MOTION TO CLARIFY THE JUDGMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT</u>

This matter came to be heard on the 15th day of December, 2015 and the 9th day of February, 2016 before the Honorable Joe H. Thompson upon Defendant's, John Anthony Gentry ("Husband"), Motion to Defer Payment of Attorney Fees Awarded to Wife and Refund Attorney Fees Garnished from Husband's Bank Account and to Release Further Garnishment from Husband's Bank Account and upon Plaintiff's, Katherine Wise Gentry ("Wife"), Motion to Clarify the Judgment Amount Garnished from Husband's Bank Account, respectively. Upon a review of the record as a whole, argument of Wife's counsel and Husband, the Court Orders as follows:

1.     It is **ORDERED, ADJUDGED AND DECREED** that the funds paid into the Sumner County Circuit Court Clerk's Office on December 21, 2015 from U.S. Bank in the amount of $4,181.21 shall be immediately released to Wife.

2.     It is further **ORDERED, ADJUDGED AND DECREED** that Husband shall immediately pay into the Sumner County Circuit Clerk's Office the amount of $605.83. This amount represents the difference between the $800.00 Husband should have paid into the Clerk's

Office in two (2) $400.00 increments in January and February of 2016[1] and the $194.17 Husband actually paid into the Clerk's Office on January 4, 2016. These funds, which total $800.00, shall be held by the Clerk's office pending the final hearing.

3.  It is further **ORDERED, ADJUDGED AND DECREED** that Husband shall pay $400.00 into the Sumner County Circuit Clerk's Office on the first Monday of March and April 2016. These funds shall be held by the Clerk's office pending the final hearing.

It is so **ORDERED.**

Entered this _____ day of _____, 2016.

_____
Joe H. Thompson, Circuit Court Judge

APPROVED FOR ENTRY:

_____
Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200
*Counsel for Plaintiff, Katherine Wise Gentry*

---

[1] The Court orally instructed Mr. Gentry to make these payments at the December 15, 2015 hearing.

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 35 of 241 PageID #: 330

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the following method(s) upon the individual(s) listed below on this _11_ day of _February_, 2016:

John A. Gentry
208 Navajo Court
Goodlettsville, TN 37072
johng@estartsolutions.com

☒ Electronic Mail
☒ U.S. Mail
( ) Facsimile
( ) Hand-delivery

_P Taylor   by  pm  nHL_
_#030223_
Pamela A. Taylor

19369N:140454:1158302:1:NASHVILLE

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

KATHERINE WISE GENTRY,    )
                          )
    Plaintiff,            )
                          )
v.                        )    Case No. 2014CV393
                          )
JOHN ANTHONY GENTRY,      )    NOTICE OF ENTRY
                          )    REQUESTED
    Defendant.            )
                          )

## FINAL DECREE GRANTING DIVORCE AND RESERVING ALL OTHER ISSUES

This cause came on to be heard for final hearing on May 2, and 3, 2016, before the Honorable Joe H. Thompson, Judge, upon the Complaint and Amended and Supplemental Complaint for Divorce filed on behalf of Plaintiff, Katherine Wise Gentry ("Ms. Gentry"), and the Answer and Counter-Complaint filed on behalf of Defendant, John Anthony Gentry ("Mr. Gentry"), the testimony of each party, the testimony of each witness called at the final hearing, exhibits at final hearing, all the proof at final hearing, expert witnesses' testimony at final hearing, statements and arguments of counsel and Mr. Gentry, and the entire record, from all of which the Court found that either or both parties are entitled to a divorce and, pursuant to Tennessee Code Annotated section 36-4-129(b), the Court declares the parties to be divorced, effective, *nunc pro tunc*, as of May 3, 2016.

It is therefore **ORDERED, ADJUDGED AND DECREED** that the parties shall be restored to all the rights and privileges of unmarried persons, and the bonds of matrimony heretofore existing between the parties shall be, and are hereby, perpetually dissolved. A separate Final Order addressing the Court's findings with respect to property division and all other matters shall issue.

# EXHIBIT E

19369N-140454-1170443.1.NASHVILLE    1

It is further **ORDERED, ADJUDGED AND DECREED** that the Plaintiff Katherine

Wise Gentry shall be, and is hereby, restored to the name, Katherine Lynn Powers.

It is so **ORDERED, ADJUDGED and DECREED.**

Entered this ___12___ day of ___MAY___, 2016.

_____
Joe H. Thompson, Circuit Court Judge

APPROVED FOR ENTRY:

_____
Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200

*Counsel for Plaintiff, Katherine Wise Gentry*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the
following method(s) upon the individual(s) listed below on this 6 day of _May_, 2016:

John A. Gentry
208 Navajo Court
Goodlettsville, TN 37072
johng@estartsolutions.com

( X ) Electronic Mail
( X ) U.S. Mail
( ) Facsimile
( ) Hand-delivery

_____
Pamela A. Taylor

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 38 of 241 PageID #: 333

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

FILED
_____ 11:24 A.M

KATHERINE WISE GENTRY,                    )
                                          )
        Plaintiff,                        )              JUN 2 2 2016
                                          )
v.                                        )         KATHRYN STRONG, CLERK
                                          )         BY _____ D.C.
JOHN ANTHONY GENTRY,                      )   Case No. 2014CV393
                                          )
        Defendant.                        )   NOTICE OF ENTRY
                                          )   REQUESTED
                                          )

## ORDER REGARDING HUSBAND'S MOTION TO SUPPRESS DEPOSITION TESTIMONY AND EVIDENCE OF THE CUSTODIAN OF RECORDS AT REGIONS BANK; HUSBAND'S MOTION TO SUPPRESS EVIDENCE; HUSBAND'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE; HUSBAND'S MOTION FOR EQUITABLE DISTRIBUTION OF MARITAL ASSETS; HUSBAND'S MOTION TO RETURN ESCROWED ATTORNEY FEES; HUSBAND'S MOTION TO STRIKE AND IMPOSE RULE 37.02 SANCTIONS PURSUANT TO RULE 34A.02

This matter came to be heard on the 2nd and 3rd day of May, 2016 before the Honorable

Joe H. Thompson upon Defendant's, John Anthony Gentry ("Husband"), multiple Motions.

Upon a review of the record as a whole, arguments and statement of Wife's counsel and

Husband, voluntarily representing himself *pro se* without an attorney, the Court finds that

Husband's Motions are not well-taken and, therefore denied.

Husband's Motion to State Findings of Fact and Conclusion of Law is moot as the Court

is required to do this once the trial is concluded.

It is therefore **ORDERED, ADJUDGED AND DECREED** that Husband's Motion to

Suppress Deposition Testimony and Evidence of the Custodian of Records at Regions Bank is

denied. Husband withdrew this Motion at the hearing on May 2, 2016.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Motion to

Suppress Evidence is treated as a Motion *In Limine* and is denied.

19369N:140154:1174476:1:NASHVILLE                    1

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Supplemental Motion to Suppress Evidence is treated as a Motion *In Limine* and is denied.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Motion for Equitable Distribution of Marital Assets is denied. The Court will make an equitable division of the marital estate in its Findings of Fact and Conclusion of Law. A motion is not necessary.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Motion to Strike and Impose Rule 37.02 Sanction is denied.

It is further **ORDERED, ADJUDGED AND DECREED** that Husband's Motion to Return Escrowed Attorney Fees is denied. The Clerk of the Court shall immediately release $1,405.83 to Wife.

It is further **ORDERED, ADJUDGED AND DECREED** that all exhibits containing settlement negotiations between the parties are stricken from the record.

It is so **ORDERED.**

**ENTERED** this 22ᵗʰ day of ____June____, 2016.

_____
Joe H. Thompson, Circuit Court Judge

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 40 of 241 PageID #: 335

APPROVED FOR ENTRY:

*Pamela A. Taylor*

Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200

Counsel for Plaintiff, Katherine Wise Gentry

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage-prepared, to John Gentry, 208 Navajo Court, Goodlettsville, TN 37072, this _14th_ day of June, 2016, and sent via email at johng@estartsolutions.com.

*Pamela A. Taylor*

Pamela A. Taylor

19369N:140454:1174476:1:NASHVILLE                    3

Page 465

1  could deal with that in the patent court and
2  say, No, I actually had that.  Right now all
3  that exist for this Court to deal with is a
4  patent application.
5          THE COURT:  That's sort of what
6  my thought process was, is you have a patent
7  application that is specifically
8  identifiable.  Even though it's not tangible,
9  it is identifiable and readily identifiable
10 as such.
11         MR. LANKFORD:  Absolutely.  If
12 you think that through, Your Honor, and take
13 this logical conclusion, then the parties may
14 came up with something else during the
15 marriage and five years down the road Mr.
16 Gentry files a patent application.  Mr.
17 Gentry can't come back and say it's marital
18 property.  Can't do it.  And, Your Honor,
19 we'd say it's separate property if it's going
20 to be anything.
21         I think the easiest thing to do
22 and the appropriate thing to do, they're
23 co-inventors, let the patent court deal with
24 it.  If the court determines somebody
25 invented it other than the other party,

Page 466

1  great.  If it doesn't get issued, great.  If
2  it gets issued in both their names, great.
3          But I think the proof here today
4  was the idea was Ms. Gentry's.  Mr. Gentry
5  had something to do with actually getting the
6  product made, but the patent application is
7  based on an idea.  It's not carrying out that
8  idea.
9          THE COURT:  All right.  One other
10 bit of housekeeping.  Ms. Taylor has my
11 Exhibit 8 to the Regions Bank statement.
12         MS. TAYLOR:  I do, Your Honor.  I
13 have it right here to return to you.  I had a
14 note to myself.
15         THE COURT:  We pull the video to
16 find out where our exhibits are.
17         MS. TAYLOR:  I know you said that
18 previously.  So I was very cautious.
19         THE COURT:  Thank you, Mr.
20 Gentry.  Thank you, Mr. Lankford.  Remember
21 30 days from today, findings of fact and
22 conclusions of law and I'll make a decision.
23         MR. LANKFORD:  Your Honor, one
24 thing.  I see this coming.  We've got our
25 post-trial brief Mr. Gentry has just now

Page 467

1  received.  I would ask that no responses be
2  done with findings of fact.  I don't want to
3  be drafting a response to a post-trial brief.
4          THE COURT:  Yeah.  I think so.
5  There's no reason to submit anything other
6  than findings of fact and conclusions of law.
7  That adds argument in it.  You're going to
8  make argument in that document.  Go ahead and
9  submit that within 30 days.  Okay?
10         Do you have any questions for me
11 before we conclude today's proceedings?
12         MR. GENTRY:  Just ask about
13 attorney fees, Your Honor.
14         THE COURT:  I'm not going to make
15 a decision on that today.  I want to go back
16 and I want to review the file.  I can make
17 that decision before you submit your findings
18 of fact and conclusions of law, but I want to
19 go back and look at the different motion
20 hearings that we've had before I make a
21 decision on that.
22         MR. LANKFORD:  Your Honor, I'm
23 sorry.  I know I'm delaying things.  Would
24 the Court be interested in ruling on
25 inappropriate marital conduct and the parties

Page 468

1  get divorced today?
2          THE COURT:  You know, I thought
3  about that.  I was thinking about that
4  beforehand.
5          MR. GENTRY:  I didn't hear the
6  question.
7          THE COURT:  He is asking if I
8  want to make a ruling on grounds for divorce.
9          I believe I'm going to declare
10 the parties divorced pursuant to T.C.A.
11 36-401-29, which means that you're divorced
12 effective today.
13         And, Mr. Lankford, if you want to
14 submit a decree declaring the parties
15 divorced today reserving all other issues for
16 resolution by the Court, we'll go ahead and
17 sign that.  But I think I'm going to simply
18 declare the parties divorced today pursuant
19 to 36-401-29.
20         MR. LANKFORD:  Thank you, Your
21 Honor.
22         THE COURT:  All right.  Thank
23 you.
24         MR. GENTRY:  Thank you, Your
25 Honor.

Page 469

```
1              (Court was adjourned at 3:45
2     p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 470

```
1              I certify that the foregoing is a true
2     and accurate transcript of the proceedings
3     taken by me and transcribed to the best of my
4     ability.
5
6
7
8     _____     _____
9     Jackie Wisinger              Date
      LCR No. 245
10    Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

| | | |
|---|---|---|
| KATHERINE WISE GENTRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2014CV393 |
| | ) | |
| JOHN ANTHONY GENTRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO RECUSE HIMSELF

This matter came to be heard on the 7th day of August, 2015 before the Honorable Joe H. Thompson upon Defendant's, John Anthony Gentry ("Husband"), *inter alia*, Motion to Request the Honorable Judge Thompson to Recuse Himself. Upon a review of the record as a whole, arguments and statement of Wife's counsel and Husband, voluntarily representing himself *pro se* without an attorney, the Court entered an Order on September 9, 2015, Denying Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself. As required by Tennessee Supreme Court Rule 10B, the Court makes the following findings of fact and conclusions of law stating the grounds upon which the Court denied Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself.[1]

### I.  Procedural history

The procedural history, as relevant to Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself, is as follows:

1.   On April 9, 2014, Wife filed a Complaint for Divorce against Husband.

## EXHIBIT F

---

[1] The Order denying Husband's Motion to Recuse was entered on September 9, 2015. These Findings of Fact and Conclusions of Law are in support of that Order.

2. On January 15, 2015, Husband, by and through counsel, filed a Second Amended Petition for Civil Contempt or, in the alternative, Motion for *Pendente Lite* Support.

3. On March 10, 2015, the Court conducted a hearing on Husband's Second Amended Petition for Civil Contempt or, in the alternative, Motion for *Pendente Lite* Support.[2] This hearing began at approximately 2:48 p.m. Husband's counsel called both Husband and Dancho Gjorgjijevski ("Mr. Dancho") to testify in support of his Civil Contempt Petition. Husband's proof lasted the better part of the afternoon and into the evening, i.e., from 2:48 p.m. to 7:30 p.m. (See Transcript at p. 55-107). After both Husband's testimony and Mr. Dancho's testimony, Husband's counsel closed his proof on the Petition for Civil Contempt:

> MS. PERKY: Okay. That's all I have.
>
> THE COURT: Anything further, Ms. Taylor?
>
> MS. TAYLOR: No, Your Honor.
>
> THE COURT: All right. Thank you, sir. Be careful stepping down. Thank you for being patient and waiting today.
>
> MS. TAYLOR: Your Honor, may I release the other witness?
>
> **THE COURT: You may. You may. All right. That concludes what we're going to hear today from Mr. Gentry; is that correct?**
>
> **MS. PERKY: Yes, Your Honor.**

(See Transcript of March 10, 2015 Proceedings at p. 198.) (emphasis added).

After Husband closed his proof and after Wife testified as to income and expense issues, Wife moved for a directed verdict on Husband's Petition for Civil Contempt. The Court, after a thorough analysis of the issue, granted Wife's directed verdict motion, explaining as follows:

> MS. TAYLOR: Yes, Your Honor. On the contempt, I would ask for a directed verdict that there is no contempt.

---

[2] Other miscellaneous motions were also heard on March 10, 2015.

THE COURT: Tell me about that. Ms. Perky. What do you think about that?

MS. PERKY: Well, I think, Your Honor, the proof was pretty clear that, you know, one, she has removed him as signatory on accounts that were in both of their names, that they both have access to. She removed him -- she took away and canceled credit cards that, although business credit cards, were used for personal expenses. That's the only one he had. He went to go pay for his gas. Runs it. Rejected. Same thing when he's in Tunica. He tries to run the credit card. Declined. I mean, I think that's exactly what the statutory restraining order is trying to prevent, parties from financially bankrupting the other party and trying to put pressure on them. You know, one party using their financial leverage to prevent the other party from proceeding as the status quo in marriage, and, secondly, to, you know, defend the divorce proceedings. And that's essentially what's happened here. He's had to rely on credit cards in his own name, max them out. He's taking cash advances from credit cards in order to pay marital expenses. This is exactly what the statutory restraining order was created to prevent.

THE COURT: Well, the only reason I would disagree with you a little bit is because Mr. Gentry's and my definition of de minimis are very different.

MS. PERKY: Sure.

THE COURT: And so what's happened is we've had an utter and complete commingling of the personal life and the business life. And I think for a finding of contempt, I have to find willful behavior with respect to specific conduct. And the problem that I have with respect to that standard is, I think the conduct of the parties -- I think if she had asked for some sort of contempt against him, she'd be in the same boat. They just -- there is no delineation between the two. And so I can't find her conduct willful when there was no bright-line distinction as far as how the parties operated with respect to their personal finances and their business finances. So I'm going to grant Ms. Taylor's motion on the contempt. Now, that might have – this commingling may have some value, as far as the standard of living of the parties and things of that nature, on final hearing. *But as far as contempt, I'm going to grant Ms. Taylor's directed verdict motion.*

(See Transcript of March 10, 2015 Proceedings at p. 216-18.) (emphasis added).

4. On March 19, 2015, the Court entered an Order dismissing Husband's Second Amended Petition for Civil Contempt.

5. On July 20, 2015, Husband filed, *inter alia*, the subject Motion to Request the Honorable Judge Thompson to Recuse Himself.

6. On August 4, 2015, Wife filed a Response to Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself.

## II. Analysis

The Court of Appeals, in <u>Durham v. Tenn. DOL & Workforce Dev.</u>, set forth a detailed analysis of the standard courts are to apply in determining whether recusal is appropriate:

> It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Under Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17—2—101 (2009), and Tennessee Supreme Court Rule 10 (the Code of Judicial Conduct), a judge may not preside over a matter in which the judge has an interest in the outcome. *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (citations omitted). The purpose of this prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [ ] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, the courts have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. App. 1998) (citations omitted). Therefore, even in cases wherein a judge sincerely believes that he can preside fairly and impartially, he should recuse himself if a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564—65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test, and it is designed to avoid both actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 565 (citation omitted).

Adverse rulings, however, do not provide grounds for recusal. *Id.* Additionally, although "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party[.] . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). *Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). "Personal bias involves an antagonism toward the moving party, but does not refer to any views that a judge may have regarding the subject matter at issue." Id.* (citing *United States v. Baker*, 441 F.Supp. 612, 616 (M.D. Tenn. 1977); 46 Am.Jur.2d "Judges" § 167 (1969)). Moreover, "[i]mpersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id.* (citation omitted). Where "the bias is based upon [the judge's] actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* (citation omitted). "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.* (citing *Baker*, 441 F.Supp. at 617). Disqualification of a judge "is required 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (quoting *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001))).

No. M2014-00428-COA-R3-CV, 2015 Tenn. App. LEXIS 97 (Tenn. Ct. App. Jan. 27, 2015) (emphasis added).

It appears that Husband asks this Court to recuse itself from these proceedings based on two (2) particular instances that occurred during the proceedings on March 10, 2015.

First, Husband argues that this Court should recuse itself from this matter because the Court's "impartiality" has been "tainted." As support for this position, Husband insinuates that Wife's counsel misrepresented facts to the Court during the following exchange:

BY MS. TAYLOR:

Q. It was not until two years later that the amended application was submitted; correct?

A. That's correct.

Q. Now, in terms of talking recently with the patent attorney, you're the one who first called the patent attorney to talk to them about the divorce; right?

A. No, that's not correct at all.

Q. And if there's an e-mail from the patent attorney saying he received a phone call from you, that's incorrect?

MS. PERKY: Calls for speculation, Your Honor.

THE WITNESS: I don't know –

THE COURT: Hang on, Mr. Gentry. Do we have the e-mail? Are you going to show him the e-mail?

MS. TAYLOR: I'll have to find it, Your Honor.

MS. PERKY: Your Honor, I would object to the e-mail anyway. It's hearsay. It's an out-of-court statement by an attorney. The attorney is not even here for me to cross-examine or put on any evidence at all, or even know if it's a complete chain of the e-mail. I mean . . .

THE COURT: Do you have a response to that, Ms. Taylor?

MS. TAYLOR: The response is Mr. Gentry is the one who brought up this line of questioning, and he is testifying that Ms. Gentry contacted the patent attorney and that's what he was told. I can bring in Ms. Gentry's testimony to testify that when -- she received a phone call from the patent attorney after Mr. Gentry had called.

THE COURT: All right. I think that's probably the better way to get there.

(See Transcript of March 10, 2015 Proceedings at p. 128.) Husband seems to suggest that

because Ms. Taylor responded to the Court, "I'll have to find it, Your Honor," when referring to

an e-mail, it somehow so tainted this Court's opinion of Husband such that this Court is now biased.[3]

Second, in support of his argument that the Court's impartiality has been tainted, Husband next relies on the following statement made by the Court in commenting on Husband's spending habits in support of his Motion: "Well, the only reason I would disagree with you a little bit is because Mr. Gentry's and my definition of *de minimis* are very different." (See Transcript of March 10, 2015 Proceedings at p. 216-18.)

Applying the principles to the facts asserted by Husband, there is absolutely no allegation that this Court has any bias that "stems from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). Rather, any bias (which there is none) toward Husband would be ". . . based upon [the Court's] actual observance of witnesses and evidence given during the trial." Id. Simply, the Court has **absolutely no bias** towards Husband and, even if the Court had gained bias (which it did not), that bias would have to, by Husband's very logic, stem from proceedings at the March 10, 2015 hearing.

**III. Conclusion**

Based on the foregoing, Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself is, as set forth in the September 9, 2015 Order, denied.

---

[3] The Court finds that Wife's counsel has conducted herself in good faith and, at no point, intentionally misled the Court.

7

It is so **ORDERED.**

**ENTERED** this _____ day of _____, 2015.

_____
Joe H. Thompson, Circuit Court Judge

APPROVED FOR ENTRY:

_____
Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200

Counsel for Plaintiff, Katherine Wise Gentry

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been mailed, postage-prepared, to John Gentry, 208 Navajo Court, Goodlettsville, TN 37072, this _____ day of September, 2015.

_____
Circuit Court Clerk

8

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

| | | |
|---|---|---|
| KATHERINE WISE GENTRY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 2014CV393 |
| | ) | |
| JOHN ANTHONY GENTRY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO RECUSE HIMSELF

This matter came to be heard on the 7th day of August, 2015 before the Honorable Joe H. Thompson upon Defendant's, John Anthony Gentry ("Husband"), *inter alia*, Motion to Request the Honorable Judge Thompson to Recuse Himself. Upon a review of the record as a whole, arguments and statement of Wife's counsel and Husband, voluntarily representing himself *pro se* without an attorney, the Court entered an Order on September 9, 2015, Denying Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself. As required by Tennessee Supreme Court Rule 10B, the Court makes the following findings of fact and conclusions of law stating the grounds upon which the Court denied Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself.[1]

### I.      Procedural history

The procedural history, as relevant to Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself, is as follows:

1.      On April 9, 2014, Wife filed a Complaint for Divorce against Husband.

# EXHIBIT G

---

[1] The Order denying Husband's Motion to Recuse was entered on September 9, 2015. These Findings of Fact and Conclusions of Law are in support of that Order.

2.	On January 15, 2015, Husband, by and through counsel, filed a Second Amended Petition for Civil Contempt or, in the alternative, Motion for *Pendente Lite* Support.

3.	On March 10, 2015, the Court conducted a hearing on Husband's Second Amended Petition for Civil Contempt or, in the alternative, Motion for *Pendente Lite* Support.[2] This hearing began at approximately 2:48 p.m. Husband's counsel called both Husband and Dancho Gjorgjijevski ("Mr. Dancho") to testify in support of his Civil Contempt Petition. Husband's proof lasted the better part of the afternoon and into the evening, i.e., from 2:48 p.m. to 7:30 p.m. (See Transcript at p. 55-107). After both Husband's testimony and Mr. Dancho's testimony, Husband's counsel closed his proof on the Petition for Civil Contempt:

> MS. PERKY: Okay. That's all I have.
>
> THE COURT: Anything further, Ms. Taylor?
>
> MS. TAYLOR: No, Your Honor.
>
> THE COURT: All right. Thank you, sir. Be careful stepping down. Thank you for being patient and waiting today.
>
> MS. TAYLOR: Your Honor, may I release the other witness?
>
> **THE COURT: You may. You may. All right. That concludes what we're going to hear today from Mr. Gentry; is that correct?**
>
> **MS. PERKY: Yes, Your Honor.**

(See Transcript of March 10, 2015 Proceedings at p. 198.) (emphasis added).

After Husband closed his proof and after Wife testified as to income and expense issues, Wife moved for a directed verdict on Husband's Petition for Civil Contempt. The Court, after a thorough analysis of the issue, granted Wife's directed verdict motion, explaining as follows:

> MS. TAYLOR: Yes, Your Honor. On the contempt, I would ask for a directed verdict that there is no contempt.

---

[2] Other miscellaneous motions were also heard on March 10, 2015.

THE COURT: Tell me about that, Ms. Perky. What do you think about that?

MS. PERKY: Well, I think, Your Honor, the proof was pretty clear that, you know, one, she has removed him as signatory on accounts that were in both of their names, that they both have access to. She removed him -- she took away and canceled credit cards that, although business credit cards, were used for personal expenses. That's the only one he had. He went to go pay for his gas. Runs it. Rejected. Same thing when he's in Tunica. He tries to run the credit card. Declined. I mean, I think that's exactly what the statutory restraining order is trying to prevent, parties from financially bankrupting the other party and trying to put pressure on them. You know, one party using their financial leverage to prevent the other party from proceeding as the status quo in marriage, and, secondly, to, you know, defend the divorce proceedings. And that's essentially what's happened here. He's had to rely on credit cards in his own name, max them out. He's taking cash advances from credit cards in order to pay marital expenses. This is exactly what the statutory restraining order was created to prevent.

THE COURT: Well, the only reason I would disagree with you a little bit is because Mr. Gentry's and my definition of de minimis are very different.

MS. PERKY: Sure.

THE COURT: And so what's happened is we've had an utter and complete commingling of the personal life and the business life. And I think for a finding of contempt, I have to find willful behavior with respect to specific conduct. And the problem that I have with respect to that standard is, I think the conduct of the parties -- I think if she had asked for some sort of contempt against him, she'd be in the same boat. They just -- there is no delineation between the two. And so I can't find her conduct willful when there was no bright-line distinction as far as how the parties operated with respect to their personal finances and their business finances. So I'm going to grant Ms. Taylor's motion on the contempt. Now, that might have – this commingling may have some value, as far as the standard of living of the parties and things of that nature, on final hearing. *But as far as contempt, I'm going to grant Ms. Taylor's directed verdict motion.*

(See Transcript of March 10, 2015 Proceedings at p. 216-18.) (emphasis added).

4.      On March 19, 2015, the Court entered an Order dismissing Husband's Second

Amended Petition for Civil Contempt.

5.      On July 20, 2015, Husband filed, *inter alia*, the subject Motion to Request the

Honorable Judge Thompson to Recuse Himself.

6.      On August 4, 2015, Wife filed a Response to Husband's Motion to Request the

Honorable Judge Thompson to Recuse Himself.

## II.    Analysis

The Court of Appeals, in <u>Durham v. Tenn. DOL & Workforce Dev.</u>, set forth a detailed

analysis of the standard courts are to apply in determining whether recusal is appropriate:

> It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Under Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17—2—101 (2009), and Tennessee Supreme Court Rule 10 (the Code of Judicial Conduct), a judge may not preside over a matter in which the judge has an interest in the outcome. *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (citations omitted). The purpose of this prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [ ] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, the courts have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. App. 1998) (citations omitted). Therefore, even in cases wherein a judge sincerely believes that he can preside fairly and impartially, he should recuse himself if a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564—65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test, and it is designed to avoid both actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 565 (citation omitted).

4

Adverse rulings, however, do not provide grounds for recusal. *Id.* Additionally, although "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party[,] . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). ***Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). "Personal bias involves an antagonism toward the moving party, but does not refer to any views that a judge may have regarding the subject matter at issue." Id.*** (citing *United States v. Baker*, 441 F.Supp. 612, 616 (M.D. Tenn. 1977); 46 Am.Jur.2d "Judges" § 167 (1969)). Moreover, "[i]mpersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id.* (citation omitted). Where "the bias is based upon [the judge's] actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* (citation omitted). "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.* (citing *Baker*, 441 F.Supp. at 617). Disqualification of a judge "is required 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (quoting *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001))).

No. M2014-00428-COA-R3-CV, 2015 Tenn. App. LEXIS 97 (Tenn. Ct. App. Jan. 27, 2015) (emphasis added).

It appears that Husband asks this Court to recuse itself from these proceedings based on two (2) particular instances that occurred during the proceedings on March 10, 2015.

First, Husband argues that this Court should recuse itself from this matter because the Court's "impartiality" has been "tainted." As support for this position, Husband insinuates that Wife's counsel misrepresented facts to the Court during the following exchange:

BY MS. TAYLOR:

Q. It was not until two years later that the amended application was submitted; correct?

A. That's correct.

Q. Now, in terms of talking recently with the patent attorney, you're the one who first called the patent attorney to talk to them about the divorce; right?

A. No, that's not correct at all.

Q. And if there's an e-mail from the patent attorney saying he received a phone call from you, that's incorrect?

MS. PERKY: Calls for speculation, Your Honor.

THE WITNESS: I don't know—

THE COURT: Hang on, Mr. Gentry. Do we have the e-mail? Are you going to show him the e-mail?

MS. TAYLOR: I'll have to find it, Your Honor.

MS. PERKY: Your Honor, I would object to the e-mail anyway. It's hearsay. It's an out-of-court statement by an attorney. The attorney is not even here for me to cross-examine or put on any evidence at all, or even know if it's a complete chain of the e-mail. I mean . . .

THE COURT: Do you have a response to that, Ms. Taylor?

MS. TAYLOR: The response is Mr. Gentry is the one who brought up this line of questioning, and he is testifying that Ms. Gentry contacted the patent attorney and that's what he was told. I can bring in Ms. Gentry's testimony to testify that when -- she received a phone call from the patent attorney after Mr. Gentry had called.

THE COURT: All right. I think that's probably the better way to get there.

(See Transcript of March 10, 2015 Proceedings at p. 128.) Husband seems to suggest that

because Ms. Taylor responded to the Court, "I'll have to find it, Your Honor," when referring to

an e-mail, it somehow so tainted this Court's opinion of Husband such that this Court is now biased.[3]

Second, in support of his argument that the Court's impartiality has been tainted, Husband next relies on the following statement made by the Court in commenting on Husband's spending habits in support of his Motion: "Well, the only reason I would disagree with you a little bit is because Mr. Gentry's and my definition of *de minimis* are very different." (See Transcript of March 10, 2015 Proceedings at p. 216-18.)

Applying the principles to the facts asserted by Husband, there is absolutely no allegation that this Court has any bias that "stems from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). Rather, any bias (which there is none) toward Husband would be ". . . based upon [the Court's] actual observance of witnesses and evidence given during the trial." Id. Simply, the Court has **absolutely no bias** towards Husband and, even if the Court had gained bias (which it did not), that bias would have to, by Husband's very logic, stem from proceedings at the March 10, 2015 hearing.

### III.  Conclusion

Based on the foregoing, Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself is, as set forth in the September 9, 2015 Order, denied.

---

[3] The Court finds that Wife's counsel has conducted herself in good faith and, at no point, intentionally misled the Court.

19369N:140454:1131349:1:NASHVILLE

It is so **ORDERED.**

**ENTERED** this _____ day of _____, 2015.

_____
Joe H. Thompson, Circuit Court Judge

APPROVED FOR ENTRY:

_____
Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street
Suite 800
Nashville, TN 37219-2490
Telephone: (615) 244-5200

Counsel for Plaintiff, Katherine Wise Gentry

*BHL*
*hand-delivered*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been ~~mailed, postage-prepared,~~ to John Gentry, ~~208 Navajo Court, Goodlettsville, TN 37072~~, this *15th* day of September, 2015.

~~Circuit Court Clerk~~ *Brenton H. Lankford*

IN THE CIRCUIT COURT
FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

KATHERINE WISE GENTRY, )
                       )
        Plaintiff,     )
                       )
vs.                    )   NO. 2014-CV-393
                       )
JOHN ANTHONY GENTRY,   )
                       )
        Defendant.     )
_____)

Transcript of Proceedings

Taken before the
Honorable Joe H. Thompson

September 15, 2015

VOWELL, JENNINGS & HUSEBY
Court Reporting Services
207 Washington Square Building
214 Second Avenue North
Nashville, Tennessee  37201
(615) 256-1935

EXHIBIT H

Page 2

1  APPEARANCES:
2  For the Plaintiff:
3          BRENTON H. LANKFORD, ESQ.
           Stites & Harbison
4          401 Commerce Street, Suite 800
           Nashville, TN 37219
5          (615) 782-2246
           brenton.lankford@stites.com
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1   P R O C E E D I N G S
2           MR. LANKFORD:  Good morning, Your
3   Honor.  Brent Lankford on behalf of Ms.
4   Gentry.
5           THE COURT:  What is this motion?
6           MR. LANKFORD:  This is Mr.
7   Gentry's motion to reconvene.
8           THE COURT:  I thought we had this
9   set for a final hearing.
10          MR. LANKFORD:  It is set for a
11  final hearing, Your Honor.  Two dates in May.
12          THE COURT:  What do you want to
13  do, Mr. Gentry?
14          MR. GENTRY:  Your Honor, I get
15  kind of caught like a deer in the headlights.
16  Before we get into the motion, there's a
17  couple of items I would just like to put to
18  your attention so we don't miss them.
19          Because of Ms. Gentry's malicious
20  behavior, I --
21          THE COURT:  We don't have time
22  for that this morning.  This is a five
23  o'clock motion hearing docket.  All right?
24  We're not getting into substance.
25          Wanting to reconvene a hearing.

Page 4

1   What sort of hearing do you want to
2   reconvene?
3           MR. GENTRY:  One of the most
4   critical matters is our pending patent.  I
5   think we've lost our patent because of Ms.
6   Gentry's behavior.  During testimony in the
7   court on Page 99 --
8           THE COURT:  What sort of motion
9   do you want to reconvene?
10          MR. GENTRY:  I did not have an
11  opportunity to cross-examine Ms. Gentry.  Ms.
12  Taylor stated -- during the hearing Ms.
13  Taylor stated that she should have been
14  allowed to cross-examine and that a ruling
15  should not be issued without her having an
16  opportunity to cross-examine.
17          I was not given that fair
18  opportunity.  If I could show the Court and
19  have an opportunity to cross-examine Ms.
20  Gentry, I can assure you that all of the
21  behavior that my wife has delegated as
22  improper on my part is just ridiculous
23  allegations.
24          THE COURT:  And you don't think
25  you're going to get that opportunity at the

Page 5

1   final hearing?
2           MR. GENTRY:  The problem is, also
3   in one of my motions that was not heard is in
4   regards to partner compensation.  So I've
5   already demonstrated to this Court and
6   there's clear precedence that a spouse that
7   contributes to a business during the time of
8   marriage whether it's owned by the other
9   spouse before the marriage or not is entitled
10  to the appreciation of the business.
11          Until my portion is paid out, I
12  should continue to receive my partnership
13  income.  We demonstrated in the hearing that
14  I took half pay and no pay to facilitate
15  breath in the business.  We presented
16  evidence that I contributed significantly to
17  the growth of the business.  And what's
18  happening now is the dissipation of assets.
19  If she continues to run the business now
20  without compensating my fair share, she's
21  going to have a bill that she can't afford to
22  pay, Your Honor.
23          THE COURT:  What's your proof in
24  dissipation of assets?
25          MR. GENTRY:  She took $20,000 and

Case 3:17-cv-00020   Document 32-1  Suite 2070 Nashville, TN 37201  Page 61 of 241 PageID #: 350

KATHERINE WISE GENTRY vs. JOHN ANTHONY GENTRY
Transcript of Proceedings on 09/15/2015

Pages 6..9

Page 6

1  paid her legal fees.
2          THE COURT:  What proof do you
3  have --
4          MR. GENTRY:  Valuation from
5  our -- we both agreed to Vic Alexander.  And
6  the valuation in here, he conducted that
7  from -- he made that discretionary spending,
8  because he also recognizes that spending
9  company funds on a divorce attorney is not
10  proper use of company funds.  So in doing his
11  valuation, in other words, he's adding that
12  back in to the business income, because he
13  knows she shouldn't have paid that.
14          THE COURT:  Sir, what's your
15  response to that?
16          MR. LANKFORD:  Your Honor, this
17  is our fourth time to be here.  I point the
18  Court to our response to husband's motion to
19  reconvene and complete hearing for petition
20  of contempt that we filed yesterday with this
21  Court.
22          Your Honor, the Court's already
23  denied this motion.  We were here on a
24  six-hour hearing when Mr. Gentry was
25  represented on the petition for contempt.  We

Page 7

1  came back to finish up his petition on the
2  stock certificates.  We came back on what he
3  titled -- to be clear, he filed this on July
4  20th.  He filed a motion titled, among other
5  things, to reconvene hearing for petition for
6  contempt, which he requested this Court to
7  reconvene to properly complete the trial of
8  husband's petition for contempt.
9          On August 4th, we had a hearing
10  on that and we were awarded our attorney's
11  fees for coming down here arguing something
12  we argued twice.  On August 4th he filed the
13  same motion for which he literally copied and
14  pasted his previous motion that had been
15  denied and we had been awarded attorney's
16  fees and filed and made us come down here and
17  argue this again.
18          This is our fourth time in front
19  of this Court on this issue.  We now have
20  final hearing dates.  The Court has entered
21  an order on September 9th in which it denied
22  husband's motion to recuse and to declare a
23  mistrial petition for contempt, or in the
24  alternative, to reconvene hearing for
25  petition for contempt.

Page 8

1          The Court's already denied this
2  motion.  He literally copied and pasted his
3  previous motion to reconvene into a new
4  motion to reconvene and filed it while the
5  Court has denied this motion.  We would ask
6  for our attorney's fees again having to
7  defend this motion.
8          MR. GENTRY:  May I respond, Your
9  Honor?
10          THE COURT:  Let me read the file
11  a little bit.  (Reading document.)
12          So back when we had the hearing
13  that went late into the evening, we disposed
14  of the petition for contempt, did we not?
15          MR. LANKFORD:  Yes, Your Honor.
16  That was dismissed on directed verdict.
17          MR. GENTRY:  Your Honor, may I
18  address that, please?
19          THE COURT:  No.  Hang on.
20          All right.  Mr. Gentry, I want to
21  make sure you can hear me.  You have two
22  things that are going on here.  One, you have
23  this divorce that's going on.  All right?
24  You've got a final hearing two days in May of
25  next year?

Page 9

1          MR. LANKFORD:  Yes, Your Honor.
2  I can't remember the exact dates.
3          THE COURT:  Mr. Gentry, we've got
4  a final hearing date for the divorce.  Okay?
5  The other thing that you've got going on is
6  this petition for contempt.  Now, that was
7  originally raised by your attorney and we
8  had, as you know, a very lengthy hearing back
9  in March on this issue.  Your attorney put on
10  all of your proof.  And then after your
11  attorney put on all of your proof, Ms.
12  Gentry's attorney made a motion for a
13  directed verdict.
14          Under the law that's a motion
15  that says, Look, plaintiff has the burden of
16  proving all the elements of their petition,
17  and without us putting on a single shred of
18  proof, we don't believe they met the legal
19  basis to support their petition for contempt.
20  I granted that motion.  I granted that motion
21  after your attorney put on all of your proof.
22  Okay?  So that issue has been resolved.  It's
23  over with.
24          MR. GENTRY:  Can I address that
25  just briefly, Your Honor?

**Page 10**

1    THE COURT: You really can't,
2  because we've been here multiple times.
3    MR. GENTRY: I haven't been heard
4  multiple times, Your Honor.
5    THE COURT: But you were heard
6  that day and your attorney put on all your
7  proof that day. And at some point, a case
8  has to come to an end. So the petition for
9  contempt is over. The divorce is not. We
10  will have a final hearing in May on the
11  divorce. You will be able to bring up proof
12  about dissipation of assets, whether or not
13  there's been waste in Ms. Gentry allowing a
14  patten to expire. All of those issues are
15  still viable in the divorce. They are not
16  viable any longer in the petition for
17  contempt.
18    MR. GENTRY: A couple
19  of issues --
20    THE COURT: You --
21    MR. GENTRY: You won't hear me,
22  Your Honor?
23    THE COURT: No.
24    MR. GENTRY: That's a violation
25  of judicial conduct, sir. I've not had a

**Page 11**

1  chance to be heard.
2    THE COURT: No. It's absolutely
3  not and here's why. You don't understand the
4  law well enough to understand what I'm
5  telling you. I'm not talking down to you.
6  It's like I don't understand Chinese. I've
7  never been trained in Chinese. All right?
8    You had an attorney. Your
9  attorney presented all of your proof on the
10  petition for contempt and you didn't meet
11  your burden of proof based upon the proof
12  that your attorney put on. So I ruled in Ms.
13  Gentry's favor on the petition for contempt.
14  That part is over. Your motion's denied.
15    Again, I'm awarding them their
16  attorney's fees. Every time you bring up
17  this petition for contempt, you're going to
18  come here and I'm going to deny it unless
19  there is something completely unforeseen.
20  And I don't see it yet. And they're going to
21  get their attorney's fees every time. Every
22  time.
23    Now, we've got a divorce hearing
24  and that's what you need to be concentrating
25  on. Okay?

**Page 12**

1    MR. GENTRY: I'm just
2  disappointed that the Court won't hear me.
3    THE COURT: Well, we did hear you
4  back in March.
5    MR. GENTRY: You did not, sir.
6    THE COURT: Heard you until eight
7  o'clock.
8    MR. GENTRY: This is a travesty,
9  Your Honor. That's --
10    THE COURT: Mr. Gentry, that's
11  it. Just have a seat.
12    MR. LANKFORD: Mr. Gentry brought
13  up the issue of Rule 10 about findings of
14  fact. We've drafted a response back. The
15  Court has already entered the order. But
16  just to lighten the Court's mood --
17    MR. GENTRY: I didn't hear. What
18  is this?
19    MR. LANKFORD: We have proposed
20  findings of fact and conclusions of law on
21  the motion to recuse that we've presented to
22  the Court. And we can provide that to the
23  Court in a word document.
24    THE COURT: Can you send that to
25  scheduling?

**Page 13**

1    MR. GENTRY: I haven't gotten a
2  copy of this, have I?
3    MR. LANKFORD: No, you have not.
4    THE COURT: Make sure Mr. Gentry
5  has a copy and then submit it through the
6  scheduling, word version through scheduling
7  by e-mail.
8    MR. LANKFORD: For the record, I
9  just passed a copy of the findings of fact to
10  Mr. Gentry.
11    THE COURT: Okay. If you'll just
12  note that. I'm going to let you take the
13  file with the court officer in there so you
14  can file this, file your proposed findings of
15  fact with the court clerk and then submit a
16  copy via e-mail.
17    He's going to submit via e-mail
18  what he just handed you. Okay?
19    MR. GENTRY: Yes, Your Honor.
20  Tell me what to do.
21    MR. LANKFORD: I submitted a
22  clerk's certificate of service on that
23  findings of fact.
24    THE COURT: That will be fine.
25  Thank you. All right.

Vowell, Jennings & Huseby          www.vowelljennings.com
214 2nd Ave., Suite 207, Nashville, TN 37201          (800) 445-9390
Case 3:17-cv-00020  Document 32-1 Filed 03/31/17  Page 63 of 241 PageID #: 358

Page 14

1   (Court adjourned at 8:30 a.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 15

1        I certify that the foregoing is a true
2   and accurate transcript of the proceedings
3   taken by me and transcribed to the best of my
4   ability.
5
6
7
8   _____    _____
9   Jackie Wisinger            Date
    LCR No. 245
10  Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 3:17-cv-00020   Document 32-1   Filed 03/31/17   Page 64 of 241 PageID #: 359

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

FILED  2:46 PM

MAR 1 9 2015

KATHRYN STRONG, CLERK
BY_____D.C.

| | | |
|---|---|---|
| KATHERINE GENTRY,<br>Plaintiff, | )<br>)<br>) | |
| vs. | )<br>) | Case No. **2014-CV-393** |
| JOHN ANTHONY GENTRY,<br>Defendant. | )<br>)<br>) | |

======================================================

# ORDER

======================================================

On March 10, 2015, several motions were presented to this Court. The Court finds and Orders as follows:

1.   Plaintiff's Motion to Amend is granted.

2.   Defendant's Motion to Compel is granted. Plaintiff shall answer discovery on or before March 25, 2015.

3.   Plaintiff's Motion to Compel is granted. Defendant shall supplement on or before April 24, 2015. Attorney's Fees are Reserved.

4.   Defendant's Second Amended Petition for Civil Contempt is denied.

5.   Motion for Pende Lite Support - parties to exchange income and expense statements for first time at March 10, 2015 hearing. See Exhibits 23 and 24. Parties have until March 23, 2015 to file responses to income and expense statements, then Court will rule on Motion.

6.   Motion to Determine Control of Business and Partner Compensation and for Other Relief - proof was not finished. To be rescheduled.

# EXHIBIT I

**IT IS SO ORDERED.** This the 19th day of March, 2015.

_____
JOE H. THOMPSON, Circuit Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following Order has this day been placed in the United States Mail, postage pre-paid to the following: This the 19 day of March, 2015.

Ms. Pamela Taylor
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, Tennessee 37219

Ms. Sarah Perky
Fifth Third Center, Suite 2200
424 Church Street
Nashville, Tennessee 37219

_____
Judicial Assistant

# STITES & HARBISON PLLC
### ATTORNEYS

Pamela A. Taylor
(615) 782-2212
(615) 313-3971 FAX
pamela.taylor@stites.com

May 8, 2015

**HAND-DELIVERED**

Sarah Richter Perky, Esq.
Hollins, Raybin & Weissman, PC
424 Church Street, Suite 2200
Financial Center,
Nashville, TN 37219-2374

      RE:   Gentry v. Gentry

Dear Sarah:

      In response to the subpoena issued to Ms. Gentry, enclosed are the following documents:

    4.     Sweet Wise balance sheets for the periods ending 1/31/14-3/31/14, 5/31/14-3/31/15;

    5.     Cash flow spreadsheet;

    7.     Statements on Capital One Visa account ending 5801 dated 1/7/15-4/7/15;

    8.     Statements on American Express account ending 52003 for the period 2/1/15-4/13/15;

    9.     Statements on Regions Bank account ending 0166 for the period 1/31/15-4/30/15;

    10.    Statements and cancelled checks on Regions Bank account ending 9953 for the period 1/8/15-5/6/15;

    11.    Ms. Gentry provided statements on her Regions Bank account ending 9953 for the period 12/9/09-2/4/15 in her original Answers to Interrogatories. She does not keep her deposit slips and is, therefore, unable to provide them. With regard to cancelled checks, Ms. Gentry does not receive these with her statements. She is willing to sign an authorization allowing Mr. Gentry to obtain these documents himself directly from the bank.

    12.    Attached are the documents Ms. Gentry has in her possession regarding medical reimbursement requests made to Mr. Wise. Ms. Gentry no longer sends "invoices" to Mr. Wise, she simply provides him with copies of the children's EOBs.

19369N:140454:1112908:1:NASH

14.     Sweet Wise, Inc. general ledger for the period 7/1/14-3/31/15.

Ms. Gentry is working on gathering the additional documents. Since Ms. Gentry did not receive the subpoena until April 27, 2015, she has not able to produce the documents requested in 12 days. She is very busy with her children, work and the divorce. Her son continues to have medical problems. He is also scheduled to graduate from high school at the end of next week.

I will continue to work with her to gather the remainder of the documents requested and provide those as soon as possible.

With warmest personal regards, I am

Sincerely yours,

Pamela A. Taylor

PAT:sbm

Enclosures

cc:     Ms. Kathy Gentry (via email)



Robert J. Turner
Iesha M. Dupes
Pete P. Frech
J. Ryan Johnson
Paul J. Reynard
Loren A. Sanderson

January 29, 2015

Pamela A Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219-2376

     RE:   John Anthony Gentry vs. Kathy W Gentry
              Docket No.: 2014CV393

Dear Pamela A Taylor:

Our office sent Interrogatories and Request for Admissions to your office for Ms. Gentry to answer on the 6th day of November, 2015. As of the date of this letter our office has not received Ms. Gentry's responses. Please submit Ms. Gentry's responses to our Interrogatories and Request for Production of Documents within ten (10) days otherwise we will have to file a Motion to Compel Discovery with the courts.

With kindest personal regards, I am

Very truly yours,
TURNER LAW OFFICES, P.C.

Robert J Turner

208 Third Avenue North • First Floor, Suite 100 • Nashville, Tennessee 37201
Telephone (615) 259-2660 • Facsimile (615) 259-0912 • www.TurnerLawOffices.com

CLARKSVILLE       MURFREESBORO       NASHVILLE

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 69 of 241 PageID #: 364

```
                IN THE CIRCUIT COURT
        FOR SUMNER COUNTY, TENNESSEE
                  AT GALLATIN

KATHERINE WISE GENTRY, )
                       )
        Plaintiff,     )
                       )
vs.                    )   NO. 2014-CV-393
                       )
JOHN ANTHONY GENTRY,   )
                       )
        Defendant.     )
                       )
```

```
        Court Proceedings

        Taken before the
        Honorable Joe H. Thompson

        February 9, 2016
```

```
        VOWELL, JENNINGS & HUSEBY
        Court Reporting Services
    207 Washington Square Building
        214 Second Avenue North
    Nashville, Tennessee  37201
            (615) 256-1935
```

Page 2

1  APPEARANCES:
2  For the Plaintiff:
3       BRENTON H. LANKFORD, ESQ.
        Stites & Harbison
4       401 Commerce Street, Suite 800
        Nashville, TN 37219
5       (615) 782-2246
        brenton.lankford@stites.com
6
7
   For the Defendant:
8
        John A. Gentry, Pro Se
9       208 Navajo Court
        Goodlettsville, TN 37072
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1       P R O C E E D I N G S
2       MR. GENTRY: Your Honor, I wonder
3  if I might have an accommodation because of
4  my hearing. Can I stand up here and swap
5  sides?
6       THE COURT: Sure. You don't have
7  to swap sides. Just come on up.
8       MR. GENTRY: I'm deaf on the left
9  side. It would be easier to stand here.
10      THE COURT: That will be fine.
11      MR. LANKFORD: Good morning, Your
12  Honor. Brent Lankford on behalf of Ms.
13  Gentry. Mr. Gentry has four motions on
14  today's docket. We have three. Ours are
15  relatively easy to depose of. I think we
16  need to start with Mr. Gentry's motions.
17      MR. GENTRY: First motion I'd
18  like to discuss, Your Honor, opposing
19  counsel --
20      THE COURT: Hold on, Mr. Gentry.
21  Which motions do you think you have, Mr.
22  Gentry?
23      MR. GENTRY: I have a list if
24  that would be helpful for Your Honor.
25      THE COURT: Sure. All right, Mr.

Page 4

1  Gentry. One of your motions is a request for
2  me to rule on wife's motion. So we'll just
3  take that up with the wife's motion.
4       MR. GENTRY: Is that on the
5  GoDaddy subpoena, Your Honor, the second one?
6       THE COURT: Right.
7       MR. LANKFORD: Your Honor, I'll
8  short circuit the GoDaddy subpoena. We would
9  object, because we didn't receive service on
10  the original subpoena. Now that we have
11  notice, we have no objection. We'll strike
12  our objection.
13      THE COURT: All right. So that
14  takes care of that.
15      MR. GENTRY: That subpoena can
16  move forward, correct?
17      THE COURT: That's what they're
18  saying.
19      MR. LANKFORD: We'll submit a
20  notice striking our motion.
21      THE COURT: Right. Okay.
22      Now, tell me, why are you wanting
23  me to address all these matters before the
24  final hearing?
25      MR. GENTRY: Regarding the

Page 5

1  patent, Your Honor, I believe that because of
2  wife's behavior our patent has been short
3  circuited. Your Honor expressed concern
4  about that back in the March hearing.
5       THE COURT: Okay. My question
6  is: Why do you want me -- we've got a
7  hearing in May?
8       MR. LANKFORD: Yes, Your Honor.
9       MR. GENTRY: You won't be able to
10  issue a final ruling in May, because we won't
11  have the disposition of the patent. What I'm
12  asking the Court to decide today is, let's
13  talk to an attorney. I need the business to
14  pay for it, because I can't forward it. And
15  let's see if there's any way we can save the
16  patent.
17      MR. LANKFORD: If I may interrupt
18  again, Your Honor. Ms. Gentry has retained
19  Phil Walker with Bradley Arant in Nashville.
20  The patent still exists. There's still
21  co-inventors on the patent. It's still an
22  application.
23      THE COURT: Okay. All right.
24      MR. LANKFORD: That is her
25  attorney. I want to be clear. That is not a

**Vowell, Jennings & Huseby**
214 2nd Ave., Suite 207, Nashville, TN 37201
www.vowelljennings.com
(800) 640-9002
Case 3:17-cv-00020  Document 32-1  Filed 03/16/17  Page 71 of 241 PageID #: 390

KATHERINE WISE GENTRY vs. JOHN ANTHONY GENTRY
Hearing on 02/09/2016

Pages 6..9

Page 6

1  joint attorney.
2          THE COURT:  All right.  I
3  understand that.  But the patent itself,
4  there's no danger of a lapse or anything of
5  that nature?
6          MR. LANKFORD:  Well, that's up to
7  the patent office.
8          THE COURT:  Sure.  She's pursuing
9  the patent?
10         MR. LANKFORD:  Yes, Your Honor.
11         THE COURT:  Now, the ownership of
12 the patent or the parties' relative interest
13 in the patent is an issue for the final
14 hearing.
15         MR. LANKFORD:  Well, that will be
16 an issue for the patent office and patent
17 litigation.  As of right now there's a patent
18 application.  They're both co-inventors on
19 that patent.
20         THE COURT:  Mr. Gentry and Ms.
21 Gentry?
22         MR. LANKFORD:  Right now they
23 are, Your Honor.  Mr. Walker's scope at this
24 point is just have the patent issued.  If
25 they go forward and decide to determine

Page 7

1  ownership, that won't be decided in divorce
2  court.  That will be litigated in some patent
3  court somewhere.
4          THE COURT:  So the patent itself
5  doesn't have any, at this point, doesn't have
6  an aspect of marital property according to
7  your client?
8          MR. LANKFORD:  It's a patent
9  application at this point.
10         MR. GENTRY:  Can I add to that?
11         THE COURT:  Sure.
12         MR. GENTRY:  So our patent
13 attorney withdrew because of a conflict of
14 interest.
15         THE COURT:  Who's your patent
16 attorney?
17         MR. GENTRY:  It was Bass Berry up
18 in Washington D.C.  They have withdrawn
19 because of a conflict of interest.
20         THE COURT:  Have you spoken to
21 this patent attorney?
22         MR. GENTRY:  They won't speak
23 with us anymore.
24         THE COURT:  Who's us?
25         MR. GENTRY:  Myself or Ms.

Page 8

1  Gentry.
2          THE COURT:  Mr. Walker?
3          MR. GENTRY:  Phil Walker.
4          THE COURT:  Have you spoken to
5  Mr. Walker?
6          MR. GENTRY:  I didn't even know
7  he had it.
8          THE COURT:  Now you know where he
9  is.  Phil Walker at Bradley Arant.
10         MR. GENTRY:  So can we ask --
11         THE COURT:  Who's we?
12         MR. GENTRY:  Can I ask that
13 opposing counsel will provide me with contact
14 information and that they will authorize me
15 to speak with the patent attorney?
16         MR. LANKFORD:  I can't authorize
17 him to speak with anyone, Your Honor.
18         THE COURT:  You can contact
19 yourself.
20         MR. LANKFORD:  And I do want to
21 state again that it's Ms. Gentry's attorney.
22 If Mr. Walker doesn't want to talk to Mr.
23 Gentry --
24         THE COURT:  Absolutely.  That's
25 something you can pursue on your own.  But

Page 9

1  Bradley Arant is a big law firm.  Google it.
2  You'll find Phil Walker.  Just write it down
3  there.  Okay?
4          All right.  I'm going to take
5  these in the order Mr. Gentry has them
6  listed.  Wife has a motion to quash the
7  husband's subpoena of Kati Lohr.  That is
8  granted.
9          MR. GENTRY:  Your Honor, you
10 don't hear arguments on that?
11         THE COURT:  Do you know what the
12 scope of the psychologist/client privilege is
13 in Tennessee?
14         MR. GENTRY:  And this is what I'd
15 like to explain to the Court.  I'm not asking
16 to violate privilege at all.
17         THE COURT:  What do you want?
18         MR. GENTRY:  What I'm asking to
19 testify is communication between Ms. Lohr and
20 myself.  I'm not asking for any communication
21 for any privileged material.
22         THE COURT:  What?
23         MR. GENTRY:  Ms. Lohr sent me an
24 e-mail.  Pardon me?
25         THE COURT:  I don't understand

Case 3:17-cv-00020   Document 32-1   Filed 05/16/17   Page 72 of 241 PageID #: 390

**Page 10**

1  what you're asking for.

2       MR. GENTRY:  I would like Ms.

3  Lohr to testify to an e-mail that she sent to

4  me.  It has nothing to do with privilege,

5  Your Honor.

6       THE COURT:  What's the purpose of

7  that e-mail?

8       MR. GENTRY:  If I could have just

9  a moment.

10      THE COURT:  Just tell me.

11      MR. GENTRY:  Can I --

12      THE COURT:  No.  See all these

13  people?  Mr. Gentry, I try to be patient with

14  you.  It's not fair to the rest of these

15  people.  You don't understand the law.

16  You're not a lawyer.  And what you're doing

17  is you're making me take an inordinate amount

18  of time with you that I don't need to take

19  today.  It's not fair to everyone else.

20      So don't look for your papers.

21  What is the purpose of the e-mail?  Why would

22  you want to get that into evidence?

23      MR. GENTRY:  Ms. Gentry made a

24  false statement saying -- it was a harassing

25  statement to me, saying that I had a mental

**Page 11**

1  illness and that her counselor said that in

2  20 years she's never met anybody with a

3  mental illness as strong as mine.  So I

4  e-mailed Ms. Lohr and said did she possibly

5  say something like this and Ms. Lohr

6  responded no, she did not.

7       This substantiates Ms. Gentry's

8  off-the-cuff statements of making false

9  statements.  Ms. Gentry doesn't -- it's just

10  a knee jerk reaction for her.  And this will

11  further substantiate similar off-the-cuff

12  false statements that Ms. Gentry has made.

13      THE COURT:  Your motion's

14  granted, Mr. Lankford, on that one.

15      All right.  Wife's motion to

16  clarify judgment amount garnishment.  That's

17  just there was an additional amount?

18      MR. LANKFORD:  Yes, Your Honor.

19  We came forward on that.  There's a levy.

20  Mr. Gentry's motion represented one number.

21  We haven't received the answer from the

22  garnishee.

23      What I would point out to the

24  Court is Mr. Gentry was ordered to pay $800,

25  400 on the first Monday of each month

**Page 12**

1  starting in January.  He's not done that.  I

2  believe he's paid $194.17.  We'd ask that

3  order reflect that the garnished amount of

4  $4,181.21 from US Bank be released to Ms.

5  Gentry and Mr. Gentry be ordered to pay

6  $605.83 to catch up what he should have paid

7  and that he continue paying $400 the first

8  Monday of each month until final hearing.

9  Those monies will be held by the clerk, but

10  not the lump sum, the 4,000.  That will be

11  paid out.

12      MR. GENTRY:  Your Honor, if you

13  would, my motion on my financial position,

14  you'll see I absolutely cannot afford it.  I

15  would ask the Court to take a moment and read

16  my response to their motion.  These attorney

17  fees should have never been awarded.

18      THE COURT:  All right.  That

19  motion is granted.

20      Wife's motion to quash any and

21  all subpoenas, that's granted, too.  And your

22  supplemental deadline is set.  No more

23  subpoenas to -- is there anything else you

24  think you need from her that you don't have,

25  Mr. Gentry?

**Page 13**

1       MR. GENTRY:  Pardon me, Your

2  Honor?

3       THE COURT:  Is there anything

4  else from her that you think you need?

5       MR. GENTRY:  You know, Your

6  Honor, I think that this Court just isn't

7  going to hear me on that matter.  You rule

8  before I make my arguments.  And I would like

9  to state that for the record, that with the

10  Court not hearing any arguments from myself

11  that the Court just disregards me and issues

12  a ruling.  I think just to make --

13      THE COURT:  There's going to be

14  one of us that talks at a time.  It's not

15  going to be you.  It's going to be me.

16      I read everything.  So I've read

17  your responses.  I'm as patient with you as I

18  know how to be.  You don't understand.

19  You're not trained as a lawyer.  You don't

20  understand how to plead things.  A lot of

21  times the things that you ask for are things

22  that you really didn't have the right.

23      What I'm telling you is, I take

24  my time before court starts.  That's why I

25  get here at seven o'clock in the morning or

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 73 of 241 PageID #: 369

**Page 14**

1  6:30 in the morning, to read what you filed.

2  I'm not going to take up their time.

3        So I do listen to your arguments,

4  but I read them. I don't need to hear the

5  same thing that I've already read.

6        MR. GENTRY: Just a quick

7  question, Your Honor. So you've read my

8  response to their motion to rule on the

9  garnishment?

10       THE COURT: Yes.

11       MR. GENTRY: So you would note

12 that I'm without representation. Obviously,

13 I'm not doing very well at it, and it's

14 because of what has happened during the

15 pendency of this hearing. It's not my fault

16 that I should be without representation.

17       If you would have read my

18 response to their motion, it's a precedence

19 set more than 150 years ago that a spouse

20 should not be without representation. And

21 yet here I am --

22       THE COURT: Done. We're done.

23       MR. GENTRY: -- while they have

24 two attorneys.

25       THE COURT: Stop.

**Page 15**

1        Go ahead with your motion on the

2  discovery, Mr. Lankford. It is granted and

3  enter that order. No more subpoenas. And

4  then we'll have the March 31st date. Was it

5  April?

6        MR. LANKFORD: I've got it in our

7  motion, Your Honor. It's going to be through

8  March 31st, submitted by April 10th, 2016.

9  Mr. Gentry has served Ms. Gentry with a full

10 set of discovery and we'll supplement them.

11 Same for him.

12       THE COURT: All right.

13       MR. GENTRY: We haven't addressed

14 your motion to quash all subpoenas, have we?

15       THE COURT: We just did.

16       MR. GENTRY: Your Honor, the

17 reason that I filed this is because Ms.

18 Gentry --

19       THE COURT: Stop. He filed the

20 motion. You didn't file the motion. He

21 filed a motion to --

22       MR. GENTRY: Don't I get to

23 respond?

24       THE COURT: No. I read your

25 responses.

**Page 16**

1        Review financial position and

2  review credibility. Mr. Lankford, is there

3  anything that you see in any of those motions

4  that shouldn't be addressed at the final

5  hearing?

6        MR. LANKFORD: No, Your Honor.

7  And the other thing, Your Honor, I just want

8  to point out that we have two days for this.

9  Mr. Gentry has attached over a hundred pages

10 of spreadsheets. I have serious concern if

11 he plans to go through that at final hearing

12 in two days.

13       THE COURT: It will be done in

14 two days.

15       MR. LANKFORD: I'm hoping. But

16 no, Your Honor, nothing that can't be

17 addressed at final hearing.

18       THE COURT: You'll do the orders,

19 Mr. Lankford.

20       MR. LANKFORD: And I'd ask the

21 Court to reserve attorney fees.

22       THE COURT: We'll do. All right.

23 Thank you.

24       (Court adjourned at 9:30.)

25

**Page 17**

1        I certify that the foregoing is a true

2  and accurate transcript of the proceedings

3  taken by me and transcribed to the best of my

4  ability.

5

6

7

8

9  Jackie Wisinger                    Date

   LCR No. 245

10 Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

John Anthony Gentry
208 Navajo Court
Goodlettsville, TN 37072


18 September, 2015

Board of Professional Responsibility
10 Cadillac Drive Suite 220
Brentwood, TN 37027

**RE: Formal Complaint of Professional Misconduct by Pamela A. Taylor**

Ms. Pamela A. Taylor of the law firm Stites & Harbison, PLLC, has consistently and blatantly conducted herself in direct violation of TENN. SUP. CT. R. 8, Tennessee Rules of Professional Conduct.

Specifically, Ms. Taylor has violated the following Rules of Professional Conduct;

- **Rule 3.3 Candor Toward the Tribunal** paragraphs (a) (1), (b), (c), and Comment [3]
    - Making a false statement of fact or law to a tribunal
    - Offering evidence the lawyer knows to be false
    - Affirming the validity of, or otherwise use, any evidence the lawyer knows to be false.
    - Making a false statement in court without reasonable diligent inquiry
- **Rule 3.2 Expediting Litigation**
    - Routinely fails to expedite litigation with dilatory practices
- **Rule 3.4 Fairness to Opposing Party And Counsel** paragraphs (a), (b)
    - Unlawfully obstructs opposing party's access to evidence
    - Assist a witness to offer false or misleading testimony
- **Rule 3.5 Impartiality and Decorum of the Tribunal** (a)
    - Seeks to influence a judge by means prohibited by law
- **Rule 8.4 Misconduct** (a), (c) and (d)
    - Violates Rules of Professional Conduct,
    - Engages in conduct involving dishonesty, fraud, deceit or misrepresentation
    - Engages in conduct that is prejudicial to the administration of justice.



EXHIBIT J

## Background/Introduction

Ms. Taylor is counsel for Plaintiff/Wife Katherine W. Gentry in a divorce case. Mr. Gentry is Defendant/Husband and is acting Pro Se after withdrawal of his attorney for non-payment.

Mr. and Mrs. Gentry jointly own a business (Sweet Wise, Inc.) and a patent pending product (THE MAT product line). Mrs. Gentry was the founder of the business and historical ownership records of the business were not changed to reflect Husband's ownership, including bank account ownership, vehicle titles, etc. The patent pending product was co-developed by Husband and Wife during the marriage. Husband was issued 50% stock ownership in Sweet Wise, Inc. (w/ 5% transfer of his stock to an employee).

Upon decision to divorce, as wife had control of purse strings of the business, Wife began to systematically harass and push Husband out of the business in violation of statutory injunction. Wife conspired with key employee(s) to terminate Husband's employment, cancelled Husband's bank debit card, removed him as signatory on business checking account, cancelled Husband's company benefits (including health insurance) cancelled Husband's company credit card, confiscated Husband's company car (sole source of transportation), and finally wrongfully terminated Husband's employment.

Wife asserts she took these actions due to Husband's misconduct in use of company assets.

During the hearing on the Petition for Contempt, the court stated there was "an utter and complete commingling of the personal life and business life". During the marriage, <u>Mr. and Mrs. Gentry did not maintain savings accounts and used the business account to pay for personal as well as unexpected expenses</u> (medical expenses, garage doors, etc.) The business accounts were also used to pay for meals and entertainment, both vehicles for Husband and Wife, Mobile Phones, Home Internet/Cable service, travel, etc.

Upon Husband's filing of Petition for Contempt/Pendente Lite Support against Wife, Ms. Taylor began a continuing and consistent process of causing delay after delay of hearing Husband's Petition. The obvious sole purpose of these delays was to wear

down Husband's limited financial resources to the point of bankrupting Husband and causing him to lose his legal representation.

When the matter was finally heard almost five months after filing, Ms. Taylor explicitly lied to the court during the hearing causing prejudice in the court against Husband. The hearing lasted until past 8PM in the evening and was continued to be heard at a later date. For the continuation hearing, again Ms. Taylor introduced delay after delay for the sole purpose of wearing down Husband's financial resources. Furthermore, Ms Taylor subsequently filed an intentionally false statement to cause further prejudice by the court against Husband. Ms Taylor has continued to engage in dilatory practices that are no longer just dilatory but have turned into a form of harassment by Ms. Taylor.

Because of Ms. Taylor's dilatory practices and gross misconduct, Husband became completely bankrupt and amassed tens of thousands of dollars of debt. Ms Taylor's misconduct caused Husband's transformation from a successful business man to person destitute and unable to afford even basic needs. Because of Ms. Taylor's misconduct Husband has suffered severe emotional trauma as his home almost went into foreclosure, utilities were turned off and Husband was forced to borrow money from friends just for food and to keep his utilities functioning. Furthermore, Ms. Taylor's misconduct has greatly contributed to the loss of the Gentry's pending patent application causing both Mr. Gentry and Mrs. Gentry to lose millions of dollars in licensing revenue and profit from direct sales.

## Violation of Rules 3.3, 3.4, 3.5 and 8.4

During the hearing on a Petition for Contempt held on March 10, 2015, Ms Taylor implicitly lied to court about the existence of a piece of evidence. During the March 10th hearing, Mr. Gentry testified during Direct Examination that Mrs. Gentry inadvertently and irresponsibly created a conflict of interest that would very likely jeopardize co-inventors Mr. and Mrs. Gentry's patent application with the US Patent and Trademark Office. See Transcript EXHIBIT A (Page 98 Line 10 to Page 99 Line 13).

During cross examination the following dialogue occurred See EXHIBIT A (Page 128 Line 3 – 22);

> 3 BY MS. TAYLOR:
> 7 Q. Now, in terms of talking recently with the
> 8 patent attorney, you're the one who first called the
> 9 patent attorney to talk to them about the divorce;
> 10 right?
> 11 A. No, that's not correct at all.
> 12 Q. And if there's an e-mail from the patent
> 13 attorney saying he received a phone call from you,
> 14 that's incorrect?
> 15 MS. PERKY: Calls for speculation,
> 16 Your Honor.
> 17 THE WITNESS: I don't know --
> 18 THE COURT: Hang on, Mr. Gentry.
> 19 Do we have the e-mail? Are you going
> 20 to show him the e-mail?
> 21 MS. TAYLOR: I'll have to find it,
> 22 Your Honor.

When Ms. Taylor asked the question (lines 12-14) "*And if there's an e-mail from the patent attorney saying he received a phone call from you, that's incorrect?*" In asking this… "*question*" Ms. Taylor intentionally misleads the court because she is asserts (1) that Mr. Gentry perjured himself during testimony and she asserts (2) the existence of email evidence that proves Mr. Gentry's perjury. This is truly misleading to the court because Ms. Taylor knows no such e-mail exists. I will provide irrefutable evidence below showing that no such email exists.

This conduct by Ms Taylor violates Rule 3.4 in assisting a witness (Ms Taylor's client) to offer false or misleading testimony. It violates Rule 3.5 by seeking to influence a judge by means prohibited by law (lying to the court) and it violates Rule 8.4 by engaging in conduct that is dishonest, deceitful and creates prejudice to the administration of Justice.

Next, although, Mr. Gentry's counsel objects to Ms Taylor's assertion due to speculation, the court interjects and asks "*Hang on, Mr. Gentry. Do we have the e-mail? Are you going to show him the email*"? And Ms Taylor responded "*I'll have to find it*".

In making the statement "I'll have to find it", in open court, Ms Taylor is affirming the existence of such a document when no such document exists. Ms Taylor is effectively saying to the court she has this document in possession and only needs to find the document. This conduct by Ms Taylor violates Rule 3.3 by (1) Making a false statement of fact to a tribunal, (2) Offering evidence the lawyer knows to be false, (3) Affirming the validity of evidence the lawyer knows to be false and (4) Making a false statement in court without reasonable diligent inquiry. This conduct further violates Rules 3.4, 3.5 and 8.4 because it (1) Assists Ms Taylor's client to offer false or misleading testimony, (2) Seeks to influence a judge by means prohibited by law, (3) Engages in conduct involving dishonesty, fraud, deceit or misrepresentation and (4) Engages in conduct that is prejudicial to the administration of justice.

This misconduct by Ms. Taylor planted a seed that later led to the court's distrust of Mr. Gentry's further testimony and an adverse and improper ruling by the court. Mr. Gentry later filed a motion to recuse or in the alternative reconvene the Petition for Contempt hearing (this motion is on appeal).

In response, to Mr. Gentry's Motion to recuse, Ms. Taylor submitted to the court in the written document – "Wife's Response to Husband's Motion..to Recuse..." an unrelated e-mail (See EXHIBIT B) to support her claim that Mr. Gentry first spoke to the patent attorney about the Gentry's divorce. In submitting this unrelated email in an attempt to further fool and deceive the court, Ms. Taylor has not only made a false statement in open court in an initial knee jerk reaction to the court's interjection, now, in submitting this document as evidence, Ms. Taylor has intentionally premeditated to further mislead the court in an attempt to cover up her previous deceitful and misleading statements to the court. This misconduct by Ms. Taylor is an incredible and blatant disregard for the Rules of Professional Conduct.

How do we know with complete certainty that Ms. Taylor lied to the court? First, consider Ms Taylor's opening "question" in this line of questioning when she asks - "Now, in terms of talking recently with the patent attorney, you're the one who first called the patent attorney to talk to them about the divorce right? Here, in this question, Ms Taylor asserts that Mr. Gentry perjured himself (as stated above, Husband testified Wife was the one who contacted the patent attorney about their divorce). Let us consider

perhaps Ms Taylor's client lied to Ms Taylor prompting Ms. Taylor to ask this question. This is a possibility right? Regardless of why Ms Taylor asked this question, it is not true that Mr. Gentry first called the patent attorney about the divorce. In fact, in a letter received by Mr. Gentry from the patent attorney, it is quite clear that Mrs. Gentry is the one to first call the patent attorney to talk to them about the divorce (See EXHIBIT C).

As shown in (EXHIBIT C) the patent attorney clearly states in paragraph 3, "*We learned of the divorce proceedings during a telephone call with Ms. Gentry*". Accordingly, because the patent attorney clearly states they <u>first</u> learned about the divorce proceedings during a phone call with Ms. Gentry, Ms Taylor's claim that there is an email from the patent attorney saying Mr. Gentry called first must be a patently false and misleading statement.

For Ms. Taylor to respond to the Court stating "<u>I'll have to find it</u>" Ms Taylor is claiming to have seen a document that clearly does not exist and her statement to the court "<u>I'll have to find it</u>' is an obvious false statement and a clear violation of Rule 3.3 Candor Toward the Tribunal

Now perhaps Ms Taylor's knee jerk response might be viewed as a minor infraction of the Tennessee Rules of Professional Conduct and a moment of bad judgement. But the fact that Ms Taylor subsequently submitted an unrelated email (EXHIBIT B) in an attempt to bamboozle the Court and cover her deceit, demonstrates premeditated intent to deceive the court and a blatant disregard for Professional Conduct.

First, in looking at EXHIBIT B, it is easy to see this is a completely unrelated email and it is a follow up to a question regarding licensing of the patent pending product. This email does not in any way reference a phone call from Mr. Gentry and it does not in any way reference any comments about divorce. In submitting this document to the court, Ms. Taylor is clearly throwing up a "Hail Mary" pass in hopes that the judge would not scrutinize the document but will instead rely on trusting the word of an officer of the court.

Furthermore, I would also assert (I do not know), that this document EXHIBIT B was received by Ms Taylor AFTER the hearing on March 10, 2015. It was during the March 10th hearing Ms. Taylor stated "<u>I'll have to find it</u>" which demonstrates her

assertion that she has seen the document. Since the EXHIBIT B email is printed in the middle of the page, it is most certain the top portion of the email was covered (redacted by omission). It is likely the top portion of the email is covered and omitted because it will show Mrs. Gentry forwarded the email to Ms Taylor AFTER the March 10th hearing which would further demonstrate that Ms. Taylor lied to the Court and could not have seen the document prior to the hearing. I would challenge Ms. Taylor to show the top of this email in response to this complaint (redact the content to preserve attorney/client privilege if necessary but show the time/date stamp). I would further challenge Ms. Taylor to show any proof that she received this document from her client before the March 10th hearing. In Ms. Taylor not showing that she received this document from her client before March 10th, this further demonstrates that Ms Taylor lied to the court. In Ms Taylor not seeing the document before March 10, while asserting to the court that she had seen the document, demonstrates the following; (1) that she couldn't have seen the document before the hearing and (2) that there wasn't some misinterpretation the EXHIBIT B email caused by her client's deceit. This completely eliminates any possibility that this was a simple error or mistake on Ms. Taylor's part and it irrefutably substantiates Ms. Taylor's violation of rules 3.3, 3.4, 3.5 and 8.4

**Further Violation of Rules 3.3, 3.4, 3.5 and 8.4**

During the Petition for Contempt hearing held on March 10, 2015, Ms Taylor also implicitly lied to and misrepresented facts to the court about the content of Mr. Gentry's Interrogatory answers. During cross examination there was a significant discourse where Ms. Taylor alleges Mr. Gentry used the company credit card to pay for a meal with a dinner date. See EXHIBIT A (Page 145 Line 16 - 25);

> 16 BY MS. TAYLOR:
> 17 Q. Do you recall in your interrogatory answers
> 18 you state that you went to Carrabba's on August the
> 19 8th, 2014, with a date?
> 20 A. I don't recall the exact date, but that
> 21 sounds probably right. But I can assure you that I
> 22 never used the company credit card to pay for a date.
> 23 Absolutely not.

24 BY MS. TAYLOR: Your Honor, unfortunately we'll have to share
25 this exhibit, but I'll show it to Mr. Gentry first.

The discourse on this topic continues to Page 148 Line 15 and in reading this part of the transcript, it is pretty clear from the court's interjections that Judge Thompson is losing his confidence in the reliability of Mr. Gentry's testimony. Ms. Taylor effectively caused Mr. Gentry to lose all of his credibility with the court by implicitly lying and misrepresenting facts to the court. It is also important to note that Mr. Gentry is hearing impaired and keeps a service animal to assist him. You will note in several places during Mr. Gentry's testimony, Mr. Gentry saying "say again", "pardon me" and similar phrases because he cannot hear well. Because of Mr. Gentry's hearing impairment he was not able to detect the court's concern (voice inflection, etc.) and so didn't properly defend himself.

In reading the actual interrogatory answer provided by Mr. Gentry in his response to "Wife's First Set of Interrogatories To Husband" Mr. Gentry states in ANSWER: a." … We had one date *around* 8/8/14" See EXHIBIT D.

In responding to Question 25 of "Wife's First Set of Interrogatories", Mr. Gentry was being as completely and accurately truthful as possible. As a Certified Public Accountant, Mr. Gentry is very precise in how he writes facts in response to questions. Mr. Gentry's precise responses are evident in the complete answer to Wife's Question 25. In response to "**Question 25 a**." Mr. Gentry intentionally wrote "around 8/8/14" because his did not know the exact date. In response to "**Question 25 b**." Mr. Gentry intentionally wrote "around 8/16 or 8/23" because he did not know the exact date. In response to "**Question 25 c**.", Mr. Gentry states specific dates "8/31/14, 9/6/14 and 9/13/14 because the dates were more recent and Mr. Gentry had perfect recollection and could provide exact dates.

Although Ms. Taylor is obviously of low moral standard, Ms. Taylor is quite intelligent and quite through in presenting evidence. Ms. Taylor intentionally did not submit as evidence to the court, a copy of Mr. Gentry's response to Wife's Interrogatory. Ms. Taylor specifically did not submit Mr. Gentry's actual response as evidence because Ms. Taylor was intentionally misleading the court. Ms. Taylor being intelligent as she is, would know Mr. Gentry's answer was very specific in answer 25 c., while it

was not specific in 25 a. stating "<u>around</u> 8/8/14" as opposed to Ms Taylor's statement to the court - "<u>on</u> August the 8th, 2014". In combining the two facts that (1) Ms. Taylor did not submit a copy of Mr. Gentry's interrogatory answer as evidence and (2) that Ms. Taylor stated in open court "… in your interrogatory answers *you state that you went to Carrabba's <u>on August the 8th, 2014</u>, with a date*" it is obvious that Ms. Taylor is intentionally misleading the court about the facts of Mr. Gentry's response to Wife's Interrogatory. This is clearly making a false statement of fact to a tribunal and offering evidence known to be false in clear violation of Rule 3.3. It is a violation of Rule 3.4 in that Ms. Taylor is assisting her client to offer false misleading testimony/evidence. It seeks to destroy Impartiality and Decorum of the Tribunal in violation of Rule 3.5. Finally, this misconduct by Ms. Taylor violates the Rules of Professional Conduct, engages in conduct involving dishonesty, or misrepresentation and engages in conduct that is prejudicial to the administration of justice in clear violation of Rule 8.4.

In making the statement to the court "unfortunately we'll have to share this exhibit", Ms Taylor is clearly suggesting to the court that Mr. Gentry is not being truthful. This clearly demonstrates Ms. Taylor's intent to destroy Mr. Gentry's credibility through her own deceit and misrepresentation of fact.

Later, after significant discourse on this same topic on Page 147, Lines 10, 11, Ms Taylor properly states Mr. Gentry's interrogatory answer – "*It says, We had one date around 8/8/14. We met at Carrabba's at Indian Lake*" However, at this point the damage is already done to Mr. Gentry's credibility. In finally properly stating Mr. Gentry's correct interrogatory answer, Ms. Taylor clearly demonstrates her intent to mislead the court and misrepresent facts in clear violation of Rules of Professional Conduct. This shows Ms .Taylor did in fact intentionally misquote Mr. Gentry's answer with the intent to deceive the court and misrepresent facts (Page 145 Line 17-19). This clearly demonstrates Ms. Taylor's practiced proficiency at making false statements to tribunals and then covering her tracks. However, Ms. Taylor's proper quotation of Mr. Gentry's answer at this point, does not relieve the fact that Ms. Taylor intentionally misquoted Mr. Gentry earlier nor does it hide her clear intent to deceive the court.

This deceitful conduct by Ms. Taylor explicitly led to the courts adverse and improper ruling against Mr. Gentry's Petition for Contempt. See transcript EXHIBIT A

Page 216 line 15 to page 217 Line 22. The court clearly states (page 217 line 19-22) it disagrees with Mr. Gentry's Petition because "*Mr. Gentry's and my definition of de minimus are very different*" Clearly, the court is ruling against Mr. Gentry's Petition because of Ms. Taylor deceitful misrepresentation of facts.

This behavior by Ms. Taylor is exactly the kind of behavior the Rules of Professional Conduct are trying to prevent from occurring. Ms Taylor's conduct in this regard reflects badly not only on herself and her firm but the entire legal profession. Ms. Taylor's conduct makes a mockery of a fair hearing and our system of justice.

## Further Violation of Rules 3.3, 3.4, 3.5 and 8.4

At the end of the March 10, 2015 hearing, the court instructed both parties to submit objections to expense and income statements. In the Objection prepared and signed by Ms. Taylor, Ms. Taylor includes the statement;

> "*Of note, at the March 10, 2015 hearing, when confronted with a business credit card bill showing him at a Carrabba's Restaurant on a date certain and an interrogatory request admitting that he took a woman on a date to Carrabba's on that same date, despite repeated questioning by the court, Husband denied not only going on that date, but even being at the restaurant.*" (*See* EXHIBIT S page extract from objection to husband's income and expense statement)

In making this statement in Wife's "Objection to Husband's Income and Expense Statement and Request for Support" Ms. Taylor not only continues to misrepresent facts about Mr. Gentry's interrogatory answer, but she now introduces two new false statements to the court. Nowhere in Husband's testimony did he deny "*even being at the restaurant*", nowhere in Husband's testimony did he deny going on a date to Carrabbas. Mr Gentry simply denied using a company credit card while on a date. (See EXHIBIT A Page 142 through page 148 for the full discourse on this topic.) In fact, the opposite is true – during testimony Mr. Gentry stated;

> "*There is a charge on there for $40. If I were to go on a date – and Kathy knows this—the bill would never be $40. That would be enough for one*

*person, which is exactly what this meal was, was for myself"* EXHIBIT A
Page 146 Line 7-11.

And on line 16 -17

*"So this – this meal here is absolutely me by myself"*

So as shown in recorded testimony, Mr. Gentry DID NOT deny "being at the restaurant". Mr. Gentry not only did not deny being there but instead affirmed being there and that the meal was for him.

In making statements to the court whether verbal or written, Ms Taylor is required by the Rules of Professional Conduct to make "reasonable diligent inquiry". Ms. Taylor was obviously at the hearing and being intelligent as she is, she knows what was said and what was not said. Furthermore, Ms Taylor should have retained a copy of the transcript before making an accusation of this nature "reasonable diligent inquiry". In making this false statement to the court, Ms. Taylor is in violation of Rules 3.3, 3.4, 3.5 and 8.4. This is a blatant attempt by Ms Taylor to further mislead the court and create further prejudice against Mr. Gentry.

This patently false statement (highlighted EXHIBIT S), clearly substantiates Ms. Taylor's premeditated intent on misrepresenting facts and making false statements to the court as discussed above.

This is incredibly aberrant behavior by an officer of the court. There is no room for misinterpretation of Ms. Taylor's deceitful intent in submitting this false written statement to the court. The evidence is clear and irrefutable of Ms. Taylor's intent to mislead the court, misrepresent facts, and of her making patently false statements to a tribunal in clear violation of the TN Rules of Professional Conduct.

## Rule 3.4 Fairness to Opposing Party and Counsel

In response to a subpoena served on Mrs. Gentry, Ms. Taylor repeatedly worked to obstruct Pro Se Counsel Mr. Gentry's access to several items required by subpoena. Ms Taylor routinely uses several methods as a means to circumvent providing evidence in an effort to intentionally delay or deny requested evidential matter to opposing counsel including;

- Various made up excuses
- Intentionally ignoring emails received
- Turning her email out of office function on and off to "appear unavailable"
- Feigned irrational email responses

In response to subpoena EXHIBIT E, Ms Taylor's client did not provide several items requested by Subpoena. The items requested under subpoena would provide clear evidence that Mrs. Gentry perjured herself to the Court during testimony and in documents submitted to the court. Ms Taylor intentionally withheld this evidence in clear violation of Rule 3.4 - unlawfully obstructing opposing party's access to evidence.

In addition to other documents, the following documents subpoenaed were not provided;

> Item 3 – Sweet Wise Income Statements for the periods January 2014 through April 2015
>
> Item 6 – Weekly Payroll Summary Report for each week ending December 2014 through present for employees and contractors.
>
> Item 12 – Any documentation of requests to Don Wise (ex-husband to Mrs. Gentry) for medical expense reimbursement for the last 36 months.

In responding to the subpoena, Ms. Taylor included a cover letter EXHIBIT F. In this cover letter dated May 8, 2015, Ms. Taylor's closing paragraph stated the following;

> "Ms. Gentry is working on gathering the additional documents. Since Ms. Gentry did not receive the subpoena until April 27, 2015, she has not been (sic) able to produce the documents requested in 12 days. She is very busy with her children, work and the divorce. Her son continues to have medical problems. He is also scheduled to graduate from high school at the end of the week.
>
> I will continue to work with her to gather the remainder of the documents requested and provide those as soon as possible."

As is evident in the evidence I will discuss below, Ms. Taylor lied and had no intention to "*work with her to gather the remainder of the documents...*". In fact, this is nothing more than an obvious obstruction to evidence perpetrated by Ms. Taylor.

On May 26, 2015, Mr. Gentry acting as Pro Se Counsel sent <u>two</u> emails to Ms. Taylor. One email EXHIBIT G (bottom page 2/3) was in regards to the missing Subpoenaed documents and the second email EXHIBIT H (bottom ½ of page) was in regards to Mr. and Mrs. Gentry's patent application. Ms. Taylor did not respond to either email.

On May 29, 2015, Mr. Gentry sent a second email asking for a response to the May 26, 2015 email inquiring about missing subpoenaed documents. EXHIBIT G (middle page 2). Again, Ms. Taylor did not respond.

On the same day - May 29, 2015, Mr. Gentry sent a second email asking for a response to the May 26, 2015 email inquiring about Mr. and Mrs. Gentry's patent application. Ms. Taylor responded as noted EXHIBIT H (top of page)

This shows that Ms. Taylor chose to respond to the email about the patent and also chose to ignore the email asking for subpoenaed evidence that should have already been provided.

On June 2, 2015, Mr. Gentry sent a third email with a little more stern language asking for the subpoenaed documents. Ms. Taylor responded and stated that she was busy, not being unresponsive and "*would have someone from my office work with Ms. Gentry to determine the status of these remaining documents*" Ms. Taylor previously stated in EXHIBIT F, "*I will continue to work with her to gather the reminder of the documents requested and provide those as soon as possible.*" Although Ms. Taylor stated "as soon as possible", it is quite clear that in the three weeks subsequent to the May 8th letter Ms. Taylor did not take any action to work with Mrs. Gentry in gathering the missing subpoenaed documents. This is clearly a delay tactic by Ms. Taylor in violation of Rule 3.4. And this misconduct by Ms. Taylor continued...

In an email response dated June 4, 2015, Ms. Taylor stated "... *my client will produce the documents in her possession requested in the Subpoena on or before June 12, 2015.*" In this response by Ms. Taylor, Ms. Taylor is being intentionally misleading by using the language "in her possession". See EXHIBIT I (top of page). I expressed my concern that Ms. Taylor was being intentionally misleading in a follow up email dated June 4, 2015. See EXHIBIT J (page 7, bottom half of page, paragraph 2). Of course Ms Taylor did not respond to this email because Ms. Taylor is continuing her misconduct in violation of Rule 3.4, Ms. Taylor. It is clear Ms Taylor's intent is to obstruct opposing party's access to evidence.

On June 8, 2015, during a brief hearing of motions, Ms. Taylor finally did provide some but not all of the missing subpoenaed documents. These were hand delivered by Ms. Taylor's colleague Brenton Lankford, and in handing the documents to Mr. Gentry, Mr. Lankford stated "just let us know if you need anything else". Incredulously Ms Taylor and her client still did not provide the following subpoenaed documents;

> *Item 6 - Weekly Payroll Summary Report for each week ending December 2014 through present for employees and contractors.*
> *Item 12 – Any documentation of requests to Don Wise for medical expense reimbursement for the last 36 months.* Exhibit E (page 4).

Included with the documents hand delivered by Mr. Lankford was a cover letter which stated the following;

> "*Item 12 – As Ms. Gentry responded originally, she no longer sends "invoices" to Mr. Wise, she simply provides him with copies of the children's EOB's. The EOBs contain protected health information for the*

> children and Ms. Gentry does not consent to the release of that
> information." EXHIBIT K

Incredibly, Ms. Taylor's statement "*As Ms. Gentry responded originally...*" is a complete and utter lie by Ms Taylor!    Nowhere, in any correspondence was it communicated that Ms. Gentry "no longer sends "invoices".  Nowhere, in any previous correspondence was it communicated that Ms. Gentry simply provides him (Mr. Wise) with copies of EOBs.    This is just another example of how Ms. Taylor conducts herself with complete disregard for the required integrity of her profession.  This is another clear example that Ms. Taylor is intentionally in violation or Rule 3.4 and intentionally obstructing opposing party's access to evidence with complete and utter disregard for the Rules of Professional Conduct.

Furthermore, Ms. Taylor's client never did not provide Item 6, and to date (10/5/15), this item has still not been provided in contempt of court.  And clearly Ms. Taylor has intentionally obstructed opposing counsel's access to evidence.

On June 8, 2015, Mr. Gentry sent another email requesting Item 12 from the subpoena See EXHIBT J (page 6 top of page), reminding Ms. Taylor regardless of her *new contention about protected information*, that because an objection was not made in the appropriate timeframe, the EOBs were still required under subpoena.  True to her misconduct, Ms. Taylor did not respond.

On June 9, 10 and 11, 2015, Mr. Gentry sent additional follow up emails EXHIBIT J (pages 4 & 5).  Ms Taylor finally responded on June 11, 2015 making another excuse for not responding.    In today's world with the connectivity that we have, every professional stays "connected" – and must stay connected to keep pace with the fast

pace of today's business and legal environment. Considering I have received emails auto signed "sent by my iphone" from Ms. Taylor on weekends and as late as 8PM in the evening, Ms. Taylor is as "connected" as any professional in today's world, considering how Ms. Taylor has consistently evaded providing this information, it is pretty clear this is a cheap attempt by Ms. Taylor to justify her misconduct.

In her response on June 11, 2015, Ms. Taylor states " *I will ask again if there were requests to Mr. Wise for medical reimbursement and then will respond to you tomorrow.*" This is a completely ridiculous response by Ms Taylor. As mentioned above that while Ms. Taylor is of low moral standard, she is a very intelligent person. Ms. Taylor has been communicating on this issue for more than a month and she knows there are requests to Mr. Wise for reimbursement. This is yet another example of Ms. Taylor's misconduct of deceitful response and feigned ignorance.

Although on June 11, 2015 Ms. Taylor stated she would "respond to you (me) tomorrow", Ms Taylor did not respond as she said she would. On June 17, 2015, Mr. Gentry sent another follow up email EXHIBIT J (page 1 bottom of page). Ms Taylor did not respond.

On June 18, 2015, Mr. Gentry sent another follow up email to which Ms. Taylor responded with another new contention stating that she is "not sure the statements for her children's medical care are related to or germane to the divorce case, I have asked her to find the documents"

Finally, a few days before a scheduled hearing on July 1, 2015, Ms Taylor and her client did provide the requested information.

As to Ms Taylor's motive for obstructing opposing counsel's access to evidence of item 12 requested under subpoena served on 4/29/15, the requested documentation shows that her client perjured herself in an income and expense statement submitted to the court. Mrs. Gentry's income and expense statement lists medical expenses at $1,000 per month See EXHIBIT L. A summary schedule EXHIBIT M based on provided EOBs EXHIBIT N, show that Mrs. Gentry's average monthly medical expense is only $261.24 per month.

Considering all the ignored emails, Ms Taylor choosing to answer one email while ignoring another sent at the same time on the same day, considering the misleading responses, considering one excuse after another given for not being responsive, considering the promise of response and then giving none, considering the change from one contention to another, considering the feigned ignorance, it is quite clear that Ms Taylor was intentionally obstructing opposing counsel's access to evidence in direct violation of TENN. SUP. CT. R. 8, Tennessee Rules of Professional Conduct, Rule 3.4 While looking at only one piece of correspondence or one ignored email, Ms Taylor conduct seems reasonable. However, looking at several pieces of evidence together and considering the correspondence in this one matter, the pattern is clear and Ms Taylor's misconduct is obvious. Taking into consideration the whole of evidence in this one matter – this is gross misconduct!

On a final note in this regard, imagine if Mr. Gentry were not Pro Se in this matter. Imagine the legal cost if Mr. Gentry's attorney would have to pursue this matter as diligently as Mr. Gentry did. It would have cost more than a thousand dollars, perhaps even thousands, with all the unnecessary follow up caused by Ms. Taylor's

misconduct. It is most likely that had counsel for Mr. Gentry been working this issue instead of Mr. Gentry Pro Se, it is quite likely the evidence never would have been obtained by opposing counsel. This behavior by Ms. Taylor is another example of the kind of behavior the Rules of Professional Conduct are trying to prevent from occurring. Ms Taylor's conduct in this regard again reflects badly not only on herself and her firm but the entire legal profession.

## Rule 3.2 Expediting Litigation

On October 28, 2014, Mr. Gentry filed a Petition for Civil Contempt. This matter was not initially heard by the court until March 10, 2015 with a continuance hearing later held on July 1, 2015. Inherently, something is obviously wrong when a petition filed in October isn't initially heard until one hundred thirty-three days (4.4 months) later and not finally decided until two-hundred and forty-six days (8.2 months) later!

As you will note in the discussion and evidence presented below, this was not a matter of the court being unavailable or conflicting schedules but was instead caused by the intentional dilatory practices of Ms. Taylor. Again, each instance of delay might seem reasonable but when looking at the complete picture, the pattern is clear and Ms. Taylor's dilatory practices are obvious. In many instances, delays by Ms Taylor are completely unreasonable and clearly unsubstantiated and for the sole purpose of delay in an effort to cause harm to Mr. Gentry and his case.

As stated above, a Petition for Civil Contempt was filed on October 28, 2014. Ms Taylor first agreed to a date for the hearing to be held on January 5, 2015. See EXHIBIT O a January 4, 2015 email and Mr. Gentry's attorney's statement that " ... she's known about this court date for some time and has other attorneys in her office

that can cover such a hearing, so everything is set for Monday. Also, see Dec 10, 2014 letter EXHIBIT P from Mr. Gentry's attorney stating that an amended Notice of Hearing for January 5, 2015 was filed. It is also worth noting that for the simple matter of setting a hearing date in January, it took more than a month just to set a hearing date (from Petition filing on 10/28/14 to 12/10/14)

On January 4, 2015 one day before the hearing, Ms Taylor coordinated with Mr. Gentry's attorney to continue the hearing until January 22, 2015 as Ms Taylor could not attend the scheduled date due to "family issues" See EXHIBIT Q (top of page)

A day or two prior to the January 22 hearing date, Ms Taylor began contacting Mr. Gentry's attorney wanting to continue the hearing again to another later date. Mr. Gentry vehemently protested continuing the hearing. However, on January 22, 2015 while in court and waiting our turn on the docket, it became possible the case would not be heard that day, and Mr. Gentry reluctantly agreed to continue until March 10, 2015. It is important to note here that several dates were available in February for continuance but supposedly none of the February dates "fit Ms. Taylor's schedule"

So clearly a pattern emerges - A petition filed on October 28, is not scheduled to be heard until January 5, 2015. A January 5, 2015 date is rescheduled to be heard on January 22, 2015. A January 22, 2015 hearing is continued to be heard on March 10, 2015 all because of Ms Taylor agreeing and then changing dates and not responding to emails or phone calls.

The March 10, 2015 hearing ran late until 8PM or so and was ordered to be continued at a later date. Mr. Gentry's attorney then began attempting to coordinate a continuation date with Ms Taylor with no success. See EXHIBIT R

Attorney for Mr. Gentry contacted Ms. Taylor on March 17, 2015 and provided two dates, May 14 and June 11, 2015 for the continuation hearing. Ms Taylor did not respond.

Attorney for Mr. Gentry sent a follow up email on March 25, 2015. Again, Ms. Taylor ignored her email.

On March 27, 2015, Attorney for Mr Gentry contacted Ms. Taylor a third time inquiring about a date for the continuation hearing. Ms Taylor intentionally provided a "half-answer" stating she had a conflict with the May 14, 2015 date and Ms. Taylor ignored and didn't reference the alternative June 11, 2015 date.

On March 30, 2015, Attorney for Mr. Gentry then specifically inquired about the June 11, 2015 date and Ms Taylor gave another half response that she "*may be out of town*" Clearly, these lack of responses and half responses by Ms. Taylor to Mr. Gentry's attorney are obvious dilatory practices. This intentional misconduct by Ms Taylor created unnecessary delay and caused unnecessary legal expense for Mr. Gentry in that Mr. Gentry had to pay for each email sent by his attorney and he had to pay for his attorney to prepare EXHIBIT R Motion to Set.

After Mr. Gentry's attorney forwarded a copy of the motion EXHIBIT R to Ms Taylor, Ms. Taylor finally coordinated a date of July 1, 2015 for the continuation hearing. Incredulously, a task as simple as coordinating a court date took nearly one month to complete! A simple task that should have taken only a few minutes on the phone between attorneys instead took weeks to complete because of Ms. Taylor's dilatory practices. This is exactly a repeat by Ms Taylor in that it took from October 28, 2014 to December 10, 2014 to perform a simple task of scheduling a court date.

In only considering the cost to coordinate a date for the continuation hearing, with attorney fees at approximately $300 per hour and billed in twenty minute increments, it should have cost Mr. Gentry and Mrs. Gentry about $100 each to coordinate a hearing date. Instead, several emails and a Motion to Set later (EXHIBIT R), it cost Mr. Gentry more than $600 and probably the same for Mrs. Gentry. This almost seems like a 'nod and wink' practice on both sides to run up fees as Mr. Gentry and Mrs. Gentry as both had to pay for each email sent from and read by their respective attorney, they both had to pay their respective attorneys to draft/read a motion that was never filed in court.

During this period, Ms. Taylor knew Mr. Gentry was without income and was unable to even pay for his basic needs including his mortgage, utilities and even food. In fact, Mr. Gentry's attorney even sent a letter pleading for financial assistance for Mr. Gentry which was maliciously declined. EXHIBIT U. Because of Ms. Taylor's misconduct in this regard, Mr. Gentry's attorney eventually withdrew for non-payment leaving Mr. Gentry without legal representation and without resources to obtain new legal representation.

Ms. Taylor's pervasive misconduct and multiple violations of TENN. SUP. CT. R.8, Tennessee Rules of Professional Conduct Rules 3.3, 3.2, 3.4, 3.5 and 8.4 have caused grievous harm to both Mr. Gentry and Mrs. Gentry. For both Mr. Gentry and Mrs. Gentry, their legal costs were escalated tremendously due to Ms. Taylor's misconduct. For both Mr. Gentry and Mrs. Gentry, Ms. Taylor's dilatory practices have contributed greatly to the probable loss of their patent application potentially causing a loss of millions of dollars in lost revenue from their successful patent pending product.

For Mr. Gentry, he has suffered further grievous harm both financially and emotionally. Ms Taylor's misconduct has caused him extreme emotional trauma and has financially bankrupt Mr. Gentry and destroyed his personal financial credit score. As Mr. Gentry is a Certified Public Accountant and finance professional, Ms. Taylor's misconduct has also affected Mr. Gentry's ability to earn a living in his chosen profession because of his ruined credit scored caused by Ms. Taylor's misconduct.

**Further Violation of Rule 3.2 Expediting Litigation**

Ms Taylor continues to intentionally delay litigation not only as a means to support her client's financial advantage and to wear down Mr. Gentry's financial resources but also as a form of harassment and retaliation.

On September 23, 2015, Mr. Gentry sent and emailed a notice of hearing to Ms. Taylor for a Motion filed by Mr. Gentry. True to form, Ms Taylor responded via email within just a few minutes that she "will be out" and that her co-counsel Mr. Lankford will be at a hearing in another county on that date. It is important to note here that Ms. Taylor is able to confirm not only her schedule but the schedule of her colleague as well in a matter of only a few minutes, where at other times; it takes Ms. Taylor weeks to confirm and set a hearing date. Obviously, this is another intentional unwarranted delay by Ms. Taylor. See EXHIBIT T (top of page 3)

Now it is also important to note in Ms. Taylor's initial response that she simply requests that Mr. Gentry ask the court for another date and to coordinate in advance with her office (a consideration she does offer in return). Because Mr. Gentry is in need of medical care and cannot afford to pay for medical care, Mr. Gentry emailed back

referencing Ms Taylor's misconduct and asking that she respond timely and select a court date. See EXHIBIT T (pages – 1- 2)

In retaliation to Mr. Gentry's email, Ms Taylor then responds that the 8AM docket (reserved for 10 minute motions) will not provide for sufficient time for the motion to be heard and that Mr. Gentry should obtain another date on the 9AM or 1PM docket. Ms. Taylor knows that open dates for the 9AM and 1PM dockets are not available for quite some time. Even though Mr. Gentry communicated his medical situation, still Ms. Taylor refused to commit to an earlier date on the 8AM docket. Ms. Taylor even went a step further and contacted scheduling expressing her fictitious "concern" that the issue would take longer than 10 minutes to be heard and belonged on the 9AM or 1PM dockets and not the 8AM docket. Accordingly, Ms. Taylor was successful in delaying the motion from being heard for another three weeks. This is vindictive and harassing behavior by Ms. Taylor in violation of the Rules of Professional Conduct

Mr. Gentry has previously filed several motions heard on the 8AM docket as follows;

- Motion to Withdraw
- Motion to Compel Ms Taylor to Respond Timely to Communication
- Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income
- Motion to Request The Honorable Judge Thompson to Recuse
- Motion to Reconvene and Complete Hearing for Petition for Contempt

It is important to note in this regard, that Mr. Gentry has filed several motions listed above to be heard on the 8AM docket. It is important to note that not once - not

one single time did Ms. Taylor ever complain that any of those motions should be heard on the 9AM or 1PM dockets.

**Closing Statements**

In closing, I am grateful to the Board of Professional Responsibility for taking time to review this matter. In reviewing the evidence in this matter and the clear pattern of misconduct by Ms. Taylor, it is my sincere hope that the board will take action to ensure this kind of behavior is strongly discouraged. Please note there are other additional examples of additional misconduct by Ms. Taylor of similar severity that I have not included in this complaint. I would be happy to come in and speak to the board more fully with regards to the complaints included in this document as well other matters of misconduct not included in this document for the sake of brevity.

Of particular concern is that Ms. Taylor is teaching her methods of misconduct to the younger co-counsel working with her. This creates an environment where Ms. Taylor's misconduct is deemed acceptable and pollutes the minds of other young attorney's she works with at Stites & Harbison. Her misconduct in this way becomes a poisonous virus that spreads from one attorney to another.

Furthermore it is obvious that Ms. Taylor is very practiced in her deeds of misconduct and deceit. It is obvious this is not an isolated incident or hiccup in her career but a craft of deceit and misconduct perfected over years.

If the Board of Professional Responsibility requires any additional information pertaining to this matter, please contact me at the Board's convenience at 615-351-2649 or via email at john.a.gentry@comcast.net

Respectfully submitted,

John Anthony Gentry, CPA
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649



# BOARD OF PROFESSIONAL RESPONSIBILITY
of the
## SUPREME COURT OF TENNESSEE

**SANDY L. GARRETT**
CHIEF DISCIPLINARY COUNSEL
**KRISANN HODGES**
DEPUTY CHIEF DISCIPLINARY COUNSEL
**BEVERLY P. SHARPE**
DIRECTOR OF CONSUMER ASSISTANCE
**LAURA L. CHASTAIN**
ETHICS COUNSEL

10 CADILLAC DRIVE, SUITE 220
BRENTWOOD, TENNESSEE 37027
(615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
www.tbpr.org

**KEVIN D. BALKWILL**
**STEVEN J. CHRISTOPHER**
**ALAN D. JOHNSON**
**WILLIAM C. MOODY**
**M. PRESTON SHIPP**
**EILEEN BURKHALTER SMITH**
**A. RUSSELL WILLIS**
DISCIPLINARY COUNSEL

February 3, 2016

John Gentry
208 Navajo Court
Goodlettsville, TN 37072

Re:     File No.        42389-5-BG
        Respondent:   Pamela A. Taylor

Dear Mr. Gentry:

The above-referenced matter has been reassigned to me for investigation. If you have any outstanding inquiries from the previous Disciplinary Counsel, Ms. Garber, please respond to those so that I may proceed with your case.

Sincerely,

*Steven J. Christopher*

Steven J. Christopher
Disciplinary Counsel
(615) 695-0929
(800) 486-5714 ext. 203
schristopher@tbpr.org

SJC:jv

# EXHIBIT K





# BOARD OF PROFESSIONAL RESPONSIBILITY
### of the
## SUPREME COURT OF TENNESSEE

**SANDY L. GARRETT**
CHIEF DISCIPLINARY COUNSEL
**KRISANN HODGES**
DEPUTY CHIEF DISCIPLINARY COUNSEL
**BEVERLY P. SHARPE**
DIRECTOR OF CONSUMER ASSISTANCE
**LAURA L. CHASTAIN**
ETHICS COUNSEL

10 CADILLAC DRIVE, SUITE 220
BRENTWOOD, TENNESSEE 37027
(615) 361-7500
(800) 486-5714
FAX: (615) 367-2480
www.tbpr.org

**KEVIN D. BALKWILL**
**STEVEN J. CHRISTOPHER**
**ALAN D. JOHNSON**
**WILLIAM C. MOODY**
**M. PRESTON SHIPP**
**EILEEN BURKHALTER SMITH**
**A. RUSSELL WILLIS**
DISCIPLINARY COUNSEL

March 23, 2016

## CONFIDENTIAL

John Gentry
208 Navajo Court
Goodlettsville, TN 37072

      Re:    File No. 42389-5-BG
      Respondent: Pamela Taylor

Dear Mr. Gentry:

      Your complaint filed with this office has been reviewed and considered. Our inquiry has not revealed sufficient evidence to proceed against the attorney(s) for violations of the Rules of Professional Conduct. Dismissal of the complaint has been recommended, reviewed and approved in accordance with the rules and procedures of the Board.

      The specific allegations of your complaint were investigated and found not to constitute an ethical violation of any specific Rule of Professional Conduct. Please understand that not all attorney inappropriate conduct rises to the level of disciplinary violation. The Rules of Professional Conduct are very specific with regard to the kinds of conduct that are sanctionable. While you may feel that the attorney was not professional, failed to meet your needs, or did not reach a favorable result, no ethical rule was found to be violated.

      The proposed dismissal will become final in 30 days in the absence of your written appeal to the Board setting forth specific and detailed grounds and reasons why the proposed dismissal should not become final.

      Your cooperation and willingness to use the disciplinary process and to bring complaints such as these to our attention is very helpful to the legal profession and is greatly appreciated. Please note that Rule 9, Section 25/32, amended January 1, 2014, addresses the extent of confidentiality applicable to this matter.

               Sandy Garrett
               Chief Disciplinary Counsel

               By: *Steven Christopher*
               Disciplinary Counsel

SC:cg

http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67839&Number=Tru

# Appellate Case Search

Enter Search Term          Advanced Search     **Search**

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### M2016-01731-COA-T10B-CV

| Case Overview | Case Milestones | Parties | Document History | Record Information |
|---|---|---|---|---|

PDF    Print

## Case Overview

| Inter. Case No. | Style | Trial Court | Trial Court Judge | Trial Court No. |
|---|---|---|---|---|
| | JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY | Sumner County Circuit Court | Thompson, Joe | 2014CV393 |

## Case Milestones

| Description | Date |
|---|---|

## Parties

| Names | Role | Counsel |
|---|---|---|
| Gentry, John Anthony | Appellant/Defendant | Pro Se |
| Gentry, Katherine Wise | Appellee/Plaintiff | Taylor, Pamela Anderson |

**EXHIBIT L**

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 102 of 241 PageID #: 397

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 08/29/2016 | Action-State Litigation Tax Paid | | |
| 08/29/2016 | Bond-Request for Proof of Surety | | |
| 08/29/2016 | Bond-Surety Bond Filed with Appellate Court | | |
| 08/25/2016 | Docket Activity-Submitted on Briefs | | |
| 08/25/2016 | Docket Activity-Docketed (On Briefs) | | |
| 08/24/2016 | Defect-Noted(Cured) | | |
| 08/22/2016 | Initiating Document-Petition for Recusal Appeal | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |

\*\*NOTE: The case history section will include a column that will allow for the display of permitted documents in a PDF format.

## Record Information

| Volume Type | Volumes | Record Type |
|-------------|---------|-------------|

Administrative Office of the Courts
511 Union Street, Suite 600
Nashville, TN 37219
(615) 741-2687 | (800) 448-7970

© 2011 Tennessee Courts System

2016 SEP -8 AM 7: 58

APPELLATE COURT CLERK
[illegible]

# IN THE COURT OF APPEALS OF THE MIDDLE SECTION OF TENNESSEE

JOHN ANTHONY GENTRY,　　　　　　　)
　　　Appellant/Defendant/Counter-Plaintiff　)
　　　　　　　　　　　　　　　　　　)　　　M2016-01731-COA-T10B-CV
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　SUMNER COUNTY
KATHERINE WISE GENTRY　　　　　　　)
　　　Appellee/Plaintiff/Counter-Defendant　)

---

## SUPPLEMENTAL PETITION FOR RECUSAL APPEAL AND RESPONSE TO APPELLATE COURT ORDER DATED SEPTEMBER 1, 2016

---

**JOHN ANTHONY GENTRY**
**Involuntary Pro Se Counsel**
**208 Navajo Court**
**Goodlettsville, TN 37072**
**615-351-2649**
**john.a.gentry@comcast.net**

# EXHIBIT M

# REQUEST TO SUPPLEMENT

Appellant/Husband acknowledges with gratitude and humility, the Appellate Court's consideration of Appellant's Petition for Rehearing filed on September 1, 2016 as a Tenn. Sup Ct. R. 10B § 2.02 Appeal, as opposed to Appellant's incorrect citation of Rule 39.

Caused by Appellant's incorrect citation of Rule 39, **Appellant also incorrectly limited his appellant brief to fifteen (15) pages** as required by Rule 39. Because of the fifteen-page limitation, Appellant did not detail all of the facts and evidence supporting his recusal appeal. **In order for the Appellate Court to have a complete set of facts upon which to base its decision, Appellant begs the Appellate Court's further indulgence to consider the additional facts and evidence presented below supporting his recusal appeal**. Appellant apologizes to the Appellate Court for the length of this document but unfortunately there is a significant amount of evidence suggesting bias.

Appellant/Husband will further show in this supplement, that Appellee/Wife can destroy evidence and materially perjure herself without any regard whatsoever by the trial court, thus suggesting bias. Appellant/Husband will also show that the trial court's rulings, statements and instructions indicate a suppression of Appellant's evidence and testimony, further suggesting bias of the trial court against Husband. Appellant/Husband will show further evidence indicating his basic right to be heard was violated. Appellant will further show that the court's instructions and statements, suggest that the trial court is diligently protecting Wife from incriminating evidence and testimony by manipulating proceedings and suppressing

2

testimony and evidence. And of course, whenever there is an appearance of bias, whether or not there is actual bias, a judge should be disqualified.

Additionally, pursuant to Tenn. Sup Ct. R. 10B § 2.05, this Appellate Court ordered Appellee Katherine Wise Gentry, to file an answer to Appellant's Petition for Recusal Appeal. **Appellant anticipates Wife's response will include unfounded statements without any supporting evidence.** Appellant anticipates Wife's response will include the false statement that Appellant filed multiple frivolous motions which is simply not true and Wife will not be able to substantiate this claim with factual evidence.

The facts show, as evidenced below, that Husband's pleadings were simply not heard by the trial court. **Appellant further begs this Honorable Appellate Court to allow Appellant a response to Appellee/Wife's response.** Several times during the proceedings of this case, Appellee has made false written statements to the court in party prepared orders and briefs tendered to the trial court. **These false statements have caused Husband to not be heard in the trial court.** Appellant does not wish to cause any undue burden on this Honorable Appellate Court with counter-arguments but only asks for the opportunity to evidence any false statements made by Appellee in her response brief, should there be any.

## STATEMENTS OF THE FACTS – Obstruction/Suppression of Evidence and Violation of Appellant's Right to be Heard

In the below statement of facts, Appellant will evidence how the trial court demonstrated an appearance of bias in obstructing Appellant's evidence and refusing to allow Appellant any oral arguments whatsoever. The trial court even appears to have made several false statements

3

about reading Appellants motions, while the trial court's statements indicate that he did not read Appellant's pleadings.

At the beginning of a hearing on February 9, 2016, the following dialogue took place.

> MR. LANKFORD: Good morning, Your Honor. Brent Lankford on behalf of Ms. Gentry. Mr. Gentry has four motions on today's docket. We have three. Ours are relatively easy to depose of. I think we need to start with Mr. Gentry's motions.
> MR. GENTRY: First motion I'd like to discuss, Your Honor, opposing counsel --
> THE COURT: Hold on, Mr. Gentry. Which motions do you think you have, Mr. Gentry?
> MR. GENTRY: I have a list if that would be helpful for Your Honor.
> THE COURT: Sure. **Addendum 4 Tr. P. 3-4**

In this opening dialogue, it is apparent that the trial court was not informed or aware of what motions were being heard. Opposing counsel, Mr. Lankford anticipates that the trial court is not informed regarding what matters are to be heard and states "Mr. Gentry has four motions on today's docket. We have three." The trial court did not respond to opposing counsel in any way indicating he knew what matters were before the court.

The trial court's rather condescending question, "***Which motions <u>do you think you</u> <u>have</u>, ...?***" indicates bias in that the trial court gives the impression it has no intention of hearing any of Appellant/Husband's motions or responses to Wife's motions, i.e. "*you may think you have motions to be heard, but I'm not going to hear them*". This becomes more apparent in the transcript dialogue evidenced below.

It is important to recognize that in the trial court accepting Husband's listing of motions to be heard – and that consistent with Mr. Lankford's introduction, and consistent with the trial court's question about what motions Husband "thinks he has" to be heard – the trial court was clearly not aware of what motions were to be heard and apparently did not read Appellant's

4

motions or responses to Wife's motions prior to the beginning of the hearing. **This is important to note because it substantiates the trial court's later apparent false statement, that he had read Husband's motions and responses to motions.**

The trial court next indiscriminately granted Wife's Motion to Quash Subpoena to Kati Lohr. This ruling was made without hearing Husband's arguments and apparently without the trial court having read Appellant's written response to Wife's motion to quash, in a violation of Appellant's basic right to be heard, further demonstrating a predisposition to rule without hearing arguments. Regarding this assertion by appellant, the following dialogue took place.

> THE COURT: All right. I'm going to take these in the order Mr. Gentry has them listed. Wife has a motion to quash the husband's subpoena of Kati Lohr. That is granted.
>
> MR. GENTRY: Your Honor, you don't hear arguments on that?
>
> THE COURT: Do you know what the scope of the psychologist/client privilege is in Tennessee?
>
> MR. GENTRY: **And this is what I'd like to explain to the Court. I'm not asking to violate privilege at all.**
>
> THE COURT: What do you want?
>
> MR. GENTRY: What I'm asking to testify is communication between Ms. Lohr and myself. **I'm not asking for any communication for any privileged material.**
>
> THE COURT: What?
>
> MR. GENTRY: Ms. Lohr sent me an e-mail. Pardon me?
>
> THE COURT: I don't understand what you're asking for.
>
> MR. GENTRY: **I would like Ms. Lohr to testify to an e-mail that she sent to me. It has nothing to do with privilege, Your Honor.**
>
> THE COURT: What's the purpose of that e-mail?
>
> MR. GENTRY: If I could have just a moment.
>
> THE COURT: Just tell me.
>
> MR. GENTRY: Can I --
>
> THE COURT: No. See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else. So don't look for your papers. What

5

is the purpose of the e-mail? Why would you want to get that into evidence?

MR. GENTRY: Ms. Gentry made a false statement saying -- it was a harassing statement to me, saying that I had a mental illness and that her counselor said that in years she's never met anybody with a mental illness as strong as mine. So I e-mailed Ms. Lohr and said did she possibly say something like this and Ms. Lohr responded no, she did not. This substantiates Ms. Gentry's off-the-cuff statements of making false statements. Ms. Gentry doesn't -- it's just a knee jerk reaction for her. And this will further substantiate similar off-the-cuff false statements that Ms. Gentry has made.

THE COURT: Your motion's granted, Mr. Lankford, on that one.
**Addendum 4 Tr. P. 9-11**

In the above dialogue between Appellant and the trial court, there are several fairly obvious conclusions which can be drawn. (1) a further predisposition by trial court to rule without hearing argument, (2) that the trial court did not read Husband's Response to Wife's Motion to Quash and, (3) a strong bias against Husband.

Had the trial court read Appellant's response to Wife's motion as the court stated it had, the trial court would have known Appellant was not subpoenaing a witness to violate psychologist/client privilege. The trial court would have known that Husband understood the "...scope of the psychologist/client privilege." and that Husband's subpoena did not violate the applicable statute T.C.A. § 63-11-213. The trial court would have known about the email to which Appellant was referring and the trial court would have known Appellant's subpoena should not have been quashed. **Addendum 5** is a copy of Appellant's witness subpoena and his response to Wife's motion to quash, Wife's Motion to Quash, and the court order granting Wife's Motion to Quash. **The trial court's granting of Wife's motion to quash Appellant's witness subpoena indicates an intentional obstruction or suppression of evidence by the trial court suggesting bias.**

6

As noted on the face of Appellant/Husband's subpoena, Husband stated in the subpoena "Direct Examination Questions will only pertain to statements or correspondence made or sent to Mr. Gentry." Wife's motion to quash this witness subpoena is plainly an obstruction of evidence and the trial court should have denied such a motion.

Lastly, the trial court's statement, "*See all these people? Mr. Gentry, I try to be patient with you. It's not fair to the rest of these people. You don't understand the law. You're not a lawyer. And what you're doing is you're making me take an inordinate amount of time with you that I don't need to take today. It's not fair to everyone else.*" This statement demonstrates possible bias at several levels.

First, in reading Husband's Response to Wife's Motion to Quash, it is evident that Husband **does understand** the law and applicable statute. Such a statement by the trial court makes it impossible for Husband to present *any* legal arguments in that the trial court's statement here invalidates any legal argument presented by Husband as has been the true time and time again during these proceedings.

Next, this remark by the trial court is a perplexing non sequitur statement that demonstrates possible bias and a failure to recognize Husband's basic rights in a judicial proceeding. *__It is Wife's motion__ to quash that is causing this matter to be heard by the court – not Husband*. Husband is simply trying to preserve his evidence and testimony, necessary in making his case in the final hearing and evidencing Wife's harassment of Husband in violation of statutory injunction.

Any Judge or legal professional reading Husband's response to Wife's motion to quash, can plainly see that Husband's arguments and statutory analysis are a reasonable and legally substantiated response to Wife's motion to quash. It is illogical that the trial court accuses Husband of wasting the court's time except in that it suggests bias. The trial court, in its

appearance of bias, is simply assigning blame for Wife's baseless motion to quash, onto Husband's shoulders which does not follow basic logic.

On a final note regarding this statement by the trial court, throughout these proceedings, the trial court has consistently interrupted and not allowed Husband the fair opportunity to present his evidence and not allowed Husband to presenta his arguments. Initially, Husband had thought perhaps, this was due to being on the 8AM docket reserved for motions expected to be resolved in 10 minutes or less. To ensure time on the docket to be properly heard, Husband specifically scheduled his motions to be heard on the 9AM docket. Scheduling his motions on the 9AM docket verses the 8AM docket necessitated having to wait an additional several weeks to be heard. Husband should have the same right to be heard as everyone else in the courtroom. The trial court's statement, "*see all these people*" shows strong possible bias against Husband in that, Husband does not have the same right to be heard. It is painfully obvious to Husband now, that due to possible bias, the trial court appears to have no interest in fairly hearing any matters presented by Husband. It becomes quite obvious in the further analysis below, of the trial court's likely bias and refusal to allow Husband to be fairly heard.

A few minutes later, the following dialogue took place;

> THE COURT: All right. Wife's motion to clarify judgment amount garnishment. That's just there was an additional amount?
> MR. LANKFORD: Yes, Your Honor. We came forward on that. There's a levy. Mr. Gentry's motion represented one number. We haven't received the answer from the garnishee. What I would point out to the Court is Mr. Gentry was ordered to pay $800, 400 on the first Monday of each month starting in January. He's not done that. I believe he's paid $194.17. We'd ask that order reflect that the garnished amount of $4,181.21 from US Bank be released to Ms. Gentry and Mr. Gentry be ordered to pay $605.83 to catch up what he should have paid and that he continue paying $400 the first Monday of each month until final

hearing. Those monies will be held by the clerk, but not the lump sum, the 4,000. That will be paid out.

MR. GENTRY: Your Honor, if you would, my motion on my financial position, you'll see I absolutely cannot afford it. I would ask the Court to take a moment and read my response to their motion. These attorney fees should have never been awarded.

THE COURT: **All right. That motion is granted. Wife's motion to quash any and all subpoenas, that's granted, too**. And your supplemental deadline is set. No more subpoenas to -- is there anything else you think you need from her that you don't have, Mr. Gentry?

MR. GENTRY: Pardon me, Your Honor?

THE COURT: Is there anything else from her that you think you need?

MR. GENTRY: **You know, Your Honor, I think that this Court just isn't going to hear me on that matter. You rule before I make my arguments. And I would like to state that for the record, that with the Court not hearing any arguments from myself that the Court just disregards me and issues a ruling. I think just to make --**

THE COURT: There's going to be one of us that talks at a time. It's not going to be you. It's going to be me. **I read everything. So I've read your responses.** I'm as patient with you as I know how to be. **You don't understand. You're not trained as a lawyer. You don't understand how to plead things.** A lot of times the things that you ask for are things that you really didn't have the right. **What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I read them. I don't need to hear the same thing that I've already read.**

MR. GENTRY: Just a quick question, Your Honor. **So you've read my response to their motion to rule on the garnishment?**

THE COURT: **Yes.**

MR. GENTRY: So you would note that I'm without representation. Obviously, I'm not doing very well at it, and it's because of what has happened during the pendency of this hearing. It's not my fault that I should be without representation. If you would have read my response to their motion, it's a precedence set more than 150 years ago that a spouse should not be without representation. And yet here I am –

THE COURT: Done. We're done. **EXHIBIT C p. 11-14**

9

**Appellant would like to emphasize for the Appellate Court**, as substantiated in all of the above analysis and transcript dialogue, that obviously **the trial court appears not to have read any of Husband's Motions or Responses to Motions** to be heard on February 9, 2016. **Husband recognized this fact during the hearing but out of great respect for the office of the judiciary, Husband did not publicly reference possible false statements by the court in a public forum.**

Had the trial court read Husband's, <u>RESPONSE TO WIFE'S MOTION TO CLARIFY THE JUDGEMENT AMOUNT GARNISHED FROM HUSBAND'S BANK ACCOUNT</u>, it seems unlikely that any judge would grant Wife's motion except out of bias and judicial reprisal.

Without any discussion whatsoever, even from opposing counsel, the trial court grants Wife's motion to quash all subpoenas with the statement "*Wife's motion to quash any and all subpoenas, that's granted, too*". The trial court ruled so quickly and also because of Husband's hearing impairment, Husband didn't even understand what happened. Appellant/Husband is hearing impaired caused by his military service and exposure to friendly fire. Turning to opposing counsel, Husband asked;

> MR. GENTRY: We haven't addressed your motion to quash all subpoenas, have we? **EXHIBIT C p. 15**

The trial court then interjected and the following dialogue then took place;

> THE COURT: We just did.
> MR. GENTRY: **Your Honor, the reason that I filed this is because Ms. Gentry --**
> THE COURT: **Stop. He filed the motion. You didn't file the motion. He filed a motion to --**
> MR. GENTRY: **Don't I get to respond?**
> THE COURT: **No. I read your responses. EXHIBIT C p. 15**

How possibly can Husband expect a fair hearing under these circumstances where the trial court rules so fast Husband isn't even aware of what is happening? The trial court's lighting fast ruling on the matter of quashing all party subpoenas appears to demonstrate an extreme bias against Husband.

In Leighton v. Henderson, 414 SW 2d 419 - Tenn: Supreme Court 1967, the Supreme Court of Tennessee included the following in its opinion;

> **When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification.** "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial." Leighton, 414 S.W.2d 419, 420 (Tenn. 1967). In *Leighton*, the Tennessee Supreme Court reversed and remanded for new trial a case in which the trial court stated, among other things, "*I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition....*" *Id.* The *Leighton* court quoted with approval language in *In Re Cameron*: Beyond question, **it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice.** *Id.* at 421 (quoting *In re Cameron*, 126 Tenn. 614, 151 S.W. 64, 77 (1912)). Often parties allege that comments made by the judge demonstrate bias or prejudice. **An expression of opinion of the merits of the case prior to hearing the evidence is indicative of bias.** *Kail v. State*, 528 N.E.2d 799, 804 (Ind. App. 1988). **Remarks which suggest that the judge has taken a position favorable or unfavorable to a party also indicate bias.** *LaBow v. LaBow,* 13 Conn. App. 330, 537 A.2d 157, 164 (1988); *Brown v. St. George Island, Ltd.,* 561 So.2d 253, 257 (Fla. 1990) (judge who refused to admit affidavit stating, "I wouldn't believe him anyway," should be disqualified).

As evidenced above and further substantiated in the immediately following paragraphs below, the trial court appears to not have read any of Husband's motions or responses to motions contrary to the trial court's statements that he did read them. How can a litigant expect a fair

hearing when a judge issues rulings without hearing arguments from either side, and without reading pleadings?

Furthermore, any judge or legal professional who would have actually read Husband's response to Wife's motion, can plainly see Wife's motion to quash should be dismissed. **How can a judge suppress evidence required in discovery? How can a judge suppress evidence of a spouse hiding assets and failing to disclose bank and credit card accounts that should have been disclosed in discovery?** In reading Husband's <u>RESPONSE TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL</u>, it is obvious that Wife's motion to quash any and all subpoenas should have been denied.

In the trial court granting Wife's motion, it gives the appearance that the trial court did not read Husbands response - again contrary to his statements in open court or the appearance of bias and a suppression or obstruction of Appellant's evidence. This ruling by the trial court suggests extreme bias and it further suggests a violation of Husband's basic right to be heard. Appellant provided the appellate court with a copy of his <u>RESPONSE TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS...</u>, as Addendum 15 of his original Petition for Rehearing. In his **<u>SUPPLEMENTAL RESPONSE</u>** <u>TO WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS...</u> **Addendum 6**, Husband specifically referenced several statutes and rules of procedure demonstrating the illegality of such a motion as follows;

> 2. **Wife's Motion cannot legally be directed at "any and all" subpoenas**. This amounts to an obstruction of evidence in that a blanket motion like this restricts Husband from obtaining evidence necessary to his case that may come to light in the future especially in regards to Husband's current pending subpoena that is requesting documents on

newly discovered accounts that wife intentionally failed to disclose in contempt of court.

3. Husband asserts Wife's intent with her motion to quash is aimed at preventing proper disclosure of newly discovered accounts that Wife failed to properly disclose in discovery.

5. Rule 45.08 of the Tenn. Rules of Civil Procedure, Duties in Responding to Subpoena states;

> On motion to compel discovery or to quash, **the person whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost**. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause.

6. For Wife to provide the requested information, it is a simple matter of logging into various accounts and servers and printing the requested evidence. **Certainly, this is not an "undue burden" on wife.**

7. Clearly the Rules of Civil Procedure provide for discovery through request for production of documents (Rule 26) and subpoenas (Rule 45) to facilitate litigants being able to properly present their cases. A blanket motion such as Wife's motion in this instance, is in direct conflict with these provisions.

8. Wife's Motion also asks the court to issue a ruling in contradiction to **Tenn. Code Ann. § 24-2-107 which states;**

> **If any local rule of court conflicts with the provisions of Rule 45, the provisions of Rule 45 shall prevail... ... and the judge shall punish the refusal to respond to subpoenas in accordance with the provisions of such rule.**

At the end of the hearing, the following dialogue took place;

> THE COURT: Review financial position and review credibility. Mr. Lankford, **is there anything that you see in any of those motions that shouldn't be addressed at the final hearing**?
> MR. LANKFORD: No, Your Honor. And the other thing, Your Honor, I just want to point out that we have two days for this. Mr. Gentry has attached over a hundred pages of spreadsheets. I have serious concern if he plans to go through that at final hearing in two days.
> THE COURT: It will be done in two days.

MR. LANKFORD: I'm hoping. But no, Your Honor, nothing that can't be addressed at final hearing.

THE COURT: You'll do the orders, Mr. Lankford.

MR. LANKFORD: And I'd ask the Court to reserve attorney fees.

THE COURT: We'll do. All right. Thank you. **EXHIBIT C p. 16**

There are two disturbing conclusions to draw from this dialogue. First, in asking the question, "*Review financial position and review credibility. Mr. Lankford, is there anything that you see in any of those motions that shouldn't be addressed at the final hearing?*" If, as the trial court has stated, that he read "everything", why would he ask opposing counsel this question? Husband asserts, the trial court asks this question because he has no knowledge of the content of those motions despite his several statements that he did read Husband's motions and responses to motions. This substantiates the reasonable conclusion that the trial court made false statements asserting that he had read Husband's motions and responses to motions. The trial court stated;

**"I read everything. So I've read your responses" EXHIBIT C p. 13**

**What I'm telling you is, I take my time before court starts. That's why I get here at seven o'clock in the morning or 6:30 in the morning, to read what you filed. I'm not going to take up their time. So I do listen to your arguments, but I read them. I don't need to hear the same thing that I've already read. EXHIBIT C p. 13-14**

MR. GENTRY: Just a quick question, Your Honor. **So you've read my response to their motion to rule on the garnishment?**

THE COURT: **Yes. EXHIBIT C p. 14**

MR. GENTRY: Don't I get to respond?

THE COURT: **No. I read your responses. EXHIBIT C p. 15**

Also, it seems incredibly biased of the court to ask Wife's counsel about the validity of Husband's motion. This reflects the fact of a one-sided case, which has been evident in this

case since the inception of these proceedings.  **No litigant can hope for a fair hearing in a one-sided trial.**

Meaning no disrespect to the office of the judiciary, it is quite obvious that the trial court likely made false statements during official proceedings in a poorly veiled attempt to hide likely violation of Husband's right to be heard.

If the trial court would have read Husband's <u>MOTION TO REQUEST THE COURT TO REVIEW FINANCIAL POSITIONS OF PLANTIFF AND DEFENDANT</u>, he would know that his garnishment ruling was causing Husband great financial harm.  This ruling forced husband to pay bills late, and destroyed his financial credit rating which affects his ability to earn a living.  Husband is in such fear of judicial reprisal that he anticipated the trial court would incarcerate him if he didn't make monthly payment of attorney fees to escrow with the court even though Husband cannot afford his own counsel and cannot afford to pay his own bills.  This behavior by the trial court caused great emotional and financial harm to Husband.

The below dialogue between opposing counsel and the trial court indicates Husband will not be able to present his proof at trial.  Effectively, the trial court is stating, 'I don't care what evidence he has, the hearing will last only two days'.  This statement by the trial court also demonstrates a possible bias and a predisposition to issue a ruling without hearing fair arguments or viewing evidence from both sides.

> "MR. LANKFORD: No, Your Honor.  And the other thing, Your Honor, I just want to point out that we have two days for this.  Mr. Gentry has attached over a hundred pages of spreadsheets.  I have serious concern if he plans to go through that at final hearing in two days.
> THE COURT: **It will be done in two days.**

When one considers, (1) the trial court did not know what motions were on the docket, (2) when one considers the trial court did not know Husband's arguments against quashing the Kati

Lohr subpoena and that he didn't know about the email referenced, (3) when one considers the trial court suppressed or obstructed Husband's subpoenaed evidence, (4) when one considers his granting Wife's motion to clarify despite Husband's lack of financial resources, (5) when one considers his question to opposing counsel about Husband's motions to review financial positions and review credibility, the only conclusion that can be drawn is that the trial court appears to have falsely stated he had read Husband's motions or responses to motions and that the trial court possibly made these false statements to hide possible violation of Husband's right to heard.

## STATEMENTS OF THE FACTS – Suppression of Testimony Regarding Wife's Perjury That The Business Is Profitable

During a hearing on September 15, 2015, the trial court indicated Husband would be allowed cross examination of Wife, and would be provided an opportunity to show that Wife perjured herself during the initial hearing of Husband's Petition for Contempt held on March 10, 2015. As evidenced below, Husband was denied this opportunity during the final hearing. The trial court's statements suggest the court was obstructing Appellant/Husband's evidence and testimony. The court's statements give the appearance that the trial court is protecting Wife from evidence that would prove yet another instance of her material perjury. During the March 10, 2015 hearing, Wife made the following statements during direct examination that provided the trail court the opportunity to deny Appellant's alternative motion for Pendente Lite Support;

> THE WITNESS: When he calls it profit, that's not so much going into we had that money laying around. What it is, yes, it pays our salaries, hourly
> employees' wages. It pays rent. When you look at our tax returns, **it's not a profitable company**. We don't have that money laying around. **March**

16

**10, 2015 Tr. P. 205** (Attached to original Petition for Rehearing filed with Appellate Court as Addendum 2)

On September 15, 2015, Husband's Motion to Reconvene the March 10, 2015 hearing was brought before the court but not heard. Husband filed that motion because the March 10, 2015 hearing was not fully adjudicated because Husband was involuntary pro se and unable to present arguments of law at the time, and because Wife perjured herself and res judicata did not apply. The trial court indicated Husband would be able to cross exam Wife at the final hearing. During the September 15, 2015 hearing, the following statements were made;

> MR. GENTRY: I did not have an opportunity to cross-examine Ms. Gentry. Ms. Taylor stated -- during the hearing Ms. Taylor stated (sic, demanded) that she should have been allowed to cross-examine and that a ruling should not be issued without her having an opportunity to cross-examine.
> I was not given that (sic, same) fair opportunity. If I could show the Court and have an opportunity to cross-examine Ms. Gentry, I can assure you that all of the behavior that my wife has delegated (sic alleged) as improper on my part is just ridiculous allegations.
> THE COURT: **And you don't think you're going to get that opportunity at the final hearing**? **Sept. 15, 2015 Tr. P. 4-5** (Attached to original Petition for Rehearing filed with Appellate Court as Addendum 6)

During the final hearing, Husband attempted to show the trial court that Wife perjured herself but the trial court would not allow Husband's line of questioning and would not allow Husband to present evidence that would prove Wife's perjury. Obstructing evidence and suppressing testimony in this manner suggests bias against Husband. During the final hearing the following dialogue took place;

THE COURT: Mr. Lankford objected to the e-mails coming in on the grounds of relevance. How are these relevant to the issues in the divorce?

Throughout proceedings, it appears as if the trail court cues off of Wife's counsel's unsubstantiated objections not as a matter of law, but as a suggestion to manipulate the proceedings to prevent Husband's proof.

> MR. GENTRY: **Ms. Gentry has presented evidence and testified that the business was not profitable. These e-mails will show that she knows that the business is quite profitable and does very well, along with when we get into other valuation, there will be further evidence to show that as well, Your Honor.**
> THE COURT: She's testified that the business is profitable. The last question you asked her, she testified that the business was making a profit.
> MR. GENTRY: It's contradictory.
> MR. LANKFORD: We'll withdraw our objection on that. I wanted to make a point.
> THE COURT: **I may still have a problem that it's cumulative. She's not contesting that the business is profitable.** Did I misunderstand your testimony, Ms. Gentry?
> THE WITNESS: No. That's correct. Our last return showed a profit.
> THE COURT: Why do we need to get into this if she's saying that the business is profitable?
> MR. GENTRY: **During the March hearing, she communicated to the Court that the business was not profitable. And she deceived this Court and she didn't provide support.**
> THE COURT: That was more than two years ago. She's testifying today the business is profitable. So what are you trying to prove --
> MR. GENTRY: I think it was profitable two years ago as well, Your Honor.
> THE COURT: You can move on from this. If she's testifying that it's profitable, you don't need to prove that it's profitable. Addendum 7
> **May 2, 2016 Tr. P. 247 – 249**

As evidenced in Appellant's original Petition for Rehearing filed with this Appellate Court, Husband should not have been denied income during pendency from the business he

18

made successful based on the doctrine of commingling of the profit from the patent pending product Husband created. Husband also should not have been denied income form the business according to Tenn. Code Ann. 36-4-121(b)(B) because of Husband's significant contributions to the business. The trial court recognized Husband's significant contributions in citing the Cutsinger case in its final order (See **Addendum 9 P. 7.** Husband also should not have been denied support because Wife had the ability to provide support from a profitable business she asserts is her separate property. And yet, despite overwhelming evidence to the contrary, despite statutory law, despite case precedence, Husband was denied income and Pendente Lite support during pendency. This denial of income and support caused Husband to lose his legal representation, nearly caused him to lose his home to foreclosure, completely bankrupt husband causing him to incur significant debt, loss of health insurance and caused Husband great emotional and financial harm.

**In the trial court not allowing Husband to prove Wife's perjury, it gives the impression that Husband was intentionally denied access to the court through intentional delay of proceedings, intentional denial of support and or income from the business, and intentional suppression of evidence.** See pages 6 – 9 of Husband's Original Petition for Rehearing which evidence; (1) the trial court ignored Wife's perjury about her ability to provide support, (2) that although the court stated it would rule on and provide support on March 23, 2015 the trial court did not rule for 125 days, (3) and that Husband's counsel withdrew for non-payment of attorney fees and Husband was forced to represent himself as involuntary pro se.

Even more disturbing, as also evidenced in Appellant's original Petition for rehearing (starting at the bottom of page 14-15), the trial court would not even allow Husband to speak and argue as to why the hearing on Husband's Petition for Contempt/Pendente Lite Support should reconvene. Any one of these facts considered separately demonstrates an appearance of bias. Together, these facts show a pattern that perhaps Appellant was intentionally not heard suggesting an appearance of bias.

Also during this same dialogue, Husband specifically asked the court to again take up the matter and reconsider its ruling on Husband's Petition for Contempt as evidenced below.

> MR. GENTRY: **There is an order denied for support during that hearing. And then there was my petition for contempt that was also denied.**
> THE COURT: **Okay. So you're making an argument that when we conclude this hearing you want me to revisit those issues.**
> MR. GENTRY: Based on the evidence --
> THE COURT: **Just answer me yes or no. You're wanting me to revisit those issues once we conclude?**
> MR. GENTRY: **Yes, Your Honor.**
> THE COURT: All right. When we get finished with all the proof if you want to raise that again, you may do so at that time.
> MR. GENTRY: **Because we are looking at those things. Isn't the March transcript -- can't that become part of the evidence and Ms. Gentry's statement that she made under testimony?**
> THE COURT: **Not the way you're trying to introduce it. All right? I can't tell you how to do it, Mr. Gentry. I just can't. I don't tell them how to do things. I can't tell you how to do things.**
> MR. GENTRY: If I made a motion to revise the ruling, would the Court consider it?
> THE COURT: **What I'm telling you to do is to raise that argument at the end of the proof. All right? I'm not saying you can't do it, but we need to get through the proof. We have two days. You can raise that argument at the end of the proof if you would like. Okay?**

MR. LANKFORD: Your Honor, just briefly. Mr. Gentry is referring to Rule 54.02. We agree that the Court has discretion to modify a judgment at any time. The Court has properly addressed that in its previous ruling. THE COURT: Thank you, Mr. Lankford. **Addendum 7 May 2, 2016 Tr. P. 244 – 245**

Appellant plainly asked the trial court to revisit its ruling denying Appellant's Petition for Contempt which the trial court did not do. As noted above on page 15 of this document, the trial court plainly indicated Husband could raise the issue of Wife's perjury in the March 10, 2015 hearing, during the final hearing. Again, the court stated "**And you don't think you're going to get that opportunity at the final hearing**?" And yet, when Husband attempts to raise the issue, the trial court plainly suppresses that line of questioning and will not allow Husband to present evidence. Without explanation, the trial court denies Husband's request to reference the transcript where Wife perjured herself without stating a basis for this decision. The court's statements are plainly contradictory and give the appearance that the trial court is diligently protecting Wife from evidence showing her perjury.

Even more surprising, Husband filed a motion on February 4, 2016 titled, MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO STATE FINDINGS OF FACT AND SEPERATELY STATE HIS CONCLUSIONS OF LAW **Addendum 8**. In this motion Husband specifically asked to court to state its findings of fact and conclusions of law regarding Husband's Petition for Contempt/Pendente Lite Support. See **Addendum 8**, page 2 Item 1. The trial court simply declared Husband's Motion moot and did not state his findings and conclusions in his final order. During the initial proceedings of the final hearing, the trial court made the following statement;

21

> THE COURT: **Mr. Gentry, you filed a motion for the Court to state findings of fact and conclusions of law**. I am required to do that after this hearing. So once this hearing is concluded, whatever decision is made, there will be the decision that includes findings of fact and conclusions of law. So you don't have to file a motion for that. That's imposed by the Rules of Civil Procedure. **That motion is moot**. (See Addendum 18 of original Petition for Rehearing May 2, 2016 Tr. P. 6)

Appellant argues that his Motion to State Findings of Fact and Conclusions of Law regarding specified rulings is not "moot". Appellant had specifically asked the trial court to state its findings and conclusions regarding Husband's Petition for Contempt/Pendente Lite Support during the hearing on August 7, 2015 of Appellant's Motion to Recuse or Reconvene, at which time the trial court informed Appellant that the trial court was not required to state its findings and conclusions. In his written motion to state findings and conclusions, Appellant referenced the following case. In the case, Bruce v. Bruce, 801 SW 2d 102 - Tenn: Court of Appeals, Middle Section 1990, the Court of Appeals at Nashville stated;

> Defendant's first issue is: **"The court erred in failing to make written findings of fact and conclusions of law."**
> Defendant argues that the trial court failed to comply with Tenn.R.Civ.P. 52.01 which provides in pertinent part as follows:
> **"In all actions tried upon the facts without a jury, and upon request made by any party prior to the entry of judgment, the court shall find the facts specially and shall state separately its conclusions of law thereon and direct the entry of the appropriate judgment."** Id.
> Defendant's counsel specifically requested the trial court to "make specific findings of fact and conclusions of law." However, the trial court responded that the request was too late because it came after the court rendered the decision. Defendant's counsel insisted that the court had not yet made a "full decision" and the court maintained that the request had come too late because it came after its determination of "all the significant issues that have to be set out."
> **The trial court was incorrect in its insistence that the defendant's request for findings of fact and conclusions of law had come too late.**

> Tennessee Rule of Civil Procedure 52.01 provides that a party may request findings of fact at any time "prior to the entry of judgment."[2]
>
> Findings of fact and conclusions of law rendered by the trial court "promote a just and speedy determination of the issues," Murray Ohio Mfg. Co. v. Vines, 498 S.W.2d 897, 902 (Tenn. 1973), and facilitate appellate review by the courts and appellate case preparation by the parties. Tennessee Rule of Civil Procedure 52.01 was specifically designed to govern the procedure by which such findings of fact and conclusions of law should be requested and entered. Rule 52.01 includes the mandatory language that upon a timely request by any party the trial court "shall find the facts specially and shall state separately its conclusions of law thereon." Id.

Not once but three times Husband requested the trial court to state its findings of fact and conclusions of law regarding the trial court's denial of Appellant's Petition for Contempt or in the Alternative Pendente Lite support and three times the court refused to state findings and conclusions regarding this matter. This suggests the trial court had no legal basis for denying Husband's Motion and indicates bias against Appellant.

Appellant would further argue that pursuant to Tenn.R.Civ.P. 54.02 Multiple Claims for Relief, because the trial court still has not stated a basis for its ruling pursuant to Tenn.R.Civ.P. 52.01 Findings Required, the matter is not settled and pursuant to Tenn.R.Civ.P. 54.02 until all claims are settled, no matters or claims are terminated and this case should be reheard before a different judge.

The same is true regarding Appellant's request for the trial court to state its findings and conclusions regarding intellectual property. The trial court did not state any legal basis for its decision. In his motion to state findings and conclusions, Appellant also requested the trial

court to state its finding and conclusions regarding Husband's and Wife intellectual property which the court properly determined to be marital property. The trial court astoundingly assigned a zero value to a product that provided more than $820,000 gross profit over a three-year period and then awarded the patent 100% to Wife simply stating, because it was "her idea" without referencing any foundation in law whatsoever and without referencing any facts whatsoever **Addendum 9 P 5 - 6.** The facts show it was Husband's idea even according to Wife's testimony. During direct examination, Wife testified as follows;

> **The original idea,** it was -- there's like a little cake decorating book from decades ago .... And so I started using this method. (See Addendum 18 of original Petition for Rehearing May 2, 2016 Tr. P. 132)
>
> **Mr. Gentry saw me using it in a class and he saw how excited people got about it and how easy it was to use. And he was like, We need to start selling these, like market these all over the place. Let's do that. I was like, Well, that would be great, but you can't do it, because it's not food safe.** (See Addendum 18 of original Petition for Rehearing May 2, 2016 Tr. P. 135 – 136)
>
> **John doesn't -- when he gets a good idea in his head, he wants to run with it. He doesn't really always hear the drawbacks of that. So he didn't pay much attention to that. He just kind of went to see if he could get a large -- he started making calls to see if we could get a manufacturer of the vinyl rolls** (See Addendum 18 of original Petition for Rehearing May 2, 2016 Tr. P. 136)
>
> **John encouraged me to file a patent. He thought this was something that could make money and we could kind of corner the market on.** (See Addendum 18 of original Petition for Rehearing May 2, 2016 Tr. P. 136)

According to Wife's own testimony, Wife plainly stated the original idea was in a cake decorating book. Wife plainly stated it was Husband's idea to mass market the product. Wife

plainly stated it can't be done because it's not food safe. Wife plainly tried to discourage Husband from pursuing the product. Wife plainly states it was Husband who wanted to protect the product with a patent. Because this matter is also not properly settled pursuant to Rule 54.02 and the trial court did not state a legal basis for its decision, this claim is also not terminated and therefore all claims are not terminated and this case should be heard before a different judge.

In the court stating it is awarding Wife 100% of the rights to the patent simply because it was her idea, **which it was not**, the trial court shows no regard for the cases Raulston v. Raulston, Tenn: Court of Appeals 2006, Brown v. Brown, 913 SW 2d 163 - Tenn: Court of Appeals, Middle Section 1994, Cutsinger v. Cutsinger, 917 SW 2d 238 - Tenn: Court of Appeals, Western Section 1995, Powell v. Powell, 124 SW 3d 100 - Tenn: Court of Appeals 2003, Hazard v. Hazard, 833 SW 2d 911 - Tenn.: Court of Appeals, Western Section 1991, Maloy v. Maloy, No. M2006-02463-COA-R3-CV (Tenn. Ct. App. Sept. 14, 2007) and Keyt v. Keyt, 244 SW 3d 321 - Tenn: Supreme Court 2007 244 S.W.3d 321 (2007). In the trial court ignoring all of this case law precedence suggests bias against Husband.

During the final hearing, the trial court requested both Appellant as involuntary pro se and Wife's counsel to tender proposed Finding of Fact and Conclusions of Law. Appellant found this request interesting because the trial court has made numerous statements throughout proceedings saying Husband does not know the law.

> THE COURT: You don't understand the law. You're not a lawyer.
> **Transcript February 9, 2016 Tr. P. 10**

25

THE COURT: You don't understand. You're not trained as a lawyer. You don't understand how to plead things **Transcript February 9, 2016 P. 13**

THE COURT: ... Because you are not trained in the law, because you don't understand legal procedure, because you don't understand how you present your case, you are not being terribly effective in doing so. MR. GENTRY: **I can't afford it.**
THE COURT: **Now, you have the right to do that but that is having consequences for you in this proceeding. Transcript October 27, 2015 P. 12 – 13**

Appellant has a right to not afford legal representation? This statement by the trial court does not make sense and suggests bias.

THE COURT: All right. First of all, let's make sure that you understand, you are a layperson. You are not represented by counsel. You are not trained in the law. I mean this in the purest sense of the word. **Transcript November 3, 2015 P. 17 - 18**

Husband is hopeful that this Honorable Appellate Court finds Appellant's arguments well stated and substantiated by case law precedence, statutory code and rules of procedure, evidencing that Husband does have some knowledge regarding marital law. Certainly, trained and experienced attorneys will know the law better and certainly Appellant as involuntary pro se makes mistakes. However, Appellant is hopeful the Appellate Court recognizes that Appellant does have a reasonable grasp of marital law as evidenced in his pleadings before this Honorable Appellate Court. The trial court's above statements, seem to suggest, the trial court has not read any of Appellant's pleadings or legal briefs suggesting bias.

Appellant further asserts the trial court uses these statements to disregard Appellant's well founded arguments of law which further suggests bias. Appellant would note for the

Appellate Court, that Appellant had no desire to represent himself and was left with no alternative but to try to educate and defend himself to best of his ability.

Even as Appellant's counsel withdrew for non-payment on June 8, 2015, and although the trial court stated it would "get something in place" and rule on temporary support on March 23, 2015, when Appellant inquired about temporary support as his counsel withdrew, the trial court simply instructed Appellant to wait for the July 1, 2015 continuance hearing. The transcripts show, that even in the face of what appears to be extreme bias, Appellant continued to conduct himself professionally and with great respect for the office of the judiciary.

## STATEMENTS OF THE FACTS – Suppression of Evidence and Testimony Regarding Wife's Attempted Subordinated Perjury.

During the final hearing, Husband attempted to evidence Wife's attempt at subordinated perjury. Husband was hopeful to testify and enter into evidence a Facebook chat with his former wife from another marriage that would show that Wife in this case asked his former wife to make false statements under oath, which is subordination of perjury as well as harassment and violation of statutory injunction.

As noted in the following dialogue, the trial court refused this testimony and evidence suggesting bias. Appellant would further note for the Appellate court that the final hearing was scheduled for two days with each day scheduled to end around 4PM. On the same last day of the hearing as the following dialogue took place, the final hearing ended around 2 or 2:30PM, approximately two hours early.

> MR. GENTRY: I did have a section in here where Ms. Gentry was attempting to subordinate perjury from my former wife.
> THE COURT: You can take that up with the district attorney. This isn't a criminal case.
> MR. GENTRY: Well, it's a violation of statutory injunction.
> THE COURT: But the issues for the divorce, we have to pare down the issues for the divorce today. **Addendum 10, May 3, 2016 Tr. P. 359**

The above dialogue suggests the trial court is continuing to diligently protect Wife from any evidence showing her misconduct, even her criminal conduct. And of course this creates an appearance of bias, and again, whenever this is an appearance of bias, whether or not there is actual bias, a judge should be disqualified.

## STATEMENTS OF THE FACTS – The Trial Court Arguing on Behalf of Wife.

During the final hearing, Husband presented evidence that Wife deleted emails of her harassment of Husband and she also deleted emails evidencing Husband's ownership in the business. During Wife's testimony she made the ridiculous assertion that GoDaddy, one of the world's largest email and domain providers, had an upgrade glitch that caused emails to be randomly deleted from its servers. Wife further testified that she called into GoDaddy customer service regarding this alleged upgrade glitch. Appellant subpoenaed GoDaddy's customer service logs which showed that in fact, no calls were made by wife or anyone in their business to customer service. Upon presentation of this evidence, the trial court interrupted Husband while he was explaining the validity of the certification of the subpoena response. What is most disturbing though, is that the trial court argued on behalf of Wife suggesting further bias.

28

MR. GENTRY: So this is the subpoena that I received back from GoDaddy or the response to the subpoena. And they did have a certificate of authenticity and they state that such records were made at or near

the time of the occurrence by a person with knowledge. Such records are kept in the course of regular business activity. And the business activity makes such records regular practice.

THE COURT: **Mr. Gentry, I'm familiar with what the certificate has to**

**say. That's required by law. So you don't have to go through that.**

MR. GENTRY: So I had asked -- they don't respond about whether e-mails were deleted specifically. But what they do show on the last several pages is that there were no call ins to customer service. So in the e-mail that we had gone through with Ms. Gentry's testimony, she had stated that she had already called GoDaddy.

THE COURT: All right. I'm letting you argue a little bit here rather than produce facts. But just to short circuit things, what part of this do you think indicates that there was no call in?

MR. GENTRY: I think it's Page 7 of the document, Your Honor. And then it goes through the details for each section after that, e-mail all the way down. And then if you go to the next page, Page 8, it's an audit. This is for mail, customer service, phone calls. And it says there's no IP account information available. So that means, pertaining to Web mail, nobody called in.

THE COURT: Why do you think that?

MR. GENTRY: Because there would be a log, a customer service log.

THE COURT: **Could be that they have a routine purge.**

MR. LANKFORD: Your Honor, I can't speak to --

MR. GENTRY: They stated that they keep records in the regular course of business.

THE COURT: So your argument is -- I understand, Mr. Gentry. And again, I sort of let you get out of the box a little bit as far as testifying. Your argument is because it says they don't have any workplace IP audit account available, your argument is that means she didn't call in.

MR. GENTRY: Yes, sir.

THE COURT: Okay. All right.

MR. GENTRY: And that's for all the services that they have at GoDaddy for fax or online storage. There were no phone calls.

THE COURT: I understand your position. **Addendum 10, May 3, 2016 Tr. P. 340 - 342**

**What is most disturbing in this dialogue, is the trial court's statement "Could be**
**they have a routine purge".** The certification of the subpoena plainly stated *"records were*
*made at or near the time of the occurrence by a person with knowledge. Such records are kept*
*in the course of regular business activity. And the business activity makes such records regular*
*practice."* If GoDaddy periodically purges data, **which it does not,** the certification would have
stated records are kept for a specified period of time, which the certification plainly did not
state. GoDaddy is a multinational organization with well-trained lawyers. If GoDaddy only
maintained records for a period of time, the certification would have stated so. The trial court's
statement was an argument on behalf of Wife and such arguments should be reserved for
counsel. For a trial court judge to argue on behalf of a litigant suggests bias.

## STATEMENTS OF THE FACTS – Ignoring Wife's Falsified Income and Expense Statement And Wife's Perjury.

During proceedings, Wife testified she earns $78,000 annual base salary and that the
business pays for her car, her cell phone bill, her home internet and cable, dining expenses.
Addendum 7 **May 2, 2016 Tr. P. 214 – 216.**

Ms. Gentry also previously testified that the business used to pay exactly the same salary
and benefits to Husband and that Husband had not been replaced in the business. Ms. Gentry
also testified that not only was Husband not replaced in the business but that he would not be
replaced in the future. Ms. Gentry testified as follows;

THE COURT: …. Let me do this. **Ms. Gentry, have you replaced Mr. Gentry?**
…

THE WITNESS: **He has not been replaced. We've actually found that between Dancho and I that we're able to handle the duties that he had. See Original Petition for Rehearing Addendum 2 Tr. P 204.**

Wife submitted a falsified income and expense statement to the court, that did not include business income and also claimed that her expenses exceeded her income by $2,468.41. Her falsified income and expense statement plainly stated she was going into debt by an additional negative $-2,468.41 each and every month. Knowing Wife makes a very comfortable $78,000 with all expenses paid and that she also had the use of Husband's former income from the business. Knowing that she stated the business was business was profitable and yet her income and expense statement did not reflect business income, the trial court must have known that Wife perjured herself when she testified during direct examination that the income and expense statement she submitted to the court accurately depicted monthly income and expenses. During cross examination, Husband proved beyond any doubt whatsoever that Wife's income and expense statement was a mathematical impossibility. **Addendum 7 May 2, 2016 Tr. P. 214 – 216.**

Surprisingly, upon Husband proving the mathematical impossibility of Wife's Income and expense statement, the court then ordered a short recess. This gives the appearance that the trial court was intentionally disrupting Husband's line of questioning. It gives the appearance; the trial court was providing Wife an opportunity to prepare some kind of defense to make up some kind of excuse for her perjury which Wife's counsel certainly attempted to do. In the trial court disrupting Husband's line of questioning for recess, this gives an impression of the trial court's further diligence in attempting to prevent Husband from proving Wife's misconduct.

31

This action by the trial court clearly provides an appearance of bias against Husband. When Husband had Wife cornered and had proven her material perjury and falsified document tendered to the court, the court called recess as follows;

> THE COURT: Let's do this. You look at the documents. We'll come back from a break and pick it up there. We've been going about an hour and a half. So let's break for about 10 minutes. We'll come back at five till 3:00. **Addendum 7 May 2, 2016 Tr. P. 217.**

Despite ridiculous arguments made by opposing counsel, Husband still proved the mathematical impossibility of Wife's income and expense statement. **Addendum 7 May 2, 2016 Tr. P. 219 - 234.**

Incredibly, despite the fact that Husband proved Wife's perjury, the trial court, apparently against the court's own intent, signed a surreptitious order tendered by Wife and awarded escrowed fees to Wife. Husband vehemently objected to this surreptitious order tendered by Wife's counsel. This seems to suggest that the trial court signs whatever order Wife's counsel places under his hand, even if it causes the trial court to contradict itself.

**Addendum 11**, is Husband's objection to the surreptitious order tendered by Wife. In his objection, Husband stated;

> Execution of the order prepared by Wife would bring embarrassment and dishonor to the Court since it asks the Court to rule against the weight of evidence, it asks the Court to contradict its own statements and it asks the Court to make a false statement. **Addendum 11**

In **Addendum 11**, Husband proves to the trial court that the order should not be signed. True to form, the trial court apparently did not read Husband's objection and signed the order anyway.

Because the trial court signed this surreptitious order tendered by Wife's counsel, Husband filed a Motion **Addendum 12** and Supplemental Motion **Addendum 13** to Alter the order signed on June 22, 2016. In these motions, Husband further proved that the order should not have been signed. During the final hearing, the court stated;

> THE COURT: ...I believe I'm going to declare the parties divorced pursuant to T.C.A. 36-401-29, which means that you're divorced effective today. And, Mr. Lankford, if you want to submit a decree declaring the parties divorced today **reserving all other issues for resolution by the Court**, we'll go ahead and sign that. But I think I'm going to simply declare the parties divorced today pursuant to 36-401-29.
>
> MR. LANKFORD: Thank you, Your Honor. **See Addendum 11 of Husband's Original Petition for Rehearing May 3, 2015 Transcript Volume 4 p. 468**

The trial court's statement to *"reserve all other issues"* means what it says. Don't tender any other orders. And again, it should never be necessary for a judge to tell an attorney to "reserve all other issues" except in that they previously had that leave of the court to decide matters for themselves.

During a hearing on July 20, 2016 of Husband's motions **Addendum 12, 13**, the **trial court simply fell back on its position, that Husband does not understand the law, does not understand how things are done in a court of law.**

**The trail court specifically stated;**

> THE COURT: ... Okay? Do you have any questions for me before we conclude today's proceedings?
>
> MR. GENTRY: **JUST ASK ABOUT ATTORNEY FEES**, Your Honor.
>
> THE COURT: **I'M NOT GOING TO MAKE A DECISION ON THAT TODAY. I WANT TO GO BACK AND I WANT TO**

**REVIEW THE FILE. I CAN MAKE THAT DECISION BEFORE YOU SUBMIT YOUR FINDINGS OF FACT AND CONCLUSIONS OF LAW**, but I want to go back and look at the different motion hearings that we've had before I make a decision on that. **May 3, 2015 Transcript p. 467**

THE COURT: ... **THERE'S NO REASON TO SUBMIT ANYTHING OTHER THAN FINDINGS OF FACT AND CONCLUSIONS OF LAW**. ... **May 3, 2015 Transcript p. 466**

THE COURT: ...I believe I'm going to declare the parties divorced ..., which means that you're divorced effective today. **And, Mr. Lankford, if you want to submit a decree declaring the parties divorced today RESERVING ALL OTHER ISSUES FOR RESOLUTION BY THE COURT, we'll go ahead and sign that.**
**The Court further stated;**
**BUT I THINK I'M GOING TO SIMPLY DECLARE THE PARTIES DIVORCED TODAY.**
MR. LANKFORD: Thank you, Your Honor. **May 3, 2015 Transcript Volume 4 p. 468**

How can Wife's counsel tender an order awarding attorney fees when the court specifically did not rule on the matter? How can the trail court dismiss Husband's complaint that the order never should have been signed with the condescending statement that Husband does not understand the law, does not understand how things are done in a court of law? Even a layperson knows, that it is not counsel that issues rulings and determines the outcomes of proceedings. That is the responsibility of the court. Even a layperson knows this. These statements by the court and this order signed by the court suggest extreme bias or alternatively that the trail court simply signs whatever order is placed under his hand, without care for justice or proper ruling.

34

## STATEMENTS OF THE FACTS – Prejudging Matters Before Hearing Arguments or Viewing Evidence

During a hearing on October 27, 2015, due to a scheduling error by the clerk's office, Appellant's Motions were not properly scheduled on the docket. The trial court clerk's office had scheduled to be heard, Defendant's Motion to Compel Health Insurance and Life Insurance and it was also communicated by the clerk's office that Defendant's arguments for a Rule 9 Interlocutory Appeal would be heard. It is worth noting that even in something as simple as whether a Notice of Hearing was properly filed, the trial court immediately assumed Appellant failed to properly file a Notice of Hearing. This exchange between the court and Defendant is important in that together with later dialogue, the court demonstrates a pattern of a predisposition to completely disregard Defendant's arguments, even before hearing them. The following dialogue took place;

> The Court: You never filed a notice of hearing.
> Mr. Gentry: I filed a notice of appeal, yes, sir.
> The Court: A notice of hearing on this motion. You never filed a notice of hearing.
> Mr. Gentry: I did file a notice of hearing.
> The Court: Well, it's not – no you didn't. It's not on the docket. Your notice of appeal –
> Mr. Gentry: I have a confirmation email with me sir –
> The Court: It's not an email. It's a notice of hearing. It's a separate written document. Do you have a separate written document?
> Mr. Gentry: Yes, sir, I have a notice of hearing right here.
> The Court: Let's see it. I'm not hearing it today, but let me see what happened in the clerk's office. **Addendum 3 Tr. P. 5**

This may seem an innocuous exchange, but it demonstrates the trial court's predisposition to disregard Appellant's statements. Without asking if Defendant has any

evidence to support his statement, the trial court states *"You never filed a notice of hearing"* After presenting a copy of the Notice of Hearing and a copy of an email from scheduling, the court recognized the error was caused by the clerk's office and not by Appellant **Addendum 3 Tr. 7)**

**The trial court's bias and animosity toward Defendant becomes evident and obvious in the trial court's next statement and is of critical importance.**

> The Court: **By the way, I'm treating your request for an appeal as a request for an interlocutory appeal and that's denied.** So you can't file an appeal until the case is over unless there's a unique question of law. MR. GENTRY: Actually, sir, according to Rule 10 I can file an interlocutory appeal --
> THE COURT: I know, but you have to get my permission and I'm denying that. **Addendum 3 Tr P. 6**

In making the above statement *"By the way...,* without hearing any arguments whatsoever, and without reviewing any facts at issue, the trial court wantonly denied Appellant permission for interlocutory appeal. Also, the trial court was apparently not paying attention to, or doesn't understand and interrupts Appellant stating he has to have the court's permission to file a Rule 10 appeal which is not correct. A Rule 10 Extraordinary Appeal does not require permission of the trial court as does a Rule 9 Interlocutory Appeal.

When the trial court made the statement, *"By the way, I'm treating your request for an appeal as a request for an interlocutory appeal and that's denied."*, this is **exactly** (emphasis added), the same kind of statement as" *"I don't care what proof is in the record..."* made by the court in the Leighton case referenced above. Effectively, in this case, the trial court is stating 'I don't care what the arguments are', **'I don't care what the evidence shows'** --- Motion

**Denied**. It is quite obvious in the trial court's statement, that he has "prejudged" and "already decided" Defendant's Rule 9 request. It is further evident that the trial court has taken an unfavorable position toward Appellant indicating actual bias.

The same is true of another matter, as detailed in Appellant's original Petition for Rehearing filed with this Appellate Court. The trial court made a ruling denying Husband's trial court motion for Sanctions Pursuant to Rule 34A.02 Spoliation of Evidence while refusing to allow evidence. This shows a clear pattern of bias and a predisposition to prejudge matters, a complete refusal to hear arguments and a complete refusal to allow presentation of evidence. **See bottom of page 15 of Appellant's Petition for Rehearing and Addendum 18 to that petition.**

## STATEMENTS OF THE FACTS – Failure to Recuse Pursuant to Rule 10B § 1.03

As stated in Appellant's original Petition for Rehearing, Appellant requested the trial court to reconsider its ruling on his Motion to Recuse or properly state the trial court's basis for denying recusal pursuant to Tenn. Sup Ct. R. 10B § 1.03. In his Amended Motion to Alter, Item 4, Husband specifically stated;

> 4. There is also a reasonable basis to conclude that there is an appearance of loss of impartiality by the court whether or not there is an actual bias or loss of impartiality. **See pages 3 to 8 above (of Motion to Alter). (Addendum 10 of Original Petition for Rehearing)**

In his Amended Motion to Alter, Item 14, Husband further requested relief and stated;

14. That the court reconsiders its ruling on Husband's Motion to Recuse or properly state its basis for denying recusal pursuant to Rule 10B. **(Addendum 10 of Original Petition for Rehearing)**.

As stated in his original Petition for Rehearing with this Appellate Court, the trial court did not adhere to the requirements of Tenn. Sup Ct. R. 10B § 1.03 in that the trial court did not state its basis for denying Husband's first motion to recuse despite Husband as Involuntary Pro Se and opposing counsel's recognition of this defect in the court order denying Husband's Motion to Recuse. **(See P. 4-5 Petition for Rehearing)**.

Husband further asserts, that because the trial court did not satisfy Rule 10B § 1.03, the trial court's order denying Husband's first motion to recuse is not a valid order. In the case, Williams v. Healthsouth No. W2015-00639-COA-T10B-CV, the Court of Appeals stated in in its opinion;

> Accordingly, "[a] judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor." Broadway Motor Co. v. Pub. Fire Ins. Co., 12 Tenn. App. 278, 280 (1930); see also Steppach v. Thomas, 346 S.W.3d 488, 522 (Tenn. Ct. App.2011) (quoting In re Adoption of E.N.R., 42 S.W.3d 26, 31 (Tenn.2001)). In light of this well-settled law **and the mandates contained in Rule 10B**, we conclude that the oral motion for recusal and the trial court's oral denial of the motion at the October 8, 2013 hearing were of no effect to trigger the timeline for purposes of an accelerated interlocutory appeal.

The Court of Appeals of Tennessee at Jackson, specifically referenced "**the mandates contained in Rule 10B**" which includes § 1.03 pursuant to which, **the trial court's order is in defect** and still appealable upon entry of the final judgement which occurred on August 12, 2016. Appellant's original Motion to Recuse is attached as **Addendum 1**. In Appellant's first

Motion to Recuse, Appellant plainly references and describes his situation as Involuntary Pro

Se which should have never been allowed to happen **(See Items 17 – 20 of Addendum 1)**.

It is well established that when there is a motion to recuse, whether or not there is actual

bias, even if there is an appearance of bias, a judge should recuse him or herself.

> In an eloquent opinion by Justice Neil, the Supreme Court emphasized not only that justice be administered, but that there be no appearance that it is not administered. 151 S.W. at 76. *See Leighton v. Henderson,* **220 Tenn. 91, 414 S.W.2d 419, 421 (1967) (quoting *Cameron* with approval).**

In the Williams v. Healthsouth case referenced above, the Appellate Court's

opinion referenced numerous cases setting precedence that a judge should recuse himself when

there is an appearance of bias whether or not there is actual bias. In its opinion, the Jackson

Appellate Court further stated;

> Williams v. Healthsouth Aristotle said: "The law is reason, free from passion." In the spirit of this famous quotation, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 states that "**[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]** The right to a fair trial before an impartial tribunal is a fundamental constitutional right[,] **Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)),** and it remains "**important to preserve the public's confidence in a neutral and impartial judiciary.**" Id. As we have emphasized in the past, "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."); **Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality."' Davis v. Liberty Mut. Ins. Co., 38 S.W.3d**

**560, 564-65 (Tenn. 2001) (quoting Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias**, since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" **Shelby County Gov't v. City of Memphis, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at \*4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted).** In examining requests for recusals due to bias, it is important to keep in mind the fundamental protections that the rules on recusal are intended to provide. **The law on judicial bias is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor."[2] Bean, 280 S.W.3d at 803 (citation omitted).**

In this case, as detailed in Appellant's Petition for Rehearing and as further evidenced below, there is more than sufficient reason to conclude an appearance of bias. Furthermore, **in every single case**, brought before the Appellate Court's regarding denials of motions to recuse, the Appellate Courts have referenced the fact that the trial courts had properly denied recusal by properly stating the basis for their decision for denial: **which is not true in this case**.

In the case Jacob H. C. No M2013-00699-COA-19B-CV, the Appellate Courts have referenced and stated *"the court entered an order as required by Tenn. Sup. Ct. R. 10B, § 1.03, denying the motion **and detailing the basis upon which the motion was denied**."* In Duke v. Duke, No M2012-01964-COA-10B-CV, *"The trial court entered an order on August 31, 2012, denying the August 13, 2012 motion and **setting forth with particularity the reasons** for the denial in accordance with Tennessee Supreme Court Rule 10B § 1.03."* In Patton No. M2012-01878-COA-10B-CV, *"On August 17, 2012, the trial court entered an order denying the motion **and setting forth the grounds for its decision** in accordance with Tennessee Supreme Court Rule 10B, § 1.03."* The same is true in many more 10B cases heard by the Appellate Courts.

Although both Husband as Involuntary Pro Se **and** opposing counsel respectfully reminded the trial court of this defect, the trial court simply continued to ignore the requirements of Rule 10B §1.03. On August 8, 2016, Appellant's Motion to Alter the trial court's final ruling was heard. During this hearing, Appellant identified for the trial court several new and additional instances indicating bias of the trial court. Husband communicated to the trial court that the trial court; ignored Wife's perjury during the final hearing, ignored Wife's destruction of evidence, and quashed Appellant's subpoena for hidden accounts not disclosed by Wife during discovery. Appellant, yet again, respectfully reminded the court of the defect in the trial court not stating a basis for its denial of Appellant's Motion to recuse (**Addendum 2 Tr P 9-12**). **Addendum 2**, is the transcript of that hearing. Surprisingly, the trial court still did not state its basis for denying recusal on either of Husband's first or second motions to recuse and simply denied Husband's Motion to Alter, which included a motion to recuse, without stating any basis whatsoever.

## CONCLUSION

For the reasons stated, Husband respectfully requests the Appellate Court to remand this matter for retrial before a different judge.

Respectfully submitted,

John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court, Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Pamela A. Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Attorney for Mrs. Gentry

On this the 8th day of September, 2016

John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court, Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JOHN ANTHONY GENTRY,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **v.** | ) | **No. M2016-01731-COA-T10B-CV** |
| | ) | |
| **KATHERINE WISE GENTRY,** | ) | On Petition for Recusal Appeal from |
| | ) | the Circuit Court, Sumner County, |
| **Appellee.** | ) | Tennessee No. 2014CV393 |
| | ) | |

## RESPONSE TO APPELLANT'S PETITION FOR REHEARING BEFORE A DIFFERENT JUDGE

Appellee, Katherine Wise Gentry ("Wife"), by and through undersigned counsel and pursuant to Tennessee Supreme Court Rule 10B, files this Response to the Appellant's, John Anthony Gentry ("Husband"), Petition for Recusal Appeal ("Petition").[1]

## I.    INTRODUCTION

Mr. Gentry's allegations cannot be examined in a vacuum—although Wife will certainly address each allegation in turn to the extent possible—but needs to be given context. Thus, Wife will attempt to set forth the pleadings, other documents, and facts necessary to provide this Court with the ability to properly discern each allegation in Husband's Petition. However, before addressing such allegations, Wife would state that this case involves a divorce with no minor children and in which the parties were married for approximately four and one-half (4 1/2) years at the time the Complaint for Divorce was filed. Despite the relatively short marriage, the trial record, according to the Sumner County Circuit Court's Rule Docket, includes ten volumes. **See Exhibit A.** Husband has been *pro se* for the majority of the proceedings.

EXHIBIT N

---

[1] On August 22, 2016, Husband filed a Petition for Rehearing Before a Different Judge, citing Tennessee Rule of Appellate Procedure. On September 1, 2016, this Honorable Court entered an Order finding that Husband's Rule 39 Petition should be treated as a Rule 10B Petition for Recusal Appeal.

## II.    ANALYSIS

Husband's Petition contains a plethora of allegations as to why the trial court failed in not recusing itself. Rather than addressing each issue in turn, for ease of reference for the Court, Wife will address Mr. Gentry's allegations in contextual groupings, to-wit: (1) Mr. Gentry's Petition should be dismissed as it was not timely filed; (2) as to any potential bias of the trial court and even taking Husband's allegations as true, Husband's Petition, on its face, does not contain a basis for recusal; (3) notwithstanding the foregoing, the trial court properly addressed the substantive issues raised by Husband and no evidence of improper bias is present therein; and (4) the trial court failed by not making findings of fact pursuant to Rule 10B.

### A.    Husband's Petition for Recusal Appeal was not timely filed.

Wife has previously filed a Motion to Dismiss Husband's Petition for Recusal Appeal on the basis that Husband's Petition was not filed within fifteen days of the trial court's entry of the order denying Husband's Motion to Recuse. The Court currently has this Motion under advisement. Wife reiterates her argument contained in her Motion to Dismiss and incorporates the same herein by reference.

### B.    Husband raises issues in his Petition for Recusal that arose after the trial court denied Husband's Motion to Recuse on September 9, 2015.

In Husband's Petition, he raises issues as a alleged basis for his appeal of the trial court's Order denying his Motion to Recuse (entered on September 9, 2015), all of which occurred after the hearing on Husband's Motion to Recuse. In other words, the procedural posture before this Court is that of an expedited Rule 10B interlocutory appeal from the September 9, 2015, Order stemming from Husband's July 20, 2015 Motion to Recuse. **See Exhibit B and C.** As such, the only issue before this Court is whether the trial court erred in denying Husband's July 20, 2015,

Motion. Facts arising after that Motion, as to recusal, can only be raised as an issue in Husband's principal appellate brief and are not relevant to this Court's determination.

As an aside, Husband argues that he also filed a Motion to Recuse on July 14, 2016. Husband's contention is incorrect. After the final hearing, the trial court entered a Final Judgment on July 14, 2016. (Husband's Addendum 9.) Husband filed a Rule 59 Motion to Alter or Amend the trial court's final judgment. (Husband's Addendum 10.) In this Motion, Husband requested, along with a multitude of other relief, that the trial court revisit the recusal issue. The issue of recusal was not addressed in the trial court's July 14, 2015 Final Judgment. As such, it is procedural improper for Husband to request new and additional relief through a Rule 59 Motion. Husband's relief, as per Rule 10B, is limited to an expedited Petition for Recusal Appeal through this Court (if filed within fifteen days) or raising the recusal as an issue in his principal appeal.

**C.    Husband fails to set forth a basis for recusal in his Petition.**

The nexus of Husband's Petition is that the trial court was biased against Husband. In support of this allegation, Husband fails to point to any extrajudicial source from which the trial court's alleged bias stems. Rather, Husband ostensibly argues that because the trial court ruled against him on certain issues, it is prejudiced against him. See, e.g., (Husband's Petition at p. 9-11) (Husband argues that the trial court was biased as it did not grant his Motion for *Pendente Lite* Support). The Court of Appeals, in <u>Durham v. Tenn. DOL & Workforce Dev.</u>, set forth a detailed analysis of the standard courts are to apply in determining whether recusal is appropriate:

> It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Under Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17—2—101 (2009),

and Tennessee Supreme Court Rule 10 (the Code of Judicial Conduct), a judge may not preside over a matter in which the judge has an interest in the outcome. *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (citations omitted). The purpose of this prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [ ] reached a prejudged conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (citation omitted). Additionally, the courts have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. App. 1998) (citations omitted). Therefore, even in cases wherein a judge sincerely believes that he can preside fairly and impartially, he should recuse himself if a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564—65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test, and it is designed to avoid both actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Id.* at 565 (citation omitted).

Adverse rulings, however, do not provide grounds for recusal. *Id.* Additionally, although "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party[,] . . . [n]ot every bias, partiality or prejudice merits recusal." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). *Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). "Personal bias involves an antagonism toward the moving party, but does not refer to any views that a judge may have regarding the subject matter at issue." Id.* (citing *United States v. Baker*, 441 F.Supp. 612, 616 (M.D. Tenn. 1977); 46 Am.Jur.2d "Judges" § 167 (1969)). Moreover, "[i]mpersonal prejudice resulting from the judge's background experience does not warrant disqualification." *Id.* (citation omitted). Where "the bias is based upon [the judge's] actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." *Id.* (citation omitted). "However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Id.*

(citing *Baker*, 441 F.Supp. at 617). Disqualification of a judge "is required 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Hooker v. Haslam*, 393 S.W.3d 156, 161 (Tenn. 2012) (quoting *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001))).

No. M2014-00428-COA-R3-CV, 2015 Tenn. App. LEXIS 97 (Tenn. Ct. App. Jan. 27, 2015) (emphasis added).

Applying these principles to the facts asserted by Husband, there is absolutely no allegation that this Court has any bias that "stems from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. (quoting State ex rel. Wesolich v. Goeke, 794 S.W.2d 692, 697 (Mo. App. 1990)). Rather, any bias (which there is none) toward Husband would be ". . . based upon [the Court's] actual observance of witnesses and evidence given during the trial." Id. Simply, the Court has absolutely no bias towards Husband and, even if the Court had gained bias (which it did not), that bias would have to, by Husband's very logic, stem from the proceedings.

**D.     Notwithstanding the foregoing, Husband's substantive arguments fail to set forth a basis for recusal or any error on the part of the trial court.**

Again, while Wife does not believe it is appropriate to address issues raised by Husband that occurred after the Motion to Recuse was denied by the trial court on September 9, 2015, Wife will attempt to address each of Husband's complaints and the substantive merits of the same in the order presented by Husband's Petition.

**1.     Alleged *ex parte* communication between Wife and trial court.**

Husband's Petition alleges that Wife tendered a proposed finding of fact to the trial court denying Husband's Motion to Recuse. (Husband's Petition at p. 4.) Husband goes on to allege that Wife provided this document through *ex parte* communication with the trial court: "What is

quite disturbing though, is how this document was tendered without notice or copy to Husband which suggests an *ex parte* communication." (Id. at p. 5.) Husband then alleges that the proposed findings were provided to the trial court "surreptitiously." (Id.) Husband's allegation represents, at best, his failure to read the transcript and recall the facts or, at worst, an intentional misrepresentation to the Court, as evidenced by the transcript of the subject proceedings and Mr. Gentry's own correspondence.

The hearing in question in which the proposed findings of fact were tendered occurred on September 15, 2016 in which the following exchange occurred:

> MR. LANKFORD: Mr. Gentry brought up the issue of Rule 10 about findings of fact. We've drafted a response back. The Court has already entered to order. But just to lighten the Court's mood[2] --
>
> MR. GENTRY: I didn't hear. What is this?
>
> MR. LANKFORD: We have proposed findings of fact and concussion of law on the motion to recuse that we've presented to the Court. And we can provide that to the Court in a word document.
>
> THE COURT: Can you send that to scheduling?
>
> MR. GENTRY: I haven't gotten a copy of this, have I?
>
> MR. LANKFORD: No, you have not.
>
> THE COURT: Make sure Mr. Gentry has a copy and then submit it through scheduling, word version through scheduling by e-mail.
>
> MR. LANKFORD: *For the record, I just passed a copy of the findings of fact to Mr. Gentry.*
>
> THE COURT: Okay. If you'll just note that. I'm going to let you take the file with the court officer in there so you can file this, file your proposed findings of fact with the court clerk and then submit a copy via e-mail. He's going to submit via e-mail what he just handed you. Okay?

---

[2]This should state "lighten the Court's load."

| | |
|---|---|
| MR. GENTRY: | Yes, Your Honor. Tell me what to do. |
| MR. LANKFORD: | I submitted a clerk's certificate of service on |
| that findings of fact. | |
| THE COURT: | That will be fine. Thank you. All right. |

(Husband's Addendum 6 at p. 12-13) (emphasis added).

Clearly, based on the transcript from the September 15, 2015, hearing (that was attached to Husband's Petition), Husband's allegation of *ex parte* communication in submitting the subject proposed findings of fact is baseless. To further undermine Husband's allegations that he did not receive a copy of the proposed findings of fact or that Wife "surreptitiously" provided the trial court a copy, after the September 15, 2015, hearing, Husband emailed Wife's counsel stating that he was not provided a copy of the proposed findings (despite being provided a copy at the hearing). Wife's counsel responded by emailing him a copy and stating that the findings "were hand-delivered to you yesterday in court and have been filed with the clerk." **See Exhibit D.** Husband responds:

> Thank you for getting this to me.
>
> ***You are correct, the document fell off the seat in my car on the passenger side. I apologize for the misunderstanding.*** I was quite distraught yesterday as the judge has become so biased he won't even allow me to speak.
>
> In reading this, I see this your correction to the previous order you prepared that the judge signed that was not in proper form in accordance with rule10b.
>
> -JG

(Id.) (emphasis added). Simply – Husband was provided a copy of the proposed findings in the September 15, 2015 hearing at the same time a copy was furnished to the trial court. Husband's allegation is unfounded.

2. **Mr. Gentry's allegation that the trial court improperly delayed in ruling on his Motion for *Pendente Lite* Support.**

Before addressing the substance of this issue, Wife notes that Husband was represented by counsel for the majority time in question, i.e., he was represented by counsel at the March 10, 2015, hearing on his Motion for *Pendente Lite* Support and the objections to the Motion was filed by counsel. That being said, Mr. Gentry argues that the trial court ". . . did not finally rule on Pendente Lite Support until 125 days after the hearing date on July 13, 2015, which is two-hundred and fifty-eight (258) days after Husband's Petition was filed on October 28, 2014." (Husband's Petition at p. 7.) Based on this argument, Husband appears to allege that the trial court intentionally delayed ruling on the motion and/or petition due to its bias against Husband. Again, the actual background of the matter evidences the fallacy in Husband's argument. The procedural history relevant to this argument is as follows.

On April 9, 2014, Wife filed a Complaint for Divorce against Husband. **See Exhibit E.** During the beginning of this case, Mr. Gentry was represented by Robert J. Turner ("Mr. Turner"). On October 22, 2014, Husband, through Mr. Turner, filed a Petition for Contempt. **See Exhibit F.** On October 28, 2014, Husband, through Mr. Turner, filed an Amended Petition for Contempt. **See Exhibit G.** On January 15, 2015, Husband, by and through Mr. Turner, filed a Second Amended Petition for Civil Contempt or, in the alternative, Motion for Pendente Lite Support. **See Exhibit H.** This is the Petition that Husband's argument is based on. That same day, Husband, by and through Mr. Turner, filed a Notice of Hearing setting his Second Amended Petition for January 22, 2015. **See Exhibit I.**

On January 22, 2015, Husband and Wife entered into a temporary agreement. That settlement agreement was announced in open court and ratified by the Court. Husband was present in the courtroom when that agreement was announced. The agreement, in sum, provided

for a payment to Ms. Gentry and time for him to work on his new business venture. The Second Amended Petition for Contempt was continued until March 10, 2015 at 1:00 p.m. The Order continuing the hearing until March 10, 2015 was submitted by Husband's counsel and approved by the trial court on January 28, 2015. **See Exhibit J.**

On February 10, 2015, an Agreed Order of Substitution of Counsel was entered by the Court substituting Ms. Sarah Perky ("Ms. Perky"), for Mr. Turner as Mr. Gentry's counsel. **See Exhibit K.** On March 10, 2015, the Court heard, among other things, Mr. Gentry's Second Amended Petition for Civil Contempt or, in the alternative, Motion for *Pendente Lite* Support. Husband was represented by Ms. Perky at the hearing. (Husband's Addendum 2.) This hearing began at approximately 2:48 p.m. (Id.) Husband's case in chief lasted the better part of the afternoon and into the evening, i.e., from 2:48 p.m. to 7:30 p.m. (Id.) Husband's testimony consumed the better part of this time period. (Id.) On March 19, 2015, nine days after the hearing, the trial court entered an Order denying Defendant's Second Amended Petition for Civil Contempt and, as to Husband's Motion for *Pendente Lite* Support, ordering that the "[p]arties have until March 23, 2015 to file responses to income and expense statements, then Court will rule on Motion." **See Exhibit L.**

On May 12, 2015,[3] the trial court approved an Agreed Order extending the deadline to file objections to March 27, 2015. **See Exhibit M.** On March 27, 2015, pursuant to the Agreed Order, each party submitted his or her response to the other party's income and expense statement. On July 13, 2015, the trial court entered an Order, *inter alia*, denying Husband's Motion for *Pendente Lite* Support. **See Exhibit N.**

Clearly, the trial court timely ruled on both Husband's Motion for *Pendente Lite* Support and Second Amended Petition for Contempt. Any delay was pursuant to an agreement by

---

[3] This Agreed Order was submitted on April 24, 2015.

Husband's various counsel. The trial court cannot be faulted for Husband's counsel continuing hearings, either by agreement or otherwise.

Husband further seems to suggest that the trial court is biased and should have recused itself because it did not grant him *pendente lite* support. Briefly, this argument has no merit. As set forth above, Husband was represented by counsel at all times relevant to the *pendente lite* motion and the trial court conducted a lengthy hearing on the *pendente lite* issues. Husband's counsel prepared a brief on the issue. The trial court simply disagreed. This is no basis for recusal.

### 3. Order denying Husband's trial motions.

Husband next argues that the trial court should recuse itself because Wife submitted an Order for the trial court's review that was not consistent with the trial court's ruling, providing as follows: (1) Husband's Motion for Court to State Findings of Fact and Conclusions of Law is moot and denied; (2) Husband's Motion for Equitable Distribution of Marital Assets is moot and denied; (3) Husband's Motion to Suppress Deposition Testimony of Regions Bank was withdrawn by Husband; (4) Husband's Motion to Strike and Impose Rule 37.02 Sanctions is denied; and (5) Husband's Motion to Return Escrowed Attorney Fees is denied. Attached as **Exhibit O** is the Order submitted and entered by the trial court addressing these issues. Curiously, while making this argument, Husband omits reference to the first portion of the transcript in which the trial court ruled on these motions. (Husband's Addendum 18.) The trial court's ruling was correctly memorialized in the Order submitted by Wife as set forth below.

As to Husband's Motion for the Court to State Findings of Fact and Conclusions of Law and Husband's Motion for Equitable Division of the Marital Estate, the trial court ruled as follows:

THE COURT: All right. That's number one. We have several motions that have been filed, some of which have been filed prior to today. Let's deal with two of those motions. One was a motion filed earlier this year. Mr. Gentry, you filed a motion for the Court to state findings of fact and conclusions of law. I am required to do that after this hearing. So once this hearing is concluded, whatever decision is made, there will be the decision that includes findings of fact and conclusions of law. So you don't have to file a motion for that. That's imposed by the Rules of Civil Procedure. ***That motion is moot. Same thing for your motion for equitable distribution of marital assets.*** That's one of the things that the Court is required to do is to equitably divide the marital assets. So there's no real reason for me to address that, because I'm suppose to do that anyway.

MR. GENTRY: Just one thing about that, Your Honor. In their listing of marital assets, they didn't include the patent. So I would like for the Court to address the matter of marital property.

THE COURT: I don't do this piecemeal. That's what the trial is for. Okay? So I have to divide all the marital assets on an equitable basis. There are some hoops that have to be jumped through before assets are deemed marital or separate. But once we get to that point in the trial, the Court is required to equitably divide marital assets. ***So that motion is moot.***

(Husband's Addendum 18 at p. 6-7) (emphasis added).

The trial court then went on to Mr. Gentry's two Motions to Suppress Evidence:

THE COURT: . . . Now, you filed two motions to suppress evidence. Those really aren't' proper motions in the civil hearing, but I'm going to take those as motions in limine. And I reviewed those yesterday. One of those, I think you filed a rather lengthy motion on April 14th. Your basis was the supplementation of the discovery on April 11, 2016.

***

THE COURT: [After a colloquy with Mr. Gentry regarding the motions to suppress] ***That motion is denied then.*** All right?

(Husband's Addendum 18 at p. 7-12) (emphasis added). The trial court then addressed

Husband's Motion to Suppress Deposition Testimony from Regions Bank:

> THE COURT: . . . You also have a motion to suppress deposition testimony from Regions Bank. As I understand it, you received a notice of deposition on April the 11[th] of this year.
>
> MR. GENTRY: I withdraw that motion, Your Honor.

(Husband's Addendum 18 at p. 12) (emphasis added). Next, the trial court addressed Mr.

Gentry's Motion to Strike and Impose Rule 37.02 Sanctions:

> THE COURT: Okay. All right. I've read your motion to strike and impose Rule 37.02 sanctions pursuant to Rule 34A.02. I'll let you briefly. And by briefly since I've read this, I mean in two minutes give me the high points of your motion.
>
> MR. GENTRY [Mr. Gentry argues his motion.]
>
> THE COURT: No. This is just opening statements and you're not the plaintiff. Ms. Gentry is the plaintiff. So her case in chief comes first. Okay. You're asking for a default judgment. *That motion is denied.*

(Husband's Addendum 18 at p. 12-14) (emphasis added). Finally, the trial court addressed the

last of the motions addressed in the subject order, i.e., Husband's Motion to Return Escrowed

Attorney's Fees:

> THE COURT: . . . All right. Your motion to return escrowed attorney's fees, I'm going to take that as a request for spousal support. It's not really a proper motion, but I'll sort of let you liberally plead that and I'll take that as – well, there's a little problem with that. I'm going to come back to that.
>
> MR. GENTRY: I'm two months behind on my mortgage, because I haven't paid those, Your Honor.
>
> THE COURT: All right. I've already ruled on the attorney's fees. *So that motion is denied. All right.*

(Husband's Addendum 18 at p. 14-15) (emphasis added).

As background to the trial court's comment, "I've already ruled on the attorney's fees,"

Husband filed a Motion on December 9, 2015 addressing this issue. That Motion was heard on

December 15, 2015. The subject fees were previously awarded to wife as a form of sanctions.

Based on the foregoing, the subject Order submitted by Wife and entered by the trial court accurately reflects the trial court's ruling on Husband's pre-trial motions.

After the foregoing proceedings were conducted, i.e., Mr. Gentry's pre-trial motions were ruled on, the trial court conducted a final hearing. At the conclusion, and after each party was allowed closing argument in which they each argued over the issue of attorney's fees as alimony *in solido*, as pointed out by Husband's Petition, the following exchange occurred:

> THE COURT: Yeah. I think so. There's no reason to submit anything other than findings of fact and conclusion of law. That adds argument in it. You're going to make argument in that document. Go ahead and submit that within 30 days. Okay? Do you have any questions for me before we conclude today's proceedings?
>
> MR. GENTRY: Just ask about attorney fees, Your Honor.
>
> THE COURT: I'm not going to make a decision on that today. I want to go back and I want to review the file. I can make that decision before you submit your findings of fact and conclusions of law, but I want to go back and look at the different motion hearings that we've had before I make a decision on that.
>
> MR. LANKFORD: Your Honor, I'm sorry. I know I'm delaying things. Would the Court be interested in ruling on inappropriate marital conduct and the parties get divorced today?
>
> THE COURT: You know, I thought about that. I was thinking that beforehand.
>
> MR. GENTRY: I didn't hear the question.
>
> THE COURT: He is asking if I want to make ruling on grounds for divorce. I believe I'm going to declare the parties divorced today reserving all other issues for resolution by the Court, we'll go ahead and sign that. But I think I'm going to simply declare the parties divorced today pursuant to 36-401-29.

(Husband's Addendum 11 at p. 168.)

Husband somehow interprets the statement, ". . . I'm going to declare the parties divorced today and reserve[] all other issues . . ." to mean that the trial court was reserving ruling on his

pre-trial motions. That is in incorrect interpretation. The trial court, as it had ruled on the pre-trial motions, was declaring the parties divorced and reserved all issues in the divorce pending briefs, including attorney's fees as alimony *in solido*. Husband misconstrues the trial court's statement. Husband goes on to further misunderstand the trial court by believing that the trial court's statement, "I'm not going to make a decision on that today" when asked about attorney's fees by Husband meant that the trial court was not going to rule on the escrowed attorney's fees. As set above, the trial court already ruled on the escrowed attorney's fees at the beginning of the hearing. The trial court, in the above statement, was referring to attorney's fees as alimony *in solido*, which was argued directly before these statements by Husband and Wife. The trial court eventually did rule on attorney's fees, as alimony *in solido*, and, in fact, ruled in Husband's favor. Simply, Husband is incorrect in his assertions.

4. **Statements at September 15, 2015 hearing by trial court.**

Husband next argues that the trial court refused to hear him at the September 15, 2015, hearing. (Husband's Petition at p.14-15.) In support of this contention, Husband combines numerous out-of-context statements made by him to the trial court. Rather than recounting the entire hearing for the Court, Wife would refer the Court to the transcript attached as Addendum 6 to Husband's Petition for its consideration. Notwithstanding, Wife would give context to the September 15, 2015, hearing and the transcript by setting forth the relevant procedural history leading up to that hearing.

As set forth in detail above, on January 15, 2015, Husband, through counsel, filed a Second Amended Petition for Civil Contempt. **See Exhibit H.** This Petition was heard on March 10, 2015. At that hearing, Husband was represented by counsel. The trial court denied Husband's Petition and entered an Order reflecting the same on March 19, 2015. **See Exhibit L.**

On July 20, 2015, Husband filed, in relevant part, a Motion for the Court to Declare a Mistrial of Petition for Contempt Hearing or, in the alternative, to Reconvene Hearing for Petition for Contempt. **See Exhibit P**. On August 4, 2015, Wife filed a Response to Husband's Motion. **See Exhibit Q**. Mr. Gentry's July 20, 2015, Motion, *inter alia*, was heard by the trial court on August 7, 2015. The trial court denied Mr. Gentry's Motion.

Despite the foregoing, on August 27, 2015, Husband filed another Motion to Reconvene and Complete Hearing for Petition for Contempt. **See Exhibit R**. This request literally requested the same relief and was based on the same facts that were contained in Mr. Gentry's July 20, 2015 Motion. On September 14, 2015, Wife filed a Response to Husband's second Motion to Reconvene. Mr. Gentry's second Motion to Reconvene was heard by the trial court on September 15, 2015.

For further context, on October 27, 2015, Husband filed a Motion in which he requested, among other things, that the trial court reconvene the hearing on his Second Amended Petition for Contempt. **See Exhibit S**. In sum, he has made the same request of the trial court on three separate occasions.

Based on the foregoing, the trial court properly handled the September 15, 2015 hearing and there is nothing that would suggest that the trial court should recuse itself.

5. **Wife's Motion to Quash Any and All Party Subpoenas and Provide a Date Certain for Discovery Update Prior to Trial.**

Again, Wife would reiterate that the trial court simply ruling against Husband is not a basis for recusal. Nevertheless, as to Husband's substantive argument that the trial court somehow was biased against Husband by granting Wife's Motion to Quash Any and All Party Subpoenas and Provide a Date Certain for Discovery Update Prior to Trial, the facts are as follows.

On November 6, 2014, Husband sent Wife his first set of Request for Production of Documents and Interrogatories. Wife, during the proceedings, responded to Husband's discovery. On April 23, 2015, Husband issued a subpoena *duces tecum* in which he requested that Wife provide an exhaustive list of documents. **See Collective Exhibit T.** Wife responded and produced these documents. On June 8, 2015, Husband issued a subpoena *duces tecum* in which he requested that Wife provide an exhaustive list of documents. Id. Wife responded and produced these documents. On October 2, 2015, Husband issued a subpoena *duces tecum* in which he requested that Wife provide an exhaustive list of documents. Id. Wife responded and produced these documents. Also, On October 2, 2015, Husband issued two other subpoenas *duces tecum* requesting information for Wife's obesity reduction procedures, breast augmentation procedure, and other information. Several of these procedures occurred well prior to the marriage. On January 11, 2016, Husband issued a subpoena *duces tecum* in which he requested that Wife provide an exhaustive list of documents.

Based on the foregoing, on February 1, 2015, Wife filed a Motion to Quash Any and All Party Subpoenas and Provide Date Certain for Discovery Update Prior to Trial. **See Exhibit U.** At this point, Husband's repeated subpoenas were crossing the line into harassment and only served to embarrass Wife. Moreover, the subpoenas were overly burdensome. The Court granted Wife's Motion. **See Exhibit V.** Husband was not precluded from issuing third party subpoenas, i.e., to any banking institution, nor was he deprived of Wife's responses to discovery.

Again, there is no basis for recusal nor did the trial court err in granting Wife's Motion.

### 6. Rule 34A.02 Spoliation issue.

Finally, Husband argues that the trial court erred by not granting him a default judgment because of Wife's alleged spoliation. Specifically, he argues that Wife is guilty of spoliation because she destroyed Husband's stock certificates and allegedly deleted certain emails. Wife

does not contest that she destroyed the stock certificates and has testified to such. However, she denies that she deleted the subject emails. Nevertheless, even if spoliation of evidence existed, Husband's request for a default judgment is too severe a remedy and the trial court exercised its discretion in denying Husband's request. Again, there is no basis for recusal for Husband simply losing a motion.

### E. Trial court's failure to issue grounds upon which it denied Husband's Motion to Recuse.

Wife agrees that the trial court did not comply with Tennessee Supreme Court Rule 10B, section 1.03 in that it did not "state in writing the grounds upon which he or she denies the motion" in denying Husband's July 20, 2015 Motion to Recuse. **See Exhibit C.**

If the Court does not dismiss Husband's Petition and after considering the foregoing, Wife would suggest two potential avenues due to the trial court's failure to comply strictly with Rule 10B.

First, Wife would ask the Court to consider the facts currently before the Court without remanding to the trial court to make written findings. In support of this position, Wife would note that the Court review's the trial court's denial of the motion for recusal *de novo*. Tenn. S. Ct. R. 10B, § 2.06. As such, neither party is prejudiced by the trial court's failure to make findings. Moreover, given the facts as set forth above, there is no basis for the trial court to recuse itself.

Second, if the Court deems it necessary, Wife would ask that the matter be remanded to the trial court to make written findings as to its denial of Husband's July 20, 2015 Motion.

### III. <u>CONCLUSION</u>

Based on the foregoing, Wife asks that Husband's Petition be dismissed or denied and that she be awarded her attorney's fees and costs incurred in litigating this matter.

Respectfully submitted,

*(signature)*

Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2490
Telephone: (615) 782-2212

*Attorneys for Katherine Gentry*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the following method(s) upon the individual(s) listed below on this 30t day of September, 2016:

John A. Gentry
208 Navajo Court
Goodlettsville, TN 37072
johng@estartsolutions.com

(✓) Electronic Mail
(✓) U.S. Mail
( ) Facsimile
( ) Hand-delivery

*(signature)*

Pamela A. Taylor

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,      )
                            )
       **Plaintiff,**            )
                            )
**v.**                              )      **Case No. 2014CV393**
                            )
**JOHN ANTHONY GENTRY,**     )
                            )
       **Defendant.**         )
                            )

## PLAINTIFF'S COUNTER-DESIGNATION OF THE RECORD ON APPEAL

Pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, Plaintiff, Katherine Wise Gentry ("Wife"), by and through counsel, hereby designate the following items to be included in the record transmitted to the Court of Appeals in this matter:

1.      The **entire** record filed in the trial court, including: (1) copies, certified by the clerk of the trial court, of all papers filed in the trial court; (2) the original of any exhibit filed in the trial court; (3) the transcript or statement of the evidence of proceedings; (4) any requests for instructions submitted to the trial court for consideration, whether expressly acted upon or not; (5) all subpoenas or summonses for any witness or for any defendant; and (6) trial briefs.

2.      Pursuant to Tennessee Rule of Appellate Procedure 24(b), Wife designates the following transcript of proceedings or statements of evidence to be necessary for the record on appeal:

a)      March 10, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. Husband shall file the entire March 10, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

# EXHIBIT O

b)    As no court reporter was present at the April 16, 2015 hearing, if necessary, pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure, Wife will file any objections and her own Statement of the Evidence within fifteen days of service of Husband's Statement of the Evidence.

c)    As no court reporter was present at the June 8, 2015 hearing, if necessary, pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure, Wife will file any objections and her own Statement of the Evidence within fifteen days of service of Husband's Statement of the Evidence.

d)    July 1, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The court reporter's information for the July 1, 2015 hearing is as follows:[1]

> Carolyn J. Bertram LCR, RPR, CCR
> BERTRAM REPORTING SERVICES
> 146 Karen Drive
> Mt. Juliet, TN 37122
> Phone: (615) 758-6496
> E-mail: carolynjbertram@comcast.net

The Husband shall file the entire July 1, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

e)    August 7, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the

---

[1] Wife is providing the Court reporter's information only for hearings in which Husband did not split the *per diem*.

entire August 7, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

f)     September 15, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The court reporter's information for the September 15, 2015 hearing is as follows:

> Huseby, Inc. support@huseby.com
> (800) 641-9390

The Husband shall file the entire September 15, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

g)     October 27, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire October 27, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

h)     November 3, 2015 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire November 3, 2015 transcript of proceedings with the trial court within 60 days of his notice of appeal.

i)     As no court reporter was present at the December 15, 2015 hearing, if necessary, pursuant to Rule 24(c) of the Tennessee Rules of Appellate Procedure, Wife will file any objections and her own Statement of the Evidence within fifteen days of service of Husband's Statement of the Evidence.

j)    February 9, 2016 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire February 9, 2016 transcript of proceedings with the trial court within 60 days of his notice of appeal.

k)    May 2 and 3, 2016 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire May 2 and 3, 2016 transcript of proceedings with the trial court within 60 days of his notice of appeal.

l)    July 20, 2016 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire July 20, 2016 transcript of proceedings with the trial court within 60 days of his notice of appeal.

m)    August 8, 2016 entire transcript of proceedings. Pursuant to Rule 24(b), the obligation is on the Appellant, Husband, to have the transcript prepared at his own expense or apply to the trial court for an order requiring the appellee to do so. The Husband shall file the entire August 8, 2016 transcript of proceedings with the trial court within 60 days of his notice of appeal.

Respectfully submitted,

*[signature]*

Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2490
Telephone: (615) 782-2212

*Attorneys for Katherine Gentry*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the following method(s) upon the individual(s) listed below on this *13th* day of *September*, 2016:

John A. Gentry                          ( X ) Electronic Mail
208 Navajo Court                        ( X ) U.S. Mail
Goodlettsville, TN 37072                ( )   Facsimile
johng@estartsolutions.com               ( )   Hand-delivery

*[signature]* P Taylor by perm BHL
#030223
Pamela A. Taylor



Court of Appeals – Middle Division
Appellate Court Clerk's Office - Nashville
100 Supreme Court Building
401 7th Avenue North
Nashville, TN 37219-1407
(615) 741-2681

John Anthony Gentry
208 Navajo Court
Goodlettsville TN 37072

Re: M2016-01765-COA-R3-CV - JOHN ANTHONY GENTRY v. KATHERINE WISE
GENTRY

Notice: Order Related to Extension - Granted

Attached to this cover letter, please find the referenced notice issued in the above case. If you
have any questions, please feel free to call our office at the number provided.

cc:    John Anthony Gentry
       Pamela Anderson Taylor

EXHIBIT P

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### Sumner County Circuit Court
### 83CC1-2014-CV-393

### No. M2016-01765-COA-R3-CV

Date Printed:  02/15/2017                    Notice / Filed Date: 02/15/2017

---

## NOTICE - Order Related to Extension - Granted

---

The Appellate Court Clerk's Office has entered the above action.

James M. Hivner
Clerk of the Appellate Courts

FILED
02/15/2017
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Circuit Court for Sumner County**
**No. 83CC1-2014-CV-393**

---

### No. M2016-01765-COA-R3-CV

---

### ORDER

Pursuant to Tenn. R. App. P. 6, the appellant filed a cash bond in the amount of $1000. A $1000 cash bond is considered sufficient in the absence of specific direction from the court as to some other amount. Tenn. R. App. P. 6, *Advisory Commission Comments*. The clerk has notified the court that, due to the numerous filing in the appeal, the costs on appeal already exceed $1000. Accordingly, the $1000 cash bond is no longer sufficient to secure the payment of the costs as required by Tenn. R. App. P. 6, and the appellant will need to file an additional cash bond.

In addition, the appellee has filed a motion requesting a twenty-one day extension of time within which to file her brief. The appellant opposes the motion. The court finds good cause to grant the extension of time.

It is, therefore, ordered that the time for filing the appellee's brief is extended through March 31, 2017.

It is further ordered that the appellant shall file an additional $1000 cash bond with the clerk of this court within fourteen (14) days following the entry of this order.

PER CURIAM



**State of Tennessee**
**Appellate Courts**
**Unallocated Cost Bill Items**

### M2016-01765-COA-R3-CV
### JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**EVENTS**

| Date | | Amount | Qty. | Total | Comments |
|---|---|---|---|---|---|
| 02/15/2017 | **Order Related to Extension - Granted** | | | **$21.00** | **Unallocated** |
| | Non-Certified Copy Charge | $1.00 | 2 | $2.00 | |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| | Order Filed | $6.00 | 1 | $6.00 | |
| 02/14/2017 | **Response - to Motion** | | | **$28.00** | **Unallocated** |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 | |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 02/13/2017 | **Appellate Record - Checked Out** | | | **$16.00** | **Unallocated** |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| | Record Check In or Out | $3.00 | 1 | $3.00 | |
| 02/13/2017 | **Motion for Extension to File - Brief** | | | **$28.00** | **Unallocated** |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 | |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 02/13/2017 | **Clerk's Note - Exhibit Sign Out Sheet Received** | | | **$1.00** | **Unallocated** |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 02/08/2017 | **Brief - Appellant's Brief Filed** | | | **$33.00** | **Unallocated** |
| | Brief or Supplemental Authority Filed | $4.00 | 5 | $20.00 | |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 01/30/2017 | **Order - Supplement to Record** | | | **$28.00** | **Unallocated** |
| | Non-Certified Copy Charge | $1.00 | 3 | $3.00 | |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| | Order Filed | $6.00 | 1 | $6.00 | |
| 01/30/2017 | **Appellate Record - Supplemental Filed** | | | **$25.00** | **Unallocated** |

EXHIBIT Q



State of Tennessee
Appellate Courts
Unallocated Cost Bill Items

| | | | | |
|---|---|---|---|---|
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Technical Record Volume(s) Filed | $6.00 | 1 | $6.00 |
| 01/27/2017 | **Appellate Record - Supplemental Received** | | | **$1.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 01/25/2017 | **Appellate Record - Checked In from View** | | | **$4.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Record Check In or Out | $3.00 | 1 | $3.00 |
| 01/25/2017 | **Appellate Record - Checked Out to View** | | | **$4.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Record Check In or Out | $3.00 | 1 | $3.00 |
| 01/25/2017 | **Motion - Supplement Record** | | | **$28.00** | Unallocated |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 01/24/2017 | **Appellate Record - Checked In from View** | | | **$4.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Record Check In or Out | $3.00 | 1 | $3.00 |
| 01/24/2017 | **Appellate Record - Checked Out to View** | | | **$4.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Record Check In or Out | $3.00 | 1 | $3.00 |
| 01/13/2017 | **Appellate Record - Original Filed** | | | **$539.00** | Unallocated |
| | Exhibit(s) Filed | $4.00 | 65 | $260.00 |
| | Technical Record Volume(s) Filed | $6.00 | 26 | $156.00 |
| | Transcript of Evidence Volume(s) Filed | $6.00 | 12 | $72.00 |
| | Statement of Evidence Volume(s) Filed | $6.00 | 4 | $24.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 |
| | Other Volume(s) Filed | $4.00 | 2 | $8.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 12/28/2016 | **Appellate Record - Original Received** | | | **$1.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 12/20/2016 | **Order Related to Extension - Granted** | | | **$28.00** | Unallocated |
| | Non-Certified Copy Charge | $1.00 | 3 | $3.00 |

Page 2 of 4



| | | | | |
|---|---|---|---|---|
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Order Filed | $6.00 | 1 | $6.00 |
| 12/13/2016 | **Motion for Extension to File - Record** | | | **$34.00** | Unallocated |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 12/09/2016 | **Opinion - Filed** | | | **$58.00** | Unallocated |
| | Copy Charge | $1.00 | 21 | $21.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 |
| | Opinion Postage Fee (TCA 27-1-119) | $2.00 | 3 | $6.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Judgment Filed | $8.00 | 1 | $8.00 |
| | Opinion Filed or Mailed | $4.00 | 1 | $4.00 |
| 11/22/2016 | **Motion - for Court Review (Recusal)** | | | **$28.00** | Unallocated |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 11/03/2016 | **Order - Exceed Page Limitation Denied** | | | **$21.00** | Unallocated |
| | Non-Certified Copy Charge | $1.00 | 2 | $2.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| | Order Filed | $6.00 | 1 | $6.00 |
| 11/01/2016 | **Response - to Motion** | | | **$28.00** | Unallocated |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 10/31/2016 | **Motion - Exceed Page Limitations** | | | **$28.00** | Unallocated |
| | Motion or Response Filed or Received | $5.00 | 3 | $15.00 |
| | Notice(s) Mailed (CIVIL) | $6.00 | 2 | $12.00 |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 09/12/2016 | **Notice (Incoming) - Correspondence Received** | | | **$1.00** | Unallocated |
| | Entering Information in Database | $1.00 | 1 | $1.00 |
| 09/02/2016 | **Notice (Incoming) - Correspondence Received** | | | **$1.00** | Unallocated |

Page 3 of 4


| | | Amount | Qty. | Total | Comments |
|---|---|---|---|---|---|
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 09/02/2016 | **Notice (Incoming) - Correspondence Received** | | | **$1.00** | **Unallocated** |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 08/30/2016 | **Bond - Cash Deposited with Appellate Court** | | | **$23.00** | **Unallocated** |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 | |
| | Bond Filed or Received | $4.00 | 1 | $4.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| 08/26/2016 | **Initiating Document - TRAP 3 Notice of Appeal** | | | **$23.00** | **Unallocated** |
| | Notice(s) Mailed (CIVIL) | $6.00 | 3 | $18.00 | |
| | Entering Information in Database | $1.00 | 1 | $1.00 | |
| | TRAP 3 Notice of Appeal Received | $4.00 | 1 | $4.00 | |

**OTHER COSTS**

| Date | | Amount | Qty. | Total | Comments |
|---|---|---|---|---|---|
| 02/15/2017 | **Custom Tickler** | | | **$1.00** | **Unallocated** |
| | Manual Tickler Entered in Database | $1.00 | 1 | $1.00 | |
| 11/08/2016 | **Custom Tickler** | | | **$1.00** | **Unallocated** |
| | Manual Tickler Entered in Database | $1.00 | 1 | $1.00 | |

**Total Fees this Case: $1,041.00**
**Total All Cases: $1,041.00**

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| JOHN ANTHONY GENTRY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **No. M2016-01765-COA-R3-CV** |
| | ) | |
| KATHERINE WISE GENTRY, | ) | On Appeal from the Circuit Court, |
| | ) | Sumner County, Tennessee No. |
| Appellee. | ) | 2014CV393 |
| | ) | |

## MEMORANDUM IN SUPPORT OF APPELLEE'S MOTION TO DISMISS APPEAL

Appellee, Katherine Wise Gentry ("Wife"), submits this memorandum in support of her Motion to Dismiss the Appeal of Appellant, John Anthony Gentry ("Husband").

## I. INTRODUCTION

While this Motion presents the Court with a variety of procedural arguments related to both the Tennessee Rules of Appellate Procedure and the Court of Appeals Rules of Court, the importance behind following those rules cannot be understated. These Rules allow the Court to quickly, and, more importantly, properly review the veracity of the contentions set forth by litigants in their appellant briefs without being required to minutely search the record for evidence supporting each and every contention. In this case, Husband has repeatedly violated a plethora of the Rules setting the guidelines for an efficient appellate process. His failures have put the Court in a position where it would be unable to properly review the trial court's rulings and put the Wife in a position where responding to his Brief would certainly be an overwhelming task. Based on these failures, Wife is requesting that the Court dismiss Husband's appeal.

## II. LEGAL STANDARD

In quoting Abraham Lincoln, the Tennessee Supreme Court once described the merits of a frivolous appeal to be "as thin as the boiled shadow of a homeopathic pigeon." <u>Davis v. Gulft</u>

**EXHIBIT R**

Ins. Group, 546 S.W.2d 583, 586 (Tenn. 1977). The Court is presented with a similar situation in this matter.

Here, before the Court is a Motion to Dismiss a *pro se* litigant's appellate brief for failure to comply with the Tennessee Rules of Appellate Procedure and the Court of Appeals Rules, therefore, rendering the appeal frivolous. An Appeal is frivolous when it has "no reasonable chance of success" or is "so utterly devoid of merit as to justify the imposition of a penalty." Whalum v. Marshall, 224 S.W.3d 169 (Tenn. Ct. App. 2006) (citing Combustion Eng'g, Inc. v. Kennedy, 562 S.W.2d 202, 205 (Tenn. 1978). In Murray v. Miracle, faced with a similar situation and in dismissing a *pro se* litigant's appeal as frivolous for failure to comply with the Rules of Appellate Procedure, the Court of Appeals restated the following applicable principles:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. Whitaker v. Whirlpool Corp., 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); Paehler v. Union Planters Nat'l Bank, Inc., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997).
>
> The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. Irvin v. City of Clarksville, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. Edmundson v. Pratt, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); Kaylor v. Bradley, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995).
>
> Young v. Barrow, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003).
>
> We are not unmindful of Plaintiffs' pro se status and have attempted to give them the benefit of the doubt whenever possible. Nevertheless, we cannot write Plaintiffs' brief for them, and we are not able to create arguments or issues where none otherwise are set forth. Likewise, we will not dig through the record in an attempt to discover arguments or issues that Plaintiffs may have made had they been represented by counsel. To do so would place Defendants in a distinct and likely insurmountable and unfair disadvantage as this Court would be acting as Plaintiffs' attorney.

457 S.W.3d 399, 402 (Tenn. Ct. App. 2014) (internal citations omitted).

More recently, the Court of Appeals addressed a similar situation in <u>Oakes v. Oakes</u>, No. E2016-00274-COA-R3-CV, 2016 Tenn. App. LEXIS 989 (Tenn. Ct. App. Dec. 28, 2016). In <u>Oakes</u>, the appellant was *pro se*. His appellate brief contained no case citations or references to the record, no authority was cited other than the statute on division of marital property, and he did not provide a table required by Tennessee Court of Appeals Rule 7. Based on the *pro se* litigant's numerous omissions of items required under the Tennessee Rules of Appellate Procedure and Court of Appeals Rules, the Court of Appeals found that the appeal had no reasonable chance of success and found it to be frivolous: "The issue raised by Husband has been waived for failure to comply with the Tennessee Rules of Appellate Procedure and Rules of the Court of Appeals. This appeal is dismissed, and the case remanded to the trial court for a determination and award of Wife's reasonable attorney's fees and expenses on appeal." <u>Id</u>. at *9; <u>see also</u> <u>Chiozza v. Chiozza</u>, 315 S.W.3d 482 (Tenn. Ct. App. Nov. 20, 2009) (dismissing a *pro se* litigants appeal as frivolous for failure to comply with the Tennessee Rules of Appellate Procedure); <u>Murray</u>, 457 S.W.3d at 404 (holding appeal frivolous under similar circumstances).

Like those instances presented to the Court in <u>Oaks</u>, <u>Chiozza</u>, <u>Murray</u>, Husband, a *pro se* litigant, has filed an appellant brief which fails to comply with the Tennessee Rules of Appellate Procedure and the Court of Appeals Rule. Such failure renders his appeal frivolous. Moreover, on a practical matter, the Rules referenced in this Memorandum are in place so that the Court may easily and correctly determine the merits of litigant's brief. Husband's failure to comply with the subject rules places both the Court and Wife in a position where they are unable to ascertain the validity of Husband's arguments without thoroughly examining a voluminous record themselves. It is not the Court's nor Wife's responsibility to do so. Husband's appeal should be dismissed accordingly.

## III.  ARGUMENT

This Motion is specifically directed at Husband's failure to comply with the Tennessee Rules of Appellate Procedure, the Rules for the Court of Appeals for Tennessee, and this Court's previous Order, to-wit: (1) Husband failed to attach a Rule 7 table to his Brief and has therefore waived all issues relating to Rule 7's requirements; (2) Husband circumvented this Court's Order of November 3, 2016 and the requirements of Rule 27(i) regarding the page limit of his Brief and violated Rule 27(a)(6) by including argument in his Statement of Facts; (3) Husband's Brief does not comply with Tennessee Rule of Appellate Procedure 27 and Court of Appeals Rule 6(b) by not citing to pages of the record where evidence of such fact is recorded; (4) Husband fails to comply with Rule 27(a)(7)(A) by providing appropriate citation to authorities supporting his request that the Court reverse the trial court's classification, valuation, division, or allocation of property or debt; (5) Husband failed to comply with Rule 27(a) of the Tennessee Rules of Appellate Procedure by explaining the applicable standards of review; and (6) Husband's Brief contains language showing disrespect or contempt for the trial court. Based on the foregoing, Husband's appeal should be dismissed in its entirety, stricken from the record, and Wife should be awarded her fees and costs incurred on appeal.

### A.  Husband failed to attach a Rule 7 table to his Brief and has therefore waived all issues relating to Rule 7's requirements.

Husband's Brief filed with this Court on February 8, 2017 fails to comply with Court of Appeals Rule 7. See generally (Brief of Appellant.)  Due to Husband's failure to comply with Rule 7, he has waived all such issues related to the rules requirements, i.e., the classification and valuation of assets and liabilities; and the division of those assets and liabilities.

Rule 7 of the Court of Appeals requires the following in appeals of divorce cases involving distribution of marital property:

(a) In any domestic relations appeal in which either party takes issue with . . . the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table [that] shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

In Forbess v. Forbess, the Court of Appeals explained, in discussing the failure to comply with Rule 7, as follows:

This Court has previously held where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

370 S.W.3d 347, 354-55 (Tenn. Ct. App. 2011) (quoting Harden v. Harden, No. M2009-01302-COA-R3-CV, 2010 Tenn. App. LEXIS 419 (Tenn. Ct. App. June 30, 2010)). The Forbess Court went on to explain the necessity of Rule 7:

[I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely

19369N:140454:1213107:2:NASHVILLE

search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

Id.

Here, Mr. Gentry fails to attach a Rule 7 table. Nevertheless, Mr. Gentry will likely argue that by including a table titled "Proposed Division of Assets[,]" in which he sets forth a division of assets he wishes this Court to adopt, he has complied with the Rule. (Brief of Appellant 156-58.) In describing the relevancy of the table contained in his Appellate Brief, Husband states:

> . . . The Circuit Court Judge did not distribute many of the assets detailed in the below scheduld [sic.]. The below schedule [referring to the table titled "Proposed Division of Assets"] was included in Husband's Motion for Equitable Distribution of Marital Assets (TR Vol. XX p. 2549 – 2556). Husband asserts the below schedule, or something approximating this distribution, is how the assets would have been divided had Husband been provided fair due process. Husband begs this Honorable Court to consider the below schedule as an appropriate distribution of marital assets.

(Brief of Appellant 155-56.)

Even if Husband raises the argument that the table contained in his Brief represents his compliance with Rule 7, a review of the subject table in comparison to Rule 7 reveals the following deficiencies: (1) it does not include ". . . a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found[;]" and (2) it does not include ". . . a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found." Tenn. Ct. App. R. 7. Rather, Husband's table appears to be the same chart contained in his Motion for Equitable Distribution of Marital Assets, which the trial court treated as his proposed division of the martial estate. (Tr. Vol. XX p. 2549-2556.) The chart does not set forth the trial court's valuation, division, and allocation; a citation to evidence supporting Husband's proposed

valuation, division, and allocation; or Wife's proposed valuation, division, and allocation. To that end, the subject table fails to accomplish the purpose of Rule 7, i.e., ". . . allowing this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court . . . , allow[ing] this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention." Forbess, 370 S.W.3d at 354 (citations omitted).

In fact, a review of the subject table reveals that the table not only does not assist the Court in reviewing the trial court's decision but it is counterproductive in that certain contentions are not supported by evidence in the record.[1] For example, the first entry in Husband's "Proposed Division of Assets" is SweetWise, Inc. in which he states that the "corrected valuation" is $597,570.00 and the "incorrected valuation" is $350,000.00. (Brief of Appellant 156.) In other words, Husband is representing to the Court, without citation to evidence in the record that SweetWise, Inc. should have been valued at $597,570.00, not $350,000.00. (Id.) However, this representation by Husband overlooks the record and Husband's oral stipulation of $350,000.00 to the subject valuation during the trial. Specifically, as brief background, Husband filed a Motion for Equitable Distribution of Marital Assets, which the trial court treated as Husband's proposed division of the marital estate. (Tr. Vol. XX p. 2549 – 2556.) Included in Husband's proposed division was the subject table valuing SweetWise, Inc. at $597,570.00, i.e., the "corrected valuation." (Id.) At trial, Mr. Vic Alexander, CPA and Wife's valuation expert, opined that SweetWise, Inc. had a value of $350,000.00, i.e., Husband's purported "incorrected valuation." (Tr. Vol. XXXV, p. 286; Trial Exhibit 32.) Husband cross-examined Mr. Alexander, which concluded with the following statement: "MR. GENTRY: Well, my questioning kind of

---

[1] As there are no citations in the record and given the deficiencies of Husband's Appellate Brief, Wife has not searched the record for evidence supporting each asset and corresponding valuation contained in Husband's "Proposed Division of Assets."

19369N:140454:1213107:2:NASHVILLE                7

went off track because of the Court's ruling on my objection. *I'm just going to let the valuation stand as it is*. And I have nothing further." (Tr. Vol. XXXV, p. 302) (emphasis added). Simply—at trial, Husband stipulated to Mr. Alexander's valuation. Now, without citation to any evidence supporting his contention, he appears to be arguing that Mr. Alexander's valuation is incorrect despite his prior stipulation at trial.

The remainder of Husband's "Proposed Division of Assets" is likewise without citation to evidence in the record and otherwise fails to comply with Rule 7. (Brief of Appellant 156-58.) The Court nor Wife should be forced to comb through a voluminous record to discover if Husband's assertions as to the classification, valuation, division, or allocation of the property or debt is supported by evidence in the record. See Murray v. Miracle, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014) ("Likewise, we will not dig through the record in an attempt to discover arguments or issues that Plaintiffs may have made had they been represented by counsel."). Based on Husband's failure to comply with Rule 7, Husband has waived all such issues relating to the classification, valuation, division, or allocation of the property or debt. Such issues should be dismissed accordingly.

**B. Husband circumvented this Court's Order of November 3, 2016 and the requirements of Rule 27 (i) regarding the page limit of his Brief and violated Rule 27(a)(6) by including argument in his Statement of Facts.**

Husband's Brief further fails to comply with Rule 27 of the Tennessee Rules of Appellate Procedure and circumvents the previous Orders of this Court by exceeding the page limit and including argument in the Statement of Facts. Rule 27(a)(6) of the Tennessee Rules of Appellate Procedure states that a brief of the appellant shall include "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record[.]" Rule 27(i) goes on to provide that "[e]xcept by order of the appellate court or a judge thereof, arguments in principal briefs shall not exceed 50 pages . . . ."

19369N:140454:1213107:2:NASHVILLE

In this case, on October 31, 2016, Husband filed a Motion with this Court requesting that he be allowed to exceed the page limit outlined by Rule 27(i). (Husband's Motion to Exceed Page Limitations filed on Oct. 31, 2016.) On November 3, 2016, the Court denied Husband's Motion stating, in part: "The appellant has filed a motion to exceed the page limitation provided by Tenn. R. App. P. 27(i). Tenn. R. App. P. 27(i) limits the argument in the appellant's principal brief to 50 pages. The 50 page limit applies only to the argument section of the appellant's brief." (Order entered Nov. 3, 2016.)

Husband filed his 160-page Brief on February 10, 2017 in which he pointed out that he "properly limited his Arguments to forty-nine (49) pages." (Brief of Appellant 3.) Husband's contention is correct in that the argument section of Husband's Brief is technically 49 pages; however, Husband circumvented this Court's Order, Rule 27(a)(6), and Rule 27(i) by including a voluminous amount of argument in his fact section and then referencing and citing to those improperly included arguments in his Brief's argument section. See generally (Brief of Appellant.) Such conduct results in Husband's argument section greatly exceeding the 50-page limit. For example, attached as **Exhibit A** to this Memorandum is pages 5-7 of Husband's Brief containing an excerpt of his Statement of Facts. **Exhibit A**, although included in Husband's Statement of Facts, is almost entirely argument including legal citations.

Husband's Statement of the Facts—from pages 4 through 110 of Husband's Brief—continues to be fraught with argument. (Brief of Appellant 4-110); see also, e.g., (Id. at p. 12) (Husband presents arguments as to multiple issues including business valuations and Wife's "obvious perjurious [sic.] statement"); (Id. at p. 13) (Husband presents arguments citing to Tennessee Supreme Court Rule 10 and T.C.A. § 20-9-506); (Id. at p. 15) (Husband argues that the trial court denied "Husband his right to be heard in violation of the fourteenth

19369N:140454:1213107:2:NASHVILLE

Amendment."); (Id. at p. 19) (Husband argues that the trial court violated his "constitutionally guaranteed right to be heard and right of due process"); (Id. at p. 20) (Husband argues that the trial court was ". . . clearly not aware of what motions were to be heard, and apparently did not read Husband's motions . . . [and] . . . "[t]his is important to note because it substantiates the Circuit Court Judge's later apparent false statement, that he had read Husband's motions and responses to motions."). Husband's Statement of the Facts continues in this fashion throughout.

Moreover, rather than citing to the record, Husband's actual Argument section continuously cites to his Statement of the Facts in support of his contentions and, therefore, incorporates the arguments made in his Statement of Facts into the Argument section. See, e.g., (Brief of Appellant at p. 117) (citing "See pages 4 – 36 above"; "See p. 9 – 10 above"; "See p. 13 -55 above"); (Id. at119) (citing "See p. 36 – 37 above"; "See p. 36 – 37 above); (Id. at p. 122) (citing "See p. 76 – 77 above"; "See p. 70 -77 above"; "See p. 96 – 98 above"). Husband's Argument section continuous on in this fashion.

Given the foregoing, while Husband's Argument section only technically includes 49 pages, he has repeatedly and improperly included argument in his Statement of Facts and cited to those arguments in his Argument section, thus, making his argument far exceed the 50 page limit ordered by the Court. Husband's Brief also fails to comply with Rule 27 by including argument in his Statement of the Facts. Husband's appeal should be dismissed accordingly.

### C. Husband's Brief does not comply with Tennessee Rule of Appellate Procedure 27 and Court of Appeals Rule 6(b) by not citing to pages of the record where evidence of such fact is recorded.

Additionally, Husband's Brief does not comply with Tennessee Rule of Appellate Procedure 27 or Court of Appeals Rule 6(b) in that it repeatedly fails to cite to the specific page or pages of the record where such action is recorded in both his Statement of Facts and Arguments sections. See Bean v. Bean, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("[c]ourts have

routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").[2] Rule 27(a)(6) requires a statement "setting forth the facts relevant to the issues presented for review *with appropriate references to the record*." (emphasis added). Moreover, Court of Appeals Rule 6(b) provides:

> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

The Court of Appeals has repeatedly held that a litigant's failure to comply with the Rules of the Appellate Procedure and the Court of Appeals Rules waives the issues for review. See, e.g., Murray v. Miracle, 457 S.W.3d 399, 403-04 (Tenn. Ct. App. 2014); Chiozza v. Chiozza, 315 S.W.3d 482, 488-89 (Tenn. Ct. App. 2009); Worley v. White Tire of Tenn., Inc., 182 S.W.3d 306, 311 (Tenn. Ct. App. 2005); Messer Griesheim Indus. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003).

In this matter, Husband's argument section repeatedly fails to contain ". . . a reference to the page or pages of the record where evidence of such fact is recorded" by either not providing a citation to the record at all; providing a broad citation to Husband's Brief's Statement of Facts; or citing to pleadings that are not evidence, e.g., Husbands' multiple trial memoranda . (Brief of Appellant pp. 113-160.) As an example of Mr. Gentry's failure to provide any citation, as required by the Rules of Appellate Procedure and this Court's Rules, consider the following statements contained in his Argument section:[3]

---

[2] There are instances in Husband's Argument section in which he properly cites to the record.
[3] Husband's Statement of Evidence also fails to consistently cite to the record.

19369N:140454:1213107:2:NASHVILLE
11

Since Husband was erroneously denied income from the business during pendency by the trial court judge and denied income from the business fraudulently by Wife, Husband asked the court to reconvene his hearing on his Petition for Contempt, which was denied with the simple statement, the court had "already ruler on the matter. For this reason, Husband was denied due process (argued further in the below section SUPPORT & COMPENSATION ERRONEOUSLY DENIED DURING PENDENCY) further justifying Husband's motion to recuse.

\*\*\*

The Circuit Court Judge knew that Wife can afford a legal team of two attorneys and a paralegal. The Circuit Court Judge knew Husband's counsel withdrew for non-payment.

\*\*\*

Because of the bias suffered by Husband throughout proceedings, Husband felt as though he was being treated as a criminal by the Circuit Court Judge, while the facts show that Husband was guilty of no wrongdoing in the marriage, Husband was completely respectful to the Circuit Court Judge throughout proceedings, and Husband's testimony was beyond reproach. Husband even remained respectful to the Court even when his right of due process was plainly being violated.

\*\*\*

Husband twice asked the court to reconvene on this matter. The first time Husband requested to reconvene the hearing, was on August 7, 2015. The Circuit Court Judge simply denied Husband's motion to reconvene simply stating he had "already ruled". Husband was not allowed to make any arguments supporting his motion.

\*\*\*

In this case, Husband not only participated in creating the product and patent application, Husband was the primary driver in creating the product and creating a market for the product.

\*\*\*

The undisputed facts, and Wife's own evidence show that the value in the business increased in value from a beginning value of $0.00 to a valuation of $350,000 under Husband's management. The

12

beginning value of $0.00 is easily determined through common sense reasoning.

(Brief of Appellant p. 115, 116, 118, 126, 134, 153.) None of the above-referenced statements have any citation to the record showing where evidence of such facts are recorded. Husband's Statement of Fact and Argument sections continuously makes statements without citation.

Moreover, in some instances,[4] where Husband does include a citation to facts in his Argument section, the citation is not to the record, as required by Rule 7, but to a previous part of Husband's Brief. See, e.g., (Brief of Appellant at p. 117) (citing "See pages 4 – 36 above"; "See p. 9 – 10 above"; "See p. 13 -55 above"); (Id. at119) (citing "See p. 36 – 37 above"; "See p. 36 – 37 above); (Id. at p. 122) (citing "See p. 76 – 77 above"; "See p. 70 -77 above"; "See p. 96 – 98 above"). Some of these citations span a large amount of pages, i.e., pages 13 – 55, pages 70 – 77. Such conduct fails to comply with Rule 27(a) and Rule 7(b) in that it does not cite to specific pages of the record showing evidence that supports Husband's contention. Moreover, on a practical note, it requires the Court and Wife to search a copious number of pages to determine whether the contention is supported by the record. This is not the Court's obligation nor Wife's.

Finally, Husband cites to matters that do not present "evidence of such fact" in support of his position, e.g., Husband's multiple trial briefs. See generally (Brief of Appellant.) See Greer v. City of Memphis, 356 S.W.3d 917, 923 (Tenn. Ct. App. 2010) (Neither the allegations contained in pleadings nor the recitations of facts contained in a party's briefs nor statements of counsel constitute evidence.). For example, Husband provides the following statement:

> In Husband's *Memorandum of Law Marital Property — Marital Residence Goodlettsville Home" (TR Vol XXV p. 3335)*, which included a notarized Oath swearing truth to all statements and evidence included therein, Husband evidenced the following; (1) the property was his separate property since five years prior to the marriage (*Id p. 1*), (2) Husband purchased the property using his

---

[4] Wife would venture to say the majority of instances.

19369N:140454:1213107:2:NASHVILLE

13

VA Benefits (*Id p. 1*), (3) Wife abandoned the property (*Id p. 2-5*), (4) Wife refused assistance to keep the property from going into foreclosure (*Id p. 2-5*), and (5) out of commitment to success of the marriage, Husband gifted the marriage with this property through a quitclaim deed (*Id p. 2*).

(Brief of Appellant at p. 36.)

Consistent with the foregoing example, Husband's Brief continues to rely on matters that do not provide "evidence of such fact." See, e.g., (Id. at p. 125) (citing to Memorandum as evidence of certain facts); (Id. at p. 144) (". . . Husband begs this honorable court to consider the facts stated above and Husband's memorandums of law referenced just above.") (Id. at p. 146) ("Husband also provided Wife's perjury in Husband's Memorandum of Law Wife's Perjury & Violation of Statutory Inunction (TR Vol XII p. 1309 – 1448) and in Husband's Proposed Findings of Fact Conclusions of Law (TR Vol XXI p. 2651 – 2692)."); (Id. at p. 146) ("Husband also proved Wife's attempted subordinated perjury in his Supplemental Memorandum of Law (TR Vol. p. 2177 – 2260)"). In addition to the above examples, Husband's Brief continuously cites to his trial memoranda as "evidence" of certain facts. Such conduct fails to comply with Court of Appeals Rule 6(b) as those documents do not constitute evidence. It is not the Court's responsibility or Wife's to comb through every citation contained in Husband's 160 page Brief to determine whether he cites to actual evidence.

Based on the foregoing, Husband's Brief should be dismissed for failure to comply with Rule 27(a) of the Tennessee Rules of Appellate Procedure and Rule 7(b) of the Court of Appeals Rules.

**D. Husband fails to comply with Rule 27(a)(7)(A) by providing appropriate citation to authorities supporting his request that the Court reverse the trial court's classification, valuation, division, or allocation of property or debt.**

Also, Husband's Brief, to the extent he requests the Court review the classification, valuation; division; or allocation of property or debt, does not comply with Tennessee Rule of

Appellate Procedure Rule 27(a)(7)(A) by supporting his argument "with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on."

Specifically, Husband's statement of issue number 10 is titled "ERROR IN EQUITABLY DISTRIBUTING ASSETS." (Brief of Appellant at p. 153.) In support of his contention that the trial court erred in dividing the marital estate, Husband cites to Rule 37.02 and Rule 34A.02 of the Tennessee Rules of Civil Procedure, neither of which have anything to do with the division of marital property, along with the following quote: "As we noted in Holt, dismissal is a harsh sanction, but as the Holt Court explains, if a party flouts the discovery order of the trial court without showing any reason for their failure to timely comply with the Order of Discovery, then dismissal may be an appropriate remedy. McKay v. McKay, Tenn. Ct. App. 2005, No. W2004-00610-COA-R3-CV" (Id. at 154-55.) Relying on Rule 37.02, 34A.02 and the quote from McKay v. McKay, Husband states:

> Husband asserts the below schedule, or something approximating this distribution, is how the assets would have been divided had Husband been provided fair due process. Husband begs this Honorable Court to consider the below schedule as an appropriate distribution of marital assets.

(Id. at p. 156.) Husband then asks the Court to adopt a "schedule" of "Proposed Division of Assets" as an appropriate distribution of marital assets. (Id. at 156-58.) As discussed above, there is no citation to the record as to any of the assets contained in the "Proposed Division of Assets." (Id.)

Based on the foregoing, Husband has failed to cite to any authorities or appropriate references to the record which would support the Court reviewing the trial court's classification, valuation, division, or allocation of property or debt. Husband has therefore waived those issues.

**E.   Husband failed to comply with Rule 27(a) of the Tennessee Rules of Appellate Procedure by explaining the applicable standards of review**

Next, Husband's appellate brief omits a section explaining the applicable standards of review. (Brief of Appellant.) Rule 27(a) of the Tennessee Rules of Appellate Procedure provides that the brief of the appellant "*shall* contain . . . for each issue, a concise statement of the applicable standard of review." (emphasis added). This rule allows an appellant to include the applicable standard of review under a separate heading or in the discussion section of a particular issue. Here, Husband makes no mention anywhere in his Brief of the applicable standards of review for this Court to review the substance of his appeal. As such, Husband has waived all issues contained in his Brief. See State v. Johnson, -- S.W.3d --, 2016 Tenn. Crim. App. LEXIS 45 (Tenn. Crim. App. Jan. 25, 2016) (Defendant waived an issue on appeal because he made a lengthy argument with no citations to supporting authorities and also failed to include the standard of review.).

**F.   Husband's Brief contains language showing disrespect or contempt for the trial court and should be stricken from the record accordingly.**

Rule 9 of the Court of Appeals Rules provides: "Any brief or written argument containing language showing disrespect or contempt for any court of Tennessee will be stricken from the files, and this Court will take such further action relative thereto as it may deem proper." Husband's Brief contained the following disrespectful and contemptuous language directed at the trial court:

- "The Circuit Court Judge either did not notice, *or perhaps intentionally ignored*, Wife's obvious perjurious statement about her inability to provide support." (Brief of Appellant at p. 12) (emphasis added).

- "These *obvious false statements* prove the Circuit Court Judge's knowledge of violations of due process intentionally made against Husband and *his poorly veiled attempt to hide those violations of due process*." (Id. at p. 19) (emphasis added).

- "This is important to note because it substantiates the Circuit Court Judge's later apparent *false statement*, that he had read Husband's motions and responses to motions." (Id. at p. 20) (emphasis added).

- "It is illogical that the Circuit Court Judge accuses Husband of wasting the court's time except in that it suggests bias. The Circuit Court Judge, in his bias, is simply assigning blame for Wife's baseless motion to quash, onto Husband's shoulders which does not follow basic logic." (Id. at p. 23.)

- "Husband recognized this fact during the hearing, but out of great respect for the office of the judiciary, Husband did not publicly reference *obvious false statements by the court* in a public forum." (Id. at p. 25) (emphasis added).

- "The Circuit Court Judge knew Husband was involuntary pro se and yet signed an order that falsely represented Husband as voluntary pro se." (Id. at p. 50.)

- ". . . it is also true that either the Circuit Court Judge either didn't read Husband's objection to the order (violation of due process), since it was in defect of Sup. Ct. R. 10B §1.03, or it is true that *the Circuit Court Judge erroneously believed himself not subject to the requirements of Supreme Court Rule 10B (judicial misconduct)*." (Id. at p. 62) (emphasis added).

- "Taken together with the fact that the Circuit Court Judge didn't know, or *perhaps ignored*, his requirement to rule timely on temporary support and allowed Husband to lose his legal representation gives the appearance *the Circuit Court Judge wasn't competent (meaning no disrespect) in his responsibilities* and forgot about ruling on temporary support, or that perhaps he intended Husband to lose his legal representation out of bias, either of which reasons more than justified Husband's recusal motion." (Id. at p. 116) (emphasis added).

- "As evidenced above, *the Circuit Court Judge appeared to manipulate proceedings* so that Husband could not introduce evidence and testimony proving Wife's violation of statutory injunction." (Id. at p. 117) (emphasis added).

- ". . . *the Circuit Court Judge* gave more than just an appearance bias and *that he was manipulating proceedings*, and was denying Husband's right of due process and right to be heard." (Id. at p. 131) (emphasis added).

In sum—Husband, through his Brief, states the trial court made false statements, states that the trial court was not competent, and alleges that the trial court manipulated proceedings. Such statements are completely inappropriate and violate the provisions of Rule against showing

disrespect or contempt for any Tennessee Court. Husband's appeal should be dismissed and his entire Brief should be stricken from the record accordingly.

G.   **Attorney fees on appeal.**

As the appeal should be rendered frivolous for its multiple failures to comply with the rules referenced hearing, Wife asks that she be awarded her reasonable fees and costs incurred on appeal.

IV.   **CONCLUSION**

In sum, Husband's failure to comply with the appellate rules has placed the Court in a position that it cannot properly review the trial court's decision without scouring the record to determine if Husband's contention have merit or are supported by evidence.  Likewise, Wife cannot respond to Husbands' Brief without doing the same and incurring unnecessary costs for such a large, time-consuming process.

Based on the foregoing, Wife requests that Husband's appeal be dismissed as frivolous and stricken from the record.  Wife also requests that she be awarded her reasonable fees and costs incurred on appeal.

Respectfully submitted,

Pamela A. Taylor (Sup. Ct. No. 012264)
Brenton H. Lankford (Sup. Ct. No. 030223)
STITES & HARBISON PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2490
Telephone:  (615) 782-2212

*Attorneys for Katherine Gentry*

19369N:140454:1213107:2:NASHVILLE

# Appellate Case Search

Enter Search Term     Advanced Search   `Search`

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

PDF     Print

### M2016-01765-COA-R3-CV

| Case Overview | Case Milestones | Parties | Document History |
|---|---|---|---|

| Record Information |
|---|

## Case History

| Date | Event | Filer | PDF |
|---|---|---|---|
| 03/07/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/07/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/06/2017 | Response-to Motion | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/03/2017 | Filing-Miscellaneous | Gentry, Katherine Wise (Appellee/Plaintiff) | |
| 03/03/2017 | Motion for Extension to File-Brief | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 03/03/2017 | Motion-to Dismiss | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 02/16/2017 | Bond-Cash Deposited with Appellate Court | | |
| 02/15/2017 | Order Related to Extension-Granted | | PDF |
| 02/14/2017 | Response-to Motion | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 02/13/2017 | Appellate Record-Checked Out | Pamela Anderson Taylor | |
| 02/13/2017 | Motion for Extension to File-Brief | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 02/08/2017 | Case Status-APPELLANT BRIEFING COMPLETE | | |

EXHIBIT S

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 02/08/2017 | Brief-Appellant's Brief Filed | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 01/30/2017 | Order-Supplement to Record | | PDF |
| 01/30/2017 | Appellate Record-Supplemental Filed | | |
| 01/27/2017 | Appellate Record-Supplemental Received | | |
| 01/25/2017 | Appellate Record-Checked In from View | | |
| 01/25/2017 | Appellate Record-Checked Out to View | John Anthony Gentry | |
| 01/25/2017 | Motion-Supplement Record | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 01/24/2017 | Appellate Record-Checked In from View | | |
| 01/24/2017 | Appellate Record-Checked Out to View | John Anthony Gentry | |
| 01/13/2017 | Appellate Record-Original Filed | | |
| 12/28/2016 | Appellate Record-Original Received | | |
| 12/20/2016 | Order Related to Extension-Granted | | PDF |
| 12/13/2016 | Motion for Extension to File-Record | Sumner County Circuit Court (Trial Court Clerk) | PDF |
| 12/09/2016 | Opinion-Filed | | PDF |
| 11/22/2016 | Motion-for Court Review (Recusal) | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 11/16/2016 | Order-Recusal of Appellate Judge Denied | | PDF |
| 11/08/2016 | Motion-for Recusal of Appellate Judge | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 11/03/2016 | Order-Exceed Page Limitation Denied | | PDF |
| 11/01/2016 | Response-to Motion | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 10/31/2016 | Motion-Exceed Page Limitations | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 09/12/2016 | Notice (Incoming)-Correspondence Received | Taylor, Pamela Anderson (Attorney) | |
| 09/02/2016 | Notice (Incoming)-Correspondence Received | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 09/02/2016 | Action-State Litigation Tax Paid | | |

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 09/02/2016 | Notice (Incoming)-Correspondence Received | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 08/30/2016 | Bond-Cash Deposited with Appellate Court | | |
| 08/26/2016 | Initiating Document-TRAP 3 Notice of Appeal | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF<br>PDF |

**NOTE: The case history section will include a column that will allow for the display of permitted documents in a PDF format.

Administrative Office of the Courts
511 Union Street, Suite 600
Nashville, TN 37219
(615) 741-2687 | (800) 448-7970

© 2011 Tennessee Courts System

# IN THE COURT OF APPEALS OF THE MIDDLE SECTION OF TENNESSEE

2017 MAR -6  AM 8: 53

JOHN ANTHONY GENTRY,  )
    Appellant/Defendant/Counter-Plaintiff  )
        )      M2016-01765-COA-R3-CV
v.        )
        )      SUMNER COUNTY
KATHERINE WISE GENTRY  )
    Appellee/Plaintiff/Counter-Defendant  )

*Rule 3 Appeal As Of Right from the Final Judgement of the*
*Circuit Court For Sumner County, Case No. 2014 CV 393*

MEMORANDUM SUPPORTING RESPONSE TO MOTION TO DISMISS AND MOTION TO AMEND AND FOR EXTENSION OF TIME

Appellant, John Anthony Gentry ("Husband"), submits this memorandum in support of his Response To Appellee's Motion To Dismiss Appeal and Appellant's Motion to Amend And For Extension of Time to Amend.

## I.    INTRODUCTION

This Honorable Court **must deny** Wife's Motion To Dismiss and Sanction, due to the facts that her motion to dismiss and sanction was filed in plain violation of Tennessee Rules of Civil Procedure, and because the motion to dismiss contains intentional false statements and intentional misrepresentations of fact.

Wife's Motion to Dismiss and sanction attorney's fees is in plain violation of Tennessee Rules of Civil Procedure, Rule 11.03, due to the fact that Wife's counsel first filed her motion with the Court directly, without adhering to the safe harbor provisions in Rule 11.03, and therefore her motion should be denied with prejudice and Appellant should be granted leave to amend and an extension of time to file an amended Appellant's Brief.

# EXHIBIT T

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 197 of 241 PageID #: 492

At its core, Wife's Motion to Dismiss Husband's Appeal is completely without merit and falsely asserts Husband has repeatedly "violated a plethora of the Rules" rendering this court "unable to properly review the trial court's ruling" which not true.

Wife's Motion to Dismiss Husband's Appeal also contains false statements, misrepresentations of fact, and mischaracterizes Husband's Appellant's Brief. Even if Wife's assertions for dismissing Husband's appeal and sanctioning attorney's fees and costs were true, which they are not, this court has authority, for good cause, to suspend the requirements or provisions of any of the Rules of Appellate Procedure.

## II.   LEGAL STANDARD

### Suspension of Rules

This Court has authority to suspend any of the Rules of Appellate Procedure, pursuant to Rules of Appellate Procedure, Rule 2: Suspension of Rules. Rule 2 specifically states;

> **For good cause,** including the interest of expediting decision upon any matter, **the** Supreme Court, **Court of Appeals,** or Court of Criminal Appeals **may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion,** except that this rule shall not permit the extension of time for filing a notice of appeal prescribed in Rule 4, an application for permission to appeal to the Supreme Court from the denial of an application for interlocutory appeal by an intermediate appellate court prescribed in Rule 9(c), an application for permission to appeal to the Supreme Court from an intermediate appellate court's denial of an extraordinary appeal prescribed in Rule 10(b), an application for permission to appeal prescribed in Rule 11, or a petition for review prescribed in Rule 12.

Wife falsely contends, without citation of any supporting authority, that failure to satisfy a Court of Appeals Rule, renders an entire appeal as frivolous which is not true. If Wife's arguments were true, which they are not, this Court, for good cause, has the authority to suspend any rules that Appellant may have unintentionally failed to satisfy.

2

Appellant contends, and the facts show, that this Court has good cause to suspend rules pertaining to any alleged unintentional failure to satisfy a technical rule. Husband further contends he did not violate any Rules of Appellate Procedure nor any Court of Appeals Rules. The only exception being one minor technicality of Court of Appeals Rule 7, which defect Husband should be granted leave to amend and an extension of time in which to amend.

**Representations To Court**

Every single argument Wife's counsel makes supporting her motion to dismiss and sanction, is a complete misrepresentation of facts and in one instance Wife's counsel maliciously makes an intentional and knowing factually false statement to this Honorable Court and this Court should be offended by such behavior of an Officer of the Court.

Wife's counsel falsely states to this Court that Husband did not attach a Rule 7 table to his brief which is not true and is a false statement.

Wife's counsel misrepresents facts stating that Husband circumvented rules by including arguments in his statement of facts section and as such has intentionally misled this Honorable Court.

Wife's counsel falsely states that Husband's brief did not reference and cite the pages of the record in violation of Appellate Procedure 27 and Court of Appeals Rule 6(b) which is not true. This Court should also be offended at such a blatant misrepresentation of fact.

**The most disturbing of false statements made by Wife's counsel though, is the completely false statement to this Honorable Court that "Husband failed to comply with Rule 27(a) and failed to explain an applicable standard of review".** The facts demonstrating Wife's counsel's malicious, intentional false statement are attached as exhibits to this

memorandum. This Honorable Court should be most offended by such dishonorable behavior of an Officer of the Court.

Tennessee Rules of Civil Procedure are applicable in appellate court as further argued below. In short, Tenn. R. Civ. P. Rule 1(2) states: *"**The rules shall apply after appeal** or transfer of a general sessions civil lawsuit to circuit court..."*

Tennessee Rules of Civil Procedure, Rule 11.02 states:

> **By presenting to the court** (whether by signing, filing, submitting, or later advocating) **a pleading, written motion**, or other paper, **an attorney or unrepresented party is certifying that to the best of the person's knowledge**, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> **(1) it is not being presented for any improper purpose**, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> **(2) the claims**, defenses, and other legal contentions therein **are warranted** by existing law or **by a nonfrivolous argument** for the extension, modification, or reversal of existing law or the establishment of new law;
> **(3) the allegations and other factual contentions have evidentiary support** or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Here before the Court is a Motion to Dismiss that; (1) was prepared with the clear intent and improper purpose of violating Husband's right to be heard, (2) was prepared with the clear intent and improper purpose of harassing and causing needless delay and increasing cost of litigation, (3) contains frivolous and false arguments of Appellant's alleged disrespect of the judiciary which is not true, (4) contains frivolous and false arguments that Husband's appeal is without merit, and (5) that includes intentional false statements of fact plainly intended to deceive this Honorable Court.

**Wife's Motion to Dismiss and Sanction is in Violation of Tenn. R. Civ. P. Rule 11.03**

4

Tennessee Rules of Civil Procedure, Rule 11.03 requires that adverse counsel, or party acting as pro, se be provided with "notice and fair warning" that an adversary is seeking sanction. In the case, Brown v. Shappley, 290 SW 3d 197 - Tenn: Court of Appeals 2008, the Court of Appeals of Tennessee, at Jackson stated;

> The emphasized portion of **Rule 11.03(1)(a) is the Rule's 21-day "safe harbor" provision**. Mitrano v. Houser, 240 S.W.3d 854, 862 (Tenn.Ct.App.2007). This provision serves dual purposes. Id. First, **it provides an attorney or party acting pro se with "notice and fair warning that an adversary is proposing seeking sanctions**." Id. Second, it deters frivolous, unsupported, or otherwise improper pleadings from being filed with the court. Id. (at 202).

Here before the Court is a Motion to Dismiss that failed to comply with the "unambiguous and mandatory" safe harbor provision in Rule 11.03.

## III. ARGUMENT - RULE 11.03 SAFE HARBOR PROVISION VIOLATED

Wife's counsel failed to provide "notice and fair warning" to Husband as pro se counsel, and in so doing violated the "unambiguous and mandatory" safe harbor provision in Rule 11.03, and therefore Wife's counsel's Motion To Dismiss should be denied. Wife's counsel's proposed sanction of attorney's fees is a harsh sanction indeed, but dismissal of his appeal is the harshest sanction of all, and Wife's counsel should have provided "notice and fair warning", prior to tendering such a motion to this Honorable Court and suggesting such a harsh sanction as dismissal. Together with the facts of intentional false statements and misrepresentations of facts made by Wife's counsel, the only just action for this Honorable Court is to deny Wife's motion with prejudice.

Rule 11.03 specifically states;

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

5

**(1)    How Initiated.**

(a) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. It shall be served as provided in Rule 5, **but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.** If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

Wife's counsel failed to present Husband with her motion to dismiss and sanction prior to filing such a motion with this Honorable Court in plain violation of Rule 11.03. This fact is undeniable. Wife's counsel specifically stated in her Motion to Dismiss that she "respectfully requests that the Court dismiss the Appellant's John Anthony Gentry ("Husband"), Appeal as frivolous... ...and award Wife her fees and costs incurred on appeal" and such a motion squarely falls under Tennessee Rules of Civil Procedure, Rule 11.02(2) and 11.03(1)(a). The fact that Wife's Counsel did not cite any authority for sanction of dismissal and attorney's fees or costs, neither in her motion nor in her supporting memorandum, does not mitigate this fact.

The questions for this Honorable to consider is: "Should not the safe harbor rule in Rule 11.03 apply to Wife's motion to dismiss Husband's appeal on a basis of lack of merit and for sanction of dismissal, attorney fees and costs?" Husband asserts that Rule 11.03 does in fact apply to appellate proceedings. Tennessee Rules of Civil Procedure, Rule 1 states;

> Subject to exceptions as are stated in particular rules, **the Rules of Civil Procedure shall govern procedure in the circuit or chancery courts in all civil actions,** whether at law or in equity, **and in all other courts while exercising the civil jurisdiction of the circuit or chancery courts.** These rules shall be construed to secure the just, speedy, and inexpensive determination of every action.

According to Rule 1 of the Tennessee Rules of Civil Procedure, **the scope of the rules extends to "all other court's while exercising the civil jurisdiction of the of the circuit or chancery courts.** Is it not true that this Honorable Appellate Court is a Court exercising civil jurisdiction of the circuit court?

The Advisory Commission Comments to Rule 1 further states: "*This rule makes it clear that these Rules establish identical procedures for circuit and chancery courts **and for those other courts of record which have been established by special or private acts of the General Assembly*.*"* The Appellate Court is a court of record established by the acts of the General assembly and as such Tennessee Rules of Civil Procedure are applicable in appellate court.

> **A court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony: which rolls are called the records of the court, and are of such high and supereminent authority, that their truth is not to be called in question.** *Blackstone, William. Commentaries on the Laws of England: A Facsimile of the First Edition of 1765--1769*

Even more clearly though, Rule 1(2) states: "**The rules shall apply after appeal** or transfer of a general sessions civil lawsuit to circuit court..." So plainly the Tennessee Rules of Civil Procedure apply to appellate court proceedings and Wife's counsel failed to comply with the Rule 11.03 safe harbor provision, and her motion to dismiss should therefore be denied with prejudice.

Unfortunately, this is the same abuse of process Wife's counsel used to award her client attorney's fees during the underlying litigation to this appeal, except even more disturbingly though, in the underlying litigation, Wife's counsel didn't even bother to wait for a court ruling and didn't even bother to file a separate motion. This fact is plainly stated and evidenced in Husband's Appellant Brief (see Appellant's Brief p. 57 – 66 and 135 – 141).

If somehow, this Court disagrees with Appellant's argument above, Husband asserts this is a matter of *First Impression* for this Court to consider and issue opinion on. As a basis of a First

7

Impression Opinion, Appellant respectfully asks the Court to consider Appellant's further arguments.

Further citing the case Brown v. Shappley, 290 SW 3d 197 - Tenn: Court of Appeals 2008, the Jackson Court of Appeals stated;

> **This Court has noted that the procedures established in Rule 11.03 are clear, unambiguous and mandatory.** Id. **Accordingly, we will reverse an order of sanctions where the moving party has not complied with the Rule's safe harbor provisions.** Id. This Court recently reversed an order of sanctions for failure to comply with Rule 11.03(1)(a) in TPI Corporation v. Wilson, where the record indicated that the defendant had filed his motion with the court and sent it to plaintiff's counsel the same day. TPI Corp. v. Wilson, No. E2007-02315-COA-R3-CV, 2008 WL 3821077, at *5 (Tenn.Ct.App. Aug.18, 2008).
> **Upon review of the record in this case, we observe, as noted above, that Dr. Shappley filed his Rule 11 motion on July 24, 2007, and served it on Mr. Brown the same day.** As we also noted above, Dr. Shappley filed his Rule 11 motion the same day he filed his answer and counter-complaint. We find nothing in the record to indicate that Dr. Shappley complied with the Rule's safe harbor provision. (at 202)

The same is true in these appellate proceedings, as was true in the Brown v. Shappley case. During these appellate proceedings, Wife's counsel tendered her baseless Motion To Dismiss requesting the sanctions of dismissal and attorney's fees to this Court on the same day Husband was provided notice.

The Jackson Court of Appeals further stated;

> **In this case, the trial court's order offers no description of the conduct that the court determined to be sanctionable.** Dr. Shappley's argument to this Court, as we perceive it, is that Mr. Brown has had numerous "bites at the apple" throughout the litigation process and that his sole purpose is to harass Dr. Shappley. (at 202)

The same is true in this case, that the Court orders issued in the underlying litigation, awarding Wife attorney's fees did not offer any description of the conduct determined to be sanctionable, but it is also unfortunately true that the orders signed by the court in the underlying

8

litigation did not mention the word "sanction" nor did they reference Rule 11.03, nor did Wife's counsel satisfy the safe harbor provision in Rule 11, nor did Wife's counsel even bother to file a specific Motion for Sanction as required by Rule 11 (see Appellant's Brief p. 57 – 66 and 135 – 141).

For Wife's counsel to suggest Husband's appeal be dismissed based on falsely asserted minute technicalities, while Wife's counsel is in fact guilty of severe abuses of process, is a suggestion to this Honorable Court to serve a great travesty of injustice upon Appellant by the extremely harsh sanction of dismissing Husband's appeal and further sanctioning him attorney's fees and costs, while at the same time ignoring Wife's counsel's repeated abuses of process during the underlying litigation, and her now further abuse of process in failing to provide "fair notice and warning" in these appellate proceedings. Such a proposed action by this Honorable Court cannot stand, and should not be permitted in a fair court of law.

The safe harbor provision in Tenn. R. Civ. P. Rule 11, provides an opportunity for **"the challenged paper, claim, defense, contention, allegation",** to be **"withdrawn or appropriately corrected."** Although most all of the assertions in Wife's Motion to Dismiss are baseless allegations, Plaintiff should be granted an opportunity to amend his Appellant's Brief to correct any technical defects as opposed to the great injustice and sanction of dismissing his appeal in its entirety and awarding attorney's fees and costs. Since Wife's counsel is asserting Rule 11.03 sanctions, Appellant should be granted an opportunity to amend his Appellant Brief pursuant to the "unambiguous and mandatory" safe harbor provisions in Rule 11.03.

Just as Rule 11's safe harbor provision provides an **"unambiguous and mandatory"** procedure in circuit court, and allows pleadings to be **"appropriately corrected"** so too should this safe harbor provision provide a safety net in appellate court. **Considering the fact that this**

9

**Honorable Court granted Wife's Motion for Extension of Time to file Appellee's Brief,**

**Husband should also receive the same fair treatment and be granted a Motion for Extension**

**of Time that allows Appellant an opportunity to amend,** so as to ensure proper justice is served

in this matter, as opposed to the harsh and unjust sanction of dismissing Husband's appeal without

any regard for justice.

In further support of this argument, Husband asks this Court to consider the Federal Rules

of Civil Procedure and federal case law precedence. In the case, *Kottmyer v. Maas, 436 F. 3d 684*

*- Court of Appeals, (6th Cir. 2006)*, the 6th District Court of Appeals stated;

> Under Federal Rule of Civil Procedure 15(a), a district court should freely
> grant a plaintiff leave to amend a complaint **"when justice so requires."**
> Fed. R. Civ. Pro. 15(a) (at 692).

In the Supreme Court case, Foman v. Davis, 371 US 178 - Supreme Court 1962, the

Supreme Court stated;

> **Rule 15 (a) declares that leave to amend "shall be freely given when
> justice so requires"; this mandate is to be heeded.** See generally, 3
> Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. **If the underlying
> facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim
> on the merits. In the absence of any apparent or declared reason—such
> as undue delay, bad faith or dilatory motive** on the part of the movant,
> repeated failure to cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.—**the leave sought should, as the
> rules require, be "freely given."** Of course, the grant or denial of an
> opportunity to amend is within the discretion of the District Court, **but
> outright refusal to grant the leave without any justifying reason
> appearing for the denial is not an exercise of discretion; it is merely
> abuse of that discretion and inconsistent with the spirit of the Federal
> Rules.** (at 182)

Appellant respectfully asserts to this Honorable Court that when justice so requires, leave

to amend should be freely given. Just as an initial complaint may not be properly pleaded in federal

10

court, and the federal courts should freely grant leave to amend so as to ensure justice is served, the same is true of a pro se Appellant's Brief. This is especially true given the safe harbor provision of Rule 11 and the fact that Wife's counsel violated the "mandatory and unambiguous" provisions of Rule 11.03. Further considering Wife's counsel's past and now present abuses of process, justice demands that Appellant be granted leave to amend and extension of time to amend to correct any alleged or minor defects in his Appellant's brief.

After extensive research regarding this issue, Plaintiff was not able to identify any supporting authority for his reasonable and rational arguments regarding Rule 11 sanctions of dismissal and attorney's fees and costs pertaining to Appellant Briefs, and violation of the rule's safe harbor provision in Appellate Courts. However, compliance with this rule is plainly established as **mandatory and unambiguous** in trial court's, and a litigant should have an opportunity to amend pleadings. Since Plaintiff is unable to identify supporting authority for Rule 11's safe harbor provision in appellate court proceedings, Plaintiff asserts this is a matter of *First Impression* for this Court to consider and issue opinion on.

As a final note, Husband directs the Court's attention to the case Ewan v. Hardison Law Firm, 465 SW 3d 124 - Tenn: Court of Appeals 2014. In Ewan v. Hardison, the Court of Appeals stated:

> As discussed above, Mr. Martin's request for sanctions had no hope of succeeding due to the Defendants' failure to comply with Rule 11's safe harbor provision. (at 141)

Just as the motion to sanction in the Ewan case had "no hope of succeeding", so too should Wife's counsel's motion also have no hope of succeeding due its the same failure to comply with the Rule 11 safe harbor provision.

11

Although no further discussion should be necessary, Husband will now address why his appeal should not be dismissed, and why the assertions in Wife's counsel Motion to Dismiss and are false and misleading why Wife's Motion to Dismiss and sanctions of dismissal, attorney's fees, and costs should be denied.

## IV. ARGUMENT - SUSPENSION OF RULES FOR GOOD CAUSE

Husband never desired to represent himself as pro se, and according to the law of the land Husband should never have been forced to represent himself (See Appellant's Brief. p. 5, 116). Accordingly, if somehow this court finds any validity whatsoever in Wife's Motion to Dismiss, Husband begs the Court's leniency and latitude in presentation and content of his Appellant's Brief. Since Husband is involuntary pro se, Husband asserts it would be a very reasonable accommodation for this court to either allow Husbands Appellant's Brief to continue on its merits, or to allow Husband an opportunity to amend as opposed to the harsh sanctions of dismissal and awarding of attorney's fees and costs.

Supreme Court Rule 10, Canon 2, Rule 2.2 Impartiality and Fairness, Comment [4] states: "*It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard.*"

Since this Court dismissed Husband's Petition for Recusal Appeal (M2016-01731-COA-T10B-CV) stating; "*...husband has filed a Tenn. R. App. P. 3 notice of appeal, Appeal No. M2016-01765-COA-R3-CV.* **Thus the Tenn. R. App. P. 3 appeal is now the proper method to appeal the recusal order.**", it would be a great injustice, to also dismiss Husband's Rule 3 Appeal as of Right based on false assertions and baseless minute technicality.

Since this court recently issued order in this matter on February 15, 2017, **ordering Husband to post an additional $1,000 cash bond and only allowed Husband fourteen (14)**

**days in which to post said cash bond**, it would also serve great injustice upon Husband to dismiss Husband's Rule 3 Appeal as of Right.

**Further considering Wife's counsel's current abuse of process** and fraudulent awarding of attorney fees to her client, in plain violation of Tenn. R. Civ. P. Rule 11, and against the trial court judge's instructions in the underlying litigation to these proceedings, and her further failure to adhere the safe harbor provision in Rule 11.03, **to dismiss Husband's Rule 3 Appeal based on false assertions and baseless minute technicality would be the gravest of injustices**. (See Appellant's Brief p. 135 – 141).

Throughout these proceedings, Husband has only desired to be heard. Husband diligently strived to adhere to all the Rules of Appellate Procedure, and Court of Appeals Rules. In preparing his Appellant's Brief, Husband strived to present his facts and arguments in a respectful, concise, and easy to follow format. In support of his arguments of law, Husband cited numerous supporting authorities. Appellant contends that he did just that, and he did adhere to all the Rules of Appellate Procedure, Court of Appeals Rules, as well as rules of legal decorum and presented well organized facts and arguments with complete and accurate reference to the record in as respectful a manner as possible under the circumstances.

Considering Wife's counsel's (1) failure to provide "notice and fair warning", (2) intentional false statements, (3) misrepresentations of facts, (4) mischaracterizations of Appellant's Brief which facts are evidenced below, it seems only fair and just to grant Husband a little leniency and latitude in the content and presentation of this Appellant's brief.

Husband begs this Honorable Court to deny Wife's meritless and misleading motion to dismiss, that was tendered in violation of Rule 11.03, and to proceed to hear this matter and consider Husband's Appellant Brief on its merits, the facts, and the evidence, and properly allow

justice to issue forth according to the law of the land, or to allow Husband an opportunity to amend as opposed to the harsh and unjust sanctions of dismissal and awarding of attorney's fees and costs.

All of the reasons stated above are more than very good cause justifying this Court to suspend any harmless and unintentional failures by Husband to satisfy rules in his Appellant's brief. Surely this Court must agree.

## V. ARGUMENT – HUSBAND DID NOT FAIL TO ATTACH A RULE 7 TABLE

Wife's memorandum supporting her motion to dismiss, makes the false statement "Husband failed to attach a Rule 7 table to his brief and has therefore waived all issues relating to Rule 7's requirements" which is not true. Husband did include a Rule 7 table, a fact which Wife admits in her memorandum supporting her motion to dismiss, in plain contradiction of her statement that he did not. Husband in fact did include a Rule 7 table as Wife agrees (Brief of Appellant 155-156).

Although Rule 7 requires a citation to the record where each party's evidence can be found, Husband did not technically comply with this part of rule because he **could not comply**, since many of the marital assets are not evidenced in the record. The marital assets are not all listed in the record, because Husband was involuntary pro se, and as such, he and did not know that he should have presented evidence to the trial court. Husband contends, as argued and evidenced in his Appellant Brief, that he never should have been forced to represent himself involuntarily. The evidence proving this fact is detailed in Appellant's Brief (See Brief of Appellant 10 – 15 and 121 - 135). The primary basis of Husband's appeal is that he should be granted a new hearing because he was forced to represent himself involuntarily, he was forced to present his case before a biased judge that failed to properly recuse, and because of numerous violations of due process (primarily violation of a right to be heard).

14

The rule 7 table presented to this court (Brief of Appellant 155-156) is a general representation of how the marital assets should have been divided, had Appellant received a fair and impartial hearing. Husband should not be harshly sanctioned by dismissal or awarding of attorney's fees and costs for failure to comply with a rule that was impossible for him to comply with. Husband has not voluntarily waived any issues stated in his appeal, as Wife erroneously suggests, based on failure to comply with a rule he could not comply with.

Also, pursuant to the Rules of Appellate Procedure, Rule 2, this Honorable Court has the authority for good cause to suspend Rule 7 requirements, as well as all other Rules. Since this Court has stated it is not biased against Husband in response to Husband's Motion for appellate judge recusal, and because this is a rather harmless error, easily rectified by permitting Appellant to amend his brief (for the assets that are evidenced in the record), why would this Court not desire to provide a pro se litigant a little leniency and allow him to amend? Surely in the interest of justice, this would be a reasonable accommodation to a pro se litigant as opposed the harsh sanction of dismissal. This is even more true considering Husband is involuntary pro se, an unfortunate circumstance that never should have occurred.

## VI. ARGUMENT – HUSBAND DID NOT CIRCUMVENT RULE 27(a)(6)

Wife makes the false and misleading assertion that Husband circumvented Rule 27(a)(6) and included arguments in his statement of facts which is not true. Wife makes this claim generally citing Appellant's Brief and then includes EXHIBIT A which is pages 5 – 7 of Appellant's Brief. Examination of pages 5 – 7 of Appellant's Brief shows that those pages do not include arguments. To define "arguments" Husband respectfully suggests the Court should look to the Rules of Appellate Procedure, Rule 27(a)(7) which states:

15

(7) An argument, which may be preceded by a summary of argument, setting forth: (A) **the contentions of the appellant with respect to the issues presented**, and the **reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record** (which may be quoted verbatim) relied on; and (B) **for each issue, a concise statement of the applicable standard of review** (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

Review of Wife's "Exhibit A" attached to her memorandum supporting her motion to dismiss shows that absolutely none of these elements are present and Wife's counsels assertion is false and without any merit whatsoever. "Exhibit A" does not include any contentions, does not include any reasons why those contentions require appellate relief, does not cite any supporting authorities and does not include any applicable standard of review. Therefore, one can only conclude, that Husband's Statements of Fact do not include any "arguments" as defined in the Appellate Rules of Procedure.

Wife's counsel has plainly misrepresented and mischaracterized Husband's statement of facts in a vain and misguided effort to deceive this Honorable Court. The Court should be so offended.

## VII. ARGUMENT – HUSBAND'S BRIEF DID COMPLY WITH TENN. R. APP. P. RULE 27 AND COURT OF APPEALS RULE 6(b)

Wife's counsel further makes the false assertion that Husband did not comply with Tenn. R. App. P. Rule 27 or Court of Appeals Rule 6(b) in that it "repeatedly fails to cite the specific page or pages of the record…" which is a patently false statement. In Husband's Statement of Facts section, Husband referenced the record with the following record citations;

*(TR Vol III p. 302)*
*(TR Vol IV p. 418)*
*(TR Vol IV p. 404)*
*(TR Vol IV p. 404 – 405 ¶¶ 1 – 2)*
*(TR Vol IV p. 405 ¶¶ 3 – 6)*
*(TR Vol IV P. 405-406 ¶¶ 7 – 8)*

*(TR Vol IV p. 406 ¶¶ 9 – 15)*
*(Supp Vol I P. 1 – 8)*
*(Vol XXIX Sept. 15, 2015 Tr. p. 12 – 13) (Vol XXXVIII Tr. Aug 8, 2016 pp. 3 – 18)*
*(VOL XXVII Tr. March 10, 2015 p. 218-219)*

16

(*VOL XXVII March 10, 2015 Tr. P. 181 –*
*182*)
(*VOL XXVII March 10, 2015 Tr. P. 181 –*
*182*)
(*VOL XXXV May 3, 2016 v. 3 Tr. p. 362*)
(*VOL XXVII March 10, 2015 Tr. p. 203*)
(*VOL XXVII March 10, 2015 Tr. p. 217 –*
*218*)
 (*TR Vol XXVI p. 3358 ¶ 6 a.*)
 (*TR Vol XXVI p. 3358 ¶¶ 9 – 40*)
(TR Vol XXVI p. 3356)
(*TR Vol XXVI p. 3375 ¶ 4*)
(*TR Vol XXVI 3377 ¶ 14*)
(*TR Vol XXVI 3389*)
(*TR Vol I, 35 – 43*)
(*EX Vol I 073*)
(*TR Vol II p. 208*)
(*VOL XXVII March 10, 2015 Tr. p. 211*)
(*TR Vol I p. 14 - 18*)
(*VOL XXVII Tr. p. 218 – 219*)
(*TR Vol I p. 60 - 64*)
(*TR Vol XXVI p. 3358 ¶ 8*)
(*TR Vol XXVI p. 3358 ¶ 6*)
(*TR Vol XXVI p. 3356*)
(*TR Vol XXV 3331 – 3338*)
(*VOL XXIX September 15, 2015 Tr. p. 4 – 6*)
(*VOL XXXII February 9, 2016 Tr. p. 9-11*)
(*VOL XXXII February 9, 2016 Tr. p. 3-4*)
(*TR Vol IX p. 1053*)
(*TR Vol IX p. 1048 - 1069*)
(*VOL XXXII February 9, 2016 Tr. p. 11-14*)
(*VOL XXXII February 9, 2016 Tr. p. 15*)
(*VOL XXXII February 9, 2016 Tr. p. 11-12*)
(*VOL XXXII February 9, 2016 Tr. p. 16*)
(*VOL XXXII February 9, 2016 Tr. p. 13*)
(*VOL XXXII February 9, 2016 Tr. p. 15*)
(*VOL XXXII February 9, 2016 Tr. p. 14*)
(*VOL XXXII February 9, 2016 Tr. p. 13 - 14*)
(*VOL XXXII February 9, 2016 Tr. p. 15*)
(*VOL XXIX Sept. 15, 2015 Tr. P. 4-5*)
(*VOL XXXII February 9, 2016 Tr. p. 16*)
(*VOL XXXIV May 2, 2016 Tr. p. 247 – 249*)
(*VOL* XXXV May 3, 2015 Tr. p. 357 – 360)
(*VOL XXXV May 3, 2016 Tr. P. 359*)
(VOL XXXVII March 10, 2015 Tr. p. 205)
(*VOL XXX October 27, 2015 Tr. p. 7*)

(*VOL XXX October 27, 2015 Tr. p. 5*)
(*VOL XXXIII May 2, 2016 Tr.  p. 12 – 14*)
(*TR Vol XXV 3326*)
(*VOL XXX October 27, 2015 Tr. p. 6*)
(*TR Vol XXV p. 3335*)
(*Id p. 2-5*)
(*Id p. 1*)
(*Id p. 2*)
(TR Vol XXVI p. 3389)
(*TR Vol XXVI p. 3377 ¶ 11*)
(*VOL XXVII Tr. March 10, 2015 p. 82*)
(*VOL XXVII Tr. March 10, 2015 p. 83*)
(*TR Vol. I p. 35 – 43*)
(*EX Vol I 073*)
(*VOL XXVII Tr. March 10, 2015 p. 86*)
(*VOL XXVII March 10, 2015 Tr. p. 176*)
(*VOL XXVII Tr. March 10, 2015 p. 161 -*
*162*)
(*VOL XXVII March 10, 2015 Tr. p. 182*)
(*VOL XXVII March 10, 2015 Tr. p. 177 -*
*178*)
(*VOL XXVII March 10, 2015 Tr. p. 213*)
(*VOL XXVII March 10, 2015 Tr. p. 211*)
(*VOL XXVII March 10, 2015 Tr. p. 215*)
(*VOL XXVII March 10, 2015 Tr. p. 214*)
(*VOL XXVII March 10, 2015 Tr. p. 217*)
(*VOL XXVII March 10, 2015 Tr. p. 203*)
(*VOL XXVII March 10, 2015 Tr. p. 204*)
(*VOL XXVII March 10, 2015 Tr. p. 205*)
(*VOL XXVII March 10, 2015 Tr. p. 218 -*
*219*)
(*VOL XXVII March 10, 2015 Tr. p. 92*)
(*VOL XXVII March 10, 2015 Tr. p. 217 -*
*218*)
(TR Vol II p. 196 ¶8)
(*VOL XXVII March 10, 2015 Tr. p. 179 -*
*180*)
(*VOL XXVII March 10, 2015 Tr. p. 177*)
(*VOL XXVII March 10, 2015 Tr. p. 210*)
(*VOL XXVII March 10, 2015 Tr. p. 181*)
(*VOL XXIX September 15 Tr. p. 4 – 6*)
(TR Vol IV p. 418)
(*TR Vol IV p. 404*)
(*VOL XXXV May 3, 2016 Tr. p. 357 – 360*)
(*VOL XXIX September 15, 2015 Tr. p. 4 – 5*)
(*VOL XXXV May 3, 2016 Tr. p. 360 – 369*)

( *VOL XXXIV May 2, 2016 Tr. P. 247 – 249*)
(*TR Vol XXV p. 3338*)
(*VOL XXXVI May 3, 2015 Tr. v. 4 p. 466 – 467*)
(*VOL XXXVI May 3, 2015 Tr. v. 4 p. 468*)
(TR Vol XXI p.2641 - 2642)
(*TR Vol XXV p. 3224 - 3226*)
(*VOL XXXIII Vol 1, May 2, 2016 Tr. p. 136 – 137*)
(*VOL XXXVI May 3, 2016 Tr. v. 4 p. 466 – 467*)
(*VOL XXXV May 3, 2016 Tr. v. 3 p. 401*)
(*TR Vol IV p. 418 - 419*)
(*Id p. 2*)
(*TR Vol III p. 286 – 301*)
(*TR Vol III p. 302*)
(*August* 8, 2016 Tr. p. 7 – 9)
(*TR Vol XI p. 1255 - 1258*)
(*VOL XXXV May 3, 2016 Tr. v. 3 p. 395 – 400*)
(*TR Vol XXXIII May 2, 2016 Tr p. 6*)
(*TR Vol XI p. 1256 - 1257*)
(*VOL XXVII March 10, 2015 Tr. p. 185 - 186*)
(*VOL XXVII March 10, 2015 Tr. p. 61 – 71*)
(*EX Vol I p. 1*)
(*VOL XXIX September 15, 2015 Tr. p. 6 – 8*)

(*VOL XXVII March 10, 2015 Tr. p. 186 - 187*)
(*EX Vol II p. 244 - 251* and *EX Vol III p. 25*)
(*TR Vol XXV 3326 - 3338*)
(EX Vol I p. 21 – 31)
(*TR Vol XXV 3330 - 3331*)
(*VOL XXXIII Vol 1, May 2, 2016 Tr. p. 132 – 135*)
(*VOL XXXIII Vol 1, May 2, 2016 Tr. p. 137 – 139*)
(*VOL XXXIII Vol 1, May 2, 2016 Tr. p. 135 – 136*)
(*VOL XXVII March 10, 2015 Tr. p. 217 – 218*)
(*EX Vol 1 p. 33*)
(*EX Vol 1 p. 49*)
(*VOL XXXV Vol 3, May 3, 2016 Tr. p. 311 – 333*)

(*VOL XXVII March 10, 2015 Tr. p. 75 – 78*)
(*VOL XXVII March 10, 2015 Tr. p. 73 – 75*)
(*EX Vol III p. 522*)
(*TR Vol XXV p. 3337 - 3338*)
(*TR Vol XXIV 3213*)
(*VOL XXXIV May 2, 2016 Tr. p. 214 – 231*)
(*TR Vol XX p. 2581*)
(*VOL XXXIII May 2, 2016 Tr. p. 14*)
(*VOL XXXIV v. 2, May 2, 2016 Tr. p. 237 – 239*)
(*TR Vol XX p. 2581*)
(*EX Vol III p. 582*)
(*EX Vol III p. 582*)
(*EX Vol III p. 581*)
(*EX Vol III p. 581*)
(*VOL XXXIII v. 1, May 2, 2016 Tr. p. 161 - 162*)
(*EX Vol III p. 581*)
(*VOL XXXIV v. 2, May 2, 2016 Tr. p. 237 - 239*)
(*EX Vol III p. 582*)
(*VOL XXXIII*. May 2, 2016 Tr. p. 7 – 12)
(*EX Vol III p. 581*)
(*EX Vol III p. 582*)
(*EX Vol III p. 581*)
(*EX Vol III p. 581*)
(*EX Vol III p. 581*)
(*VOL XXXV v. 3, May 3, 2016 Tr. p. 336*)
(*EX Vol III p. 581*)
(*VOL XXXV v. 3, May 3, 2016 Tr. p. 349 - 350*)
(*VOL XXXV v. 3, May 3, 2016 Tr. p. 350*)
(*VOL XXXIV v. 2, May 2, 2016 Tr. p. 239 – 240*) (*VOL XXXV May 3, 2016 Tr. v. 3 p. 363 – 365*) (*VOL XXVII March 10, 2015 Tr. p. 214 - 215*)
(*VOL XXVII March 10, 2015 Tr. p. 205*)
(*VOL XXIX September 15, 2015 Tr. p. 10 – 13*) (*VOL XXIX September 15, 2015 Tr. p. 9 – 10*)
(*VOL XXVII March 10, 2015 Tr. p. 72 – 78*)
(*VOL XXVII March 10, 2015 Tr. p. 61 – 72*)
(*VOL XXVII March 10, 2015 Tr. P 204*)
(*VOL XXVII March 10, 2015 Tr. p. 217 – 218*)
(*VOL XXXV May 3, 2016 Tr. p. 357 – 358*)

18

*(VOL XXVII March 10, 2015 Tr. p 205)*     *(VOL XXXV May 3, 2016 Tr. p. 360 – 361)*
*(TR Vol XXI p. 2745 – 2747)*

A quick review of Husband's Statement of Facts section by this Honorable Court will show, that Husband did in fact include numerous record citation meticulously and painstakingly included in his brief as proven above. The above record citations are the actual citations included in Husband's Statement of Facts section. The count of these citations is approximately one-hundred and seventy-one individual citations of the record. Since Appellant is a Certified Public Accountant, Appellant is very meticulous and exact in his work.

Considering that Husband is pro se counsel, and as such is not allowed to take the record offsite without permission by this Honorable Court, and because Husband painstakingly reviewed the record on-site, Plaintiff is extremely offended by Wife's counsel's false statement and misrepresentation of facts that Appellant did not cite the record. This Court too should be so offended.

Husband would further point out to this Honorable Court, that he included the actual text from the record as well as the citations supporting his statements of fact for the convenience of this Honorable Court. Appellant asserts that this Honorable Court has probably never reviewed a better cited statement of facts section, by either pro se or a legal professional, despite the long and distinguished careers of the judges of this Honorable Court.

In Husband's Arguments Section, Husband properly supported his arguments by citing the record and the corresponding pages of Appellant's Brief, which as stated above, meticulously cited the record in addition to including the actual text of the citation. Husband made this painstaking effort for the benefit and convenience of this Court and Husband asserts this format provides this Honorable Court with a very convenient method of validating arguments and facts.

To support Wife's false assertion that Husband failed to cite the record in his Arguments section, **Wife takes excerpts of Husband's Brief out of context.** Wife included the following misleading excerpt from Husband's Brief and falsely contends Husband failed to cite the record:

> Since Husband was erroneously denied income from the business during pendency by the trial court judge and denied income from the business fraudulently by Wife, Husband asked the court to reconvene his hearing on his Petition for Contempt, which was denied with the simple statement, the court had "already ruled" on the matter. For this reason, Husband was denied due process (argued further in the below section SUPPORT & COMPENSATION ERRONEOUSLY DENIED DURING PENDENCY) further justifying Husband's motion to recuse. (Appellant's Brief 115)

The above complete section pertaining to the excerpt Wife's counsel presented out of context, is located at page 113 through 115 of Appellant's Brief. As emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation.** Appellant presented citations in this manner as he believes and asserts, it is a very convenient method for the court to verify the record cited.

In proper context, Husband did cite the record as evidenced below:

> The hearing on Husband's Petition for Contempt or in the alternative Pendente Lite support was heard on March 10, 2015. The Circuit Court Judge stated he would rule on March 23, 2015 or thereabout (*VOL XXVII Tr. March 10, 2015 p. 218-219*). The Circuit Court Judge knew that Wife maliciously and fraudulently terminated Husband's employment on December 17, 2014 **(See p. 39 above)**. The Circuit Court Judge knew Husband was financially destitute **(See p. 12 - 13 above)**. The Circuit Court Judge knew Husband significantly contributed to the preservation and appreciation of the business **(See page 70-77 above)**. The Circuit Court Judge knew Wife had confiscated Husband's stock certificate **(See p. 38 above)**. The Circuit Court Judge knew Wife had cancelled Husband's bank and credit cards and confiscated his sole source of transportation **(See p. 38 above)**. The Circuit Court Judge heard undisputed testimony that Wife herself stated Husband owned one-half of the business **(See p. 75 - 76 above)**. The Circuit Court Judge stated "And so what's happened is we've had an **utter and complete commingling of the personal life and the business life...**", and in so stating, recognized the doctrine of commingling was applicable in this case **(See p. 45 above)**.

20

Tennessee statutory law states marital property **includes income** from property. Specifically, Tenn. Code Ann. § 36-4-121(b)(B) (i) states;

"Marital property" includes **income from**, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) **if each party substantially contributed to its preservation and appreciation;** (Appellant's Brief 113 - 114)

**Husband would further point out to this Honorable Court, that Wife's counsel did not reference the pages of Appellant's brief in her memorandum because she knew that her reference to Appellant's Brief was taken out of context, and was a false and fraudulent representation of Appellant's Brief.** Husband complains to this Honorable Court that Wife's counsel's false assertions, that Husband failed to cite the record is offensive, fraudulent, and an insult to the judiciary, this Honorable Court, and to the entire judicial process. Quite frankly Husband is appalled at such behavior, and so too should this Court be offended.

The same is true of all of Wife's counsel's references to Appellant's Brief. They are all taken out of context and in each instance, Wife fails to refer to the page numbers of Appellant's Brief in a clear and misguided attempt to deceive this honorable Court.

Next wife references the following excerpt from Appellant's brief also taken out of context and also property cited by Appellant. Again, as emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation**. Appellant presented citations in this manner as he believes and asserts, it is a very convenient method for the court to verify the record cited. Wife presented the following excerpt from Appellant's Brief out of context as follows:

The Circuit Court Judge knew that Wife can afford a legal team of two attorneys and a paralegal. The Circuit Court Judge knew Husband's counsel withdrew for non-payment. (Appellant's Brief 116)

In proper context, Husband did cite the record properly as evidenced in the complete context of Husband's statement as evidenced below:

> The hearing on Husband's Petition for Contempt or in the alternative Pendente Lite support was heard on March 10, 2015. The Circuit Court Judge stated he would rule on March 23, 2015 or thereabout (***VOL XXVII Tr. March 10, 2015 p. 218-219***). The Circuit Court Judge knew that Wife maliciously and fraudulently terminated Husband's employment on December 17, 2014 **(See p. 39 above)**. The Circuit Court Judge knew Husband was financially destitute **(See p. 12 - 13 above)**. The Circuit Court Judge knew Husband significantly contributed to the preservation and appreciation of the business **(See page 70-77 above)**. The Circuit Court Judge knew Wife had confiscated Husband's stock certificate **(See p. 38 above)**. The Circuit Court Judge knew Wife had cancelled Husband's bank and credit cards and confiscated his sole source of transportation **(See p. 38 above)**. The Circuit Court Judge heard undisputed testimony that Wife herself stated Husband owned one-half of the business **(See p. 75 - 76 above)**. The Circuit Court Judge stated "And so what's happened is we've had an **utter and complete commingling of the personal life and the business life…**", and in so stating, recognized the doctrine of commingling was applicable in this case (See p. 45 above). (Appellant's Brief 113)

The above complete section pertaining to the excerpt Wife's counsel presented out of context, is located at page 113 through 117 of Appellant's Brief. Next wife references the following excerpt from Appellant's brief also taken out of context and also property cited by Appellant.

> Because of the bias suffered by Husband throughout proceedings, Husband felt as though he was being treated as a criminal by the Circuit Court Judge, while the facts show that Husband was guilty of no wrongdoing in the marriage, Husband was completely respectful to the Circuit Court Judge throughout proceedings, and Husband's testimony was beyond reproach. Husband even remained respectful to the Court even when his right of due process was plainly being violated. (Appellant's Brief 118)

Again, as emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation.** Appellant presented citations in this

manner as he believes and asserts, it is a very convenient method for the court to verify the record cited.

In proper context, Husband did cite the record properly as evidenced in the complete context of Husband's statement as evidenced below:

> **Husband asserts that his request for recusal in his Motion to Alter was a properly filed and stated, second motion to recuse (See p. 9 – 10 above).** As evidenced above, the Circuit Court Judge repeatedly denied Husband's right to be heard and right of due process which is a right guaranteed in our U.S. Const. **(See p. 13 – 55 above).** As evidenced above and further argued below, the Circuit Court Judge erroneously quashed Husband's subpoena for documents that should have been provided in discovery while also denying his right to be heard. As evidenced above, the Circuit Court Judge appeared to manipulate proceedings so that Husband could not introduce evidence and testimony proving Wife's violation of statutory injunction. As evidenced above, the Circuit Court Judge repeatedly issued rulings before and without allowing introduction of evidence and without hearing testimony. (Appellant's Brief 117)

The above complete section pertaining to the excerpt Wife's counsel presented out of context, is located at page 113 through 119 of Appellant's Brief. Next wife references the following excerpt from Appellant's brief also taken out of context and also property cited by Appellant.

> Husband twice asked the court to reconvene on this matter. The first time Husband requested to reconvene the hearing, was on August 7, 2015. The Circuit Court Judge simply denied Husband's motion to reconvene simply stating he had "already ruled". Husband was not allowed to make any arguments supporting his motion. (Appellant's Brief 126)

Again, as emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation.** Appellant presented citations in this manner as he believes and asserts, it is a very convenient method for the court to verify the record cited.

23

In proper context, Husband did cite the record properly as evidenced in more complete context of Husband's statement as evidenced below:

> On September 15, 2015, Husband asked the court a second time to reconvene, on the grounds that Wife perjured herself and was dissipating marital assets. The Court allowed Husband a brief introductory statement, and after a response by Wife's counsel that falsely mischaracterized facts, Husband was flatly denied an opportunity to respond in gross violation of his right to be heard and constitutionally guaranteed right of due process. **(See p. 15 – 19 above).** (Appellant's Brief 126)

The above complete section pertaining to the excerpt Wife's counsel presented out of context, is located at page 126 through 131 of Appellant's Brief. Next wife references the following excerpt from Appellant's brief also taken out of context and also property cited by Appellant.

> In this case, Husband not only participated in creating the product and patent application, **Husband was the primary driver in creating the product and creating a market for the product.** (Appellant's Brief 134)

Again, as emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation.** Appellant presented citations in this manner as he believes and asserts, it is a very convenient method for the court to verify the record cited.

In proper context, Husband did cite the record properly as evidenced in more complete context of Husband's statement as evidenced below:

> The division of this plainly marital asset was not disputed by either spouse in Maloy v Maloy, and the Court of Appeals affirmed the trial court's division of this intellectual property and contingent asset. This case further affirms that Husband should not have been denied his rightful share of income from Sweet Wise, Inc. during pendency because, as the facts show, the business derives substantially all of its income from the sale of products

pertaining to the non-provisional patent application (**see p. 14 and 93 above**). (Appellant's Brief 133)

The above complete section pertaining to the excerpt Wife's counsel presented out of context, is located at page 132 through 135 of Appellant's Brief. Next wife references the following excerpt from Appellant's brief also taken out of context and also property cited by Appellant.

> The undisputed facts, and Wife's own evidence show that the value in the business increased in value from a beginning value of $0.00 to a valuation of $350,000 under Husband's management. (Appellant's Brief 153)

Again, as emphasized in bold below, in addition to record citations, Appellant also references pages of the Appellant's Brief itself. **Those pages of the Appellant Brief contain the actual text of the record as well as the record citation.** Appellant presented citations in this manner as he believes and asserts, it is a very convenient method for the court to verify the record cited.

In proper context, Husband did cite the record properly as evidenced in more complete context of Husband's statement as evidenced below:

> The undisputed facts, and Wife's own evidence show that the value in the business increased in value from a beginning value of $0.00 to a valuation of $350,000 under Husband's management. The beginning value of $0.00 is easily determined through common sense reasoning. As evidenced above (**See p. 77 above**), Wife was only earning a below poverty income from the business of $11,500. Wife was the sole employee of the business and only able to pay herself a below poverty income because the business was not profitable.
> It must be obvious to any person, educated or not, no person would pay any amount of money to purchase a business that is not profitable and can pay only a below poverty income. Either the buyer would have to work a 40-hour week earning only $11,500 annually, or the buyer would have to hire an employee run the store and business at more than $11,500, since no one would work for a below poverty income. This would then create additional loss for the business. This is just plain common sense and doesn't require a valuation specialist. Wife's interrogatories entered into evidence (**EX Vol III p. 532**) prove this fact. In Wife's interrogatories, she admits she was

25

living of her line of equity because the business could not afford to pay her. No person in their right mind would pay any amount of money for a job and business that only pays $11,500.

Wife goes on in her memorandum to suggest that in Husband referencing pages of his Appellant Brief as citation, he is not citing the record but is citing his Brief instead which is not true. Husband puts question to this Honorable Court; "*if Husband refers to a page in his brief that contains the actual text of the record, as well as the citation of the record, is that not citing the record*?" Of course, this is proper citation of record and of course Husband did not fail to cite the record. This Court should be offended at Wife's false assertion. **Husband presented citations in this manner for the convenience of this Honorable Court and given the fair chance of this Court actually opening and looking at Husband's Arguments section, Husband is certain this Honorable Court would find this method of citation a very convenient method of verifying the facts**. Husband begs this Honorable Court to take a look at Appellant's Arguments Section and this Honorable Court will know Husband's assertions are true.

Assuming Husband missed a citation here or there, which he did not, pursuant to the Rules of Appellate Procedure, Rule 2, this Honorable Court has the authority for good cause to suspend rules. Since Husband meticulously included approximately one-hundred and seventy -one record citations, in addition to a similar count in this Arguments Section, surely this Court can show a little leniency and compassion for a pro se litigant. Furthermore, considering all the false assertions, abuses of process, and other issues stated above, surely this Honorable Court can suspend the rules pertaining to some minor and mischaracterized alleged error.

Appellant would further point out to this Honorable Court, that Wife cited cases that were dismissed because they were without citation of supporting authority, and maliciously suggests the same is true regarding Husband's Appellant's Brief. A quick glance at the Table of Authorities

in Appellant's Brief (p. iii – v), evidences that Husband cited approximately forty-six Supreme Court and Court of Appeals opinions and eighteen statutes and rules. Obviously Husband's contentions are well supported by supporting authorities.

## VIII. ARGUMENT – HUSBAND'S BRIEF DID COMPLY WITH RULE 27(a)(7)(A)

Wife falsely contends and mischaracterizes the facts of citations and arguments in Husband's Appellant's Brief. Wife falsely contends that Rule 37.02 and Rule 34A.02 of the Tenn. R. Civ. P. have nothing to do with distribution of marital assets which is not true. Husband further points out that Wife's counsel yet again fails to provide a correct page reference to Appellant's Brief in an effort to deceive this Honorable Court.

In proper context regarding Husband's reference to Rule 37.02 and 34A.02, which are rules as this Court knows, that pertain to spoliation of evidence and sanction for spoliation. In this case, Wife plainly admitted to destroying Husband's stock certificate in her own pre-trial brief. And of course, as this Court knows, when evidence is destroyed, there is a presumption of guilt. Since the evidence destroyed was Husband's stock certificate, Wife should have been sanctioned under Rules 37.02 and 34A.02 and Husband argues he should have received equitable distribution of that marital asset known as Sweet Wise, Inc. a Tennessee Corporation.

Furthermore, in Appellant's Brief, Husband cited numerous supporting authorities in other sections of his Brief pertaining to equitable distribution of assets as follows;

ERROR IN IGNORING DOCTRINE OF COMMINGLING: Stmt. of Issues No. 9 beginning at page 150
WIFE NOT ORDERED TO QUITCLAIM: Stmt. of Issues No. 2 beginning at page 119
Error in denying Husband's income during pendency beginning at page 132

Appellant is further offended by Wife's counsel's mischaracterization and belittling of Husband's Appellant's Brief.

Case 3:17-cv-00020   Document 32-1   Filed 03/16/17   Page 223 of 241 PageID #: 518

## IX. ARGUMENT – HUSBAND'S BRIEF DID COMPLY WITH RULE 27(a)

Another most disturbing false contention by Wife's counsel plainly stated in her memorandum is that "*Here, **Husband makes no mention anywhere** in his Brief of the applicable standards of review for this Court to review the substance of his appeal*" which is a patently false statement knowingly made by Wife's counsel in an attempt to deceive this Honorable Court. The fact Wife's counsel knew this to be a false statement is obvious when considering the following facts.

Wife's counsel tendered a motion to sanction, which included not only attorney's fees and costs but the harshest sanction of all, dismissal. Wife's counsel tendered this motion in plain violation of Rule 11.03 which includes a safe harbor provision requiring "notice and fair warning" as discussed at length above. Wife's memorandum as evidenced above, contains obvious false statements and misrepresentations of fact.

Unlike Wife's counsel, Husband is ethically compelled to comply with rules of procedure and legal decorum. Pursuant to Rule 11.03, unlike Wife's counsel, Husband provided "*notice and fair warning*" to Wife's counsel that he intended to file a motion to sanction as Wife's memorandum contained false statements and misrepresentations of facts. On March 4, 2017 at 11:23AM, Husband emailed Wife's counsel a copy of "Plaintiff's Motion to Stay Proceedings Pending Wife's Counsel's Response to Plaintiff's Motion to Sanction." Husband's email to Wife's counsel is attached as **EXHIBIT 1**. Also attached is a copy of the motion Husband sent to Wife's counsel attached as **EXHIBIT 2**.

At 2:22PM on the same day, March 4, 2017, Wife's counsel emailed **EXHIBIT 3** Husband a copy of a new filing in this Appellate Court titled "*Correction to Memorandum In Support of Appellee's Motion to Dismiss Appeal*" **EXHIBIT 4**. In this "correction", Wife's counsel admits

Husband did include applicable standards of review and stated, "*Wife inadvertently overlooked and omitted this statement from her March 3, 2017 Memorandum*"

Considering the fact that Husband provided "notice and fair warning", an "unambiguous and mandatory" safe harbor provision of Rule 11.03, despite Wife's counsel's repeated failure to comply with that same rule. Considering Husband's and Wife's counsel's email correspondence occurred on a Saturday while her memorandum had just been filed the day before on Friday March 3, 2017. Considering that Wife's counsel responded with a "correction" after only 3 hour's time. Further considering her statement in her email, "please find attached a pleading that has been filed with the Court of Appeals". Considering the length and content of Appellant's Brief, one must conclude that Wife's counsel had knowledge of the false statement made that Husband's Brief did not contain an applicable standard of review and knowingly made a false statement to this Honorable Court and that she only "corrected" her false statement because of Husband's "notice and fair warning"

How and why else would Wife's counsel 'find' an "overlooked" error and prepare and file with the court a "correction" in a short three hour time window. Considering all of Wife's counsel's false representations and mischaracterizations evidenced and discussed above, this is the only fair conclusion one can draw.

## X. ARGUMENT – HUSBAND'S BRIEF DID NOT SHOW DISRESPECT OR CONTEMPT FOR THE TRAIL COURT

Wife further falsely asserts that Husband's Brief contains language showing disrespect or contempt for the trial court which Husband asserts is not true. Husband made every effort to maintain respect of the Circuit Court Judge, while at the same time stating facts evidencing the Circuit Court Judge's bias or appearance of bias against Husband. Husband intended no disrespect whatsoever toward the Circuit Court Judge out respect for the Circuit Court Judge's position as a

member of the judiciary. If this Court finds Appellant's fair choice of words as disrespectful, Husband begs the Court's guidance on how he could have better stated facts and begs the Court's leave to amend his Appellant's Brief.

In the case Bailey v. Board of Professional Responsibility, Tenn: Supreme Court 2014, the Supreme Court discusses disrespectful language as follows;

> Even if an attorney believes that the court has issued an erroneous ruling, zealous representation of a client "`never justifies the use of disrespectful, **unprofessional or indecorous language** to the court.
>
> Indeed, even Mr. Bailey's later testimony was markedly disrespectful toward Judge Williams as well as the Hearing Panel itself, insofar as he continued to describe her rulings as "**crazy**" and the disciplinary hearing as "**nonsense**".

Husband's choice of words describing the conduct of the Circuit Court Judge can in no way be characterized as unprofessional or indecorous. Husband never used disrespectful adjectives such as "crazy" or "nonsense" and he strictly avoided using such disrespectful words.

In the case, State v. Turner, 914 SW 2d 951 - Tenn: Court of Criminal Appeals 1995, an attorney had been held in contempt for unreasonable and disrespectful statements during proceedings. The Supreme Court dismissed the contempts stating that the attorney's conduct was justified given the judge's conduct in that case. In State v. Turner, the Tennessee Supreme Court stated:

> The supreme court, however, granted permission to appeal and **dismissed all five contempts**. State v. Green, 783 S.W.2d at 553. **In doing so, the court dealt extensively with its concern that the trial judge who had imposed the contempts has a "likely basis ... for personal antagonism" against counsel, and appeared to have become personally entangled in the matter**. Id. at 550 (citing, Offutt, supra, 348 U.S. at 14, 75 S.Ct. at 13). In this regard, the court noted that the trial judge had previously cited counsel for contempt, had reported counsel to the Board of Professional Responsibility, and had disclosed counsel's confidential response to the Board's inquiry to the district attorney general. Finally, the court concluded that defense counsel had not acted willfully, nor had his acts obstructed the

administration of justice. Id. at 553. The court did not, however, discuss the extent of summary contempt power under Rule 42(a), nor did it set forth explicitly when, if ever, the procedures governing indirect contempts in Rule 42(b) should apply to direct contempts.

The same is true in this case, the Circuit Court Judge repeatedly demonstrated a likely bias and personal antagonism toward Husband. Husband in this case does not know any softer language he could have used to describe the Circuit Court Judge's conduct during proceedings while at the same time stating the facts. Husband asserts that the language he used to describe the Circuit Court Judge's conduct is not disrespectful in any way, not only in fact, but even more so given the facts of the case.

Appellant would have this Honorable Court know that throughout proceedings, even while Husband's constitutional rights were being violated, Husband remained completely respectful and deferential to the Circuit Court Judge. Husband never once raised his voice in protest, and respectfully accepted unjust rulings time after time during proceedings. Even while Husband's constitutional right to be heard was repeatedly violated during proceedings, Husband remained completely respectful and quietly asked "may I respond, Your Honor", "Your Honor, may I address that, please?", "Can I address that just briefly, Your Honor?" Despite the Circuit Court Judge's repeated denial of the above respectful requests to be heard, Husband still remained respectful during proceedings, just as he remained respectful in his Appellant's Brief while stating the facts (See (VOL XXIX September 15, 2015 Tr. p. 6 – 8, 9 – 10 and, 10 - 13)

Appellant would further remind this Court, that Husband is **involuntary pro se** and it is the error of the Circuit Court Judge's rulings and Wife's counsel's abuses of process that caused the unfortunate circumstance of Husband being forced to represent himself. Accordingly, if stating the facts as Husband did is somehow construed as disrespectful, Husband begs leniency of this

31

Honorable Court as it is not his fault that he was forced to engage in self representation. As evidenced in the record:

> Husband further objected to attorney fees awarded to Wife, and complained he could not afford Wife's attorney fees, could not afford needed and necessary medical care, could not afford his own legal representation and that he **"is without desperately needed legal representation"** (TR Vol IV P. 405-406 ¶¶ 7 – 8).

## XI. INTENSIVE REVIEW OF THE FACTS OF WIFE'S MOTION IS REQUIRED

Although Wife's motion to dismiss should be denied based only on the single fact that her motion was filed directly with the Court in violation of the safe harbor provision in Rule 11, if this Court somehow decides to consider the merit of her motion, this Court is required to make a fact-intensive determination regarding the reasonableness of Wife's assertions. In the case, Hooker v. Sundquist, 107 SW 3d 532 - Tenn: Court of Appeals 2002, the Court of Appeals stated:

> Our review of Rule 11 decisions is governed under this deferential standard since the question of whether a Rule 11 violation has occurred **requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's conduct**. Krug, 838 S.W.2d at 205.

Accordingly, rather than just accepting Wife's motion's assertions as true, which they are not, this Court should undertake a fact-intensive review of her assertions. Husband asserts this should include verifying that in fact Husband did cite the record. The court should consider the full context of references to falsely alleged "disrespectful" language in Husband's Appellant's Brief. This court should consider the full context of Wife's references to excerpts falsely alleged as arguments without citation.

## XII. CONCLUSION

Since Wife's counsel tendered a motion for the harsh sanctions of dismissal and awarding of attorney's fees and costs, in violation of the safe harbor provision in Rule 11.03, Wife's motion should be denied.

32

Since this court previously instructed Husband to raise recusal issues in his Rule 3 appeal and ordered Husband to post an additional $1,000 cash bond, Husband's appeal should be heard and not dismissed.

This Court should undertake a fact intensive review of Wife's counsel's false assertions if her motion is somehow not denied for violating the safe harbor provision of Rule 11.03

Since the safe harbor provision permits amending of pleadings, Husband should be granted leave to amend and an extension of time in which to amend his Appellant's Brief.

This court should grant leniency and latitude in considering an **involuntary pro se's** Appellant's Brief.

For good cause, this Honorable Court should suspend any unintentional failure to satisfy Appellate Court rules made by an involuntary pro se litigant.

Respectfully submitted,

_____
John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Pamela A. Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Attorney for Mrs. Gentry

On this the 6th day of March, 2017

_____
John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court, Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

APPELLATE COURT CLERK
NASHVILLE

JOHN ANTHONY GENTRY,            )
   Appellant/Defendant/Counter-Plaintiff   )
                      )            M2016-01765-COA-R3-CV
                      )
v.                               )            SUMNER COUNTY
                      )
KATHERINE WISE GENTRY            )
   Appellee/Plaintiff/Counter-Defendant   )

*Rule 3 Appeal As Of Right from the Final Judgement of the*
*Circuit Court For Sumner County, Case No. 2014 CV 393*

# MOTION FOR CLARIFICATION OF APPELLATE COURT ONLINE CASE HISTORY AND DOCUMENT ACCESS

Appellant, John Anthony Gentry ("Husband"), hereby respectfully requests clarification of the online Document History of case M2016-01765-COA-R3-CV. The Tennessee State Courts Website includes the "Document History" of all filings related to each case. Prior to recent filings by Appellant and Appellee, all of the documents pertaining to case M2016-01765-COA-R3-CV, have been listed and include "PDF" downloads of all documents filed. The web Uniform Resource Locator (URL) for this case is as follows; http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67885&Number=True

On March 3, 2017, Wife's counsel filed a Motion to Dismiss and a memorandum supporting her motion to dismiss. Although all other previously filed documents are downloadable as PDF documents from the "Document History" page, Wife's Memorandum is not listed nor is it included as a downloadable PDF in the "Document History". Appellant assumes

## EXHIBIT U

1

the document filed on March 3, 2017, is Wife's memorandum supporting her motion to dismiss but the document is not downloadable or viewable as are all the other filings.

On March 6, 2017, Appellant filed a response to Wife's motion to dismiss and motion to amend and for extension of time. Husband's Motion is not listed in the online "Document History"

On March 6, 2017, Appellant also filed a memorandum supporting his response to Wife's motion to dismiss and motion to amend and for extension of time. That document is also not listed in the "Document History".

Appellant respectfully asserts that all documents filed in appellate court are a part of the record and should be included in the "Document History" and should be available for download as part of the public record.

Appellant is very concerned that; (1) Wife's memorandum supporting Wife's motion to dismiss, (2) Appellant's response to Wife's motion to dismiss and motion to amend and motion for extension of time, and (3) Appellant's memorandum supporting his response to Wife's motion to dismiss and motion to amend and for extension of time are not properly included as part of the record and are not listed in the "Document History" and are not downloadable or viewable documents.

Appellant is concerned that his pleadings may not be properly heard if his pleadings are not properly included as part of the record. Appellant would further point out to the Court as reason for his concern, is that subsequent filings are included as part of the record and downloadable.

In evidence of Appellant's concerns, Appellant attaches EXHIBIT 1, a partial print out of the "Document History" report printed from the Court's website at the above noted URL.

EXHIBIT 2 is the first page of Appellant's Memorandum filed on March 6, 2017 that is one of the documents not included in the online "Document History"

Appellant respectfully reminds this Court that he is **involuntary Pro Se** and does not know or understand the inner workings of the court system and Appellant simply desires to ensure his case filings, as well as Wife's filings, are properly processed and considered by this Honorable Court.

## WHEREFORE PREMISES CONSIDERED, APPELLANT PRAYS UPON THIS HONROABLE COURT;

That this Court provide assurance, that "Appellant's Response To Appellee's Motion To Dismiss Appeal And Appellant's Motion To Amend And For Extension Of Time" is properly included in the record and will be considered by this Honorable Court.

That this Court provide assurance, that Appellant's "Memorandum In Support Of Appellant's Response To Appellee's Motion to Dismiss Appeal And Appellant's Motion To Amend And for Extension Of Time" is properly included in the record and will be considered by this Honorable Court.

That this Court provide assurance that the above referenced filings will be included in the "Document History" in downloadable format, or provide a statement as to why the one document referenced above and filed by Wife's counsel and the two documents referenced above and filed by Appellant are not downloadable documents.

Respectfully submitted,

John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

3

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Pamela A. Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Attorney for Mrs. Gentry

On this the 9th day of March, 2017

John A Gentry, CPA, Involuntary Pro Se
208 Navajo Court, Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

**FILED**

03/13/2017

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### Circuit Court for Sumner County
### No. 83CC1-2014-CV-393

### No. M2016-01765-COA-R3-CV

### ORDER

The appellant has filed a Motion for Clarification of Appellate Court Online Case History and Document Access. Questions concerning the online case history and document access are properly addressed to the clerk.

The appellant has also filed a Motion for Clarification of Appellate Court's Order Dated March 9, 2017 and Clarification of Appellate Court Rules seeking guidance regarding the application of certain rules to his brief. We decline to advice the appellant regarding the content of his brief. To the extent the motion seeks reconsideration of the March 9, 2017 order regarding the application of the Tenn. R. Civ. P. 11 in this court, we decline to alter our order. Tenn. R. Civ. P. 1(2) refers only to appeals from a general sessions court to the circuit court. The Tennessee Rules of Civil Procedure do not apply in the Court of Appeals.

It is, therefore, ordered that the motions for clarification be denied.

PER CURIAM

 Like           Comment           Share

 **Aspen Rachelle Hunt**
Smile beautiful  <3

## People You May Know





**Jim Hivner**
State of Tennessee Supre...

 Add Friend

Remove

**Joe Vielma**
16 mutual friends

 Add Friend

Remove

EXHIBIT V

See All

Martin Lynch
Tempe AZ
603-550-6304

Title 32          Professions
Chapter 2        Board of Attorney Licensure Appeals
Article 1         Secondary Oversight Board for the Ethical Conduct of Attorneys

## 32 §200. <u>Purpose; Definitions</u>

A. The purpose of this chapter is to provide for the safety, health and welfare of the public by ensuring the promulgation and enforcement of standards of conduct and qualification for those individuals who are licensed and those seeking a license to practice law in the State of Arizona pursuant to this chapter. <u>Attorneys watching attorneys is an inherent conflict of interest and dangerous and excessive concentration of power which must be checked.</u>

B. This chapter and this board is intended to serve as secondary review of the primary function which resides with the State Bar.  The Legislature is exercising its authority and Constitutional mandate to provide a check upon excessive power of other branches of Government and seeks to reinforce the confidence of the people in the integrity of the legal system which should exist to serve the people.

C. As a Secondary oversight Board, this chapter does not seek to alter the structure or function of the State Bar.  <u>If the State Bar renders a decision which is thought to be just and in keeping with the code of conduct, nothing will be brought before the Oversight Board, and this Board will do nothing.</u>  Conversely, should the State Bar render a decision thought to be unjust or contrary to Professional Code of Ethical Conduct of Attorneys, the Board shall be empowered by majority vote to affirm or to alter the decision of the State Bar as deemed appropriate by the Oversight Board.

D. The decision of the Oversight Board shall <u>supersede that of the State Bar</u> for the licensure and discipline of the Attorney in question for the time indefinitely into the future, or a period not less than 18 months should another decision on the same matter be brought before the Oversight Board.

E. During the period between filing a petition for review by the Oversight Board and a decision to be considered and rendered by the Board, the Petitioner may solicit and be automatically granted a stay of actions taken by the State Bar unless the Board acts to deny the stay by majority vote.

In this chapter, unless the context otherwise requires:

1. "Active license" means a valid and existing license to practice law.  Jurisdiction over ethical conduct shall extend to attorneys who are Court Appointed Third Parties (CATP).

2. "Adequate records" means records containing, at a minimum, sufficient information to identify the client, the dates of service, the fee for service, the payments for service, the type of service given and copies of any reports that may have been made.



# EXHIBIT W

3. "Board" or "Oversight Board" means the Secondary Oversight Board for the Ethical Conduct of Attorneys established herein by the Legislature.

4. "Petitioner" means anyone affected by or having knowledge of what they in good faith believe to be actions of the State Bar thought to be unjust or not in keeping with the code of ethical conduct for attorneys.

## 32 §210. Structure, make up and function of the Oversight Board

A. The Board shall consist of 11 eleven persons. A majority, seven of these persons shall be randomly drawn from a jury pool and have additionally volunteered to perform this service for the benefit of the community. Terms of service shall be in staggered two year terms of appointment meaning that 3 or 4 of the 7 board members will be replaced on the second Monday of January of each year. Volunteers may serve multiple appointments but may not serve consecutive appointments. The seven person panel may not be attorneys, licensed or otherwise and may not be affiliated with any law firm or any of the three branches of State Government either by direct employ, retired for less than two years, by marriage or close familial association. Each of these seven persons shall have one full vote for purposes of rendering decisions of the board.

B. The remaining 4 persons of the 11 person panel shall serve alternating 2 tear terms and be appointed by the Governor. One may be a sitting Judge or a Judge retired within the past two years. All but one must be licensed to practice law in Arizona. Seeking advice from their Judiciary Committees, the Speaker of the House and the President of the Senate shall submit names of candidates to the Governor who volunteer to serve. The Governor shall also accept nominations and qualifications submitted by any self-identified organization or entity. From all of the names submitted, or other persons considered qualified by the Governor, 2 persons shall be assigned to the Board to begin their four year term to begin the second Monday of January of alternating years. The Governor may appoint a consultant to the Board who does not have voting authority. Each of these 4 persons shall one half of a vote for purposes of rendering decisions of the board.

C. A Board Chairman shall annually be picked from the 11 person panel, of members nominated and accepting such nomination, who receives the most votes. The Board Chairman must be seen to be evenhanded and fair. Should members of the Board lose confidence in the Chairman then a member may call for a vote of no confidence and the selection process repeated no more often than once every 120 days.

D. The Board shall meet every 90 days or more often if the workload demands it. Ideally issues brought before this Oversight Board will be few and far between because the oversight rendered by the State Bar will be of such a high standard, few would have reason or foundation to make a complaint. In the event of a temporary high volume of cases, the Board may petition the Governor who shall be empowered to create a duplicate panel(s) for the time period deemed necessary by the Governor.

32 §220. Reconsideration of, Affirmation or Reversals in part or in whole.

A. Anyone who brings a decision rendered by the State Bar to the Oversight Board for review must properly identify themselves and the documents and explain what they believe is unjust or contrary to the code of conduct.

B. Priority shall be given to complaints which the Bar has acted upon most recently. Priority shall also be afforded to Whistleblower reviews. All other Complaints shall be prioritized by the Board in a manner consistent with its charter of protecting the public. By way of example if one attorney has the largest number of complaints, review of his conduct might get priority. All complaints shall be processed in a timely manner.

C. Additional Items of Professional Standard of Ethics

1. The contents or wording of any oath sworn by an attorney shall automatically become part of the Code of Conduct to which the Attorney is bound to conform.

2. No Oath or Court Rule may render an attorney a member of the Judicial Branch of Government. Attorneys must be and act as independent contractors with their primary consideration being the best interests of their clients. Per Article 3 of the Arizona Constitution anyone considered to be a member of the Judicial Branch of Government may not be employed by or exercise powers of the Legislative or Executive Branches. Any licensed attorney who is not a Commissioner, Judge or Justice and reasonably thought to be a member of the Judicial Branch may be in violation of the code of conduct and subject to forfeiture of their license to practice law. Attorneys advising the Executive or the Legislature shall be independent of the influence of the Judicial branch.

3. Conflict of interest: Any attorney is subject to the same standards of conflict of interest as the clients they represent. An attorney who is a legislator and fails to abstain and votes against measures to regulate his profession may have violated the code of conduct and might be subject to censure.

4. Litigation misconduct described in ARS 25-415 (A)(1)(2)(3)(C)(D) "Sanctions for Litigation Misconduct" does not only apply to litigants but shall also constitute discrete elements of the professional code of conduct to which attorneys and their clients must conform. An attorney who is of record in a case involving such misconduct shall be subject to censure.

D. Generally, an attorney who comes before this Board with a first offense may be ordered to refund a portion or all fees and be subject to a probationary period. Attorneys found committing grievous or repeated misconduct especially fostering conflict harmful to children must be dealt with in a manner such that the public and our children are protected.

32 §230. <u>Whistleblower Provisions</u>

A. Existing statutes on this topic shall be considered by this Board as the need and circumstances arise. They include ARS 38-531 "Definitions" and ARS 38-532 Reprisals and Remedies. The Board may also refer to Federal Statutes including but not limited to 5 USC § 2302 "Prohibited personnel practices" which addresses improper license revocation and also (a)(2)(A)(x) "a decision to order psychiatric testing or examination;"

B. Upon examination of the evidence, should the Oversight Board find that a License to practice law has been improperly revoked or that other measures imposed upon attorneys are reasonably thought to be abusive or unwarranted, the Board is empowered to reverse these decisions and that such reversals shall have the force of law during the time period prescribed in § 32-200(D).


32 §240. <u>Funding</u>

A. This secondary oversight board for the profession of attorneys shall be non-profit, self-supporting and self-sustaining. Initial dues shall be $100 per anum payable within 30 days of enactment of this statute and the Month of January for the years thereafter. The annual dues may be revised by the by majority vote. Increases shall not exceed $25 in any 12 month period.

B. All attorneys must be up to date on payment of dues for this secondary oversight board as a condition of holding a license to practice law in the State of Arizona. Upon majority vote the Board may extend a grace period of a time not in excess of 60 days.


32 §250. <u>Voluntary Metrics, Transparency and Proposed Statutes</u>

A. Metrics are necessary to ensure that any process is functioning properly and the People and Children are being protected. The board shall have a website financed form their dues fund. The website shall display the Mission Statement "To ensure the oversight of the Professional Conduct of Attorneys and the Protection of the Public" and job descriptions for the purpose of performance measurement.

B. Attorneys may "voluntarily" participate in a customer satisfaction survey which shall be distributed to all clients of the attorney. The surveys shall solicit a number of 1 to 10 "Performance" and another number, the total cost to achieve the performance. Suggestions for improvement may also be solicited. From this, a measure of <u>performance per dollar spent</u> shall be calculated and an 18 month running average shall be maintained and conspicuously displayed on the website. A statistically significant sample is necessary for the results to be posted.

C. Survey content and form shall be established and revised by majority vote of the Board. The latest version of the survey shall be posted on the website for the voluntary use by any Attorney.

D. The Board may incorporate additional elements of continuous process improvement per ISO9001, AS9100, et al; by majority vote. The Board may and is encouraged to make recommendations to the Legislature and to the Supreme Court proposing Statutes or Court Rules to better serve and protect the Public.

E. All functions performed by any organization relative to the oversight of the ethical conduct of attorneys shall be subject to the Public Meeting laws of this State including but not limited to § 38-431 and it's progeny.

F. The State Bar shall conspicuously display on its website operating link(s) to all voluntary information arising from this statute and displayed on the Board's website.

32 §260. Self-Initiating, No Sunset

The statutes of this chapter are self-initiating. This Board is not subject to sunset.