# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | |
|---|---|
| JOHN ANTHONY GENTRY, sui juris/pro se | )<br>) |
| Plaintiff | )<br>)<br>) CASE NO. 3:17-0020 |
| vs. | )<br>) |
| THE STATE OF TENNESSEE;<br>PAMELA ANDERSON TAYLOR;<br>BRENTON HALL LANKFORD;<br>SARAH RICHTER PERKY;<br>UNNAMED LIABILITY INSURANCE<br>CARRIER(S); Et al | )<br>)<br>) JURY TRIAL DEMANDED(12)<br>)<br>)<br>)<br>) |
| Defendants | ) |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

---

Out of respect for the judiciary and a desire to not bring the judiciary into disrepute out of respect for his country, Plaintiff's original Complaint was primarily in complaint of Defendants' failure to provide Equal Protection under the law, that was in fact and effect, aiding and abetting rights violations against Plaintiff and the People, causing guilt in Defendants as principle.

As this Court is aware, Plaintiff has filed a Second Amended Complaint. Due to the State's unwillingness to accept responsibility for its rights violations, Plaintiff has restated his

case in a more clear and precise manner that leaves no doubt as to the culpability of the State, its agencies, agents and arms of the State.

In Defendants' Motion to Dismiss, the State has **falsely asserted**; **(1)** Plaintiff lacks standing to challenge the Board's dismissal of his complaint, **(2)** Plaintiff failed to state a claim pursuant to 42 USC §1983, **(3)** Plaintiff failed to state a claim under 42 USC §1985, **(4)** Plaintiff failed to state a claim because Defendants are not "persons" under § 1983, **(5)** Defendants have "quasi-judicial" and prosecutorial immunity, and **(6)** the Eleventh Amendment bars claims against the State.

Plaintiff will prove in this Response and Incorporated Memorandum that Defendants' defense claims fail utterly and completely. Plaintiff would first point out to this Honorable Court, that Defendant has requested an extension of time to respond to Plaintiff's Second Amended Complaint because it contains new allegations, and therefore Plaintiff's Response to Motion to Dismiss should be deferred until Defendant responds or files motion regarding Plaintiff's Second Amended Complaint. However out of an abundance of Caution, Plaintiff will prove Defendants' initial defenses are utterly baseless.

**FALSE ASSERTION PLAINTIFF LACKS STANDING**

As more clearly stated in Plaintiff's Second Amended Complaint at ¶ 173 – 175;

> 173. Plaintiff further alleges, because the Defendant State of Tennessee and its agencies, agents and arms of the state allow predatory judges and attorneys to prey upon unsuspecting litigants by not enforcing constitutional rights and Tenn. Sup. Ct. Rule 10, **this promotes and propagates judicial misconduct** and "Corrupt Racketeering Schemes"

2

174. Plaintiff asserts **this promotion and propagation of judicial and attorney misconduct** and violations of Tenn. Sup. Ct. Rule 10 and Rule 8, **caused him harm and he was denied equal protection, due process, and was subjected to "Corrupt Racketeering Schemes"**.

175. Plaintiff alleges, **if Defendant State of Tennessee and its agencies, agents and arms of the state were doing their job as they should, the People, including Plaintiff would not suffer judicial and attorney misconduct and constitutional rights violations.** It is because of the State's failure to fulfil its fiduciary responsibility that these "Corrupt Racketeering Schemes" are inflicted upon the People. Plaintiff asserts this is just common sense reasoning and not "unadorned, the-defendant-unlawfully harmed-me accusation". If these "Corrupt Racketeering Enterprises" of the State were doing their job as they should, judges and attorneys would "behave" and the people would not be harmed. **The conduct of the State through its agencies, agents and arms of the state is no different than a law enforcement officer watching a gang rape and taking no action to stop such abhorrent behavior.**

As the above language, and additional allegations of Plaintiff's clearly show, Plaintiff has plainly established the three elements necessary to establish standing. Plaintiff has been harmed by Defendant's failure to protect his rights and provide oversight of judges, providing judges and attorneys free reign to conduct their "Corrupt Racketeering Schemes" against Plaintiff and the People of Tennessee. The above and other allegations in Plaintiff's complaint clearly establish injury traceable to Defendant and a favorable decision by this Honorable Court to dissolve, reorganize or order cessation of "Corrupt Racketeering Activities" provides redress.

Furthermore, the core of Plaintiff's original Complaint was the Defendant's failure to provide Equal Protection under the law. In and of itself, that failure to provide Equal Protection is sufficient harm to give Plaintiff standing. Plaintiff's assertion is proven as true in the Supreme Court Opinion issued in the case, *Northeastern Florida Chapter of the Associated*

3

*General Contractors of America v. City of Jacksonville, FL 508 U.S. 656 (1993).* In this Opinion, the Supreme court stated;

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, **a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.** (at 666).

Plaintiff plainly stated in his original complaint; "Defendants, as a matter of practice and policy, fail to provide equal protection under the law, a right that is guaranteed by the fourteenth amendment of the Constitution of the United States." (Docket Entry 1 ¶ 17). Plaintiff further stated in his complaint ¶¶ 44 - 47;

> 44. As a matter of practice, Defendants routinely dismiss effectively one-hundred percent of the cases filed by non-members of legal profession.
>
> 45. Plaintiff charges Defendants with discrimination based upon socio-economic status and failure to provide equal protection under the law.
>
> 46. Defendants discriminated against Plaintiff, who is a member of a class of persons who are not engaged in the legal profession.
>
> 47. Plaintiff, as well as the class and subclass to which he belongs, was and continues to be adversely impacted by the practices of Defendants to routinely dismiss complaints filed with the Board of Judicial Conduct by non-legal professionals.

4

Accordingly, pursuant to Supreme Court opinion, and based on these facts alone, Plaintiff has standing to pursue his cause of action.

It should be obvious to this Court that Plaintiff was complaining of the Defendant's failure to provide Equal Protection under the law, and that the only class of persons protected by the Board of Judicial Conduct are those persons who are legal professionals and all others are discriminated against. This fact, as Plaintiff plainly established in his original complaint, is easily proven by examining the complaints they do act upon, evidenced on their own website, compared to the hundreds of complaints they wrongfully dismiss that are filed by non-legal professionals.

Regarding this false and failed defense that Plaintiff lacks standing, Plaintiff draws this Court's attention to the fact, the Attorney General ignored the core of Plaintiff's Complaint and misrepresented Plaintiff's allegations. Plaintiff was very obviously complaining about being denied Equal Protection, a fact that is easily provable. To misrepresent the core of Plaintiff's complaint to this Honorable Court, is an attempt to deceive this Honorable Court. Plaintiff asserts this conduct by the Attorney General further evidences that yet another agency, agent, and arm of the states is an active member of the State's "Corrupt Racketeering Enterprise"

**FALSE ASSERTION PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 USC § 1983**

Defendants falsely assert Plaintiff can prove no set of facts in support of his claim and that Plaintiff failed to state a claim under any viable legal theory. As evidenced above, Plaintiff can easily prove the facts supporting his assertions. The legal theory supporting Plaintiff's

5

Case 3:17-cv-00020 Document 38 Filed 03/27/17 Page 5 of 15 PageID #: 898

cause of action is just as easily proven. As Defendant stated in their "Memorandum of Law In Support of Defendants' Motion to Dismiss" (Docket Entry 23 at ¶ A. p. 4), A claim under 42 USC §1983 "must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) deprivation was caused by a person acting under color of state law." Very obviously, Plaintiff was denied Equal Protection under the law in violation of the fourteenth amendment of the US Const. due to the fact that Defendants only protect legal professionals, a distinct class of persons, while denying equal protection to non-legal professionals (everyone else) a separate and distinct class of persons.

The Board of Judicial Conduct most certainly acts under color of law. Pursuant to Title 17 of Tennessee Statutory Code, the Board of Judicial Conduct is mandated by statutory law to provide oversight of judges, monitor their conduct in accordance with the Judicial Code of Conduct (Tenn. Sup. Ct. R. 10) and discipline judges when appropriate and necessary. By this fact alone The Board of Judicial Conduct is acting under color of law.

Defendants then inappropriately cite Jones v. Blackburn and contend that *"dismissal of a complaint by the Board does not implicate a constitutional or legal right that gives rise to a 42 USC § 1983 action."* While that may or may not be true, Defendant's citation is wholly irrelevant. Plaintiff brings suit in his original complaint, primarily for failure to provide Equal Protection under the law, which is an easily provable fact, and Defendant and their counsel attempt to hide this undeniable fact from this Honorable Court, by misrepresenting the facts and allegations of Plaintiff's original complaint. This Court should be offended as is Plaintiff.

## FALSE ASSERTION PLAINTIFF FAILED TO STATE A CLAIM UNDER 42 USC § 1985

Defendants then incriminate themselves and cite the Sixth Circuit and that *"when employees act outside the course of their employment, they and the corporation may form a conspiracy" Johnson, 40 F.3d at 841* and that when Judge Craft and Mr. Discenza wrongfully dismissed Plaintiff's complaint against a judge, they were acting within the scope of their employment.

This argument and failed defense also fails utterly and completely. By default, the de facto scope of their employment is to review and process complaints against judges in a fair and impartial manner and act on complaints and administer discipline when appropriate and necessary. It is most certainly outside their scope of employment, as a matter of practice and policy to not provide equal protection under the law and effectively dismiss 100% of complaints made by a class of persons discriminated against who happen to be non-legal professionals.

## FALSE ASSERTION PLAINTIFF FAILED TO STATE A CLAIM AGAINST DEFENDANTS ACTING IN THEIR OFFICIAL CAPACITY

Defendants falsely assert § 1983 creates no remedy against a State which is yet another failed defense. As stated in Plaintiff's Second Amended Complaint at ¶ 167

> The Supreme Court also affirmed the same in Hutto v. Finney, 437 US 678
>
> - Supreme Court 1978 as follows;
>
>> But time has not stood still. Two Terms ago, we decided *Fitzpatrick* v. *Bitzer,* which for the first time in the recent history of the Court asked us to decide "**the question of the relationship between the Eleventh Amendment and the**

7

enforcement power granted to Congress under § 5 of the Fourteenth Amendment." *Id.,* at 456. **There we concluded that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, ... are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment."** *Ibid.* (Citation omitted.) And we went on to hold:

> **"Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."** Ibid.

Then, in *Monell* v. *New York City Dept. of Social Services, supra,* decided only weeks ago, **we held that the Congress which passed the Civil Rights Act of 1871, now § 1983—a statute enacted pursuant to § 5 of the Fourteenth Amendment, see 436 U. S., at 665—"*did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."** *Id.,* at 690. This holding alone would appear to be enough to vitiate the vitality of *Fitzpatrick*'s explanation of *Edelman.*

Moreover, central to the holding in *Monell* was the conclusion that the Act of Feb. 25, 1871, ch. 71, § 2, 16 Stat. 431, provided a definition of the word "person" used to describe the class of defendants in § 1983 suits. Although we did not in *Monell* have to consider whether § 1983 as properly construed makes States liable in damages for their constitutional violations, **the conclusion seems inescapable that, at the very least, § 1983 includes among possible defendants "a class . . . which literally includes States."** *Edelman* v. *Jordan,* 415 U. S., at 672. This follows immediately from the language of the Act of Feb. 25, 1871:

> "[I]n all acts hereafter passed . . . the word 'person' may extend and be applied to bodies politic and corporate . . . unless the context shows that such words were intended to be used in a more limited sense . . . ."

**The phrase "bodies politic and corporate" is now, and certainly would have been in 1871, a synonym for the word "State."** See, *e. g., United States* v. *Maurice,* 26 F. Cas. 1211, 1216 (No. 15,747) (CC

8

> Va. 1823) (Marshall, C. J.) ("The United States is a government and, consequently, a body politic and corporate"). See also *Pfizer Inc. v. Government of India,* 434 U. S. 308 (1978).
>
> Given our holding in *Monell,* the essential premise of our *Edelman* holding—that no statute involved in *Edelman* authorized suit against "a class of defendants which literally includes States," 415 U. S., at 672— would clearly appear to be no longer true. **Moreover, given *Fitzpatrick's* holding that Congress has plenary power to make States liable in damages when it acts pursuant to § 5 of the Fourteenth Amendment, it is surely at least an open question whether § 1983 properly construed does not make the States liable for relief of all kinds, notwithstanding the Eleventh Amendment. Whether this is in fact so, must of course await consideration in an appropriate case.**

Accordingly, as evidenced in the above Opinion, the Supreme Court of the United States has ruled repeated and affirmatively that USC § 1983 applies to States and that States as persons are subject to § 1983 causes of action and claims for relief.

## FALSE ASSERTION JUDGE CRAFT IS ENTITLED TO ABSOLUTE QUASI-JUDICIAL IMMUNITY

Defendant makes the further false argument that Judge Chris Craft is absolutely immune from liability for judicial acts committed within his jurisdiction. First and most obviously, it is not within Judge Craft's jurisdiction to not provide Equal Protection under the law. That "jurisdiction" does not extend to any judge in any court, not even US Supreme Court judges are afforded "that jurisdiction"

Defendant then cites Mireles v. Waco, 502 U.S. 9, 9-10 (1991), as if it supports their false assertion and that and that *"judicial immunity is an immunity from suit, not just from ultimate assessment of damages, and judicial immunity is not overcome by allegations of bad*

9

*faith or malice, the existence which ordinarily would* (sic) *cannot be resolved without engaging in discovery and eventually trial*".

Proper analysis of the Mireles v. Waco case shows that judges are in fact not absolutely immune. At 12 in the Mireles case, The U.S. Supreme Court stated;

> **Rather, our cases make clear that the immunity is overcome in only two sets of circumstances.** First, **a judge is not immune from liability for nonjudicial actions**, i. e., actions not taken in the judge's judicial capacity. Forrester v. White, 484 U. S., at 227-229; Stump v. Sparkman, 435 U. S., at 360. Second, **a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.** Id., at 356-357; Bradley v. Fisher, 13 Wall., at 351.

In this single statement, the U.S. Supreme Court makes it clear that judges are not absolutely immune and proves false, the Defendant's assertion Judge Craft is "*absolutely immune*". Judges are not immune from liability for non-judicial actions, and judges are not immune for actions, though judicial in nature, taken in absence of all jurisdiction. Absolute immunity is therefore a false assertion.

In the Mireles case, at 13, the Supreme Court goes on to say;

> **Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge."** Stump v. Sparkman, 435 U. S., at 362. **But if only the particular act in question were to be scrutinized**, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." Id., at 356. See also Forrester v. White, 484 U. S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). **Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself."**

10

> 435 U. S., at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

In dissent to Mireles ruling, Justice Stephens stated;

> Judicial immunity attaches only to actions undertaken in a judicial capacity. Forrester v. White, 484 U. S. 219, 227-229 (1988). In determining whether an action is "judicial," we consider the nature of the act and whether it is a "function normally performed by a judge." Stump v. Sparkman, 435 U. S. 349, 362 (1978).
>
> Respondent Howard Waco alleges that petitioner Judge Raymond Mireles ordered police officers "to forcibly and with excessive force seize and bring" respondent into petitioner's courtroom. App. to Pet. for Cert. B-3, ¶ 7(a). **As the Court acknowledges, ordering police officers to use excessive force is "not a `function normally performed by a judge.'"** Ante, at 12 (quoting Stump v. Sparkman, 435 U. S., at 362). The Court nevertheless finds that judicial immunity is applicable because of the action's "relation to a general function normally performed by a judge." Ante, at 13.
>
> Accepting the allegations of the complaint as true, as we must in reviewing a motion to dismiss, petitioner issued two commands to the police officers. **He ordered them to bring respondent into his courtroom, and he ordered them to commit a battery. The first order was an action taken in a judicial capacity; the second clearly was not.** Ordering a battery has no relation to a function normally performed by a judge. If an interval of a minute or two had separated the two orders, it would be undeniable that no immunity would attach to the latter order. **The fact that both are alleged to have occurred as part of the same communication does not enlarge the judge's immunity.**

So now, with a more comprehensive view of the Supreme Court's decision in the Mireles case, we should apply the Supreme Court's logic to Plaintiff's cause of action and Complaint in this matter. The Supreme Court plainly established that judges are not absolutely immune, and that judicial immunity is lost for non-judicial actions, and for actions, though

11

judicial in nature, are taken in absence of all jurisdiction. That much is clear and already Defendant's defense fails.

The Supreme court agreed that the judge's action in the Mireles case was not a judicial function. The same is true in this case. Repeated and obvious deprivation of a constitutional right of Equal Protection is plainly not a judicial function.

The Supreme Court also discusses that a single erroneous act outside of judicial capacity should not in and of itself remove judicial immunity and Plaintiff agrees with this assessment. This is what the Supreme Court was alluding to in its statement "***But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge.***" Plaintiff has firmly and affirmatively stated and evidenced a clear pattern of wrongful dismissal of cases and failure to provide Equal Protection under the law by Judge Craft and the Board of Judicial Conduct.

## FALSE ASSERTION TIMOTHY DISCENZA IS ENTITLED TO PROSECUTORIAL IMMUNITY

Plaintiff's arguments are much the same regarding Defendant Discenza's prosecutorial immunity as referenced above regarding judicial immunity. Defendant Discenza was acting outside his jurisdiction, outside his scope of employment in clear pattern of wrongful dismissal of complaints and in failing to provide Equal Protection under the law by only protecting a class of persons who are legal professionals. For the same reasons stated above, Defendant's prosecutorial immunity defense also fails utterly and completely.

12

## FALSE ASSERTION THE ELEVENTH AMENDMENT BARS PLAINTIFF'S CLAIMS AGINST THE STATE, THE BOARD, AND ANY DEFENDANTS IN THEIR OFFICIAL CAPACITY

As stated, evidenced and proven on pages 7 – 9 above, State Sovereignty is necessarily abrogated by enforcement of fourteenth amendment provisions of Amend. XIV U.S. Const. § 5, further excepted by the Supreme Court in Ex parte Young. The following cases further substantiate abrogation of the eleventh amendment.

In the case, Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976, the Supreme Court stated;

> The principal question presented by these cases is whether, as against the shield of sovereign immunity afforded the State by the Eleventh Amendment, Edelman v. Jordan, 415 U. S. 651 (1974), **Congress has the power to authorize federal courts to enter such an award against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment.** The Court of Appeals for the Second Circuit held that the effect of our decision in Edelman was to foreclose Congress' power.

The Supreme Court affirmed it previous decision in the case, Atascadero State Hospital v. Scanlon, 473 US 234 - Supreme Court 1985. In this case, the Supreme Court stated;

> Moreover, the **Eleventh Amendment is "necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment,"** that is, by Congress' power "to enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." Fitzpatrick v. Bitzer, 427 U. S. 445, 456 (1976). As a result, when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent.

13

Accordingly, Defendants find no protection for their violations of Plaintiff's constitutional right of Equal Protection under the Eleventh Amendment, neither as a person, nor in their official capacity, nor as a State.

**NEW ALLEGATIONS IN PLAINTIFF'S AMENDED AND SECOND AMENDED COMPLAINT**

Regardless of Defendants' false assertions of judicial and prosecutorial immunity, Plaintiff has removed the judges and individual agents, agencies and arms of the State as Defendants in his Second Amended Complaint. Those persons and other agents and arms of State are now listed as "Witnesses" in Plaintiff's Second Amended Complaint. Plaintiff now simply brings suit against the State and attorney officers of the court in conspiracy with the State, it agents, agencies, and arms of the state, to violate constitutionally guaranteed rights and engage in a pattern of "Corrupt Racketeering Activities" Plaintiff's Second Amended Complaint brings suit with substantial initial supporting evidence of federal law violations by the State, its agencies, agents, and arms of the state including 18 USC §1962, pursuant to racketeering activities defined in 18 USC § 1961 for violations of 18 USC §§ 1341, 1346, 1512, 1951, 1952, and 42 USC § 1983 and 1985.

This saves all parties in this matter having to debate irrelevant and unsubstantiated citations asserting immunity.

Respectfully submitted,

*/s/ John A Gentry*

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

Sarah Richter Perky
Thompson Burton
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067

Pamela Anderson Taylor
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219

Brenton Hall Lankford
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219

On this the 27th day of March, 2017

*/s/ John Anthony Gentry*

John Anthony Gentry, CPA