Copy

228637

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| JOHN ANTHONY GENTRY,<br>Plaintiff | ) ) ) | CASE NO. 16 C 2615 |
| .vs. | ) ) | |
| PAMELA ANDERSON TAYLOR, and<br>BRENTON HALL LANKFORD<br>Defendants, Jointly and Separately | ) ) ) ) ) ) | JURY DEMANDED (12) |

## COMPLAINT

Plaintiff, John Anthony Gentry, as Pro Se counsel, complaining of the Defendants, PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD, pleading hypothetically and in the alternative, states as follows;

## PARTIES, JURISDICTION AND VENUE

1. At all relevant times herein, Plaintiff JOHN ANTHONY GENTRY was and is a resident of Goodlettsville, TN.

2. At all relevant times herein, Plaintiff JOHN ANTHONY GENTRY, has been involuntary pro se in a divorce proceeding with his former wife Katherine Wise Gentry.

3. At all relevant times herein, Defendant PAMELA ANDERSON TAYLOR was and is a Member attorney of Stites and Harbison, PLLC with her principal office located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219.

1

EXHIBIT
A

4. At all relevant times herein, Defendant BRENTON HALL LANKFORD was and is an attorney of Stites and Harbison, PLLC with his principal office located at 401 Commerce Street, Suite 800, Nashville, Tennessee, 37219.

5. Because both Defendants' principal offices are located in Davidson County, jurisdiction and venue are both proper in the Davidson County Circuit Court.

## GENERAL ALLEGATIONS

6. At all relevant times herein, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD were co-counsel for Katherine Wise Gentry in divorce case No. 2014CV393 held in THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE AT GALLATIN.

7. Defendant(s) separately and together had, and have, a duty according to the TENN. SUP. CT. R. 8, Tennessee Rules of Professional Conduct, to conduct themselves according to said Rules of Professional Conduct.

8. While attorneys are protected against defamation torts under the long established doctrine of *'Privileged Litigation'*, that protection does not extend to protection from fraud and abuse of process torts. In the case, Peerman v. Sidicane, 605 SW 2d 242 - Tenn: Court of Appeals, Middle Section 1980, the appellate court stated in its opinion as follows;

> We are compelled to agree with the conclusion of counsel for the plaintiff-appellee that defendant's [Attorneys] action is not one of defamation but is **an action for ... .. abuse of process and the fact that the defendant is an attorney does not afford him immunity.**

9. In the above referenced Peerman v. Sindicate case, The Court of appeals further stated;

Copy

For reasons hereinafter set forth we find that **defendant's position as to privilege as an attorney is not supported** by Lambdin v. Griffith and other authorities cited.

10. During divorce proceedings, between the approximate period, July 1, 2015 and June 22, 2016, Defendants knowingly and intentionally tendered several surreptitious documents to the Circuit Court Judge that contained false statements **and that contained rulings upon which trial court did not rule upon.** Defendants intentionally and knowingly submitted these documents to defraud Husband of monies, causing Plaintiff great emotional stress and adversely affecting his ability to earn a living.

11. During the approximate period October 28, 2016 through May 2, 2016, Defendant PAMELA ANDERSON TAYLOR, knowingly and intentionally obstructed evidence in an effort to defraud Plaintiff from his income, causing Plaintiff great financial and emotional distress and adversely affecting Plaintiff's ability to earn a living.

12. During the approximate period October 28, 2016 through May 2, 2016, Defendant PAMELA ANDERSON TAYLOR, knowingly and intentionally engaged in dilatory behavior in an effort to deny Plaintiff access to the courts, to defraud Plaintiff from his income and to cause Plaintiff to lose his legal representation which caused Plaintiff great financial and emotional distress and adversely affected Plaintiff's ability to earn a living.

13. The surreptitious documents tendered to the Circuit Court Judge of Sumner County by Defendants constitute fraud and abuse of process.

14. The intentional and knowing fraud and misconduct by Defendants caused Plaintiff's new business start up to fail, in that the monies defrauded from Plaintiff left him unable to pay

3

the primary vendor of his new startup business venture, and in that, the great emotional distress caused by Defendants fraud and misconduct against Plaintiff, so incapacitated Plaintiff, that he was left unfit and incapable of performing the duties and responsibilities necessary to Plaintiff's new business venture.

15. On September 15, 2015 and May 3, 2016, Defendant BRENTON HALL LANKFORD knowingly and intentionally made false statements to the trial court with the intent to defraud Plaintiff of monies and to deny Plaintiff's right to be heard by the trial court.

## **STATUTE OF LIMITATIONS**

16. Pursuant to Tenn. Code Ann. §28-3-104 (c) (1), this civil suit is well within the statute of limitations which states;

> (2) In no event shall any action or suit against a licensed public accountant, certified public accountant or **attorney be brought more than five (5) years after the date on which the act or omission occurred, except where there is fraudulent concealment on the part of the defendant, in which case the action or suit shall be commenced within one (1) year after discovery that the cause of action exists.**

17. Defendants tendered a surreptitious order that constitutes fraud and an abuse of process on June 14, 2016.

18. During the period November 6, 2014 through February 25, 2016, Defendants obstructed evidence, violating rules of procedure and in defiance of a court order to comply with discovery by ignoring numerous email requests to comply with the court's order.

19. On February 15, 2016, Defendants filed a motion signed by Defendant PAMELA ANDERSON TAYLOR, listing both Defendants as signatories. This motion was titled

4



WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL. This motion tendered by Defendants was a plain abuse of process.

20. Furthermore, as referenced by the Supreme Court of Tennessee, at Nashville, in the case Fahrner v. SW Mfg., Inc., 48 SW 3d 141 - Tenn. Supreme Court 2001, the Supreme Court stated;

> Tennessee law has long recognized that the statute of limitations does not begin to run until the plaintiff, exercising reasonable diligence, discovers the fraud which the defendant wrongfully concealed. See, e.g., Vance v. Schulder, 547 S.W.2d 927, 930 (Tenn. 1977) (collecting cases).

21. Plaintiff, being a lay person without the means to procure counsel, as a direct result of the fraud and dilatory behavior of Defendants, did not have knowledge of, nor understand that Defendant's other activities constituted fraud and abuse of process, as detailed in this complaint, and were tortious activities until he began exercising his due diligence and researching the fraudulent order tendered on June 14, 2016. Accordingly, pursuant to the discovery rule pertaining to the statute of limitations, all of Plaintiff's allegations in this complaint are timely made and not subject to the statute of limitations.

## COUNT I

## CONSTRUCTIVE FRAUD

22. Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations and statements contained in paragraphs 6 through 16 of the General Allegations, above, inclusive.

5



23. Citing Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006, the Appellate Court referenced several cases defining Constructive Fraud.

> Constructive fraud is **a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.** Cornwell v. Hodge, C.A. No. 44, 1986 WL 5890, at *3 (Tenn.Ct.App. May 23, 1986) (citing Bank of Blount County v. Dunn, 10 Tenn.App. 95 (1929)). **Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals.** Cornwell, 1986 WL 5890, at *3 (citing Maxwell v. Land Developers, Inc., 485 S.W.2d 869 (Tenn.Ct.App.1972)). **They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of fraud, conduct which reasonably can be expected to influence the conduct of others.** Cornwell, 1986 WL 5890, at *3 (citing Parks v. Alexander, 608 S.W.2d 881 (Tenn.Ct.App.1980)).

24. As set forth in Count II A. below, Plaintiff asserts a cause of action pursuant to Defendant's tortious fraud against Plaintiff.

## COUNT II

## FRAUD

25. Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations and statements contained in paragraphs 6 through 16 of the General Allegations, above, inclusive.

26. Further citing Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006, the Appellate Court also referred to Dobbs v. Guenther case to define the elements of Fraud.

> The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation

6



involve a past or existing fact. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn.Ct.App.1992) (citations omitted)

27. In Black v. Black, 166 SW 3d 699 - Tenn: Supreme Court 2005, the Supreme Court of Tennessee stated;

> As this Court has observed, a common law cause of action for fraud has the following elements:
>> When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that misrepresentation to his injury. Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 66-67 (Tenn.2001).
>
> In addition, the elements of fraud must be "stated with particularity:" Tenn. R. Civ. P. 9.02.

28. Pursuant to Tennessee Rules of Civil Procedure, Rule 9.02, Plaintiff states with particularity, the following allegations of actions by Defendant(s) which constituted Fraud;

## A. Fraud: Tendering Falsified Rulings of the Trial Court in Party Prepared Orders

29. During final divorce proceedings, the trial court gave specific instructions to Defendants not to tender any documents whatsoever, and to reserve all matters for the court except for a final decree declaring the parties divorced.

30. Defendants plainly acknowledged, and then later recognized the court's instructions themselves explicitly, in a final decree prepared by Defendants, simply declaring the parties divorced. The title of this party prepared order, approved for entry by both Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD was, FINAL

7

Copy

DECREE GRANTING DIVORCE AND **RESERVING ALL OTHER ISSUES.** Plainly Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD both recognized the instructions of the trial court as evidenced in the title of that document.

31. After a passage of time, knowing the heavy docket schedule of the trial court, anticipating that the trial court would no longer be mindful of the case, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD surreptitiously tendered another order for the court to sign on June 14, 2016, forty-two days after the final hearing.

32. In this tendered order approved for entry by both Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD and signed by Defendant PAMELA ANDERSON TAYLOR, they awarded attorney fees to their client, despite specific instructions from the court to reserve all matters and, despite their acknowledgement of the court's instructions in the previous order they tendered, and despite the plain language of the trial court judge stating he was not making a ruling on the matter of attorney fees.

33. Plaintiff asserts, and evidence will show, that Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD anticipated that the trial court judge would no longer be mindful of his statements, nor of the case in general, due to the heavy docket schedule of the court at such a later date.

34. Plaintiff asserts, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD intentionally tendered this order against the clear instructions of the trial court in an effort to maliciously defraud Plaintiff of escrowed attorney fees and to make other deliberations on behalf of the court to fraudulently protect their client from her spoliation

8

Copy

of evidence, material, perjury, and failure to comply with a court order to comply with discovery.

35. Plaintiff further asserts, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD anticipated, and took advantage of, the trial court's misplaced trust in the tendering of an order by officers of the court, attorneys and Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

36. To falsely state the 'court's ruling' and with themselves 'awarding' escrowed attorney fees to their client, plainly evidences fraud in that it is an: (1) intentional misrepresentation of a material fact: the judge plainly did not make a ruling, (2) with knowledge of the representation's falsity: they knew the judge did not rule on the matter, (3) and an injury was caused by the trial court's reasonable reliance on the representation: Plaintiff was defrauded of this monies, and (4) Defendant's misrepresentation knowingly involved a past or existing fact, the evidence shows the court did not rule, therefore it was an existing fact, **thus plainly demonstrating all the elements of fraud, pursuant to which, Plaintiff has a cause of action, against which Plaintiff has a rightful claim for relief.**

37. Furthermore, to tender an order in direct contradiction of the court's statements and against the court's instructions, is even more incredulously fraudulent, in that Defendants were composing fraudulent rulings expressly not made by a judicial official.

38. This surreptitious order also included further 'decisions' and 'deliberations' of the trial court regarding Plaintiff's motions for Rule 37 sanctions and other matters such as Plaintiff's

9

Copy

Motion for Equitable Distribution of Marital Assets, which were also in direct contradiction

of the trial court's statements that Plaintiff will evidence at trial.

39. Defendants action in tendering this order was also fraudulent inducement of a judicial

official and fraudulent misrepresentation of statements made by a judicial official.

40. During the final hearing of divorce proceedings on May 3, 2016, the trial court made the

following statements;

> THE COURT: ... Okay? Do you have any questions for me before we
> conclude today's proceedings?
> MR. GENTRY: **Just ask about attorney fees**, Your Honor.
> THE COURT: **I'M NOT GOING TO MAKE A DECISION ON**
> **THAT TODAY. I WANT TO GO BACK AND I WANT TO**
> **REVIEW THE FILE. I CAN MAKE THAT DECISION BEFORE**
> **YOU SUBMIT YOUR FINDINGS OF FACT AND**
> **CONCLUSIONS OF LAW**, but I want to go back and look at the
> different motion hearings that we've had before I make a decision on that.
> **May 3, 2015 Transcript p. 467**
> THE COURT: ... **THERE'S NO REASON TO SUBMIT**
> **ANYTHING OTHER THAN FINDINGS OF FACT AND**
> **CONCLUSIONS OF LAW.** ... May 3, 2015 Transcript p. 466
>
> THE COURT: ...I believe I'm going to declare the parties divorced ...,
> which means that you're divorced effective today. **And, Mr. Lankford,**
> **if you want to submit a decree declaring the parties divorced today**
> **RESERVING ALL OTHER ISSUES FOR RESOLUTION BY THE**
> **COURT**, we'll go ahead and sign that.
> The Court further stated; ...**BUT I THINK I'M GOING TO**
> **SIMPLY DECLARE THE PARTIES DIVORCED TODAY**.
> MR. LANKFORD: Thank you, Your Honor. **May 3, 2015 Transcript**
> **Volume 4 p. 468**

41. As noted in the above statements, **the Court did not make a ruling on Husband's Motion**

**to Return Escrowed Attorney fees.**

10

Copy

42. As noted in the above statements, **the Court gave specific instructions not to tender any orders and not to submit anything other than findings and conclusions not once but four times.**

43. In this case, the evidence is plain that the court did not rule on the matter of attorney fees.

44. In this case, the evidence is plain that the court did not state the legal grounds upon which to deny Husband's Motion for a default judgement pursuant to Rule 37.02 as sanction for Wife's Spoliation of Evidence and failure to comply with a court order to provide discovery which 'deliberations' the transcripts plainly evidence, that the trial court did not discuss in any way whatsoever.

45. Not only is the evidence plain that the Court did not rule on matters included in the order tendered by Wife's counsel but the order is contradictory of the Court's own statements as well as contradictory to the Court's apparent intent. Not only is Defendants' action in tendering this surreptitious order tortious fraud, but Defendant's actions also constitute abuse of process in surreptitiously obtaining an order of the court plainly not ruled upon.

46. The unfortunate fact that the trial court judge signed this surreptitious order does not relieve their culpability of fraud or abuse of process. To say this is true, flies in the face of all case law precedence where victims have been misled through fraud to enter into unconscionable contracts or legal agreements. Simply because the trial court judge was duped through misplaced trust, and or, a short memory, does not negate the fact of fraud nor abuse of process, just the same as a victim of fraud who was fraudulently induced does not relieve tortious fraud.

11

47. Defendants may also argue that Plaintiff objected to the order and pursuant to the local rules of Sumner County which states, if objections exist as to an order, the objecting party shall file in writing the objection and the court shall determine the appropriate order or direct further proceedings.

48. Plaintiff did file an objection to Defendants' surreptitious order pursuant to Rule 5.02 Local Rule of Practice for Sumner County, but Defendants have reason to know that the trial court does not read Husband's objections. During a hearing of Plaintiff's Motion to Alter, Plaintiff proved the trial court judge did not read Plaintiff's previous objection to another surreptitious order referenced in Count II B. below.

49. Defendants may also somehow also try to argue res judicata, but this affords Defendants no protection either. As the Court of Appeals stated in another fraud case case Stacks v. Saunders, 812 SW 2d 587 - Tenn: Court of Appeals, Western Section 1990;

> Neither of these claims are barred by the doctrine of res judicata. A judgment which is obtained through extrinsic fraud does not have a res judicata effect, Nobes v. Earhart, 769 S.W.2d 868 (Tenn. Ct. App. 1988),

50. In the case Hargis v. Collier 578 S.W.2d 953 (1978), the Court of Appeals of Tennessee, Middle section stated;

> Plaintiff says the Court's action was error because the finding of facts and the making of conclusions of law and **basic decisions are judicial functions and cannot properly be performed by counsel for either of the parties.**
> **With this statement, we are in agreement.** Hargis v. Collier 578 S.W.2d 953 (1978), the Court of Appeals

## B. Fraud: Tendering Falsified Rulings of the Trial Court in Party Prepared Orders

12

Copy

51. Similar to the circumstances noted in Count II A. above, Defendants also tendered another surreptitious party prepared order on or about August 27, 2015.

52. Just as evidenced in Count II A. above, the trial court did not rule on attorney fees in an order signed on September 9, 2015 either, but Defendant's tendered an order just the same, awarding their client attorney fees in defiance of case law precedence; that in order to award attorney fees, there must be need on part of the recipient of alimony *in solido*, and ability to pay by the other spouse pursuant to Tenn. Code Ann. § 36-5-101(d) neither of which were or are true in this case.

## COUNT III

## ABUSE OF PROCESS

53. Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations and statements contained in paragraphs 6 through 16 of the General Allegations, above, inclusive.

54. Abuse of Process is a tort for which Tennessee Courts have long recognized a remedy. See Priest v. Union Agency, 174 Tenn. 304, 125 S.W.2d 142 (1939).

55. The two elements to recover for abuse of process includes: " (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" Id. (quoting Priest, 174 401*401 Tenn. at 307, 125 S.W.2d at 143); see also Donaldson, 557 S.W.2d at 62.   Both elements are clear and present and substantiated by factual evidence in this tort as stated below.

13



56. Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD made improper use of process so as to defraud Plaintiff of monies, and to win their case at all costs; even at the cost of abandoning their rules of professional responsibility and violating TENN. SUP. CT. R. 8, Tennessee Rules of Professional Conduct and specifically Rules 3.3, 3.2, 3.4, 3.5 and 8.4, and as further underlying motive, as a malicious response to Plaintiff's tenacious persistence at fighting Defendants' dilatory behavior and obstruction of evidence.

## A. Abuse of process: Tendering Falsified Rulings of the Trial Court in Party Prepared Orders

57. Not only is Defendant's action in tendering their surreptitious orders tortious fraud as discussed in Count II A. and B. above, but Defendant's actions also constitute abuse of process in surreptitiously obtaining an order of the court plainly not ruled upon.

58. In Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD tendering their surreptitious orders, they were abusing the trust of the court and abusing judicial proceedings and due process in Defendants tendering party prepared orders required to be reflective of the court's deliberations and rulings but were instead in direct contradiction of the court.

59. Tendering orders against the court's instructions and without the court's rulings is a blatant abuse of process and a tortious act.

## B. Abuse of Process: Obstruction of Evidence

60. In the case Givens v. Mullikin ex rel. McElwaney, 75 SW 3d 383 - Tenn: Supreme Court 2002, our Supreme Court quoted the Court of Appeals of The State of New York as follows;

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 14 of 41 PageID #: 1302

Copy

> **"when a party abuses process[,] his tortious conduct injures not only the intended target but offends the spirit of the legal procedure itself,"** id. 380 N.Y.S.2d 635, 343 N.E.2d at 281, the court further stated that [w]hile it is true that public policy mandates free access to the courts for redress of wrongs and our adversarial system cannot function without zealous advocacy, it is also true that legal procedure 402*402 must be utilized in a manner consonant with the purpose for which that procedure was designed. Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party. Id. 380 N.Y.S.2d 635, 343 N.E.2d at 283 (citations omitted).

The same is true in in this case. Defendant(s) so blatantly abused the discovery process that their actions were tortious and offensive to the legal process.

61. On November 6, 2014, Plaintiff's Counsel sent Defendant PAMELA ANDERSON TAYLOR as counsel for her client, his Request for Production of Documents from Defendant's client.

62. As of January 29, 2015, Defendant PAMELA ANDERSON TAYLOR did not respond to Plaintiff's Request for Production of Documents and Plaintiff's counsel sent a letter to Defendant PAMELA ANDERSON TAYLOR stating;

> Our office sent Interrogatories and Request for Admissions to your office for Ms. Gentry to answer the 6th day of November, 2014. As of the date of this letter our office has not received Ms. Gentry's responses. Please submit Ms. Gentry's responses to our Interrogatories and Request for Production of Documents within (10) days otherwise we will have to file a Motion to Compel Discovery with the courts.

63. Defendant did not respond to Plaintiff's counsel's letter in complete disregard of the discovery process.

64. During a hearing on March 10, 2015 Defendant PAMELA ANDERSON TAYLOR made a motion for Plaintiff to update his discovery while still not having provided her client's

Copy

discovery to Plaintiff. During that hearing, the following dialogue took place and Defendant

PAMELA ANDERSON TAYLOR stated;

> MS. TAYLOR: Okay. We asked to update his answers to the interrogatories to reflect his efforts to seek employment, information to reflect the new Mercedes automobile he has obtained during the divorce, and the other interrogatories that I state just to update. Then we had, as I said, the computer purchased by Sweet Wise. We wanted that returned as an asset of the business. And there was also a camera. In a discussion with Mr. Gentry's prior attorney, he did return some of the items associated with Sweet Wise, one of which was a camera. However, the SD card was not in the camera, and that should be provided in response to the request for production of documents. And then as we stated, the MacBook, and then the return of the original documents and computers. So, again, a reasonable date for the completion of all those is what we would ask from the Court.
> THE COURT: Okay. Thank you, Ms. Taylor. Ms. Perky. And I know you have a motion pending as well, so we'll talk about that in a little bit. March 10, 2015 Transcript p. 14-16

Plaintiff's counsel responded stating;

> MS. PERKY: Sure, Your Honor. With respect to -- first of all, Your Honor, Mr. Gentry responded fully and completely to discovery. That's our position. I think that what Ms. Taylor is requesting for us to do is to update our discovery. We've also propounded discovery which has not been answered. **It's three months overdue. We've asked for them to respond. And instead of responding, they've said, Actually, now we want you to supplement and update with documents and information that you've received since you provided your discovery responses back in November to the present. Your Honor, I don't think that that's the way discovery works.** I think that they have an obligation to respond. And then if a party says, I would like for you to update it, then you do it. So, I mean, for me, I don't feel like this motion was necessarily filed in good faith, and we would like attorney's fees for it. March 10, 2015 Transcript p. 14-16

A little later in the dialogue.

> MS. TAYLOR: As to Ms. Gentry's discovery, Your Honor, **that is actually my fault that it didn't get out.** My client has been working on it, because she is the owner of the business and they asked for these records, there's a large volume of records to be -- to be produced. **March 10, 2015 Transcript p. 21**

16

Copy

A little later in the dialogue.

> MS. TAYLOR: Mr. Turner and I did not -- and I know this is prior to Ms. Perky and the motion, **but we had an agreement that we were working on the information to send to Mr. Alexander before we finished the formal discovery.** So that's where we were on that. **We can certainly have that to Ms. Perky within seven days,** Your Honor.

65. The court should note, that Defendant PAMELA ANDERSON TAYLOR'S statement about an agreement is contrary to the evidence of Plaintiff's counsel, Mr. Turner's letter dated January 29, 2015 where Plaintiff's counsel stated;

> As of the date of this letter our office has not received Ms. Gentry's responses. Please submit Ms. Gentry's responses to our Interrogatories and Request for Production of Documents within (10) days otherwise we will have to file a Motion to Compel Discovery with the courts.

66. As noted in a court order, Defendant's client was ordered to respond to discovery by March 25, 2015.

67. Plaintiff did not receive discovery until April 1, 2015, and the discovery provided was incomplete and missing the most important element: evidence to be used against him. Defendant's client's discovery also did not include hidden bank and credit card accounts their client was using to embezzle funds from Plaintiff's jointly owned business.

68. Question 3 of Plaintiff's First Request for Production of Documents, was worded as follows;

> Provide each and every letter, note writing, photograph, audio tape, video tape, receipt, or item of any description whatsoever, which you say proves, or tends to prove, any grounds for divorce, which you claim to have against your spouse; or which you say constitutes a defense to any of her claims for divorce against you.

**Defendant's client's response to Question 3 stated;**

Copy

I am continuing to gather documents and sort through thousands of emails in response to the Request. I will supplement my response to this Request when I have gathered all of the documents.

69. In Defendant's client's response above, and statements made to the court, it should be noted that;

    a. Defendant's client was first served a request for discovery on November 16, 2014.

    b. Defendant's client was sent a request to respond to discovery on January 29, 2015

    c. **Defendant PAMELA ANDERSON TAYLOR asserted to the court, as evidenced in the transcript, that it was her fault for not providing discovery.**

    d. The court ordered Defendant's client to respond to discovery by March 25, 2015.

    e. Defendant's client claims to have been encumbered in gathering documents sent to the valuation specialist.

    f. The documents provided to the valuation specialist do not take much time at all to prepare and assemble, as that data is well organized and stored on the company server. Providing most all of the data to the valuation specialist was a simple matter of selecting a PDF file and right clicking on the item and selecting 'print' from the pop up menu. Right click, print, Right click print. At most, it should have only taken Defendant's client a couple hours to assemble the data for the valuation specialist, certainly no more than a day.

    g. **Defendant's client had 129 days between March 25, 2015 and November 16, 2016, to provide her response to Husband's Request for Production of Documents and still did not respond to one of the most important elements in the request for production of documents; Question #3**

70. On February 18, 2016, **almost one year later,** Plaintiff sent an email to Defendant PAMELA ANDERSON TAYLOR specifically requesting a response to Question 3 and even highlighted his request in bold face font. In this email to Defendant, Plaintiff stated;



Additionally, **in addition to undisclosed credit and bank accounts,** my first request for production of documents has not been fulfilled as required by law. In response to Question 3 your client stated **"I am continuing to gather documents and sort through thousands of emails in response to the Request. I will supplement my response to this Request when I have gathered all the documents"** A copy of your client's response is included in the record as EXHIBIT 1 of my "Response to Wife's Motion to Quash Any and All Party Subpoenas and Provide Date Certain for Discovery Update Prior to Trial" Your client has had more than ample time to prepare a response. I will continue to follow up in this regard until I receive a response similarly to how I followed up regarding your previous obstruction of evidence.

71. **Defendant intentionally did not respond** to Husband's February 18, 2016 email. Plaintiff will show at trial, that Defendant timely receives emails but picks and chooses what emails to which she will respond to.

72. Plaintiff sent a follow-up request on February 19, 2016 and again **Defendant did not respond.**

73. Plaintiff sent another follow-up request for the same on February 22, 2016 **and again Defendant PAMELA ANDERSON TAYLOR did not respond.**

74. Plaintiff sent yet another follow-up request for the same on February 25, 2016 **and yet again, Defendant PAMELA ANDERSON TAYLOR did not respond.**

75. On April 11, 2016, exactly five-hundred and twelve days (512) after Plaintiff's initial November 16, 2014, request for production of documents, Defendant's client finally responded to Plaintiff's request and provided a so called *"update"* to her discovery and finally responded to Question 3; again **one of the most important, if not the most**

19

**important, element of discovery.** Defendant's client continued to fail to include discovery for hidden bank and credit card accounts.

76. In Defendant's client's response to Question 3, their client provided approximately five-hundred (500) pages of documents. Most of these documents were dated in 2014.

77. In providing such voluminous amounts of evidence some five-hundred and twelve days (512) after the initial request, Plaintiff was not afforded ample time to update his discovery with offsetting evidence that would disprove Defendant's client's evidence and Plaintiff was not afforded ample time to prepare arguments to refute her client's evidence.

78. Defendant PAMELA ANDERSON TAYLOR admitted it was her fault initially for not providing discovery.

79. Defendant PAMELA ANDERSON TAYLOR falsely stated she had "an agreement" with Plaintiff's counsel and her false statement is evidenced as contradictory to Plaintiff's counsel's January 29, 2015 letter referenced in item 65 above, which clearly shows there was no such "agreement"

80. Defendant PAMELA ANDERSON TAYLOR intentionally ignored numerous requests for discovery so as to give an unfair advantage to her client in a plain and palpable abuse of process. In summary;

    a. Defendant PAMELA ANDERSON TAYLOR first received a request for production of documents on **November 6, 2014.**
    b. Defendant PAMELA ANDERSON TAYLOR received a second request on **January 29, 2015.**
    c. On March 10, 2015 **Defendant PAMELA ANDERSON TAYLOR admitted it was her fault** for not complying with discovery rules.

Copy

    d. On March 10, 2015 **Defendant PAMELA ANDERSON TAYLOR falsely asserted there was an agreement** to delay compliance with discovery rules in contradiction of evidential matter.

    e. On March 10, 2015 Defendant's client was ordered to comply with discovery by **March 25, 2015**.

    f. In providing incomplete discovery on April 1, 2015 in defiance of the court's order, Defendant PAMELA ANDERSON TAYLOR falsely asserted her client was too busy to provide the most important part of discovery in complete disregard of an order to comply.

    g. Defendant PAMELA ANDERSON TAYLOR completely ignored Plaintiff's **February 18, 2016** email request to comply with the trial court's order.

    h. Defendant PAMELA ANDERSON TAYLOR completely ignored Plaintiff's **February 19, 2016** email request to comply with the trial court's order.

    i. Defendant PAMELA ANDERSON TAYLOR completely ignored Plaintiff's **February 22, 2016** email request to comply with the trial court's order.

    j. Defendant PAMELA ANDERSON TAYLOR completely ignored Plaintiff's **February 25, 2016** email request to comply with the trial court's order.

81. Defendant PAMELA ANDERSON TAYLOR'S behavior plainly demonstrates a complete disregard for discovery rules. Her behavior further demonstrates a complete disregard for the orders of the court in contempt of court. Defendant PAMELA ANDERSON TAYLOR'S behavior was a blatant abuse of process and an insult to **"spirit of the legal procedure itself"**. It should never take five-hundred and twelve days (512) to procure discovery in a simple divorce matter.

## C. Abuse of Process: Quashing Subpoena for Documents Not Disclosed in Discovery, Obstructing Evidence.

82. As noted in the above referenced email sent by Plaintiff to Defendant PAMELA ANDERSON TAYLOR, Plaintiff stated;

Copy

> Additionally, **in addition to undisclosed credit and bank accounts, my** first request for production of documents has not been fulfilled as required by law.

83. In referencing undisclosed credit and bank accounts in this email, Plaintiff was referring to hidden accounts his former spouse was using to embezzle funds from their jointly owned business.

84. Since Defendant PAMELA ANDERSON TAYLOR, was already guilty of Abuse of Process in facilitating her client's non-compliance with a court order to provide discovery and because Defendants' client was using hidden non-disclosed credit and bank accounts to embezzle funds from the business, Plaintiff issued a subpoena for statements of those non-disclosed and hidden accounts.

85. In response to Plaintiff's subpoena, in a plain abuse of process, on February 15, 2016, Defendants filed a motion signed by Defendant PAMELA ANDERSON TAYLOR, listing both Defendants as signatories. This motion was titled <u>WIFE'S MOTION TO QUASH ANY AND ALL PARTY SUBPOENAS AND PROVIDE DATE CERTAIN FOR DISCOVERY UPDATE PRIOR TO TRIAL.</u>

86. On its face, this is an illegal and improper motion and a plain abuse of process. A litigant cannot motion to tie the hands of their opponent by denying access to evidence through subpoenas. In consideration that Defendants were taking this action so as to prevent access to evidence of hidden bank and credit accounts used to hide and dissipate marital assets is beyond the tortious act of abuse of process. This action by defendants further constitutes

22

fraud and is an affront to the judicial process so profound it insults common decency almost beyond belief.

87. The improper use of and abuse of process was to obstruct access to evidence that should have been disclosed in discovery.

88. Plaintiff further asserts that Defendants filed this motion knowing the trial court judge would not hear Plaintiff's arguments in violation of Plaintiff's basic civil right to be heard.

89. The evidence will show that; Plaintiff's civil rights were in fact violated and Plaintiff was not allowed to argue the illegality of such a fraudulent and malicious motion filed with such ill intent that any member of our society would wholeheartedly denounce such a corruption of the judicial process.

## D. Abuse of Process: Tendering a Falsified Opinion of Court

90. On August 7, 2015, Plaintiff's Motion to Recuse was partly heard by the trial court judge. The trial court judge denied Plaintiff's Motion to Recuse and signed the party prepared order tendered by Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD.

91. As discussed above, Plaintiff objected to this order due to the fact that Defendants fraudulently awarded attorney fees to their client. Plaintiff also objected to this order because it failed to satisfy Tenn. Sup Ct. R. 10B § 1.03 in that the trial court did not state its basis for denying Plaintiff's first motion to recuse. Rule 10B paragraph 1.03 Code of Judicial Conduct states; If the motion (to recuse) is denied, the judge shall state in writing the grounds upon which he denies the motion.

23

92. Plaintiff properly filed an objection to the order, prior to its execution by the trial court on August 28, 2015. Plaintiff's objection respectfully referenced the requirements of a judge pursuant to Rule 10B (1.03)

93. Rule 5.02 Local Rule of Practice for Sumner County states; If objections exist as to an order, the objecting party shall file in writing the objection and the court shall determine the appropriate order or direct further proceedings.

94. Because the trial court signed the order that did not satisfy Rule 10B (1.03), **it must be true that either the trial court did not read Plaintiff's objection,** in violation of the Local Rule of Practice for Sumner County, **or alternatively, it must be true that the trial court determined in error that it was not subject to the requirements of Rule 10B (1.03).**

95. Evidently, Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD did read Husband's objection and recognized the insufficiency of their party prepared order, and without the trial court making request, Defendants surreptitiously tendered a document to satisfy Rule 10B. The title of this document is <u>FINDINGS OF FACT AND CONCLUSIOSN OF LAW IN SUPPORT OF ORDER DENYING HUSBAND'S MOTION TO REQUEST THE HONORABLE JUDGE THOMPSON TO RECUSE HIMSELF.</u>

96. This action by Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, constitutes Fraud and Abuse of Process for a number of reasons in that; (1) it fraudulently represents to the public the deliberations of the judge when in fact it is obviously and plainly findings and conclusions manufactured by the Defendants, (2) it is an

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 24 of 41 PageID #: 1312

ex parte communication suggesting collusion and civil conspiracy with the trial court judge, (3) it was tendered without notice to Plaintiff, (4) it was tendered without first proper filing with the court clerk and, (5) it was tendered without request or instruction of the trial court judge.

97. The transcripts prove this document was surreptitiously tendered to the trial court judge without proper filing with the court clerk and without notice to Plaintiff, in an effort to hide their Fraudulent Action and Abuse of Process. During the hearing the following dialogue took place;

> MR. LANKFORD: Mr. Gentry brought up the issue of Rule 10 about findings of fact. We've drafted a response back. The Court has already entered the order. But just to lighten the Court's mood --
> MR. GENTRY: I didn't hear. What is this?
> MR. LANKFORD: We have proposed findings of fact and conclusions of law on the motion to recuse that we've presented to the Court. And we can provide that to the Court in a word document.
> THE COURT: Can you send that to scheduling?
> MR. GENTRY: I haven't gotten a copy of this, have I?
> MR. LANKFORD: No, you have not.
> THE COURT: Make sure Mr. Gentry has a copy and then submit it through the scheduling, word version through scheduling by e-mail.
> MR. LANKFORD: For the record, I just passed a copy of the findings of fact to Mr. Gentry.
> THE COURT: Okay. If you'll just note that. I'm going to let you take the file with the court officer in there so you can file this, file your proposed findings of fact with the court clerk and then submit a copy via e-mail. He's going to submit via e-mail what he just handed you. Okay?
> MR. GENTRY: Yes, Your Honor. Tell me what to do.
> MR. LANKFORD: I submitted a clerk's certificate of service on that findings of fact.
> THE COURT: That will be fine. Thank you. All right.

98. As noted in the disturbing dialogue above, the fraudulent document tendered by Defendants constitutes Fraud and a plain Abuse of Process. Defendant BRENTON HALL

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 25 of 41 PageID #: 1313

LANKFORD, plainly knew his gross misconduct in making the false statement "I submitted a clerk's certificate of service on that findings of fact."

99. Defendant, BRENTON HALL LANKFORD, knew his misconduct and tried to cover up his misconduct by fraudulently making the statement he had submitted a clerk's certificate of service when in fact he did not.

100. Plaintiff has in his possession this fraudulent document and it is unsigned by either Defendant.

101. Furthermore, in suggesting the court accept an electronic version, evidences the intentional fraud in providing a copy to the court with which the court could transform the document from a party prepared document into a document appearing to come from the court's own hand and the court's own deliberations, which is obviously untrue.

102. In Defendant, BRENTON HALL LANKFORD stating *"We've drafted a response back."*, when in fact, their surreptitious document is not a response but an attempt to fraudulently fulfill the plain responsibility of the judiciary, further evidences their fraudulent act, civil conspiracy and abuse of process.

103. This action by Defendants is a disturbing corruption of the judicial process made in an attempt to deny Plaintiff Appellate Court relief in further proceedings. It was an attempt to defraud Plaintiff of his absolute right of appeal.

## E. Abuse of Process: Garnishing Plaintiff's Funds

104. On November 27, 2015, in further defrauding Plaintiff of his monies, Defendant's used their ill-gotten award of attorney fees to issue an order of garnishment against Plaintiff's

Copy

personal bank account and Plaintiff's bank was required to withdraw the entire balance of Plaintiff's bank account. Those funds in Plaintiff's bank account were earmarked for payment of his mortgage on his home which was in default and almost foreclosed upon. This action caused Plaintiff's scheduled auto-drafts from this bank account to be declined due to insufficient funds.

105. This malicious action by Defendants resulted in Plaintiff being forced to borrow funds from his new start-up business so as to be able to keep his home. This caused Plaintiff's business to be unable to satisfy its debts and greatly contributed to the failure of the business.

106. This intentional and malicious action by Defendants caused Plaintiff great emotional distress and great financial harm.

## F. Abuse of Process: Dilatory Behavior

107. TENN. SUP. CT. R. 8, Tennessee Rules of Professional Conduct, RULE 3.2: EXPEDITING LITIGATION states;

> Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, such as illness or a conflict with an important family engagement, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. **Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose.** It is not a justification that similar conduct is often tolerated by the bench and bar.

108. Plaintiff's counsel filed a Petition for Contempt Or In the Alternative Pendente Lite Support on October 28, 2014. A hearing of that matter was not scheduled to be heard until

Copy

January 5, 2015 due to the dilatory behavior of Defendant PAMELA ANDERSON TAYLOR.

109. That January 5, 2015 hearing date was then rescheduled to be heard on January 22, 2015 due to the dilatory behavior of Defendant PAMELA ANDERSON TAYLOR.

110. The January 22, 2015 hearing was then continued to be heard on March 10, 2015 caused by Defendant PAMELA ANDERSON TAYLOR agreeing and then changing dates and not responding to emails or phone calls.

111. The March 10, 2015, hearing ran late until 8PM or so, and was ordered to be continued at a later date. During the hearing, Defendant exhausted a minutia of irrelevant details to delay proceedings. Shortly after conclusion of that hearing, Plaintiff's attorney then began attempting to coordinate a continuation date with Defendant PAMELA ANDERSON TAYLOR with no success.

112. Attorney for Plaintiff contacted Defendant PAMELA ANDERSON TAYLOR on March 17, 2015 and provided two dates, May 14 and June 11, 2015 for the continuation hearing. Defendant PAMELA ANDERSON TAYLOR did not respond.

113. Attorney for Plaintiff sent a follow up email on March 25, 2015. Again, Defendant PAMELA ANDERSON TAYLOR ignored her email.

114. On March 27, 2015, Attorney for Plaintiff again contacted Defendant PAMELA ANDERSON TAYLOR a third time, inquiring about a date for the continuation hearing. Defendant PAMELA ANDERSON TAYLOR intentionally provided a "half-answer"

Copy

stating she had a conflict with the May 14, 2015 date and ignored and didn't reference the alternative June 11, 2015 date.

115.    On March 30, 2015, Attorney for Plaintiff then specifically inquired about the June 11, 2015 date and Defendant PAMELA ANDERSON TAYLOR gave another half response that she *"may be out of town."*  Clearly, these lack of responses and half responses by Defendant PAMELA ANDERSON TAYLOR to Plaintiff's attorney were obvious dilatory practices.  This intentional misconduct by Defendant PAMELA ANDERSON TAYLOR created unnecessary delay and caused unnecessary legal expense for Plaintiff in that Plaintiff had to pay for his attorney to prepare a Motion to Set.

116.    After Plaintiff's attorney forwarded a copy of the Motion to Set to Defendant PAMELA ANDERSON TAYLOR, she finally coordinated a date of July 1, 2015 for the continuation hearing.  Incredulously, a task as simple as coordinating a court date took nearly one month to complete!

117.    A simple task that should have taken only a few minutes on the phone between attorneys instead took weeks to complete because of Ms. Taylor's dilatory practices.  This is exactly a repeat by Ms Taylor in that it took from October 28, 2014 to December 10, 2014 to perform a simple task of scheduling a court date for the initial hearing.

118.    During this period, Defendant PAMELA ANDERSON TAYLOR knew Plaintiff was without income and was unable to even pay for his basic needs including his mortgage, utilities and even food.  In fact, Plaintiff's attorney even sent a letter pleading for financial assistance for Plaintiff which was maliciously declined.

119.  Because of Defendant PAMELA ANDERSON TAYLOR's misconduct in this regard, Plaintiff's attorney eventually withdrew for non-payment leaving Plaintiff without legal representation and without resources to obtain new legal representation.

120.  Defendant's behavior was a malicious intent to cause Plaintiff intentional financial harm with the intent of denying him legal representation and thus denying him access to the court resulting in a violation of his basic civil right to heard.

## COUNT IV

## CIVIL CONSPIRACY

121.  Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations and statements contained in paragraphs 6 through 16 of the General Allegations, above, inclusive.

122.  Because Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD conspired together to defraud Plaintiff and abused process to cause Plaintiff financial and emotional harm without regard of common decency, Defendants are guilty of Civil Conspiracy as well as Fraud and Abuse of Process.

123.  In the case Warwick v Warwick, No. E2011-01969-COA-R3-CV, Court of Appeals of Tennessee, at Knoxville, the Appellate Court referred to the Kincaid v. SouthTrust Bank case in defining a cause of action for civil conspiracy as follows:

> The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Conspiracy claims must be pled with some degree of specificity.

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 30 of 41 PageID #: 1318

Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim. **Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006**

124. As referenced above, Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD, plainly conspired together for a concerted unlawful purpose in multiple overt acts that caused great financial and emotional harm to Plaintiff, definitively substantiating Plaintiff's claim in this regard.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125. Plaintiff realleges as though fully set forth at length, and incorporates herein by reference, all of the allegations and statements contained in paragraphs 6 through 16 of the General Allegations, above, inclusive.

126. Citing the case, Bain v. Wells, 936 SW 2d 618, Tennessee Supreme Court 1997, The Supreme Court of Tennessee included the following in its opinion on the case:

> In Medlin v. Allied Inv. Co., 217 Tenn. 469, 479, 398 S.W.2d 270, 274 (1966), this Court recognized the tort of outrageous conduct, quoting with approval § 46(1) of the Restatement (Second) of Torts, which provides as follows:
>> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
> Accordingly, under Tennessee law, there are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. Id.; see also Johnson v. Woman's Hospital, 527 S.W.2d 133, 144 (Tenn. App. 1975).

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 31 of 41 PageID #: 1319



We emphasized in Medlin that liability for mental distress damages clearly "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." Id., 398 S.W.2d at 274 (internal quotations omitted). Although no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious, this Court has adopted and applied the high threshold standard described 623*623 in the Restatement (Second) of Torts as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

127. In this case, considering that Defendant's knowingly and intentionally tendered orders awarding attorney fees against the court's intent and the court's plain statements and against case law precedence, one would exclaim 'Outrageous'.

128. In knowingly and intentionally ignoring discovery rules in blatant disregard of discovery rules and a court order to comply, one would exclaim 'Outrageous'

129. In knowingly and intentionally quashing subpoenas for evidence that should have been provided in discovery, one would exclaim 'Outrageous'

130. In knowingly and intentionally falsifying an opinion of the court denying recusal, one would exclaim 'Outrageous'

32

131. In failing to give notice and surreptitiously tendering a falsified opinion of the court, one would exclaim 'Outrageous!'

132. In delaying proceedings with the purpose of denying a citizen's right to be heard, one would exclaim 'Outrageous!'

133. In conspiring to commit fraud, abuse of process and denying a person's right to be heard, one would exclaim 'Outrageous!'

134. All of these actions by Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD caused Plaintiff, severe emotional and mental anguish.

135. As a result of the actions by Defendants, Plaintiff became temporarily alcohol dependent for a period lasting several months as a means to dull the pain of injustice. Caused by Defendant's actions and their client's malicious actions, Plaintiff was left without healthcare and was unable to afford counseling or medical treatment for his mental suffering.

136. Plaintiff became obsessed with finding justice in the court and because the trial court judge did not appear to have any knowledge of marital law, Plaintiff spent hours upon hours writing numerous Memorandums of Law that were never even read by the trial court. This caused Plaintiff further mental anguish in learning and knowing the law while being denied his rights under the law.

137. As a result of Plaintiff's obsession with finding justice and proving his case, Plaintiff was unable to carry out his responsibilities and duties necessary to his new business causing him to lose clients.

33



138. After being tobacco free, since 1998, Plaintiff began again to use tobacco as a means to defray his mental anguish and reduce his alcohol dependency.

## DAMAGES SUFFERRED BY PLAINTIFF

139. As a result of Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff was left without health insurance and unable to afford medical care.

140. Without health insurance and unable to afford medical care, caused by Defendants, Plaintiff was unable to afford medical treatment for a large ping-pong ball sized tumor growing on his forehead which caused Plaintiff discomfort and great embarrassment.

141. Without health insurance and unable to afford medical care, caused by Defendants, Plaintiff was unable to afford medical treatment for a grape sized inflammation of the tendon in his left foot and a smaller inflammation on his right foot. These inflammations are attributed to Plaintiff's alcohol dependency caused by Defendants malicious infliction of emotional distress.

142. Without health insurance and unable to afford medical care, caused by Defendants, Plaintiff was unable to afford medical treatment for his hand which was diagnosed prior to divorce proceedings as calcium 'leaking' from a joint in his finger that would continue to cause irreparable nerve damage left untreated. Not only does the lack of treatment result in irreparable nerve damage but it affects Plaintiff's ability to type on a keyboard which affects his ability to earn a living.

143. As a result of their tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff has suffered, (1) the emotional distress of his utilities being turned off, (2) his mortgage going four (4) months into default and coming within ten (10) days of foreclosure, and his financial inability to even afford food for himself and his hearing assist service animal.

144. As a result of their tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff's credit rating was destroyed. As a Certified Professional Accountant and Finance Professional, this destroyed Plaintiff's ability to find work in his profession at the executive or director level greatly affecting Plaintiff's ability to earn a living.

145. As a result of Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff was defrauded of attorney fees that Defendant's fraudulently awarded to their client in the amount of $4,134.21 and $1,405.83.

146. In a document tendered to the trial court by PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD titled PLAINTIFF/WIFE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR CLASSIFICATION OF ASSETS AND LIABILITIES, DIVISION OF ASSETS AND LIABILITIES, AND ATTORNEY FEES AND EXPENSES, Defendant's PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD, referring to Plaintiff's earnings capacity stated in their brief, "He is operating what appears to be a successful business." They further stated Plaintiff "has an earning capacity of approximately $100,000.00 per year." These are Defendant's assertions. As a result of the failure of Plaintiff's business startup, Plaintiff was forced to

35

Copy

seek employment and recently took a position as a financial analyst in a position far below his previous earning capacity and far below his former executive level positions held in the past.

147.　As a result of Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff was unable to pay his vendors and was so incapacitated that Plaintiff was unable to perform the duties necessary in a start-up business causing Plaintiff's business to fail.

148.　Because of Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff lost his legal representation, which resulted in his loss of income during pendency from a patent pending product created by Plaintiff and from his jointly owned business in the amount of approximately $8,800 per month.

149.　Due to Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff's Pending Patent Application was jeopardized and lost. The proven income from this product provided Plaintiff and his former spouse, with gross profit of $821,000 over a three-year period.

150.　As a result of Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's tortious Fraud, Abuse of Process, and attorney misconduct, Plaintiff was wrongfully denied his fair share of the value of his jointly owned business with Plaintiff's

36



former spouse. The business was conservatively valued at $350,000 and Husband's share was 50% of that value.

151. Summary of damages suffered by Plaintiff;

## Summary of Damages and Valuations

| Description | Damage Suffered |
|---|---|
| Fraudulently Awarded Attorney Fees | 4,134 |
| Fraudulently Awarded Escrowed Attorney Fees | 1,406 |
| Income During Pendency 19 months 8,800/month | 167,200 |
| Business Valuation 50% | 150,000 |
| Harm From Physical and Emotional Distress | 250,000 |

| Description | Annual Damage Suffered | Approximate Present Value of Damage 10 years 5% discount rate |
|---|---|---|
| 10 Year Loss of Business Income | 100,000 | 772,173 |
| Income from patent pending product $821,000 ÷ 3 yrs | 273,667 | 2,113,181 |
| **Total Damages Suffered by Plaintiff** | $ | **3,458,095** |

## PUNITIVE DAMAGES

152. Since Defendants PAMELA ANDERSON TAYLOR, and BRENTON HALL LANKFORD's conduct was so contrary to a judicial proceeding caused by their Fraud, Abuse of Process, and attorney misconduct, and so egregious, Plaintiff asks that punitive damages be awarded to deter similar conduct and protect future litigants.

Case 3:17-cv-00020   Document 45-2   Filed 04/12/17   Page 37 of 41 PageID #: 1325

Copy

153.    In the case, Hodges v. SC Toof & Co., 833 SW 2d 896 - Tenn: Supreme Court 1992,

the Tennessee Supreme Court redefined how punitive damages should be awarded.  The

Supreme Court stated in it opinion as follows;

> Therefore, today we announce a new procedure aimed at providing
> specific criteria to guide a jury in deciding whether to award punitive
> damages and, if so, in what amount.
>
> As stated earlier, **Tennessee presently allows punitive damages in
> cases involving fraud, malice, gross negligence, oppression, evil
> motives, conscious indifference, and reckless conduct implying
> "disregard 901*901 of social obligations."** See Inland Container, 529
> S.W.2d at 45. Whatever this may have once meant, by contemporary
> standards it is both vague ("social obligations") and overbroad ("gross
> negligence"). We agree with those States that have refined their laws to
> restrict the awarding of punitive damages to cases involving only the
> most egregious of wrongs. Cf. Linthicum v. Nationwide Life Ins. Co.,
> 150 Ariz. 326, 723 P.2d 675, 680 (1986) (conscious action of a
> reprehensible character); Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me.
> 1985) ("malicious" commission of a tort). By thus restricting the
> availability of punitive damages, we seek to avoid "dull[ing] the
> potentially keen edge of the doctrine as an effective deterrent of truly
> reprehensible conduct." Tuttle, 494 A.2d at 1361. In Tennessee,
> therefore, a court may henceforth award punitive damages only if it finds
> a defendant has acted either (1) intentionally, (2) fraudulently, (3)
> maliciously, or (4) recklessly.

The Supreme Court of Tennessee, then went on to define specific criteria upon which punitive

damages are to be awarded.

> In a trial where punitive damages are sought, the court, upon motion of
> defendant, shall bifurcate the trial. During the first phase, the factfinder
> shall determine (1) liability for, and the amount of, compensatory
> damages and (2) liability for punitive damages in accordance with the
> standards announced above. During this phase, evidence of a defendant's
> financial affairs, financial condition, or net worth is not admissible.
>
> If the factfinder finds a defendant liable for punitive damages, the
> amount of such damages shall then be determined in an immediate,
> separate proceeding. During this second phase, the factfinder shall
> consider, to the extent relevant, at least the following:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

(A) The impact of defendant's conduct on the plaintiff, or

(B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in 902*902 excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

The trier of fact shall be further instructed that the primary purpose of a punitive award is to deter misconduct, while the purpose of compensatory damages is to make plaintiff whole.

After a jury has made an award of punitive damages, the trial judge shall review the award, giving consideration to all matters on which the jury is required to be instructed. The judge shall clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury is instructed.

154. Plaintiff further asks that punitive damages be awarded according to the criteria and process set forth by The Supreme Court of Tennessee.



**WHEREFORE PREMISES CONSIDERED, PLAINTIFF PRAYS UPON THE COURT:**

1. For this complaint to be filed and causing a summons to be issued upon the Defendants;

2. For a jury to be empaneled, try the facts of this case and render damages consistent;

3. For damages for non-economic and economic compensatory damages consistent with the Defendant's liability and the evidence of the Plaintiff's, as specified above.

4. For all litigation and discretionary cost to be reimbursed to the Plaintiff;

5. For such general and further relief to which Plaintiff is entitled.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

Copy

# Oath

State of Tennessee    )

County of _Davidson_

  I, John Anthony Gentry, after being first duly sworn according to law, do hereby make oath and affirm that all statements included in this Compliant, are true and correct to the best of my knowledge, information and belief

            _John Anthony Gentry_

John Anthony Gentry

Sworn to and subscribed before me, this

the _3rd_ day of _October_, 2016

_Michaelee B. Brissett_

Notary Public

My Commission Expires _05-08-17_



41