# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

JOHN ANTHONY GENTRY, sui juris/pro se )
                                              )
       Plaintiff                            )
                                              )    **CASE NO. 3:17-cv-00020**
               vs.                       )
                                              )
THE STATE OF TENNESSEE; )
PAMELA ANDERSON TAYLOR; )
BRENTON HALL LANKFORD; )    **JURY TRIAL DEMANDED(12)**
SARAH RICHTER PERKY; )
UNNAMED LIABILITY INSURANCE )
CARRIER(S) )
                                              )
       Defendants                        )

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS PAMELA TAYLOR AND BRENTON LANKFORD'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Comes now, Plaintiff John Anthony Gentry, and submits this Response and Incorporated Memorandum of Law proving that Defendants' Motion to Dismiss should be denied with prejudice, and state as follows.

Defendants falsely state that this action is about Plaintiff's dissatisfaction with the results of his divorce proceeding. This is a patently false statement. Plaintiff's Complaint is about repeated and gross violations by Defendants of Plaintiff's constitutionally guaranteed rights and Defendant's numerous violations of federal law that caused him harm. Plaintiff's Second Amended Complaint could not be more clear in this regard. Defendants assert the defense of Res Judicata under the Rooker-Feldman Doctrine and Litigation Privilege which are both false and failed defenses and Plaintiff will now prove beyond any doubt.

1

# RES JUDICATA UNDER THE ROOKER-FELDMAN DOCTRINE IS NOT A VALID DEFENSE

## A. State Court Proceedings Are Still Ongoing

The Supreme Court stated in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005;

> Variously interpreted in the lower courts, **the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S. C. § 1738.** See, e. g., Moccio v. New York State Office of Court Admin., 95 F. 3d (at 195, 199-200). (at 283)

As evidenced above, The Supreme Court plainly recognizes that States and lower District Courts are construing Rooker-Feldman far beyond the intent of the underlying opinions in those cases. In the Exxon case, the court plainly stated **the Rooker-Feldman Doctrine does not otherwise** override, supplant, or **augment <u>the circumscribed doctrines that allow federal courts to stay or dismiss proceedings</u> in deference to state-court actions**. The Supreme Court specifically stated in the Exxon case as follows;

> **The Rooker-Feldman doctrine, <u>we hold today</u>, is confined to cases of the kind from which the doctrine acquired its name**: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered **before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman <u>does not</u> otherwise override or supplant** preclusion doctrine or **<u>augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions</u>**. (at 284)

The Supreme Court could not have been more clear; "*We hold today... Rooker-Feldman is confined to cases... ...brought by state-court losers <u>before</u> the district court proceedings commenced*". The Supreme Court of the United States plainly stated Rooker Feldman only applies to cases where state-court judgements have been rendered before the

2

district court proceedings commenced. In this case, both the divorce action and the complaint of fraud, abuse of process, etc. against Defendants are still ongoing.

**EXHIBIT A** attached is a printout of the underlying divorce case still pending in the Tennessee Court of Appeals plainly showing the Appellate Record still checked out by Defendant Brenton Lankford, and the case is still pending submission of Appellee's Brief.

**EXHIBIT B** attached is a copy of Plaintiff's Notice of Hearing for his Motion To Alter pending to be heard on April 21, 2017, and accordingly final judgement has not been rendered in that case either. By this fact alone, application of the Rooker-Feldman Doctrine to this case is a "failed defense." Plaintiff asserts it is "incredibly misleading" to "falsely state" to this Honorable Court, that a final judgement has been rendered, when in fact that matter is still pending in state court. This Court should be offended as is Plaintiff.

## B. Plaintiff Is Not Complaining Of State Court Rulings

Plaintiff's Second Cause of Action in his Second Amended Complaint, against Defendant's Pamela Taylor and Brenton Lankford is for violations of federal law including extortion, racketeering, witness tampering, due process and obstructing justice pursuant to 18 U.S.C §§ 1341, 1346, 1512, 1951, 1952, and 1961, 1962. 42 U.S.C §§ 1983, 1985 and fourteenth amendment of U.S. Const.

Nowhere in Plaintiff's Second Amended Complaint does plaintiff complain about the rulings in either of the underlying litigation cases. Accordingly, the Rooker Feldman doctrine is wholly inapplicable.

"It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should... ... **We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution**", *ex parte Young US 123 (1908) at 143.*

3

As stated by the Supreme Court in 1908, for a federal court to decline exercise of jurisdiction which is given "would be treason to the Constitution." At ¶ 287 in Exxon v Saudi, the Supreme Court further stated:

> **Since Feldman, this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction**. The few decisions that have mentioned Rooker and Feldman have done so only in passing or to explain why those cases did not dictate dismissal. See Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U. S. 635, 644, n. 3 (2002)

Plaintiff is not complaining about state court judgements, which is obvious in reading his Second Amended Complaint.

The U.S. Court of Appeals for the Sixth Circuit, in the case Alexander v. Rosen 804 F.3d 1203 (2015) Sixth Circuit Ct. of App. also affirmed that the Rooker-Feldman Doctrine does not bar jurisdiction in a case very similar to this one. In that case, this Court stated:

> That doctrine does not apply here, because **Alexander's alleged injury did not emerge from the state court judgement**. He does not appeal the state court's child support decision, **he challenges the conduct** of the individuals who happened to participate in that decision. (at 1207)

The same is exactly true in this case, Plaintiff is not complaining about state court judgements. Plaintiff is complaining federal and constitutional laws were violated causing him harm. Surely, this court **must agree**, Plaintiff is not complaining about state court judgements and Res Judicata and Rooker Feldman are inapplicable doctrines to this case.

## C. Same Set Of Facts Do Not Preclude Or Abrogate Federal Jurisdiction Or Separate Causes Of Action.

Defendants further claim a defense of Res Judicata and cite as follows: A party asserting the defense of res judicata must show: "(1) that the underlying judgement was rendered by a court of competent jurisdiction; (2) that the same parties were involved in both suites; (3) that the same cause of action was involved in both suits; and (4) that the underlying judgement was on the merits." White v. White, 876 S.W.2d 837, 839-40 (Tenn. 1994).

4

The facts evidenced in Plaintiff's Second Amended Complaint show that attorneys and judges conspire together to thwart the law and Plaintiff asserts decisions were not rendered by a court of competent jurisdiction and by that fact, (1) above is a failed res requirement. The jury demanded by Plaintiff in this case should examine the facts and make a determination in that regard.

Plaintiff's Second Amended Complaint is for completely separate causes of action. The causes of action against Defendants Lankford and Taylor in state court were for fraud, constructive fraud, abuse of process and intentional infliction of emotional distress. Those are completely separate causes of from this case which again are for; violations of federal and constitutional law including extortion, racketeering, witness tampering, due process and obstructing justice pursuant to 18 U.S.C §§ 1341, 1346, 1512, 1951, 1952, and 1961, 1962. 42 U.S.C §§ 1983, 1985 and fourteenth amendment of U.S. Const. Therefore, res requirement (3) is also not satisfied.

Plaintiff further asserts and the facts will prove, the cases in the underlying litigation were not decided on the merits and res requirement (4) is also not satisfied.

Defendants then falsely state: "Plaintiff's claims are based on the same factual allegations asserted in the Davidson Lawsuit. Therefore, Plaintiff was fully capable of bringing any additional claims related to the same facts in the prior litigation which is a false and failed argument.

First, Plaintiff cannot bring suit in state court for violations of 18 U.S.C §§ 1341, 1346, 1512, 1951, 1952, and 1961, 1962. 42 U.S.C §§ 1983, 1985 and fourteenth amendment of U.S. Const. as those are matters of federal jurisdiction and not state court jurisdiction.

5

Second, it does not matter that the same set of facts pertain to multiple causes of action

and in different jurisdictions of state and federal courts. The following Supreme Court Opinions

prove Plaintiff's assertion is true as follows:

**Blockburger v. United States, 284 US 299 - Supreme Court 1932**

> In that case this court quoted from and adopted the language of the Supreme
> Court of Massachusetts in Morey v. Commonwealth, 108 Mass. 433: "**A
> single act may be an offense against two statutes**; and if each statute
> requires proof of an additional fact which the other does not, an acquittal or
> conviction under either statute does not exempt the defendant from
> prosecution and punishment under the other." Compare Albrecht v. United
> States, 273 U.S. 1, 11-12, and cases there cited. **Applying the test, we must
> conclude that here, although both sections were violated by the one sale,
> two offenses were committed**. (at 301)

**Albrecht v. United States, 273 US 1 - Supreme Court 1927**

> Of the nine counts in the information four charged illegal possession of
> liquor, four illegal sale and one maintaining a common nuisance. The
> contention is that there was double punishment because the liquor which the
> defendants were convicted for having sold is the same that they were
> convicted for having possessed. **But possessing and selling are distinct
> offenses.** One may obviously possess without selling; and one may sell and
> cause to be delivered a thing of which he has never had possession; or one
> may have possession and later sell, as appears to have been done in this case.
> The fact that the person sells the liquor which he possessed does not render
> the possession and the sale necessarily a single offence. **There is nothing in
> the Constitution which prevents Congress from punishing separately
> each step leading to the consummation of a transaction which it has
> power to prohibit and punishing also the completed transaction.** The
> precise question does not appear to have been discussed in either this or a
> lower federal court in connection with the National Prohibition Act; but **the
> general principle is well established.** Compare Burton v. United States, 202
> U.S. 344, 377; Gavieres v. United States, 220 U.S. 338; Morgan v. Devine,
> 237 U.S. 632. (at 11)

**Burton v. United States, 202 US 344 - Supreme Court 1906**

> **Another point made by the defendant is that he could not legally be
> indicted for two separate offenses,** one for agreeing to receive
> compensation in violation of the statute, and the other for receiving such
> compensation. **This is an erroneous interpretation of the statute, and does
> violence to its words.** It was certainly competent for Congress to make the
> agreement to receive, as well as the receiving of, the forbidden compensation
> separate, distinct offenses. The statute, in apt words, expresses that thought

6

by saying: "No Senator . . . shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered," etc. There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense. Or, compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated. In this case, the subject matter of the sixth count, which charged an agreement to receive $2,500, was more extensive than that charged in the seventh count, which alleged the receipt of $500. **But Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischief intended to be reached and remedied.** Therefore an agreement to receive compensation was made an offense. So the receiving of compensation in violation of the statute, whether pursuant to a previous agreement or not, was made another and separate offense. **There is, in our judgment, no escape from this interpretation consistently with the established rule that the intention of the legislature must govern in the interpretation of a statute. "It is the legislature, not the court, which is to define a crime, and ordain its punishment."** United States v. Wiltberger, 5 Wheat. 76, 95; Hackfeld & Co. v. United States, 197 U.S. 442, 450. (at 377)

In the Burton v. U.S. case above, even in a federal law "No Senator . . . shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered," made in a single grammatical sentence is recognized as two separate offenses both punishable. And as the U.S. Supreme Court stated "This is an erroneous interpretation... and does violence to the words." The same is true here in this case, for Defendants to assert res judicata for a state action that is completely separate from their federal law violations "does violence" to the U.S. Constitution and USC.

Even greater proof that res judicata is failed defense can be found in the following Supreme Court Opinion in the following case:

**Hicks v. Feiock, 485 US 624 - Supreme Court 1988**

> Nonetheless, if such a challenge is substantiated, **then the labels affixed either to the proceeding or to the relief imposed under state law are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law.** Ibid. T (at 631)

7

To strike the point home that res judicata is a failed defense, Plaintiff cites the following

Supreme Court Opinion:

**Allen v. McCurry, 449 US 90 - Supreme Court 1980**

> But in the context of the legislative history as a whole, this congressional concern lends only the most equivocal support to any argument that, in cases where state courts have recognized the constitutional claims asserted and provided fair procedures for determining them, Congress intended to override § 1738 or the common-law rules of collateral estoppel and res judicata. (at 99)
>
> **In reviewing the legislative history of § 1983 in Monroe v. Pape, supra, the Court inferred that Congress had intended a federal remedy in three circumstances:** where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation of a constitutional claim, **and where state procedural law, though adequate in theory, was inadequate in practice.** 365 U. S., at 173-174. **In short, the federal courts could step in where the state courts were unable or unwilling to protect federal rights.** Id., at 176. **This understanding of § 1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim.** (at 101)

Accordingly, based upon numerous Supreme Court Opinions, although the same set of facts give rise multiple causes of actions in different jurisdictions, res does not preclude or abrogate Plaintiff's cause of action in this case.

Furthermore, as plainly stated and evidenced in Plaintiff's Second Amended Compliant, Plaintiff alleges Defendants conspire with judges of the Circuit and Appellate Courts. Defendants falsely assert Plaintiff could have brought forth these allegations during underlying proceedings. This is very obviously a false and failed argument. How possibly could Plaintiff allege collusion and conspiracy with judges of the District and Appellate Court in same Court accused. Very obviously, there is a conflict of interest and these allegations could not be heard in state court.

8

## LITIGATION PRIVILEGE IS NOT A DEFENSE FOR FEDERAL AND CONSTITUTIONAL LAW VIOLATIONS

Defendants falsely assert "litigation privilege" as a defense against claims of federal law violations which is very obviously, a failed defense. Defendants cite and misrepresent in federal court, state cases from Tennessee, West Virginia, Missouri and Hawaii all of which cases actually prove Plaintiff's assertion that "Litigation Privilege" does not extend to violations of federal law in either state or federal courts.

Defendants falsely assert that 'Litigation Privilege' precludes attorney liability for acts undertaken during, and in the scope of, the attorney's representation of clients in litigation. This argument completely fails for a number of reasons.

It is never within the scope of an attorney's representation to commit acts of fraud, abuse of process, civil conspiracy or IIED. This is never true, or attorneys could act with impudence, even criminally, and then claim 'Litigation Privilege' for tortious or criminal behavior. Therefore, for very obvious reasons, 'Litigation Privilege' is not blanket protection for any liability arising out of acts by an attorney undertaken during representation of a client and acts of fraud, abuse of process, civil conspiracy or IIED are not within the scope of agency or legal representation. To assert acts of fraud, abuse of process, civil conspiracy and IIED are within the scope of agency not only incriminates themselves but their entire law firm. Since this is true regarding acts of fraud, abuse of process, civil conspiracy, it must also be true pertaining to "Corrupt Racketeering Activities" of Defendants Taylor and Lankford.

As this Honorable Court knows, 'Litigation Privilege' applies to defamatory lawsuits arising from litigation. Plaintiff's Complaint in no way references defamation as a cause of action.

Defendants first cite, Simpson Strong-Tie v. STEWART, ESTES ETC., 232 SW 3d 18 - Tenn: Supreme Court 2007, asserting absolute privilege for statements made by attorneys in

9

the course of litigation. This citation has no bearing, no relevance whatsoever, to the present matter at hand. Plaintiff's Complaint does not state a cause of action for statements made during proceedings by Defendants, thus this case citation by Defendants is wholly inapplicable and a waste of this Court's time to consider.

Plaintiff's Complaint, and causes of action, in part, are the tortious actions of "Corrupt Racketeering Activities" plainly stated in Plaintiff's Second Amended Complaint. These tortious actions have nothing whatsoever to do with 'Protected Litigation' or statements made by Defendants during the course of the underlying litigation. Moreover, Defendants should be sanctioned for making false misrepresentations to this Honorable Court in misconstruing and misrepresenting the facts of Plaintiff's Complaint.

The Simpson Strong-Tie v. STEWART, ESTES ETC. case has no bearing and is wholly inappropriate to the present matter at hand. The factual background of this inappropriate case citation is as follows;

> This case involves the scope of the absolute litigation privilege applicable to attorneys... ...certified a question of law to this Court concerning the applicability of the absolute litigation privilege to attorney solicitations directed at recipients who are, at the time of the allegedly defamatory communication, unconnected with the attorney's proposed lawsuit. The question has arisen in the context of a defamation action brought by the plaintiff, Simpson Strong-Tie Company, Inc.,

> In an apparent effort to solicit business, the defendant law firm announced in a newspaper and on an Internet website that it was investigating the screws manufactured by the plaintiff. Specifically, in January 2006, the defendant placed an advertisement in the Tennessean newspaper which stated:

>> ATTENTION:
>> WOOD DECK OWNERS
>> If your deck was built after January 1, 2004 with galvanized screws manufactured by Phillips Fastener Products, Simpson Strong-Tie or Grip-Rite, you may have certain legal rights and be entitled to monetary compensation, and repair or replacement of your deck. Please call if you would like an attorney to investigate whether you have a potential claim. **Simpson Strong-Tie v.**

10

In considering Plaintiff's Second Amended Complaint and this Response and Memorandum, it must be plainly obvious, that the Simpson Strong-Tie v. STEWART, ESTES ETC. case has no bearing and his wholly inappropriate to the present matter at hand. This begs the question, "why reference an inappropriate case like this?" Plaintiff asserts Defendants cite this case because they have no defense whatsoever for the tortious actions Plaintiff complains of. Plaintiff asserts Defendants are hopeful that this court will not do its due diligence and determine the irrelevance of this citation for itself and the court should be so offended.

Incredulously, Defendants then turn to West Virginia to support their false defense and cite Clark v. Druckman, 624 S.E.2d 864 (W. Va. 2005). Plaintiff first points out Defendants' incorrect citation and misspelling of "Druckman" as "Duckman". In the Clark v. Druckman case, the W. VA. Supreme Court's opinion stated the following;

> In Collins, we recognized that absolute privileges, such as the **litigation privilege, should only be permitted in limited circumstances.** Collins, 211 W.Va. at 461, 566 S.E.2d at 598. **Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in all circumstances.** In Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A., 892 P.2d 230, 235 (Colo.1995), **the Colorado Supreme court noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney."** See also Baglini v. Lauletta, 338 N.J.Super. 282, 768 A.2d 825, 833-34 (2001) (**"The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process."**). We believe such **exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to intentional conduct which is unrelated to legitimate litigation tactics and which harms an opposing party**. As recently noted by a California court:
>
>> [a] fraud claim against a lawyer is no different from a fraud claim against anyone else. **If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability.** While an attorney's professional duty of care extends only to his own

client and intended beneficiaries of his legal work, **the limitations on liability for negligence do not apply to liability for fraud**.

As noted above, we can find no reasonable justification for distinguishing conduct from communications for the purposes of the litigation privilege. **However, we also recognize the need for limited exceptions from application of the absolute litigation privilege for certain intentional actions.** Accordingly, we now hold that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney **if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action**.

**CONCLUSION**
In the instant matter, we find that an attorney does not owe an opposing party a duty of care, the breach of which would subject the attorney to negligence liability. Further, the litigation privilege generally operates to preclude actions for civil damages arising from an attorney's conduct in the litigation process. **However, the litigation privilege does not apply to claims of malicious prosecution and fraud.**

Plaintiff is rather astounded that Defendants would cite a case like this and so to should this court be offended. The Clark v. Druckman case, plainly establishes that 'Litigation Privilege' does not apply to claims of fraud. Again, this begs the question, "Why would Defendants incorrectly and inappropriately cite a case like this from another jurisdiction?". The answer can only be that they expect this court to not do its due diligence and the court should be so offended as Plaintiff is offended.

Defendants then go on to cite Macke Laundry Serv. Ltd. v. Jetz Serv. Co., 931 SW 2d 166 - Mo: Court of Appeals, Western Dist. 1996, yet another inapplicable case to Plaintiff's Complaint and Defendants' defense. The contention in the Macke case is as follows;

Macke contends that the trial court erred by granting summary judgment on its claim that Mr. Byers conspired with his client, Jetz Service Co., Inc., to commit tortious interference with contract rights, champerty and maintenance of litigation, and malicious prosecution. **Specifically, Macke claims that it was error for the trial court to hold that, as a matter of law, an attorney is immune from liability for civil conspiracy with the attorney's client unless the attorney is**

12

**individually liable for the underlying tort** or the attorney had a personal interest in the commission of the underlying tort.

Perhaps this Court may determine that it is ok to conspire with encourage perjurious testimony of an attorney's client. Still, this does not extend Litigation Privilege to all of Plaintiff's claims and causes of action. Plaintiff asserts Defendants conspired between themselves and with agents, agencies, and arms of the state to commit acts of "Corrupt Racketeering Activities". Accordingly, Defendants find no protection in the Macke case for tortious action of Civil Conspiracy.

In another wholly inapplicable case cited by Defendants, Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 151 P. 3d 732 - Haw: Supreme Court 2007, Defendants yet again themselves further substantiate Plaintiff's cause of action. The Kahala v Goodsill case is regarding IICR and IIPEA torts which are intentional interference business torts wholly inapplicable to Plaintiff's Complaint. Although inapplicable, the Hawaii Supreme Court yet again substantiates Plaintiff's cause of action and claim for relief in this case. In the Kahala v Goodsill case, the Hawaii Supreme Court stated;

> **Absent a showing of fraud or collusion, or of a malicious or tortious act,** an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client") (citations omitted).

Plaintiff's Second Amended Complaint plainly alleges collusion; and while Defendants acts of fraud, etc. are alleged in state court, the same principle of exclusion pertaining to "Litigation Privilege" extends to acts of "Corrupt Racketeering Activities". Although Defendants have apparently searched all jurisdictions in a wasted effort to support their defense, they utterly fail to do so. Not only do Defendants fail to find a defense, but their own citations, after just brief due diligence, further substantiate Plaintiffs cause of action and claim for relief. Defendants citations show that in all jurisdictions, the tortious acts of fraud, abuse of process,

civil conspiracy and IIED are actionable causes and claims for relief and are not protected by the doctrine of 'Litigation Privilege' and by the same principle, neither are "Corrupt Racketeering Activities."

Defendants then cite Unarco Material Handling, Inc. v. Liberato, 317 SW 3d 227 - Tenn: Court of Appeals, Middle Section, at Nashville. Unarco is a case about breach of confidentiality and yet again another wholly inapplicable case. In its opinion, the Court of Appeals stated;

> The issue on appeal is whether an attorney, while acting in the course of representation of his client when litigation was not pending, has immunity from a claim that he induced the former president of the plaintiff to breach a confidentiality agreement by disclosing confidential information in violation of the agreement.

> Unarco claims that Cohen induced Liberato to breach the confidentiality provisions of his agreement with Unarco for which Cohen is individually liable to Unarco. **Cohen, however, contends he is immune from any claims by Unarco, based upon the litigation privilege, for he was acting in the capacity as an attorney.** Thus, Cohen contends he is entitled to summary judgment as a matter of law.

> Having identified the public policy to be served by the privilege, **the Court then turned its focus to determining whether the privilege encompassed statements — communications — made by an attorney prior to the commencement of an action to which the subject matter of statement pertained.** Id. at 24. Following an analysis of the privilege as applied in Tennessee and other jurisdictions, the Court concluded that the litigation privileged applied if:

> (1) The communication was made by an attorney acting in the capacity of counsel, (2) the communication was related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published.

As referenced above, Defendants' argument and four (4) points referenced by Defendants apply to breach of contract issues and are not relevant to this case. Of greater consideration for this court though is found in the Court of Appeals further analysis;

> The matters at issue here, however, do not pertain to communications by an attorney, as is the case in a defamation action. **The issue here is conduct, specifically the tort of inducing a breach of contract.** No

14

Tennessee court has ruled on this issue in the context of the litigation privilege, though courts in other jurisdictions have. Accordingly, we will look to other jurisdictions for guidance, just as the Supreme Court did in Simpson.

**The Supreme Court of Hawaii examined the litigation privilege defense in the context of claims and facts that are substantially similar to ours in Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, LLP, 113 Hawai`i 251, 151 P.3d 732 (2007).** In that matter, former adversaries of the clients of the Jones Day law firm sued Jones Day and its clients for, inter alia, intentional interference with contractual relations, and inducing breaches of fiduciary, contractual, and other duties. Kahala, 151 P.3d at 742-43. **In its defense of that action, Jones Day claimed immunity under the litigation privilege, contending that an attorney could not be held liable to the client's adversary on any theory other than malicious prosecution, fraud, or malice.** Id. at 743. The plaintiffs replied insisting the litigation privilege was not available to Jones Day because it did not apply to intentional torts, which they asserted were "outside the scope of an attorney's legitimate representation and involve conduct, not mere advice." Id. at 747. The plaintiffs further contended that the immunity did not apply because the conduct alleged did not occur in litigation. Id. at 748.

In yet another case cited by Defendants', a Tennessee appellate court has held that the doctrine of 'Litigation Privilege' does not extend to Fraud, Abuse of Process, Civil Conspiracy or IIED torts and by the same principle "Corrupt Racketeering Activities."  As noted above, in each and every case cited by Defendants, their citations are not only wholly inapplicable to the present matter at hand, Defendants own citations substantiate Plaintiff's causes of action and substantiate that their tortious acts are not protected by the doctrine of 'Litigation Privilege'. This Honorable Court should be so offended at such a waste of the court's time made by such frivolous and inappropriate citations and arguments.

Plaintiff further directs the Court to Defendants' footnote 5 on page 9 of Docket Entry 45. Defendants themselves prove Litigation Privilege is not applicable to the present matter. Defendants' footnotes states: "In fact, the effect of Simpson Strong-Tie, upon which Unarco was largely based, was to extend the general litigation privilege rule to encompass **pre-litigation statements**  in addition to statements made once litigation commences…"  This

15

Court must know Litigation Privilege only applies to defamation lawsuits for statements made during proceedings. Litigation Privilege does not apply to acts of collusion, conspiracy and certainly not to "Corrupt Racketeering Activities." Defendant's own statements evidence this fact of law.

## CONCLUSION

WHEREFORE, Plaintiff representing himself, respectfully requests that this Honorable Court deny Defendants Pamela Taylor and Brenton Lankford's Motion To Dismiss on the grounds of failed and false assertions of res judicata and litigation privilege with prejudice. Plaintiff further requests this Court to admonish Defendants for misrepresenting facts and opinions of other Courts.

Respectfully submitted,

John Anthony Gentry, CPA, Pro Se
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649
john.a.gentry@comcast.net

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

Stephanie A. Bergmeyer
Office of Attorney General
PO Box 20207
Nashville, TN 37202-0207
stephanie.bergmeyer@ag.tn.gov

Lauren Paxton Roberts
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
ebarnes@stites.com

On this the 17th day of April, 2017

John Anthony Gentry, CPA

http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67885&Number=True

# Appellate Case Search

Enter Search Term          Advanced Search    **Search**

| Case Overview | Case Milestones | Parties | Document History | Record Information |

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

M2016-01765-COA-R3-CV

PDF    Print

## Case History

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 03/29/2017 | Appellate Record-Checked Out | Brenton Hall Lankford | |
| 03/20/2017 | Brief (Other)-Amended Brief Filed | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 03/13/2017 | Order (Other)-Miscellaneous Denied | | PDF |
| 03/10/2017 | Appellate Record-Checked In | | |
| 03/10/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/10/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/09/2017 | Order-Dismiss Appeal Denied | | PDF |
| 03/07/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |

EXHIBIT A

Case 3:17-cv-00020   Document 46   Filed 05/17/17   Page 18 of 23 PageID #: 1362

TN Courts

http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67885&Number=True

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 03/07/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/06/2017 | Response-to Motion | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/06/2017 | Filing-Miscellaneous | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 03/03/2017 | Filing-Miscellaneous | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 03/03/2017 | Motion for Extension to File-Brief | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 03/03/2017 | Motion-to Dismiss | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 02/16/2017 | Bond-Cash Deposited with Appellate Court | | |
| 02/15/2017 | Order Related to Extension-Granted | | PDF |
| 02/14/2017 | Response-to Motion | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 02/13/2017 | Appellate Record-Checked Out | Pamela Anderson Taylor | |
| 02/13/2017 | Motion for Extension to File-Brief | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 02/08/2017 | Case Status-APPELLANT BRIEFING COMPLETE | | |
| 02/08/2017 | Brief-Appellant's Brief Filed | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 01/30/2017 | Order-Supplement to Record | | PDF |
| 01/30/2017 | Appellate Record-Supplemental Filed | | |
| 01/27/2017 | Appellate Record-Supplemental Received | | |
| 01/25/2017 | Appellate Record-Checked In from View | | |

4/16/2017 11:37 AM

http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67885&Number=True

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 01/25/2017 | Appellate Record-Checked Out to View | John Anthony Gentry | |
| 01/25/2017 | Motion-Supplement Record | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 01/24/2017 | Appellate Record-Checked In from View | | |
| 01/24/2017 | Appellate Record-Checked Out to View | John Anthony Gentry | |
| 01/13/2017 | Appellate Record-Original Filed | | |
| 12/28/2016 | Appellate Record-Original Received | | |
| 12/20/2016 | Order Related to Extension-Granted | | |
| 12/13/2016 | Motion for Extension to File-Record | Sumner County Circuit Court (Trial Court Clerk) | PDF |
| 12/09/2016 | Opinion-Filed | | PDF |
| 11/22/2016 | Motion-for Court Review (Recusal) | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 11/16/2016 | Order-Recusal of Appellate Judge Denied | | PDF |
| 11/08/2016 | Motion-for Recusal of Appellate Judge | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 11/03/2016 | Order-Exceed Page Limitation Denied | | PDF |
| 11/01/2016 | Response-to Motion | Gentry, Katherine Wise (Appellee/Plaintiff) | PDF |
| 10/31/2016 | Motion-Exceed Page Limitations | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |
| 09/12/2016 | Notice (Incoming)-Correspondence Received | Taylor, Pamela Anderson (Attorney) | |
| 09/02/2016 | Notice (Incoming)-Correspondence Received | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF |

Case 3:17-cv-00020   Document 46   Filed 04/17/17   Page 20 of 23 PageID #: 1364

http://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=67885&Number=True

| Date | Event | Filer | PDF |
|------|-------|-------|-----|
| 09/02/2016 | Action-State Litigation Tax Paid | | |
| 09/02/2016 | Notice (Incoming)-Correspondence Received | Gentry, John Anthony, Pro Se (Appellant/Defendant) | |
| 08/30/2016 | Bond-Cash Deposited with Appellate Court | | |
| 08/26/2016 | Initiating Document-TRAP 3 Notice of Appeal | Gentry, John Anthony, Pro Se (Appellant/Defendant) | PDF PDF |

**NOTE: The case history section will include a column that will allow for the display of permitted documents in a PDF format.

Administrative Office of the Courts
511 Union Street, Suite 600
Nashville, TN 37219
(615) 741-2687 | (800) 448-7970

© 2011 Tennessee Courts System

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **JOHN ANTHONY GENTRY,** | ) | |
| Plaintiff | ) | |
| | ) | **CASE NO. 16C2615** |
| vs. | ) | |
| | ) | |
| **PAMELA ANDERSON TAYLOR, and** | ) | |
| **BRENTON HALL LANKFORD** | ) | JURY DEMANDED (12) |
| Defendants, Jointly and Separately | ) | |
| | ) | |

## NOTICE OF HEARING

Now comes, Plaintiff, JOHN ANTHONY GENTRY, as Pro Se Counsel, and gives

Notice to all parties in this cause, that the following matter is set for hearing on the 21st Day of

April, 2017 at 9:00AM; PLAINTIFF'S MOTION TO ALTER AND MOTION TO CONDUCT

EVIDENTIARY HEARING.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net



EXHIBIT B

1

**THESE MOTIONS ARE SET TO BE HEARD ON FRIDAY, APRIL 21, 2017 AT 9:00 A.M.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and via First Class US Mail, postage prepaid to;

Lauren Paxton Roberts
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Counsel for Defendants, Pamela A. Taylor and
Brenton H. Lankford

On this the 23rd day of February, 2017

John Anthony Gentry, CPA, Pro Se