EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
AT GALLATIN

KATHERINE WISE GENTRY, )
)
    Plaintiff, )
)
v. ) Case No. 2014CV393
)
JOHN ANTHONY GENTRY, )
)
    Defendant. )
)

FILED
10:24 AM
JUL 1 4 2016
KATHRYN STRONG, CLERK
BY _____ D.C.

---

# MEMORANDUM OPINION AND ORDER

---

This matter came on to be heard on May 2 and 3, 2016 to resolve the (1) the issue of classification of marital property; (2) the equitable division of the marital estate; and (3) the Wife's request for attorneys' fees. The parties were declared divorced pursuant to T.C.A. § 36-4-129(b) by Order entered on May 12, 2016, *nunc pro tunc* as of May 3, 2016. Both parties were directed to file proposed findings of fact and conclusions of law. Husband complied with this directive on June 2, 2016 and Wife complied the following day. Thereafter, on July 6, 2016, Wife filed a correction to her post-trial filing.

        I.        **PROPERTY CLASSIFICATION**

The Court finds that the following assets are Wife's separate property:

- Wells Fargo IRA, ending in -3022, styled in Ms. Gentry's name only;
- 1840 Garrison Branch Road, Cottontown, TN, titled to Mr. Wise (Ms. Gentry's ex-husband) and Ms. Gentry.

The Court finds that the following assets are marital property:

- The Regions Bank account, ending in -9953, styled in Ms. Gentry's name only;
- The Regions Bank account, ending in -8746, styled in Ms. Gentry's name only;

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

- The U.S. Bank account, ending in -9524, styled in Mr. Gentry's name only;
- The U.S. Bank account, ending in -5117, styled in Mr. Gentry's name only;
- The 2014 Nissan Versa Note titled in Ms. Gentry's name only;
- The Genworth life insurance policy, ending in -7464, owned by Ms. Gentry;
- The Prudential Insurance Company life insurance policy, ending in -6464, owned by Mr. Gentry;[1] and
- eStart Solutions (Mr. Gentry's business formed during the marriage).

The Court finds that the remaining property should be classified as follows:

A. **208 Navajo Court**

This property was owned by Mr. Gentry prior to the parties' marriage. It served as the parties' sole marital residence. After the marriage the property was jointly titled in both parties' names, creating a rebuttable presumption that it is marital property. *See* Woodward v. Woodward, 240 S.W.3d 825, 829 (Tenn. Ct. App. 2007)(citations omitted). The evidence failed to establish that the parties intended to treat the property as separate property, and the Court finds it is marital property. Upon the testimony of Phillip Simpson, who was qualified without objection as an expert in the field of real estate appraisals, the Court finds that the value of this property is $261,000.00.

B. **SweetWise**

The Court finds that the business SweetWise is Ms. Gentry's separate property. SweetWise was created by Ms. Gentry in January 2001, approximately eight years prior to the parties' marriage. Initially, it operated as a sole proprietorship specializing in cake making and decorating. In February 2006, Ms. Gentry leased a store front and opened a retail store where she sold cake making supplies and taught classes in cake making, a move which was funded

---

[1] The Court would note that both life insurance policies are term policies with no cash surrender value.

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

through a capital contribution made by Ms. Gentry prior to the marriage. SweetWise was incorporated approximately two and one-half (2 ½) years prior to the parties' marriage, and Ms. Gentry made a loan to SweetWise in the approximate amount of $8,000.00, prior to the parties' marriage.

Mr. Gentry was employed by SweetWise from mid-summer 2009 until mid-December 2014. For a short period of time, Mr. Gentry's services were reimbursed with payments on his mortgage in lieu of traditional compensation. In October 2009 Mr. Gentry began receiving paychecks from SweetWise, and he remained a W-2 employee of the company until his termination in 2014. Ms. Gentry was the sole owner of the SweetWise business checking accounts to which Mr. Gentry had signatory privileges only, and Mr. Gentry never personally obligated himself on a loan for SweetWise's benefit.

The Court finds that Mr. Gentry has failed to establish the formation of an implied partnership with SweetWise. When ascertaining whether a partnership existed, courts must determine the intention of the parties "and the controlling intention in this regard is that ascertainable from the acts of the parties." Bass v. Bass, 814 S.W.2d 38, 41 (Tenn. 1991). Our Supreme Court has provided the following explanation regarding the formation of a partnership:

> [i]n determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties.
>
> ***
>
> It is not essential that the parties actually intend to become partners . . . . The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts . . . . It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

> create or avoid the relationship . . . . Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

Id. In Bass, the Court found that a partnership existed between the parties because: (1) the proponent of the partnership was never compensated for her work for the businesses; (2) the proponent of the partnership incurred business obligations; (3) the parties used their personal funds to pay business expenses; and (4) the parties shared the profits.

In this case, Mr. Gentry was compensated for his work as a W-2 employee of the company. There was no proof introduced that Mr. Gentry ever personally obligated himself for a loan for SweetWise's benefit or that he contributed his own personal funds to pay for business expenses. Based on the foregoing, the Court finds that Mr. Gentry failed to show the prove the existence of a partnership by clear and convincing evidence.

The Court also finds that Mr. Gentry failed to establish that Ms. Gentry gifted a portion of SweetWise to him by signing a stock certificate. Tennessee courts have long held that "in order to constitute a completed and irrevocable gift, *inter vivos*, there must be: (1) an intention on the part of the donor to make the gift, and (2) the intention must be accompanied by delivery." Arnoult v. Griffin, 490 S.W.2d 701, 710 (citing Dodson v. Matthews, 22 Tenn. App. 49, 117 S.W.2d 969 (Tenn. Ct. App. 1938)). As established in Lanius v. Donn, 222 Tenn. 58 (Tenn. 1968):

> A gift between persons occupying confidential relations toward each other is, if its validity is attacked, always *jealously scrutinized* by a court of equity, and unless found to have been made freely, voluntarily, and with a full understanding of the facts, will be invalidated. *The existence of confidential or fiduciary relations imposes upon the recipient of a gift the onus of establishing its absolute fairness.*
>
> . . .

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

> Where a confidential relation existed between the donor and the donee at the time of the gift, it is generally considered to be presumptively void, and the burden of proof is on the donee to show the absolute fairness and validity of the gift, and that it is free from the taint of undue influence, and this rule is the same at law as in equity.

Id. at 79-80 (emphasis added). In this case, a confidential relationship existed between the donor and donee at the time of the alleged gift, and Mr. Gentry has failed to establish the absolute fairness or the validity of the alleged gift. Moreover, the stock certificate was never delivered to Mr. Gentry, and, therefore, the purported gift was not completed.

Upon the testimony of Vic Alexander, who was admitted as an expert in business valuations, the Court finds the value of SweetWise at the time of the divorce to be $350,000.00. The only values opined to by Mr. Alexander were as of May 31, 2015 and May 2016 (the final hearing). No evidence was admitted regarding the value of SweetWise at the time of the parties' marriage.

### C. Note receivable from SweetWise

In 2009, prior to the marriage, Ms. Gentry cashed out an IRA she had and loaned the funds to SweetWise. The IRA was in Ms. Gentry's name only and was funded entirely prior to the parties' marriage. Initially, the total amount of the loan to SweetWise was approximately $8,000.00. The total amount outstanding and owed to Ms. Gentry is $7,315.00. The loan created a note receivable owned by Ms. Gentry or a Shareholder's Loan reflected as a note payable on SweetWise's balance sheets. The Court finds that the note receivable in the amount of $7,315.00 due from SweetWise is Ms. Gentry's separate property.

### D. Patent application

The Court finds that the pending patent application No. 13/074,217 is valued at $0.00. As the pending patent application No. 13/074,217 lists both parties as co-inventors, the Court

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

finds that the application has been transmuted to marital property. In the Court's discretion, the Court awards the patent application No. 13/074,217 to Ms. Gentry as her sole and separate property. The basis of this decision is that the invention contained in the patent application was Ms. Gentry's idea, the invention contained in the patent application is a product sold through Ms. Gentry's separate business, SweetWise, this is a short-term marriage, and Ms. Gentry contributed funds towards pursuing the patent during this litigation.

## II. EQUITABLE DIVISION OF MARITAL PROPERTY AND DEBT

### A. Equitable Division of Marital Property

In making an equitable division of the marital property, the court shall consider all relevant factors including those set forth in T.C.A. § 36-4-121(c), for which the Court makes the following findings:

(1) **The duration of the marriage;**

The parties had been married for four and half (4.5) years when they separated. At the time of the final hearing, the parties had been married for six years.

(2) **The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;**

Ms. Gentry was 46 years old at the time of the final hearing; Mr. Gentry was 50 years old. Both parties are employable. Mr. Gentry is a Certified Public Accountant licensed in the State of Tennessee and has an earning capacity of approximately $100,000.00 per year. Ms. Gentry holds a Bachelor of Science degree and an Associate Degree in the Applied Science of Culinary Arts. She has an earning capacity of $80,000.00 per year.

(3) **The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;**

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

Before becoming employed with SweetWise, Mr. Gentry was unemployed, he had filed personal bankruptcy, and he was receiving unemployment compensation from the State of Maryland. Mr. Gentry is in a considerably better position than he was when he entered the marriage.

(4) **The relative ability of each party for future acquisitions of capital assets and income;**

The parties are equally capable of acquiring future assets and income.

(5) **The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role; For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;**

Pursuant to T.C.A. § 36-4-121(b)(1)(B) "marital property" includes "income from, and any increase in value during the marriage, of property determined to be separate property. . . if each party substantially contributed to its preservation and appreciation." If a nonowner spouse can show that he contributed to the preservation and appreciation of a piece of separate property, the nonowner spouse may be granted an equitable share of the increase in value of that property. T.C.A. § 36-4-121. However, "[i]n order to prove such an increase in the value of separate property, a nonowner spouse must present evidence that proves the value of the separate asset prior to the marriage." Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995) (citing Bryson v. Bryson, App. No. 88-94-II (Tenn. App. Aug. 26, 1988)). "If there is no proof of the value of a separate asset before the parties' marriage, the trial court has no legitimate basis to determine that an asset has appreciated." Id. "Thus, a trial court properly cannot make an equitable distribution of the alleged appreciated value of that particular asset." Id.

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

In the case *sub judice*, there was no proof of the value of SweetWise prior to the parties' marriage; therefore, the Court finds that Mr. Gentry failed to meet his burden of proving that SweetWise appreciated in value since the marriage.

There was no proof offered that either party dissipated the marital estate. However, Trial Exhibit 40 evidenced Mr. Gentry's repeated spending at liquor stores, bars and restaurants. It also shows that Mr. Gentry spent approximately $3,600.00 on a triathlon bike and spent $250.00 at the Nashville Symphony on New Year's Eve. The Court does not find that these expenses are dissipation of the marital estate but considers these expenses in its equitable division of the marital estate.

### (6) The value of the separate property of each party;

Ms. Gentry's separate property includes the following assets: (1) Wells Fargo IRA, ending in -3022, styled in Ms. Gentry's name only; (2) 1840 Garrison Branch Road, Cottontown, TN, titled to Mr. Wise (Ms. Gentry's ex-husband) and Ms. Gentry; (3) SweetWise; and (4) note receivable from SweetWise. The total value of Ms. Gentry's separate property is as follows:

### Wife's Separate Property

| 1. | Wells Fargo IRA, ending in -3022, styled in Ms. Gentry's name only | $4,164.64 |
|---|---|---|
| 2. | 1840 Garrison Branch Road, Cottontown, TN | ($8,138.75)$^2$ |
| 3. | SweetWise | $350,000.00 |
| 4. | Note receivable | $7,315.00 |
|  | **Total:** | $353,340.89 |

Husband has no separate property.

---

[2] The Cottontown residence, which Ms. Gentry owns jointly with her ex-husband, currently has less equity than debt, i.e., it is underwater. The total equity in the property is ($16,277.49) and, as Ms. Gentry owns this property with her ex-husband, she is only assessed with one-half (1/2) of that debt. This debt is Ms. Gentry's separate debt.

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

(7) The estate of each party at the time of the marriage;

At the time of the marriage, Wife had the same assets set forth as her separate property in subsection (6) above. Husband's estate was nominal as he had just filed for bankruptcy shortly prior to the marriage.

(8) **The economic circumstances of each party at the time the division of property is to become effective;**

Ms. Gentry is in a better economic circumstance at the time of the division due to her substantial separate assets. However, Mr. Gentry is in a much more advantageous financial position at the time of the final hearing than he was entering the marriage. He is operating what appears to be a successful business and has, while not nominal, a manageable amount of debt in his name.

(9) **The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;**

No proof was presented by either party on this issue.

(10) **The amount of social security benefits available to each spouse; and**

No proof was presented by either party on this issue.

(11) **Such other factors as are necessary to consider the equities between the parties.**

The Court finds no additional factors to be applicable.

Based on a consideration of the facts as applied to the factors set forth above, the Court finds that the marital property should be divided as follows:

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

Marital Assets Awarded to Husband[3]

| | | |
|---|---|---|
| 1. | 208 Navajo Court, Goodlettsville, Tennessee 37072 | $46,986.59 |
| 2. | U.S. Bank account, ending -9524 | $44.03 |
| 3. | U.S. Bank account, ending -5117 | $694.82 |
| 4. | Prudential Life Insurance policy, ending -6464 | $0.00 |
| 5. | eStart Solutions | $0.00 |
| | **Total:** | **$47,725.44** |

Marital Assets Awarded to Wife

| | | |
|---|---|---|
| 1. | Regions Bank account, ending -9953 | $1,517.09 |
| 2. | Regions Bank account, ending -8746 | $100.00 |
| 3. | 2014 Nissan Versa | $3,887.36 |
| 4. | Genworth Life insurance policy, ending -7464 | $0.00 |
| 5. | Patent application No. 13/074,217 | $0.00 |
| | **Total:** | **$5,504.45** |

Based on the amount of separate property awarded to Wife along with the other factors enumerated by Tennessee Code Annotated section 36-4-121, the Court finds that the foregoing division is a fair and equitable division of the parties' marital assets. The Court would note that while it considered all factors in Section 36-4-121, the Court relied heavily upon the amount of separate property awarded to Ms. Gentry in making an equitable division of the marital estate.

B.   **Equitable division of marital debts**

"'[M]arital debts are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." Alford v. Alford, 120 S.W.3d 810, 813 (Tenn. 2003). The only proof presented to the Court as to when the parties incurred certain debts was through Ms. Gentry's testimony and through Ms. Gentry's proposed division of marital assets and liabilities, which was admitted into evidence as Trial Exhibit 24. The Court finds that all debts contained in Trial Exhibit 24 are marital debts.

---

[3] The parties' personal property has already been divided between the parties. Neither party presented proof as to personal property, therefore, each party is awarded the personal property currently in his or her possession.

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

Four factors should be considered in dividing marital debt: (1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." Luplow v. Luplow, 450 S.W.3d 105 (Tenn. Ct. App. 2014) (citing Alford, 120 S.W.3d at 813). Here, the only testimony presented that would be relevant to the Alford factors was during the cross-examination of Mr. Gentry. Mr. Gentry was questioned on the charges made by him on. Introduced into evidence as Trial Exhibit 40 was a Rule 1006 summary of Husband's discretionary spending since December 13, 2014 on his Capital One Visa, Barkley Visa, and Merit Visa credit cards. Generally, Trial Exhibit 40 evidences that Mr. Gentry used the subject credit cards for his own benefit after the parties separated.

Trial Exhibit 41 was also introduced during Mr. Gentry's cross-examination, and it shows deposits into Mr. Gentry's U.S. Bank account from December 13, 2014 to March 31, 2016 in the amount of $115,796.00. Mr. Gentry has submitted that these deposits were offset by business expenses at eStart Solutions. However, Mr. Gentry failed to produce any proof of the same. Finally, Trial Exhibit 42 evidenced that from January 1, 2015 through March 25, 2016, Mr. Gentry withdrew $8,383.50 in cash from both of the U.S. Bank accounts in his name.

Upon the foregoing, the Court finds that it is appropriate to assess the debts in Mr. Gentry's name to Mr. Gentry. The only testimony before the Court regarding these debts is that the purpose of those debts were Mr. Gentry's living expenses and discretionary expenses. See Trial Exhibit 40. It is undisputed that Mr. Gentry incurred the debts. It is likewise undisputed that Mr. Gentry solely benefited from these debts as the parties were separated when the debts were incurred. Finally, pursuant to Trial Exhibit 41 and 42, Mr. Gentry has the ability to repay the debts and, as the debts are in Mr. Gentry's name only is better situated to repay those debts. As such, the Court assesses the following marital debts to Mr. Gentry:

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

### Marital Debts Assessed to Husband[4]

| 1. | Capital One Visa, ending -4101 | ($15,147.17) |
|---|---|---|
| 2. | Barclaycard MasterCard, ending -9263 | ($5,015.52) |
| 3. | Merrick Bank credit card, ending -3510 | ($2,682.44) |
| 4. | Best Egg credit card, ending -6878 | ($14,382.07) |
| 5. | Capital One Visa credit card, ending -7007 | ($5,051.99) |
| 6. | Premier Bankcard MasterCard, ending -1783 | ($571.25) |
|  | **Total:** | ($42,850.44) |

The Court assess the remaining debts to Ms. Gentry, as follows:

### Marital Debts Assessed to Wife[5]

| 1. | Chase credit card, ending -8546 | ($12,912.21) |
|---|---|---|
| 2. | Wells Fargo Visa credit card, ending -2971 | ($2,987.00) |
| 3. | Conn Credit Corp. credit card | ($915.55) |
|  | **Total:** | ($16,814.76) |

Applying the Alford factors to the facts before the Court, the Court finds the foregoing division of the marital debts to be equitable.

### III. ATTORNEY'S FEES AND EXPENSES

The final issue before the Court is attorney's fees and expenses. An award of attorney's fees usually takes the form of an award of alimony *in solido*. Yount v. Yount, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002) (citing Storey v. Storey, 835 S.W.2d 593 (Tenn. Ct. App. 1992)). "Accordingly, a trial court considering a request for attorney's fees must consider the factors contained in [Tennessee Code Annotated] § 36-5-121(i), with the most important factors being the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay." Owens, 241 S.W.3d at 495-96 (citing Eldridge, 137 S.W.3d at 24-25; Miller v. Miller, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001)).

---

[4] All of these debts are in Husband's name only.
[5] All of these debts are in Wife's name only.

EXHIBIT 3 TO DEFENDANT'S MOTION TO DISMISS (7/14/16 ORDER)

Considering these factors and the Court's allocation of marital property and debt, the Court finds that Ms. Gentry is not at an economic disadvantage and does not have a need for alimony. Therefore, the Court declines to grant Ms. Gentry any attorney's fees other than those awarded by previous orders of the Court. Mr. Gentry's motion to reconsider the Court's prior award of attorney's fees is denied. Each party shall bear their own fees.

**IT IS SO ORDERED** this 14th day of July, 2016.

_____
JOE H. THOMPSON, CIRCUIT JUDGE

### CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Order has been sent *via:*

____✓____ U.S. Mail, postage prepaid; or

to:

John A. Gentry
208 Navajo Court
Goodlettsville, TN 37072
*johng@estartsolutions.com*

Pamela A. Taylor
Sites & Harbison, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219-2490
*pamela.taylor@stites.com*

on this 14th day of July, 2016.

_____
Deputy Clerk