## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **JOHN ANTHONY GENTRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. 3:17-cv-0020** |
| | ) | **JURY TRIAL DEMANDED** |
| **THE STATE OF TENNESSEE;** | ) | |
| **PAMELA ANDERSON TAYLOR;** | ) | |
| **BRENTON HALL LANKFORD;** | ) | |
| **SARAH RICHTER PERKY;** | ) | |
| **UNNAMED LIABILITY INSURANCE** | ) | |
| **CARRIER(S); et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT, SARAH RICHTER PERKY'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### INTRODUCTION

Plaintiff, John Anthony Gentry, filed his original Complaint in this case on January 9, 2017.[1]  His Complaint and its subsequent amendments include allegations that Plaintiff has been treated unfairly in various judicial proceedings involving his underlying Tennessee divorce case.  Plaintiff's final order of divorce was granted on May 12, 2016.  Most frequently, Plaintiff contends that he has been "denied due process" and complains that "the State Government permits and maintains a monopoly of the legal profession and fails to police itself."  *See* First Amended Complaint, ¶ 26 (Docket Entry 32).

---

[1] Plaintiff has also filed a number of other actions related to his underlying state court divorce action.  *See e.g., Gentry v. Thompson,* 2017 WL 373516 (M.D. Tenn. 2017) [currently on appeal] (attached); *Gentry v. Taylor et al.,* Davidson County Circuit Court 16C2615 (Tenn. Cir. Ct. 2017) (Order of Dismissal, Docket Entry 45-3).

Defendant was permitted to withdraw as counsel for Plaintiff in his divorce case on June 15, 2015. *See* June 15, 2015 Order Allowing Withdrawal, Exhibit 1 to Motion to Dismiss, Defendant, Sarah Richter Perky, represented Plaintiff in his divorce for a brief four-month period in 2015. Defendant did not represent Plaintiff at the time of his divorce in May, 2016. This case is currently before the Court to consider the Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted filed by the Defendant, Sarah Richter Perky.

## PROCEDURAL BACKGROUND

Plaintiff originally sued Chris Craft,[2] Timothy Discenza,[3] the State of Tennessee and the Tennessee Board of Judicial Conduct. *See* Complaint (Docket Entry 1).[4] The originally named defendants moved to dismiss the Complaint on February 28, 2017. (*See* Docket Entries 22 & 23).[5]

On March 16, 2017, Plaintiff filed a First Amended Complaint[6] naming additional defendants, Pamela Anderson Taylor,[7] Brenton Hall Lankford, and Sarah Richter Perky.

---

[2] Mr. Craft is Chairman of the Tennessee Board of Judicial Conduct. *See* Motion to Dismiss, February 28, 2017 (Docket Entry 23).

[3] Mr. Discenza is Disciplinary Counsel for the Tennessee Board of Professional Responsibility. *See* Motion to Dismiss, February 28, 2017 (Docket Entry 23).

[4] Mr. Craft and Mr. Discenza are not identified individually in the Plaintiff's First Amended Complaint (*see* First Amended Complaint ¶¶ 1-6, Docket Entry 32), or Plaintiff's Second Amended Complaint (*see* Second Amended Complaint ¶¶ 1-6, Docket Entry 36-1). Plaintiff's Response to the Motion to Dismiss filed by these defendants states that Plaintiff has "removed" these parties and various state judges from this lawsuit, although they are identified as "witnesses" in his Second Amended Complaint. *See* Plaintiff's Response to Motion to Dismiss (Docket Entry 38), p. 14. Assuming this to be the case, no Stipulation of Dismissal or Order of Dismissal as to these defendants has been located in the record.

[5] Plaintiff's Response to the February 27, 2017 Motion to Dismiss was filed on March 27, 2017. (*See* Docket Entry 38). Plaintiff's Response indicates he is "removing" certain defendants from the lawsuit. (*Id.*, p. 14).

[6] The First Amended Complaint is 72 pages in length.

(*See* Docket Entry 32).[8]  Defendants Taylor and Lankford are attorneys who represented Plaintiff's former spouse in his state court divorce proceedings.[9]  Defendant Perky represented Plaintiff in his divorce case for a brief period of time from February through June 15, 2015.

On March 27, 2017, Plaintiff filed a Second Amended Complaint. (*See* Docket Entry 36-1).[10] The Second Amended Complaint appears to have been filed without leave of court.[11]  According to Plaintiff's Response to the Motion to Dismiss the original Complaint filed by the State of Tennessee defendants (*see* Docket Entry 38, p. 14), Plaintiff's Second Amended Complaint "has removed the judges and individual agencies and arms of the State of Tennessee as Defendants . . .."  Plaintiff's Response further states that his most recent pleading identifies these individuals as "witnesses" because Plaintiff maintains that he "now simply brings suit against the State and attorney officers of the court in conspiracy with the State, its agents, agencies, and arms of the State, to violate constitutionally guaranteed rights and engage in a pattern of "Corrupt

---

[7] Plaintiff also submitted a complaint against adversary counsel, Ms. Taylor, with the Tennessee Board of Professional Responsibility dated September 18, 2015 concerning her alleged conduct during his (then) ongoing divorce proceeding with Plaintiff's former wife.  *See* Docket Entry 36, pp. 75-99, Page ID# 619-643.

[8] By Order dated March 16, 2017, Plaintiff was granted permission to file a first amended complaint. (*See* Docket Entry 29).

[9] A review of the Circuit Court file for Davidson County reflects that Plaintiff sued Taylor and Lankford in state court under various theories on October 3, 2016.  *See* Davidson County Complaint (Docket Entry 45-2). The state court issued a Memorandum Opinion on January 28, 2017 dismissing Plaintiff's state court lawsuit against these individuals.  *See* Davidson County Order of Dismissal (Docket Entry 45-3).

[10] The Second Amended Complaint is 103 pages in length.  When compared to the First Amended Complaint, the Second Amended Complaint appears to include additional narrative discussion of the "general allegations" section (pages 8-21) and generally includes lengthier narrative throughout the pleading.  Plaintiff's pleading does not specifically explain the differences between the First and Second Amended Complaints.  Where appropriate, Defendant discusses differences between the two pleadings as they pertain to Defendant.

[11] Defendant has located no motion or other order permitting the filing of the Second Amended Complaint.

Racketeering Activities." *See* Plaintiff's Response to Motion to Dismiss, p. 14 (Docket Entry 38). On April 12, 2017, Defendants Lankford and Taylor moved to dismiss Plaintiff's Second Amended Complaint. (*See* Docket Entries 45 and 46).

Defendant Perky now also moves to dismiss Plaintiff's allegations (whether stated in his First or Second Amended Complaint). Procedurally, the First Amended Complaint appears to be the operable pleading before the Court (Docket Entry 32).[12] However, to be clear, and in the event Defendant has misinterpreted the docket, Defendant also moves to dismiss any allegations against Defendant, including, but not limited, to the allegations lodged in the Second Amended Complaint (Docket Entry 36-1). Although the First and Second Amended Complaint vary in length, the allegations against Defendant in both pleadings are substantially similar. Defendant moves to dismiss all of Plaintiff's allegations.

## SUMMARY OF ARGUMENT

Although Plaintiff's pleadings are laced with incendiary rhetoric and chocked full of labels and conclusory accusations, the gravamen of Plaintiff's claims against his former attorney, Perky, is one of legal malpractice. *See* First Amended Complaint, ¶¶ 28-45; Second Amended Complaint, ¶¶ 71-85. Plaintiff is critical of Defendant's presentation of argument during a March 10, 2015 hearing and her alleged failure to properly issue a subpoena in May, 2015. Despite the length of Plaintiff's pleadings, the

---

[12] Plaintiff filed his Second Amended Complaint without leave of Court. Defendant's Motion to Dismiss addresses all of Plaintiff's allegations.

*factual* allegations directed to Defendant are limited.[13]  Defendant moves to dismiss all allegations against Defendant in their entirely.  Defendant's reasons for seeking dismissal are summarized as follows:

1.  <u>Expiration of the Statute of Limitations</u>.[14]  Defendant's representation of Plaintiff ended on June 15, 2015.  Plaintiff admittedly represented himself after June 15, 2015, including during the final divorce hearing on May 2-3, 201<u>6</u>.  Any claims of professional negligence and/or legal malpractice against Defendant (whether grounded in tort or contract) are clearly time barred by the statute of limitations codified at Tenn. Code Ann. § 28-3-104 and should be dismissed.  Plaintiff's claims that Defendant failed to present legal arguments (or otherwise withheld) legal arguments at the March 10, 2015 hearing are time barred and otherwise do not state a cause of action.  Similarly, Plaintiff's claims that Defendant failed to properly issue a subpoena in May, 2015 are time barred and otherwise do not state a cause of action.  These are the only factual allegations presented against Defendant.[15]

2.  <u>Lack of Causation and Damage</u>.  None of the mistakes alleged of Defendant on March 10, 2015 and none of Plaintiff's allegations that Defendant failed to properly

---

[13] In reviewing Defendant's motion, the *factual* allegations of the amended pleadings are taken as true.  *Herron v. Harrison*, 203 F.3d 410 (6th Cir. 2010); *Brainard v. Vasser,* 561 F.Supp.2d 922 (M.D. Tenn. 2008).  However, the Court is <u>not</u> required to accept legal conclusions or unwarranted inferences advanced by Plaintiff.  *See e.g., Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998); *Burnett v. Tyco,* 932 F.Supp.1039 (W.D. Tenn. 1996).  Plaintiff's pleadings are replete with legal conclusions and generalized allegations of fraud and conspiracy.  These are exactly the kind of conclusory allegations that the Supreme Court condemned in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See e.g. 16630 Southfield Ltd. Partnership v. Flagship Bank*, 727 F. 3d 502, 506 (6th Cir. 2013).

[14] Dismissal based upon expiration of the statute of limitations is appropriate under Rule 12(b)(6)  if the allegations of a complaint show that the claim is time barred.  *See e.g. Jones v. Bock*, 549 U.S. 199, 215 (2007).

[15] Defendant also respectfully submits that her actions complied with the applicable standard of care.  However, because it is not necessary to address such issues at this time, Defendant reserves this argument for future hearing if necessary.

issue a subpoena in May, 2015 negligently caused Plaintiff any damages. Plaintiff does not plead that such actions caused damages to Plaintiff. <u>Plaintiff</u> personally presented arguments concerning his alleged ownership interest in his former wife's business in subsequent proceedings before the trial court.[16] Plaintiff also sought discovery (or reasonably could have sought discovery) after Defendant withdrew from the case on June 15, 201<u>5</u>.

Defendant's alleged mistakes are not alleged to have caused Plaintiff any damages and Plaintiff's action must fail as a matter of law. The fact that the trial judge later considered, but ultimately rejected, Plaintiff's position during his May, 2016 trial (particularly as it concerns his claim of ownership of a business with his former wife known as "Sweetwise") does not create cause of action against Defendant.

3. <u>Failure to State a Claim (§ 1983)</u>. Plaintiff's claim that Defendant violated 42 U.S.C. § 1983 fails to state a cause of action upon which relief may be granted. Defendant is not, and was not, a state actor for the purpose of § 1983. Defendant's status as "an officer of the court" does not render Defendant a "state actor." Plaintiff's § 1983 claims against Defendant should be dismissed.

4. <u>Failure to State a Claim (§ 1985)</u>. Plaintiff's claim that Defendant violated 42 U.S.C. § 1985 fails to state a cause of action upon which relief may be granted. Notwithstanding the failure to establish any alleged conspiracy, Plaintiff must also show that the alleged conspiracy was motivated by racial or class-based animus. This Plaintiff

---

[16] *See e.g.* Memorandum and Order, July 14, 2016, pp, 2-5 (discussing Plaintiff's unsuccessful effort to persuade trial judge to award Plaintiff an ownership interest in "Sweetwise"), <u>Exhibit 3</u> to Defendant's Motion to Dismiss.

can no do so, nor are any such allegations presented in the Plaintiff's First or Second Amended Complaint establishing a violation of § 1985.

5. <u>Failure to State a Claim (§ 1512)</u>. Plaintiff's allegation that Defendant violated 18 U.S.C. § 1512 fails to state a cause of action upon which relief may be granted. Even if a private cause of action existed for such a claim (which it does not), the statutory provisions do not apply to state court proceedings. Defendant only represented Plaintiff before a state court in his divorce proceedings.

6. <u>Failure to State a Claim (§§ 2, 1341, 1346, 1951, 1952)</u>. Plaintiff's allegations claiming that his cause of action arises under 18 U.S.C. § 2, 18 U.S.C. § 1341, 18 U.S.C. § 1346, 18 U.S.C. § 1951 and 18 U.S.C. § 1952 fail to state a cause of action upon which relief may be granted. All of these are federal criminal statutes. None of the statutes create a private cause of action. Any such allegations should be dismissed for failure to state a claim upon which relief may be granted.

7. <u>Failure to State a Claim (RICO)</u>. Plaintiff's allegations that Defendant was engaged in "racketeering activities" and a criminal enterprise fail to state a claim upon which relief may be granted. Plaintiff's allegations fail to state sufficient particularized facts constituting fraud in accordance with Rule 9, Fed. R. Civ. P., and Plaintiff has failed to properly plead the elements of a RICO claim. In addition, no predicate acts are identified and no criminal enterprise is properly identified. Defendant did nothing more than provide professional legal services on behalf of Plaintiff for a brief period of time in his divorce and Plaintiff has failed to state a claim for RICO liability against Defendant.

Plaintiff's First Amended Complaint and his subsequently amended allegations in the Second Amended Complaint against Defendant are without merit and should be dismissed for failure to state a claim upon which relief may be granted.

## SUMMARY OF ALLEGATIONS OF FACT

The "First Cause of Action" in Plaintiff's First and Second Amended Complaints is directed to Defendant. *See* First Amended Complaint, ¶¶ 28-45; Second Amended Complaint, ¶¶ 71-85. Plaintiff primarily criticizes Defendant's legal argument during a March 10, 201<u>5</u> motion hearing (*see e.g.*, First Amended Complaint, ¶¶ 33-35, 40; Second Amended Complaint, ¶¶ 71-74) and he criticizes Defendant's alleged failure to properly issue a subpoena in May, 201<u>5</u> to an internet company, "Go Daddy." *See e.g.,* First Amended Complaint, ¶¶ 41-43; Second Amended Complaint, ¶¶ 79-82. Plaintiff's allegations do not describe how these alleged mistakes caused damages to Plaintiff.

## PLAINTIFF'S ALLEGATIONS REGARDING MARCH 10, 2015 HEARING

Plaintiff's pleadings present the following allegations against Defendant related to the March 10, 2015 hearing in the state court action:

- ✓ According to Plaintiff, Defendant falsely stated to the Court that she had performed "extensive research" that appellate courts have held that the parties "may have an implied business relationship." According to Plaintiff, this was an "intentionally false and weak argument." *See* First Amended Complaint, ¶ 35 (Docket Entry 32); Second Amended Complaint, ¶ 72 (Docket Entry 36-1).

✓   On the other hand, Plaintiff, acting *pro se*, located numerous Tennessee appellate decisions through a brief Google search "supporting his business interest as plainly marital property through the doctrines of commingling, transmutation and statutory law…"  *See* First Amended Complaint, ¶ 36 (Docket Entry 32); Second Amended Complaint, ¶ 73 (Docket Entry 36-1).

✓   Based upon his brief Google search, Plaintiff maintains that it is obvious that Defendant's statement that she performed "extensive research" was an "intentionally false statement."[17]  *See* First Amended Complaint, ¶ 36 (Docket Entry 32); Second Amended Complaint, ¶ 73 (Docket Entry 36-1).[18]

✓   According to Plaintiff, Defendant had provided legal representation [in other cases] involving the "same issue of a business that was separate property prior to marriage" before the hearing on March 10, 2015 and Defendant "knew the legal arguments of transmutation, commingling, and preservation and appreciation."  Defendant "intentionally withheld these arguments in breach of fiduciary duty and scheme to defraud Plaintiff of his property as part of a racketeering conspiracy."  *See* First Amended Complaint, ¶ 37 (Docket Entry 32); Second Amended Complaint, ¶ 74 (Docket Entry 36-1).

---

[17] Plaintiff does not plead or otherwise explain how he was allegedly damaged by this alleged statement that Defendant performed "extensive research."

[18] Plaintiff does not specifically allege how Plaintiff's arguments on his behalf were "false."  Rather, Plaintiff criticizes Defendant's statement that she performed "extensive research" when Plaintiff only had to conduct a brief "Google search."  Such allegations clearly do not satisfy Rule 9, Fed. R. Civ. P.

✓     Defendant "conspired with opposing counsel to present intentionally false and weak legal arguments so as to defraud Plaintiff of his property and deny him due process as part of "[the] racketeering enterprise." *See* First Amended Complaint, ¶ 40 (Docket Entry 32); Second Amended Complaint, ¶ 78 (Docket Entry 36-1).[19]

## DEFENDANT'S RESPONSE TO THE ALLEGATIONS REGARDING THE MARCH 10, 2015 HEARING

Plaintiff's allegations that Defendant intentionally made a "false statement" that she had done "extensive research" does not state a cause of action upon which relief may be granted under any theory advanced by Plaintiff. Such allegations clear fail to satisfy the specificity requirements of Rule 9, Fed. R. Civ. P.

Moreover, Plaintiff's pleadings quote only a *portion* of the transcript from March 10, 2015. *See e.g.,* First Amended Complaint, ¶ 35; Second Amended Complaint, ¶¶ 72, 73. Defendant respectfully submits that Plaintiff's allegations are taken out of context. Determining whether a complaint states a plausible claim for relief is a context specific task and requires the reviewing court to draw on its judicial experience and common sense. *See e.g. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 679 (207). A copy of the *full* transcript is attached to Defendant's Motion to Dismiss. *See* March 10, 2015 Transcript, Exhibit 2 to Defendant's Motion to Dismiss. Rule 12, Fed. R. Civ. P. permits the Court to consider documents central to a plaintiff's claims to which Plaintiff also refers in his pleadings. *See e.g. Amini v. Oberlin College,* 259 F. 3d 493, 502 (6th Cir. 2001).

---

[19] Defendant respectfully submits that these are conclusory allegations without any underlying factual support.

Here, the brief statement quoted in Plaintiff's amended pleadings from the transcript of March 10, 2015 is, according to Plaintiff, an important part of Plaintiff's claim—yet, Plaintiff omitted the transcript and the context of the statement. The Court is permitted to consider entire exchange to determine if Plaintiff has stated a cause of action:

```
 7          MS. PERKY:  Well, I think at some
 8    point they had -- I mean, they had discussed putting
 9    stock into his name, and she had agreed to do that.
10    And she had also agreed and he had agreed to put five
11    shares of the stock in this other gentleman who's out
12    in the hall's name.
13          MR. GENTRY:  She issued the stock.
14          MS. PERKY:  She issued the stock and
15    then she refused to give it to him, essentially.  She
16    got mad at him and said, Well, if we're not getting
17    back together, I'm not going to give it to you.
18          THE COURT:  All right.  But right now
19    he doesn't have possession of any stock certificates
20    that show he has an ownership interest.
21          So what I'm asking is, given that set
22    of circumstances, is there any guidance for me out
23    there with respect to how I handle this claim of
24    employee versus owner?
25          MS. PERKY:  Your Honor, I didn't bring


                                      Page 48

 1    the case law with me because I wasn't -- I wasn't aware
 2    that this was going to be an issue.  However, I've done
 3    extensive research.
 4          The Court of Appeals has held on
 5    numerous times that you can have an implied business
 6    relationship, whether or not there are stock
 7    certificates entered or not.  They've had cases where a
 8    husband and a wife, the husband has a business before
 9    the marriage.  The wife, you know, joins up with him
10    and works really hard, you know.  If it's like a house
11    cleaning business, she's on the floor cleaning the
12    house and everything, doing the same kind of thing he's
13    doing.  And the Court says, Yeah, it was his business
14    before, it's all in his name, and we're going to find
15    an implied business partnership.
16          THE COURT:  So that would be the
```

*See* March 10, 2015 Transcript, pp. 47-48 <u>Exhibit 2</u> to Motion to Dismiss.

Defendant respectfully submits that such a statement does not create a cause of action in favor of Plaintiff under any theory.

Defendant had represented Plaintiff for barely a month.[20]  The March 10, 2015 hearing occurred shortly after Defendant entered an appearance in the divorce case on behalf of Plaintiff.

The March 10, 2015 hearing was <u>not</u> a final hearing.  The Court did <u>not</u> address a division of assets at this hearing.  As reflected by the trial court's Order concerning the March 10, 2015 hearing, several different motions were presented to the Court and the Court ruled as follows:

- Plaintiff's Motion to Amend was granted;

- Defendant's Motion to Compel was granted;

- Plaintiff's Motion to Compel was granted;

- Defendant's Second Amended Petition for Civil Contempt was denied;

- Motion for Pende Lite Support – the Court reserved ruling until the parties exchanged documentation;

- Motion to Determine Control of Business and Partner Compensation – proof was not completed and the matter was rescheduled.

*See* Order Entered March 19, 2015 (Docket Entry 36), pp. 65-66 of 242, Page ID# 609-610 (filed by Plaintiff).

As reflected by the Court's Order of March 19, 2015, there was no division of assets between the parties at the March 15, 2015 motion hearing.  The transcript referenced by Plaintiff (from which Plaintiff derives the "intentionally false statement"

---

[20] *See* Contract for Legal Services, February 3, 2015 (Docket Entry 36), pp. 1-4, Page ID# 545-548.

allegation) is not actionable. *See* March 10, 2015 Transcript, <u>Exhibit 2</u> to Defendant's Motion to Dismiss. Defendant did not intentionally present any false or weak argument or "withhold" any legal arguments from the Court on March 15, 2015.

The hearing on March 10, 2015 was not the final hearing in Plaintiff's case. Strategic legal decisions and arguments honestly presented by an attorney do not give rise to a claim of legal malpractice under Tennessee law. *See e.g., Stricklan v. Koella*, 546 S.W.2d 810 (Tenn. Ct. App. 1976).

Any argument presented by Defendant on behalf of Plaintiff that an implied business relationship or implied business partnership existed between Plaintiff and Plaintiff's former spouse was an honest representation of Plaintiff's position and was consistent with Plaintiff's position that Plaintiff was entitled to a portion of this spouse's business.

The Final Decree Granting Divorce and Reserving All Other Issues concerning property division was not entered until May 12, 201<u>6</u> following a final hearing on May 2-3, 201<u>6</u>. *See* Final Decree (Docket Entry 36), pp. 37-38 of 242, Page ID# 581-582 (filed by Plaintiff). The trial court's Memorandum Order addressing the division of assets on July 14, 2016 supports that Plaintiff sought to advance the same argument during his trial. *See* July 14, 2016 Memorandum Order, <u>Exhibit 3 </u>to Defendants' Motion to Dismiss.

The Memorandum Order includes the following finding:

The Court finds that Mr. Gentry has failed to establish the formation of an implied partnership with SweetWise. When ascertaining whether a partnership existed, courts must determine the intention of the parties "and the controlling intention in this regard is that ascertainable from the acts of the parties." Bass v. Bass, 814 S.W.2d 38, 41 (Tenn. 1991). Our Supreme Court has provided the following explanation regarding the formation of a partnership:

> [i]n determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties.

***

*See* July 14, 2016 Memorandum Order, pp. 3-4, Exhibit 3 to Defendant's Motion to Dismiss.

Although the trial court ruled against Plaintiff, the trial court (and Defendant) correctly observed that Tennessee law supports that a business relationship may be implied by the actions of the parties and if supported by appropriate evidence.[21] As one example, a business partnership may exist in the absence of a written agreement if supported by appropriate evidence. *See e.g., Bass v. Bass,* 814 S.W.2d 381 (Tenn. 1991) [partnership depends upon the intention of the parties and the actions of the parties may be reviewed to ascertain their intentions]; *Montgomery v. Montgomery*, 181 S.W.3d 720 (Tenn. Ct. App. 2005)[partner alleging partnership has burden of proving partnership by clear and convincing evidence].

---

[21] Tennessee law also supports that if a non-owner spouse can show that he or she contributed to the preservation and appreciation of separate property, the trial court may grant the non-owner spouse an equitable share of the increase in value of that property. See e.g. Cutsinger v. Cutsinger, 917 S.W.2d 238 (Tenn. Ct. App. 1995); Mondelli v. Howard, 780 S.W.2d 769 (Tenn. Ct. App. 1989). The transcript from the March 10, 2015 hearing supports that there was nothing "withheld" from the trial court and the transcript further reflects that this trial court understood the Plaintiff's position that he should be considered a part owner of the business. Defendant was trying to *help* Plaintiff during the short period she represented Plaintiff to establish a claim for a portion of the business.

As evidenced by the trial court's Memorandum Order of July 14, 2016, <u>Plaintiff</u> argued that he had a partnership interest in the business with his wife during his final hearing in May, 2016. Plaintiff also sought to persuade the trial court that he was entitled to a portion of the business because his wife was supposed to award him stock in the company. The trial court's Memorandum Order of July 14, 2016 reflects the same arguments were presented by Plaintiff during the final hearing. *See* Trial Court Memorandum Order Dated July 14, 2016, pp. 2-6, <u>Exhibit 3</u> to Defendant's Motion To Dismiss. The trial judge ruled against Plaintiff and ruled that "Mr. Gentry has failed to establish the formation of an implied partnership with Sweetwise [the business]." *See* Trial Court Memorandum and Order Dated July 14, 2016, p. 3, <u>Exhibit 3</u> to Defendant's Motion to Dismiss.

Plaintiff's contention that Defendant "withheld" arguments concerning comingling and transmutations of assets during the hearing on March 10, 2015 also fails to state a claim. Initially, the transcript reflects that there was no division or assets during this hearing. Secondly, Plaintiff's allegation that such arguments were not addressed or otherwise understood by the trial court is inconsistent with Plaintiff's <u>own</u> testimony from the hearing on March 10, 2015. *See e.g.,* March 10, 2015 Transcript, pp. 15[57], 24[91] [Gentry testifying about commingling]; *see* March 10, 2015 Transcript, pp. 55-56 [Trial Judge mentioning issue of commingling], <u>Exhibit 3</u> to Motion to Dismiss.

Plaintiff observed in his Board of Professional Responsibility Complaint against adversary counsel (Taylor) on September 10, 2015 that, "During the hearing on the Petition for contempt [March 10, 2015], the Court stated that there was an utter and

complete commingling of the personal life and business life." *See* Board of Professional Responsibility Complaint, p. 75-99 (Docket Entry 36), Page ID# 620 (filed by Plaintiff).

The Memorandum Order of July 14, 2016 from the divorce proceeding reflects that the trial court recognized the issues. The trial court specifically considered, but rejected Plaintiff's arguments that he was entitled to an equitable portion of the property Plaintiff claimed from his former spouse. *See* July 14, 2016 Memorandum Order, Exhibit 3 to Defendant's Motion to Dismiss.

Defendant was not involved in any other hearings on behalf of Plaintiff after she was permitted to withdraw on June 15, 2015. On September 15, 2015, Plaintiff specifically argued in relevant part to the trial judge as follows:

> So I've already demonstrated to this Court and there's clear precedence that a spouse that contributes to a business during the time of marriage whether it's owned by the other spouse before the marriage or not is entitled to the appreciation of the business . . .We presented evidence that I contributed significantly to the growth of the business.

*See* Transcript of Proceedings, September 15, 2015 (Docket Entry 36), pp. 60-64 of 242 [p. 61, lines 4-10; 13-15], Page ID# 605 (filed by Plaintiff) (emphasis added).[22]

Based on Plaintiff's own submissions, Plaintiff's criticisms of Defendant from the March 10, 2015 fail to state a basis for relief against Defendant.

---

[22] At the September 15, 2015 hearing, Plaintiff was informed by the Court that it had ruled on the contempt motion, but he was also advised that the Court would conduct a final hearing in May, 2016 in the divorce. Specifically, the trial judge informed Plaintiff that "you will be able to bring up proof about dissipation of assets, whether or not there's been waste in Ms. Gentry's allowing a [patent] to expire. All of those issues are still viable in the divorce. They are not viable any longer in the petition for contempt." *See* Transcript of Proceedings, September 15, 2015 (Docket Entry 36), pp. 60-64 of 242 [p. 63, lines 11-17], Page ID# 607.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS REGARDING ISSUANCE OF "GO DADDY" SUBPOENA

Plaintiff's pleadings present the following allegations against Defendant regarding the issuance of a subpoena to an internet company, "Go Daddy."

- ✓ According to Plaintiff, Plaintiff instructed Defendant to issue a subpoena to "Go Daddy" for certain accounts on May 8, 2015 and an amended subpoena was issued on May 13, 2015. *See* First Amended Complaint, ¶¶ 41-42 (Docket Entry 32); Second Amended Complaint, ¶¶ 79-80 (Docket Entry 36-1).

- ✓ Plaintiff alleges that on June 12, 2015, Plaintiff's former wife received notice from "Go Daddy" and counsel for Plaintiff's former wife moved to quash the subpoena. According to Plaintiff, Defendant failed her "basic responsibility and fiduciary duty" to provide notice of the issuance of the subpoena. *See* First Amended Complaint, ¶ 43 (Docket Entry 32); Second Amended Complaint, ¶¶ 81-82 (Docket Entry 36-1).

- ✓ Defendant's failure to obtain evidence of her own initiative on Plaintiff's behalf, her initial error in preparing the subpoena and subsequent error to provide proper notice to opposing counsel were all intentional acts made in a conspiracy with opposing counsel to deny Plaintiff due process. *See e.g.,* First Amended Complaint, ¶ 44 (Docket Entry 32); Second Amended Complaint, ¶ 82 (Docket Entry 36-1).

## DEFENDANT'S RESPONSE TO ALLEGATIONS REGARDING PLAINTIFF'S CRITICISMS CONCERNING THE ISSUANCE OF THE MAY, 2015 "GO DADDY" SUBPOENA

Plaintiff's criticism regarding the issuance of the subpoena is grounded in a complaint for legal malpractice. Plaintiff's own submission to the Court reflects that his complaint is barred by the applicable statute of limitations. Indeed, Plaintiff specifically accused Defendant of legal malpractice concerning this issue on June 18, 2015. *See* Email From Gentry to Perky, June 18, 2015 (Docket Entry 36) (Page ID 555) ["I would like you to propose a settlement as *this is clearly malpractice*."](filed by Plaintiff)[emphasis added]. The allegations fail to state a claim upon which relief may be granted because they are barred on their face by the statute of limitations.

In addition, Plaintiff fails to state a claim upon which relief may be granted because he has failed to allege any damages from this alleged event. Indeed, after June 15, 2015 until his trial in May 2-3, 2016, Plaintiff acted *pro se*. Plaintiff was free to seek any discovery he deemed relevant. Nothing alleged from these events in May, 2015 prevented Plaintiff from re-issuance of the subpoena at a subsequent time.

## LAW & ARGUMENT

### A. STANDARD FOR REVIEWING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

The purpose of a motion to dismiss a claim pursuant to Rule 12(b) (6), Fed. R. Civ. P., is to test whether, as a matter of law, a plaintiff is entitled to relief even if the factual allegations of the complaint as taken are true. *See e.g., Spurlock v. Whitley*, 971 F.Supp. 1166 (M.D. Tenn. 1977). However, the Court is not required to accept legal conclusions or unwarranted factual inferences advanced by Plaintiff. *See e.g., Grindstaff*

*v. Green*, 133 F.3d 416 (6th Cir. 1998). Courts are not required to accept as true legal conclusions couched as a factual allegation. *See e.g., League of Latin Amer. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007)(citing *Bell v. Twombly*, 127 S.Ct. 1955, 1966 (2007)). Similarly, plaintiffs must also meet the more rigorous, heightened pleading standard of Rule 9(b) when alleging claims of fraud. *See Heinrich v. Waiting Angels*, 668 F.3d 393, 403 (6th Cir. 2010).

Conclusory allegations, speculation, and a formulaic recitation of the elements of a cause of action will not suffice to state a cause of action. *See Permobile v. American Express Travel,* 571 F.Supp. 825, 832 (M.D. Tenn. 2008) (citing *Bell*).

Courts may also consider matters outside the pleadings in ruling on a motion to dismiss if those matters are integral to the complaint, matters of public record, or otherwise appropriate for the taking of judicial notice. *See England Healthcare Employees Pension v. Ernst and Young*, 336 F.3d 495, 501 (6th Cir. 2003); *In re Direct General Corp. Secs. Litigation*, 398 F.Supp.2d 888, 893 (M.D. Tenn. 2005). Here, *Plaintiff* has already submitted documents supporting the dismissal of the amended pleadings based upon the expiration of the statute of limitations (*see e.g.* Email from Gendry & Perky, June 18, 2015, Docket Entry 36 Page 11 of 242, Page ID #555). Similarly, the transcript from March 10, 2015 hearing is cited by Plaintiff and is integral to his claim that Defendant presented an "intentional false statement." The latter may be considered by the Court pursuant to Rule 12. In addition, Plaintiff submitted his decree of divorce (Docket Entry 36, Page ID 581-582) but failed to include the entire

memorandum order of July 14, 2016 (*See* <u>Exhibit 3</u> to Defendants' Motion to Dismiss). The latter order is a proper subject of judicial notice.

Defendant recognizes that Plaintiff is *pro se*. Plaintiff is entitled to fair and equal treatment. However, courts should also be mindful of the boundary between fairness to a *pro se* litigant and the unfairness to the *pro se* litigant's adversary. As noted by the Tennessee Court of Appeals, *pro se* litigants such as Plaintiff are not excused from complying with the same substantive and procedural rules that represented parties are expected to observe. *See John Anthony Gentry v. Kathryn Wise Gentry,* (Tenn. Ct. App. Case M2016-01765-R3-CV, December 9, 2016) (attached) (citing *Watson v. City of Jackson*, 448 S.W.3d 919, 926-27).[23]

B. <span style="font-variant:small-caps">Plaintiff Has Failed to State a Cause of Action for Legal Malpractice Because Such Allegations are Barred By the Statute of Limitations.</span>

1. <span style="font-variant:small-caps">Statutes Of Limitations Are Favored In Tennessee.</span>

Dismissal on statute of limitations grounds under Rule 12(b) (6) is appropriate if "the allegations of the complaint affirmatively show that the claim is time barred." *See e.g., Jones v.* Brock, 549 U.S. 199, 2015 (2007). It is clear from the pleadings and Plaintiff's own submissions that Plaintiff's purported claim for legal malpractice against Defendant is time barred by the applicable one (1) year statute of limitations. *See* T.C.A.

---

[23] Plaintiff submitted the "Appellate Case Search" reflecting the history of his appeal to the Tennessee Court of Appeals. (*See* Appellate Case Search (Docket Entry 36), p. 102 of 242, Page ID 646-648). Plaintiff has also submitted a copy of a lengthy "Supplemental Petition for Recusal" filed with the Tennessee Court of Appeals. *See* Supplemental Petition (Docket Entry 36), pp. 105-146, Page ID 649-690. The Response of Plaintiff's Supplemental Petition is located at Docket Entry 36, beginning at p. 147 of 242, Page ID 691.

§ 28-3-104(c) (1).[24]  Plaintiff's own email of June 18, 2015 accused Defendant of malpractice.  *See* Email of Gentry to Perky, June 18, 2015, Docket Entry 36, Page ID 555 (filed by Plaintiff).

T.C.A. § 28-3-104 states in relevant part as follows: "The following actions **shall be** commenced within one (1) year after the cause of action accrued . . .  Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort." (emphasis added).[25]

The law is well established that statutes of limitation are favored in Tennessee. Statutes of limitation promote fairness and justice.  *See Peros Steak House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002).  As stated by Tennessee Court of Appeals:

> The courts favor statutes of limitations (citations omitted). Their purpose is to ensure fairness by preventing undue delay in bringing suit after a cause of action has accrued (citations omitted).

*Pac. Eastern Corp. v. Gulf Life Ins. Co.,* 902 S.W.2d 946, 955 (Tenn. Ct. App. 1995) (internal citations omitted)(emphasis added).  Statutes of limitation rest upon the premise that "the right to be free of state claims in time comes to prevail over the right to

---

[24] The statute of limitations was previously codified at T.C.A. § 28-3-104(a)(2).  Plaintiff's state law claim for legal malpractice is governed by Tennessee law under the *Erie* doctrine.  *See e.g., Erie Railroad v. Tompkins,* 304 U.S. 64 (1932).

[25] Plaintiff's Second Amended Complaint recognizes that Plaintiff's allegations against Perky are barred by the applicable statute of limitations.  Paragraph 70 of the Second Amended Complaint (Docket Entry 36-1) alleges that Plaintiff cannot "seek remedy through a state agency (Circuit Court) due to [the] unconstitutional state statute 28-3-104(c)(1) that violates the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution."  Plaintiff provides no basis for such an allegation and Defendant has located no supporting legal authority for such an argument.  Plaintiff's claims of professional negligence are governed by state law pursuant to *Erie* doctrine.

prosecute them." *See R. R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 88 L.Ed. 788, 64 S.Ct. 582, 586 (1944).

Tennessee's appellate courts have emphasized that the statutes limiting the time for bringing lawsuits are enacted for the repose of society. *Cherry v. Williams,* 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000) [affirming dismissal of legal malpractice action based upon the statute of limitations]. As observed by the Tennessee Court of Appeals, "the peace of society requires [that] rights shall be enforced in a reasonable time and that they shall be barred if they are not." *Cherry,* at p. 83 (quoting *Peck v. Bullard,* 21 Tenn. (2 Hum) 41, 45 (1840). Tennessee law clearly favors statute of limitations as a societal choice that actions must be brought within the time period proscribed by the General Assembly.

### 2. DISMISSAL BASED UPON A STATUTE OF LIMITATIONS IS APPROPRIATE.

Professional malpractice actions, like other lawsuits, are subject to being barred by the statute of limitations. *Cherry,* 36 S.W.3d at 83. Defenses based upon a statute of limitations are particularly amenable to dismissal in advance of trial. *Cherry* S.W.3d at 83; *Creed v. Valentine,* 967 S.W.2d 325, 327 (Tenn. Ct. App. 1997) (citing *Allied Sound v. Neely,* 909 S.W.2d 815 (Tenn. Ct. App. 1995). Dismissal under Rule 56 or 12 seeking dismissal based upon the statute of limitation is appropriate. *See e.g. Redwing v Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 463-64 (Tenn. 2012).

### 3. ACTIONS FOR LEGAL MALPRACTICE MUST BE COMMENCED WITHIN ONE YEAR

In Tennessee, a cause of action for legal malpractice is deemed to accrue and the statute of limitations commences in accordance with the "discovery rule." The discovery rule, as

it applies to legal malpractice actions, is composed of two elements: (1) Plaintiff must have suffered an actual injury as a result of the alleged negligent actions and for omissions of Defendant and (2) Plaintiff must have known or, in the exercise of reasonable diligence, should have known, that this injury was caused by Defendant's alleged wrongful or negligent conduct. *John Kohl Co. v. Dearborn & Ewing,* 977 S.W.2d 528, 532 (Tenn. 1998); *Carvell v. Bottoms,* 900 S.W.2d 23, 2830 (1995). Here, Plaintiff directly accused Defendant of malpractice on June 18, 2015. He did not file his lawsuit suing Defendant until March, 2017.

Plaintiff complains that Defendant "committed fraud, breached her fiduciary duty, intentionally violated his right to due process which includes competent legal representation as a part of a "racketeering scheme" because Defendant stated that she performed "extensive legal research" and presented an intentionally "false and weak argument" at the hearing on March 10, 2015. *See* First Amended Complaint, ¶ 33 (Docket Entry 32); *see, too*, Second Amended Complaint, ¶¶ 71-72 (Docket Entry 36-1). Plaintiff also complains that Defendant failed to properly "obtain evidence of her own initiative" and committed an error in failing to provide notice of a subpoena. *See* First Amended Complaint, ¶¶ 41-44 (Docket Entry 32) and compare with Second Amended Complaint, ¶¶ 79-82 (Docket Entry 36-1).

Here, the factual information upon which Plaintiff relies to sue Defendant was well known (or reasonably should have been known) to Plaintiff more than one year before Plaintiff filed his original lawsuit on **January 9**, **2017**. What did Plaintiff know and when did he know it? At the latest, *assuming the truthfulness of Plaintiff's own*

*submissions to the Court*, Plaintiff knew or responsibly should have known that he had a claim for legal malpractice against Defendant arising from the issuance of a subpoena by June 18, 2015:  specifically, on June 18, 2015, according to his own submissions to the Court, Plaintiff sent an email to Defendant alleging that the quashing of the subpoena was "clearly malpractice" and he sought a "settlement."  (*See* Gentry Email, June 18, 2015, Document 36, p. 11 of 242, Page ID 555)(filed by Plaintiff).

Secondly, with respect to Plaintiff's allegation that Defendant presented "weak arguments" or "withheld arguments" at the March 10, 2015 hearing, Defendant respectfully submits the transcript (containing the complete statement) quickly dispels Plaintiff's allegation that any false statement was presented to the trial court.  To the extent that Plaintiff maintains that the "falsity" of Defendant's statement consisted of the fact that Plaintiff located supporting information for the same proposition "after [Plaintiff's] brief Google search" (as compared to Defendant's statement that she performed an "extensive search"), Plaintiff knew (at the latest) by September 15, 2015 of the legal support for the argument.  *See* Transcript of Proceedings, September 15, 2015 (Docket Entry 36), pp. 60-64 [p. 61, lines 4-10, 13-15) (filed by Plaintiff).  By Plaintiff's own admission, Plaintiff had demonstrated the legal support for his position to the trial judge by September 15, 2015.  Plaintiff knew or reasonably should have known of such facts long before the expiration of the statute of limitations.  Plaintiff did not file his federal lawsuit until January 9, 2017.

The Tennessee Supreme Court in *Roe v. Jefferson* explained the operation of the "discovery rule" in professional negligence actions as follows:

> It is not required that the [plaintiff] actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a right of action, the [plaintiff] is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

*Roe v. Jefferson,* 875 S.W.2d 653, 657 (Tenn. 1994); see also *Clifton v. Bass,* 908 S.W.2d 208, 210 (Tenn. Ct. App. 1995). Furthermore, "[Claimant] cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong." *Carvell* 900 S.W.2d at 27 (quoting *Sec. Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860, 864-65 (Tenn. 1983)).

Based upon Plaintiff's *own factual allegations and submissions to the Court*, Plaintiff's Complaint alleging that Perky did not provide him "competent legal representation" arose more than a year before this present lawsuit. Defendant withdrew from representing Plaintiff more than 18 months before Plaintiff filed this lawsuit against Defendant. Any allegations of professional negligence are barred by the applicable statute of limitations.

4.    PLAINTIFF SUFFERED NO DAMAGES BECAUSE OF DEFENDANT'S ALLEGED MISTAKES.

Importantly, Plaintiff's own pleadings and submissions establish that no action or inaction by Defendant caused Plaintiff any damages. In short, even if considered as true, Defendant's alleged mistakes caused no harm. Plaintiff's divorce case proceeded to trial after Defendant withdrew as counsel on June 15, 2015. Plaintiff presented his own arguments concerning comingling of assets and concerning his alleged entitlement to a share of profits from his former wife's business at the May, 2016 trial. The final order

entered by the trial court specifically reflected that the court considered, but rejected, Plaintiff's arguments. *See* Memorandum Order, July 14, 2016, <u>Exhibit 3</u> to Motion to Dismiss.

Similarly, Plaintiff does not, and cannot, allege that he was unable to obtain whatever evidence he deemed necessary in his case. After Defendant withdrew in June, 2015, Plaintiff was free to assemble the evidence Plaintiff deemed necessary, and Plaintiff was able to present any legal arguments Plaintiff deemed appropriate.

There are no damages that were caused by Defendant's alleged mistakes before June 15, 2015. Without damages, no claim for relief for legal malpractice can be sustained. *See e.g., Savarirayan v. White County Hospital*, 2009 WL 362462 (M.D. Tenn. 2009) (J. Traugher) (attached); *Nickles v. Law Offices of Donald Zuccarello*, 2008 WL 53689 (M.D. Tenn. 2008)(J. Wiseman) [inability to establish damages fatal to legal malpractice claim].

Even *if* Plaintiff had filed his lawsuit in a timely fashion (which he did not), Plaintiff also must establish causation and damages resulting from Defendant's alleged negligence. In other words, in order to avoid dismissal, Plaintiff must also demonstrate some plausible facts demonstrating that, "but for" the alleged negligence, Plaintiff's suffered damages. This Plaintiff does not do. The First and Second Amended Complaint fail to state a claim for relief and should be dismissed.

C. PLAINTIFF'S CONSTITUTIONAL CLAIM THAT DEFENDANT ACTED "UNDER COLOR OF STATE LAW" AND VIOLATED SECTION 1983 SHOULD BE DISMISSED AS A MATTER OF LAW.

1. PLAINTIFF'S CONSTITUTIONAL CLAIMS ARE WITHOUT MERIT.

Plaintiff also attempts unsuccessfully to state a claim against Defendant for a violation of 42 U.S.C. § 1983. *See e.g.* First Amended Complaint, ¶ 14 (Docket Entry 32); Second Amended Complaint, ¶¶ 5 and 15 (Docket Entry 36-1). To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (stating that a section 1983 plaintiff must "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law" (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Absent either element, a § 1983 claim will not hold up. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991) (citation omitted)

Defendant is not a state actor. She is, and was at all relevant times, an attorney in the private practice of law. Plaintiff cannot establish a claim under § 1983.[26]

A private attorney's issuance of a subpoena does not mean that the attorney becomes a state actor for the purposes of § 1983. *See Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999). Similarly, a lawyer representing a client is not, by being an officer of the

---

[26] Plaintiff's § 1983 claim is also barred by Tennessee's one year statute of limitations applicable to personal injury claims. *See e.g., Edison v. State of Tenn. Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007).

court, a state actor "under color of state law within the meaning of § 1983." *See Polk County v. Dodson*, 454 U.S. 312 (1981). *See too, Angelico v. Lehigh Valley Hospital*, 184 F.3d 268, 278 (3rd Cir. 1999) ["an attorney does not become a state actor simply by employing the state's subpoena laws."]

Plaintiff's § 1983 should be dismissed as a matter of law.

2.    LACK OF DAMAGES.

Although Defendant disputes that any constitutional violation has occurred and she disputes that any action it took constitutes state action, it is equally clear that Plaintiff has no actual damages as a result of any action by Defendant.  In *Memphis Community School Dist. v Stachura* 477 U.S. 299, 91 L. Ed. 2d 249, 106 S. Ct. 2537 (1986), the Supreme Court held that damages based on the abstract "value" or "importance" of constitutional rights violated under color of state law were not a permissible element of compensatory damages in actions brought under 42 USCS § 1983.

Here, Defendant did not take any state action that caused Plaintiff any damages. There was no loss of any fundamental constitutional right.  As discussed above, Plaintiff presented whatever evidence he deemed appropriate and presented any arguments Plaintiff considered persuasive up to and during the trial in May, 2016.  There was no damage caused by Defendant.

D.    PLAINTIFF'S CONSTITUTIONAL CLAIM THAT DEFENDANT VIOLATED § 1985 IS DEFICIENT AS A MATTER OF LAW.

Plaintiff's barebones allegation that Defendant violated § 1985 does not survive scrutiny under Rules 8 or 12, Fed. R. Civ. P. and should also be dismissed.

The First Cause of Action in Plaintiff's First and Second Amended Complaints does not contain any *factual* allegations to establish a violation of § 1985 by Defendant. Plaintiff's pleadings allege a conclusory claim that § 1985 has been violated by "Defendants." *See* First Amended Complaint, ¶ 15 (Docket Entry 32); Second Amended Complaint, ¶ 16 (Docket Entry 36-1). Plaintiff alleges only argumentative conclusions, without specifying any facts, to form a basis for liability under §1985. A plaintiff's conclusory allegations that the plaintiff is a subject of an illegal conspiracy under §1985(3) is <u>not</u> sufficient to support such a claim. *See e.g. Woods v. Alex-Bell Oxford Ltd*, 1997 U.S. App.Lexis 19943 (6th Cir. 1997) (citing *Sequin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

A § 1985 conspiracy claim fails unless there is a violation of a substantive right. *See Spencer v. Casaville*, 903 F.2d 171, 174 (2d. Cir. 1990). In conclusory fashion (and without specifying any facts), Plaintiff alleges in Paragraph 15 of the First Amended Complaint and Paragraph 16 of the Second Amended Complaint that Plaintiff has suffered a constitutional violation by Defendant by "[conspiring] with opposing counsel to present intentionally false and weak arguments so as to defraud Plaintiff of his property, and deny him due process as part of "racketeering activity." *See e.g.,* First Amended Complaint, ¶ 40 (Docket Entry 32). Defendant respectfully submits that such conclusory allegations present no substantive claim upon which relief may be granted.

Substantively, Plaintiff's claim that Defendant violated § 1985 is also without merit. To maintain a cause of action under § 1985, Plaintiffs must establish the following four (4) elements: (1) a conspiracy involving two or more persons; (2) for the purpose of

depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See e.g. Johnson v. Hills & Dales Gen. Hospital,* 40 F. 3d 837, 839 (6th Cir. 1994).  In addition, a plaintiff must show that the conspiracy was motivated by racial or class-based animus. *Id*.; *see also Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).  There is no evidence of any "conspiracy" by Defendant to deny Plaintiff's "equal protection of the law," based upon racial or class-based animus and there is no evidence that Defendant caused any injury to Plaintiff.

Similarly, as discussed above, Defendant was not counsel at the time of Plaintiff's divorce case.  Essential elements of Plaintiff's claims of a conspiracy have been negated and dismissal is appropriate.  *See e.g. Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) [explaining that the plaintiffs' conspiracy claim, alleging a violation of 42 U.S.C. § 1985 failed because the underlying substantive claims lacked merit].

E.   NO RICO CLAIM IS STATED.

Plaintiff's pleading is peppered with general allegations of "racketeering activities."  18 U.S.C. § 1961 defines racketeering activity to include specified state laws which are punishable by more than one year in jail and certain federal crimes. *See* First Amended Complaint ("Nature of Case").

Title 18 USC § 1964 of RICO creates a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."[27] Title 18 U.S.C. § 1962 states in relevant part as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection…c) of this section.

*See* 18 U.S.C. § 1962(c)-(d).

To establish a § 1962 violation, a plaintiff must show "(1) that there were two or more predicate offenses;[28] (2) that an "enterprise" existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an "injury to business or property occurred as a result of the above three factors." *See Pown v. Wash. Mutual Bank*, 2015 U.S. Dist. LEXIS 48170 (WD Tenn. 2015) (quoting *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000). Speculation of wrongdoing is an insufficient basis for asserting a RICO claim. *See e.g., Quade v. Rodriguez*, 2009 WL 2170146 *6 (E.D. Tenn. 2009).

Plaintiff's First and Second Amended Complaints do not come close to establishing a factual basis to allege that the Defendant violated RICO.

---

[27] Plaintiff alleges a violation of 18 U.S.C. § 1961. *See* First Amended Complaint ¶ 19 (Docket Entry 32).

[28] This element is commonly referred to as establishing a "pattern of racketeering activity." *See Grange Mut. Case Co. v. Mack*, 290 Fed. Appx. 832, 835 (6th Cir. 2008).

### 1. NO PREDICATE ACTS CONSTITUTING RACKETEERING ACTIVITY

"Racketeering activity" is defined as acts that constitute a violation of various state and federal criminal laws, including mail fraud, wire fraud, and extortion. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity" within a 10 year period. 18 U.S.C. § 1961(5). Merely pleading at least the minimum number of predicate acts is insufficient to prove a "pattern" of racketeering activity. *See e.g., H.J. Inc. v. NW Bell Telephone Co.*, 492 U.S. 229 (1989). There must be a relationship between the predicate acts and the threat of continued activity. *See e.g., Snowden v. Lexmark*, 237 F.3d 620, 622 (6th Cir. 2001).[29]  Plaintiff never pleads any predicate acts giving rise to a continuing pattern of racketeering.

Fraud alleged in a RICO civil complaint must state with particularity the *false statement of fact* and explain why the statements are fraudulent in order to comply with Rule 9(b). *See Bledsoe v. Community Health Systems*, 501 F.3d 493, 503 (6th Cir. 2007). Generalized and conclusory allegations that a defendant's conduct was fraudulent do not satisfy Rule 9(b). *See e.g., Bovee v. Coopers & Lybrand*, 272 F.3d 356, 361 (6th Cir. 2001).

Plaintiff mistakenly assumes that because he alleges Defendant presented a weak legal argument or otherwise states she had performed "extensive research" on a specific date (March 10, 2015), the Court will ignore the *content* of such communications and

---

[29] Both mail and wire fraud may be predicate offenses, if properly alleged, for "racketeering activity" for a RICO claim. See 18 U.S.C. 1961(1); 18 U.S.C. § 1341 (mail fraud). The elements of mail or wire fraud are (1) [a] scheme to defraud, and (2) [the] use of United States mail or wire or causing the use of such mail in furtherance of [the] scheme; (3) and specific intent to deceive or defraud. *Heinrich v. Waiting Angels*, 668 F.3d 393, 405 (6th Cir. 2012); *see too Moon v. Harrison Piping*, 465 F.3d 719, 723-724 (6th Cir. 2006); *Advocacy Org. for Patients and Providers v. Auto Club Ins. Assn.*, 176 F.3d 315, 322 (6th Cir. 1999).

whether the facts are alleged to have been false, and in furtherance of a fraudulent scheme.

Where is the *false* information? At best, Plaintiff maintains that he located information following a "brief Google search" although Defendant maintained she had performed "extensive research." Plaintiff's allegation does not render Defendant's alleged statement to be false. Where is the *fraudulent* scheme? How did any act further the *fraudulent* scheme? There must be a relationship between the predicate acts and the threat of continued activity. *See e.g., Snowden v. Lexmark*, 237 F.3d 620, 622 (6th Cir. 2001). To satisfy the relationship requirement, the acts must have "similar purposes, results, participants, victims, or methods of commission, or otherwise interrelated by distinguishing characteristics and not isolated events." *See H.J. Inc.*, at 240.

### 2.   NO FACTS SUPPORTING A THREAT OF CONTINUING CRIMINAL ACTIVITY

Under the RICO statute, the term "pattern" itself requires the showing of a relationship between the predicates," and the "*threat of continuing activity*." *See H.J. Inc.*, at 239. It is the fact of continuity, plus relationship, which combines to produce a pattern. *Id*. Here, the alleged threat of continuing activity critical to a civil RICO claim is *absent* from the Plaintiff's pleadings. There are no facts supporting any threat by Defendant of any continuing or alleged future criminal activity.[30]

---

[30] Plaintiff's pleadings fail to specify if he is alleging an open or closed ended pattern. If an "open ended" pattern, Plaintiff has failed to plead any threat of continuing activity. If a "close ended" pattern, Plaintiff has failed to establish related predicate acts over a substantial period of time. *See Heinrich*, at 393.

The Sixth Circuit in *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) emphasized that any alleged scheme must have continuity in order to state a civil RICO claim. In *Moon*, a plaintiff alleged a civil claim under § 1962 when the defendants "embarked upon a coordinated scheme to wrongfully terminate workers compensation benefits." Noting that all of the alleged predicate acts of mail fraud were keyed to depriving plaintiff of his claimed benefits, the Sixth Circuit also noted that there were no facts alleged which supported a claim that the scheme would *continue* beyond the goal of terminating plaintiff's benefits. The Sixth Circuit concluded that the alleged scheme lacked the required continuity of future criminal activity necessary to sustain a civil RICO claim. Plaintiff's First Amended Complaint in the present case suffers from the same deficiencies and lacks any allegation that the alleged scheme will *continue* into the future.

3.    NO FACTS SUPPORTING A CRIMINAL ENTERPRISE.

Under RICO, an enterprise may be "any individual, partnership, corporation, association or other legal entity and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). To establish an enterprise under § 1962(c), a plaintiff must show (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise as a continuing unit with established duties and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it was engaged. *See Ouwinga v. Benistar*, 694 F.3d 783, 792-793 (6th Cir. 2012).

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court addressed a RICO claim against accountants and observed that a defendant must have "participated with the operation or management" of the enterprise to "conduct" or "participate in the conduct" of the alleged criminal enterprise in order to be held liable under RICO. Id. at p. 179. It is "not enough that a defendant 'carry on' or 'participate in' an enterprise's affairs through a pattern of racketeering activity; instead, evidence that he operated, managed, or directed those affairs is required." *Id.* at pp. 177-179.

*Reves* and its progeny caution that lawyers, accountants and other providers of outside professional services to an alleged criminal enterprise do not "operate or manage" the enterprise, even where those professionals knowingly conceal the crimes of the enterprise. *See e.g. Bailey v. Simmons, Kemker, et.al*, 938 F.Supp. 825, 827 (S.D. Fla. 1996); *Madanes v. Madanes*, 981 F.Supp. 241, 256-257 (S.D. N.Y. 1997). An association in fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose. *See Boyle v. U.S.,* 556 U.S. 938, 946 (2009). Plaintiff's parroting the elements of a claim is not sufficient to state a claim upon which relief may be granted.

The Ninth Circuit Court of Appeals in *Walter v. Drayson*, 538 F.3d 1244 (9th Cir. 2008) encountered allegations and dismissed similar RICO claims against an attorney who dealt with the trustees. *In Drayson*, the beneficiary's RICO theory was that defendants were an associated-in-fact enterprise whose purpose was to gain and maintain control of the trust and to facilitate the wrongful taking of trust assets.

In dismissing the second amended complaint, the district court in *Drayson* held that the attorney's role was limited to providing legal services such that she did not operate or manage the enterprise and so, could not be liable for conducting its affairs. For this reason the court also dismissed the RICO conspiracy allegations. The beneficiary appealed, arguing that the district court misapprehended the operation and management test in the context of an associated-in-fact enterprise. The appellate court was not persuaded and dismissed the federal RICO claim. Similarly, the *Drayson* court observed that the beneficiary's state law claims sounded in breach of fiduciary duty had to be dismissed because there was no independent basis for exercise of federal jurisdiction. The same result should follow here.

Numerous courts have concluded that the providing of traditional legal services does not constitute the "operation or management" of an enterprise for purposes of RICO liability. *See e.g., Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-522 (2d Cir. 1994) (dismissing RICO claim against attorney who "acted as no more than [an] attorney"); *Nolte v. Pearson*, 994 F.2d 1311, 1316-1317 (8th Cir.1993) (affirming directed verdict in favor of law firm that drafted documents sent to prospective clients based on information provided by client did not establish RICO liability; no evidence that firm participated in conduct of the affairs of the enterprise); *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (dismissing RICO claim against an attorney whose "role was limited to providing legal services"); *Rolfes v. MBNA Am. Bank N.A.*, 416 F.Supp.2d 745, 752 (D. S.D. 2005) (dismissing plaintiff's RICO claim against attorneys who provided "ordinary professional assistance"); *Petri v. Gatlin*, 997 F. Supp. 956, 986 (N.D. Ill. 1997)  (although an

accountant, like an attorney, "manages" several aspects of its client's matters, that type of "management" is not synonymous with the "operation or management" of an enterprise required to sustain a RICO claim; collecting cases); *Menuskin v. Williams*, 940 F. Supp. 1199, 1210 (E.D. Tenn. 1996) (dismissing RICO claim against attorney who did not do "anything more than provide standard, routine services for [plaintiff]"); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 827 (S.D. Fla. 1996) ("[P]roviding standard legal services does not create RICO liability under the operation and management standard."); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D. N. J. 1993) (lawyer's preparation of allegedly misleading tax opinion letter merely constituted the rendition of legal services, not participation in the direction of the affairs of the enterprise).

Plaintiff has not stated a federal claim upon which relief may be granted under RICO and such allegations should be dismissed.

F.   PLAINTIFF'S ALLEGATIONS CLAIM A VIOLATION OF 18 U.S.C. § 1341, 18 U.S.C. § 1951 AND 18 U.S.C. § 1952 FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff's First Amended Complaint (Docket Entry 32) purports to bring this action pursuant to 18 U.S.C. § 1341 for "an intentional scheme by Defendants to defraud Plaintiff of property." (First Amended Complaint, ¶ 18). The Second Amended Complaint (Docket Entry 36-1) includes a similar allegation. (Second Amended Complaint, ¶ 20). Such allegations lack a factual or legal basis. Numerous courts have held that there is no private civil cause of action created by this criminal statute. *See e.g., Ryan v. Ohio Edison*, 611 F.2d 1170 (6th

Cir. 1979); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408-409 (8th Cir. 1999) (no private cause of action allowed under 18 U.S.C. § 1341, 1343 and 1951).

Plaintiff also generally alleges a violation of 18 U.S.C. § 1951 and 18 U.S.C. § 1952. *See* Second Amended Complaint, ¶¶ 22, 23, 50 (Docket Entry 36-1). No facts support the allegations. Notwithstanding the lack of factual basis for such allegations, numerous courts have held that there is no private cause of action created by either statute. *See e.g., Black v. Sciver*, 2016 WL 4594981 (E.D. Calif. 2016) (collection of cases/citations omitted) (attached).

Accordingly, any allegations by Plaintiff under his First or Second Amended Complaint which claim that Plaintiff bases his action on 18 U.S.C. § 1341, § 1951 or § 1952 fails to state a cause of action upon which relief can be granted and should be dismissed as a matter of law.

G. PLAINTIFF'S ALLEGATIONS REGARDING AN ALLEGED VIOLATION OF 18 U.S.C. § 1512 FAIL AS A MATTER OF LAW.

Plaintiff's allegations in his First Amended Complaint, ¶¶ 7, 20 (Docket Entry 32) and Second Amended Complaint, ¶¶ 19, 21 (Docket Entry 36-1) that Defendant violated 18 U.S.C. § 1512 fails to state a claim upon which relief may be granted and should be dismissed as a matter of law.

Assuming for the purpose of argument that a private cause of action exists for an alleged violation of the statute, Plaintiff presents no facts which would constitute a violation of 18 U.S.C. § 1512. The terms of the statute are defined in 18 U.S.C. § 1515, which speaks exclusively of proceedings "before a judge or court in the United States." The statute does not apply to state court proceedings. *See e.g., Park South Associates v. Fischbein*, 626 F.Supp.1108, 1113 (S.D.N.Y 1986).

Here, it is undisputed that all of the divorce proceedings occurred in state court. No proceedings occurred before a federal court or federal agency. Such allegations fail to state a claim upon which relief may be granted.

H.    PLAINTIFF'S ALLEGATIONS CLAIMING A VIOLATION OF 18 U.S.C. § 1346 FAILS TO STATE A CLAIM OF ACTION UPON WHICH RELIEF MAY BE GRANTED AND SHOULD BE DISMISSED.

Plaintiff also alleges that he initiated his lawsuit "pursuant to 18 U.S.C. § 1346." *See* First Amended Complaint, ¶¶ 17, 33 (Docket Entry 32) and Second Amended Complaint, ¶¶ 18, 47 (Docket Entry 36-1). However, § 1346 does not allow for a private cause of action. *See e.g., Tani v. FPL/NextEra Engery*, 811 F.Supp.2d 1004, 1020 (D. Del. 2011); *R. J. Production Company v. Nestle*, 2010 WL 1506914 fn. 1 (D.D.C. 2010) [citing § 1346 along with other criminal statutes, "as these criminal statutes do not provide for private causes of action, they cannot be used to access the federal courts"].

Any allegations of Plaintiff's First or Second Amended Complaint claiming a violation of 18 U.S.C. § 1346 should be dismissed for failure to state a claim upon which relief may be granted.

I.    PLAINTIFF'S ALLEGATIONS CLAIMING A VIOLATION OF 18 U.S.C. § 2(A) (B) FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND SHOULD BE DISMISSED.

Plaintiff's pleadings also allege that Plaintiff brings his lawsuit pursuant to 18 U.S.C. § 2(a) (b). *See* First Amended Complaint, ¶ 16 (Docket Entry 32); Second Amended Complaint, ¶ 17 (Docket Entry 36-1). Title 18 U.S.C. § 2 is a general aiding and abetting statute applicable to all federal criminal offenses. The statute does not create a private civil cause of action. *See, generally, Central Bank of Denver v. First Interstate Bank of Denver*, 144 S.Ct.

1439 (1994)[discussing that claimant could not maintain aiding and abetting suit under the Securities Exchange Act].

Any allegations of Plaintiff's First or Second Amended Complaint claiming a violation of 18 U.S.C. § 2(a) (b) should be dismissed for failure to state a claim upon which relief may be granted.

<u>CONCLUSION</u>

WHEREFORE, Defendant respectfully requests Plaintiff's First Amended Complaint and any subsequent amended claims lodged in the Second Amended Complaint be dismissed in their entirety. Defendant is not a proper defendant under any theory and should be dismissed.

Respectfully submitted,

BUTLER SNOW LLP

By: */s/William S. Walton*
WILLIAM S. WALTON, #11177
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
(615) 651-6717
bill.walton@butlersnow.com

*Attorneys for the Defendant Sarah Richter Perky*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on April 17, 2017, a true and correct copy of the foregoing document has been mailed electronically via the Court's electronic filing system to the following:

John A. Gentry, CPA, *pro se (regular mail)*
208 Navajo Court
Goodlettsville, TN  37072

Stephanie A. Bergmeyer
Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN  37202-0207

Erika Barnes
Stites & Harbison PLLC
401 Commerce Street, Suite 800
Nashville, TN  37219

*William S. Walton*

36084592v1