# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### Appeal from the Circuit Court for Sumner County
### No. 83CC1-2014-CV-393  Joe Thompson, Judge

### No. M2016-01765-COA-R3-CV

Appellant seeks review of three appellate judges' denial of his motion asking them to recuse themselves. We find no bias, and no error, in the matters appellant raises and therefore deny the motion to recuse the judges.

### Tenn. R. App. P. 3 Motion for Recusal; Motion for Court Review Denied

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

John Anthony Gentry, Goodlettsville, Tennessee, Pro Se.

Pamela Anderson Taylor, Nashville, Tennessee, for the appellee, Katherine Wise Gentry.

### OPINION

#### BACKGROUND

This is an unusual matter arising out of the Gentrys' divorce in which Mr. Gentry ("Husband") is challenging the appellate judges' decision not to recuse themselves. We begin with a recitation of the facts as taken from the parties' filings:

1. On April 9, 2014, Ms. Gentry ("Wife") filed a Complaint for Divorce against Husband.

2. On July 20, 2015, Husband filed a Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the Alternative to Reconvene Hearing for Petition for Contempt.

3. Husband's July 20, 2015, motion to recuse was heard by the trial court on August 7,

2015.

4. On September 9, 2015, the trial court entered an order denying Mr. Gentry's motion to recuse.

5. On May 2 and 3, 2016, the trial court conducted a final hearing on the underlying divorce proceeding.

6. On July 14, 2016, the trial court entered a memorandum opinion and order addressing the parties' underlying divorce action and the relevant issues related thereto.

7. On July 25, 2016, Mr. Gentry filed, pursuant to Tennessee Rule of Civil Procedure 59, an Amended Motion to Alter the Court's July 14, 2016 Final Judgment, Memorandum Opinion and Order.

8. On August 12, 2016, the trial court entered an order denying Husband's Rule 59 motion.

9. On August 22, 2016, Husband filed the Petition for Recusal Appeal with the Court of Appeals, which was issued appeal number M2016-01731-COA-T10B-CV.

10. On August 24, 2016, Husband filed a notice of appeal regarding his divorce in the trial court. It was eventually assigned appeal number M2016-01765-COA-R3-CV.

11. On September 1, 2016, this Honorable Court entered an order requiring Wife to file an answer to Husband's Petition for Recusal Appeal within fourteen (14) days.

12. On September 8, 2016, Husband supplemented his petition for recusal.

13. On September 9, 2016, Wife filed a response, a motion to dismiss the Rule 10B petition, and a request for an extension of time to file a response to Husband's petition for recusal.

14. On September 12, 2016, Husband filed a response to Wife's motion to dismiss, a response to Wife's motion for an extension of time, and a request for oral argument on his petition for recusal.

15. On September 14, 2016, the Court of Appeals granted Wife's motion for an extension of time.

16. On September 30, 2016, Wife filed an answer to Husband's petition for recusal.

17. On October 3, 2016, Husband filed a motion, along with a memorandum of law, to

- 2 -

stay the Rule 10B proceedings pending a decision by the Middle District federal court "regarding Husband's complaint in Federal Court that his constitutionally protected civil right to be heard was violated by the trial court judge multiple times in a variety of procedural and judicial errors, during the divorce case underlying this Petition for Recusal Appeal."

18. On October 6, 2016, the Court of Appeals, by a panel consisting of Judges Clement, Frierson and Armstrong, dismissed Husband's petition for recusal, stating that, because the trial court had entered a final judgment from which Husband had appealed, the proper avenue for raising the recusal issue was through that appeal. The Court, by separate order, also denied the motion to stay the recusal proceedings.

19. On October 31, 2016, Husband filed, in this appeal of his divorce, a motion to exceed the page limitations for a brief and an explanation of that limitation.

20. On November 1, 2016, Wife responded that there was no good cause for allowing Husband to exceed the page limitations of the appellate rules.

21. On November 3, 2016, the Court filed an order denying the motion to exceed the page limitations, explaining that "[t]he 50 page limit applies only to the argument section of the appellant's brief." Judge Clement was the motions judge.

22. On November 8, 2016, Husband filed a motion to recuse the appellate panel assigned to his appeal.

23. On November 16, 2016, the appellate panel, composed of Judges Clement, Frierson and Armstrong, denied the motion to recuse.

24. On November 22, 2016, in the appeal of the divorce, Husband filed a motion for court review of the denial of his motion to recuse the appellate judges.

## STANDARD OF REVIEW

Tennessee Supreme Court Rule 10B governs recusals. Section 3 of that rule addresses recusal of appellate judges. TENN. SUP. CT. R. 10B § 3. Our standard of review, stated in Rule 10B, § 3.02, is de novo. "De novo" is defined as "anew, afresh, a second time." *Simms Elec., Inc. v. Roberson Assocs., Inc.*, No. 01-A-01-9011CV00407, 1991 WL 44279, at *2 (Tenn. Ct. App. Apr. 3, 1991) (quoting BLACK'S LAW DICTIONARY 392 (5th ed. 1979). Thus, we examine the factual record anew, with no presumption of correctness, and reach our own conclusion.

- 3 -

ANALYSIS

We begin our discussion by noting that this is not a continuation of the Tenn. Sup.
Ct. R. 10B interlocutory appeal. That matter is over. The mandate was issued November
17, 2016. This recusal motion is in the context of the Tenn. R. App. P. 3 divorce appeal.
Mr. Gentry apparently intends to raise the recusal of the trial judge in his appeal and does
not want Judges Clement, Armstrong, or Frierson to rule on the trial judge's recusal or,
presumably, any other issue in his divorce appeal.

We also note that Mr. Gentry is representing himself.

"Parties who decide to represent themselves are entitled to fair and equal
treatment by the courts. The courts should take into account that many pro
se litigants have no legal training and little familiarity with the judicial
system. However, the courts must also be mindful of the boundary
between fairness to a pro se litigant and unfairness to the pro se litigant's
adversary. Thus, the courts must not excuse pro se litigants from
complying with the same substantive and procedural rules that represented
parties are expected to observe."

*Watson v. City of Jackson*, 448 S.W.3d 919, 926-27 (Tenn. Ct. App. 2014) (quoting
*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn.
Ct. App. Aug. 12, 2011)).

In support of his motion to recuse the panel, Mr. Gentry asserts that certain rulings
in his 10B appeal and his divorce appeal are erroneous and evidence of bias against him.
We will examine each of these rulings.

Mr. Gentry states that the "Court did not state any facts or legal basis for denial of
Appellant's Petition for Recusal Appeal." The operative paragraph of the Court's order
states:

Review of a trial court's decision on a motion to recuse may be sought by
filing either a Tenn. Sup. Ct. R. 10B petition for recusal appeal within
fifteen days after entry of the trial court's order or a Tenn. R. App. P. 3
appeal as of right after entry of a final judgment. TENN. SUP. CT. R. 10B, §
2.01. While the husband's petition for recusal appeal appears to be
untimely, the trial court has now entered a final judgment and the husband
has filed a Tenn. R. App. P. 3 notice of appeal, Appeal No. M2016-01765-
COA-R3-CV. Thus the Tenn. R. App. P. 3 appeal is now the proper method
to appeal the recusal order. Because the trial court has entered a final
judgment and the husband may raise any issues related to the recusal order
in his Tenn. R. App. P. 3 appeal as of right, a Tenn. Sup. Ct. R. 10B

- 4 -

accelerated interlocutory appeal as of right is both inappropriate and unnecessary.

Tennessee Supreme Court Rule 10B, section 3.02 states that, "[i]f the motion is denied, the judge shall state in writing the grounds upon which he or she denies the motion." The order of the Court provides guidance as to the grounds. Rule 10B requires an interlocutory appeal of a judge's denial of a recusal motion within fifteen days. TENN. SUP. CT. R. 10B § 2.02. The trial court entered an order denying Mr. Gentry's motion to recuse on September 9, 2015. Not until nearly a year later, August 22, 2016, did Mr. Gentry file his petition for recusal appeal with the Court of Appeals. Mr. Gentry suggests that he filed the petition within 15 days of the trial court's ruling on his rule Tenn. R. Civ. P. 59 motion. Tennessee Supreme Court Rule 10B specifically states that an accelerated interlocutory appeal must be filed within fifteen days of the denial of the motion for disqualification or recusal by the trial court judge. It does not allow a litigant to wait to see how the judge ultimately rules and then piggy-back on a Rule 59 motion to gain an appeal. At that point, after the final judgment, the appeal can no longer be interlocutory.[1] After a final judgment, the matter can only be raised in an appeal pursuant to Tennessee Rule of Appellate Procedure 3. TENN. SUP. CT. R. 10B § 2.01.

Mr. Gentry strongly maintains that "[a] simultaneous Rule 3 appeal does not preclude a Rule 10B appeal." He cites no legal authority for this proposition, arguing only that the Court's order represents "flawed logic." Because a Rule 10B interlocutory appeal can only occur *before* a final judgment, and Mr. Gentry's Rule 10B appeal was filed *after* a final judgment, there is no flawed logic here.

Mr. Gentry also focuses on the Court's statement that his petition for recusal "appears to be untimely." Those words are a reference to the fact that the fifteen days were to run from the date of the judge's order denying recusal—September 9, 2015. In our view, these words were merely an attempt to soften the blow of Mr. Gentry's failure to take action at the proper time. We attach no nefarious purpose to the use of "appears." The Court clearly ruled that Mr. Gentry filed the Rule 10B appeal too late.

Mr. Gentry also alleges a violation of due process. He cites no legal authority for his very brief argument on this point. Mr. Gentry is receiving the process he is due under the appellate rules and the Supreme Court rules.

We find no evidence of bias in this ruling.

---

[1] "Interlocutory is defined as provisional, temporary, not final, i.e., something intervening between the commencement and the end of a suit which decided some point or matter, but is not a final decision of the whole controversy." *State v. Owens*, No. 1248, 1990 WL 5259, at *1 (Tenn. Ct. Crim. App. Jan. 25, 1990) (citing BLACK'S LAW DICTIONARY 952 (4th ed.)).

- 5 -

Mr. Gentry also takes issue with the Court's decision not to allow him to exceed the page limitations for appellate briefs set out in Tenn. R. App. P. 27. He attempted to justify the need for extra length on the basis that he intended to raise thirty-five separate issues for review, that there were many pages of facts to consider about the recusal issue alone, and that the proposed findings of fact and conclusions of law filed by the parties in the trial court were each beyond fifty pages.

As we indicated earlier, pro se litigants are still bound by the procedural rules. The pertinent rule here is Tennessee Rule of Appellate Procedure 27(i), which limits the arguments in principal briefs to fifty pages unless the court orders otherwise. The Court stated that "we find insufficient grounds to waive the 50 page limit." At Mr. Gentry's request, the Court expressly stated that the fifty page limit applied only to the argument section of the brief.

Because the page limit applies only to arguments, the fact section of Mr. Gentry's brief can be as long as he feels is necessary. Mr. Gentry, like any other person appearing before the appellate courts, must make choices. Among those choices are which issues to raise. Mr. Gentry apparently wants to raise as an issue every possible thing that the trial court might have gotten wrong. This is an approach many people use and it is one that he thinks is uniformly discouraged by judges and legal commentators as being counter-productive. *See, e.g.*, Pierre Bergeron, *Sixth Circuit Gives Not-So-Gentle Reminder About Limiting Issues For Appeal*, SIXTH CIRCUIT APPELLATE BLOG (Aug. 31, 2012, 11:02 AM), http://www.sixthcircuitappellateblog.com/recent-cases/sixth-circuit-gives-not-so-gentle-reminder-about-limiting-issues-for-appeal/ ("[I]ncluding sundry issues for appeal weakens the strength of whatever the strongest arguments might be. A party is not realistically going to win on nine different issues . . . . Therefore, narrowing the focus and pursuing only the most credible and supportable grounds is likely to maximize chances for achieving the desired result."); *Pierce v. Visteon Corp.*, 791 F.3d 782, 788 (7th Cir. 2015) ("[The brief] presents 13 issues for decision, violating the principle that appellate counsel must concentrate attention on the best issues. (To brief more than three or four issues not only diverts the judges' attention but also means that none of the issues will be addressed in the necessary depth; an appellate brief covering 13 issues can spend only a few pages on each.)").

The fifty-page argument limit was established "based on the expectation that most arguments need not extend beyond the 50 pages authorized under subdivision (i)." TENN. R. APP. P. 27, advisory comments. It also serves the salutary purposes of forcing an appellant to determine what issues are the important ones and encouraging direct and concise writing. In light of the purposes of the fifty page limit, and the reasons offered by Mr. Gentry for wanting to exceed it, we find that he has not shown a true need for more than fifty pages of argument. We find no bias in the panel's decision. The fifty page limit does not deny Mr. Gentry his "forum." We, too, would deny the motion to exceed the page limit.

- 6 -

Finally, Mr. Gentry attacks the panel's order itself. The panel observed in the order denying recusal:

> [A] judge's adverse ruling is not usually sufficient to establish bias. *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). This is because rulings of a judge, "even if erroneous, numerous and continuous, do not, without more, justify disqualification." *State v. Alley*, 882 S.W.2d 810, 821 (Tenn. Ct. Crim. App. 1994).

Mr. Gentry argues that "erroneously" not hearing his matter is a violation of due process. First of all, we have already determined that the court did not erroneously refuse to hear the 10B interlocutory appeal. Second, platitudes about due process do not substitute for legal authority. Mr. Gentry provides no legal citations for his due process theory. Third, the "even if erroneous" language of the court's order is not an admission of error. It is a statement that even incorrect decisions are not necessarily evidence of bias. Fourth, Mr. Gentry argues that the September 1, 2016 order requiring Ms. Gentry to file an answer to his petition is a recognition that his recusal appeal was timely filed. Nothing in the order says that. The order seeks to have Ms. Gentry tell her side before a decision was made to take the appeal. Fifth, Mr. Gentry is correct that "even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if 'the judge's impartiality might reasonably be questioned.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001) (quoting TENN. SUP. CT. R. 10, Cannon 3(E)(1)). The key is that the judge's impartiality must be *reasonably* questioned. Filing a per curiam order is not evidence of bias. Mr. Gentry has offered nothing but misinterpretation of rules and case law combined with unsupported suspicion to justify the recusal of the panel. His arguments are not reasonable.

In our opinion, the panel's rulings and orders were correct and do not establish bias. Costs associated with this opinion will be assessed at the end of the appellate proceedings.

ANDY D. BENNETT, JUDGE

WESTLAW

Appeal Filed by JOHN GENTRY v. JOE THOMPSON, 6th Cir., February 21, 2017

2017 WL 373516

Gentry v. Thompson                Only the Westlaw citation is currently available.
United States District Court, M.D. Tennessee, Nashville Division. | Slip Copy | 2017 WL 373516  *(Approx. 4 pages)*
                                  United States District Court,
                                  M.D. Tennessee, Nashville Division.

                        John Anthony **Gentry**, Plaintiff,

                                        v.                          *Appeal Filed*
                                                                     *2/21/2017*
                        Judge Joe H. **Thompson**, Defendant.

                                Case No. 3:16–cv–2617
                                  Entered 01/26/2017

                            <u>MEMORANDUM & ORDER</u>

ALETA A. TRAUGER, United States District Judge

**\*1** Pending before the court are: 1) an Objection to Magistrate Judge's Report and
Recommendation and Motion to Strike, filed by the plaintiff (Docket No. 21), to which the
defendant has filed a Response in opposition (Docket No. 23), and the plaintiff has filed a
Reply (Docket No. 25); and 2) a Motion to Set Evidential or Other Appropriate Hearing, filed
by the plaintiff (Docket No. 22), to which the defendant has filed a Response in opposition
(Docket No. 24), and the plaintiff has filed a Reply (Docket No. 26). For the reasons
discussed herein, the plaintiff's motions will be denied, the R & R will be accepted, and this
action will be dismissed.

                        BACKGROUND AND PROCEDURAL HISTORY

On October 3, 2016, the *pro se* plaintiff, Mr. **Gentry**, filed this action against the defendant,
Judge **Thompson**, pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the
Fourteenth Amendment to the United States Constitution and seeking injunctive and
declaratory relief. (Docket No. 1.) On October 6, 2016, the court issued an Order referring
the case to the Magistrate Judge for "decision on all pretrial, nondispositive motions and
report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1)(A) and
(B) and to conduct any necessary proceedings under Rule 72(b), FED. R. CIV. P." (Docket
No. 3.)

On October 19, 2016, Mr. **Gentry** filed an Amended Complaint, which is the current
operative pleading, alleging that Judge **Thompson**, who presided over divorce proceedings
between Mr. **Gentry** and his former wife in the Circuit Court for Sumner County, Tennessee,
violated his constitutional rights during those proceedings. Specifically, the Complaint
alleges that, in conducting hearings and rendering judgment on motions before the Circuit
Court, Judge **Thompson**, among other things, exhibited bias against Mr. **Gentry** and in
favor of Mr. **Gentry's** former wife, did not allowing Mr. **Gentry** to present argument or
evidence in court, and made false statements on the record about the evidence, the filings,
and the governing law. (Docket No. 6.)

On October 14, 2016, Judge **Thompson** filed a Motion to Dismiss, along with a
Memorandum in Support. (Docket Nos. 11, 12.) Judge **Thompson** argued that the case
should be dismissed for lack of jurisdiction under Rule 12(b)(1), on the grounds that, under
the *Rooker–Feldman* doctrine, a federal court cannot review a constitutional claim that is
inextricably intertwined with a state court decision in a judicial proceeding. Judge
**Thompson** argued, in the alternative, that he has absolute immunity in his individual
capacity and cannot be sued in his official capacity under the Eleventh Amendment to the
United States Constitution and pursuant to Section 1983. Finally, Judge **Thompson** argued
that the action should be dismissed for failure to state a claim under Rule 12(b)(6), on the
grounds that the statute of limitations had expired for at least part of the plaintiff's claims. On

**SELECTED** TOPICS

United States Magistrates

Review and Supervision by District Court
United States Magistrate Judge Report

**Secondary Sources**

**Effect of party's failure to file timely
objections, under 28 U.S.C.A. sec. 636
(b)(1), to magistrate's findings or
recommendations on right of review in
appellate court**

80 A.L.R. Fed. 921 (Originally published in
1986)

...This annotation collects and analyzes the
federal cases in which the courts have
discussed or decided whether, or under what
circumstances, a party's right to appeal to the
appellate court is affected ...

**s 3070.1. Practice and Procedure
with Regard to Dispositive Motions-
Manner and Effect of Objections to the
Magistrate Judge's Recommendations**

12 Fed. Prac. & Proc. Civ. § 3070.1 (2d ed.)

...Rule 72(b)(2) sets forth procedures to be
followed by parties who object to the
magistrate judge's recommendations and by
the district judge to whom the case is
assigned. It adapts the analogous provis...

**Duty of District Court to hold
evidentiary hearing before acting upon
magistrate's findings of fact and
recommendations submitted pursuant
to 28 U.S.C.A. sec. 636(b)(1)(B)**

49 A.L.R. Fed. 763 (Originally published in
1980)

...This annotation collects and analyzes the
federal cases which have determined
whether a District Court is under a duty to
hold an evidentiary hearing before acting
upon a United States magistrate's fin...

See More Secondary Sources

**Briefs**

**Petition for Writ of Certiorari**

2009 WL 1914938
Steven GREEN, et al., Petitioners, v.
JEFFERSON COUNTY COMMISSION and
The General Retirement System for
Employees of Jefferson County, Alabama
Respondents.
Supreme Court of the United States
June 29, 2009

...Steven Green, Mark Persall, Charles
Horton, James Phillips, Cassie Bell, Sherry J.
Amick, William V. Arnold, Lynn G. Baswell,
Phillip A. Bailey, Samuel R. Beard, Fred M.
Berry, Frieda Bland, Dennis Bla...

**Petition for Writ of Certiorari**

2012 WL 313324
ACEMLA DE PUERTO RICO, INC., and Latin
American Music Co., inc., Petitioners, v.
Hilda CURET-VELAZQUEZ, Eduardo Curet-
Velazquez, and Hilda Velazquez-Coto,
Respondents.
Supreme Court of the United States
Jan. 30, 2012

...The caption of the case contains the names
of all the parties to the action in the United
States Court of Appeals for the First Circuit
whose judgment is sought to be reviewed.
There is no parent corpo...

November 28, 2016, Mr. **Gentry** filed a Response in opposition, arguing against all of the grounds raised in the Motion to Dismiss. (Docket No. 17.)

*2 On December 28, 2016, the Magistrate Judge issued a Report and Recommendation, recommending that Judge **Thompson**'s Motion to Dismiss be granted and this action be dismissed with prejudice, both for lack of jurisdiction under *Rooker–Feldman* and, alternatively, on the grounds that Judge **Thompson** has immunity for any claims against him as an individual, and the State has Eleventh Amendment immunity for any Section 1983 claims against Judge **Thompson** in his official capacity. (Docket No. 21 (the "R & R").)

On January 3, 2017, Mr. **Gentry** filed an Objection to the R & R and Motion to Strike the R & R, objecting to all of the Magistrate Judge's findings. (Docket 21.) Mr. **Gentry** simultaneously filed a Motion to Set Evidential or Other Appropriate Hearing. (Docket No. 22.) On January 13, 2017, Judge **Thompson** filed Responses in opposition to both motions (Docket Nos. 23, 24) and, on January 17, 2017, Mr. **Gentry** filed Replies (both titled "Response & Objection to Defendant's Response") (Docket Nos. 25, 26).

## ANALYSIS

### I. Motion to Strike

As an initial matter, Mr. **Gentry** has improperly moved to strike the R & R under Rule 12(f). This rule permits parties to move to strike only portions of the *pleadings* in an action, and there is no procedural mechanism for striking the Magistrate Judge's recommendations from the record. Accordingly, this motion will be denied. The only appropriate vehicle with which to challenge the Magistrate Judge's findings is through an Objection to the R & R under Rule 72(b)(2), which Mr. **Gentry** has properly filed. The court will now turn to that Objection.

### II. Objection to R & R

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a specific objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Mr. **Gentry** objects to all of the Magistrate Judge's findings, so the court has conducted a *de novo* review of the entire Motion to Dismiss. Pursuant to this review, and for the reasons discussed below, the court finds this action must be dismissed for lack of jurisdiction under *Rooker–Feldman*, as recommended by the Magistrate Judge.[1]

*3 In two seminal opinions for which the *Rooker–Feldman* doctrine is named, the Supreme Court has held that lower federal courts may not review the findings of state court judges, and the only appropriate vehicle for such review is through the state appellate courts or, if necessary, the United States Supreme Court. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 n. 1 (holding that, under *Feldman*, "a district court could not entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack was inextricably intertwined with the state court's judgment"). The Sixth Circuit has explained that this doctrine applies not only when a party attempts to expressly appeal a state court decision to a lower federal court, but also whenever the issues raised in the federal action implicate the validity of the state court proceedings. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2007) ("The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." (citing *Exxon*, 544 U.S. 280). The Sixth Circuit has further held that the *Rooker–Feldman* doctrine applies equally to claims for equitable relief. *See Lawrence v. Welch*, 531 F.3d 364, 71–72 (6th Cir. 2008) ("claims seeking injunctive relief are barred by *Rooker–Feldman* if they necessarily require the federal court to determine that a state court judgment was erroneously entered").

Here, while Mr. **Gentry** is not directly appealing Judge **Thompson**'s rulings, he is certainly raising claims that implicate the validity of the proceedings before Judge **Thompson**; indeed, if the court were to find that Judge **Thompson** acted in error in the state court proceedings, this would necessarily call into question the rulings made in that case. Mr. **Gentry** argues that he is not challenging the actual rulings of the Circuit Court, but only the *process*, ignoring that these things are inextricably intertwined. Indeed, the source of the injury to Mr. **Gentry** in this action is the alleged improper rulings in the divorce proceedings

**Petition for a Writ of Certiorari**

2008 WL 2794273
Roslyn HOLMAN, Petitioner (Pro se), v.
CLEMSON UNIVERSITY, Respondent.
Supreme Court of the United States
July 15, 2008

...The parties to this proceeding are
Petitioner, Roslyn Holman and Respondent,
Clemson University. Roslyn Holman,
Petitioner respectfully petitions for Writ of
Certiorari to review the Opinion and Order ...

See More Briefs

**Trial Court Documents**

DeMoss v. Dillard's, Inc.

2009 WL 7014934
Robert H. DeMOSS, Jr., by the conservator
of his person and property, Catherine
Robette Campbell, Plaintiffs, v. DILLARD'S,
INC., Dillard Tennessee Operating Limited
Partnership, Construction Developers,
Incorporated, John Mitchell, William Horn,
Davis Street Land Company of Tennessee,
LLC., Robert William Tice, JR., Brittney
Banister, Johnathon Harris, and Catherine
Dale Mills, Defendants.
Circuit Court of Tennessee.
Dec. 29, 2009

...This is an action which was originally filed
in the Circuit Court for Davidson County,
Tennessee and removed by Defendants to
this Court based upon diversity of citizenship.
Subsequently, Plaintiffs fi...

United States of America v. Lanier

2016 WL 2864310
UNITED STATES OF AMERICA, v. Ricky
LANIER and Katrina Lanier.
United States District Court, E.D. Tennessee,
Northeastern Division.
May 06, 2016

...This matter is before the Court on
defendants Ricky Lanier and Katrina Lanier's
motion for new trial and renewed motion to
interview deliberating jurors, [Doc. 223]. The
government has responded and op...

State of Tennessee v. Lockhart

2012 WL 9436698
STATE OF TENNESSEE, v. Vernon Elliot
LOCKHART.
Circuit Court of Tennessee.
Aug. 06, 2012

...This matter comes before the Court on
Defendant's Motion to Suppress Evidence
Seized from Placement of GPS, which
challenges all evidence seized pursuant to a
physical GPS on Defendant's vehicle as
wel...

See More Trial Court Documents

before Judge **Thompson**. Accordingly, the only proper mechanism for relief is an appellate challenge in state court, which Mr. **Gentry** has indicated in his briefings is currently ongoing.

Mr. **Gentry** attempts to rely on the fact that a state court appeal is ongoing to suggest that *Rooker–Feldman* should not apply here, because he is not challenging a *final* state court judgment. Mr. **Gentry** homes in on *Exxon's* holding that *Rooker–Feldman* "is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced." *Exxon*, 544 U.S. at 281. *Exxon*, however, does not suggest that the scope of *Rooker–Feldman* is limited to challenges to *final* judgments only. The holding in *Exxon* merely distinguishes cases where *Rooker–Feldman* is invoked to challenge the federal court's *concurrent jurisdiction* over claims brought by state-court losers simultaneously pursued in state court, but where the underlying challenge is not to the actions of the state court itself. *Id.* In those instances, *Exxon* holds that *Rooker–Feldman* does not apply, despite the fact that the exercise of federal jurisdiction might lead to a federal holding that undermines the validity of a future state court judgment. *Id.*

The court finds that the best reading of the *Rooker–Feldman* doctrine under *Exxon* is that it applies with equal force to federal claims that attempt to challenge nondispositive orders in the state court as to claims challenging final state court judgments. In either case, an appeal within the state court system is the sole mechanism for the challenge. The court is not swayed by any findings to the contrary in the Eastern District of Michigan's holding in *Kircher v. Charter Twp. of Ypsilanti*, which is not binding on this court. No. 07–13091, 2007 WL 4570076 (E.D. Mich. Dec. 21, 2007). Nor does the court find any significance in use of the term "final judgment" in *Hutcherson v. Lauderdale Cnty, Tennessee*, 326 F.3d 747, (6th Cir. 2003), cited by the plaintiff. *Hutcherson* pre-dates *Exxon* and states only that *Rooker–Feldman* denies jurisdiction over challenges to final judgments (not that it permits review of other nondispositive or non-final state court rulings). 326 F.3d 747, 755 (6th Cir. 2003).

*4 Finally, Mr. **Gentry** argues that applying *Rooker–Feldman* to this action would implicate all Section 1983 claims against judicial officers based on their behavior in presiding over state court proceedings. While there may be some instances where a judge's conduct violates a principal of due process or equal protection under the Fourteenth Amendment such that injunctive relief may be appropriate, no such claim is actually brought here. While Mr. **Gentry** has brought claims for violation of his constitutional rights, he has neither alleged that he is a member of a protected class denied equal protection of the law nor that he has been deprived of liberty or property in violation of the law, other than in the disposition of marital assets in his divorce proceeding, a decision that Judge **Thompson** had to make within the course of presiding over that domestic action—not an independent action taken against the plaintiff. Moreover, the Sixth Circuit has held that even a "specific grievance that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case ... would raise a *Rooker–Feldman* bar." *Hutcherson*, 326 F.3d at 756.

As a result, under *Rooker–Feldman*, the court does not have jurisdiction to hear this action and it must be dismissed. The court need not reach the question of judicial immunity.[2]

### II. Motion for Evidentiary Hearing
Mr. **Gentry** has asked for an evidentiary hearing without specifying the evidence he wishes to present. Because this case must be dismissed as a matter of law, there is no need for the court to review any factual evidence, nor is there any additional evidence that would impact the court's determination. Moreover, it is within the court's broad discretion to deny a request for oral argument. See M.D. Tenn. R. (Local Rules) 72.03(b)(3). Accordingly, Mr. **Gentry's** Motion for an Evidentiary Hearing will be denied.

### CONCLUSION
For the foregoing reasons, the plaintiff's motions are **DENIED**. The Magistrate Judge's Report and Recommendation is **ACCEPTED**, the defendant's Motion to Dismiss is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

Entry of this Order shall constitute judgment in this case.

It is so **ORDERED**.

### All Citations

Slip Copy, 2017 WL 373516

**Footnotes**

The court notes that, in addition to objecting to the substantive findings by the Magistrate Judge, Mr. **Gentry** also objects to the fact that the Magistrate Judge, according to Mr. **Gentry**, mischaracterized and unfairly ridiculed the allegations in the Complaint. There is no legal authority to suggest that these are proper bases for objecting to the R & R and, in any event, the court, finds, upon *de novo* review, that the Magistrate Judge's legal findings with respect to the applicability of the *Rooker–Feldman* doctrine are correct and the case should properly be dismissed. Accordingly, the court need not address these arguments.

Similarly, Mr. **Gentry** objects to the fact that the Magistrate Judge did not conduct an evidentiary hearing prior to issuing the R & R, citing language in Rule 72 requiring the Magistrate Judge to "hear" a dispositive motion. This language, however, does not require the Magistrate Judge to hold oral argument, nor to review factual evidence when the issues can be properly decided on the papers as a matter of law. Accordingly, this objection also provides no basis for rejecting the Magistrate Judge's recommendation.

2    The court notes, however, that the R & R discusses immunity for Section 1983 claims (both in the individual and official capacities) by citing cases that address immunity for claims seeking *damages*. Mr. **Gentry**, to the contrary, seeks only equitable relief, and it is, therefore, unclear whether these grounds for dismissal would be appropriate upon *de novo* review. Nevertheless, because the court is dismissing this action for lack of jurisdiction under *Rooker –Feldman*, it will not reach these issues.

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.



ATTACHMENT-OF-20-UNREPORTED-DECISIONS-(DEFENDANTS-MOTION-TO-DISMISS)

ATTACHMENT OF UNREPORTED DECISIONS (DEFENDANT'S MOTION TO DISMISS)

WESTLAW

2016 WL 4594981
Only the Westlaw citation is currently available.
United States District Court,
E.D. California.

**Black v. Sciver**

United States District Court, E.D. California.    September 2, 2016    Slip Copy    2016 WL 4594981    *(Approx. 7 pages)*

Carl Danny **Black**, II, Plaintiff,

v.

Kurt David Van **Sciver**, et al., Defendants.

No. 1:16-cv-00841-DAD-JLT

Signed September 1, 2016    *Subsequent*
Filed 09/02/2016    *dismissal*
*2016 WL6875705*

**Attorneys and Law Firms**

Carl Danny Black, II, Bakersfield, CA, pro se.

Sebastien Jean Thomas Bauge, Klein Denatale Goldner, Bakersfield, CA, for Defendants.

ORDER GRANTING MOTION TO DISMISS

Dale A. Drozd, UNITED STATES DISTRICT JUDGE

*1 Plaintiff, who is proceeding *pro se*, filed this action on June 17, 2016 against defendants Kurt Van Sciver, Terry McNally, Lorna Hislop Brumfield, and John Gschwend. (Doc. No. 1.) [1] Defendant Van Sciver filed a motion to dismiss on July 15, 2016. (Doc. No. 2.) Plaintiff filed a "response and cross-movement to strike" on July 27, 2016, which the court deems to be plaintiff's opposition of the motion to dismiss. (Doc. No. 3.) Defendant Van Sciver filed a reply on August 9, 2016. (Doc. No. 3.) A hearing was held on August 16, 2016, with plaintiff appearing telephonically on behalf of himself, and attorney Sebastien Bauge appearing on behalf of defendant Van Sciver. As discussed below, this court does not have subject matter jurisdiction over this complaint and the action will, therefore, be dismissed. [2]

**Background**

From what the court can discern from the filings before it and what was represented at oral argument on the pending motion to dismiss, defendant Van Sciver is an attorney who represented defendant Gschwend in a state court action before the Kern County Superior Court. Defendant McNally is a clerk of that court, and defendant Brumfield was the Kern County Superior Court Judge presiding over the state court action. The state court matter appears to have been a contract dispute related to the rental of a house owned by defendant Gschwend. Although not entirely clear from plaintiff's complaint, it also appears that Gschwend rented the home to a Theresa Moore who in turn assigned that lease to others including plaintiff Carl Black. Thereafter, defendant Gschwend alleged that he was not being paid the agreed upon rent and eventually he regained possession of the home through eviction proceedings. In his state court action defendant Gschwend sought the award of damages for past due rent, damage to the property, costs incurred in the eviction proceedings and the award of attorney's fees and costs.

Plaintiff's complaint filed with this federal court seeks review of the state court proceedings by way of the Administrative Procedure Act ("APA"). Specifically, plaintiff asserts the following seven claims in this action.

*2 First, plaintiff alleges that although he received a summons in the state court case, there was "no autograph or Court Seal," making it "void of any lawful authority," because it violated Federal Rule of Civil Procedure 4. (Doc. No. 1 at 3.) Plaintiff also alleges that when he viewed the court file and obtained a certified copy of that summons, it had a seal and the appropriate signatures. (Doc. No. 1 at 4.) Based on these allegations, plaintiff claims defendants committed mail fraud, extortion, and conspiracy, in violation of 18 U.S.C. § 1341,

**SELECTED TOPICS**

Federal Civil Procedure

Pro Se or Lay Pleadings
  Liberally Construe Pleadings of Pro Litigant

**Secondary Sources**

**S APP.02 RULE 11-HISTORICAL**

Rule 11 Sanctions App.02

...Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attor...

**EXCERPTS FROM SPECIAL STUDY CONFERENCE OF FEDERAL RULES GOVERNING ATTORNEY CONDUCT LOS ANGELES, CALIFORNIA JANUARY 9-10, 1996**

Q247 ALI-ABA 311

...To: Committee on Rules of Practice and Procedure, Judicial Conference of the United States From: Daniel R. Coquillette, Reporter Date: December 1, 1995 THE MATERIAL SET FORTH AT THIS POINT IS NOT DISPL...

**RECONSIDERING PROCEDURAL CONFORMITY STATUTES**

35 W. St. U. L. Rev. 75

...I. Introduction. 75 II. Drafting the Statute. 77 III. Evaluating the Proposal. 79 IV. Contemplating the Anomaly. 87 V. Recounting the Basics. 89 VI. Revisiting the Failure. 93 VII. Conclusion. 100

See More Secondary Sources

**Briefs**

**Appellants' Reply Brief**

2012 WL 2951093
RETIREMENT HOUSING FOUNDATION; Foundation Property Management; Bixby Knolls Towers, Inc.; Gold Country Health Center, Inc.; Mayflower Gardens Health Facilities, Inc.; Mayflower RHF Housing, Inc.; Sun City RHF Housing; Holly Hill RHF Housing, Inc.; Merritt Island RHF Housing, Inc.; Martin Luther Foundation, Inc.; Yellowwood Acres, Inc.; Bluegrass RHF Housing, Inc.; St. Catherine RHF Housing, Inc., and Desmet RHF Housing, Inc., Plaintiffs and
Court of Appeal, Second District
June 28, 2012

...FN1. The Respondent's Brief will be cited as "RB, [page no.]." While arguing that the appropriate standard of review is abuse of discretion, the same standard applicable to a disqualification motion, C...

**Respondents' Brief on the Merits**

1989 WL 1127396
Eddie KELLER, et al, v. STATE BAR OF CALIFORNIA, et al.
Supreme Court of the United States
Dec. 18, 1989

...FN* COUNSEL OF RECORD This action was filed by 21 past and present members of the State Bar of California, seeking to enjoin a broad range of activities by the State Bar that they oppose. According to ...

*et seq.*, 18 U.S.C. § 871, *et seq.*, 18 U.S.C. § 371, respectively, as well as 18 U.S.C. § 1512 (tampering with a witness) and 18 U.S.C. § 242 (the criminal counterpart to 42 U.S.C. § 1983). (Doc. No. 1 at 5.)

Second, plaintiff claims that he alleged in the state court case defendant Van Sciver breached his fiduciary duty toward his own client, defendant Gschwend. (Doc. No. 1 at 6.) According to plaintiff, the state court erroneously exercised jurisdiction and disregarded his challenge to attorney Van Sciver's conduct. (Doc. No. 1 at 6.) Plaintiff alleges that in this way the state court violated 18 U.S.C. § 871, *et seq.*, 18 U.S.C. § 371, and 18 U.S.C. § 1512. (Doc. No. 1 at 7.)

Third, plaintiff alleges the state court rejected his filings in that action, noting they did not contain any legally recognized arguments that the court could consider and that he had "submitted four lengthy and incomprehensible documents." (Doc. No. 1 at 7–8.) Plaintiff alleges that the state courts order in this regard violated the holdings in *Haines v. Kerner*, 404 U.S. 519 (1972) (holding the Rule 12(b)(6) dismissal of *pro se* complaints is inappropriate unless it is "beyond doubt that plaintiff can prove no set of facts" which would entitle him to relief), *Estelle v. Gamble*, 429 U.S. 97 (1976) (setting out the Eighth Amendment's deliberate indifference standard), *McNeil v. United States*&cedil; 508 U.S. 106 (1993) (requiring a claimant to exhaust administrative remedies before filing suit under the Federal Tort Claims Act), *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (enforcing procedural requirements for filing suit under Title VII), and *Hughes v. Rowe*, 449 U.S. 5 (1980). (Doc. No. 1 at 8.) Moreover, plaintiff claims that the state court in this way also violated 18 U.S.C. §§ 2076 (a U.S. District Court clerk may not "willfully refuse[ ] or neglect[ ] to make or forward" documents as required by law), 1512 (tampering with a witness), and 2071 (mutilating a court record).

Fourth, plaintiff claims defendant Van Sciver should have been terminated and sanctioned in the state court case under 28 U.S.C. § 1927 (allowing the award of costs against counsel who "so multiples the proceedings in any case unreasonably and vexatiously"), because he filed a document after plaintiff had alleged defendant Van Sciver breached his fiduciary duty to defendant Gschwend.

Fifth, plaintiff seeks a "lawful determination...as to any Lawful Contract," noting neither he, nor Delana Erica Black, Carmen Portillo or Fernando Portillo[3] are parties to a lease contract apparently in dispute in the underlying state court case. (Doc. No. 1 at 10.)

\*3 Sixth, plaintiff asserts defendant Van Sciver violated the rules of professional conduct and seeks "a lawful determination...as to any Conflict of interest, unethical conduct" in the state court case. (Doc. No. 1 at 14–15.)

Finally, plaintiff asserts that one of the exhibits submitted with his complaint is his "Affidavit of Truth" which "has been defaulted by proof of file stamp by the clerk of the court Terry McNally." (Doc. No. 1 at 15.) Plaintiff asks:

> Is it not true that: 1. All men are equal under the law? 2. Truth is expressed in the form of an affidavit? 3. An unrebutted affidavit stands as truth in commerce? 4. An unrebutted affidavit becomes judgement [sic] in commerce? 5. Is it not true that Kurt David Van Sciver SBN 263957 is/has interfered with commerce?

(Doc. No. 1 at 15.) Plaintiff requests a "lawful determination" with respect to his inquiry. (Doc. No. 1 at 15.)

Defendant Van Sciver moves to dismiss plaintiff's complaint on three separate grounds: (1) the court lacks subject matter jurisdiction over this dispute; (2) plaintiff has no statutory standing to bring suit under the APA; and (3) the complaint fail to state a cognizable claim. (Doc. No. 1 at 2.) For the reasons set forth below, the court concludes that it lacks subject matter jurisdiction over this matter and that the complaint must be dismissed. Accordingly, the court declines to reach the other two arguments presented by defendant Van Sciver.

### Legal Standard

Federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). "If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss." *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988)

**Brief of California Legislature as Amicus Curiae in Support of Respondents**

1989 WL 1127393
Eddie KELLER, et.al., Petitioners, v. STATE BAR OF CALIFORNIA, et al., Respondents.
Supreme Court of the United States
Dec. 18, 1989

...The California Legislature submits this brief, amicus curiae, pursuant to Rule 36 of the Rules of the Supreme Court of the United States, in support of respondents in No. 88-1905, having obtained the w...

See More Briefs

**Trial Court Documents**

**In Re Intel Corp. Shareholder Derivat**

2014 WL 5600706
In Re Intel Corporation Shareholder Derivat.
Superior Court of California
Sep. 26, 2014

...Type: Business Tort, Unfair Practice - UnlimitDate Filed: 03/07/14 SubType: C: 1-14-CV-262468, C: 1-14-CV-265053 Event: Demurrer Result Code: Text: (1)Demurrer by Nominal Defendant Intel Corporation an...

**City of South San Francisco v. City of El Segundo**

2013 WL 10533569
CITY OF SOUTH SAN FRANCISCO, Petitioners/Plaintiffs, v. THE CALIFORNIA STATE BOARD OF EQUALIZATION and Does 1-500, Respondents/Defendants, CITY OF EL SEGUNDO; Cities of Alhambra, et al., Intervenors.
Superior Court of California
Aug. 20, 2013

...The Court has before it the motions of Petitioners City of Brisbane ("Brisbane"), Cities of Alameda, Irvine, Newport Beach, Roseville, San Ramon and Santa Fe Springs ("Alameda, et. al."), City of South...

**ITT INDUSTRIES, INC., Plaintiffs, v. PACIFIC EMPLOYERS INSURANCE COMPANY, et al., Defendants, And Related Cross-Actions.**

1999 WL 34825980
ITT INDUSTRIES, INC., Plaintiffs, v. PACIFIC EMPLOYERS INSURANCE COMPANY, et al., Defendants, And Related Cross-Actions.
Superior Court of California
Aug. 19, 1999

...Trial Date: None Motion Cutoff: None Discovery Cutoff: None IT IS HEREBY ORDERED that a Case Management Order ("Order") in the matter of ITT Industries, Inc. v. Pacific Employers Insurance Company, et ...

See More Trial Court Documents

(quotations and citation omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Aside from cases based on diversity jurisdiction,[4] district courts have original jurisdiction in matters involving questions of federal law. 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)). Generally, a federal court has jurisdiction under 28 U.S.C. § 1331 even where some constructions of the statute or law at issue would find the plaintiff does not state a claim for relief. *Bell v. Hood*, 327 U.S. 678, 685 (1946) ("[T]he right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. For this reason the district court has jurisdiction."). Only where an alleged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" should a complaint be found jurisdictionally deficient. *Id.* at 682–83.

### Analysis

**\*4** As discussed above, the factual scenario underlying plaintiff's complaint pending before this court is unclear in its details. Nonetheless, it appears from the submitted papers and statements made at oral argument that plaintiff's lawsuit is based on the Kern County Superior Court's exercise of its jurisdiction in another action relating to a home rental/contract dispute. It also appears that plaintiff was not a party to the rental agreement that was the subject of that dispute. The only bases for federal question jurisdiction invoked by plaintiff is the APA and the many federal criminal statutes he has cited in his complaint.[5]

The APA allows persons "adversely affected or aggrieved" by the action of an agency to file suit on that basis. 5 U.S.C. § 702. However, "[b]y its own terms, the APA does not apply to state agencies." *Southwest Williamson Cty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999). *See also Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004) ("The APA does not grant federal courts jurisdiction to review actions of state or municipal agencies."); *Gilliam v. Miller*, 973 F.2d 760, 764 (9th Cir. 1992) (declining review under the APA because the defendant was acting in a state, not a federal, capacity). Further, the APA does not generally permit review of the decisions of other courts. *See* 5 U.S.C. § 701(b)(1)(B) (excluding "the courts of the United States" from the definition of the term "agency" in the APA). Therefore, the APA simply does not allow for federal judicial review of the determination of a state court within a matter before it. It therefore cannot form the basis for subject matter jurisdiction over the instant dispute.

Since the APA provides no basis for federal subject matter jurisdiction here, the court turns to the federal criminal statutes, including 18 U.S.C. §§ 242, 371, 871 *et seq.*, 1341 *et seq.*, 1512, 2071, and 2076, invoked by plaintiff in his complaint. None of these criminal statutes contains an express provision creating a private civil cause of action. Therefore, the court must evaluate whether the creation of a civil cause of action can be implied in them.

The Supreme Court has set out the questions implicated in determining whether a private remedy is implicit in a criminal statute not expressly providing for one:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78 (1975) (citations omitted). "Clearly, provision of a criminal penalty does not necessarily preclude implication of a private cause of action for damages." *Id.* at 79. However, in cases where a criminal statute has been the basis for civil liability, there has been some "statutory basis" for inferring one, rather than "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." *Id.* at 79–80. The Supreme Court has suggested a cause of action *could* be inferred from a criminal statute for which there is no explicit textual support or any evidence in the legislative history. *See id.* at 80; *see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444

U.S. 11, 15–16 (1979) (commenting that even absent an explicit provision or any evidence in the legislative history of a private cause of action, a cause of action can be inferred from "the language or structure of the statute, or in the circumstances of its enactment"). *But see Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative.").

**\*5** Here, plaintiff makes no showing as to why the court should find an implied right to bring a civil action on the basis of these criminal statutes. The majority of published decisions found by the court have declined to find a private civil cause of action created by a bare criminal statute. *See, e.g., Wisdom v. First Midwest Bank*, 167 F.3d 402, 408–09 (8th Cir. 1999) (no private cause of action under 18 U.S.C. §§ 1341, 1343, and 1951); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1178–79 (6th Cir. 1979) (no private cause of action under 18 U.S.C. § 1341); *Rockefeller v. U.S. Ct. of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (no private cause of action under 18 U.S.C. §§ 242 and 371); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1285 (D. Kan. 2003) (no private cause of action under 18 U.S.C. § 208); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (no private cause of action under 18 U.S.C. §§ 1341, 1951, 1952, 1956, and 1957); *Winslow v. Romer*, 759 F. Supp. 670, 674 (D. Colo. 1991) (no private cause of action under 18 U.S.C. §§ 2071 and 3109); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 669 F. Supp. 1244, 1254 (S.D.N.Y. 1987) (no private cause of action under 18 U.S.C. § 1371); *Creech v. Fed. Land Bank of Wichita*, 647 F. Supp. 1097, 1099–100 (D. Colo. 1986) (no private cause of action under 18 U.S.C. §§ 1341 and 1951).

Plaintiff has shown no reason to imply a private cause of action under any of the criminal statutes cited in his complaint.

### Leave to Amend
The undersigned has carefully considered whether plaintiff may amend his complaint to state a claim that would provide this court with subject matter jurisdiction. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988). *See also Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

Here, in light of the nature of plaintiff's allegations and the apparently clear lack of subject matter jurisdiction over plaintiff's claims, the court believes that any amendment would likely be futile. Nonetheless, out of an abundance of caution and in light of plaintiff's pro se status, leave to file an amended complaint will be granted. *See Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984) (the complaint of a pro se plaintiff may be dismissed "only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)); *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203 –04 (9th Cir. 1988))).

Plaintiff is cautioned, however, that any amended complaint he elects to file must address and cure the deficiencies noted above. Moreover, if plaintiff elects to file an amended complaint in this action "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 679. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" *Id.* at 680 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**\*6** The minimum requirements for a civil complaint in federal court are as follows:

> A pleading which sets forth a claim for relief...shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a).

Plaintiff is also reminded that the court cannot refer to a prior pleading in order to make an amended complaint complete. Local Rule 220 requires that any amended complaint be complete in itself without reference to prior pleadings. The second amended complaint will supersede the amended complaint just as the amended complaint superseded the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). Thus, in an amended complaint, just as if it were the initial complaint filed in the case, each defendant must be listed in the caption and identified in the body of the complaint, and each claim and the involvement of each defendant must be sufficiently alleged. Any amended complaint which plaintiff may elect to file must also include concise but complete factual allegations describing the conduct and events which underlie his claims.

Finally, because plaintiff's original complaint and attachments thereto were 346 pages in length, the court will impose a thirty-five page limit, including exhibits and attachments, on any amended complaint plaintiff may elect to file.

### Conclusion

Plaintiff's claims under the APA and the cited federal criminal statutes are "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). It is clear that the court does not have subject matter jurisdiction over plaintiff's claims as presented in his original complaint.

Accordingly:

1. Defendant Van Sciver's motion to dismiss (Doc. No. 2) is granted and the complaint is dismissed as to all defendants without prejudice and with leave to amend;

2. If plaintiff elects to pursue this action he shall file an amended complaint within twenty one days of the date of this order; and

3. Plaintiff's failure to file an amended complaint within the time provided will result in the dismissal of this action.

IT IS SO ORDERED.

Dated: **September 1, 2016**.

**All Citations**

Slip Copy, 2016 WL 4594981

| Footnotes | |
| --- | --- |
| 1 | The complaint and attachments thereto number three hundred and forty-six pages. |
| 2 | Defendants McNally, Brumfield, and Gschwend have not yet appeared in this matter, as summonses were not issued until August 15, 2016. (Doc. No. 6.) Nevertheless, because this court does not have subject matter jurisdiction, *sua sponte* dismissal is proper as to these defendants as well, notwithstanding the fact that they have not yet appeared. *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008) ("[W]e have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants."). |
| 3 | Plaintiff is proceeding *pro se* and is the sole plaintiff named in the complaint. None of these other individuals is named as a plaintiff in the complaint and, as a pro se litigant, plaintiff may not represent them. *See Darden v. Indymac Bancorp, Inc.*, Case No. CIV S-09-2970 JAM DAD PS, 2009 WL 5206637, *2 (E.D. Cal. Dec. 23, 2009) ("Litigants are not permitted to be represented by non-lawyers." (citing *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997), *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987), *United States v. Kelley*, 539 F.2d 1199 (9th Cir. 1976), and *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)). |

4

By statute, district courts may hear cases sounding in state law when there is diversity of citizenship among the parties and more than $75,000 is at issue. 28 U.S.C. § 1332. This requires complete diversity between all plaintiffs and all defendants. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Here, it is apparent that the parties are not diverse: plaintiff is presumably a California resident, since he lists a Bakersfield address, and at least one of the defendants—such as the Kern County Superior Court Judge and/or the court clerk—are presumably California residents as well. Therefore, diversity jurisdiction is not present in this case.

5    To the extent plaintiff is attempting to seek review of the state court's orders by this federal court, subject matter jurisdiction is lacking in this court over such a claim. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n. 3 (9th Cir. 1986) (*Feldman* applies to state court judgments even though state court appeals not final).

**End of Document**      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

ATTACHMENT OF UNREPORTED DECISIONS (DEFENDANT'S MOTION TO DISMISS)

WESTLAW

2009 WL 362462

Only the Westlaw citation is currently available.

United States District Court,

Savarirayan v. White County Community Hosp. M.D. Tennessee,
United States District Court, M.D. Tennessee, Nashville Division Nashville Division.    Not Reported in F.Supp.2d    2009 WL 362462    (Approx. 17 pages)

Francis J. **SAVARIRAYAN**, Plaintiff,

v.

WHITE COUNTY COMMUNITY HOSPITAL, et al., Defendants.

No. 2:07–0055.
Feb. 10, 2009.

**West KeySummary**

### MEMORANDUM

ALETA A. TRAUGER, District Judge.

**\*1** Several matters are pending before the court in this litigation in which the plaintiff is proceeding *pro se*. First, there is Magistrate Judge Griffin's Report & Recommendation ("R & R") (Docket No. 101) and the eight motions that it addressed, that is, defendant John Wayne Allen's two Motions to Dismiss (Docket Nos. 28 and 47), defendants White County Community Hospital ("the Hospital"), Community Health Systems, Inc., ("CHS") and Gary Newsome's Motion for Summary Judgment and two Motions to Dismiss (Docket Nos. 30, 53, and 55, respectively), defendant Chad Griffin's Motion for Summary Judgment and Motion to Dismiss (Docket Nos. 42 and 46, respectively), and defendants Daniel Barnett and Blue Cross/Blue Shield of Tennessee's (Blue Cross's) Motion for Summary Judgment (Docket No. 59).

Second, there are several motions that have been filed by the plaintiff, Dr. **Savarirayan**, following the issuance of the R & R.[1] (Docket Nos. 104, 109, 112, 121, 125, and 145.) Docket Nos. 104, 109, and 121, while being captioned as "Motion[s] to Dismiss the Motion for Summary Judgment" of a particular defendant, should properly be considered continued or supplemental responses to the particular defendant(s) motion for summary judgment. Consistent with the approach of the Magistrate, the court will "grant" these "motions" for the limited and sole purpose of considering the material therein. Similarly, Docket Nos. 112 and 125, while titled as an "Omnibus Motion" or an "appeal" are, in fact, simply the plaintiff's objections to the R & R and, therefore, the court will "grant" these "motions," again, only for the limited and sole purpose of considering the argument therein. Docket No. 145, on the other hand, is the plaintiff's motion for leave to amend the Complaint, a motion that the court will consider, and deny, for the reasons expressed below. Finally, the Hospital has filed a Motion to Strike, for privacy reasons, a document from this court's ECF system and the case file. (Docket No. 146.) The court will grant that motion, for the reasons expressed below.

### FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case was thoroughly addressed by Magistrate Judge Griffin in the R & R, and, therefore, it is not necessary to fully recount that history. (See Docket No. 101 at 2–7.) For the purposes of understanding the basis for this opinion, however, it is worthwhile to briefly discuss some of the undisputed key points, which are drawn from the R & R. First, this case involves a physician, Dr. Francis J. **Savarirayan**, who, in October 2002, entered into a Recruitment Agreement with the Hospital. In January 2004, after a period of discord between the parties, the Hospital and Dr. **Savarirayan** parted ways, with Dr. **Savarirayan** signing a "Settlement Agreement and Release of Claims" (the "Release"), which provided that Dr. **Savarirayan** broadly relinquished any claims against the Hospital (and its related entities and employees) arising out of the Recruitment Agreement.

**SELECTED TOPICS**

United States Magistrates

Review and Supervision by District Court
District Court De Novo Review of
Magistrate Factual Findings

Secondary Sources

**s 146.    Review by district court**

32 Am. Jur. 2d Federal Courts § 146

...Where a dispositive pretrial matter has
been referred to a magistrate judge for
recommendations, the district judge to whom
the case is assigned will make a de novo
determination upon the record, or af...

**s 3070.2.    Practice and Procedure
with Regard to Dispositive Motions-De
Novo Review by District Judge**

12 Fed. Prac. & Proc. Civ. § 3070.2 (2d ed.)

...Rule 72(b)(3) provides that, once a timely
objection has been made to a magistrate's
recommendation: The district judge must
determine de novo any part of the magistrate
judge's disposition that has be...

**Rule 56.    SUMMARY JUDGMENT**

4 Tenn. Rules of Civil Procedure Ann.
Rule 56 (4th ed.)

...Admissions, Tenn. R. Civ. P. 36 Directed
verdict, judgment on, Tenn. R. Civ. P. 50
Dismissal for failure to state a claim upon
which relief can be granted, Tenn. R. Civ. P.
12.02(6) Findings of fact an...

See More Secondary Sources

**Briefs**

Petition for a Writ of Certiorari

2008 WL 2794273
Roslyn HOLMAN, Petitioner (Pro se), v.
CLEMSON UNIVERSITY, Respondent.
Supreme Court of the United States
July 15, 2008

...The parties to this proceeding are
Petitioner, Roslyn Holman and Respondent,
Clemson University. Roslyn Holman,
Petitioner respectfully petitions for Writ of
Certiorari to review the Opinion and Order ...

Petition for a Writ of Certiorari

2010 WL 1861009
Todd C. BANK, Petitioner, v. COOPER,
PAROFF, COOPER & COOK, Ira G. Cooper,
Philip S. Paroff, Adam P. Cooper, and
Sharon E. Cook, Respondents.
Supreme Court of the United States
May 05, 2010

...All parties to the proceeding in the court
whose judgment is sought to be reviewed are
contained in the caption of this case, and
there are no additional parties. The Summary
Order of the United States...

Reply Brief of Plaintiff-Appellant, Mary
MA

2017 WL 780914
Mary MA, Plaintiff-Appellant, v. AMERICAN
ELECTRIC POWER, INC., Defendant-
Appellee.
United States Court of Appeals, Sixth Circuit.
Feb. 24, 2017

...Before the lower court, Plaintiff argued that
the district court should review the magistrate
judge's decision--which awarded Defendant

In exchange for this Release, the Hospital released its rights to pursue repayment of $260,789.44 in salary that it had previously paid to Dr. **Savarirayan**.

**\*2** Despite signing the Release, Dr. **Savarirayan** pursued litigation against the Hospital and other entities. After initial discussions with attorney Tom Nebel, Dr. **Savarirayan** retained defendant attorney John Wayne Allen, who filed a lawsuit in the Tennessee Circuit Court for White County on January 26, 2007, asserting various claims on behalf of Dr. **Savarirayan** against various defendants. On March 14, 2007, a notice of voluntary dismissal with prejudice was filed by Allen, and an order of non-suit was entered by the Tennessee state court on April 9, 2007, dismissing all claims against all defendants with prejudice. The plaintiff, apparently disturbed by Allen's actions, fired Allen and pursued his state court litigation *pro se* . By order entered on November 19, 2007, the Tennessee state court set aside the prior order of dismissal. The state court subsequently conducted a hearing on the merits and dismissed all of the plaintiff's claims against all defendants with prejudice, concluding proceedings on January 17, 2008.

While the state court litigation was in flux, on August 24, 2007, the plaintiff, proceeding *pro se*, filed this action, which, while based largely on the same set of facts as the state court action, added additional defendants and additional claims, that is, a Clayton Act (antitrust) claim against defendants Cain, Griffin, Barnett and Blue Cross, and a RICO claim against all defendants. (Docket No. 1.) In an Amended Complaint filed on September 6, 2007, the plaintiff added additional factual allegations against defendant Pincus and added a request for declaratory and injunctive relief directed at defendant Pincus, who was, as discussed below, subsequently dismissed without prejudice from this litigation.[2] (Docket No. 6.)

On December 21, 2007, the plaintiff filed a notice to dismiss this case, without prejudice. By order dated January 7, 2008, Magistrate Judge Griffin dismissed defendants Cain, Nebel, Pincus, Pekalo, PDBB, NPDB, and the three "John Doe" defendants. Pursuant to Federal Rule of Civil Procedure 41, however, the plaintiff could not dismiss, without prejudice, the remaining defendants, that is, the Hospital, CHS, Newsome, Griffin, Barnett, Blue Cross, and Allen, because these defendants had either filed an answer or moved for summary judgment at the time the request for dismissal was filed.

After summary judgment and motion to dismiss briefing, Magistrate Judge Griffin issued her Report & Recommendation on September 12, 2008. (Docket No. 101.) Judge Griffin concluded (1) that the claims against the Hospital, CHS, and Newsome were barred by the doctrine of *res judicata* and the Release; (2) that the claims against Blue Cross, Barnett, and Griffin were barred by *res judicata* and, therefore, it was not necessary to consider these defendants' other stated grounds for relief; and (3) that the claims against defendant Allen should be dismissed for failure to state a claim upon which relief could be granted. Therefore, the R & R made a recommendation as to how all of the pending motions should be resolved and recommended that the case be dismissed as to all remaining defendants. (*Id.* at 17.)[3]

**\*3** On September 26, 2008 and again on September 29, 2008, the plaintiff filed what can fairly be considered to be objections to the R & R. (Docket Nos. 112 and 125.) The plaintiff did not make specific objections to specific provisions of the R & R. Rather, he argued that the R & R should be vacated because it is supposedly unfounded in "the truth or the facts," because the plaintiff did not have adequate time for discovery, and because Judge Griffin issued the R & R on the same day that the plaintiff filed a series of materials responsive to various defendants' motions. (*Id.*)

In light of these objections, the plaintiff asked (1) for "a de novo review of the entire case"; (2) that the stay of discovery be lifted; (3) that Judge Griffin recuse herself and vacate her orders if she has any of several listed biases or interests; (4) that the defendants' dispositive motions be dismissed and all defendants be re-instated for trial; (5) that the plaintiff be provided with notice and an opportunity to cure from this court if there are any "magic words" that he failed to use in his filings that might make a difference in the outcome of the litigation; and, finally, (6) that his objection serve as notice of appeal to the Sixth Circuit if this court rejected his arguments therein. (*Id.*)

On January 20, 2009, the plaintiff filed his motion for leave to amend his Complaint, asking that the court allow him to amend his Complaint such that his claims would, allegedly, no longer be barred by *res judicata* principles. (Docket No. 145.) That day, for reasons that are somewhat unclear, the plaintiff filed an affidavit re-stating his medical qualifications and certain other points. (Docket No. 146.) The plaintiff also attached about forty pages of additional documents, tangentially related to the allegations in this case. (*Id.*) The next day,

$103,410.29 in costs-- de novo. (Objection, R. 255, Page ID ## 56...

See More Briefs

**Trial Court Documents**

**DeMoss v. Dillard's, Inc.**

2009 WL 7014934
Robert H. DeMOSS, Jr., by the conservator of his person and property, Catherine Robette Campbell, Plaintiffs, v. DILLARD'S, INC., Dillard Tennessee Operating Limited Partnership, Construction Developers, Incorporated, John Mitchell, William Horn, Davis Street Land Company of Tennessee, LLC., Robert William Tice, JR., Brittney Banister, Johnathon Harris, and Catherine Dale Mills, Defendants.
Circuit Court of Tennessee.
Dec. 29, 2009

...This is an action which was originally filed in the Circuit Court for Davidson County, Tennessee and removed by Defendants to this Court based upon diversity of citizenship. Subsequently, Plaintiffs fi...

**U.S. of America v. Lentsch**

2011 WL 8998857
UNITED STATES OF AMERICA, v. Elizabeth LENTSCH.
United States District Court, E.D. Tennessee.
Sep. 21, 2011

...THE DEFENDANT: pleaded guilty to count (s) _ pleaded nolo contendere to count(s) _ which was accepted by the court. X was found guilty on count(s) Sole count of Information after a plea of not guilty....

**U.S. of America v. Duvall**

2011 WL 8998860
UNITED STATES OF AMERICA, v. Dennis DUVALL.
United States District Court, E.D. Tennessee.
Sep. 22, 2011

...THE DEFENDANT: pleaded guilty to count (s) _ pleaded nolo contendere to count(s) _ which was accepted by the court. X was found guilty on count(s) Sole count of Information after a plea of not guilty....

See More Trial Court Documents

the Hospital filed a motion to strike one of those pages because, it claims, confidential patient information is improperly disclosed on that page. (Docket No. 147.)

### I. Standard of Review

Under Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the court is required to make a *de novo* determination of any part of the Magistrate Judge's R & R to which specific objection has been made. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. Fed.R.Civ.P. 72(b)(3).

### II. Analysis

As noted above, pending before the court are Magistrate Judge Griffin's R & R, the motions that were addressed therein, and two additional motions, that is, the plaintiff's motion for leave to amend his Complaint, and the Hospital's Motion to Strike. When a motion for leave to amend is filed while the R & R is pending, it is proper for the district court to address the R & R first. [4] *City of Columbus v. Hotels.com, L.P.*, 2007 WL 2029036, *2 (S.D.Ohio July 10, 2007).

### II. Magistrate Judge Griffin's R & R

*4 As discussed above, Magistrate Judge Griffin recommended that the plaintiff's case be dismissed, with prejudice, against all remaining defendants, that is, the Hospital, CHS, Newsome, Griffin, Barnett, Blue Cross, and Allen. (Docket No. 101 at 14–17.) With the exception of defendant Allen, the primary basis for Judge Griffin's recommendation is that the plaintiff's claims against these defendants are barred by *res judicata* principles. [5] (*Id.* at 9 –14.) Judge Griffin also noted that, even if *res judicata* did not bar the plaintiff's claims, the Hospital, CHS, and Newsome should still be entitled to summary judgment on the plaintiff's claims against them because of the Release that the plaintiff signed in January 2004. (*Id.* 12 –13.) As to defendant Allen, Judge Griffin recommended that his first Motion to Dismiss be granted, because the plaintiff failed to plead any facts by which one could construe that the alleged legal malpractice caused the plaintiff an injury. (*Id.* at 16.)

As noted above, in his "Omnibus Motions," which this court interprets as the plaintiff's objections to the R & R, the plaintiff did not make any specific objections to Judge Griffin's specific findings, instead arguing that the R & R should be vacated because it is supposedly unfounded in "the truth or the facts," because the plaintiff did not have adequate time for discovery, and because Judge Griffin issued the R & R on the same day that the plaintiff filed a series of materials responsive to various motions. (Docket Nos. 112 and 125.) As to the latter two arguments, they are plainly without merit. The plaintiff has failed to show how additional time for discovery would change the result in this case, which rests entirely on legal principles that will not change no matter the time for discovery allotted. Further, this court has reviewed the materials that the plaintiff filed on the day Judge Griffin issued her R & R, and this court makes the final order. The court will consider, however, whether Judge Griffin's R & R is supported by "the truth or the facts," that is, based on the plaintiff's objection, the court will consider the legal foundation for the recommendations in the R & R. [6]

This court concludes, with one exception that does not affect the outcome of the litigation as to the remaining defendants, that Judge Griffin's recommendation as to how the motions pending before her should be resolved was well founded.

As noted above, Judge Griffin concluded that the claims against the Hospital, CHS, Newsome, Griffin, Blue Cross and Barnett should be dismissed based on *res judicata* principles. In the R & R, Judge Griffin correctly noted that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered, here Tennessee. (Docket No. 101 at 10, citing, among other case law, *Hutcherson v. Lauderdale County*, 326 F.3d 747, 758 (6th Cir.2003)). Judge Griffin also correctly found that, under Tennessee law, the doctrine of *res judicata* bars "all claims that were actually litigated or *could* have been litigated in the first suit between the same parties." (*Id.* citing *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn.1979)) (emphasis added). Noting that the "instant action is a virtual carbon copy of the action which was dismissed with prejudice on the merits by the state court," Judge Griffin concluded, for every defendant but defendant Allen, that all of the claims in the federal action could have been brought in state court and, therefore, were barred by *res judicata* principles. (Docket No. 101 at 10.)

*5 By way of review, in his state court Amended Complaint (Docket No. 42 Ex. B), the plaintiff alleged claims for (1) breach of contract, (2) violation of 42 U.S.C. § 1981, (3)

tortious interference with a business relationship, (4) violation of the Tennessee Consumer Protection Act, and (5) legal malpractice and fraud. In his federal Amended Complaint, the plaintiff re-alleged these five claims, and added Clayton Act (antitrust) and RICO claims. (Docket No. 6.)

Obviously, the state law causes of action and the section 1981 claim could have been brought in the state court, and, indeed, they were brought in state court. Therefore, Judge Griffin correctly concluded that those claims are barred here by *res judicata* principles. That said, the R & R does not review, claim by claim, whether the federal claims that the plaintiff added in his federal complaint (RICO and the Clayton Act) could have been brought in the state court action. This court's review of the law indicates that it is well settled that claims under RICO may be properly brought in either state or federal court. *Tafflin v. Levitt*, 493 U.S. 455, 466, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). Therefore, the R & R correctly recommended that the RICO claim be dismissed based on *res judicata* principles.

The Clayton Act claim, however, is a different story; jurisdiction for Clayton Act claims is exclusively federal. *See e .g. Tafflin*, 493 U.S. at 463 (contrasting Clayton Act and RICO); *In re Copper Antitrust Litig.*, 436 F.3d 782, 796 (7th Cir.2006) (noting the Clayton Act's "exclusive federal jurisdiction"); *Roma Const. Co. v. aRusso*, 96 F.3d 566, 582 (1st Cir.1996) (Lynch, J. concurring) (noting "the fact that actions under the Clayton Act may only be brought in federal court.") The fact that Clayton Act claims may only be brought in federal court means that the R & R is incorrect when it recommends that the plaintiff's Clayton Act claims be dismissed because they could have been brought in state court. Therefore, the court must consider the merits of the plaintiff's Clayton Act/antitrust claim, in light of the relevant defendants' motions for summary judgment.[7]

In his Clayton Act/antitrust claim, the plaintiff alleges that former defendant Cain, and current defendants Griffin, Barnett and Blue Cross "acted in a concerted coordinated manner to limit and destroy [the plaintiff's] practice, so that he will not be able to compete against the white ethnic American Medical School graduates practicing in that area." (Docket No. 35 Ex. 1 at 21.) The plaintiff argues that the defendants achieved this result through a two-step process: (1) Cain, as the plaintiff's superior, took a number of administrative measures to undermine the plaintiff's practice and (2) Barnett and Blue Cross denied the plaintiff's request to participate in the Blue Cross/Blue Shield network, but allowed a less qualified "white ethnic American" to participate in the network. (*Id.* at 21–22.) The plaintiff alleges that Blue Cross believes it is "untouchable" because of the large financial contributions it, allegedly, makes to influential political officials. (*Id.* at 22.)

**\*6** The remaining defendants subject to the plaintiff's Clayton Act/antitrust claim, that is, defendants Griffin, Barnett and Blue Cross, all moved for summary judgment on this claim for reasons aside from *res judicata*. In Barnett and Blue Cross's Brief in Support of their Motion of Summary Judgment, they argue that their only involvement with the plaintiff was to review the plaintiff's 2003 request for "Network Credentialing," which they denied after determining that the plaintiff had not been honest in providing information in support of his request. (Docket No. 60 at 8.) In light of this, these defendants argue that the plaintiff has "failed to plead even the most basic facts supporting" his Clayton Act/antitrust claim. (*Id.* at 9.) In support of his motion for summary judgment, defendant Griffin likewise argues that there are no facts to support the plaintiff's claims, including his Clayton Act/antitrust claim. (Docket No. 44 at 7.)

These defendants are entitled to summary judgment on the plaintiff's Clayton Act/antitrust claims. In order to maintain an antitrust claim, the plaintiff must allege an "antitrust injury," that is an injury of the sort that the antitrust laws were designed to prevent; in other words, the plaintiff must allege an injury to competition, not just allege anti-competitive behavior or behavior that is otherwise tortious or violates federal law. *Expert Masonry v. Boone County*, 440 F.3d 336, 347–48 (6th Cir.2006).

Plainly, there are several fatal problems with the plaintiff's Clayton Act/antitrust claim. First, as to defendant Griffin, there is no actual allegation of antitrust wrongdoing, which makes Griffin entitled to summary judgment on this claim. As to Barnett and Blue Cross, the plaintiff alleges behavior that, perhaps, if shown to be true, might be considered discriminatory, but the behavior alleged certainly does not implicate federal antitrust law and the required "antitrust injury." *Id.* Indeed, an "antitrust injury" arises in a narrowly defined circumstance, in which the plaintiff alleges that, in addition to being potentially tortious or otherwise unlawful, the conduct was injurious to competition generally. *Id.* It is hard to conceive of a circumstance in which one doctor being denied network privileges or being removed from practice at a hospital could be injurious to competition generally, and the plaintiff has

certainly failed to allege such a circumstance here. Therefore, the defendants are entitled to summary judgment on the plaintiff's Clayton Act/antitrust claim.

As a final point on the R & R, Judge Griffin recommended that defendant Allen's first Motion to Dismiss be granted, because the plaintiff failed to allege, as required, that any mistakes by Allen as an attorney were the cause of the plaintiff's damages. (Docket No. 101 at 15 citing *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn.2001)). As Judge Griffin pointed out, because the state court judge set aside the order of dismissal and allowed the state court case to proceed after the plaintiff had discharged Allen, "any damages suffered by the plaintiff which were attributable to how the case had been previously handled by Defendant Allen were cured and the plaintiff remained in the same position in that lawsuit as he had been prior to the entry of dismissal." (*Id.* at 16.) On the basis of this sound reasoning, the court concludes that the R & R makes the appropriate recommendation as to the disposition of defendant Allen's Motion to Dismiss.

*7 Therefore, the court will adopt the R & R's recommendation as to how the motions that were before Magistrate Judge Griffin should be resolved. The court provides the more extended discussion above only to clarify an important point of law related to the Clayton Act .[8]

### III. Motion For Leave To Amend

The plaintiff filed a motion for leave to amend his Complaint on January 20, 2009. (Docket No. 145.) In his motion, the plaintiff claims that recently "in Illinois, for the first time [the plaintiff] was able to get legal opinion with reference to Matters of Law. It is the firm opinion of his attorney for matters of law, that a second amended complaint should be filed, to prevent the defendants from escaping the consequences of their actions, on legal technicalities." (Docket No. 145 at 1.) While the proposed amended Complaint contains the same factual allegations as the operative Complaint (including those against Allen and Newsome), the plaintiff is very clear that this proposed amended Complaint is only directed at the parties who were not dismissed, without prejudice, from this litigation. (*Id.*)

As to the remaining defendants, the factual allegations in the proposed Complaint and the operative Complaint appear identical. The only distinction between the two Complaints is that some of the claims are different. As with the previous Complaint, based on the same allegations, the plaintiff asserts antitrust and RICO claims. The plaintiff adds a claim for fraud (primarily against CHS, the Hospital and Newsome), defamation, violation of "Title VII/federal Civil Rights" law, and conspiracy to violate his rights under the Seventh, Thirteenth, and Fourteenth Amendments to the U.S. Constitution. (Docket No. 145 Ex. 1.) The plaintiff also recasts his legal malpractice claim, alleging that defendant Allen took money from Blue Cross and the Hospital to "throw the case." (*Id.*) On various grounds, the remaining defendants have all filed briefing objecting to the plaintiff's motion for leave to amend.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be freely given "when justice so requires." Fed.R.Civ.P. 15(a). The district court is to consider several factors when determining whether to grant a motion for leave to amend, such as "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir.2001). Delay in filing, by itself, is not a sufficient reason to deny a motion for leave to amend. *Id.*

Here, delay, prejudice, and futility all dictate that the court should deny the plaintiff's motion for leave to amend. As to delay and prejudice, the *Wade* case is squarely on point. There, the plaintiff, without excuse, "waited a year and a half" before filing his motion for leave to amend. *Id.* Here, the plaintiff also waited about a year and one-half, without any reasonable excuse for doing so.[9] In *Wade,* the Sixth Circuit noted that, "when amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* Here, the plaintiff utterly fails to meet that burden.

*8 Recognizing that delay, by itself, is an insufficient basis for denying a motion for leave to amend, the *Wade* court, in circumstances very similar to this case, determined that prejudice to the defendants, combined with the delay, also indicated that the court should deny the motion for leave to amend. In *Wade,* motions for summary judgment on all of the claims in the initial complaint had already been filed at the time the motion for leave to amend was filed, as is the case here. *Id.* Given the delay and the status of the case, the *Wade* court concluded that it would be unduly prejudicial to the defendants to ask them to now prepare

defenses to a whole new set of claims. *Id.* at 459. The same burden is imposed here; the defendants have now been defending this litigation in two forums for several years, and it would be unduly prejudicial, at this late stage, to ask the defendants to commit more time and resources to defending this case, particularly in light of the plaintiff's delay in filing his motion for leave to amend and his limited justification for that delay.

Further, it would be futile for the court to grant this motion for leave to amend. Plainly, for the reasons discussed above in the R & R section, the antitrust and RICO claims would not be viable. While it is not clear who is the target of the plaintiff's "Title VII/Civil Rights Act" claims, even assuming that these claims are broadly directed at all remaining defendants, these claims could have been brought in the state court litigation and are, therefore, barred under *res judicata* principles. *See Yellow Fright Sys., Inc. v. Donnelly,* 494 U.S. 820, 821, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Additionally, the plaintiff's fraud claim (directed at CHS, Newsome and the Hospital and their conduct in inducing the plaintiff to sign the Recruitment Agreement) is barred by *res judicata* principles and the Release that the plaintiff signed when he left the Hospital, which released the Hospital, its parent (i.e.CHS) and their employees (i.e.Newsome) from liability for any and all claims "in any way relating to or arising out of the Recruitment Agreement." (Docket No. 9 Ex. H.) As the R & R noted, "the terms of the Settlement Agreement are clear and unambiguous and bar [the plaintiff] from pursuing" such claims against the Hospital, CHS, and Newsome. (Docket No. 101 at 13 citing *Evans v. Tillet Bros. Const. Co., Inc.,* 545 S.W.2d 8, 11 (Tenn.Ct.App.1976)).[10]

Likewise, the plaintiff's defamation claim would not be successful. In one of his more tempered allegations, the plaintiff contends that Blue Cross' refusal to grant him Network privileges and the Hospital's refusal to employ him "caused a cloud to hang over Plaintiff's qualifications as a Physician," resulting in a loss of business. (Docket No. 145 Ex. 1.) This claim, despite its increased focus and clarity, would still fail. Not only would this claim be barred by *res judicata* principles, but, setting aside that and the requirements to state a *prima facie* case of defamation, as Blue Cross points out, the defamation claim would be time-barred, as it concerns events that occurred in 2003 and 2004, and the statute of limitations is six months for slander and one year for libel. (Docket No. 150 at 4 citing T.C.A. § 28–3–103; T.C.A. § 28–3–104.)

\*9 The plaintiff's conspiracy claim is similarly futile. The plaintiff does not explain the basis of his allegation of conspiracy to violate the Seventh, Thirteenth, and Fourteenth Amendments. As to the Seventh Amendment, which concerns the right to a civil trial by jury, the plaintiff does frequently mention his frustration with the fact that this case has not been heard by a jury, but the facts of this case fail to show any sort of conspiracy by these defendants to violate that right. As to the Thirteenth and Fourteenth Amendment violations, it is possible that the plaintiff is attempting to state a claim under Section 1983, but the plaintiff would have to show a constitutional violation by a person acting under color of state law, something which does not appear implicated by the facts of this case. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Finally, while the plaintiff has re-cast his legal malpractice claim, he has failed to address the fundamental issue raised in the R & R, which is that the plaintiff cannot show that any of Allen's legal mistakes caused him any harm. Therefore, it would likewise be futile to bring this claim. In sum, the plaintiff's motion for leave to amend will be denied because of delay, substantial prejudice, and futility.

### CONCLUSION

For the reasons stated herein, the court agrees with the disposition of the motions as described in Judge Griffin's Report and Recommendation. Also, the plaintiff's motion for leave to amend will be denied, and the Hospital's Motion to Strike will be granted. The court considers all pending motions resolved, and all claims raised by the plaintiff in this action will be dismissed, with prejudice, as to Defendants White County Community Hospital, Community Health Systems, Inc., Gary Newsome, Chad Griffin, Daniel Barnett, Blue Cross/Blue Shield of Tennessee, and John Wayne Allen.

An appropriate order will enter.

### ORDER

ALETA A. TRAUGER, District Judge.

For the reasons expressed in the accompanying Memorandum, the Report & Recommendation (Docket No. 101) is **ACCEPTED** and made the findings of fact and conclusions of law of this court. For the reasons expressed therein and herein:

1) Defendant John Wayne Allen's First Motion to Dismiss (Docket No. 28) is **GRANTED** and his Second Motion to Dismiss (Docket No. 47) is **DENIED;**

2) Defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome's Motion for Summary Judgment, and these defendants' two Motions to Dismiss (Docket Nos. 30, 53, and 55) are **GRANTED;**

3) Defendant Chad Griffin's Motion for Summary Judgment (Docket No. 42) is **GRANTED,** and his Motion to Dismiss (Docket No. 46) is **DENIED;**

(4) Defendants Blue Cross/Blue Shield of Tennessee and Daniel Barnett's Motion for Summary Judgment (Docket No. 59) is **GRANTED.**

Further, the court views several of the *pro se* plaintiff's "motions" (Docket Nos. 104, 109, 112, 121, 125) as responses to pending motions or objections to the Report & Recommendation. These motions are **GRANTED** for the sole and limited purpose of the court considering the material therein.

The plaintiff's motion for leave to amend his Complaint (Docket No. 145) is **DENIED.**

The defendant White County Community Hospital's Motion to Strike is **GRANTED** and the court hereby orders page 15 of Docket No. 146 removed from the case file and the ECF.

The court considers all pending motions resolved, and the plaintiff's claims against defendants White County Community Hospital, Community Health Systems, Inc., Gary Newsome, Chad Griffin, Daniel Barrett, Blue Cross/Blue Shield of Tennessee, and John Wayne Allen are **DISMISSED,** with prejudice.

The counterclaims raised by defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome (Docket No. 9) and the counterclaims raised by Blue Cross/Blue Shield of Tennessee and Daniel Barnett (Docket No. 17) are still pending and, therefore, this case is referred back to Magistrate Judge Griffin pursuant to the initial referral order.

It is so ordered.

### REPORT AND RECOMMENDATION

JULIET GRIFFIN, United States Magistrate Judge.

TO: Honorable Aleta A. Trauger, District Judge

Pursuant to Order entered August 24, 2007 (Docket Entry No. 5), this action was referred to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1), and to conduct any necessary proceedings under Rule 72 of the Federal Rules of Civil Procedure.

Presently pending before the Court are several dispositive motions:

1. Motion to Dismiss (Docket Entry No. 28) of Defendant John Wayne Allen;

2. Motion for Summary Judgment (Docket Entry No. 30) of Defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome;

3. Motion for Summary Judgment (Docket Entry No. 42) of Defendant Chad Griffin;

4. Motion to Dismiss of Defendant Chad Griffin (Docket Entry No. 46);

5. Second Motion to Dismiss (Docket Entry No. 47) of Defendant John Wayne Allen;

6. Motions to Dismiss (Docket Entry No. 53 and 55) of Defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome; and

7. Motion for Summary Judgment (Docket Entry No. 59) of Defendants Daniel Barnett and Blue Cross/Blue Shield of Tennessee.

Set out below are the Court's recommendations for disposition of the motions.

### I. FACTUAL BACKGROUND

The plaintiff is a physician practicing in the field of urology. On or about October 11, 2002, he entered into a Recruitment Agreement ("the Agreement") with Sparta Hospital

Corporation d/b/a White County Community Hospital ("the Hospital") to engage in the full-time practice of urology in the community of White County, Tennessee. The Agreement was signed by Gary Newsome ("Mr.Newsome"), the President of the Hospital, and signed by Mark Cain ("Mr.Cain"), the Facility Officer at the Hospital. *See* Exhibit 3 to Amended Complaint (Docket Entry No. 6). The plaintiff's medical practice was to commence on February 15, 2003, and the term of the Agreement was for three years. *Id.* The Agreement provided for an initial twelve month guarantee period during which the plaintiff was to be paid a monthly amount of $35,417.00 for a total of $425,004.00. *Id.*

The Agreement never reached its full term as difficulties between the plaintiff and the Hospital arose during the first year of the Agreement.

The plaintiff contends that he was not given proper support from the Hospital in terms of advertising his practice or providing necessary medical equipment to him and that, after September 2003, the Hospital delayed issuing the monthly guaranteed income checks to him. The plaintiff further alleges that local physicians failed to refer urology patients to him and instead referred these patients to other physicians. He alleges that Dr. Chad Griffin ("Dr.Griffin"), a local physician affiliated with the Hospital would not refer to the plaintiff any patients who had insurance coverage and discharged one of the plaintiff's patients who was awaiting surgery so that another physician could perform the procedure. *See* Amended Complaint, at ¶¶ 22–26 and 39. The plaintiff contends that these acts were part of a concerted effort to destroy his medical practice. *Id.* at ¶ 40. During this same time period, the plaintiff asserts that he was prevented from receiving payments for services performed on patients insured with BlueCross/BlueShield of Tennessee, Inc. ("Blue Cross") or its affiliates because Blue Cross denied his application to become part of the Blue Cross credentialed network. *Id.* at ¶ 33.

On the other hand, the Hospital believed that the plaintiff was not fulfilling obligations and duties required of him under the Agreement. As set out in a letter to the plaintiff from Mr. Cain, dated October 8, 2003, the Hospital contended that the plaintiff had not obtained an acceptable billing and collections system, had not entered into third party payor agreements, and had not properly promoted and marketed his practice. *See* Exhibit A (Docket Entry No. 9 –2) to the Answer (Docket Entry No. 9) of the Hospital, Community Health Systems, Inc., and Mr. Newsome. By a second letter dated, November 18, 2003, the plaintiff was informed that until the issues noted in the prior letter were remedied, the Hospital would discontinue making the guaranteed payments and would terminate the Agreement if the matters were not remedied within fifteen days of the date of the letter. *See* Exhibit B (Docket Entry No. 9 –2) to the Answer. On November 21, 2003, a third letter was sent to the plaintiff alerting him that the requirement that he obtain third party payor agreements remained unfulfilled and that his practice would be audited on a regular basis to ensure that he was complying with the requirement that he maintain a minimum of 40 hours of work per week. *See* Exhibit C (Docket Entry No. 9–3) to the Answer.

On January 16, 2004, Mr. Cain met with the plaintiff and delivered to him another letter alerting him that the Hospital was terminating the Agreement because of the previously noted issues and because of other issues revealed by the audit of the plaintiff's practice. *See* Exhibit D (Docket Entry No. 9–4) to the Answer. To resolve the situation, the Hospital offered the plaintiff a Settlement Agreement and Release of Claims ("Settlement Agreement"). *See* Exhibit H (Docket Entry No. 9–8) to the Answer. The terms of the Settlement Agreement called for the plaintiff to relinquish any claims against the Hospital and any of its agents or employees related to or arising out of the Agreement. *Id.* In return, the Hospital agreed to release and forgive the plaintiff from repayment of the sum of $260,789.44 which had already been paid to him under the Agreement. *Id.* The Settlement Agreement was ultimately signed by the plaintiff. [1]

The plaintiff subsequently sought out an attorney in order to bring a lawsuit over the matter. He alleges that, in August 2005, attorney Tom Nebel agreed to represent him but failed to sign an actual attorney/client contract and moved his office. *See* Amended Complaint (Docket Entry No. 6, at ¶ 42), and Exhibit 15 to Amended Complaint. The plaintiff then contacted attorney John Wayne Allen ("Mr.Allen") to represent him, and a lawsuit was filed on January 26, 2007, in the Circuit Court for White County, Tennessee against the Hospital, Community Health Systems, Inc., Mark Cain, Gary Newsome, Chad Griffin, Daniel Barnett, and Blue Cross. *See* Amended Complaint, at ¶¶ 43–44; Exhibit No. 33 to Complaint (Docket Entry No. 1); and Exhibits 16–18 to Amended Complaint. The plaintiff raised a breach of contract claim, a civil rights claim under 42 U.S.C. § 1981, a claim for tortious interference

with a business relationship, and a claim for violation of the Tennessee Consumer Protection Act, Tenn.Code Ann. §§ 47–18–101 et seq. See Exhibit No. 33 to Complaint.

On March 14, 2007, a notice of voluntary dismissal was filed on behalf of the plaintiff in the state action, and an order of non-suit was entered on April 9, 2007, dismissing all claims with prejudice. See Exhibit 17 to Amended Complaint. The plaintiff thereafter terminated the services of Mr. Allen. The state court held a hearing and, by order entered November 19, 2007, set aside the prior order of dismissal. See Exhibit C (Docket Entry No. 44–3) to Defendant Griffin's Memorandum in Support of Dismissal.

After a hearing on November 2, 2007, see Docket Entry No. 42–3, at 5–24, the state court action was dismissed with prejudice as to Defendant Griffin on November 19, 2007.[2] See Exhibit C (Docket Entry No. 42–3) to Defendant Griffin's Motion for Summary Judgment. By Order entered January 17, 2008, the action was dismissed with prejudice as to each of the remaining defendants named in the state court action. See Exhibit No. 2 (Docket Entry No. 59–2) to Defendant Blue Cross and Daniel Barnett's Motion for Summary Judgment. The state court also awarded monetary sanctions against the plaintiff and in favor of the defendants. Id. It is unclear from the record whether the plaintiff sought an appeal in the state court action from the orders of dismissal.

## II. FEDERAL COMPLAINT

On August 24, 2007, and while the state court action was pending, the instant action was filed pro se by the plaintiff. The caption of the complaint lists both the plaintiff and the Commission on Quality Health Care in America ("CQHCA"), which is described as a "Federal entity set up under Title IV of Public Law 99–660–The Health Care Quality Improvement Act of 1986." See Amended Complaint (Docket Entry No. 6), at 1.[3] However, the CQHCA is not specifically named as a plaintiff in the body of the complaint and all references to "plaintiff" in the complaint are clearly intended to mean the plaintiff.

Named as defendants to the instant action are the seven entities named in the prior state court action—the Hospital, Community Health Systems, Inc., Mr. Cain, Mr. Newsome, Dr. Griffin, Mr. Barnett, and Blue Cross—as well as Tom Nebel, John Wayne Allen, the Practitioner Data Banks Branch ("PDBB"), the National Practitioner Data Bank ("NPDB"), Mark Pincus, who is the Chief of the PDBB, Ronda Pekalo, who is the Manager of the NPDB, and three "John Doe" defendants. See Amended Complaint (Docket Entry No. 6), at 1.

The amended complaint sets out the same claims as alleged in the prior state court action and adds: 1) legal malpractice claims against Defendants Nebel and Allen for alleged mishandling of his state court lawsuit; 2) antitrust and Clayton Act claims against Defendants Cain, Griffin, Barnett, and Blue Cross; and 3) a claim under the Racketeer Influenced Corrupt Organizations Act ("RICO") against all defendants. Id. at ¶¶ 64–79. The plaintiff seeks a total of 15 million dollars in damages.

## III. PROCEDURAL BACKGROUND

The Hospital, Community Health Systems, Inc., and Mr. Newsome filed a joint answer and counter-claims against the plaintiff seeking recovery of $260,789.44 on the theory that the plaintiff has breached both the Agreement and the Settlement Agreement and seeking costs, attorneys fees and expenses under 42 U.S.C. § 1988 and Tenn.Code. Ann. § 47–18–109(e)(2). See Docket Entry No. 9. Blue Cross and Mr. Barnett likewise filed a joint answer and a counter-claim against the plaintiff seeking costs, attorneys fees and expenses under 42 U.S.C. § 1988 and Tenn.Code. Ann. § 47–18–109(e)(2). See Docket Entry No. 17. Separate answers were also filed by Defendant Griffin (Docket Entry No. 10) and Defendant Allen (Docket Entry No. 20).

On December 21, 2007, the plaintiff filed a notice of voluntary dismissal of all of his claims without prejudice. See Docket Entry No. 45. In accordance with Rule 41(a)(1)(a)(i) of the Federal Rules of Civil Procedure, the Court dismissed without prejudice the plaintiff's claims against Defendants Mark Cain, Tom Nebel, Mark Pincus, Ronda Pekalo, PDBB, NPDB, and the three "John Doe" defendants because these defendants had not yet filed an answer or a motion for summary judgment in the action. See Order entered January 7, 2008 (Docket Entry No. 48).

In the Order, the Court also instructed the plaintiff to file, by January 31, 2008, either a notice of voluntary dismissal with prejudice of his claims against the remaining defendants—the Hospital, Community Health Systems, Inc., Mr. Newsome, Dr. Griffin, Mr. Barnett, Blue

Cross, and Mr. Allen—or file and serve responses to these defendants' pending dispositive motions. *Id.*

By Order entered February 4, 2008 (Docket Entry No. 65), the Court stayed discovery in the action pending resolution of the defendants' dispositive motions and granted the plaintiff an extension of time to February 29, 2008, to respond to the dispositive motions. By Order entered March 11, 2008 (Docket Entry No. 77), the Court denied the plaintiff's motions to suspend action in the case and appoint a special master and granted the plaintiff another extension of time to April 10, 2008, to file responses to the pending dispositive motions.

On April 11, 2008, the plaintiff filed an "Omnibus Motion." *See* Docket Entry No. 79. The filing is essentially a response to the motion for summary judgment filed by Defendant Griffin. The plaintiff subsequently filed similar "Omnibus Motion[s]," which the Court construes as responses, albeit untimely, to the pending dispositive motions. *See* Docket Entry Nos. 88, 93, 97, and 98.[4]

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Logan v. Denny's, Inc.,* 259 F.3d 558, 566 (6th Cir.2001).

In determining whether the moving party has met its burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 80 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir.2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC,* 219 F.3d 547, 551 (6th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 537–38 (6th Cir.1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 424 (6th Cir.2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.,* 338 F.3d 557, 566 (6th Cir.2003) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson,* 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White,* 190 F.3d 427, 430 (6th Cir.1999) (citing *Anderson,* 477 U.S. at 247–49).[5]

## V. CONCLUSIONS

*A. Defendants the Hospital, Community Health Systems, Inc., and Gary Newsome*
Summary judgment should be granted to these defendants on each of the claims raised by the plaintiff.

In their motions to dismiss (Docket Entry Nos. 53 and 55),[6] the defendants raise the defense of *res judicata* and argue that the order which dismissed the plaintiff's state lawsuit should be given preclusive effect and should bar the plaintiff from pursuing claims against them in this action. The Court agrees. The plaintiff simply cannot re-litigate the claims and issues which were raised or which could have been raised in his state lawsuit via the instant action. That is exactly the situation which *res judicata* is intended to prevent.

A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Hutcherson v. Lauderdale County, Tennessee,* 326 F.3d 747, 758 (6th Cir.2003); *Smith v. Metropolitan Development Housing Agency,* 857 F.Supp. 597, 600

(M.D.Tenn.1994). Accordingly, if the courts of Tennessee would view the January 17, 2008, judgment dismissing Plaintiff's state court lawsuit as barring a subsequent lawsuit because of principles of *res judicata*, this Court should accord that judgment the same preclusive effect.

Under Tennessee law, the doctrine of *res judicata* bars "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn.1979). Four elements must be established before *res judicata* can be asserted as a defense: (1) the underlying judgment must have been rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn.Ct.App.1995) (citing *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn.Ct.App.1990)).

The instant action is a virtual carbon copy of the action which was dismissed with prejudice on the merits by the state court. Indeed, the complaints filed in both actions are virtually identical with respect to these three defendants. *Res judicata* should apply as each of the elements required for application of *res judicata* are satisfied.

*Res judicata* bars the plaintiff from pursuing not only the causes of action which were raised in the state court action, but also bars him from pursuing the RICO claim he added to his federal complaint. As the Tennessee Supreme Court noted in *American Nat'l Bank & Trust Co. of Chattanooga v. Clark*, "[i]t has long been the rule in this state that not only issues which were actually determined, but all claims and issues which were relevant and which could reasonably have been litigated in a prior action, are foreclosed by the judgment therein." 586 S.W.2d at 826 (citing *Jordan v. Johns*, 168 Tenn. 525, 79 S.W.2d 798 (1935)). The doctrine of *res judicata* operates to bar all claims that were actually litigated or could have been litigated in the first suit between the same parties. *Graybar Electric Co. v. New Amsterdam Casualty Co.*, 186 Tenn. 446, 211 S.W.2d 903 (1948). Because the RICO claim arose out of the same set of events and could have been raised in the state court action, it is likewise barred by *res judicata*.[7]

In his responses to the pending dispositive motions, the plaintiff raises two arguments against the application of *res judicata* to the instant action, neither of which directly address the issue of whether *res judicata* applies. The Court finds neither of the arguments raised persuasive.

First, the plaintiff contends that the rulings of the state court should be disregarded because the judges "received massive contributions from the opposing counsels." *See* Docket Entry No. 79, at 2; Docket No. 83, at 2. There is no indication in the record that the plaintiff successfully appealed the judgment in the state court case on the basis of these allegations. Accordingly, the judgment of the state court stands as a valid and legitimate judgment. This Court cannot ignore the preclusive effect of that judgment based upon mere allegations[8] of impropriety such as those raised by the plaintiff.

Second, this court has no authority to engage in an independent review of a state court civil action in order to overturn the judgments rendered therein. Review of final determinations in state judicial proceedings can be obtained only in the United States Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311 –12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). A United States district court "has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. *See, e.g.*, *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 506 (6th Cir.2000) (noting that, pursuant to *Rooker–Feldman*, application to the Supreme Court is "the only avenue for federal review of state court proceedings"); *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995) (the *Rooker–Feldman* doctrine "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court"). This is true even though the state court judgment may have been erroneous. *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2nd Cir.1986).

The Court likewise agrees with the argument raised by the defendants in their motion for summary judgment (Docket Entry No. 30) that by entering into the Settlement Agreement, the plaintiff specifically agreed to release any and all claims which arise from the Agreement. Section 2 of the Settlement Agreement states:

> For and in consideration of the representations and promises contained in paragraph 1 above, the Releasor unconditionally settles, releases,

compromises, reaches accord and satisfaction, waives, remises, discharges, acquits, indemnifies, and holds harmless, Hospital, its subsidiaries, parent, and affiliated corporations and operations and their officers, directors, agents, employees, attorneys, and the successors and assigns of any of them, for each, every, and all actions, causes of action, liabilities, claims including past and future claims of any type whether known or unknown, or liquidated or unliquidated, liens and/or subrogated interests herein which these funds are intended to cover, damages, and expenses of whatever kind and nature, including but not limited to any and all costs and attorney fees, which Releasor had or now has or which Releasor, his/her heirs, executors, administrators, successors, or assigns may ever have including, but not limited to, any claims arising under any federal, state, and/or local statutes or ordinances, and all known and unknown and anticipated claims of whatever kind and nature and any and all claims in any way relating to or arising out of the Recruitment Agreement.

See Exhibit H (Docket Entry No. 9–8) to Answer (Docket Entry No. 9).

The plaintiff cannot escape the language of the Settlement Agreement which he signed, and he has not shown any valid legal reason why he should not be held to the terms of the Settlement Agreement in which he agreed to release any claims he had arising from the Recruitment Agreement. The terms of the Settlement Agreement are clear and unambiguous and bar him from pursuing the claims he brings in the instant action against the Hospital, Community Health Systems, Inc., and Mr. Newsome. See Evans v. Tillet Bros. Const. Co., Inc., 545 S.W.2d 8, 11 (Tenn.Ct.App.1976).

### B. Defendants Blue Cross and Mr. Barnett

The motion for summary judgment (Docket Entry No. 59) of Defendants Blue Cross and Daniel Barnett should be granted. Summary judgment should be granted to Defendants Blue Cross and Barnett on the basis of *res judicata* for the same reasons as set out *supra*. The dismissal of the claims raised by the plaintiff against Blue Cross and Mr. Barnett in the state court action was on the merits and was with prejudice. The claims which were dismissed in the state action mirror those raised by him in the instant action. The state court dismissal bars him from pursuing the same claims in the instant action and also bars him from pursuing the antitrust, Clayton Act, and RICO claims which he added to his federal complaint.

Because *res judicata* requires dismissal of all claims raised by the plaintiff against Blue Cross and Mr. Barnett, it is unnecessary to address the alternative arguments for dismissal raised by the defendants.

### C. Defendant Griffin

The motion for summary judgment (Docket Entry No. 42) of Defendant Griffin should be granted. Summary judgment should be granted to the defendant on the basis of *res judicata* for the same reasons as set out *supra*. The November 19, 2007, order of the state court dismissing the claims raised by the plaintiff against Defendant Griffin in the state court action was on the merits and was with prejudice. The claims which were dismissed in the state action mirror those raised by him in the instant action. The state court dismissal bars him from pursuing the same claims in the instant action and also bars him from pursuing the antitrust, Clayton Act, and RICO claims which he added to his federal complaint.

Because *res judicata* requires dismissal of all claims raised by the plaintiff against Defendant Griffin, it is unnecessary to address the alternative arguments for dismissal that he raised.

Defendant Griffin's motion to dismiss (Docket Entry No. 46) is directed at the notice of voluntary dismissal filed by the plaintiff on December 21, 2007, and asks that the voluntary dismissal be entered with prejudice. The Court addressed the plaintiff's notice of voluntary dismissal in the Order entered January 7, 2008 (Docket Entry No. 48), and declined to enter a dismissal with prejudice in favor of Defendant Griffin. Accordingly, the motion to dismiss was implicitly denied at that time and the arguments raised by Defendant Griffin in the motion are moot.

### D. Defendant John Wayne Allen

Defendant Allen contends that the claim of legal malpractice brought against him should be dismissed because the plaintiff fails to set forth facts showing that any alleged negligence on the part of Allen in the handling of the state lawsuit was the proximate or legal cause of any damages suffered by the plaintiff. See Docket Entry No. 28.

In order to make out a *prima facie* legal malpractice claim, the plaintiff must show: (1) that the accused attorney owed a duty to the plaintiff; (2) that the attorney breached that duty; (3) that the plaintiff suffered damages; (4) that the breach was the cause in fact of the plaintiff's damages; and (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages. *See Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn.2001); *Lazy Seven Coal Sales, Inc. v. Stone & Hinds*, 813 S.W.2d 400, 403 (Tenn.1991); *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn.Ct.App.1998).

The Court agrees with Defendant Allen that, even if the Court presumes, for the purposes of deciding the defendant's motion, that Defendant Allen breached a duty to the plaintiff by making mistakes in the handling of the state lawsuit in White County, there is no evidence before the Court showing that these mistakes were the factual and proximate cause of any damage suffered by the plaintiff.

There is no question that the White County lawsuit was initially dismissed in favor of the defendants when a notice of voluntary dismissal was filed by Defendant Allen on March 14, 2007, and an order of non-suit was subsequently entered on April 9, 2007, dismissing all claims with prejudice. *See* Exhibit 17 to Amended Complaint. For the purposes of the defendant's motion, the Court will presume that errors on the part of Defendant Allen led to this unfavorable judgment and that these errors rose to the level of a breach of Defendant Allen's duty to the plaintiff.

However, there is also no dispute that the judge in the White County lawsuit set aside the prior order of dismissal. *See* Exhibit C (Docket Entry No. 44–3) to Defendant Griffin's Memorandum in Support of Dismissal. At this point, and by which time the plaintiff had discharged the services of Defendant Allen, any damages suffered by the plaintiff which were attributable to how the case had been previously handled by Defendant Allen were cured and the plaintiff remained in the same position in that lawsuit as he had been prior to the entry of dismissal.

In his response in opposition to the motion to dismiss (Docket Entry No. 91), the plaintiff does not address the issue raised by Defendant Allen and fails to set forth any persuasive argument as to why the claim against Defendant Allen should not be dismissed. The plaintiff's allegations that Defendant Allen colluded with, was influenced by, or received improper consideration from the defendants in the White County lawsuit in exchange for mishandling the lawsuit are supported by absolutely no evidence and are conclusory and speculative on the part of the plaintiff. Such allegations will not prevent dismissal of the claim against Defendant Allen.

*\*10* Defendant Allen's second motion to dismiss (Docket Entry No. 47) is directed at the notice of voluntary dismissal filed by the plaintiff on December 21, 2007, and asks that the voluntary dismissal be entered with prejudice. The Court addressed the plaintiff's notice of voluntary dismissal in the Order entered January 7, 2008 (Docket Entry No. 48), and declined to enter a dismissal with prejudice in favor of Defendant Allen. Accordingly, the second motion to dismiss was implicitly denied at that time and the arguments raised by Defendant Allen in the motion are moot.

### RECOMMENDATIONS

Accordingly, the Court respectfully RECOMMENDS that:

1. the Motion to Dismiss (Docket Entry No. 28) of Defendant John Wayne Allen be GRANTED;

2. the Motion for Summary Judgment (Docket Entry No. 30) of Defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome be GRANTED;

3. the Motion for Summary Judgment (Docket Entry No. 42) of Defendant Chad Griffin be GRANTED;

4. Motion to Dismiss of Defendant Chad Griffin (Docket Entry No. 46) be DENIED;

5. Second Motion to Dismiss (Docket Entry No. 47) of Defendant John Wayne Allen be DENIED;

6. Motions to Dismiss (Docket Entry No. 53 and 55) of Defendants White County Community Hospital, Community Health Systems, Inc., and Gary Newsome be GRANTED; and

7. Motion for Summary Judgment (Docket Entry No. 59) of Defendants Daniel Barnett and Blue Cross/Blue Shield of Tennessee be GRANTED.

All claims raised by the plaintiff in this action should be DISMISSED WITH PREJUDICE as to Defendants White County Community Hospital, Community Health Systems, Inc., Gary Newsome, Daniel Barnett, Blue Cross/Blue Shield of Tennessee, and John Wayne Allen.

Remaining in this action are the counter-claims raised by Defendants White County Community Hospital, Community Health Systems, Inc., Gary Newsome, Daniel Barnett, and Blue Cross/Blue Shield of Tennessee. The counter-claims were not a part of the dispositive motions which were filed by the defendants, nor were they addressed by any party.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

## All Citations

Not Reported in F.Supp.2d, 2009 WL 362462

| Footnotes |
| --- |

1   Consistent with Magistrate Judge Griffin's assessment, the court considers Dr. **Savarirayan** to be the lone plaintiff in this case. As the R & R notes, "[t]he caption of the complaint lists both the plaintiff and the Commission on Quality Health Care in America ("CQHCA"), which is described as a 'Federal entity set up under Title IV of Public Law 99–660–The Health Care Quality Improvement Act of 1986.' ... However, the CQHCA is not specifically named as a plaintiff in the body of the complaint and all references to 'plaintiff' in the complaint are clearly intended to mean the plaintiff." (Docket No. 101 at 5.)

2   In a response to defendant Pekalo's motion to dismiss, the plaintiff attached another amended Complaint, which added a Title VII claim directed against defendant Pekalo. (Docket No. 35 Ex. 1.) There was no motion for leave to amend filed, and defendant Pekalo has been dismissed, without prejudice, from this litigation. Therefore, consistent with Magistrate Judge Griffin's assessment, the court views the Docket No. 6 Amended Complaint as the plaintiff's operative Complaint.

3   Formally, Judge Griffin recommended that (1) defendant Allen's First Motion to Dismiss (Docket No. 28) be granted and his Second Motion to Dismiss (Docket No. 47) be denied; (2) the Hospital, CHS, and Newsome's Motion for Summary Judgment and their two Motions to Dismiss (Docket Nos. 30, 53, 55) be granted; (3) defendant Griffin's Motion for Summary Judgment (Docket No. 42) be granted and his Motion to Dismiss (Docket No. 46) be denied; and that (4) Barnett and Blue Cross' Motion for Summary Judgment (Docket No. 59) be granted. According to the R & R, the denial of Allen and Griffin's second motion to dismiss would be technical, and the Magistrate recommended that the plaintiff's claims be dismissed against these defendants on the basis of their respective initial dispositive motion. Judge Griffin also noted that the counterclaims of the Hospital, CHS, Newsome, Barnett, and Blue Cross were not affected by the R & R. (Docket No. 101 at 17.) Since the R & R was issued, the parties have provided no further briefing on any counterclaims, and, therefore, this court's opinion does not bear on any counterclaims either.

4   The Hospital's Motion to Strike cites a provision in the Tennessee Rules of Court—Federal and the Health Insurance Portability and Accountability Act (HIPAA) for the notion that the private information about certain patients disclosed on page 15 of the plaintiff's 44–page filing contained in Docket No. 146 should be stricken. (Docket No. 147.) While the Hospital has failed to show its standing to enforce these patients' HIPAA rights, it is inappropriate and unnecessary for the private medical information of patients not remotely involved in this proceeding to be part of the publicly available case file or to be

posted on the ECF. The court will order the page removed from the case file and the ECF but will not sanction the plaintiff, as the Hospital also requested. (*Id.*)

5      Apparently, the Tennessee state court never issued a final order on the plaintiff's legal malpractice claim against Allen, and, therefore, the R & R concluded that this claim is not barred by *res judicata* principles. (See Docket No. 145 Ex. 1.)

6      As mentioned in the factual discussion, following Judge Griffin's R & R, the plaintiff has continued to file various materials, motions, and responses, and, in one of those responses, the plaintiff specifically challenges the *res judicata* finding by arguing that the finding is "irrelevant" because the Tennessee court was not "fair and impartial" and a federal court should not be "subservient" to a state court. (Docket No. 134.) This argument is not supported by anything more than the plaintiff's rampant speculation and innuendo. Further, it is a well-settled principle of comity that the forum in which the civil plaintiff must complain about any unfair treatment at the state court trial level is the state court of appeals, not the federal district court.

7      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir.2001).

8      As noted above, in his R & R objections, the plaintiff asked to be provided with notice and an opportunity to cure from this court if there are any "magic words" that he failed to use in his briefing that might make a difference in the outcome of the litigation, and the plaintiff asked that his R & R objection serve as a notice of appeal to the Sixth Circuit if this court rejected his arguments therein. (Docket Nos. 112 and 125.) The request for "notice of magic words" is unsupported by any law of which this court is aware. Also, importantly, the plaintiff's R & R objections do not serve as a notice of appeal to the Sixth Circuit. The plaintiff must make a formal appeal based on the relevant rules of procedure.

9      The court does not view the plaintiff's receiving some kind of advice from a lawyer in Illinois who has not entered an appearance of record in this case on behalf of the plaintiff as a reasonable excuse for the delay.

10     The rest of the "fraud" claim is a lengthy discussion of what the plaintiff perceives as a "fraudulent liaison" between the defense attorneys in this case and the Tennessee judicial system to get his case transferred to favorable, hand-picked judges. (*Id.*) The court does not view this allegation as helpful to the plaintiff's fraud claim against the defendants in this case.

1      Although the Settlement Agreement is signed and bears the date of January 16, 2004, letters provided by the defendants appear to indicate that the plaintiff was given until January 27, 2004, to execute the Settlement Agreement. *See* Exhibits E, F, and G (Docket Entry Nos. 9–5, 9–6, and 9–7) to the Answer.

2      Although the order setting aside the prior order of dismissal and the order granting the motion for summary judgment filed by Dr. Griffin were entered on the same day, it is clear that the order setting aside the prior order was entered first. *See* Docket Entry No. 44–3.

3      The plaintiff's amended complaint (Docket Entry No. 6) is the same in all respects as his original complaint except for the inclusion of additional factual allegations against Defendant Pincus. *See* Amended Complaint, at ¶¶ 54–63.

4      In all of the plaintiff's "Omnibus motions," he makes arguments related to a state court action filed by Blue Cross and Mr. Barnett against him in the Hamilton County Circuit Court. In that action, Blue Cross and Mr. Barnett

obtained a permanent injunction against the plaintiff and an award of damages. *See* Exhibit A (Docket Entry No. 90–1), to Reply (Docket Entry No. 90) of Defendants Blue Cross and Mr. Barnett. However, the proceedings in that action are unrelated to the claims the plaintiff has made against Blue Cross and Mr. Barnett in the instant action, and his arguments regarding the Hamilton County case are irrelevant to analysis of the pending dispositive motions.

5  Defendant Allen has filed a motion to dismiss (Docket Entry No. 28) and second motion to dismiss (Docket Entry No. 47) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition to their motions for summary judgment, motions to dismiss have also been filed by Defendants Griffin (Docket Entry No. 46) and by Defendants Hospital, Community Health Systems, Inc., and Mr. Newsome (Docket Entry Nos. 53 and 55). Given the status of this case, the Court, in considering the motions to dismiss, shall not exclude consideration of any evidence which is in the lengthy record and shall, in accordance with Rule 12(b), consider the motions to dismiss as motions for summary judgment in accordance with Rule 56.

6  These two motions are identical except that the second-filed motion contains a certificate of service, in accord with the clerk's instructions.

7  Although not necessary to deciding the instant action, the plaintiff's two sentence RICO claim as set out in his amended complaint lacks the specificity necessary to plead a claim under that act.

8  The plaintiff presents no evidence with respect to White County Circuit Judge Turnbull, who issued the decisions in the plaintiff's state court case. The plaintiff's allegations with respect to Hamilton County Circuit Judge Jeffery Hollingsworth are irrelevant to the instant action.

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW

2009 WL 2170146
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.

Quade v. Rodriguez
United States District Court, E.D. Tennessee.   July 21, 2009   Donald QUADE, et al. 2009 WL 2170146   RICO Bus.Disp.Guide 11, 721
v.
Pedro G. **RODRIGUEZ**, et al.

No. 2:07–CV–64.
July 21, 2009.

### Attorneys and Law Firms

Stephen Ross Johnson, Wayne A. Ritchie, II, Ritchie, Dillard & Davies, P.C., Knoxville, TN, for Plaintiffs.

Thomas L. Kilday, Milligan & Coleman, Greeneville, TN, Ronald W. Jenkins, West & Rose, Kingsport, TN, Robert M. Stivers, Jr., O'Neil, Parker & Williamson, Knoxville, TN, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

J. RONNIE GREER, District Judge.

**\*1** Plaintiffs have brought this civil action, arising out of a fatal automobile collision, against Pedro Rodriguez ("Rodriguez"), a foreign nation who is a citizen of Mexico, Maynard Johnson ("Johnson"), Robert Dunbar ("Dunbar") and Ken Horton ("Horton"), all citizens and residents of Greene County, Tennessee, and Ken's Motors, a sole proprietorship owned by Horton and located in Greene County, Tennessee. Plaintiffs allege a civil conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and state law claims for negligence and negligent entrustment.

This matter is before the Court on the motions for summary judgment filed by all defendants, [Docs. 62, 65 and 67]. Plaintiffs have responded, [Doc. 88], and the issues raised by the motions have been fully briefed. The parties have not requested oral argument and the Court finds that oral argument is not essential to a fair resolution of these motions. E.D.TN. LR 7.2. For the following reasons, the motions for summary judgment are GRANTED.

### I. Subject Matter Jurisdiction
Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 18 U.S.C. § 1331 (federal question) because of plaintiffs' RICO claim. Absent the RICO claim, the Court lacks subject matter jurisdiction since diversity of citizenship does not exist[1] and plaintiffs assert no other basis for subject matter jurisdiction. Plaintiffs invoke the Court's supplemental jurisdiction over their state law claims pursuant to 18 U.S.C. § 1367.

### II. Standard of Review
Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

SELECTED TOPICS

**Federal Regulation**

Purposes of Racketeer Influenced and Corrupt Organization Act Violations

**Secondary Sources**

*(Approx. 10 pages)*
**"Pattern of Racketeering Activity" Under the Racketeer Influenced and Corrupt Organizations Act (RICO)**

10 Am. Jur. Proof of Facts 3d 289 (Originally published in 1990)

...From the time of the discovery by state police and federal revenue agents of a "Mafia Congress" near Apalachin, New York, in 1957, Congress has struggled with the problem of legislating against organiz...

**Cause of Action for Treble Damages for Violation of the Racketeer Influenced and Corrupt Organizations Act [18 U.S.C.A. ss1961 et seq.]**

11 Causes of Action 2d 627 (Originally published in 1998)

...Chapter 96 of Title 18 of the United States Code [ 18 U.S.C.A. §§ 19611968], entitled Racketeer influenced and Corrupt Organizations, was enacted as Title IX of the Organized Crime Control Act of 1970 ...

**What is an "enterprise," as defined at 18 U.S.C.A. sec. 1961(4), for purposes of the Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C.A. secs. 1961 et seq.)**

52 A.L.R. Fed. 818 (Originally published in 1981)

...This annotation collects and analyzes the federal cases in which the courts have discussed the question of what is an "enterprise," as defined at 18 U.S.C.A. § 1961(4), for purposes of the Racketeer In...

See More Secondary Sources

**Briefs**

**Brief for the Chamber of Commerce of the United States of America and McKesson Corporation as Amici Curiae in Support of Neither Party**

2008 WL 5079031
Edmund BOYLE, Petitioner, v. UNITED STATES, Respondent.
Supreme Court of the United States
Nov. 28, 2008

...FN* Counsel of Record FN1. Letters from the parties consenting to the filing of this brief are being filed with the Clerk of the Court, pursuant to Rule 37.3(a). No counsel for a party authored this br...

**Brief of Amicus Curiae National Association of Shareholder and Consumer Attorneys (NASCAT) in Support of Respondent**

2008 WL 5433357
Edmund BOYLE, Petitioner, v. UNITED STATES OF AMERICA, Respondent.
Supreme Court of the United States
Dec. 29, 2008

...FN* For identification only FN1. Letters from the parties consenting to the filing of this brief are being filed with the Clerk of the Court, as required by Rule 37.3(a). No counsel for a party authore...

(1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson,* 477 U.S. at 252; *McClain v. Ontario, Ltd.,* 244 F.3d 797, 800 (6th Cir.2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 248–49; *Nat'l Satellite Sports,* 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson,* 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

*2 The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson,* 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248–52.

### III. *Factual Background*

The facts in this case are largely undisputed and the following statement of facts is taken primarily from plaintiff's filings in this case.

On the morning of September 14, 2006, Linda Quade was driving from her home in Greene County, Tennessee to her job at the Veterans Administration Medical Center in Johnson City, Tennessee. On the same morning, the defendant, Rodriguez driving in the opposite direction, crossed the center line of the roadway and struck Mrs. Quade's car head-on. As a result of the collision, which occurred on State Route 351 at its intersection with the 107 Cut –Off in Greene County, Mrs. Quade was killed and her vehicle severely damaged.

At the time of the accident, Rodriguez's blood alcohol level was .1209.[2] Rodriguez had a combination of cocaine, alcohol and Soma, a muscle relaxer, in his system. As a result, Rodriguez was intoxicated and his ability to operate a motor vehicle was impaired at the time of the accident. On May 18, 2007, Rodriguez pled guilty to vehicular homicide in the Greene County Criminal Court and was sentenced to a term of 8 years of imprisonment and is currently housed at the Northwest Correctional Complex in west Tennessee.

Rodriguez is, and was at all times relevant to this case, illegally in the United States. At the beginning of the summer of 2005, the defendant, Johnson hired Rodriguez to work on Johnson's farm in Greene County. Rodriguez had gone to Johnson's farm seeking work after Mexican acquaintances had suggested that he go there for work. Johnson owned a dairy and tobacco farm and leased land on which his son, Mike Johnson, raised squash. At the time Johnson hired Rodriguez, Rodriguez spoke little English and Johnson asked for no identification or background information from Rodriguez.

Rodriguez worked seven days a week for Johnson, seldom took any days off, and was paid $300.00 per week in cash by Johnson. Rodriguez worked more than 40 hours a week. Johnson kept no records documenting Rodriguez's employment or the payments made to him, provided Rodriguez no benefits and took no withholding from Rodriguez's earnings. During the year preceding the accident[3], Rodriguez worked for Johnson on the dairy farm and harvested tobacco and squash. His earnings from Johnson were Rodriguez's primary source of income. Although still employed by Johnson, Rodriguez had not worked on Johnson's farm on the day before the motor vehicle accident involving Mrs. Quade and it is undisputed that he was not acting within the course and scope of his employment at the time of the accident. Rodriguez's girlfriend, Yoana Herrera Ocampo ("Ocampo") also worked for Johnson harvesting squash prior to the birth of her son just before Christmas, 2005.

*3 Johnson had previously hired four or five other individuals who spoke primarily Spanish and had likewise paid them in cash, keeping no records of their employment. Johnson also hired Mexican "contractors", paying them approximately $30,000.00 in cash to arrange workers for Johnson's farm. These workers used Johnson's tools, equipment and tractors. Johnson made no effort to verify the citizenship of these workers. Johnson generally located "contractors" at local stores where they went looking for work. Johnson also had other legal employees, to whom he paid higher wages than Rodriguez. For these employees, Johnson took out withholding, paid additional benefits and maintained records.

**Brief for the United States**

2008 WL 5369540
Edmund BOYLE, Petitioner, v. UNITED STATES OF AMERICA.
Supreme Court of the United States
Dec. 22, 2008

...The opinion of the court of appeals (Pet. App. 1a-4a) is not published in the Federal Reporter but is available at 283 Fed. Appx. 825. The judgment of the court of appeals was entered on November 19, 2...

See More Briefs

**Trial Court Documents**

**U.S. v. Dowell**

2012 WL 5183651
UNITED STATES OF AMERICA, v. Donald DOWELL a/k/a D-Dow.
United States District Court, M.D. Tennessee.
July 11, 2012

...(For Offenses Committed On or After November 1, 1987) USM #: 19774-075 THE DEFENDANT: [x] pleaded guilty to counts 1, 15, 16, and 23 of the Superseding Indictment. [] pleaded nolo contendere to count(s...

**U.S. v. Wilson**

2012 WL 5183657
UNITED STATES OF AMERICA, v. Keairus WILSON.
United States District Court, M.D. Tennessee.
Sep. 10, 2012

...(For Offenses Committed On or After November 1, 1987) USM #: 20679-075 THE DEFENDANT: [x] was found guilty on counts 1-4,6-8 and 27 of the Second Superseding Indictment after a plea of not guilty. Acco...

**U.S. v. Williamson**

2012 WL 5183656
UNITED STATES OF AMERICA, v. Rondarius WILLIAMSON.
United States District Court, M.D. Tennessee.
Sep. 12, 2012

...(For Offenses Committed On or After November 1, 1987) USM #: 20704-075 THE DEFENDANT: [x] was found guilty on counts 1, 10-13, 15 and 27 of the Second Superseding Indictment after a plea of not guilty....

See More Trial Court Documents

At about the time Rodriguez and Ocampo began working for Johnson (early summer 2005), they rented a trailer from the defendant, Dunbar. According to Ocampo, she and Rodriguez were able to secure housing from Dunbar through Johnson's son, who was married to Dunbar's daughter. According to Rodriguez, he met Dunbar at a convenience store and asked if he knew of anyone renting places to live and Dunbar told him that he had a trailer for rent. Dunbar rented the trailer to Rodriguez and Ocampo for $80.00 per week, plus utilities. Dunbar never asked Rodriguez where he was from or where he worked and did not ask for any references. Dunbar testified that he asked Rodriguez for identification and was shown a Tennessee driver's license; Rodriguez, however, testified that he had never had a Tennessee driver's license.[4]

Dunbar went weekly to the trailer to collect the rent, which was paid by Rodriguez in cash. Rodriguez also reimbursed Dunbar for utilities with cash. Rodriguez was not given a receipt for any of his payments to Dunbar and Dunbar maintained no records reflecting to whom he rented any of his rental properties, including the trailer rented to Rodriguez, and kept no written records of rent paid. Dunbar apparently did not report his rental income on his income tax returns. Dunbar continued to rent the trailer to Ocampo after Rodriguez was jailed following the collision on September 14, 2006. Johnson and Dunbar knew each other because of the marriage of their children and Johnson knew Dunbar had rented the trailer to Rodriguez and Ocampo.

On February 28, 2006, more than six months before the subject automobile collision, Rodriguez purchased the 1998 Dodge pick-up he was driving at the time of the collision from Ken's Motors, a sole proprietorship owned by the defendant, Horton. Horton did not request of Rodriguez any form of identification before selling him the pick-up truck and did not ask for proof of insurance. Rodriguez did provide Horton with a letter showing his address. Although Rodriguez told Horton (or an employee of Horton) that he had no driver's license, he was nonetheless allowed to test drive the pick-up truck before he bought it. Rodriguez paid for the truck in cash partially earned on Johnson's farm.[5] The pick-up truck was registered in Rodriguez's name.

*4 Horton was aware that illegal aliens resided in Greene County and he had no policy of declining to sell vehicles to illegal aliens. Horton acknowledged often selling vehicles to persons who spoke Spanish, like Rodriguez, and estimated that 90% of Mexicans pay for their vehicles in cash. Nothing in the record supports that Horton was acquainted with either Johnson or Dunbar.

As noted above, Rodriguez had worked on Johnson's farm during the year prior to the accident and had worked during the week of September 14, 2006, harvesting squash on Johnson's farm. He had not, however, gone to work on September 13.[6] Rodriguez drank beer at home on the afternoon before the accident. The beer was purchased from Wal–Mart and/or Food Lion with money earned on Johnson's farm.

Prior to purchasing the 1998 Dodge pick-up truck from Ken's Motors, Rodriguez owned another truck purchased from somewhere else. Rodriguez was operating this previously owned truck on February 14, 2005, when he was involved in an accident in Hamblen County, Tennessee. As a result of the accident, he was arrested and charged with numerous traffic offenses. Rodriguez and Ocampo made a claim for property damage to the truck and personal injury to Ocampo arising out of the February 14 accident and were paid a settlement about 15 days before the 1998 Dodge was purchased from Ken's Motors. On August 23, 2005, Rodriguez was stopped for speeding by the Tennessee Highway Patrol and ticketed without being taken into custody.

### IV. The Racketeer Influenced and Corrupt Organizations Act

Although RICO was passed as part of a larger initiative, the Organized Crime Control Act of 1970, that specifically targeted organized crime and mob activity, see United States v. Turkette, 452 U.S. 576, 589 n. 11, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court has recognized that RICO reaches racketeering activity committed by legitimate businesses and organizations as well. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 498–99, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("RICO was an aggressive initiative to supplement old remedies and implement new methods for fighting crime .... [RICO can be] used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct").

Title 18 U.S.C. § 1964(c) creates a civil cause of action and treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1962(c), provides that: "[i]t shall be unlawful for any person employed

by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." To state a RICO claim, then, under 18 U.S.C. § 1962(c), a plaintiff must show defendants (1) conducted or participated in (2) the activities of an enterprise (3) through a pattern (4) of racketeering activity. *Reves v. Ernst & Young,* 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). To prove a violation of 18 U.S.C. § 1962(d) (conspiracy to violate RICO), a plaintiff must prove (1) a conspiracy (2) with the purpose of violating 18 U.S.C.1962(c). *See, e.g. Beck v. Prupis,* 529 U.S. 494, 506, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). As noted above, a plaintiff must also show an injury to business or property by reason of a violation of RICO. 18 U.S.C. § 1964(c).

*5 "Conduct" refers to a defendant's conduct of or participation in the alleged enterprise's affairs. The words "conduct or participate" imply a degree of direction, and mean that the defendant must have "some part in directing the enterprise's affairs[.]" *Reves,* 507 U.S. at 179. This is commonly referred to as the "operation or management" test. *Id.; Stone v. Kirk,* 8 F.3d 1079, 1092 (6th Cir.1993) ("[A]lthough 'RICO liability is not limited to those with primary responsibility for the enterprise's affairs' ... one cannot be liable under section 1962 (c) unless one has participated, in some degree, 'in the operation or management of the enterprise itself.' " (quoting *Reves,* 507 U.S. at 179)).

Section 1961(4) defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette,* 452 U.S. at 583. Proving the existence of a "legal entity" enterprise, such as a partnership or corporation, is relatively straightforward. Proving the existence of a "non-legal entity", "association in fact" enterprise, however, is more difficult. "An association in fact enterprise can be proven by showing 1) that the associated persons formed an ongoing organization, formal or informal; 2) that they functioned as a continuing unit; and 3) that the organization was separate from the pattern of racketeering activity in which it engaged." *VanDenBroeck v. CommonPoint Mortgage Co.,* 210 F.3d 696, 699 (6th Cir.2000). These elements "require a certain amount of organizational structure which eliminates simple conspiracy from [RICO's] reach .... [T]he parties [must be] organized in a fashion that would enable them to function as a racketeering organization for other purposes .... All that is required is some minimal level of organizational structure between the entities involved." *Id.*

A "pattern of racketeering activity" is defined by statute as "[a]t least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is further defined in 18 U.S.C. § 1961 (1) as any one of a numerous list of state and federal offenses that qualify as racketeering activity. Among the predicate acts listed in 18 U.S.C. § 1961(1) are violations of the Immigration and Nationality Act, section 274 (codified at 8 U.S.C. § 1324). A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *Turkette,* 452 U.S. at 583.

### V. The Pending Motions

Defendants generally assert in their motions that this Court lacks subject matter jurisdiction because there is no federal question in that plaintiffs may not maintain their present action under the RICO statute. More specifically, the defendants allege that plaintiffs cannot establish a pattern of racketeering activity but that, at most, plaintiffs simply show "separate action by separate defendants." Defendants further allege that plaintiffs cannot show a violation of 8 U.S.C. § 1324 and therefore cannot establish violation of any of the numerous list of state and federal offenses that qualifies as racketeering activity, that there is no proof of any agreement or conspiracy among the defendants, and that plaintiffs have not shown a RICO injury, *i.e.,* injury to business or property as required by 18 U.S.C. § 1964(c). The defendants also assert that plaintiffs cannot show that defendants proximately caused any damages which resulted from the automobile collision on September 14, 2006. While it may be that plaintiffs can establish a RICO injury, it is doubtful that plaintiffs can show a violation of 8 U.S.C. § 1324 or that they can show any conspiracy among the defendants to violate RICO. It is not necessary, however, for the Court to decide these issues and they will be pretermitted. Because plaintiffs cannot show that any of their alleged damages were proximately caused by the defendants' alleged violation, and this failure is fatal to their claims under RICO, this Court concludes that the plaintiffs lack RICO standing to bring this action against these Tennessee defendants and this Court therefore lacks subject matter jurisdiction of this complaint because there is no federal question.

### Analysis and Discussion

**\*6** RICO's statutory standing provision, 18 U.S.C. § 1964(c) provides, as noted above, a private cause of action under RICO for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In *Holmes v. Securities Investor Protection Corp.*, the United States Supreme Court held that evidence that an injury to plaintiff would not have occurred "but for" the defendant's alleged RICO violation, *i.e.*, that plaintiff suffered a mere "injury in fact," is insufficient to establish RICO causation. Instead, the plaintiff must also prove "proximate causation." 503 U.S. 258, 265–70, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). "Proximate cause" requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 268. Following *Holmes*, the Sixth Circuit held that a RICO civil plaintiff must prove that it realized damages directly caused by the defendant's conduct violative of RICO; mere "but for" injuries consequent to intervening losses directly caused to another party are insufficient. *See Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir.1992).

Common law principles of proximate causation are incorporated into the RICO statute. *Holmes*, 503 U.S. at 267–68; *Perry v. The American Tobacco Company, Inc.*, 324 F.3d 845 (6th Cir.2003). The Sixth Circuit recently described the requirement as follows:

> ... RICO not only imposes a statutory standing limitation on claimants who seek recovery for derivative or indirect injuries, but it also incorporates other traditional proximate-cause limitations on claimants. *See Perry*, 324 F.3d at 850 ("Though foreseeability is an element of the proximate cause analysis, it is distinct from the requirement of direct injury."); *Desiano*, 326 F.3d at 348 (noting that RICO incorporates a directness requirement that is more stringent than most states require and that RICO also incorporates foreseeability"). Accordingly, while a RICO plaintiff and defendant may have a *direct* and not a *derivative* relationship, the causal link between the injury and the conduct may still be too weak to constitute proximate cause-because it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes. *See Perry*, 324 F.3d at 850; *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir.1989) (RICO plaintiffs must "set out a reasonable and principled to basis of recovery" that is "not based on mere speculation and surmise").

> The point of all this is not just that the distinction between statutory standing and proximate cause exists, but that unbundling these distinct concepts has practical significance for RICO cases in general and for this case in particular. From a substantive standpoint, a RICO plaintiff who can show a direct injury may still lose the case if the injury does not satisfy other traditional requirements of proximate cause-that the wrongful conduct be a substantial and foreseeable cause and that the connection be logical and not speculative.

**\*7** *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614–15 (6th Cir.2004) (emphasis in original). The Supreme Court has, subsequent to *Holmes*, described the "by reason of" language of the RICO statute "as meaning, in all civil RICO cases, that the violation must be both the cause-in-fact and the proximate cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 477, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). (Thomas, J., concerning in part and dissenting in part).

Thus, a successful RICO claimant must show that his injury would not have occurred "but for" the conduct of the defendants *and* that his injuries were "proximately caused" by the defendant's alleged RICO violation. The Supreme Court has referred to "proximate cause" as "the judicial tools used to limit a person's responsibility for the consequences of that person's own acts" reflecting "ideas of what justice demands, or of what is administratively possible and convenient." *Holmes*, 503 U.S. at 268 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton, Law of Torts, § 41, p. 264 (5th ed.1984)). The generally established common law principle of proximate cause requires that the defendant's conduct "played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." *See* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 5th ed., § 120.60 (2000). Thus, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. *See also Saro v. Brown*, 11 Fed. Appx. 387, 389 (6th Cir.2001) (noting that even when a court assumes, arguendo, that the plaintiff has suffered a compensable injury under RICO, the plaintiff must still show proximate cause, *i.e.* show some injury that flows from one or more of the predicate acts of the defendant) ("If no injury flowed from a particular predicate act, no recovery lies for the commission of that act.")

Under Tennessee law, which reflects the same principle, an injured party must, to establish proximate cause, show that (1) the actor's conduct was a substantial factor in bringing about the harm complained of, (2) there is a policy which should relieve the wrongdoer from liability because of the manner in which the negligence had resulted in harm, and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence. *Kellner v. Budget Car & Truck Rental, Inc.,* 359 F.3d 399, 406 (6th Cir.204). "[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Holmes,* 503 U.S. at 269 (citing *Associated General Contractors of Cal., Inc. v. Carpenters 723,* 459 U.S. 519, 542–43, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

**\*8** Two cases, both applying Tennessee law and both arising in this district, illustrate the application of these principles. In *Halvorsen v. Plato Learning, Inc.,* 167 Fed. Appx. 524, 2006 WL 348163 (6th Cir.2006), plaintiff's decedent was fired from his employment with the defendant. After Halvorsen's discharge, he became "despondent." Three weeks after the firing, Halvorsen, who was "nervous, appeared depressed, and worried about his financial situation with his children," left his house to get cigarettes. He then died in a single-car accident. In pressing her wrongful death claim, plaintiff contended that if her husband "hadn't been terminated in the way he was terminated, he wouldn't have been despondent ... nervous ... worried" and would have been in Las Vegas on a business trip for his former employer at the time of his death. *Id.* at 530.

The Sixth Circuit found that the claim failed applying fundamental tort law principles and held that, even if the defendant's decision to fire Halvorsen could be said to be one of many "but for causes of his death, the decision could not 'plausibly be described *as the proximate* cause of his death.' " *Id.* at 531 (emphasis in original). Noting that "a person in Mr. Halvorsen's emotional state could well be expected to suffer an accident of the kind that killed him," the Sixth Circuit held that that "is no answer to this defect in the claim, because [plaintiff] nowhere alleges that [defendant] knew or should have known of [Halvorsen's] emotional state, ..." *Id.*

In *Kellner,* the operator of a tractor-trailer rig experienced mechanical problems and drove his rig completely into the emergency lane of the interstate. The operator of the rig was underneath the tractor-trailer when another driver, whose grandsons were passengers in her truck, left the far right travel lane of traffic, moved into the emergency lane, and collided with the parked tractor-trailer. As a result of the collision, the tractor-trailer driver, the driver of the truck and one of her grandsons were killed. The Kellners, the next of kin of the killed driver and her grandson, sued, contending that defendants' negligence "proximately caused the accident by leaving a tractor-trailer parked in the emergency 'breakdown' lane along the shoulder of the interstate."

The Sixth Circuit affirmed a grant of summary judgment to the defendants, finding that, even if it was negligent for the operator of the tractor-trailer to park his rig in the emergency lane, defendant's actions were not the proximate cause of the plaintiffs' injuries. The Sixth Circuit agreed with the district court that the truck driver's actions in leaving the travel lanes and crashing into the parked tractor-trailer rig were the proximate cause of plaintiffs' losses. *Kellner,* 359 F.3d at 406. The appellants had argued that the district court erred because it was foreseeable when the tractor-trailer rig was parked in the emergency lane that another vehicle might leave its proper lane of travel and collide with the parked rig. The Sixth Circuit rejected that reasoning because, as the Sixth Circuit saw it, to do so would lead to "logical absurdities," noting that to adopt the appellant's position could lead to the absurd result that "a driver legally traveling in her own lane, who is hit by another vehicle that crossed into that driver's lane, could be held liable for negligence because it was foreseeable that vehicles leave their lanes of traffic." *Id.* at 407 (quoting *Underwood v. Water Slides of Mid–America,* 823 S.W.2d 171, 180 (Tenn.Ct.App.1991)). The court noted that a person is not required "to anticipate or foresee what would normally happen; one is not required to anticipate and provide against what is unusual or unlikely to happen, or that which is only remotely possible." *Id.*

**\*9** Plaintiffs in the instant case argue that "Johnson, Dunbar and Horton provided defendant Rodriguez with a job, a home, and a vehicle; by providing the means for defendant Rodriguez to remain in Greene County and drive on Greene County's roads, the defendants proximately caused damage to Linda Quade's Honda Accord." [Doc. 88, p. 42]. Even assuming that providing Rodriguez with a home, a job and a vehicle to drive under the circumstances set forth in this case constitute acts in furtherance of a RICO conspiracy, and even further assuming that these acts could be said to be one of many "but for" causes of

the September 14 collision,[7] it cannot be said that these acts proximately caused the collision and resulting injury.

There is no direct link between the alleged RICO violations and the injury alleged in this case and it certainly cannot be said that the actions of these defendants were a substantial factor in bringing about the complained of harm. Nor can plaintiffs' reasonably argue that Rodriguez's actions on the date prior to and on the date of the accident in question could have been reasonably foreseen or anticipated by a person of ordinary intelligence.[8]

Plaintiffs' argument that the knowledge of some or all of these defendants of Rodriguez's status as an illegal alien and his status as an unlicensed driver somehow contributed, in a substantial way, to the accident on September 14, 2006, is almost baffling, as is their argument that the accident on September 14 would not have happened if Johnson hadn't given Rodriguez a j ob, Dunbar had not rented him a place to live and Horton had not sold him a vehicle. Carrying plaintiffs' arguments to their logical conclusion leads, even more so than in *Kellner,* to illogical absurdities.

First of all, it is an absurdity to suggest that, except for the actions of Johnson, Dunbar and Horton, Rodriguez would not have been able to remain illegally in this country and thus the September 14 accident would never have occurred. It is also illogically absurd to suggest that an employer who employs an illegal alien can reasonably be expected to foresee that the illegal alien will become intoxicated, drive an automobile and be involved in an automobile accident, as is the suggestion that a person who rents a house to an illegal alien could be expected to foresee or anticipate such an occurrence. Plaintiffs' argument with respect to the sale of the automobile by Horton fares no better. The seller of an automobile, even one selling to a person he knows to be a non-citizen and without a driver's license, cannot reasonably be expected to foresee or to anticipate that the driver of that automobile will become intoxicated and injure someone else. Even if it could be reasonably assumed that a person like Rodriguez, illegally in the country and without a driver's license, could be expected to become intoxicated and cause an accident, that does not cure the lack of proximate cause in this case because plaintiffs have not shown, or even alleged, that the defendants knew or should have known that Rodriguez would drink, use drugs, and drive an automobile.

**\*10** The incongruity of the plaintiffs' position is further illustrated by considering how plaintiffs' theory might apply to others not sued in this case. Can it be said that those who provide jobs, shelter and automobiles to illegal aliens are guilty of harboring aliens pursuant to 18 U.S.C. § 1324 any more so than is the grocery store which supplies food, the medical care providers and pharmacies which provide healthcare, the department stores which supply clothing, the utility companies which supply water and electricity, the Wal–Mart or Food Lion which sells beer, the law enforcement officers who fail to arrest, the convenience store which sells gasoline or the local state and federal governments which educate their children? The plaintiffs argue strenuously that these defendants knew about or were deliberately indifferent to Rodriguez's illegal alien status yet they never suggest how that, even if true, has some connection to his driving while intoxicated and causing the collision that killed Linda Quade. While it is easy for one to be sympathetic with the position of these plaintiffs whose loved one was killed by the senseless criminal act of Rodriguez, who was illegally in this country, that in no way changes the fact that these defendants committed no acts, RICO violations or otherwise, which can reasonably be characterized as having proximately caused the September 14 collision.

One last issue raised by the plaintiffs should be addressed. Plaintiffs argue that it would be improper for this Court to resolve plaintiffs' claim of proximate cause at the summary judgment stage of this litigation, because proximate cause is a question for the trier of fact, "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." [Doc. 88, p. 43]. While plaintiff's position is a correct statement of the law, it does not provide a safe harbor for the plaintiffs in this case. As set forth above, the plaintiffs do not establish that there are material facts in dispute in this case because, as a matter of law, the conduct of the defendants, even accepting plaintiffs' allegations as true, do not establish that the conduct of the defendants caused the plaintiffs' injuries. In addition, the Sixth Circuit has suggested that RICO civil cases where there is "a weak or insubstantial causal link, and lack of foreseeability, or a speculative or illogical theory of damages," are better suited for resolution with a summary judgment motion than a motion to dismiss under Rule 12(b) (6). *Trollinger,* 370 F.3d 615 (citing *N.O.W. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Indeed, it

would be a waste of judicial resources to allow a case where there is no material fact in dispute to go forward to trial.[9]

### V. Conclusion

Because the plaintiffs' have failed to show standing and proximate cause in regard to their RICO action, it is hereby **ORDERED** that the motions for summary judgment filed by the defendants Ken Horton, Ken's Motors, Robert Dunbar, and Maynard Johnson are **GRANTED** and Count 1 of the plaintiffs' second amended complaint is hereby **DISMISSED WITH PREJUDICE.** [Docs. 62, 65 and 67]. Furthermore, given that this Court lacks subject matter jurisdiction of this complaint because there is no federal question, this Court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims for negligence and/ or recklessness, and negligent entrustment.[10] The plaintiffs' state law claims are, therefore, **DISMISSED WITHOUT PREJUDICE.**

### All Citations

Not Reported in F.Supp.2d, 2009 WL 2170146, RICO Bus.Disp.Guide 11,721

| Footnotes |
|---|
| 1 | The lead plaintiff, Donald Quade, is a citizen and resident of Greene County, Tennessee. |
| 2 | Although Rodriguez's blood alcohol level was apparently lower than the .08 level made illegal under Tennessee law when he was blood tested some time after the accident, see T.C.A. § 55–10–401 ("It is unlawful for any person to drive or to be in physical control of an automobile or other motor driven vehicle on the public roads and highways of the state ... while: ... (2) The alcohol concentration in the persons blood or breath is eight-hundredths of one percent (.08%) or more"), the state's expert opined that the blood alcohol level at the time of the accident was .1209. |
| 3 | Rodriguez testified that he worked for Johnson through September 12, 2006, but had not gone to work on the day prior to the accident because it was the end of the squash season. Johnson, on the other hand, testified that Rodriguez only worked for him as an employee at his dairy farm during 2005 and that he had told Rodriguez he would have to find other employment a few days before Christmas, 2005. For the purposes of deciding the pending motions, the Court will assume that Rodriguez's version is true. |
| 4 | Rodriguez had apparently been issued a Tennessee driver's license for identification purposes only, according to the accident report filed by the Tennessee Highway Patrol. |
| 5 | Plaintiffs acknowledge that some of the money used to pay for the truck was from "savings and some money from his girlfriend ..." [Doc. 88, p. 2]. |
| 6 | Plaintiffs originally claimed that Rodriguez was acting in the course of his employment at the time of the September 14 collision but no evidence in the record supports such a claim. Plaintiffs do suggest that the jury might not believe Rodriguez's statement that he had decided to quit working for Johnson before the collision and conclude that he was on the way to work for Johnson on the morning of the accident because he was "driving towards the field owned and leased by Johnson." Such speculation, however, does not create a genuine dispute about a material fact. |
| 7 | Plaintiffs allege in their response in opposition to the motions for summary judgment that "but for the conduct of Defendants Johnson, Dunbar and Horton, Defendant Rodriguez would not have had the mechanism, means or ability to have been living and driving in Greene County on September 14, 2006." [Doc. 88, pp. 3–4]. To suggest that the actions of Johnson, Dunbar and Horton were the sole cause in fact of the September 14 accident is a dubious contention. For purposes of deciding the pending motions, the Court will accept that the actions of defendants were a contributing "but for" cause. |
| 8 | Plaintiffs made the conclusory allegation that "[i]f an individual is willing to ignore federal immigration laws and willing to drive without a driver's license, it is certainly foreseeable that the individual would be willing to drink and |

drive." [Doc. 88, pp. 46–47]. As set forth above, a defendant is required to foresee and anticipate what would normally happen, not what is remotely possible. Except for arguing that illegal entry into the country and driving without a driver's license establishes propensity to drive and drink, plaintiffs make no real effort to show a connection between the two. They do suggest a statistical correlation between unlicensed drivers and fatal accidents; they cite no case law, however, that shows that such evidence would be admissible, or sufficient, to establish that Rodriguez's unlicensed status caused any injury to plaintiffs in this case.

9     Although this case could have been resolved on Rule 12(b)(6) motions, this Court denied these defendants' earlier motions to dismiss, finding the matter more appropriately addressed in the context of the summary judgment motions.

10     There is also a suit pending in the Tennessee state courts with respect to the state law claims made by the plaintiffs in this case. That case, *Quade, et al v. Rodriguez, et al*, # 07CV626, was filed by the same plaintiffs against the same defendants and alleges civil conspiracy, negligence and/or recklessness, aiding and abetting tortious conduct and negligent entrustment. These state law causes of action are more suitable for resolution in state court.

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW

2008 WL 53689
Only the Westlaw citation is currently available.
United States District Court,
M.D. Tennessee,
Nashville Division.

**Nickles v. Law Offices of Donald D. Zuccarello**
United States District Court, M.D. Tennessee, Nashville Division. | Not Reported in F.Supp.2d | 2008 WL 53689 *(Approx. 5 pages)*

Samuel M. NICKLES and Barbara J. Nickles on behalf of Daniel Nickles
(Deceased), Plaintiffs,

v.

LAW OFFICES OF DONALD D. ZUCCARELLO, Defendant.

No. 3:06cv0702.
|
Jan. 2, 2008.

**Attorneys and Law Firms**

Robert J. Martin, Clarksville, TN, for Plaintiffs.

Darrell Gene Townsend, Howell & Fisher, Nashville, TN, for Defendant.

*MEMORANDUM OPINION*

THOMAS A. WISEMAN, JR., Senior District Judge.

*\*1* This civil action for legal malpractice is pending in this Court based on diversity jurisdiction. Presently pending is Defendant's Motion for Summary Judgment (Doc. No. 29), based on the arguments that (1) no legal act or omission of the defendant was the legal cause of any damages allegedly suffered by the plaintiffs and (2) plaintiffs' cause of action is barred by the one-year statute of limitations. Plaintiffs have filed their response in opposition to the motion and a memorandum of law in support of same. As explained below, the Court finds that there are no material issues of disputed fact, and the defendant is entitled to summary judgment in its favor on the basis that Plaintiffs are unable to present admissible evidence sufficient to support a verdict in their favor.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Beecham v. Henderson County*, 422 F.3d 372, 374 (6th Cir.2005). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is insufficient, however, simply to show "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In addition, "the mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**II. EVIDENTIARY ISSUES**

Plaintiffs Samuel and Barbara Nickles bring this suit on behalf of their son, Daniel Nickles (the "Decedent"), who passed away intestate on June 23, 2006 at the age of 29. Unfortunately for the Plaintiffs, the Federal Rules of Evidence bend only slightly in deference to death, and the Plaintiffs' inability to present the testimony of their deceased son poses a significant evidentiary hurdle for them. Specifically, of course, Rule 802 excludes hearsay except as otherwise permitted by the rules, and Rule 801 defines hearsay generally as an out-of-court statement offered to prove the truth of the matter asserted. The latter rule's elaboration on what is *not* considered hearsay does not apply here, nor do the exceptions set forth in Rule 803 have any relevance to this case. Rule 804 specifically applies to

**SELECTED TOPICS**

On Motion or Summary Proceeding

Corporation Summary Judgment Evidence

**Secondary Sources**

§ 330.  Weight and sufficiency

49 C.J.S. Judgments § 330

...In ruling on a motion for summary judgment, it is not the function of the trial court to assess the weight of the evidence or the credibility of witnesses. In determining a summary judgment motion, the...

**APPENDIX IV GUIDANCE AND TECHNICAL ASSISTANCE MANUALS**

ADA Compliance Guide Appendix IV

...Under the Americans with Disabilities Act of 1990 (the "ADA"), an employer may ask disability-related questions and require medical examinations of an applicant only after the applicant has been given ...

**APPENDIX II - FEDERAL REGULATIONS**

Guide to Good Clinical Prac. Appendix II

...(a) The regulations in this part set forth the criteria under which the agency considers electronic records, electronic signatures, and handwritten signatures executed to electronic records to be trust...

See More Secondary Sources

**Briefs**

**Initial Brief of Appellant Dionne Lee Civil Appeal**

2001 WL 34151836
Dionne LEE, Plaintiff-Appellant, v. DOW CHEMICAL COMPANY, et al., Defendants-Appellees.
United States Court of Appeals, Fifth Circuit
May 23, 2001

...This case will decide: 1) whether the requirements in Daubert are appropriate for this matter, 2) whether Doctors Thomas D. Cronin and Frank J. Gerow are defendants 3) whether Bristol is responsible fo...

**BRIEF OF AMICUS CURIAE SOCIETY FOR HUMAN RESOURCE MANAGEMENT IN SUPPORT OF RESPONDENT**

2000 WL 145448
Roger Reeves v. Sanderson Plumbing Products, Inc.; Society for Human Resource Management
Supreme Court of the United States
Feb. 07, 2000

...The Society for Human Resource Management ("SHRM"), the voice of human resource professionals for over 50 years, submits this brief in support of Respondent Sanderson Plumbing Products, Inc. SHRM repre...

**Appellant's Brief**

1990 WL 10084909
SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant, v. PAMALEE CHAMBERS, Appellee.
United States Court of Appeals, Fifth Circuit
Apr. 25, 1990

...Appellant respectfully requests oral argument on the issues raised in this case.

situations in which a declarant is unable to testify because of death, but is potentially relevant only insofar as it permits the admission of "former testimony" under circumstances in which the defendant had the opportunity to develop that testimony by direct or cross examination.

**\*2** In this case, the Plaintiffs offer several forms of hearsay evidence in support of their arguments, none of which is admissible under any of the above-referenced exceptions. In particular, Plaintiffs have come forward with a written "Statement" by the Decedent, addressed to his attorney, in which he claims: "I Mr. Daniel Lee Nickles do hear by testify that all the phone conversation, question's asked, and statements replied ... are a true an accurate account of what was asked, said, and responded to." (Doc. No. 42-12, at 1.) This Statement does not qualify as "former testimony" subject to direct or cross-examination by the Defendant and is therefore not admissible under Rule 804(b)(1). Plaintiffs also offer a letter or several letters purportedly written by Shannon Russell, a former colleague of the Decedent's. Mr. Russell has apparently not been located; for that reason he has not been deposed and is unavailable to testify at trial. His written statements, like the Decedent's, are inadmissible hearsay not subject to any exception. Finally, the Plaintiffs seek to admit into evidence hearsay in the form of statements allegedly made to them by their son prior to his death. These statements are likewise hearsay that is not subject to any exception.

The facts outlined below are considered in the light most favorable to the Plaintiffs, taking into account these evidentiary problems. Thus, only those facts that are truly undisputed or that are supported by admissible evidence in the record are included.

## II. FACTUAL BACKGROUND

The Nickles reside in Talladega, Alabama, as did their son prior to his untimely death.

Defendant Law Offices of Donald D. Zuccarello is located in Nashville, Tennessee and was retained in 2003 to represent the Decedent in a workers' compensation lawsuit against the Decedent's former employer, Food Lion. (9/26/2007 Affidavit of Donald D. Zuccarello (Doc. No. 32) ¶ 2.) The parties conducted discovery throughout 2003 and 2004, including the exchange of written interrogatories and the production of the Decedent's medical records. (*Id.* ¶ 3.) On March 18, 2005, attorney Donald Zuccarello sent a letter to the Decedent advising him that Food Lion had made a settlement offer that included: "\$75,000.00, closed future medical, your [Decedent's] resignation and release of all claims." (*Id.* ¶ 6 & Ex. A.) On April 29, 2005, while the workers' compensation suit was still pending, the Decedent advised Mr. Zuccarello that Food Lion had fired him. (*Id.* ¶ 7.)

Plaintiffs allege that the Decedent was discriminated against and ultimately fired by Food Lion in retaliation for his having filed a workers' compensation claim. In their answers to Interrogatories, however, Plaintiffs provided the name of Shannon Russell as the only person with knowledge concerning the alleged harassment and discrimination to which the Decedent was allegedly subjected while still employed by Food Lion. (Doc. No. 34-1, at ¶ 1.) Mr. Russell, as indicated above, has not been located and has not given his testimony in this case. Mr. Nickles and Mrs. Nickles both testified in their depositions that they had knowledge of the alleged harassment only through comments the Decedent had made to them, which are not admissible. (S. Nickles Dep. (Doc. No. 34-9) at 196:6-11; B. Nickles Dep. (Doc. No. 34-2) at 30:18-21.)

**\*3** A Benefit Review Conference, the purpose of which was to try to settle the Decedent's workers' compensation claim, was held on June 21, 2005. Attorney Delain Deatherage from the Law Offices of Donald D. Zuccarello attended on behalf of the Decedent. Decedent traveled from Talladega, Alabama to attend the Benefit Review Conference in Clarksville, Tennessee. (Affidavit of Delain Deatherage (Doc. No. 33) ¶ 2-3.) According to Ms. Deatherage, she told the Decedent at the outset of the Conference that she had been informed that all settlement offers from Food Lion were going to include closed medicals and the release of all claims. Having relayed that information, Ms. Deatherage advised the Decedent that he had the option of ending the settlement conference or proceeding with settlement negotiations. According to Ms. Deatherage, she answered any questions the Decedent posed to her regarding the terms of the settlement. The Decedent apparently elected to proceed with the settlement, and the case was settled that day for \$100,000, no future medicals, and a release of all claims, including any potential discrimination, retaliation or wrongful discharge claims. (*Id.* ¶ 4.)

On July 1, 2005, more than a week after the settlement conference, the Decedent signed a General Release that released Food Lion from any potential claims not related to his workers' compensation lawsuit. (Doc. No. 33, at ¶ 5 & Ex. A.) The first two paragraphs of the

The holding in Patterson v. McLean Credit Union., 491 U.S. 164, 105 L.Ed.2d 132, 109 S. Ct. 2363 (1989) bars Appellee's ...

See More Briefs

**Trial Court Documents**

**Medical Laboratory Management Consultants v. American Broadcasting Cos, Inc.**

1998 WL 35174273
MEDICAL LABORATORY MANAGEMENT CONSULTANTS d/b/a Consultants Medical Lab, et al., Plaintiffs, v. AMERICAN BROADCASTING COMPANIES, INC., et al., Defendants.
United States District Court, D. Arizona.
Dec. 23, 1998

...FN1. A cytotechnologist is a medical laboratory technologist who examines cells under a pathologist's supervision in order to diagnose cancer or other diseases. FN2. John and Carolyn Devaraj are Medica...

**Rev. Martin Fry v. Middletown Tp.**

2003 WL 26075058
REV. MARTIN FRY, v. MIDDLETOWN TOWNSHIP, et al.
United States District Court, E.D. Pennsylvania.
Mar. 12, 2003

...DATE: March 12, 2003 Now before me is Defendants' Motion for Summary Judgment. For the reasons that follow, this motion will be granted in part and denied in part. In this case, Reverend Martin Fry and...

**Ambrose v. Township of Robinson, PA**

2000 WL 35904886
Terry L. AMBROSE, Plaintiff, v. TOWNSHIP OF ROBINSON, PA, Defendant.
United States District Court, W.D. Pennsylvania.
Oct. 11, 2000

...AMBROSE, District Judge. Pending is Defendant's Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment due process claims and his First Amendment claims pursuant to 42 U.S.C. §1983, as well...

See More Trial Court Documents

General Release contain an elaborate and unmistakably clear release of all possible claims the Decedent might have had against Food Lion:

> That the undersigned, DANIEL NICKLES, being of lawful age, for and in consideration of Five Hundred and 00/100 Dollars ($100.00) [*sic* ] to the undersigned in hand paid, receipt whereof is hereby acknowledged, does hereby and for my executors, successors, heirs, administrators and all other persons ... acquire and forever discharge FOOD LION, LLC and RISK MANAGEMENT SERVICES, INC. and their agents, servants, parents, subsidiaries, successors, heirs, executors, administrators and all other persons, corporations, firms, associations or partnerships ("Releasees") of an from all claims, actions, causes of action, demands, rights damages, costs, expenses and compensation whatsoever, which the undersigned how has or which may hereafter accrue on account of or arising from the undersigned's employment with FOOD LION, LLC, including, but not limited to, any claim for retaliatory discharge and/or wrongful discharge; ... any claim arising under Title VII of the Civil Rights Act of 1964 ... and/or any applicable state fair employment practices statute including, but not limited to, the Tennessee Human Rights Act ...; any claim for intentional or negligent infliction of emotional distress or outrageous conduct; any claim for breach of duty, libel, slander or tortious conduct of any kind; any claim for interference with business relationships, contractual relationships or employment relationships of any kind; any claim for breach of duty, including, but not limited to, breach of any implied covenant of good faith and fair dealing; any claim for breach of contract ...; any claim for unemployment compensation; ... any claim for personal injury or property damage; any and all common law, statutory law, or regulatory claim which could have been brought based upon any local, state or federal law or regulation based upon his employment or lack of employment; any claim which could be enforced by any local, state, or federal agency, commission, or other governing body; and any other common law or statutory claim based upon federal or state law.

> *4 Without limiting the generality of the foregoing, DANIEL NICKLES acknowledges and covenants that, in consideration for the foregoing being paid or provided to him by Releasees, he has knowingly and voluntarily relinquished, waived and forever released any and all remedies which might otherwise be available to him including, without limitation, claims for contract or tort damages of any type, back pay, emotional distress or pain and suffering damages, punitive or exemplary damages, lost benefits of any kind, including, without limitation, ... unemployment benefits, recovery of attorneys' fees, costs, expenses of any kind, reinstatement to a position of employment or re-employment with FOOD LION, LLC....

(Doc. No. 33, Ex. A, at 1-2.) The release was executed by the Decedent and witnessed by his mother on July 1, 2005. (*Id.* at 3 .)

The Decedent, with his mother as witness, signed another General Release of Claims on July 18, 2005, which was identical to the first except that the second version corrected the error in the first sentence to make it clear that the consideration being paid was indeed $100.00 and not $500.00. In addition, where the figure "$100.00" was handwritten in two places in the original release, it was typed in the second version. (Doc. No. 33, Ex. B.) Mrs. Nickles testified that her signature appears on both forms but, because of a medical condition, she does not remember actually signing the forms. [1]

Mr. Nickles testified in his deposition that the Decedent called him at a break during the settlement conference in Clarksville and that the Decedent was "upset" and did not want to sign a release of all claims. (Doc. No. 34-8) at 158.) 156:10-15.) According to Mr. Nickles, he then spoke to the lawyer on the phone about the Release and was assured that the Release was solely about the Decedent's "get[ting] his money from workman's comp. He has to sign this to get his money." (*Id.* at 160:16-24; *see also id.* at 156:10-15.).) Based on his testimony, Mr. Nickles also apparently believed that his son signed the General Release of Claims the day of the Benefit Review Conference. (*Id.* at 183:21-24.) In an affidavit filed in opposition to the motion for summary judgment, Mr. Nickles claims he subsequently contacted the Defendant Law Office and was again told that the Decedent could still pursue a employment discrimination; he also claims neither he nor his son [2] understood that such a claim would be barred by the General Release. (Doc. No. 46, at ¶¶ 23, 25.)

In a separate proceeding, the settlement of the workers' compensation claim was approved by the Chancery Court for Robertson County, Tennessee on July 21, 2005.

Plaintiffs now allege that the Defendant was negligent and breached the applicable standard of care by (1) advising the Decedent to execute the settlement agreement in which he

waived his right to pursue any claims for employment discrimination against Food Lion; (2) failing to advise the Decedent to consult with an employment lawyer prior to executing the General Release of Claims and waiving his right to pursue employment discrimination claims against Food Lion; and (3) by advising the Decedent that it was necessary to execute the General Release of Claims in order to settle his workers' compensation claims. Plaintiffs aver that the Defendant's negligence caused the Decedent to be prohibited from pursuing a meritorious employment discrimination action against Food Lion. Plaintiffs further claim that they and the Decedent did not learn of the Defendant's negligence until speaking with attorney Robert Martin in September 2005.

*5 Along with their Response in Opposition to Summary Judgment, Plaintiffs have also filed affidavits by two local attorneys who assert that it was negligent for the Defendant not to advise the Decedent *not* to sign the General Release. (Doc. Nos. 44 and 45.)

Plaintiffs filed their Complaint on July 21, 2006. In its answer, the Defendant asserts, among other defenses, that Plaintiffs' claim must fail because they have no competent evidence that the Decedent would have prevailed in any employment discrimination/retaliation claim against Food Lion and because the Plaintiffs' claims are barred by the applicable statute of limitations. The Defendant now premises its motion for summary judgment on both those grounds.

### III. DISCUSSION
Defendant argues first that Plaintiffs lack proof that any act or admission on the Defendant's part proximately caused Daniel Nickles to suffer damages. Second, Defendant argues that Plaintiffs' claim is barred by the statute of limitations. Because the Court finds, as set forth below, that summary judgment is warranted on the first ground, the Court will not consider the application of the statute of limitations.

#### A. The Elements of a Malpractice Suit
To prove a cause of action for legal malpractice, the plaintiff must establish: (1) the attorney defendant owed a duty to the plaintiff; (2) the attorney breached that duty; (3) plaintiff suffered damages as a result of that breach; (4) the breach was the factual cause of the damages; and (5) the breach was the proximate, or legal, cause of the plaintiff's damages. *Shearon v. Seaman*, 198 S.W.3d 208, 214 (Tenn.Ct.App.2005). The plaintiff bears the burden of proving each element of the malpractice action. *Id.*

#### B. Plaintiffs' Inability to Prove Damages
"In order to prove damages in a legal malpractice action, a plaintiff must prove that he would have obtained relief in the underlying lawsuit, but for the attorney's malpractice; consequently, the trial of a legal malpractice claim becomes, in effect, a 'trial within a trial.' " *Id.* (quoting *Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn.2001)). Thus, the first issue presented by the Defendant's motion is whether the Plaintiffs can establish that, or at least create a genuine issue of fact as to whether the Decedent would have been entitled to relief if he had been able to assert a cause of action for retaliation, harassment or discrimination by Food Lion as a result of his having filed a workers' compensation claim. Given the unavailability of any direct testimony from the Decedent or his former colleague, Shannon Russell, Plaintiffs, unfortunately, are in the position of having no admissible evidence that Food Lion engaged in any discriminatory, harassing or retaliatory behavior that would subject it to liability. The only close call is presented by the Decedent's potential claim for retaliatory discharge for his having filed a workers' compensation claim. Even with respect to that cause of action, however, Plaintiffs have not presented sufficient evidence of each element of their *prima facie* case to warrant submitting the matter to a jury.

*6 Under Tennessee law, to establish a *prima facie* claim of workers' compensation retaliation, a plaintiff must show that: (1) he was an employee of the defendant at the time of his injury; (2) he made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated his employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate his employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn.1993). The burden of proof as to each of these elements rests upon the plaintiff. *Id.* The Tennessee Supreme Court has further stated that "[p]roof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury." *Id.* at 558-59. The plaintiff may establish causation "either by presenting direct evidence of the necessary causal link or by introducing compelling circumstantial evidence of such a link." *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn.Ct.App.1992).

In considering the type of circumstantial evidence that might establish causation, the Tennessee Court of Appeals has noted:

> In an effort to prove causation, a plaintiff can present circumstantial evidence in numerous forms, to include the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false. A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship. Moreover, an employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a *prima facie* case of retaliation.

*Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn.Ct.App.2006) (internal citations omitted). Only after the plaintiff has presented some proof of causation does the burden shift to the employer to show a legitimate, non-pretextual reason for the employee's discharge. *Anderson*, 857 S.W.2d at 559.

In the present case, the admissible evidence available to the Plaintiffs establishes that (1) the Decedent was employed by Food Lion at the time of his injuries; (2) he made a claim for workers' compensation benefits; and (3) his employment was terminated more than a year later, while his workers' compensation claim was still pending. However, Plaintiffs have not pointed to any admissible evidence of a causal relationship between the Decedent's workers' compensation claim and his termination, other than the mere fact that the employer obviously knew about the compensation claim. Although temporal proximity between the filing of a workers' compensation claim and the employee's termination is relevant to causation, it appears the Decedent was terminated more than a year, and possibly as much as two years, after he filed his workers' compensation claim. (*See* Doc. No. 32 (attorney affidavit indicating that suit was filed in 2003, but Decedent was not terminated until April 2005).) That length of time is likely not sufficiently "proximal" to be relevant to the issue of causation. Regardless, even if the fact that the workers' compensation lawsuit was still pending could be deemed to create temporal proximity, Tennessee courts have held that temporal proximity alone, without more, is not sufficient to give rise to an inference of a causal link. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn.1995) (holding that the employee's discharge three days after his return to work was insufficient to establish a causal connection between his assertion of a workers' compensation claim and his termination).[3]

*7 Because the admissible evidence in the record is insufficient to support the Decedent's potential claims against Food Lion for discrimination or retaliation, Plaintiffs cannot prove that the Decedent was damaged by his former attorney's alleged negligence in advising him to waive his potential claims. The Plaintiffs' malpractice action must therefore fail.

Because the Court has determined that summary judgment in favor of the Defendant is warranted on that ground, it has no need to reach the issue of whether the statute of limitations for the Plaintiffs' claim has expired.

**IV. CONCLUSION**

Because the Plaintiffs cannot establish that their Decedent was damaged by the Defendant Law Firm's alleged negligence, which is a necessary element of the Plaintiffs' legal malpractice claim, the Defendant is entitled to summary judgment in its favor. Defendant's motion will therefore be granted.

An appropriate Order will enter.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 53689

| Footnotes | |
| --- | --- |
| 1 | The Court observes that both Mrs. Nickles' and the Decedent's signatures vary substantially from the first document to the second. (*Compare* Doc. No. 34-4, at 4 *with* Doc. No. 34-4, at 8.) Mrs. Nickles testified that both appear to be her |

signature, and that she recognized her son's signature on the July 1 Release but could not be certain whether the signature on the July 18 Release was Decedent's. (B. Nickles Dep. (Doc. No. 34-3) at 42:20-23; 45:11-25.) Plaintiffs have not alleged that it is a forgery, however.

2        Mr. Nickles is obviously not competent to testify regarding what his son believed.

3        In their depositions, Plaintiffs claim the Decedent was terminated eleven hours before his 401(k) plan contribution from Food Lion would have vested. Plaintiffs, however, have not demonstrated any personal knowledge regarding that allegation, nor have they presented any documentary evidence to support that claim.

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.



WESTLAW

2015 WL 1622986
Only the Westlaw citation is currently available.
United States District Court,
W.D. Tennessee.

Pown v. Washington Mut. Bank, E.A.
United States District Court, W.D. Tennessee, Western Division Western Division Not Reported in F.Supp.3d 2015 WL 1622986 (Approx. 10 pages)

Gladdie B. **POWN**, Plaintiff,
v.

**WASHINGTON** MUTUAL BANK, E.A. and Caliber Home Loans,
Defendants.

No. 14–cv–02741–SHL–dkv.
|
Signed April 10, 2015.

**Attorneys and Law Firms**

Gladdie B. Pown, Memphis, TN, pro se.

Joseph B. Reafsnyder, Robert L. Crawford, Wyatt Tarrant & Combs, LLP, Kavita Goswamy
Shelat, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendants.

**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

SHERYL H. LIPMAN, District Judge.

*\*1* Before the Court is the Magistrate Judge's "Report and Recommendation on Defendants'
Motions to Dismiss" (the "Report and Recommendation"), which was filed on February 18,
2014. (*See* ECF No. 21.) Plaintiff filed a timely objection to the Report and Recommendation
as well as a "Motion to Dismiss Defendants [*sic*] Motions to Dismiss" on February 25, 2015.
(*See* ECF Nos. 22, 23 .) The Court construes Plaintiff's "Motion to Dismiss" as her response
to Defendant Washington Mutual Bank's Motion to Dismiss; Plaintiff filed this response eight
days after the deadline and has not provided any explanation for this delay. Despite this
failure, the Court has reviewed the arguments in this motion and taken them into account in
light of the Report and Recommendation.

The Magistrate Judge recommended granting Defendants' Motions to Dismiss, and Plaintiff
objects to this recommendation. District courts must conduct a *de novo* review of the parts of
a magistrate judge's report and recommendation to which a party objects. *See* 28 U.S.C. §
636(b)(1). However, after conducting a *de novo* review, a district court is not required to
articulate all of the reasons it rejects a party's objections. *Tuggle v. Seabold*, 806 F.2d 87, 92
(6th Cir.1986). This Court has conducted a *de novo* review by reviewing the record before
the Magistrate Judge in light of Plaintiff's objections and hereby ADOPTS the Report and
Recommendation in its entirety. Plaintiff's objections to the Report and Recommendation
repeat the words of the statutes at issue here, but do not provide adequate allegations or
arguments to establish a cognizable claim. Defendants' Motions to Dismiss are GRANTED
and this case is hereby DISMISSED.

**IT IS SO ORDERED.**

REPORT AND RECOMMENDATION ON CALIBER HOME LOANS AND WASHINGTON
MUTUAL BANK'S MOTIONS TO DISMISS and REPORT AND RECOMMENDATION FOR
*SUA SPONTE* DISMISSAL OF POWN'S CLAIMS AGAINST BROCK & SCOTT, PPLC

DIANE K. VESCOVO, United States Magistrate Judge.

On September 22, 2014, the plaintiff, Gladdie B. **Pown** ("**Pown**"), filed a *pro se* complaint
against **Washington** Mutual Bank, F.A. ("Washington Mutual") and Caliber Homes Loans
("Caliber"), (ECF No. 1), accompanied by a motion seeking leave to proceed *in forma*

**SELECTED** TOPICS

United States Magistrates

Review and Supervision by District Court
District Judge Review Magistrate

**Secondary Sources**

**Effect of party's failure to file timely
objections, under 28 U.S.C.A. sec. 636
(b)(1), to magistrate's findings or
recommendations on right of review in
appellate court**
80 A.L.R. Fed. 921 (Originally published in
1986)

...This annotation collects and analyzes the
federal cases in which the courts have
discussed or decided whether, or under what
circumstances, a party's right to appeal to the
appellate court is affected ...

**s 3070.1. Practice and Procedure
with Regard to Dispositive Motions-
Manner and Effect of Objections to the
Magistrate Judge's Recommendations**
12 Fed. Prac. & Proc. Civ. § 3070.1 (2d ed.)

...Rule 72(b)(2) sets forth procedures to be
followed by parties who object to the
magistrate judge's recommendations and by
the district judge to whom the case is
assigned. It adapts the analogous provis...

**s 145. Objections to reports and
recommendations**
32 Am. Jur. 2d Federal Courts § 145

...Within 10 days after being served with a
copy of a magistrate judge's recommended
disposition of a matter referred to the
magistrate judge, a party may serve and file
specific, written objections to th...

See More Secondary Sources

**Briefs**

**Final Reply Brief of Plaintiff-Appellant**

2001 WL 36087292
WMA SECURITIES, INC., Plaintiff-Appellant,
v. Dean WYNN, Margaret Wynn and Quentin
Fields, Defendants-Appellees.
United States Court of Appeals, Sixth Circuit.
Mar. 12, 2001

...There were several prejudicial procedural
errors in the District Court that denied WMAS
a fair hearing. Each is an independent basis
justifying remand. First, there was no de novo
review. The District ...

**Petition for Writ of Certiorari**

2009 WL 1914938
Steven GREEN, et al., Petitioners, v.
JEFFERSON COUNTY COMMISSION and
The General Retirement System for
Employees of Jefferson County, Alabama
Respondents.
Supreme Court of the United States
June 29, 2009

...Steven Green, Mark Persall, Charles
Horton, James Phillips, Cassie Bell, Sherry J.
Amick, William V. Arnold, Lynn G. Baswell,
Phillip A. Bailey, Samuel R. Beard, Fred M.
Berry, Frieda Bland, Dennis Bla...

**Petitioners' Brief**

2002 WL 31886844
Joseph C. Roell, Petra Garibay, James
Reagan v. Jon Michael Withrow

*pauperis,* (ECF No. 2). The case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013–05, Apr. 29, 2013.) On November 17, 2014, the court granted Pown leave to proceed *in forma pauperis* and ordered summons issued on Caliber and Washington Mutual. (ECF No. 10 .)

On December 2, 2014, Pown filed an amended complaint as a matter of course pursuant to Fed.R.Civ.P. 15(a)(1)(A), in which she added Brock & Scott, PLLC ("Brock & Scott") as a defendant. (ECF No. 13.) This report and recommendation will constitute the court's screening under 28 U.S.C. § 1915(e)(2) of Pown's claims against Brock & Scott.[1] Also before the court are the motions to dismiss for failure to state a claim filed by Caliber, (ECF No. 14), and **Washington** Mutual,[2] (ECF No. 20). **Pown** responded to Caliber's motion to dismiss on January 12, 2015. (ECF No. 17.)[3] **Pown** has failed to respond to **Washington** Mutual's motion to dismiss, and the time for response has expired.

**\*2** For the reasons that follow, the court recommends that Pown's complaint be dismissed as to all defendants for failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction.

### I. PROPOSED FINDINGS OF FACT

Pown's original nineteen-page complaint is entitled "Petition to Set Aside and Void Foreclosure Claim, Cancel Note and Mortgage, Claim in Recoupment, Quiet Title, and for Declaratory and Injunctive Relief." (Compl., ECF No. 1.) While the complaint seemingly involves an attempt to avoid the foreclosure sale of the property at 1776 Nellie Road, Memphis, Tennessee, 38116, it also includes sweeping allegations regarding the entire lending industry. The amended complaint contains references to a loan transaction and a Deed of Trust, which seem to be the impetus for Pown's vaguely-stated claims. The court will consider the public records of the Shelby County Register and the attachments to the defendants' motions to dismiss to piece together the factual backbone of Pown's complaint.[4]

On November 20, 2006, **Pown** executed a Deed of Trust in favor of lender **Washington** Mutual which secured the repayment of a $70,000 loan. (Deed of Trust, ECF No. 14–2.)[5] Under the Deed of Trust, Pown irrevocably granted and conveyed to the Trustee the real property located at 1776 Nellie Road, Memphis, Tennessee, 38116 ("the Property"). (*Id.* at 4.) On the same day, Pown entered into a Promissory Note in the principal amount of $70,000 payable to Washington Mutual. (ECF No. 20–7.) The Deed of Trust provides that "[t] he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (Deed of Trust 15, ECF No. 14–2.) On February 12, 2013, the "Federal Deposit insurance Corporation, as receiver for Washington Mutual" executed a "Corporate Assignment of Deed of Trust" to JPMorgan Chase Bank, National Association ("JPMorgan") and its successors or assigns. (ECF No. 14–3.)[6] On July 1, 2013, JPMorgan executed an Assignment of Deed of Trust to Caliber. (ECF No. 14–4.)[7]

Pown alleges that she made regular monthly payments from September 2000 through February 2014. (Am.Compl.¶ 10(c), ECF No. 13.) According to the amended complaint, either in August or September of 2014, Pown received a notice of default and intent to foreclose. (*Id.* ¶¶ 10(e), 11.) Despite being in default, in March 10, 2014, Pown executed a Quit Claim Deed conveying to C.C. Foley Family Land Trust all of the "rights, title, and interest" in the Property. (ECF No. 20–9.)[8] Subsequently, on September 30, 2014, eight days after the filing of the instant suit, Pown again transferred her rights in the Property to the "Consulate of Moorish Xi Anu of Chakchiuma." (ECF No. 20–11.)[9]

Based on these transactions, Pown alleges the following causes of action: (1) Violation of the Uniform Commercial Code, Uniform Foreign Money Claims Act, Uniform Judicial Code; (2) "Cause of Action to Set Aside Foreclosure Claim;" (3) Failure of Consideration; (4) Usury; (5) Breach of Contract; (6) Ultra Vires; (7) Indefiniteness of Contract; (8) Unconscionability; (9) Fraud; (10) Cancellation of Promissory Note; (11) "Cause of Action Following Trust Property Into Its Product Against Trustee;" (12) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (13) "Allegations of Criminal Wrongdoing;" and (14) "Cause of Action Involving Federal Officials." (Am. Compl., ECF No. 13.)

### II. PROPOSED CONCLUSIONS OF LAW

*A. Subject–Matter Jurisdiction*
**\*3** As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action. Pursuant to Rule 8(a)(1) of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the

Supreme Court of the United States
Dec. 19, 2002

...FN1. References to documents that are in the Fifth Circuit record, but not included in the Joint Appendix or Appendix to the Petition for Writ of Certiorari, will be designated "R.[page #]." This case ...

See More Briefs

**Trial Court Documents**

**DeMoss v. Dillard's, Inc.**

2009 WL 7014934
Robert H. DeMOSS, Jr., by the conservator of his person and property, Catherine Robette Campbell, Plaintiffs, v. DILLARD'S, INC., Dillard Tennessee Operating Limited Partnership, Construction Developers, Incorporated, John Mitchell, William Horn, Davis Street Land Company of Tennessee, LLC., Robert William Tice, JR., Brittney Banister, Johnathon Harris, and Catherine Dale Mills, Defendants.
Circuit Court of Tennessee.
Dec. 29, 2009

...This is an action which was originally filed in the Circuit Court for Davidson County, Tennessee and removed by Defendants to this Court based upon diversity of citizenship. Subsequently, Plaintiffs fi...

**U.S. of America v. Rosdatter**

2011 WL 8998861
UNITED STATES OF AMERICA, v. Paula ROSDATTER.
United States District Court, E.D. Tennessee.
Sep. 22, 2011

...THE DEFENDANT: pleaded guilty to count (s) _ pleaded nolo contendere to count(s) _ which was accepted by the court. X was found guilty on count(s) Sole count of Information after a plea of not guilty....

**U.S. of America v. Duvall**

2011 WL 8998860
UNITED STATES OF AMERICA, v. Dennis DUVALL.
United States District Court, E.D. Tennessee.
Sep. 22, 2011

...THE DEFENDANT: pleaded guilty to count (s) _ pleaded nolo contendere to count(s) _ which was accepted by the court. X was found guilty on count(s) Sole count of Information after a plea of not guilty....

See More Trial Court Documents

grounds for the court's jurisdiction." Pown's amended complaint sets forth no plausible grounds to invoke this court's jurisdiction, (see Am. Compl. ¶ 1–2, ECF No. 13), nevertheless, the court will consider the complaint as a whole to determine whether it has jurisdiction over this case.

Federal courts are courts of limited jurisdiction and, as a result, " '[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.' " *Farmer v. Fisher,* 386 F. App'x 554, 556 (6th Cir.2010)(quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." A federal court has jurisdiction under § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 89 (2005) (citations omitted).

Pown requests damages "in the amount of $70,000 plus interest, plus three times punitive damages," thus, satisfying her burden of pleading the amount in controversy. (*See* Am. Compl. ¶ 92, ECF No. 13.) However, Pown's amended complaint states that both Pown and defendant Brock & Scott are residents of Tennessee, (*Id.* ¶ 8), therefore, Pown has failed to plead complete diversity and the court does not have diversity jurisdiction over this case.

According to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A thorough examination of Pown's amended complaint reveals that Pown asserts two causes of action under federal law: (1) a cause of action against all defendants under RICO, 18 U.S.C. §§ 1961 *et seq.,* and (2) a cause of action against Brock & Scott under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Am.Compl.¶¶ 44, 67–73, 12(g), ECF No. 13). This is sufficient to confer federal-question jurisdiction on the court.

### B. *Standing*

28 U.S.C. § 1654 provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." The federal courts have long held that Section 1654 preserves a party's right to proceed *pro se,* but only on her own claims; only a licensed attorney may represent other persons. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (6th Cir.1969). The Sixth Circuit considers this issue one of lack of standing. *See Oliver v. Pogats,* No. 91–1717, 1992 WL 76951, at *1 (6th Cir. Apr. 13, 1992). Lack of standing implicates the case-or-controversy requirement of Article III, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992), and, therefore, is a threshold issue in every federal case. *See Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio,* 503 F.3d 456, 469–70 (6th Cir.2007).

**\*4** In the caption of her amended complaint, Pown identifies the petitioner as "Gladdie B Pown estate Living Beneficiary Gladdie B Pown." (Am. Compl. 1, ECF No. 17.) Further, in the amended complaint, Pown states that she is suing as "an agent for Gladdie B Pown corporate entity defined as a United States Vessel." (*Id.*) Pown also requests that the court "issue an Order Quieting Title in favor of 'C.C. Foley Family Land Trust.' " (*Id.* ¶ 85.) Lastly, throughout the amended complaint, Pown purports to assert claims on behalf of "the people of Shelby County and the State of Tennessee." (*Id.* ¶ 97.) Pown cannot represent interests other than her own, therefore, Pown does not have standing to sue on behalf of the "Gladdie B Pown corporate entity," the C.C. Foley Family Land Trust, the people of Tennessee, or the "Gladdie B Pown estate." *See Shepherd v. Wellman,* 313 F.3d 963, 970 (6th Cir.2002)("[A]n administratrix or executrix of an estate may not proceed *pro se* when the estate has beneficiaries and creditors other than the litigant." (citation and internal quotation marks omitted)). Pown may only proceed *pro se* on her own interests, and therefore, the court will only consider the claims that Pown asserts on her own behalf.

### C. *Standard of Review for Failure to State a Claim*

In assessing whether Pown's complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal,* 556 U.S. 662, 677–79 (2009) and in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007). To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly,* a complaint must " 'contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir.2009)(quoting *Iqbal,* 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as

true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 611 (6th Cir.2012). However, "pleadings that ... are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679; *see also Twombly,* 550 U.S. at 555 n. 3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams,* 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.1989); *see also Brown v. Matauszak,* 415 F. App'x 608, 613 (6th Cir.2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); *Payne v. Sec'y of Treas.,* 73 F. App'x 836, 837 (6th Cir.2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed.R.Civ.P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford,* 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson,* 423 F. App'x 506, 510 (6th Cir.2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

D. *Pown's RICO Claim Against All Defendants*
**\*5** Pown alleges the following in support of her RICO claim:

> [The] Defendants regularly engage in cooperative efforts to deprive the public
> of property and cash under an elaborate scheme or artifice where the
> unaware public unknowingly enters into contracts under fraudulent terms
> wherein they are systematically loaned credit when they were led to believe
> that they were being loaned real money, and are thereby placed into
> peonage and usury due to a lack of consideration by the mortgage company.

(Am. Compl. ¶ 70, ECF No. 13.) Further, Pown alleges that the defendants engage in a scheme to deceive the public "into gifting their property away under the conveyance and security instruments including a Mortgage, the nature of which was not fully disclosed, which in turn precluded [Pown] from appreciating the essential elements of the undertaking." (*Id.* ¶¶ 71–73.) In her amended complaint, Pown specifically lists the following RICO provisions that the defendants allegedly violated: 18 U.S.C. §§ 1961, 1962, 1964. (*Id.* ¶ 44.)

18 U.S.C. § 1964(c) authorizes civil suits for a violation of 18 U.S.C. § 1962. It provides, in pertinent part, that:

> Any person injured in his business or property by reason of a violation of
> section 1962 of this chapter may sue therefor in any appropriate United
> States district court....

18 U.S.C. § 1964(c). To establish a violation of Section 1962,[10] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696, 699 (6th Cir.2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).

1. *Underlying Predicate Offenses*
RICO defines racketeering activity to include any act that is indictable under the predicate offenses listed in Title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341. 18 U.S.C. § 1961. "A civil Rico action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be indictable. Thus, the plaintiff must prove each prong of the predicate offense, or 'racketeering activity,' to maintain a civil action under the RICO statute." *Cent. Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 183–84 (6th Cir.1993) (internal citations omitted), *vacated on other grounds by Bridge v. Phoenix Bond & Indem.*

*Co.*, 553 U.S. 639 (2008). To survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. *Cent. Distribs.*, 5 F.3d at 183–84.

Pown does not specify the predicate offenses upon which she relies to establish racketeering activity by the defendants. Although Pown purports to state a general claim for fraud, her allegations are not sufficient to state any of the predicate offenses of wire or mail fraud. Elements of mail or wire fraud are: (1) scheme or artifice to defraud; (2) use of United States mail or wire or causing the use of such mail in furtherance of scheme; (3) and specific intent to deceive or defraud. *Cent. Distribs.*, 5 F.3d at 184.

**\*6** A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 356 n. 4 (6th Cir.2008); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152–53 (6th Cir.1987); *Flores v. Emerich & Fike*, 416 F.Supp.2d 885, 911 (E.D.Cal.2006). Rule 9 requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9. "The Plaintiff[ ] must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b)." *Masterson v. Meade Cnty. Fiscal Court*, 489 F.Supp.2d 740, 749 (W.D.Ky.2007)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent representation "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir.2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D.Ohio 1998)). A plaintiff must, "[a]t a minimum, ... allege the time, place and contents of the misrepresentations." *Id.* (citing *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984)). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir.2001).

In her amended complaint, Pown fails to identify the date and subject of any transaction by mail or wire by the defendants that was allegedly fraudulent or that constituted mortgage fraud. Pown merely alleges that the defendants "represented that they were going to fund the loan," but that they did not in fact loan money to Pown. (Am. Compl. ¶ 61, ECF No. 13.) Even construing the complaint liberally, this allegation is clearly contrary to public records on file with the Register of Deeds of Shelby County, which confirm that Pown received a loan from the defendants secured by a deed of trust on the Property. Similarly, Pown's remaining allegations that the defendants deceived her by leading her to believe she was being loaned real money instead of credit and that she was deceived into gifting her property, (*Id.* ¶¶ 70 –72), are simply frivolous and contrary to public records. Pown cannot maintain a civil RICO claim against the defendants absent evidence that the defendants made material misrepresentations to Pown with the intent to defraud her. Accordingly, Pown has not plead two or more predicate offenses based on fraud with the particularity required by Rule 9.

### 2. *Existence of an Enterprise*
In addition, Pown does not even plead the existence of an enterprise between the defendants, the second element of a RICO cause of action. To establish the existence of an "enterprise" Pown must show (1) that a group of persons formed "an ongoing organization with a framework or superstructure for making and carrying decisions;" (2) that they functioned as a continuing unit; and (3) that the organization "was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir.2012) (citation omitted).

**\*7** The complaint contains no factual allegations from which the court can conclude that the defendants formed any type of association which functioned as a continuing unit. Pown's complaint contains nothing but conspiracy-style accusations regarding the defendants and other banking corporations, financial, political, and real estate institutions, which she likens to "Nazi Germany [and the] Soviet Union." (Am. Compl. ¶ 68, ECF No. 13.) Pown's allegations are far from plausible and they are insufficient to allege a "certain amount of organizational structure," that functions with a "common purpose." *See Ouwinga*, 694 F.3d at 794 (citations omitted)("An association-in-fact enterprise require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." (citation and internal quotation marks omitted).

### 3. *Damages Resulting from a Pattern of Racketeering Activity*

Pown has failed to allege what injury she suffered due to the defendants' alleged RICO violation. In her amended complaint, Pown states that she received a notice of default and intent to foreclose. (Am.Compl.¶¶ 10(e), 11.) However, Pown has not alleged that a foreclosure took place. Further, according to the property records of the Register of Deeds, Pown no longer owns the Property, having transferred the Property to the C.C. Foley Family Land Trust by Quit Claim deed, dated March 10, 2014.

Pown's amended complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no legal or factual allegations of an enterprise or of a pattern of racketeering activity. Pown pleads no facts that would support a claim for two or more predicate offenses. Nor does the complaint contain any factual allegations of any damages suffered by Pown as a result of a pattern of racketeering activity. Accordingly, Pown's amended complaint fails to state a RICO claim.

*E. Pown's FDCPA Claim Against Brock & Scott*
In her amended complaint, Pown alleges that Brock & Scott violated the FDCPA by "performing the duties of a debt collector ... [while] not authorized to collect a debt. (Am.Compl.¶ 12(g), ECF No. 13.) Superficially, Brock & Scott violated the FDCPA by "sending mail matter to petitioner threatening, intimidating her to get out of her home, and that after numerous mailings to the enterprise, they refused to hear, acknowledge, correspond and contact [Pown] other than words to steal, take her property without cause." (*Id.*)

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To be held liable under the FDCPA, a defendant must be a "debt collector" within its meaning. The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (4), (6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). When collecting a debt, a debt collector may not: (1) "harass, oppress, or abuse any person," 15 U.S.C. § 1692d; (2) use any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e; or (3) "use [ ] unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692d.

*8 Pown's amended complaint is devoid of any facts in support of a plausible claim under the FDCPA. As an initial matter, it is unclear who Brock & Scott is and what communication it has exchanged with Pown. In the amended complaint, **Pown** alludes to a connection between Brock & Scott and **Washington** Mutual, (*see* Am. Compl. ¶¶ 12(f), 43); however, this is insufficient to plausibly allege that Brock & Scott is a "debt collector" within the meaning of the FDCPA. Further, it is unclear whether any debt was in default at the time Brock & Scott allegedly attempted to collect it on behalf of **Washington Mutual**. **Pown** alleges that the she received a notice of default either in August or September of 2014, (*Id.* ¶¶ 10(e), 11), however, Washington Mutual assigned the Deed of Trust to JPMorgan on February 12, 2013, (ECF No. 14–3). Lastly, Pown merely claims, without elaborating, that Brock & Scott sent her threatening and intimidating mail, but she does not attach any of the letters allegedly sent by Brock & Scott. Pown's blanket allegations are unsupported by facts or documentation to show how Brock & Scott has violated the FDCPA. *See* 15 U.S.C. § 1692d. Accordingly, the court recommends that Pown's claims against Brock & Scott be dismissed *sua sponte* for failure to state a claim upon which relief may be granted.[11]

*F. Pown's State–Law Claims*
In addition to her claims under RICO and FDCPA, Pown also alleges an array of state-law claims, which, from a cursory reading, suffer from the same factual and legal infirmities. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that " '[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well.' " *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir.2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir.2003)).

The court only has original federal-question jurisdiction over Pown's RICO and FDCPA claims because Pown has not met her burden of pleading diversity jurisdiction. *See supra* Part II.A. Because the court dismissed Pown's RICO and FDCPA claims, the court should decline to exercise supplemental jurisdiction over Pown's state-law claims. Accordingly, the

court recommends that Pown's state-law claims against the defendants be dismissed for lack of subject-matter jurisdiction.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Caliber and **Washington** Mutual's motions to dismiss be granted, and that **Pown's** claims against these defendants be dismissed for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction. It is also recommended that Pown's claims against Brock & Scott be dismissed *sua sponte* for failure to state a claim upon which relief may be granted and lack of subject-matter jurisdiction.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 1622986

| Footnotes |
|---|

1    Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action—

   (i) is frivolous or malicious;

   (ii) fails to state a claim on which relief may be granted; or

   (iii) seeks monetary relief against a defendant who is immune from such relief.

   28 U.S.C. § 1915(e)(2).

2    The motion to dismiss is filed by JPMorgan, as successor in interest of **Washington** Mutual.

3    **Pown** titled her pleading in opposition to Caliber's motion to dismiss as "Motion to Dismiss Defendant's Motions to Dismiss & Memorandum." (*See* ECF No. 14.) The court will construe this motion as Pown's response to Caliber's motion to dismiss.

4    The court may consider " 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,' " without converting the motion to one for summary judgment. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)(quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir.2011)(quoting *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008). The court may also consider "documents that a defendant attaches to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to her claim." *Amini*, 259 F.3d at 502 (internal quotations and citations omitted).

5    This Deed of Trust is recorded with the Shelby County Register as Instrument No. 06202642.

6    The Corporate Assignment of Deed of Trust is recorded with the Shelby County Register as Instrument No. 13021982.

7    The Assignment of Deed of Trust from JPMorgan to Caliber is recorded with the Shelby County Register as Instrument No. 13109250.

8    The Quit Claim Deed is recorded with the Shelby County Register as Instrument No. 14027042.

9    The "Transfer Statement" is recorded with the Shelby County Register as Instrument No. 14100229.

10    18 U.S.C. § 1962(c) provides:

   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

11   Pown further alleges that Brock & Scott violated an array of federal laws:

[E]xtortion of 18 USC 871 [injured in her property & business monopolizing the procedure of the law taking property away]; deprivation of Rights of 18 USC 242; intent of commanding to commit crime of violence of 18 USC 373; principal of 18 USC 2–Brock & Scott accessory of 18 USC 3; Brock & Scott attempted theft of property of 18 USC 1201; Brock & Scott treasonous acts of 18 USC 2381; stole property of Rights—8 USC 1503(a), ability to contract renting property with citizens to obtain a place to live; by injuring petitioner in her business. Violating the Sherman Anti Trust Act inter alia in seditious conspiracy of 18 USC 2311; levied war and monopolized the procedure use of the law by security deed/mortgage/deed of trust without the "promissory note" attached....

(Am.Compl.¶ 12(f), ECF No. 13.) The court finds that these are frivolous blanket accusations with a blatant lack of factual or legal support.

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

