# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | |
|---|---|
| JOHN ANTHONY GENTRY, sui juris/pro se    ) | |
|                              ) | |
|       Plaintiff                    ) | |
|                              ) | CASE NO. 3:17-cv-00020 |
|           vs.                 ) | |
|                              ) | |
| THE STATE OF TENNESSEE;        ) | |
| PAMELA ANDERSON TAYLOR;    ) | |
| BRENTON HALL LANKFORD;      ) | JURY TRIAL DEMANDED(12) |
| SARAH RICHTER PERKY;          ) | |
| UNNAMED LIABILITY INSURANCE  ) | |
| CARRIER(S)                         ) | |
|                              ) | |
|       Defendants              ) | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT SARAH RICHTER PERKY'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

---

Comes now, Plaintiff John Anthony Gentry, and submits this Response and Incorporated Memorandum of Law proving that Defendant's Motion to Dismiss should be denied with prejudice, and state as follows.

## Table of Contents

INTRODUCTION..................................................................................................................3

PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT vs. PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT ...............................................................................................5

ARGUMENTS .....................................................................................................................5

    STATUTE OF LIMITATIONS NOT EXPIRED ..........................................................................5

    PLAINTIFF PLAINLY STATED CAUSATION AND DAMAGE CAUSING HIM HARM .....................10

    PLAINTIFF PROPERLY STATED A CLAIM PURSUANT TO U.S.C. 42 § 1983 ...............................11

    DEFENDANT SARAH RICHTER PERKY'S ACTIONS CAUSED PLAINTIFF DAMAGES...................17

1

PLAINTIFF'S CLAIM THAT DEFENDANT VIOLATED § 1985 IS A VALID CLAIM ..........................................17

PLAINTIFF PROPERLY STATED A RICO CLAIM PURSUANT TO 18 U.S.C § 1962 ACTIONABLE BY CIVIL ACTION UNDER 18 U.S.C § 1964 ...................................................................................................19

PREDICATE ACTS CONSTITUTING RACKETEERING ACTIVITES ARE PLAINLY ESTABLISHED BY PLAINTIFF ....................................................................................................................................................22

CONTINUED CRIMINAL ACTIVITY IS A CERTANITY.................................................................................25

EVIDENCE OF A CRIMINAL ENTERPRISE IS OBVIOUS.............................................................................26

VIOLATIONS OF 18 U.S.C. § 1341, 18 U.S.C. § 1951 AND 1952 ARE VALID CLAIMS UPON WHICH RELIEF IS REQUIRED GRANTED ...............................................................................................................26

PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 1512 DOES NOT FAIL AS A MATTER OF LAW ....................................................................................................................................................27

PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 1346 IS A VALID CLAIM UPON WHICH RELIEF IS REQUIRED GRANTED ...........................................................................................................27

PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 2 (A)(B) IS A VALID CLAIM UPON WHICH RELIEF IS REQUIRED GRANTED..............................................................................................................30

**Cases**

Adickes v. S. H. Kress & Co., 398 U. S. 144, 152 (1970).............................................................. 12
Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 US 143 - Supreme Court 1987 (at 147)..................................................................................................................................... 6, 10
Angelico v. Lehigh Valley Hospital, 184 F.3d 268, 278 (3rd Cir. 1999) ................................. 15, 16
Barnard v. Young, 720 F. 2d 1188 - Court of Appeals, 10th Circuit 1983 ................................. 15
Central Bank of Denver v. First Interstate Bank of Denver, 144 S.Ct. 1439 (1994)..................... 30
Cort v. Ash, 422 US 66 – Sup. Ct. (1975) ...................................................................................... 28
DelCostello v. Teamsters, 462 US 151 - Supreme Court 1983 ......................................................... 7
Dominguez v. Corr. Med. Servs., 555F3d 543, 549 (6th Cir. 2009) ............................................. 11
Estelle v. Gamble, 429 U. S. 97 (1976) ........................................................................................ 13
Hahn v. Star Bank, 190 F. 3d 708 (6th Cir. 1999)......................................................................... 15
Lugar v. Edmondson Oil Co., 457 U. S., at 936, n. 18. (at 50)...................................................... 12
Lugar v. Edmondson Oil Co., 457 U. S., at 937 ............................................................................ 13
own v. Wash. Mutual Bank, 2015 U.S. Dist LEXIS 48170 (WD Tenn. 2015)............................ 19
Parratt v. Taylor, 451 U. S., at 535-536......................................................................................... 12
Polk County, 454 U. S., at 320. (at 51)........................................................................................... 12
RJ Prod. Co. v. Nestle USA, Inc., 2010 WL 1506914, fn. 1 (D.D.C. 2010) ................................ 27
RJ Prod. Co. v. Nestle USA, Inc., No. 10-0584, 2010 WL 1506914, at *2 n.1 (D.D.C. 2010) ... 28
Santa Fe Industries, Inc. v. Green, 430 U. S. 462 (1977)............................................................. 31
Sedima, SP RL v. Imrex Co., 473 US 479 - Supreme Court (1985) ............................... 22, 23, 28
Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006) ............................................ 11
Tani v. FPL/Next Era Energy, 811 F. Supp. 2d 1004 - Dist. Court, D. Delaware (2011)............ 27
Timson v. Weiner, 395 F.Supp. 1344 (S.D.Ohio 1975) ................................................................. 15
United States v. Classic, 313 U. S., at 326..................................................................................... 13
West v. Atkins 487 U.S. 42, 48 108 S.Ct. 2250 101 L.Ed.2d 40 (1988)....................................... 11
West Virginia Univ. Hospitals, Inc. v. Casey, 499 US 83 – S.Ct. (1991) ..................................... 29

2

Youngberg v. Romeo, 457 U. S. 307, 322-323, and n. 30 (1982) ............................................... 13

**Statutes**
18 U.S. C. § 1962 ................................................................................................................. 20
18 U.S.C. § 1341, 1951 and 1952 ...................................................................................... 26, 27
18 U.S.C. § 1961 .......................................................................................................... 27, 28, 29
18 U.S.C. § 1962 ................................................................................................................. 20
Tenn. Code Ann. § 28-3-104 (c)(1) ...................................................................................... 5
Tenn. Code Ann. § 39-12-201 ............................................................................................... 7
Tenn. Code Ann. § 39-12-206 ........................................................................................... 7, 9

**Rules**
Fed. R. Civ. P. Rule 12 ........................................................................................................ 18
Fed. R. Civ. P. Rule 8 .......................................................................................................... 17

**Constitutional Provisions**
Amendment XIV § 1, U.S. Constitution ............................................................................... 6

## INTRODUCTION

Defendant SARAH RICHTER PERKY has erroneously moved this Court to Dismiss Plaintiff's Second Amended Complaint based on the false and failed defenses of: (1) Lack of Federal Claim, and (2) Lack of Subject Matter Jurisdiction. Defendant further falsely asserts Plaintiff's claim against Defendant SARAH RICHTER PERKY is: (1) one of malpractice, (2) barred by statute of limitations, (3) lacks causation and damage, and (4) that Plaintiff failed to state a claim under 42 U.S.C. §§ 1983, 1985, 18 U.S.C. §2, §§ 1341, 1346, 1951, and 1952 which are plainly and very obviously false and failed defenses which Plaintiff will prove with undeniable supporting authorities.

In making these false and failed defenses, Defendant effectively ignores the facts, which this Court is required to accept as true. In support of Defendant's arguments to dismiss, Defendant misrepresents opinions of other and higher Courts, ignores or perhaps does not know federal law, and intentionally attempts to mislead this court with false and failed arguments, and obfuscation of pertinent sections of federal law.

3

Defendant falsely states that Plaintiff's Complaint includes allegations that Plaintiff has been "treated unfairly" in various divorce proceedings. This is a patently false statement. Plaintiff's Complaint is about repeated and gross violations by Defendant of Plaintiff's constitutionally guaranteed rights, and Defendant's numerous violations of federal law that caused Plaintiff harm. Plaintiff's Second Amended Complaint could not be more clear in this regard.

Defendant in as much admits her guilt, in stating Plaintiff's Complaint is one of legal malpractice. However, Plaintiff's Complaint is not one of malpractice. Plaintiff's Complaint is that Defendant SARAH RICHTER PERKY engaged in, and conspired to commit "Corrupt Racketeering Activities" against Plaintiff, and also that Defendant violated and conspired to violate his rights guaranteed in our federal constitution.

Defendant makes the false statement that Plaintiff's pleadings are "laced with incendiary rhetoric," and "chocked full of labels," and "conclusory accusations." A true analysis of Plaintiff's Second Amended Verified Complaint however, is that it is full of well evidenced facts, demonstrating corruption at every level of the state's judiciary, and by attorney officers of the court through federal and constitutional law violations. Plaintiff's Second Amended Verified Complaint does not contain any "labels" whatsoever. Plaintiff's Complaint simply recognizes the actions of the Defendants for what they are, which are "Corrupt Racketeering Activities," and due to the fact that these "Corrupt Racketeering Activities" result in constitutional rights violations, and because Defendant has sworn to uphold the Constitution, this renders Defendant an "**oath breaker**" and "**enemy**" of the Constitution. This is not labeling, this is statement of fact. To classify Plaintiff's Complaint otherwise, simply demonstrates a desire to propagate the corruption of the state and Defendants.

4

## PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT vs. PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

Defendant falsely asserts Plaintiff's First Amended Compliant appears to be the operative pleading before the Court which is not true. Plaintiff directs the Court's attention to Docket Entry 39, which proves Plaintiff's right to amend without need of permission, "as a matter of course," pursuant to Federal Rules of Civil Procedure 15(a)(1)(A), and further that Plaintiff's filing of his Second Amended Verified Compliant is a *nunc pro tunc* issue for this Court to Consider. Although unnecessary to further justify that Plaintiff's Second Amended Verified Complaint is the operative complaint in this matter at present, Plaintiff respectfully reminds this Honorable Court that leave to amend should be granted "freely" pursuant to Fed. R. Civ. P. 15(a) and Supreme Court Opinion.

Pursuant to Federal Rules of Civil Procedure, Rule 15(a)(1)(B), and that a party may amend 21 days after service of a responsive pleading or motion under Rule 12, Plaintiff intends to amend and present to the Court his **Third Amended Verified Complaint** for good cause so as to further enumerate constitutional violations made by Defendant State of Tennessee, and to articulate into more simple words that even a child can understand, Plaintiff's First Cause of Action so as to "cure" falsely asserted "defects" contended by Defendant SARAH RICHTER PERKY.

## ARGUMENTS

### STATUTE OF LIMITATIONS NOT EXPIRED

Unconstitutional Tenn. Code Ann. § 28-3-104 does not provide for statute of limitations pertaining to causes of action under 18 U.S.C § 1962. Defendant relies on Tenn. Code Ann. § 28-3-104 which is a plainly unconstitutional state statute. T.C.A. § 28-3-104 reads as follows:

> Actions and suits against **licensed public accountants, certified public accountants, or attorneys for malpractice** shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort. Tenn. Code Ann. § 28-3-104 (c)(1)

This statute is plainly unconstitutional in that it specifies licensed public accountants, CPAs, and attorneys are to be granted "special protection." This begs the question: "Why are not other professions such as the Medical profession not granted the same protection? The answer is simple. Medical Malpractice suits drive revenue for the legal profession; and why would the legal profession desire to limit its revenue streams? In addition to unconstitutionally protecting revenue streams of the legal profession, due to the fact this statute does not provide the same protection to the Medical and other licensed professions, this statute therefore provides "Unequal Protection" to the legal and accounting professions which is in plain violation of "Equal Protection" clause of Amendment XIV § 1, U.S. Constitution.

Regardless of the unconstitutionality of the above state statute, Supreme Court Opinion guides us in selecting an appropriate statute of limitations as follows:

> **The characterization of a federal claim for purposes of selecting the appropriate statute of limitations is generally a question of federal law**, Wilson v. Garcia, supra, at 269-270, and **in determining the appropriate statute of limitations, the initial inquiry is whether all claims arising out of the federal statute "should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case."** 471 U. S., at 268. **Once this characterization is made, the next inquiry is whether a federal or state statute of limitations should be used**. *Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 US 143 - Supreme Court 1987 (at 147)*

> Given our longstanding practice of borrowing state law, and the congressional awareness of this practice, **we can generally assume that Congress intends by its silence that we borrow state law**. In some limited circumstances, however, our characterization of a federal claim has led the Court to conclude that **"state statutes of limitations can be unsatisfactory** vehicles for the enforcement of federal law. **In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law."** *id*

"[A]s the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; **yet resort to state law remains the norm for borrowing of limitations periods**. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." *DelCostello v. Teamsters, 462 US 151 - Supreme Court 1983 (171-172)*

Plaintiff directs the Court's attention to Tenn. Code Ann. § 39-12-201 Short Title which states; *This part shall be known and may be cited as the **"Racketeer Influenced and Corrupt Organization (RICO) Act of 1989**."* Tenn. Code Ann. § 39-12-206 Civil Proceedings-Injunctions-Forfeiture of Property-Future Criminal Actions-Statute of Limitations states as follows:

(h) Notwithstanding any other law, a criminal or civil action or proceeding **under this part may be commenced at any time within five (5) years after the conduct in violation of this part terminates or the cause of action accrues**.

Since Plaintiff brings suit under federal jurisdiction due to the nature of the case, and the fact of the matter affecting foreign and interstate commerce, through RICO violations, plainly state statute 39-12-206 provides this court with the proper state statute of limitations.

Plaintiff is offended and so too should this court be offended by the fact that Defendant seeks to mischaracterize his Complaint as one of malpractice when in fact it is a complaint of RICO violations. Nowhere in Plaintiff's Complaint did he complain of malpractice. Plainly this was an attempt to mislead this Honorable Court, further deny Plaintiff Due Process of Law, and further evidence of "Corruption" by state attorney officers of the court. This kind of playing "fast and loose" in federal courts should be admonished and thoroughly discouraged.

This Honorable Court must know, and so too should Defendant and her counsel, that in the law of torts, malpractice is an instance of negligence or incompetence on the part of a professional. Legal malpractice is a lawyer's failure to render professional services with the skill, prudence, and

7

diligence that an ordinary and reasonable lawyer would use under similar circumstances. This is such a simple notion of tort law, Plaintiff need not cite supporting authority but reserves such right if necessary.

Plaintiff does not allege "negligence" and he asserts "common sense must prevail" that Defendant SARAH RICHTER PERKY is an accomplished attorney and knew well the legal marital law doctrines of commingling, transmutation and statutory law pertaining to income from and appreciation in value of separate property substantially contributed to. To assume Defendant SARAH RICHTER PERKY's actions were merely "negligent" is to ignore "common sense" reasoning.

EXHIBIT 1 attached is a short biography retrieved from Defendant's Law Firm website of which she is a partner. The fact that Defendant SARAH RICHTER PERKY is a partner in her law firm evidences her knowledge of her profession. The fact that she graduated from the University of Memphis School of Law *cum laude*, evidences her intellect. Plaintiff is also a *cum laude* graduate and generally, at most educational institutions, *cum laude* status requires a performance level achieved by performing at the top ten percent of the graduating class.

The facts stated in Plaintiff Second Amended Complaint, and Defendant SARAH RICHTER PERKY's participation in the Berg case (Docket Entry 36, ¶ 74), decided in the Tenn. Ct. of App. just a few months before she entered into a contract to represent Plaintiff, substantiates beyond doubt, that Defendant SARAH RICHTER PERKY knew the legal arguments of commingling, transmutation and statutory law pertaining to income from and appreciation in value of separate property substantially contributed to. These facts more than substantiate Plaintiff's causes of action. There can be no doubt that her actions were not "merely negligent" and yet again, the unconstitutional state statute of limitations pertaining to a "malpractice" suit are wholly

inapplicable to this present matter. Plainly Tenn. Code Ann. § 39-12-206 is the "correct choice" in determining a statute of limitations. This case cannot therefore be dismissed due to expiration of statute of limitations. Furthermore, the U.S. Supreme Court provides us clear guidance in determining the statute of limitations pertaining to a RICO action as follows:

> **The federal policies at stake and the practicalities of litigation strongly suggest that the limitations period of the Clayton Act is a significantly more appropriate statute of limitations than any state limitations period**. JUSTICE SCALIA recognizes that under his preferred approach to the question before us a federal statute "may be sufficient to pre-empt a state statute that discriminates against federal rights or is too short to permit the federal right to be vindicated." Post, at 162. In our view the practicalities of RICO litigation present equally compelling reasons for federal pre-emption of otherwise available state statutes of limitations even under JUSTICE SCALIA'S approach. **As this case itself illustrates, RICO cases commonly involve interstate transactions, and conceivably the statute of limitations of several States could govern any given RICO claim**. Indeed, some nexus to interstate or foreign commerce is required as a jurisdictional element of a civil RICO claim, 18 U. S. C. §§ 1962(b) and (c), and the heart of any RICO complaint is the allegation of a pattern of racketeering. Thus, predicate acts will often occur in several States. This is in marked contrast to the typical § 1983 suit, in which there need not be any nexus to interstate commerce, and which most commonly involves a dispute wholly within one State. The multistate nature of RICO indicates the desirability of a uniform federal statute of limitations. **With the possibility of multiple state limitations, the use of state statutes would present the danger of forum shopping and, at the very least, would "virtually guarante[e]. . . complex and expensive litigation over what should be a straightforward matter."** ABA Report 392. Moreover, application of a uniform federal limitations period avoids the possibility of the application of unduly short state statutes of limitations that would thwart the legislative purpose of creating an effective remedy. Ibid.; see also DelCostello v. Teamsters, 462 U. S., at 166, 167-168 (concluding that the federal statute of limitations was appropriate because state limitation periods were too short). *Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 US 143 - Supreme Court 1987 (at 154)*
>
> **JUSTICE SCALIA accepts our conclusion that state statutes of limitations are inappropriate for civil RICO claims, but concludes that if state codes fail to furnish an appropriate limitations period, there is none to apply.** Post, at 170. (*Id at 156*)

> In sum, we conclude that there is a need for a uniform statute of limitations for civil RICO, that the Clayton Act clearly provides a far closer analogy than any available state statute, and that the federal policies that lie behind RICO and the practicalities of RICO litigation <u>make the selection of the 4-year statute of limitations</u> for Clayton Act actions, 15 U. S. C. § 15b, <u>the most appropriate limitations period for RICO actions.</u> (*Id at 156*)

Without "beating a dead horse", Plaintiff states it must be obvious to all parties, that in a RICO action, the appropriate statute of limitations is five (5) years pursuant to Tenn. Code Ann. § 39-12-206 or four (4) years pursuant to U.S. Supreme Court Opinion delivered in 1987.

## PLAINTIFF PLAINLY STATED CAUSATION AND DAMAGE CAUSING HIM HARM

Defendant SARAH RICHTER PERKY falsely asserts: "*Plaintiff does not plead that such actions caused damages to Plaintiff*" which is untrue. Plaintiff directs the Court's attention to his Second Amended Complaint (Docket Entry 36, ¶ 78) in which Plaintiff states: "*Plaintiff alleges Defendant SARAH RICHTER PERKY conspired with opposing counsel to present intentionally false and weak legal arguments so as to defraud Plaintiff of his property, and deny him due process as part of "Racketeering Enterprise".* Plainly Plaintiff stated he was deprived of property and due process as a result of Defendant SARAH RICHTER PERKY's engagement in and conspiracy to commit "Corrupt Racketeering Activities" against Plaintiff. Plaintiff further stated at (Docket Entry 36, ¶ 62)

> Plaintiff alleges Defendant SARAH RICHTER PERKY conspired with opposing counsel; (1) to present **"intentionally weak arguments"** on behalf of Plaintiff, (2) intentionally **deprived Plaintiff of "Due Process"** which includes competent legal representation, (3) deprived Plaintiff of **"Honest Services"** through engaging in **"Racketeering Activities"** <u>as part of an intentional **"scheme to defraud"**</u> Plaintiff of property, and (4) **"intentionally caused, aided, and abetted, evasion of subpoena and legal process"** of summoning a person to produce a record or document to be used in a legal proceeding.

10

If somehow, this Court, Defendant, and Defendant's counsel cannot understand how Plaintiff was denied and exhorted of his property, Plaintiff can easily "cure" this "defect" and explain in clear and no uncertain terms how Plaintiff was exhorted and denied his property as a result of Defendant SARAH RICHTER PERKY's "Corrupt Racketeering Activities". As stated above, Plaintiff will amend his pleadings to "cure" this supposed "defect".

## PLAINTIFF PROPERLY STATED A CLAIM PURSUANT TO U.S.C. 42 § 1983

Defendant cites West v. Atkins 487 U.S. 42, 48 108 S.Ct. 2250 101 L.Ed.2d 40 (1988), Dominguez v. Corr. Med. Servs., 555F3d 543, 549 (6th Cir. 2009), and Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006), and asserts a § 1983 claim will not hold up absent elements that (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) caused by a person acting under color of state law, which are true but misleading assessments and mischaracterizations of Appellate and Supreme Court opinions.

The case Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006), simply establishes the two requirements for a § 1983 action as follows;

> To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. (at 533)

This much is already clear, and was stated in Plaintiff's Complaint (Docket Entry 36, ¶ 15). The Sigley case does not otherwise support that a Defendant under a § 1983 suit must be a "state actor." In the case West v. Atkins 487 U.S. 42, 48 108 S.Ct. 2250 101 L.Ed.2d 40 (1988), the U.S. Supreme Court stated:

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (at 49)

11

To constitute state action, "the deprivation must be caused **by the exercise of some right or privilege created by the State** . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor."** Ibid. "[S]tate employment is generally sufficient to render the defendant a state actor." Id., at 936, n. 18; see id., at 937. **It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.** See Monroe v. Pape, 365 U. S., at 172. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. See, e. g., Parratt v. Taylor, 451 U. S., at 535-536; Adickes v. S. H. Kress & Co., 398 U. S. 144, 152 (1970). See also Flagg Bros., Inc. v. Brooks, 436 U. S., at 157, n. 5. (at 50)

Indeed, Polk County v. Dodson, relied upon by the Court of Appeals, is the only case in which this Court has determined that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of state law. (at 50)

The Court accordingly concluded that when representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for purposes of § 1983 because he "is not acting on behalf of the State; he is the State's adversary." Id., at 323, n. 13. See also Lugar v. Edmondson Oil Co., 457 U. S., at 936, n. 18. (at 50)

**We disagree with the Court of Appeals and respondent that Polk County dictates a conclusion that respondent did not act under color of state law** in providing medical treatment to petitioner. In contrast to the public defender, Doctor Atkins' professional and ethical obligation to make independent medical judgments did not set him in conflict with the State and other prison authorities. **Indeed, his relationship with other prison authorities was cooperative. "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve."** Polk County, 454 U. S., at 320. (at 51)

Of course, the Court of Appeals did not perceive the adversarial role the defense lawyer plays in our criminal justice system as the decisive factor in the Polk County decision. **The court, instead, appears to have misread Polk County as establishing the general principle that professionals do not act under color of state law when they act in their professional capacities.** (at 51)

**Indeed, the Court of Appeals' reading would be inconsistent with cases, decided before and since Polk County, in which this Court either has identified professionals as state actors**, see, e. g., Tower v. Glover, 467 U. S. 914 (1984) (state public defenders), **or has assumed that**

12

**professionals are state actors in § 1983 suits,** see, e. g., Estelle v. Gamble, 429 U. S. 97 (1976) (medical director of state prison who was also the treating physician). See also Youngberg v. Romeo, 457 U. S. 307, 322-323, and n. 30 (1982) (establishing standards to determine whether decisions of "professional" regarding treatment of involuntarily committed can create liability for a due process violation). **Defendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment.** (at 52)

**The Court explicitly held that "indifference . . . manifested by prison doctors in their response to the prisoner's needs . . . states a cause of action under § 1983."** (at 54)

**By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West.[13] He does so "clothed with the authority of state law."** United States v. Classic, 313 U. S., at 326. **He is "a person who may fairly be said to be a state actor."** Lugar v. Edmondson Oil Co., 457 U. S., at 937. **It is only those physicians authorized by the State to whom the inmate may turn.** Under state law, the only medical care West could receive for his injury was that provided by the State. If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care. (at 55)

With a clear understanding of the West v. Atkins 487 U.S. 42, 48 108 S.Ct. 2250 101 L.Ed.2d 40 (1988), lets us now consider whether Defendant SARAH RICHTER PERKY is a "state actor." In the West v. Atkins opinion stated above, the Supreme Court stated "**It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State**". Defendant SARAH RICHTER PERKY is licensed by the State of Tennessee to practice law. This fact is undeniable. Accordingly, this is a "position" granted and given to Defendant SARAH RICHTER PERKY by the state. This is also an undeniable fact. Therefore, Defendant SARAH RICHTER PERKY is a "state actor"

The Supreme Court further states: "**Indeed, his relationship with other prison authorities was cooperative. "Institutional physicians assume an obligation to the mission that the State, through the institution, attempts to achieve.**" Purportedly, although Plaintiff

disagrees, the state portrays its mission in the "Tennessee Judiciary System" to provide fair and impartial hearings and trials in state courts and ensure adherence to the state and federal constitutions. Certainly, the state purports this as its "mission" in state courts despite the facts showing this is not true. Due to the facts that Defendant SARAH RICHTER PERKEY is: (1) licensed by the state, (2) the state is "purportedly responsible" for providing oversight of Defendant SARAH RICHTER PERKY's conduct through Tenn. Sup. Ct. Rule 8 and its agency Board of Professional Responsibility. Therefore, Defendant SARAH RICHTER PERKY is a "state actor"

The Supreme Court further states: "**The court, instead, appears to have misread Polk County as establishing the general principle that professionals do not act under color of state law when they act in their professional capacities**", and **"Indeed, the Court of Appeals' reading would be inconsistent with cases, decided before and since Polk County[1], in which this Court either has identified professionals as state actors"**, and **"By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West.[13] He does so "clothed with the authority of state law."**

The same is true of Defendant SARAH RICHTER PERKEY, by virtue of the relationship established and effected by state law, she is a "state actor" in every way.

Although further argument should not be necessary, Defendant SARAH RICHTER PERKEY's "Corrupt Racketeering Activities" took place in a court of law, in conspiracy with opposing counsel and the judge and therefore her intentionally false statement and legal argument was made under of color of law by virtue of the authorities granted to her by the state. Defendant SARAH RICHTER PERKEY extends her services by virtue of authority granted by the state, she

---

[1] Docket Entry 50 p. 28, Defendant cites Polk County v. Dodson, 454 U.S. 312(1981), and plainly the Supreme Court said "the court, instead, appears to have misread Polk County just as Defendant in this case has "misread Polk County"

"pretends" to abide by the requirements of the state, while in conspiracy with the state and the state is therefore responsible for her conduct and she is a "state actor"

Defendant further cites *Hahn v. Star Bank, 190 F. 3d 708 (6th Cir. 1999)*, and *Angelico v. Lehigh Valley Hospital, 184 F.3d 268, 278 (3rd Cir. 1999)*. Since this Court has stated previously it is not beholding to other circuit jurisdictions, Plaintiff wonders why Defendant cites another jurisdiction's opinion, but out of an abundance of caution, Plaintiff will address that case as well.

> In support of the first element, the Hahns claim that the defendants acted under color of state law when Gonzales issued a subpoena, thereby transforming himself into a state actor. (at 717)

> In support of the first element, the Hahns claim that the defendants acted under color of state law when Gonzales issued a subpoena, thereby transforming himself into a state actor. They cite the case of Timson v. Weiner, 395 F.Supp. 1344 (S.D.Ohio 1975), to substantiate their theory. The Timson court noted that the conduct of counsel in representing clients before a state tribunal does not in and of itself constitute action under color of state law for the purposes of § 1983. See id. at 1349. **But the court ultimately held that the issuance of a subpoena by the Ohio State Personnel Board of Review is an act of the state of Ohio and "that when such a subpoena is caused to be issued by a private litigant or attorney pursuant to the subpoena privilege granted litigants by the State of Ohio, such an act is state action for the purposes of the Fourteenth Amendment and action under color of state law for purposes** of 42 U.S.C. § 1983." Id. at 1348-49. (at 717)

> This is a matter of first impression in this circuit. Because we are of the opinion that Timson was wrongly decided, we now put this circuit on record as holding that a private attorney issuing a subpoena does not become a state actor for the purposes of § 1983. In doing so, we adopt the reasoning set forth in Barnard. (at 717)

In the case Barnard v. Young, 720 F. 2d 1188 - Court of Appeals, 10th Circuit 1983, referenced in the Hahns opinion above, the 10th Circuit stated:

> A prerequisite to any relief under section 1983 is that the defendant has acted under color of state law. **Plaintiff contends that by employing the subpoena duces tecum power of the State of Oklahoma the attorney acted under color of state law.** In Lugar v. Edmondson Oil Co., 457 U.S.

922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set out a two-part test for finding state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

> Plaintiff's allegation that the attorney acted under color of state law when he employed the device of a subpoena duces tecum does not rise to the level of acting together with or obtaining significant aid from state officials. (at 1189)

While it is true, the single act of issuing a subpoena does not create an act "under of color of law", Plaintiff contends his other arguments do in fact establish that Defendant SARAH RICHTER PERKEY's malicious actions against Plaintiff were made under color of law. These arguments can be further considered by the 6th Circuit Court of Appeals if necessary. Regardless, Plaintiff will amend his Complaint to reflect that Defendant SARAH RICHTER PERKEY was also in conspiracy with the Honorable Judge Joe Thompson which would in fact establish her "Corrupt Racketeering Activities" as occurring under color of law.

In Angelico v. Lehigh Valley Hospital, 184 F.3d 268, 278 (3rd Cir. 1999), the 3rd Circuit Court of Appeals stated:

> As we said in Jordan, "[b]efore private persons can be considered state actors for purposes of section 1983, **the state must significantly contribute to the constitutional deprivation**, e.g., authorizing its own officers to invoke the force of law in aid of the private persons' request." (at 30)

> **a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property**. (at 31)

16

In the present case before this Court, the state most certainly significantly contributed to Plaintiff's constitutional deprivations and therefore according Defendant's own citation, Defendant's actions were made under color of law.

## DEFENDANT SARAH RICHTER PERKY'S ACTIONS CAUSED PLAINTIFF DAMAGES

Defendant SARAH RICHTER PERKEY falsely asserts her actions did not cause Plaintiff to suffer actual damages which is a false and untrue statement. Defendant SARAH RICHTER PERKEY's intentional and malicious withholding of arguments she knew about, withheld in a plain violation of due process which includes adequate representation, most definitely provided an "excuse" for the Circuit Court Judge to deny Plaintiff his property and income. Let us not pretend in this regard. Plaintiff's arguments are not "abstract" and the facts plainly establish Plaintiff was denied his income and property due to the fact that Defendant SARAH RICHTER PERKEY maliciously refused to present arguments of law she obviously knew about that would have required the Circuit Court Judge to enforce Plaintiff's income and property rights.

While Plaintiff recognizes that corrupt state court judges frequently ignore facts and case law precedence, when these judges are held accountable to the law, they act according to the law lest they face § 1983 allegations made against them. Due to the fact Defendant SARAH RICHTER PERKEY intentionally withheld legal arguments that would hold the Circuit Court Judge accountable to the law, Defendant was denied due process.

## PLAINTIFF'S CLAIM THAT DEFENDANT VIOLATED § 1985 IS A VALID CLAIM

Without stating any basis or supporting authority, Defendant falsely asserts Plaintiff's allegation of § 1985 does not withstand "scrutiny" under Fed. R. Civ. P. Rule 8 which is untrue. Fed. R. Civ. P. Rule 8 states:

**Rule 8. General Rules of Pleading**

17

> (a) CLAIM FOR RELIEF. A pleading that states a claim for relief
> must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction,
> unless the court already has jurisdiction and the claim needs no new
> jurisdictional support;
> (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief
> in the alternative or different types of relief.

Clearly honest review of Plaintiff's Second Amended Complaint proves Plaintiff satisfied these simple requirements under Rule 8. Defendant further states the same, also without stating a basis or supporting authority, pertaining to Fed. R. Civ. P. Rule 12. What "scrutiny" does Defendant point to? Defendant simply does not state any basis as to why Plaintiff's Complaint does not survive "scrutiny" under Rule 12, nor does Defendant further refer to how Rule 12 was not satisfied. Plaintiff assumes Defendant is referring to Rule 12(b)(6), for which is not a valid defense against Plaintiff's Second Amended Complaint as Plaintiff proves in this Response.

Again, any "defects" that may exist pertaining to stating a claim will easily be cured in a Third Amended Verified Complaint. As evidenced in Plaintiff's Second Amended Complaint (Docket Entry 36 ¶ 72), Defendant SARAH RICHTER PERKY made the intentionally false statement "… *I've done extensive research" and "The Court of Appeals has held on numerous times that you can have an implied business relationship…*" It should be obvious to any legal professional that even a second-year law student would know this to be an intentionally false statement. The judge, opposing counsel, and Defendant SARAH RICHTER PERKY must have all been "**biting their cheeks**" to keep from laughing at such a ridiculous statement.

Any legal professional must recognize this through common sense reasoning. The judge, opposing counsel and Defendant SARAH RICHTER PERKY must therefore have all been in conspiracy together to exhort Plaintiff's property from him and deny him income from the product

he created and from the business he made successful. To accept there wasn't a conspiracy between the judge, opposing counsel and Defendant SARAH RICHTER PERKY is to ignore common sense reasoning.

In analogy, while Plaintiff did not plainly state this in his Second Amended Verified Complaint, the fact of their conspiracy is obvious, and to prey upon an innocent victim who placed his trust in the court and his counsel is the worst offense possible of a legal professional. It would be no different than for an accounting professional to state to a teenage new hire: "*oh gosh, I'm sorry... you didn't know FICA withholding is sixty percent?*" with other accounting professionals standing by and listening. Such behavior is not only abhorrent and treason to the Constitution, such behavior is denial of due process, breach of fiduciary duty, extortion, and conspiracy to violate Plaintiff's right of due process which is a violation under § 1983 as well racketeering activities as defined under 18 U.S.C. §1961.

The same is true of Defendant failing to provide proper notice regarding Plaintiff's GoDaddy subpoena. As established above, Defendant SARAH RICHTER PERKY is an accomplished and intelligent attorney. Legal professionals such as Defendant simply do not make such simple mistakes, therefore it must be true her failure was intentional and in conspiracy with Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD. This Court is required to accept Plaintiffs facts as true and a jury should decide the facts.

## PLAINTIFF PROPERLY STATED A RICO CLAIM PURSUANT TO 18 U.S.C § 1962 ACTIONABLE BY CIVIL ACTION UNDER 18 U.S.C § 1964

Defendant purports to cite Pown v. Wash. Mutual Bank, 2015 U.S. Dist LEXIS 48170 (WD Tenn. 2015). Defendant is actually citing a Magistrate's Report and Recommendation which is not a controlling authority. However, Plaintiff will debunk Defendant's failed argument that Plaintiff failed to state a RICO claim.

First Defendant mistakenly asserts, there is only one cause of action under 18 U.S. C. §

1962. Plaintiff would first direct the Court's attention to the title of 18 U.S.C § 1962 which is

Prohibited Activities and the fact that "activities" is plural, meaning there is more than one

prohibited activity. 18 U.S.C. § 1962 actually has four prohibited activities (a), (b), (c) and (d),

any one of which creates a RICO action against a Defendant when violated. Defendant simply

points to 18 U.S.C. § 1962 (c). Defendant very obviously recognizes this fact, but in further

conspiracy to deny Plaintiff due process, Defendant attempts to mislead this Honorable Court.

Such mischaracterization and obfuscation of the U.S.C. by an officer of the court is offensive to

justice and this this court should be offended. Docket Entry 50 p. 31 plainly evidences Defendant's

attempt to deceive this Honorable Court as follows:

> (d) It shall be unlawful for any person to conspire to violate any of the
> provisions of subsection...c) of this section.

Subparagraph (d) actually reads as follows;

> (d) It shall be unlawful for any person to conspire to violate any of the
> provisions of subsection **(a), (b), or (c) of this section**.

Very obviously, there are four causes of action under 18 U.S.C. § 1962. The easiest to

evidence of the four causes pertaining to Defendant SARAH RICHTER PERKY is subparagraph

(d). It is very obvious after honest review of Plaintiff's Complaint, that Defendant SARAH

RICHTER PERKY conspired with Defendants PAMELA ANDERSON TAYLOR, BRENTON

HALL LANKFORD, and agents and arms of the state. Defendants TAYLOR and LANKFORD,

in their motion to Dismiss, do not claim a defense under Rule 12(b) although they do reserve that

right. Defendants TAYLOR and LANKFORD effectively do not deny RICO allegations and only

claim the false defenses of Res Judicata and Litigation Privilege which if this matter were not so

serious and grave, such defense is laughable. Regardless, since Defendant's TAYLOR and

LANKFORD did not dispute RICO allegations, and due to the fact of obvious conspiracy between these Defendants, Plaintiff plainly has a cause of action against Defendant SARAH RICHTER PERKY for her violation of 18 U.S.C. § 1962 (d).

Furthermore, Plaintiff also has other 18 U.S.C. § 1962 causes of action against Defendant SARAH RICHTER PERKY pertaining to subparagraphs (a) and (b) which is very obviously why Defendant attempted to mislead this Honorable Court. For the Court's convenience, the entirety of 18 U.S.C. § 1962 is stated as follows:

> **18 U.S. Code § 1962 - Prohibited activities**
> (a) **It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt** in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, **to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.** A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
> (b) **It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.**
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Plaintiff plainly stated causes of action pursuant to 18 U.S.C. § 1962 (a), (b), (c) in his Second Amended Verified Complaint (Docket Entry 36 ¶ 35 – 56), General Allegations. Plaintiff will strengthen his complaint pertaining to subparagraph (d) in his Third Amended Verified Complaint.

Due to the fact that Defendant SARAH RICHTER PERKY did not state any defenses pursuant to 18 U.S.C. § 1962 (a), (b), Plaintiff's cause of action against Defendant SARAH RICHTER PERKY cannot be dismissed for failure to state a RICO claim. In the case, Sedima, SP RL v. Imrex Co., 473 US 479 - Supreme Court (1985), the U.S. Supreme Court stated;

> Congress provided criminal penalties of imprisonment, fines, and forfeiture for violation of these provisions. § 1963. **In addition, it set out a far-reaching civil enforcement scheme, § 1964**… (at 483)

## PREDICATE ACTS CONSTITUTING RACKETEERING ACTIVITES ARE PLAINLY ESTABLISHED BY PLAINTIFF

Defendant SARAH RICHTER PERKY then makes the false assertion that Plaintiff has failed to demonstrate "predicate acts" and a "pattern of racketeering activity" which is another untrue statement and failed argument easily proven. Plaintiff directs the Court's attention to his third cause of action (Docket Entry 36 ¶ 169 and 171) in which Plaintiff alleges:

> Plaintiff alleges that the **malicious "Corrupt Racketeering Activities" described above are corrupt activities that occur nearly every day in courtrooms across Tennessee. Plaintiff Alleges that Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, other attorneys like them, and many judges across Tennessee are well practiced in their "Corrupt Racketeering Activities". The facts supporting this assertion are obvious and undeniable when examining appellate and trial court records, readily available online, and complaints filed against judges and attorneys that should be provided in discovery in this case**.

> Plaintiff alleges that these State agencies and **"arms of the state" engage in "Corrupt Racketeering Activities"** (18 USC 1961) and fail to provide "Honest Services" (18 USC1346) **in a concerted and entrenched pattern designed to "protect corrupt interests"** and in doing so, receive some sort

of pecuniary compensation, be it bribes or "kickbacks" that may take the form of paid vacations known as "retreats". The "bad actors" of the State may also receive "retainers without service", "interest free loans", "future job offers" or other forms of pecuniary compensation.

Plaintiff's Second Amended Verified Complaint not only contained plain allegations of multiple "Corrupt Racketeering Activities" engaged in by Defendants, but Plaintiff also included irrefutable supporting evidence. As further Evidence of Defendant SARAH RICHER PERKY'S engagement in "Corrupt Racketeering Activities," Plaintiff attaches **EXHIBIT 2** which is a signed affidavit affirming the truth of Defendant SARAH RICHTER PERKY'S attached billing detail.

During the hearing on March 10, 2015, as evidenced in Plaintiff's Second Amended Verified Complaint (Docket Entry 36 ¶ 72), Defendant SARAH RICHTER PERKY made the false statement in a court of record that "… I've done extensive research." Examination of Defendant SARAH RICHTER PERKY'S billing detail shows that she bills in six minute increments, bills for every phone call, and every email. Further examination of the billing detail shows not one single entry for "extensive research," and this is so because in fact Defendant SARAH RICHTER PERKY did not do extensive research, and had no need to because she plainly already knew the applicable legal arguments of commingling, transmutation, etc.. Plaintiff's Second Amended Verified Complaint (Docket Entry 36 ¶¶ 73 – 78) further evidences that Defendant SARAH RICHTER PERKY made a false statement to the court so as to Extort Plaintiff's income and property and deny him due process of law.

Furthermore, in the case Sedima, SP RL v. Imrex Co., 473 US 479 - Supreme Court (1985), the Supreme Court stated:

> To the contrary, the predicate acts involve conduct that is "chargeable" or "indictable," and "offense[s]" that are "punishable," under various criminal statutes. § 1961(1). **As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be.** See also S. Rep. No. 91-617, p. 158 (1969): **"a**

> racketeering activity . . . must be an act in itself subject to criminal
> sanction" (emphasis added). Thus, a prior-conviction requirement cannot
> be found in the definition of "racketeering activity." Nor can it be found in
> § 1962, which sets out the statute's substantive provisions. Indeed, if either
> § 1961 or § 1962 did contain such a requirement, a prior conviction would
> also be a prerequisite, nonsensically, for a criminal prosecution, or for a
> civil action by the Government to enjoin violations that had not yet
> occurred. (at 488)

Defendant SARAH RICHTER PERKY engaged in multiple criminal activities against
Plaintiff. Of this fact, there is no doubt. Furthermore, case law precedence does not require that
predicate criminal activities be performed by the same person; only by the "enterprise" which is
loosely defined as individuals acting in concert.

Furthermore, the same set of facts of Plaintiff's claim give rise to multiple criminal
activities further establishing predicate activities and a "pattern." The following Supreme Court
Opinions prove Plaintiff's assertion is true as follows:

**Blockburger v. United States, 284 US 299 - Supreme Court 1932**

> In that case this court quoted from and adopted the language of the Supreme
> Court of Massachusetts in Morey v. Commonwealth, 108 Mass. 433: "**A single
> act may be an offense against two statutes**; and if each statute requires proof
> of an additional fact which the other does not, an acquittal or conviction under
> either statute does not exempt the defendant from prosecution and punishment
> under the other." Compare Albrecht v. United States, 273 U.S. 1, 11-12, and
> cases there cited. **Applying the test, we must conclude that here, although
> both sections were violated by the one sale, two offenses were committed**.
> (at 301)

**Albrecht v. United States, 273 US 1 - Supreme Court 1927**

> Of the nine counts in the information four charged illegal possession of liquor,
> four illegal sale and one maintaining a common nuisance. The contention is that
> there was double punishment because the liquor which the defendants were
> convicted for having sold is the same that they were convicted for having
> possessed. **But possessing and selling are distinct offenses.** One may
> obviously possess without selling; and one may sell and cause to be delivered a
> thing of which he has never had possession; or one may have possession and
> later sell, as appears to have been done in this case. The fact that the person sells
> the liquor which he possessed does not render the possession and the sale

24

necessarily a single offence. **There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction.** The precise question does not appear to have been discussed in either this or a lower federal court in connection with the National Prohibition Act; but **the general principle is well established.** Compare Burton v. United States, 202 U.S. 344, 377; Gavieres v. United States, 220 U.S. 338; Morgan v. Devine, 237 U.S. 632. (at 11)

**Burton v. United States, 202 US 344 - Supreme Court 1906**

**Another point made by the defendant is that he could not legally be indicted for two separate offenses**, one for agreeing to receive compensation in violation of the statute, and the other for receiving such compensation. **This is an erroneous interpretation of the statute, and does violence to its words.** It was certainly competent for Congress to make the agreement to receive, as well as the receiving of, the forbidden compensation separate, distinct offenses. The statute, in apt words, expresses that thought by saying: "No Senator . . . shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered," etc. There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense. Or, compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated. In this case, the subject matter of the sixth count, which charged an agreement to receive $2,500, was more extensive than that charged in the seventh count, which alleged the receipt of $500. **But Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischief intended to be reached and remedied.** Therefore an agreement to receive compensation was made an offense. So the receiving of compensation in violation of the statute, whether pursuant to a previous agreement or not, was made another and separate offense. **There is, in our judgment, no escape from this interpretation consistently with the established rule that the intention of the legislature must govern in the interpretation of a statute. "It is the legislature, not the court, which is to define a crime, and ordain its punishment."** United States v. Wiltberger, 5 Wheat. 76, 95; Hackfeld & Co. v. United States, 197 U.S. 442, 450. (at 377)

Based on the above arguments and supporting authorities, Plaintiff has plainly established

predicate offenses and a "pattern of racketeering activity."

**CONTINUED CRIMINAL ACTIVITY IS A CERTANTY**

See page 22 – 25 above. See also Plaintiff's Third Cause of action (Docket Entry 36 ¶ 169 – 213) which plainly evidences a threat of Continuing Criminal Activity. Plaintiff also directs the Court's attention to his analysis of case dispositions and dismissal rates of complaints made against judges across eighteen states **EXHIBIT 3**. This is obviously a national problem where attorney officers of the court conspire with judges to deny due process and engage in "Corrupt Racketeering Activities" and then various state judicial oversight committees and boards hide this corruption by ignoring complaints against judges. **The EXHIBIT 3 report has been included in a requested brief to the One Hundred-Fifteenth Congress of the United States.**

Plaintiff asserts that an average dismissal rate of 95.5% is a statistical impossibility. Plaintiff will further establish that the states together with attorney officers of the court are in violation of the emoluments clause Article 1 § 9 U.S Constitution, in his further response to Defendant State of Tennessee's Motion to Dismiss, and he encourages all parties to consider the arguments therein and abandon their corruption and return to the principles upon which this country was founded. There are other ways to make money than extorting from good hard working citizens and these "Corrupt Racketeering Activities" harm the country as a whole.

## EVIDENCE OF A CRIMINAL ENTERPRISE IS OBVIOUS

Plaintiff plainly evidenced facts supporting a criminal enterprise. Again, see Plaintiff's Third Cause of Action (Docket Entry 36 ¶ 169 – 213) and pages 22 – 26 above.

## VIOLATIONS OF 18 U.S.C. § 1341, 18 U.S.C. § 1951 AND 1952 ARE VALID CLAIMS UPON WHICH RELIEF IS REQUIRED GRANTED

Defendant SARAH RICHTER PERKY falsely asserts 18 U.S.C. § 1341, 1951 and 1952 are criminal actions and the U.S.C. does not provide for a civil cause of action. Perhaps as separate independent causes of action this is true, but this is an incredibly misleading assertion intended to deceive this Honorable Court.

26

18 U.S.C. § 1961 defines "racketeering activity," and § 1961 includes federal law violations of § 1341, 1951 and 1952, and defines them as "racketeering activity." 18 U.S.C. § 1962 defines additional circumstances and requirements for offenses defined under § 1961 to be unlawful in § 1962. 18 U.S.C. § 1964 (c) provides for threefold civil damages and cost of the suit for unlawful actions under 18 U.S.C § 1962. Therefore, Defendant's assertion that violations of 18 U.S.C. § 1341, 1951 and 1952 are criminal actions and the U.S.C. does not provide for a civil cause of action, is a patently false and failed argument.

## PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 1512 DOES NOT FAIL AS A MATTER OF LAW

Plaintiff directs the Court's attention to the above two paragraphs. The same is true pertaining to 18 U.S.C. § 1512.

## PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 1346 IS A VALID CLAIM UPON WHICH RELIEF IS REQUIRED GRANTED

Defendant cites Tani v. FPL/Next Era Energy, 811 F. Supp. 2d 1004 - Dist. Court, D. Delaware (2011), and asserts that § 1346 does not allow for a private cause of action. The only pertinent language in this opinion appears to be: "Individual citizens do not have a constitutional right to the prosecution of alleged criminals" pursuant to the claims in that case of federal criminal statutes 18 U.S.C. §§ 241, 371, 1341, and 1343. Plaintiff does not seek to prosecute a criminal proceeding in this case, Plaintiff's claims are a civil cause of action.

Defendant also cites RJ Prod. Co. v. Nestle USA, Inc., 2010 WL 1506914, fn. 1 (D.D.C. 2010) with the same assertion that § 1346 does not allow for a private cause of action. Plaintiff asserts the RJ case is only cited by the lower District Courts, and mostly the District of Columbia District Court, and primarily pertaining to 18 U.S.C. §§ 1341, 1343, and 1345. Only a few lower courts have cited this case stating much the same. However, "the Supreme Court has stated it is

"reluctant to infer a private right of action from a criminal prohibition alone." RJ Prod. Co. v. Nestle USA, Inc., No. 10-0584, 2010 WL 1506914, at *2 n.1 (D.D.C. 2010)

The U.S. Supreme Court has stated **only reluctance and not preclusion** of a civil action for a criminal statute and that the legislative intent should be considered.

> There are other questions, but the principal issue presented for decision is whether a private cause of action for damages against corporate directors is to be implied in favor of a corporate stockholder under 18 U. S. C. § 610, a criminal statute prohibiting corporations from making "a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors . . . are to be voted for."[1] **We conclude that implication of such a federal cause of action is not suggested by the legislative context of § 610 or required to accomplish Congress' purposes in enacting the statute.** *Cort v. Ash, 422 US 66 – Sup. Ct. (1975) (at 69)*

Again, referencing the case Sedima, SP RL v. Imrex Co., 473 US 479 - Supreme Court (1985), the Supreme Court stated:

> To the contrary, the predicate acts involve conduct that is "chargeable" or "indictable," and "offense[s]" that are "punishable," under various criminal statutes. § 1961(1). **As defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but of acts for which he could be.** See also S. Rep. No. 91-617, p. 158 (1969): "**a racketeering activity . . . must be an act in itself subject to criminal sanction" (emphasis added)**. Thus, a prior-conviction requirement cannot be found in the definition of "racketeering activity." Nor can it be found in § 1962, which sets out the statute's substantive provisions. Indeed, if either § 1961 or § 1962 did contain such a requirement, a prior conviction would also be a prerequisite, nonsensically, for a criminal prosecution, or for a civil action by the Government to enjoin violations that had not yet occurred. (at 488)

18 U.S.C. § 1961 defines "racketeering activities" but is not preclusive of other criminal actions. **Plainly § 1961 does preclude other criminal activities** but provides guidance. As stated by the Supreme Court in the Sedima case above, "a racketeering activity… must be an act in itself subject to criminal sanction," 18 U.S.C. § 1346 is a perfect example of another type of "Corrupt Racketeering Activity."

The Racketeer Influenced and Corrupt Organizations Act was enacted by section 901(a) of the Organized Crime Control Act of 1970. 18 U.S.C. § 1346 was subsequently enacted by the United States Congress in 1988, and has been applied by federal prosecutors in cases of public corruption, as well as in cases in which private individuals breached a fiduciary duty to another person. Plaintiff asserts the other criminal actions included in § 1961 demonstrate Congress's intent to include criminal actions such as § 1346 as a "racketeering activity." It is most certain that had 18 U.S.C. § 1346 been a part of the U.S.C. at the time the Racketeer and Corrupt Organizations Act was enacted into law, 18 U.S.C. § 1346 would most certainly have been included in 18 U.S.C. § 1961. The intent of congress could not be more clear, and this case provides a perfect example of why § 1346 should be included in § 1961, as Defendant's actions in this case are plain and obvious "Corrupt Racketeering Schemes" designed to extort property from hard working citizens.

The intent of Congress in enacting § 1346 Honest Services could not be clearer and was enacted by Congress in response to the Supreme Court's ruling in McNally v. United States, 483 US 350 - Supreme Court 1987 with § 1346 enacted shortly thereafter. There is little doubt had § 1346 been around at the time of the RICO enactment, Congress would have included § 1346 in § 1961, and if Congress knew the facts of this case, most definitely § 1346 would have been included in § 1961.

In the case West Virginia Univ. Hospitals, Inc. v. Casey, 499 US 83 – S.Ct. (1991), the Supreme Court further substantiates Plaintiff's position as follows:

> Education Amendments of 1972, which led to the Court's gratuitous limit on the scope of the antidiscrimination provisions of Title IX, see Grove City College v. Bell, 465 U. S. 555 (1984), was rejected by the 100th Congress; or that its refusal to accept the teaching of earlier decisions in Wards Cove Packing Co. v. Atonio, 490 U. S. 642 (1989) (reformulating order of proof and weight of parties' burdens in disparate-impact cases), and

Patterson v. McLean Credit Union, 491 U. S. 164 (1989) **(limiting scope of 42 U. S. C. § 1981 to the making and enforcement of contracts), was overwhelmingly rejected by the 101st Congress, and its refusal to accept the widely held view of lower courts about the scope of fraud, see McNally v. United States, 483 U. S. 350 (1987) (limiting mail fraud to protection of property), was quickly corrected by the 100th Congress.**

**In the domain of statutory interpretation, Congress is the master**. It obviously has the power to correct our mistakes, **but we do the country a disservice when we needlessly ignore persuasive evidence of Congress' actual purpose** and require it "to take the time to revisit the matter" and to restate its purpose in more precise English whenever its work product suffers from an omission or inadvertent error. As Judge Learned Hand explained, statutes are likely to be imprecise.

> "All [legislators] have done is to write down certain words which they mean to apply generally to situations of that kind. **To apply these literally may either pervert what was plainly their general meaning, or leave undisposed of what there is every reason to suppose they meant to provide for**. Thus it is not enough for the judge just to use a dictionary. **If he should do no more, he might come out with a result which every sensible man would recognize to be quite the opposite of what was really intended; which would contradict or leave unfulfilled its plain purpose**." L. Hand, How Far Is a Judge Free in Rendering a Decision?, in The Spirit of Liberty 103, 106 (I. Dilliard ed. 1952). (at 114 – 115)

Therefore, Plaintiff's cause of action pursuant to § 1346 pertaining to Defendant SARAH RICHTER PERKY should not be dismissed. If the law is not already clear in this regard, Plaintiff asserts a matter of "*First Impression*" for this Court, or the 6th Circuit Court of Appeals to issue opinion on.

## PLAINTIFF'S ALLEGATIONS OF VIOLATIONS OF 18 U.S.C. § 2 (A)(B) IS A VALID CLAIM UPON WHICH RELIEF IS REQUIRED GRANTED

Defendant asserts 18 U.S.C. § 2 does not create a private civil action and cites "generally" Central Bank of Denver v. First Interstate Bank of Denver, 144 S.Ct. 1439 (1994). Plaintiff asks this Honorable Court why defendant cited this case? The only remotely pertinent language in this opinion regarding aiding and abetting is wholly inapplicable and is included as follows:

30

After our decisions in Santa Fe Industries, Inc. v. Green, 430 U. S. 462 (1977), and Ernst & Ernst v. Hochfelder, 425 U. S. 185 (1976), where we paid close attention to the statutory text in defining the scope of conduct prohibited by § 10(b), courts and commentators began to question whether **aiding and abetting** liability under § 10(b) was still available. Professor Fischel opined that the "theory of secondary liability [under § 10(b) was] no longer viable in light of recent Supreme Court decisions strictly interpreting the federal securities laws." Secondary Liability Under Section 10(b) of the Securities Act of 1934, 69 Calif. L. Rev. 80, 82 (1981). In 1981, the District Court for the Eastern District of Michigan found it "doubtful that a claim for `aiding and abetting' . . . will continue to exist under 10(b). (at 169).

Defendant's citation bears no relevance to the present matter and should be disregarded by this Honorable Court. 18 U.S.C. § 2 states:

> **18 U.S. Code § 2 - Principals**
> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In the case, Rosemond v. US, 134 S. Ct. 1240 - Supreme Court 2014, the U.S. Supreme Court stated "*Section 2, for its part, is the federal aiding and abetting statute: It provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal*." (at 1243). Defendant SARAH RICHTER PERKY very obviously has committed numerous violations of federal and constitutional law and is equally guilty of all the federal law violations stated in Plaintiff's Second and Third Causes of Action properly stated in his Second Amended Verified Complaint (Docket Entry 36)

## CONCLUSION

WHEREFORE, Plaintiff representing himself, respectfully requests that this Honorable Court deny Defendant SARAH RICHTER PERKY'S Motion To Dismiss on the grounds of failed

31

and false defenses with prejudice. Plaintiff further requests this Court to admonish Defendant for misrepresenting facts and opinions of other Courts and attempting to deceive this Honorable Court by intentionally obfuscating pertinent parts of federal law.

Respectfully submitted,

John Anthony Gentry, CPA, Pro Se
208 Navajo Court
Goodlettsville, TN 37072
615-351-2649
john.a.gentry@comcast.net

## ~ Make Tennessee Great Again ~

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

Lauren Paxton Roberts
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

Stephanie A. Bergmeyer
Office of Attorney General
PO Box 20207
Nashville, TN 37202-0207
stephanie.bergmeyer@ag.tn.gov

Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
ebarnes@stites.com

On this the 24th day of April, 2017

John Anthony Gentry, CPA

32

HOME     ABOUT US     ATTORNEYS     BRANDS     TESTIMONIALS     BLOG     CONT

You are here: Home / Attorneys / Sarah Richter Perky

# Sarah Richter Perky



Sarah Richter Perky is a partner at Thompson Burton. Her practice is primarily devoted to family law—including divorce, child custody, child support, adoption and appellate litigation. Sarah has significant experience in complex divorce cases involving large estates and contentious child custody issues, as well as post–divorce disputes.

She also handles many appellate cases for litigants dissatisfied with the results from their divorce and post-divorce trials including the issues of custody, parenting time, alimony and child support.

Prior to joining the firm, Sarah was an attorney at Hollins, Raybin & Weissman. She also served as senior law clerk to the Honorable Judge William B. Cain, former Presiding Judge of the Tennessee Court of Appeals, Middle Section. A native of Nashville, Sarah graduated from the University of Tennessee at Knoxville with a Bachelor of Science in Business Administration. She received her law degree cum laude from the University of Memphis School of Law in 2005.

While in law school, Sarah served as a judicial extern for the Honorable Bernice B. Donald of the United States Federal

## CONTACT WITH SARAH

Phone: 615-716-2282

Email: sarah@thompsonburton.com

## GET MY UPDATES

Enter Your Email For Updates     Ok

FBF ▪ Powered by ®Google Feedburner

## LIKE US, PLUS US



2
Like     20

G+1

## ABOUT US

Thompson Burton redefines the art of law by utilizing creativity, technology, flexibility and innovation to more effectively deliver information and connect with our clients. With that in mind,



**EXHIBIT 1**

District Court for the Western District of Tennessee; as a summer associate with the University of Tennessee General Counsel's Office; and as a judicial law clerk for the Circuit Court of Williamson County, Tennessee.

Outside the courtroom, Sarah enjoys spending time with her husband, Jefferson Perky, and their two children and golden retriever, Lady. She also enjoys cheering for the Tennessee Titans and the Tennessee Volunteers.

### EDUCATION

- D., University of Memphis, Memphis, Tennessee, 2005
- A., University of Tennessee, Knoxville, Tennessee, 2002

### JURISDICTIONS ADMITTED TO PRACTICE

Tennessee, 2005

### PROFESSIONAL BAR ASSOCIATIONS AND MEMBERSHIPS

- Tennessee Bar Association
- Nashville Bar Association
- Williamson County Bar Association
- American Inns of Court
- Phi Alpha Delta Law Fraternity

### CIVIC ORGANIZATIONS AND MEMBERSHIPS

- Junior League of Nashville
- Kappa Kappa Gamma Alumni Association of Nashville

### EMPLOYMENT HISTORY

- Hollins, Raybin & Weissman, 2007-2016
- Tennessee Court of Appeals, Middle Section, Senior Law Clerk to the Honorable William B. Cain, former Presiding Judge, 2005-2007

we're not wedded to the old ways of practicing law behind bookcases and conference room tables. We're committed to delivering exceptional results while maintaining our vision for transparency and accessibility. [Read More …]

Managed By: Rei

## COMMUNITY





# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

KATHERINE WISE GENTRY,  )
    Plaintiff/Wife,  )
                )
v.                 )    No. 2014CV393
                )
JOHN ANTHONY GENTRY,  )
    Defendant/Husband.  )

---

## AFFIDAVIT FOR ATTORNEY'S FEES

---

**STATE OF TENNESSEE**    )
**COUNTY OF DAVIDSON**    )

    Sarah Richter Perky, being first duly sworn, does state:

    I am an attorney practicing law in the Nashville Bar. I graduated from the University of Memphis Law School in 2005. For the most part, my practice is limited to domestic litigation. The attached statement of services represents the time that my firm has spent solely in the above matter. I believe my fee is reasonable and keeping with charges by other attorneys with similar experience for similar services.

               Respectfully submitted,

               *HOLLINS, RAYBIN & WEISSMAN, P.C.*

               Sarah Richter Perky (#24676)
               Fifth Third Center, Suite 2200
               424 Church Street
               Nashville, Tennessee 37219
               615/256-6666
               615/254-4254 - fax
               Attorney for Brian Keith Williams

Sworn to and subscribed before me this ___10___ day of ___March___, 2015.

_____
NOTARY PUBLIC
My Commission Expires: _____

## EXHIBIT 2

1

# IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE
## AT GALLATIN

| | |
|---|---|
| KATHERINE WISE GENTRY, | ) |
| Plaintiff/Wife. | ) |
| | ) |
| v. | ) No. 2014CV393 |
| | ) |
| JOHN ANTHONY GENTRY, | ) |
| Defendant/Husband. | ) |

## LEGAL SERVICES RENDERED

| Date of Service | Description of Service | Provider | Time | Fee |
|---|---|---|---|---|
| 2/3/2015 | Client meeting | SRP | 2.3 | 632.50 |
| 2/9/2015 | Email to/from client (x3) | SRP | .3 | 82.50 |
| 2/13/2015 | Email to/from client re: meeting for hearing prep and Danco court appearance | SRP | .10 | 27.50 |
| 2/17/2015 | Review annotated binder | SRP | 2.0 | 550.00 |
| 2/19/2015 | Client meeting | SRP | 1.5 | 412.50 |
| 2/20/2015 | Review emails from client; draft Motion to Determine Control of Business and Partner Compensation; email – client re: approval of same | SRP | 1.6 | 440.00 |
| 2/20/2015 | Review emails from client; revise motion accordingly | SRP | .4 | 110.00 |
| 2/23/2015 | Prepare for contempt hearing | SRP | 2.0 | 550.00 |
| 2/24/2015 | Prepare for contempt hearing; email to/from client regarding same | SRP | 2.0 | 550.00 |
| 2/27/2015 | Email to/from client | SRP | .10 | 27.50 |
| 3/2/2015 | Email to/from client | SRP | .10 | 27.50 |
| 3/2/2015 | Review emails and attachments from client re: updating discovery 2; draft letter to Taylor re: same; draft Motion to Compel | SRP | 2.3 | 632.50 |
| 3/2/2015 | Review emails and attachments from client re: contempt hearing (x3); revise outline and exhibits accordingly | SRP | 1.0 | 275.00 |
| 3/2/2015 | Telephone conference with client re: patent and contempt hearing | SRP | .5 | 137.50 |
| 3/3/2015 | Client meeting – preparation for contempt hearing | SRP | 1.6 | 440.00 |
| 3/4/2015 | Review emails and attachments from client re: Mat patent; email client re: | SRP | .4 | 110.00 |

1

| | | | | |
|---|---|---|---|---|
| | same; email Rockman re: same | | | |
| 3/9/2015 | Review motions filed by Wife; draft Response to Motion to Compel; revise outline for hearing; email RGD re: attorney fee affidavit. | SRF | 1.1 | 302.50 |
| 3/9/2015 | Prepare Attorney Fee Affidavit and statement. | RLGD | .75 | 150.00 |
| | **TOTAL** | | | **$5,457.50** |

2

**Auditor's Compilation Report**

REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT

QUALIFIED OPINION

To whom it may concern;

I have compiled the Case Disposition Rates of eighteen (18) separate state judicial oversight boards, committees, etc. for the periods 2013 through 2016. The underlying state reports are the responsibility of the respective State's oversight boards. My responsibility was to compile and express an opinion on the respective dismissal rates of these states. I have not audited or reviewed the supporting data and accompanying reports and, accordingly do not express an opinion, or provide any assurance about whether state Annual Reports are free of material misstatement.

Each reporting agency is responsible for the preparation and fair presentation of their Annual Reports in accordance with the statutes and reporting guidelines of their respective state. Each state report is available for public viewing on each State's respective oversight board's website. A listing of those website is included below.

**Overview of the Analysis**

The overall average dismissal rate of complaints filed against judges is ninety-five and one-half percent (95.5%) across eighteen (18) states. The highest dismissal rate is ninety-nine and one-half percent (99.5%) in Connecticut.

In my opinion, the Annual Report for Kentucky's Judicial Conduct Commission is representative of; the types of complaints received, types of complainants, and types of proceedings, that resulted in complaints against Judges across all states. Typically, across all states, a larger percentage of complaints that are filed, are complaints arising out of Domestic Relations cases, and are filed by litigants, who are all non-legal professionals. Review of multiple state Annual Reports suggests that most of the complaints are filed due to "Legal Error" and complain that judges are not following the law.

The following table is a summary of complaints disposed annually and dismissal rates of total complaints disposed. In my opinion, this table is representative of the case dismissal rates of the respective state judicial oversight agency.



1

| | | Total Complaints | | | | |
|---|---|---|---|---|---|---|
| State | Agency Name | 2013 | 2014 | 2015 | 2016 | Dismissal Rate |
| Alabama | Judicial Inquiry Commission | | | | 204 | 93% |
| Arizona | Commission on Judicial Conduct | 341 | 412 | 354 | 358 | 95% |
| California | Commission on Judicial Performance | 1,181 | 1,174 | 1,231 | 1,210 | 97% |
| Colorado | Commission of Judicial Discipline | 189 | 172 | 175 | | 96% |
| Connecticut | Judicial Review Counsil | 134 | 171 | 93 | | 100% |
| Florida | Judicial Qualifications Commission | 625 | 680 | 771 | | 84% |
| Georgia | Judicial Qualifications Commission | 451 | 412 | | | 99% |
| Kentucky | Judicial Conduct Commission | 234 | 192 | 266 | 208 | 97% |
| Maryland | Commission on Judicial Disabilities | 139 | 137 | 158 | 201 | 97% |
| Michigan | Judicial Tenure Commission | 595 | 568 | 512 | 587 | 97% |
| New Mexico | Judicial Standards Commission | 184 | 188 | 189 | | 89% |
| New York | Commission On Judicial Conduct | 1,770 | 1,767 | 1,959 | 1,944 | 99% |
| North Carolina | Judicial Standards Commission | 264 | 228 | 238 | 256 | 95% |
| South Carolina | Commission on Judicial Conduct | 298 | 293 | 302 | 290 | 94% |
| Tennessee | Board of Judicial Conduct | 350 | 411 | 404 | 381 | 96% |
| Texas | State Commission on Judicial Conduct | 1,109 | 1,080 | 1,242 | 1,049 | 94% |
| Utah | Utah Judicial Conduct Commission | 81 | 67 | 69 | 79 | 98% |
| Washington | Commission on Judicial Conduct | 319 | 335 | 310 | | 98% |
| Note: Dismissal Rate is calculated as cases dismissed / total complaints received. | | | | Average Dismissal Rate | | 95.5% |
| | | | | Median Dismissal Rate | | 96.5% |

The following table lists states whose Annual Reports were either not available for public viewing or could not be located on the state agency's website.

| New Jersey | Advisory Committee on Judicail Conduct | Unreported |
|---|---|---|
| Montana | Judicial Standards Commission | Unreported |
| Virginia | Judicial Inquiry and Review Commission | Unreported |
| Ohio | Office of Disciplinary Counsel | Unreported |
| Louisiana | Judicary Commission of Louisiana | Unreported |

## Qualification

Reporting and classification of dismissal rates is not consistent between states. The reporting periods are slightly different from state to state, as are the classification of dismissals. Some states have information available for multiple periods while one state only has information available for one year.[1] For the state with only one year

---

[1] For states whose annual report includes a table with multiple period statistics, a single annual report is included as an exhibit. For states that do not include a table reporting on multiple periods, excerpts have been included from several years of pertinent data for verification purposes, for each year reported, a single cover page has been included to segregate annual reports attached to this compilation report.

of statistics available, I have assumed that single period is a representative sample, as it is consistent with other reporting states.

Where complaints were dismissed for reasons of; judge's resignation, vacancy of office, term expiration, retirement, and similar reasons for dismissal, those dispositions are included as part of the dismissal rate.

Considering these facts, this opinion is "qualified" with a reasonable error rate of plus or minus one to three percent in the calculation of the Average Dismissal Rate.

**Observations**

Review of the Complaints where disciplinary action was initiated by the various oversight boards, shows that primarily the only complaints acted upon, are complaints filed by legal professionals (other judges and legal professionals) and the state agencies tasked with providing oversight of judges do not provide Equal Protection for the general public, and or, non-legal professionals.

Generally, Annual Reports for most states are easily located on their respective websites. However, some state Annual Reports are difficult to locate and other states do not report case dispositions. For example, the Annual Reports for Texas are not readily apparent on the website but can be located by typing "Annual Reports" into the site's search tool.

While dismissal rates are easily decipherable in many state Annual Reports, some state Annual Reports require careful review of the language and data to identify dismissal rates, and some reports appear to be intentionally misleading.

Other states like Arizona have changed the format of their report, making analysis of dismissal rates much less obvious to the general public. The Arizona Annual Report for 2013 was very simple to review and the dismissal rate for that year was easily calculated, but after the report format was changed in 2014, the dismissal rate became much less obvious, which may be especially true concerning the general public.

Of particular note, regarding historical reporting of the various agencies was the following excerpt from the New York 2014 Annual Report as follows:

> **The number of complaints received annually by the Commission in the past 10 years has substantially increased compared to the first two decades of the Commission's existence.**

3

This above statement is followed by the below graph:

This report covers Commission activity in the year 2013.



■ New Complaints (Left)   □ Preliminary Inquiries (Center)   ■ Investigations (Right)

Considering the fact that the larger percentage of complaints against judicial officials arises out of Domestic Relations litigation, the above graph suggests a sharp rise in complaints against judges that can perhaps be attributed to the nation's "No-Fault" divorce legislation enacted by Ronald Reagan in 1969 which all by five states adopted in the early 1970s.

Respectfully Submitted,

*John A. Gentry*

John Anthony Gentry, Active CPA
State of MD License No. 27062

4

# Judicial Oversight Agencies

**National Center for State Courts**
http://www.ncsc.org/Topics/Judicial-Officers/Ethics/State-Links.aspx

**Alabama Judicial Inquiry Commission**
http://judicial.alabama.gov/JIC/JIC.cfm

**Arizona Commission on Judicial Conduct**
http://www.azcourts.gov/azcjc/Annual-Reports/2010-2019

**California Commission on Judicial Performance**
https://cjp.ca.gov/annual_reports/

**Colorado Commission of Judicial Discipline**
http://www.coloradojudicialdiscipline.com/Annual_reports.html

**Connecticut Judicial Review Council**
http://www.ct.gov/jrc/cwp/view.asp?a=3020&q=394914&jrcNav=|

**Florida Judicial Qualifications Commission**
http://www.floridajqc.com/

**Georgia Judicial Qualifications Commission**
http://www.gajqc.com/annual_reports.cfm

**Kentucky Judicial Conduct Commission**
http://courts.ky.gov/commissionscommittees/JCC/Pages/publicinformation.aspx

**Maryland Commission on Judicial Disabilities**
http://www.courts.state.md.us/cjd/annualreport.html

**Michigan Judicial Tenure Commission**
http://jtc.courts.mi.gov/annual_report/index.php

**New Mexico Judicial Standards Commission**
https://www.nmjsc.org/resources/annual-reports/

**New York State Commission on Judicial Conduct**
http://cjc.ny.gov/Publications/AnnualReports.htm

**North Carolina Judicial Standards Commission**
http://www.nccourts.org/Courts/CRS/Councils/JudicialStandards/

# Judicial Oversight Agencies (Cont.)

**South Carolina Commission on Judicial Conduct**
http://m.sccourts.org/discCounsel/commissionJC.cfm

**Tennessee Board of Judicial Conduct**
https://www.tncourts.gov/board-of-judicial-conduct

**Texas State Commission on Judicial Conduct**
http://www.scjc.texas.gov/about/annual-reports.aspx

**Utah Judicial Conduct Commission**
http://jcc.utah.gov/reports/index.html

**Washington Commission on Judicial Conduct**

| | 2013 | 2014 | 2015 | 2016 | Dismissal Rate |
|---|---|---|---|---|---|
| **Alabama** | | | | | |
| Total Complaints | | | | 204 | |
| Dismissals | | | | 190 | Average |
| Dismissal Rate | | | | 93.14% | 93.14% |
| **Arizona** | | | | | |
| Total Complaints | 341 | 412 | 354 | 358 | |
| Dismissals | 311 | 399 | 342 | 343 | Average |
| Dismissal Rate | 91.20% | 96.84% | 96.61% | 95.81% | 95.12% |
| **California** | | | | | |
| Total Complaints | 1,181 | 1,174 | 1,231 | 1,210 | |
| Dismissals | 1,151 | 1,149 | 1,190 | 1,165 | Average |
| Dismissal Rate | 97.46% | 97.87% | 96.67% | 96.28% | 97.07% |
| **Colorado** | | | | | |
| Total Complaints | 189 | 172 | 175 | | |
| Dismissals | 182 | 168 | 167 | | Average |
| Dismissal Rate | 96.30% | 97.67% | 95.43% | | 96.47% |
| **Connecticut** | | | | | |
| Total Complaints | 134 | 171 | 93 | | |
| Dismissals | 132 | 171 | 93 | | Average |
| Dismissal Rate | 98.51% | 100.00% | 100.00% | | 99.50% |
| **Florida** | | | | | |
| Total Complaints | 625 | 680 | 771 | | |
| Dismissals | 548 | 610 | 570 | | Average |
| Dismissal Rate | 87.68% | 89.71% | 73.93% | | 83.77% |
| **Georgia** | | | | | |
| Total Complaints | 451 | 412 | | | |
| Dismissals | 444 | 410 | | | Average |
| Dismissal Rate | 98.45% | 99.51% | | | 98.98% |
| **Kentucky** | | | | | |
| Total Complaints | 234 | 192 | 266 | 208 | |
| Dismissals | 231 | 187 | 252 | 200 | Average |
| Dismissal Rate | 98.72% | 97.40% | 94.74% | 96.15% | 96.75% |
| **Maryland** | | | | | |
| Total Complaints | 139 | 137 | 158 | 201 | |
| Dismissals | 135 | 134 | 151 | 193 | Average |
| Dismissal Rate | 97.12% | 97.81% | 95.57% | 96.02% | 96.63% |

|  | 2013 | 2014 | 2015 | 2016 | Dismissal Rate |
|---|---|---|---|---|---|
| **Michigan** | | | | | |
| Total Complaints | 595 | 568 | 512 | 587 | |
| Dismissals | | | | 570 | Average |
| Dismissal Rate | | | | 97.10% | 97.10% |
| **New Mexico** | | | | | |
| Total Complaints | 184 | 188 | 189 | | |
| Dismissals | 162 | 173 | 167 | | Average |
| Dismissal Rate | 88.04% | 92.02% | 88.36% | | 89.47% |
| **New York** | | | | | |
| Total Complaints | 1,770 | 1,767 | 1,959 | 1,944 | |
| Dismissals | 1,748 | 1,733 | 1,949 | 1,925 | Average |
| Dismissal Rate | 98.76% | 98.08% | 99.49% | 99.02% | 98.84% |
| **North Carolina** | | | | | |
| Total Complaints | 264 | 228 | 238 | 256 | |
| Dismissals | 253 | 215 | 225 | 240 | Average |
| Dismissal Rate | 95.83% | 94.30% | 94.54% | 93.75% | 94.60% |
| **South Carolina** | | | | | |
| Total Complaints | 298 | 293 | 302 | 290 | |
| Dismissals | 282 | 274 | 286 | 275 | Average |
| Dismissal Rate | 94.63% | 93.52% | 94.70% | 94.83% | 94.42% |
| **Tennessee** | | | | | |
| Total Complaints | 350 | 411 | 404 | 381 | |
| Dismissals | 335 | 396 | 391 | 362 | Average |
| Dismissal Rate | 95.71% | 96.35% | 96.78% | 95.01% | 95.96% |
| **Texas** | | | | | |
| Total Complaints | 1,109 | 1,080 | 1,242 | 1,049 | |
| Dismissals | 1,072 | 1,018 | 1,151 | 983 | Average |
| Dismissal Rate | 96.66% | 94.26% | 92.67% | 93.71% | 94.33% |
| **Utah** | | | | | |
| Total Complaints | 81 | 67 | 69 | 79 | |
| Dismissals | 78 | 65 | 69 | 79 | Average |
| Dismissal Rate | 96.30% | 97.01% | 100.00% | 100.00% | 98.33% |
| **Washington** | | | | | |
| Total Complaints | 319 | 335 | 310 | | |
| Dismissals | 313 | 330 | 305 | | Average |
| Dismissal Rate | 98.12% | 98.51% | 98.39% | | 98.34% |