# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

JOHN ANTHONY GENTRY, sui juris/pro se )
                                           )

    Plaintiff )
                                           )     **CASE NO. 3:17-0020**

            vs. )

THE STATE OF TENNESSEE; )
PAMELA ANDERSON TAYLOR; )
BRENTON HALL LANKFORD; )     **JURY TRIAL DEMANDED(12)**
SARAH RICHTER PERKY; )
UNNAMED LIABILITY INSURANCE )
CARRIER(S); Et al )
                                           )
    Defendants )

---

## PLAINTIFF'S RESPONSE TO "DEFENDANT'S OPPOSING PLAINTIFF'S 'MOTION TO ALTER MAY 15 ORDER DENYING LEAVE TO AMEND'"

---

Plaintiff respectfully asserts this Honorable Court is in error denying his right to amend as a matter of course. Plaintiff also complains that he was not provided an opportunity to respond to a responsive pleading.

### OPPORTUNITY TO RESPOND NOT PROVIDED

On April 24, 2017, as a courtesy to all parties, Plaintiff filed a "Second Notice of Intent To Amend" (Docket Entry 53) pursuant to Rule 15(a)(1)(B), stating an amended pleading would be filed within the 21 day deadline set forth in Rule 15(a)(1)(B). On April 26, 2017, the

1

Magistrate Judge issued an order containing the following ambiguous language[1]: "*Plaintiff's second notice of intent to amend his complaint is **DENIED to the extent that Plaintiff requests leave to file a third amended complaint.**"*

On May 8, 2017, Plaintiff filed a Motion for Court Review of the Magistrate's "ambiguous Order." On May 11, 2017 and May 15, 2017 Defendants PERKY, TAYLOR and LANKFORD filed Responses in Opposition to Plaintiff's Motion for Court Review (Docket Entries 58 and 59 respectively). The next day on May 16, 2017, the District Court Judge entered an Order affirming the Order of the Magistrate Judge, and further denying Plaintiff leave to amend. Plaintiff respectfully complains, due to this understandable oversight, he was denied due process and should have been provided time to respond to Defendants' Responses in Opposition. In the case, Goldberg v. Kelly, 397 US 254 - Supreme Court 1970, our Supreme Court stated the following;

> "The fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394 (1914). The hearing must be "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, **and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.** These rights are important in cases such as those before us, **where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.**

---

[1] See Docket Entry 56 page 2 ¶ 3 regarding Plaintiff's concern about the ambiguity of the Magistrate's order.

By this same principle stated by the U.S. Supreme Court, Plaintiff should have had an opportunity to confront the adverse arguments in opposition to his Motion for Court Review, and should have been provided time to respond instead of the District Court judge rendering a final decision on the next day. Perhaps if Plaintiff had been provided an opportunity to respond, his Motion to Alter would not have been necessary.

### FED. R. CIV. P. PROVIDE A RIGHT TO AMEND TO EACH 12(B) MOTION

In its Order dated May 15, 2017 (Docket Entry 60), this Honorable Court stated that pursuant to Rule 15(a), a plaintiff may amend "as a matter of course" **once** after the filing of a motion to dismiss. Federal Rules of Civil Procedure, Rule 15 specifically states:

> **Rule 15. Amended and Supplemental Pleadings**
> (a) AMENDMENTS BEFORE TRIAL.
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading **or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.**

The language of Rule 15 (a)(1)(B) is clear and unambiguous: A party may amend as a matter of course within **21 days after service of a motion under Rule 12(b).** **Very obviously, the intent of this rule provides a right to amend for each 12(b) motion filed.** On April 17, 2017, Defendant Sarah Richter Perky filed a 12(b) Motion to Dismiss (Docket Entry 49). Therefore, pursuant to Rule 15 (a)(1)(B), Plaintiff has a right to amend as a matter of course and leave of the Court is not necessary.

3

In the District Court's Order dated May 15, 2017 (Docket Entry 60), the District Court Judge stated: "Rule 15(a) of the Federal Rules of Civil Procedure makes clear that the plaintiff may only amend his complaint "as a matter of course" once after the filing of a motion to dismiss. Plaintiff respectfully asserts the court's interpretation of this rule is in error.

Meaning no disrespect, in determining the Court's error, let us consider the fact of Defendants included in Plaintiff's Complaint. In Plaintiff's Second Amended Complaint there are four Defendants as follows: (1) the STATE OF TENNESSEE, (2) SARAH RICHTER PERKY (3) BRENTON HALL LANKFORD, and (4) PAMELA ANDERSON TAYLOR. Let us further consider the language of Rule 15 (a)(1)(B) which states: an amended pleading must be filed, **"21 days after service of a motion under Rule 12(b)"**

Simple logic dictates that in a case with multiple Defendants, a Plaintiff has a right to amend in response to **each** 12(b) motion received. Consider if Defendant No. 1 promptly files a 12(b) Motion to Dismiss. Should the Plaintiff wait until Defendants No 2, 3 and 4 also file 12(b) motions? Of course, a Plaintiff should not wait for Defendants No 2, 3 and 4, due to the fact that Fed. R. Civ. P. Rule 15 (a)(1)(B) requires an amended pleading must be filed, **"21 days after service of a motion under Rule 12(b)."** If a Plaintiff waited on Defendants No. 2, 3, and 4 to file 12(B) and they never subsequently file 12(b) motions, a plaintiff would lose his right to amend as a matter of course.

Based on this simple logic, the intent of Rule 15 (a)(1)(B) is clear in that a Plaintiff is allowed to amend in response to **each** 12(b) motion filed against his Complaint.

4

On April 12, 2017 Defendants LANKFORD and TAYLOR filed a Motion To Dismiss based on the false and failed arguments of res judicata and litigation privilege (Docket Entry 45). Due to the fact that this was not a 12(b) motion to dismiss, and based on the fact of their weak and failed defenses of res and litigation privilege, an amended complaint was neither necessary, nor provided for, in the Federal Rules of Civil Procedure. However, in footnote 1 of their Motion to Dismiss, Defendants LANKFORD and TAYLOR reserved the right to file a 12(b) Motion to Dismiss. Assuming this court correctly determines res judicata and litigation privilege are false and failed arguments, and assuming Defendant's LANKFORD and TAYLOR subsequently file a 12(b) Motion To Dismiss, according to the Federal Rules of Civil Procedure, Plaintiff has a further right to amend his pleadings pursuant to Rule 15 (a)(1)(B) in response to those Defendants' Motion To Dismiss.

Had not this case not been exempted from customized case management, the Magistrate could have provided instruction and guidance and issued an Order stating that after **all** 12(b) motions are received, Plaintiff would then have 21 days to amend his pleadings **once**. However, with this case being exempted from customized case management, it has become necessary for Plaintiff to "piecemeal" amend in response to each 12(b) motion due the 21 day restriction on time to amend and the fact of multiple Defendants.

Plaintiff respectfully suggests to this Honorable Court, to deny Defendants TAYLOR and LANKFORD's Motion To Dismiss due to failed res and litigation privilege arguments, allow them to file their 12(b) Motion To Dismiss, and then Plaintiff will amend **once** in response to Defendants LANKDFORD and TAYLOR's 12(b) as well as Defendant PERKY's 12(b).

5

Plaintiff asserts that this judicial efficacy should have been provided for by the Magistrate, but unfortunately the District Court judge must now address these mundane issues because the case has been exempted from customized case management creating an unnecessary burden and expense for all parties.

## DENIAL OF LEAVE TO AMEND IS DISPOSITIVE ORDER

Plaintiff further complains that denial of Plaintiff's right to amend is a Dispositive Order not within the Magistrate's authority. In addition to being clearly in error of the Federal Rules of Civil Procedure Rule 15 (a)(1)(B), the Magistrate Judge's Order is also a dispositive order. In the District Court Judge's Order dated May 15, 2017, the Court stated "*The magistrate judge's ruling is a non-dispositive matter...*" (Docket Entry 60). In Defendant PERKY's opposing Plaintiff's Motion to Alter, Defendant also states "*This Court's Order of May 15, 2017 correctly stated that the April 26, 2017 ruling by the Magistrate Judge **relates to a non-dispositive motion**.*"

First, the Magistrate Judge's ruling does not relate to a "non-dispositive **motion**." In fact, this is the second time that the Magistrate Judge has taken upon herself to issues rulings without motion from either side. Plaintiff will address this apparent bias of the magistrate judge against Plaintiff in a separate motion to recuse pursuant to 28 U.S.C. § 455.

Second, the magistrate judge's ruling is not a dispositive motion, and the magistrate judge had no authority to make such a ruling. Federal Rules of Civil Procedure, Rule 72(a) states: "*When a pretrial matter not dispositive of a party's claim or defense is referred to a*

6

*magistrate judge to hear and decide, **the magistrate judge must promptly conduct the required*** ***proceedings** and, when appropriate, issue a written order stating the decision.*"

Plaintiff directs the Court's attention to the language of Rule 72 stated above "***the*** ***magistrate judge must promptly conduct the required proceedings.***" Plaintiff asserts the operative language erroneously ignored by the magistrate judge is "***required proceedings.***" In the present matter, Plaintiff's simply filed a courtesy "Notice of Intent to Amend" and file his Third Amended Complaint, as is his right as a matter of course. Apparently, the magistrate judge took it upon herself to conduct proceedings, without notice to either party, and issued yet another dispositive ruling. This is clear error of the magistrate judge, and Plaintiff complains this is denial of due process, in that he was not allowed to present arguments, and no "***required*** ***proceedings***" were conducted (at least that Plaintiff is aware of or the docket reflects).

Lastly, the magistrate judge's ruling is most certainly dispositive. Plaintiff further directs the Court's attention to the language of Rule 72: "*When a pretrial matter not dispositive* *of a party's claim **or defense**…*" This pretrial matter is most certainly dispositive of Plaintiff's defense of filing an amended complaint in response to a 12(b) motion to dismiss. Very obviously Rule 15 (a)(1)(B), is a defense mechanism provided for in the Federal Rules of Civil Procedure to ensure justice prevails, and to prevent dismissal of claims based on technical deficiencies of complaints. Pursuant to Rule 72(b)(1), the magistrate should have entered a recommended disposition, as opposed to exceeding her jurisdiction, and rendering a decision not within her authority. The ruling is plainly in violation of the Federal Rules of Civil Procedure, and a denial of due process and justice. Now being made aware of the clear errors

7

of the Court, Plaintiff is hopeful that the District Court Judge will now be obliged correct these obvious errors, and allow Plaintiff to proceed with filing his Third Amended Complaint.

## SUMMARY: HOW PLAINTIFF INTENDS TO AMEND HIS COMPLAINT

In summary, Plaintiff intends to amend his complaint as follows: (1) regarding Defendant SARAH RICHTER PERKY's 12(b) motion, Plaintiff will amend to state **new and additional facts** supporting his cause of action, and will detail how he was caused harm by Defendant PERKY's actions, (2) Regarding Defendants LANKFORD and TAYLOR, Plaintiff does not yet know how he will amend until he receives their 12(b) motion and reserves the right to amend upon such motion, (3) regarding the Defendant State of Tennessee, Plaintiff intends to amend to include **new additional facts and new causes of action** including unconstitutional state laws and violation of emoluments clause. In detail, Plaintiff intends to amend as follows:

## AMENDED COMPLAINT REGARING SARAH RICHTER PERKY

As part of SARAH RICHTER PERKY's conspiracy to deny Plaintiff due process and to deprive him of his income, Defendant SARAH RICHTER PERKY conspired with Defendant PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD to delay a ruling in the underlying litigation. Plaintiff will present **new facts** showing the proof of this further allegation and how their actions further violated federal law. These **new facts** are separate and distinct facts from those already included in Plaintiff's Second Amended Complaint.

In Defendant SARAH RICHTER PERKY's memorandum supporting her Motion to Dismiss, Defendant stated "*Plaintiff does not plead that such actions caused damages to*

8

*Plaintiff*" (Docket Entry 50 p. 6). Plaintiff intends to amend to include facts how he was harmed by Defendant SARAH RICHTER PERKY in violation of federal law.

Defendant also argues dismissal based on statute of limitations and that suits against an attorney must be brought within one year. Defendant does not cite state statutory law providing for a one year limitation. Plaintiff assumes Defendant is referring to Tenn. Code Ann. § 28-3-104 (c) which states "(1) Actions and suits against licensed public accountants, certified public accountants, or attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort."

Plaintiff desires to challenge this law as unconstitutional in violation of the Equal Protection Clause of Amendment XIV U.S. Constitution as a separate cause of action. Very obviously, accountants and attorneys in Tennessee desire to provide themselves "extra protection" with a shortened statute of limitations which is in violation of the U.S. Constitution. What about doctors? Why are not doctors provided the same equal protection? The answer is obvious, malpractice suits against doctors are a "cash cow" for both plaintiff and defense attorneys and why would attorneys desire to limit their revenue streams from such lawsuits. Very obviously, this law fails to provide equal protection to doctors, and was enacted as part of a "corrupt racketeering enterprise" to limit suits against attorneys, while providing unrestrained "cash cow" suits against doctors. Since Defendant raised this issue in her 12(b) motion to dismiss, Plaintiff should be allowed to amend his complaint to challenge this unconstitutional assertion.

Common sense reasoning should also prevail, and Plaintiff should be granted leave to amend. By the simple fact that Defendant SARAH RICHTER PERKY has repeatedly objected to Plaintiff amending his complaint plainly demonstrates their fear of his amended pleading and that justice will prevail. By this simple fact alone, Plaintiff should be granted leave to amend despite the fact he has a clear right to amend, pursuant to Rule pursuant to Rule 15(a)(1)(B).

## AMENDED COMPLAINT REGARING DEFENDANTS LANKFORD AND TAYLOR

As established above, Plaintiff should be provided an opportunity to amend in response to each 12(b) motion. Since Defendant LANKFORD and TAYLOR have not filed a 12(b) motion, Plaintiff reserves the right to amend in response upon receipt of such motion. Obviously, their motion to dismiss, based on res judicata and litigation privilege are ridiculous assertions unworthy of this Court's consideration and should be denied with prejudice.

## AMENDED COMPLAINT REGARING DEFENDANT STATE OF TENNESSEE

Similar to Defendant PERKY's reliance upon unconstitutional state statute, the STATE OF TENNESSEE asserts the failed defense of sovereignty under Amendment XI of the U.S. Constitution. Since Defendant reasserted this primary defense in response to his Second Amended Complaint (Docket Entry 51), Plaintiff should be allowed to amend his complaint and challenge the constitutionality of state law as a separate cause of action.

Very obviously in the Constitution of the State of Tennessee, the State long ago abrogated its sovereignty in 1835. Article I § 17 of the Constitution of the State of Tennessee states: *"That all courts shall be open; and every man, for an injury done him in his lands, goods,*

*person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. **Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct**.*" Since 1835, the state has abrogated its sovereignty in deference to justice for the People. In yet another "Corrupt Racketeering Activity" intended to protect the "Corrupt Racketeering Enterprise" known as the Tennessee judicial system, the state enacted the Government Tort and Liabilities Act encoded in state statute Tenn. Code Ann. § 29-20-205. In TCA 29-20-205 state statute provides immunity exceptions as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment **except if the injury arises out of:**
>
> (1) **The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused**;
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, **abuse of process**, libel, slander, deceit, interference with contract rights, **infliction of mental anguish, invasion of right of privacy, or civil rights;**
> (5) **The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause**;
> (6) Misrepresentation by an employee whether or not such is negligent or intentional;

First, the state constitution explicitly states "***Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct***." The State Constitution does not provide for "pick and choose" what type suits may be brought against the state. It only provides for the manner and type of court.

Second, the state can either choose to abrogate or enforce its sovereignty, and then only by constitutional amendment ratified by the legislature. The state cannot choose to claim sovereignty in certain instances such as those to protect "Corrupt Racketeering Activities."

Lastly, the state cannot enact laws that abrogate the federal constitutionally protected rights, and Tenn. Code Ann. § 29-20-205 does exactly that, Tenn. Code Ann. § 29-20-205 unconstitutionally abrogates federally protected rights.

Plaintiff seeks leave to amend to challenge the constitutionality of Tenn. Code Ann. § 29-20-205. Furthermore, due the fact Defendant asserted this defense in its 12(b) motion, Plaintiff's right to amend as a matter of course should be recognized and enforced.

### TENNESSEE IS IN VIOLATION OF EMMOLUMENTS CLAUSE

Plaintiff also desires to add another cause of action to his Third Amended Complaint for the State's violation of the emoluments clause. Article I § 9, U.S. Constitution states: "*No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.*"

The state is in plain violation of Article I § 9, U.S. Constitution, and the state has in fact granted "Titles of Nobility" to members who comprise the state legal system which is a "Corrupt Racketeering Enterprise". One need only look with open eyes to know this is true.

12

As this Court knows, the Federalist Papers were comprised of various essays by our founding fathers written in favor of ratifying our U.S. Constitution. In these essays, our founding fathers argued why certain language should be included in our federal constitution.

Even before the Articles, states had renounced the power to grant titles. David Ramsey, the eighteenth-century historian of the American Revolution, reported that at the time of independence, the states "*agreed in prohibiting all hereditary honours and distinctions of ranks*" in order to provide "farther security for the continuance of republican principles in the American constitution." *The History of the American Revolution (1789).*

In Federalist No. 43, in consideration of Article I § 9, U.S. Constitution, James Madison asked: "But who can say what experiments may be produced by the caprice of particular States, by the ambition of enterprising leaders...?" Today, we have one answer to that question... The bar has created a "Caste" and societal group who make the law, and hold themselves above the law and not subject to the law. Instead of "Lords", "Princes" and "Kings", our present society is subject to a new form of "Nobility" known as "judges", "esquires", etc.

As further stated by James Madison in Federalist 43:

> **"In a confederacy founded on republican principles, and composed of republican members, the superintending government ought clearly to possess authority to defend the system against aristocratic or monarchial innovations.** The more intimate the nature of such a union may be, the greater interest have the members in the political institutions of each other; and the greater right to insist that the forms of government under which the compact was entered into should be SUBSTANTIALLY maintained. **But a right implies a remedy; and where else could the remedy be deposited, than where it is deposited by the Constitution?** Governments of dissimilar principles and forms have been found less adapted to a federal coalition of any sort, than those

of a kindred nature. "As the confederate republic of Germany," says Montesquieu, "consists of free cities and petty states, subject to different princes, experience shows us that it is more imperfect than that of Holland and Switzerland. " "Greece was undone," he adds, "as soon as the king of Macedon obtained a seat among the Amphictyons." In the latter case, no doubt, the disproportionate force, as well as the monarchical form, of the new confederate, had its share of influence on the events. **It may possibly be asked, what need there could be of such a precaution, and whether it may not become a pretext for alterations in the State governments, without the concurrence of the States themselves.**

Indeed, at the time of the founding, it was obvious to the members of our new Republic to repudiate, and guard against, a government comprised of monarchial or aristocratic rule. *"What need there could be of such a precaution?"* Today, we now know the need of that precaution and why Article I § 9, U.S. Constitution was included in our federal constitution. Fortunately, having suffered the grievances detailed in our Declaration of Independence, our founding fathers included in the constitution, the emoluments clause and we only need to find US authority willing to enforce the provisions of our federal constitution, and protect the people.

This Court must enforce the provisions of the Constitution as it is your duty, and solemn responsibility. To not do so brings us back full circle to the very reasons we declared our independence from England and the Crown.

To know this is true, this Court need only look to our own Declaration of Independence and the grievances stated therein as the basis for declaring our independence. The same grievances stated in our Declaration of Independence are being suffered in state courts across the country. Those grievances suffered by our founding fathers are now being suffered by MR.

14

GENTRY and many others like him.  In our Declaration of Independence, our founding fathers stated:

> **The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States. To prove this, let Facts be submitted to a candid world.**

The State ignores rights set forth in the constitution and daily violates our right of due process.  This grievance was plainly stated in our Declaration of Independence:

> He has refused his Assent to Laws, the most wholesome and necessary for the public good.

Since 1835, the Tennessee Constitution permitted citizens to sue the state.  The Government Tort and Liabilities Act which unconstitutionally prevents certain suits against the state related to judicial proceedings, even when malicious, is plain evidence of another grievance inflicted upon the people today.

> For taking away our Charters, abolishing our most valuable Laws, and altering fundamentally the Forms of our Governments:
>
> He has forbidden his Governors to pass Laws of immediate and pressing importance, unless suspended in their operation till his Assent should be obtained; and when so suspended, he has utterly neglected to attend to them.

Judges now rule according to the whims of an aristocracy comprised of "elite members of the bar."  In the present case, Plaintiff will present facts, proving "elite members of the bar" control judges, and force them to rule according to their whims, even against the desire, intent and instructions of judges.

He has made Judges dependent on his Will alone, for the tenure of their offices, and the amount and payment of their salaries.

In Tennessee as well as other states, the State sends swarms of attorneys to prey upon innocent victims through "vexatious litigation."

He has erected a multitude of New Offices, and sent hither swarms of Officers to harass our people, and eat out their substance.

As evidenced in this case, MR. GENTRY suffered and continues to suffer a "mock trial"

For protecting them, by a mock Trial, from punishment for any Murders which they should commit on the Inhabitants of these States:

For depriving us in many cases, of the benefits of Trial by Jury:

Common Sense and rule of law must prevail in considering the facts evidencing the creation of this new aristocracy. The grievances stated in our Declaration of Independence are the same grievances suffered in state courts today. Those grievances were caused by monarchial and aristocratic rule, a "Corrupt Racketeering Enterprise" if you will, controlled by the King of Great Britain.

In conclusion, our founding fathers further stated in our Declaration of Independence:

In every stage of these Oppressions **We have Petitioned for Redress in the most humble terms:** Our repeated Petitions have been answered only by repeated injury. **A Prince, whose character is thus marked by every act which may define a Tyrant, is unfit to be the ruler of a free people**.

The very same is true in this case. Plaintiff repeatedly petitioned for redress in the most humble terms and was repeatedly denied as follows: (1) Plaintiff requested the trial court judge to recuse which was denied without explanation twice, (2) Plaintiff objected to proceedings

16

which was ignored, (3) Plaintiff sought an extraordinary appeal during trial court proceedings which was denied, (4) Plaintiff complained to the Board of Judicial Conduct of multiple rights violations, violations of Judicial Code of Conduct, violation of state statute and was denied, (5) Plaintiff filed a Petition for Recusal Appeal wrongfully dismissed, (6) Plaintiff sought redress in appellate court resulting in yet another "mock trial," (7) Plaintiff requested recusal of the appellate court judges also denied, (8) Plaintiff brought suit against corrupt attorneys dismissed due to fraud on the court (Motion to Alter still pending), (9) Plaintiff complained to the Board of Professional Responsibility also wrongfully denied.

**Despite Plaintiff's repeated petitions for redress in the humblest terms, his petitions have only been answered by repeated injury thus marking the state, its agents, agencies and arms of the state "Tyrants unfit to be rulers of free people".**

Clearly, we have come full circle and today we suffer the very same grievances suffered under the crown causing us to declare our independence. Clearly the state has created a new form of nobility. Plaintiff should be allowed to amend his complaint to include this cause of action pursuant to Rule 15(a)(1)(B) or be granted leave to amend to ensure justice prevails.

### HARM CAUSED BY VIOLATION OF EMMOLUMENTS CLAUSE

History has shown us that Aristocracies bent on corruption cannot long survive. We need only to our own history and current events to know this is true. Consider the facts of our own history and why we declared independence. Consider the corrupt government of Greece living beyond its means at the expense of the EU and failure of that economy. Consider the

corruption still ongoing in Venezuela. While there are many factors contributing to the failures of nation states, empires, etc., such as overwhelming economic factors, natural disasters, over-extended military, the single factor that is always present is public official corruption.

Likely, we will not see the failure of our Republic in our lifetime, but history has shown us time and again, public official corruption is a leading factor contributing to the decline of nation states. Perhaps our decline will become irreversible in the next 25, 50 or 100 years (a short time in the timeline of a Republic). Let us not wait to address this already almost insurmountable problem until it is too late.

With what is happening now in state courts across the country is damaging our country as a whole. High-earning individuals are targeted for "vexatious litigation." The process of "vexatious litigation" causes mental injury in the best and brightest amongst us. The very people who grow our economy are so injured they turn to substance abuse, suffer bankruptcies, and in many unfortunate cases even suicide. This greatly affects the economic productivity of our entire country. Let us not ignore this problem, let us not pretend it does not exist.

Groups are forming around the country to combat judicial corruption. A quick google search will show this to be true. Groups like the "Judicial Accountability Movement" on Facebook, and the Family Civil Liberties Union website and many others too numerous to list.

Lawsuits against the various states are rapidly increasing and instead of addressing the real problem, the states "protect" themselves from suit by enacting unconstitutional laws like the Tenn. Govt. Tort & Liabilities Act.

18

The movement we are seeing today is not unlike the "Suffrage Movement" in the 1870's demanding woman's right to vote. Let us not wait to address this problem until the people are so harmed, that they protest by "Hunger Strike." Let us begin to address this problem today in this Court.

## NEW FACTS EVIDENCING DUE PROCESS VIOLATIONS AND CONSPRIACY TO VIOLATE DUE PROCESS

As a result of continued proceedings in state court, Plaintiff has newly discovered facts to include in his Third Amended Complaint. Plaintiff desires to include **new facts** showing beyond any doubt whatsoever, that the Honorable Judge Joe H Thompson conspired with Defendant PAMELA ANDERSON TAYLOR to deny Plaintiff due process as part of the "Racketeering Activities" intended to deny Plaintiff due process and to deny Plaintiff his income and property. These facts arose out of a hearing presided over by Judge Joe H Thomson on July 1, 2015. These facts prove beyond doubt further violations of § 1983 and 1985 as well as additional "Racketeering Activities" as defied in 18 USC 1961. During proceedings on July 1, 2015 in the Sumner Court Courthouse, Judge Joe H Thompson denied Plaintiff the opportunity to present his evidence proving opposing party's fraudulent documents submitted to the court. The facts supporting this assertion are beyond any doubt whatsoever and will strengthen Plaintiff's Complaint so as to ensure justice is served. Furthermore during the same proceedings on July 1, 2015, Defendant PAMELA ANDERSON TAYLOR very obviously

conspired with Judge Joe H Thompson to prevent proper motions from being heard. Plaintiff should be allowed to amend his complaint to ensure justice is served.

## JUDICIAL EFFICACY

Plaintiff can use the same facts, same evidence in a new Complaint but asserts this is not a good use of the Court's time. The same facts that give rise to Plaintiff's Second Amended Complaint, also give rise to violation of the Emoluments Clause and includes all the same Defendants, all the same facts.

It does not matter that the same set of facts pertain to multiple causes of action and in different jurisdictions of state and federal courts. The following Supreme Court Opinions prove Plaintiff's assertion is true as follows:

**Blockburger v. United States, 284 US 299 - Supreme Court 1932**

> In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in Morey v. Commonwealth, 108 Mass. 433: "**A single act may be an offense against two statutes**; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Compare Albrecht v. United States, 273 U.S. 1, 11-12, and cases there cited. **Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.** (at 301)

**Albrecht v. United States, 273 US 1 - Supreme Court 1927**

> Of the nine counts in the information four charged illegal possession of liquor, four illegal sale and one maintaining a common nuisance. The contention is that there was double punishment because the liquor which the defendants were convicted for having sold is the same that they were convicted for having possessed. **But possessing and selling are distinct offenses.** One may obviously possess without selling; and one may sell and

cause to be delivered a thing of which he has never had possession; or one may have possession and later sell, as appears to have been done in this case. The fact that the person sells the liquor which he possessed does not render the possession and the sale necessarily a single offence. **There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction.** The precise question does not appear to have been discussed in either this or a lower federal court in connection with the National Prohibition Act; but **the general principle is well established.** Compare Burton v. United States, 202 U.S. 344, 377; Gavieres v. United States, 220 U.S. 338; Morgan v. Devine, 237 U.S. 632. (at 11)

**Burton v. United States, 202 US 344 - Supreme Court 1906**

**Another point made by the defendant is that he could not legally be indicted for two separate offenses,** one for agreeing to receive compensation in violation of the statute, and the other for receiving such compensation. **This is an erroneous interpretation of the statute, and does violence to its words.** It was certainly competent for Congress to make the agreement to receive, as well as the receiving of, the forbidden compensation separate, distinct offenses. The statute, in apt words, expresses that thought by saying: "No Senator . . . shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered or to be rendered," etc. There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense. Or, compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated. In this case, the subject matter of the sixth count, which charged an agreement to receive $2,500, was more extensive than that charged in the seventh count, which alleged the receipt of $500. **But Congress intended to place its condemnation upon each distinct, separate part of every transaction coming within the mischief intended to be reached and remedied.** Therefore an agreement to receive compensation was made an offense. So the receiving of compensation in violation of the statute, whether pursuant to a previous agreement or not, was made another and separate offense. **There is, in our judgment, no escape from this interpretation consistently with the established rule that the intention of the legislature must govern in the interpretation of a statute. "It is the legislature, not the court, which is to define a crime, and ordain**

**its punishment."** United States v. Wiltberger, 5 Wheat. 76, 95; Hackfeld & Co. v. United States, 197 U.S. 442, 450. (at 377)

Plaintiff asserts it is much more efficient to address these related matters in a Third Amended Complaint as opposed to forcing Plaintiff to file a separate complaint by denying him his right to amend as a matter of course pursuant to Rule 15(a)(1)(B), or by denying him leave to amend so as to ensure justice prevails.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
 lauren.roberts@stites.com

On this the 30th day of May, 2017

John Anthony Gentry, CPA