# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# CIVIL RIGHTS DIVISION

| | | |
|---|---|---|
| **JOHN ANTHONY GENTRY, sui juris/pro se** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **CASE NO. 3:17-0020** |
| vs. | ) | |
| | ) | |
| **THE STATE OF TENNESSEE;** | ) | |
| **PAMELA ANDERSON TAYLOR;** | ) | |
| **BRENTON HALL LANKFORD;** | ) | **JURY TRIAL DEMANDED(12)** |
| **SARAH RICHTER PERKY;** | ) | |
| **UNNAMED LIABILITY INSURANCE** | ) | |
| **CARRIER(S); Et al** | ) | |
| | ) | |
| Defendants | ) | |

---

## RESPONSE TO "DEFENDANT'S (PERKY) RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF JUNE 5, 2017

---

Comes now the Plaintiff in Response to Defendant PERKY'S Response (Docket Entry 76) regarding Plaintiff's Objection to the Magistrate Judge's June 5, 2017 Report and Recommendation (R&R). This Honorable Court ordered Plaintiff to respond to Docket Entry 76 by June 26, 2017 (Docket Entry 84).

### DEFENDANT PERKY SHOULD HAVE NO INTEREST IN THIS MATTER

First and foremost, Plaintiff is astounded that Defendant Perky would bother to respond to Plaintiff's Objection to the Magistrate's R&R to deny "Plaintiff's Emergency Motion For A Temporary Restraining Order and Preliminary Injunction" (TRO). Defendant Perky should

1

have no interest whatsoever in a matter that wholly does not affect her. The simple fact of Defendant Perky responding to Plaintiff's TRO, evidences the fact of "Conspiracy" and "Legal Monopoly" between attorney officers of the court, trial court judges, and the Tennessee Board of Judicial Conduct.

It can only be true that Defendant PERKY has an interest in responding to Plaintiff's TRO against the State and Board of Judicial Conduct, either because she has been involved in complaints made to the Board and intreats to conceal evidence, or it is true that Defendant Perky simply desires to protect the "Legal Monopoly" that is the Tennessee judicial system.

It is more than likely that Defendant's counsel Mr. William Walton is not representing Defendant PERKY pro bono. It is further likely that Mr. Walton's hourly rate is in the $400 to $600 per hour range. Considering Mr. Walton's statement "Based upon review of the record…" and his 5-page response (Docket Entry 76), it is reasonable to say Mr. Walton billed two hours' time for 'reviewing the record' and preparing his response. Plaintiff asks: "Why in the world would Defendant Perky desire to spend $800 to $1,200 to respond on behalf of the state except to intreat to conceal evidence or protect a "Legal Monopoly?"

Perhaps Mr. Walton simply desires to "run up the bill" on Defendant PERKY or worse, perhaps Mr. Walton and Defendant PERKY are in conspiracy to "run up the bill" and later attempt to assign those costs to Plaintiff.

While Plaintiff recognizes the above arguments may not be well received, this Honorable Court should further consider the fact that the District Court Judge should be more than capable to make a proper determination in the matter based on Plaintiff's Motion (Docket

2

Entry 19), Supporting Memorandum (Docket Entry 20), the State's response to Plaintiff's TRO (Docket Entry 29), the Magistrate's R&R (Docket Entry 70), and Plaintiff's Objection to R&R (Docket Entry 72).

Even more incredulously, Defendant Perky argues the same failed argument that Plaintiff's motion is "moot" while admitting she is not a party in footnote 2 page 1. In this footnote, Defendant Perky states: "*Defendant observes that Plaintiff's Motion for Preliminary Injunction was filed on January 9, 2017 – before Plaintiff sued Ms. Perky. Accordingly, Plaintiff's Motion does not seek specific relief from this Defendant (she was not a party to the lawsuit at the time this motion was filed.*"

How possibly can Defendant PERKY argue in a motion she is not a party to and who relief is not sought from by her own admission? By this fact alone, Defendant PERKY'S motion is not made in good faith and should be denied and perhaps stricken from the record.

Plaintiff would further direct the Court's attention to the error stating Plaintiff's TRO was filed on January 9, 2017. Plaintiff's TRO (Docket Entry 19) and supporting memorandum (Docket Entry 20) were actually filed February 27, 2017. Plaintiff asserts this Court should not be misdirected or burdened with such obvious errors, and Plaintiff simply desires to ensure history of proceedings is properly reflected in the record.

### PLAINTIFF'S TRO IS NOT "MOOT" AS RESULT OF AMENDING

Adding no new facts or legal argument, Defendant PERKY, like the Magistrate, erroneously assert that Plaintiff's Motion for TRO is "moot" due to the fact that Plaintiff

removed individuals and the Board of Judicial Conduct from being named in the complaint. This baseless argument completely fails for a number of reasons.

First, since this matter should be determined de novo as shown in Plaintiff's Motion for Court Review, Plaintiff directs the Court's attention to his Second Amended Verified Complaint (Docket Entry 36) pages 49 – 63 which are Plaintiff's Third Cause of Action pertaining to the Tennessee Board of Judicial Conduct. At ¶ 170-171 of Plaintiff's Second Amended Complaint, Plaintiff states:

> The unfortunate corruption of the State Courts cannot exist, except for the fact that the **agencies put in place to provide oversight,** are no longer functioning as intended and "*the fox is watching hen house*". Those State agencies that are not functioning as intended are the **Tennessee Board of Judicial Conduct,** the Tennessee Board of Professional Responsibility and the Tennessee Court of Appeals. (¶170)

> Plaintiff alleges that these State agencies and "arms of the state" engage in "**Corrupt Racketeering Activities**" (18 USC 1961) and fail to provide "**Honest Services**" (18 USC 1346) in a concerted and entrenched pattern designed to "**protect corrupt interests**" and in doing so, receive some sort of pecuniary compensation, be it bribes or "**kickbacks**" that **may take the form of paid vacations known as "retreats". The "bad actors" of the State** may also receive "**retainers without service**", "**interest free loans**", "**future job offers**" or other forms of pecuniary compensation. (¶171)

At ¶175 and 176 Plaintiff further stated:

> Plaintiff alleges, if **Defendant State of Tennessee and its agencies, agents and arms of the state were doing their job as they should, the People, including Plaintiff would not suffer judicial and attorney misconduct and constitutional rights violations. It is because of the State's failure to fulfil its fiduciary responsibility that these "Corrupt Racketeering Schemes" are inflicted upon the People.** Plaintiff asserts this is just common sense

reasoning and not "unadorned, the-defendant-unlawfully harmed-me accusation". If these "Corrupt Racketeering Enterprises" of the State were doing their job as they should, judges and attorneys would "behave" and the people would not be harmed. The conduct of the **State through its agencies, agents and arms of the state is no different than a law enforcement officer watching a gang rape and taking no action to stop such abhorrent behavior.** (¶175)

Plaintiff alleges, **Defendant State, through its agencies, agents and arms of the state conspire with attorneys to deny equal protection under the law,** and deprive litigants of their constitutional right of due process and this conspiracy perpetuates "Corrupt Racketeering Schemes" and caused Plaintiff loss of his property and income and loss of his rights guaranteed by the U.S. Constitution. The facts proving this allegation are undeniable and irrefutable. (¶176)

In addition to the above claims explicitly implicating the State and its agency the Tennessee Board of Judicial Conduct, Plaintiff included all of the original defendants in his "Witness List" which is included as part of his Second Amended Verified Complaint (See Page 99 – 100) of Plaintiff's Second Amended Verified Complaint (Docket Entry 36).

Plaintiff could not have been more clear in his Second Amended Verified Complaint that the Tennessee Board of Judicial Conduct is implicated in Plaintiff's Complaint, causes of action and claims for relief. "Forefront and Center Stage" Plaintiff clearly stated this in his "Nature of Case" (Docket Entry 36 p. 3 – 5. Here Plaintiff made the following statement:

This is a case alleging Defendant, **State of Tennessee, through its agents and arms of the state, individually and together, and or, in their official capacity, conspired and actively engaged in "corrupt racketeering activities"** with other agents and arms of the state, and officers of the court (attorneys). The State, its agents, arms of the state, and officers of the court, have though a **"breach of fiduciary duty"**, **"monopoly"**, **"intentional gross negligence"**, and through **"corrupt racketeering activities"** and or, as a matter of unconstitutional policy, conspired, aided, abetted and violated Plaintiff's rights protected under

the Constitution of the United States and State Constitution, and have violated federal laws as follows: denial of due process, conspiracy to defraud, extortion, obstruction of justice, evasion of subpoenas, witness tampering, concealment of records, failing to provide Equal Protection under the law, and failing to provide "Honest Services"; causing Plaintiff to be wrongfully denied his property under color of law, causing him great financial loss and personal harm.

The "**Corrupt Racketeering Activities**" of the **State of Tennessee, occurring through its agents, agencies, courts, and "arms of the state"**, in conspiracy with each other and with attorney officers of court, are broad and well entrenched, and the pattern of these corrupt activities is plain and obvious, as the facts of this case prove. Corrupt Racketeers in Tennessee are so emboldened, they hardly even bother to hide their corruption anymore. One need only look with open eyes to see this is true.

Plaintiff is rather astounded the Magistrate and Defendant PERKY, would assert "after review of the record" that the Tennessee Board of Judicial Conduct is not implicated in this matter. Plaintiff could not have been clearer in his Second Amended Complaint. The Tennessee Board of Judicial Conduct is front and center stage in this matter and to assert otherwise is to ignore the facts of Plaintiff's Complaint.

## THE HOW AND WHY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

In Plaintiff's original complaint, Plaintiff was hopeful of the state to take responsibility for its "Gross Negligence" and "Breach of Fiduciary Duty," recognize the harm caused to Plaintiff, and take corrective actions to prevent harm to future litigants.

Plaintiff has repeatedly stated throughout proceedings that he wholeheartedly believes in our system of justice and that he has no desire to bring the judiciary into disrepute. In fact, it could be said, Plaintiff is a friend to the judiciary and only seeks to preserve public confidence

6

while at the same time reinstituting constitutional rights back into state court proceedings. What could be a more wholesome endeavor?

In response to Plaintiff's original complaint, instead of taking responsibility and "making things right" and taking "corrective actions", the State sought to dismiss Plaintiff's complaint instead of "doing the right thing." This of course forced Plaintiff to strengthen his complaint and "call a spade a spade" and speak truthfully, frankly and directly about the misconduct of "bad actor" state officials.

As stated in Plaintiff's Second Amended Verified Complaint, if the Tennessee Board of Judicial Conduct were doing their job as they should, rights violations (due process), federal law violations (extortion, witness tampering, etc.), would not be occurring in state court proceedings. Indeed, the board's inaction is nothing less than a law enforcement watching a gang rape without taking action, because that is exactly what it feels like to us victims who are helpless to protect themselves from the tyranny of the state.

Many victims of the State's tyranny succumb to depression, substance abuse, and even suicide. Let us not pretend these problems do not exist. Few, if any, have the intellect and intestinal fortitude to pursue a federal action as Plaintiff has done in this case, and they are simply tossed aside as just another helpless victim abused and broken.

With no intent to burden this Honorable Court with a long dialogue about how and why Plaintiff amended his complaint as he did, this Court should further understand that Plaintiff's amended complaint was not a removal and addition of Defendants without purpose. Plaintiff

7

simply desired strategically to not burden himself arguing against various false immunities and the cost of notice to multiple defendants.

Furthermore, due to the fact of the nature of the case, it was necessary to bring in new Defendants to prove the conspiracy, rights, and federal law violations. Again, as stated above, in Plaintiff's original complaint, Plaintiff was hopeful of the state to take responsibility for its "Gross Negligence" and "Breach of Fiduciary Duty," recognize the harm caused to Plaintiff and take corrective actions to prevent harm to future litigants without the need for protracted litigation that would obviously destroy "Public Trust"

Plaintiff's Second Amended Complaint, without doubt, still very much implicates the Tennessee Board of Judicial Conduct and, that state agency should be restrained from destroying evidence. Since Plaintiff includes the original defendants as "Witnesses," Plaintiff leaves it to the Court and perhaps the jury to decide if they should be indicted on criminal charges or held personally liable. Without doubt, some of them should in fact be indicted on criminal charges.

Due to the requirements of this Court under the Federal Rules of Civil Procedure to review this matter de novo, Plaintiff invites the Court to read the entirety of his Second Amended Verified Complaint. Plaintiff is confident the Court will be appalled at what transpires in Tennessee state court proceedings or should be. Plaintiff is further confident that review of his entire complaint will show good cause for preliminary injunction.

The facts of Plaintiff's complaint are not isolated to Plaintiff's case and just a few "wayward judges". This problem is systemic and problematic throughout the state and indeed

throughout the country. This fact is evidenced in **EXHIBIT 1** which is an "Auditor's Compilation Report" that Plaintiff compiled based on the Annual Reports of eighteen state's judicial oversight boards, agencies and committees. As evidenced in **EXHIBIT 1**, effectively 100% of complaints against judges are dismissed which is a statistical impossibility. This problem has exacerbated itself over the last few decades and state court judges are rampantly committing rights violations and federal crimes without any oversight, even from that of the federal courts as case after case is dismissed.

The attached **EXHIBIT 1** was included in a requested brief to US Congress. The actual compilation report is 155 pages and includes the pertinent pages of various oversight board Annual Reports substantiating the dismissal rates of complaints filed against judges. Plaintiff only included the summary pages so as not to burden the clerk's office, but would be happy to provide the full report upon request.

The State courts have gone too far in abrogating constitutional rights and committing federal law violations causing great harm to "The People" as well as to the country as a whole. It is past the time for the federal courts to step in and stem the tide. A good first step would be to grant Plaintiff's TRO and preserve his evidence so Plaintiff can prove the Tennessee Board of Judicial Conduct, as a pattern and matter of policy, wrongfully dismisses effectively 100% of complaints filed against judges by non-legal professionals. Why would this Court not desire to preserve evidence in a case such as this, after consideration of the facts and evidence included in Plaintiff's Second Amended Complaint (Docket Entry 36) and memorandum supporting his TRO motion (Docket Entry 20)?

## THE BOARD OF JUDICIAL CONDUCT IS A PARTY TO THIS CASE

Defendant PERKY reasserts the Magistrate's finding that a federal court may not enjoin a "person" who is not a party to the lawsuit. While this statement is true, it is also wholly inapplicable. Plaintiff first directs the Court's attention to Docket Entry 22, which is State of Tennessee's Motion to Dismiss. At ¶ 4, the State asserts "Plaintiff fails to state a claim against the State, the Board, and any Defendants in their official capacity because Defendants are not "persons" under § 1983.

Defendant's cannot argue both ways. They cannot state they are not a "person" but part of the state and not subject to § 1983 and then later assert they are a "person" who cannot be enjoined.

Moreover, Plaintiff's complaint, as plainly proven above, shows in fact that the Tennessee Board of Judicial Conduct is "front and center stage" as being implicated in this case. To find otherwise is to ignore the facts of Plaintiff's complaint. Plaintiff further directs the Court's attention to his memorandum supporting his TRO (Docket Entry 20). Plaintiff explicitly defined the parties including "Defendant STATE OF TENNESSEE." The Tennessee Board of Judicial Conduct is an agency of the state, part of the state, and is plainly implicated in Plaintiff's Second Amended Complaint.

Defendant goes on to assert "Here, it would be unfair for plaintiff to remove parties from a lawsuit but then insist upon injunctive relief against the same dismissed parties" Plaintiff's same argument applies, and Defendants cannot assert they are not "persons" and that

10

they are part of the state, and then assert they are not part of the state. Defendants and Magistrate's arguments fail utterly and completely.

Defendant's then make the audacious claim "such a result would constitute a clear violation of due process" Really? How so is it a violation of due process? Defendant PERKY does not define how this violates due process because such a false assertion is untrue. Conversely, the opposite is actually true and it would violate Plaintiff's right of due process to not preserve his evidence.

Unlike Defendant's baseless assertion without any supporting authority or legal argument, Plaintiff can easily demonstrate how failure to restrain destruction of evidence is a violation of due process. Pursuant to Fed. R. Civ. P. Rule 65, this Court has the authority to issue and grant the relief sought by Plaintiff and unnamed Plaintiffs, pursuant to its inherent equitable powers to enforce its Permanent Injunction. When, as here, the public interest is implicated, **this Court's equitable powers "assume an even broader and more flexible character** than when only a private controversy is at stake". FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996) (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946). Moreover, in considering an application for a TRO or preliminary injunction, the Court has the discretion to consider hearsay evidence. Flynt Dist. Co., Inc. v. Harvey, 734 F .2d 1389, 1394 (9th Cir. 1984) **(even inadmissible evidence may be given some weight when to do so serves the purpose of preventing irreparable harm before trial)**; see also Heideman v. S. Salt Lake City, 348 F. 3d 1182, 188 (10th Cir. 2003) ("The Federal Rules of Evidence do not

apply to preliminary injunction hearings."). In the case University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981), the Supreme Court stated;

> The purpose of a preliminary injunction is merely **to preserve the relative positions of the parties until a trial on the merits can be held**. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981) (at 395)

Plainly due process includes preserving the status quo, preserving evidence, and facilitating discovery. Obviously, failure to preserve Plaintiff's evidence would be a due process violation.

Again, due to the fact, this Court must review this matter de novo, Plaintiff directs the Court's attention to his TRO motion (Docket Entry 19) and supporting memorandum (Docket Entry 20). Both of these documents well establish this Court authority and duty to preserve Plaintiff's evidence. Plaintiff further asserts that the District Court Judge's review of these documents will prove beyond doubt the Magistrate's clearly erroneous ruling that is contrary to law and administration of justice.

Defendant then falsely asserts Plaintiff failed to satisfy the burden under Fed. R. Civ. P. Rule 65 regarding (1) likelihood of success on the merits, (2) whether movant would suffer irreparable injury (3) whether injunction would harm others, and (4) whether the public interest would be served.

Plaintiff wonders if Defendant's counsel (1) made a false statement to this court that "based on review of the record," when he did not review the record, (2) is intentionally mischaracterizing facts in an attempt to deceive this Honorable Court, or (3) simply did not comprehend the facts, allegations, and legal arguments of Plaintiff's Second Amended Complaint (Docket Entry 36), Plaintiff's motion for TRO (Docket Entry 19), and Plaintiff's supporting memorandum (Docket Entry 20).

Regarding (1) likelihood of success on the merits, Plaintiff directs the Court's attention to Plaintiff's Second Amended Complaint (Docket Entry 36) for de novo review. In this compliant, Plaintiff included EXHIBITS A- W and his statement of facts detailed throughout the complaint evidenced by certified court reporter transcripts facts proving Plaintiff's allegations.

Regarding (2) whether movant would suffer irreparable injury, it must be obvious when Defendant State asserts it maintains "relevant portions" of complaints filed against judges, this is just "racketeer" and "bad actor" language that avoids perjury while permitting destruction of evidence. The "heart" of Plaintiff's Third Cause of action, is that the State dismisses 100% of complaints filed against judges. It must be obvious to this Court, that the Defendant State would desire to destroy evidence proving this fact. It must be obvious to this Court, that destruction of these complaints, and however they define "relevant portions" would cause irreparable harm to Plaintiff's case.

Regarding (3) whether injunction would harm others, there is no harm whatsoever to anyone in preserving Plaintiff's evidence. None whatsoever. It is appropriate to enjoin

13

Defendants charged with deception and failure to provide Equal Protection from destroying evidence and doing so would place no significant burden on them. See SEC v. Unifund SAL, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990). (characterizing such orders as "innocuous").

Regarding (4) whether the public interest would be served, what greater "Public Interest" could be served than to reinstitute constitutional rights back into state court proceedings? What greater "Public Interest" could be served than to enforce a protection mechanism protecting "The People" then by ensuring proper oversight of judges? State court judges have been given tremendous power. Preventing abuse of their authority is essential and necessary to the health of our nation's democracy. What greater "Public Interest" could there be? This Court should be offended by such as false assertion as is Plaintiff.

Defendant then mischaracterizes Plaintiff's complaint in a most patronizing manner and states:

> Defendant respects Plaintiff's belief that Plaintiff did not receive a fair hearing and is dissatisfied by the result which Plaintiff, acting pro se, obtained in his underlying divorce lawsuit. Such dissatisfaction does not transform his personal dispute into one of general public interest. Plaintiff is ably appealing his divorce case, as well as pursuing other appeals. He may achieve appellate relief. However, nothing in Plaintiff's Objections support any contention that the Magistrate Judge's determination that Plaintiff failed to carry his burden of proof and satisfy the criteria of Rule 65 is clearly erroneous or contrary to the law

Simply put, Plaintiff is offended at such a patronizing and false summation of Plaintiff's complaint. This single statement smacks of corruption and a poorly veiled attempt to discredit Plaintiff's complaint, facts and evidence. This single statement demonstrates how "corrupt

14

racketeers" hide their corruption by ignoring facts, falsely discrediting a valid complaint, cause of action and properly made TRO. Plaintiff trusts this Honorable Court will not allow itself to be deceived in such a manner and will consider the facts de novo as is the Court's duty.

There is no doubt Plaintiff did not receive a fair hearing due to obvious deprivation of due process rights. Not only did Plaintiff not receive a fair hearing, but federal crimes were committed against him that are well evidenced in the record. Beyond doubt the Tennessee Board of Judicial Conduct aids and abets rights and federal law violations. The facts of Plaintiff's complaint, already well evidenced prove this fact. Furthermore, this Court is required to accept the facts of Plaintiff's complaint as true Bell Atlantic Corp., 27 S.Ct. 1955 (slip op., at 8-9) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Finally, with regards to Exhibits Plaintiff attached to his Objection to the Magistrates' R&R, **Defendant states without any basis**: "There is no suggestion, much less evidence, that Casey Moreland was involved with Plaintiff's divorce case or any subsequent aspect of Plaintiff's case."

Plaintiff did not suggest in any way that the corrupt Judge Moreland was involved in any way with Plaintiff's case. This statement made by Defendant PERKY is nothing more than a "cheap distraction" from Plaintiff's contention. Plaintiff trusts that this honorable court is not mislead by such a "cheap distraction" from Plaintiff's actual contention.

Plaintiff attached exhibits 1 through 4 to his Objection to the Magistrate's R&R to support two compelling facts and arguments, and as further evidence supporting the fact that there is no oversight of corrupt judges in Tennessee and "The People" must surrender and acquiesce to the tyranny of the state without hope and as helpless victims.

First, these exhibits plainly demonstrate, that in fact, heinously corrupt judges do exist in the State of Tennessee. It is a simple fact and law of nature, where one exists so too does another. The fact of Plaintiff's assertion in this regard is evidenced beyond doubt in that the Tennessee Board of Judicial Conduct's Annual Report, reports that 1.48 complaints are filed per day (See Docket Entry 36 p. 54 ¶ 179) and further reports that effectively 100% of **complaints** filed against judges by non-legal professionals in violation of the Equal Protection Clause. These facts are indisputable and further show "The People" are at great risk when they seek justice in Tennessee Courts.

Second, the Board of Judicial Conduct plainly stated to the news media that other complaints filed against that heinously corrupt judge would be dismissed. Plaintiff asserts, those complaints should not be dismissed but instead addressed and rectified. Just because that heinously corrupt judge was taken into federal custody should not negate the harm caused by him nor does it justify complaint dismissal.

Furthermore, due to the fact that the Board of Judicial Conduct stated there were other outstanding complaints against that heinously corrupt judge, there can be no doubt other complaints against the corrupt Judge Moreland were received and dismissed according to their own Annual Reports, further proving Plaintiff's allegations. This Court should grant Plaintiff's

TRO motion so as to preserve this critical evidence showing a pattern of "Corrupt Racketeering Activities," "Gross Negligence" and "Breach of Fiduciary Duty"

Due to the facts of Judge Moreland's heinous level of corruption, and due to the fact, the Board admitted of other complaints filed against that judge, and due to the further fact of that judge's long tenure, it must be true other complaints were made against that judge and dismissed subjecting "The People" to litigate before a corrupt judge. Again, this is no different than a law enforcement officer watching a gang rape and doing nothing. This Court should be appalled. Plaintiff's logic is beyond rebuttal, and this Court must step in preform its duty and protect "The People"

In the Supreme Court Case, Mitchum v. Foster, regarding enactment of 42 USC §1983, the Supreme Court stated §1983 was enacted to protect "The People" as follows:

> **Proponents of the legislation noted that state courts were being used to harass and injure individuals,** either because the state courts were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights**. (*Mitchum v. Foster, 407 US 225 - Supreme Court 1972* at 240)

Also, in the Mitchum case, the Supreme Court recognized that § 1983 was an "Act of Congress" permitting stay injunctions of state court proceedings.

> **The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law,** "whether that action be executive, legislative, or judicial." Mitchum v. Foster, 407 US 225 - Supreme Court 1972 (at 242)

Further considering the Mitchum Opinion, the Supreme Court referenced quotations of the legislators who enacted § 1983.

> This view was echoed by Senator Osborn: "**If the State courts had proven themselves competent** to suppress the local disorders, or **to maintain law and order, we should not have been called upon to legislate** . . . . We are driven by existing facts to provide for the several states in the South what they have been unable to fully provide for themselves; i. e., the full and complete administration of justice in the courts. And the courts with reference to which we legislate must be the United States courts." Id., at 653. And Representative Perry concluded: "Sheriffs, having eyes to see, see not; **judges, having ears to hear, hear not; witnesses conceal the truth or falsify it;** grand and petit juries act as if they might be accomplices . . . . [A]ll the apparatus and machinery of civil government, all the processes of justice, skulk away as if government and justice were crimes and feared detection. **<u>Among the most dangerous things an injured party can do is to appeal to justice.</u>**" Id., at App. 78. (id at 241)

The exact same circumstances described by Senator Osborn and Representative Perry, "*judges, having ears to hear, hear not*" and "*Among the most dangerous things an injured party can do is appeal to justice*" are the exact same circumstances that unfortunately occurred in the underlying litigation to this case.

Let not this Court be misled by Defendant PERKY'S mischaracterization of Plaintiff's complaint. Our congress recognized how dangerous state courts had become and for that reason enacted § 1983. It is this Court's duty to interpret and enforce the law. As the United States, Supreme Court stated in ex parte Young, 209 US 123 (1908)

> "It is most true that this court will not take jurisdiction if it should not; but **it is equally true that it must take jurisdiction if it should.** The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if

18

it be brought before us. **We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty.**" (at 143)

Plaintiff begs this Honorable Court to preserve his evidence and GRANT his TRO and sign the proposed order properly submitted with Plaintiff's TRO. Based upon the record, the stated facts of this case, supporting evidence, arguments of law, supporting authorities and in the "Public Interest," this Honorable Court should GRANT Plaintiff's TRO motion and sign the proposed order without delay.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

19

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

On this the 26th day of June, 2017

John Anthony Gentry, CPA

**Auditor's Compilation Report**

REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT

QUALIFIED OPINION

To whom it may concern;

I have compiled the Case Disposition Rates of eighteen (18) separate state judicial oversight boards, committees, etc. for the periods 2013 through 2016. The underlying state reports are the responsibility of the respective State's oversight boards. My responsibility was to compile and express an opinion on the respective dismissal rates of these states. I have not audited or reviewed the supporting data and accompanying reports and, accordingly do not express an opinion, or provide any assurance about whether state Annual Reports are free of material misstatement.

Each reporting agency is responsible for the preparation and fair presentation of their Annual Reports in accordance with the statutes and reporting guidelines of their respective state. Each state report is available for public viewing on each State's respective oversight board's website. A listing of those website is included below.

**Overview of the Analysis**

The overall average dismissal rate of complaints filed against judges is ninety-five and one-half percent (95.5%) across eighteen (18) states. The highest dismissal rate is ninety-nine and one-half percent (99.5%) in Connecticut.

In my opinion, the Annual Report for Kentucky's Judicial Conduct Commission is representative of; the types of complaints received, types of complainants, and types of proceedings, that resulted in complaints against Judges across all states. Typically, across all states, a larger percentage of complaints that are filed, are complaints arising out of Domestic Relations cases, and are filed by litigants, who are all non-legal professionals. Review of multiple state Annual Reports suggests that most of the complaints are filed due to "Legal Error" and complain that judges are not following the law.

The following table is a summary of complaints disposed annually and dismissal rates of total complaints disposed. In my opinion, this table is representative of the case dismissal rates of the respective state judicial oversight agency.



EXHIBIT 1

1

| | | Total Complaints | | | | |
|---|---|---|---|---|---|---|
| State | Agency Name | 2013 | 2014 | 2015 | 2016 | Dismissal Rate |
| Alabama | Judicial Inquiry Commission | | | | 204 | 93% |
| Arizona | Commission on Judicial Conduct | 341 | 412 | 354 | 358 | 95% |
| California | Commission on Judicial Performance | 1,181 | 1,174 | 1,231 | 1,210 | 97% |
| Colorado | Commission of Judicial Discipline | 189 | 172 | 175 | | 96% |
| Connecticut | Judicial Review Counsil | 134 | 171 | 93 | | 100% |
| Florida | Judicial Qualifications Commission | 625 | 680 | 771 | | 84% |
| Georgia | Judicial Qualifications Commission | 451 | 412 | | | 99% |
| Kentucky | Judicial Conduct Commission | 234 | 192 | 266 | 208 | 97% |
| Maryland | Commission on Judicial Disabilities | 139 | 137 | 158 | 201 | 97% |
| Michigan | Judicial Tenure Commission | 595 | 568 | 512 | 587 | 97% |
| New Mexico | Judicial Standards Commission | 184 | 188 | 189 | | 89% |
| New York | Commission On Judicial Conduct | 1,770 | 1,767 | 1,959 | 1,944 | 99% |
| North Carolina | Judicial Standards Commission | 264 | 228 | 238 | 256 | 95% |
| South Carolina | Commission on Judicial Conduct | 298 | 293 | 302 | 290 | 94% |
| Tennessee | Board of Judicial Conduct | 350 | 411 | 404 | 381 | 96% |
| Texas | State Commission on Judicial Conduct | 1,109 | 1,080 | 1,242 | 1,049 | 94% |
| Utah | Utah Judicial Conduct Commission | 81 | 67 | 69 | 79 | 98% |
| Washington | Commission on Judicial Conduct | 319 | 335 | 310 | | 98% |
| Note: Dismissal Rate is calculated as cases dismissed / total complaints received. | | | | Average Dismissal Rate | | 95.5% |
| | | | | Median Dismissal Rate | | 96.5% |

The following table lists states whose Annual Reports were either not available for public viewing or could not be located on the state agency's website.

| New Jersey | Advisory Committee on Judicail Conduct | Unreported |
|---|---|---|
| Montana | Judicial Standards Commission | Unreported |
| Virginia | Judicial Inquiry and Review Commission | Unreported |
| Ohio | Office of Disciplinary Counsel | Unreported |
| Louisiana | Judicary Commission of Louisiana | Unreported |

## Qualification

Reporting and classification of dismissal rates is not consistent between states. The reporting periods are slightly different from state to state, as are the classification of dismissals. Some states have information available for multiple periods while one state only has information available for one year.[1]  For the state with only one year

---

[1] For states whose annual report includes a table with multiple period statistics, a single annual report is included as an exhibit.  For states that do not include a table reporting on multiple periods, excerpts have been included from several years of pertinent data for verification purposes, for each year reported, a single cover page has been included to segregate annual reports attached to this compilation report.

2

of statistics available, I have assumed that single period is a representative sample, as it is consistent with other reporting states.

Where complaints were dismissed for reasons of; judge's resignation, vacancy of office, term expiration, retirement, and similar reasons for dismissal, those dispositions are included as part of the dismissal rate.

Considering these facts, this opinion is "qualified" with a reasonable error rate of plus or minus one to three percent in the calculation of the Average Dismissal Rate.

**Observations**

Review of the Complaints where disciplinary action was initiated by the various oversight boards, shows that primarily the only complaints acted upon, are complaints filed by legal professionals (other judges and legal professionals) and the state agencies tasked with providing oversight of judges do not provide Equal Protection for the general public, and or, non-legal professionals.

Generally, Annual Reports for most states are easily located on their respective websites. However, some state Annual Reports are difficult to locate and other states do not report case dispositions. For example, the Annual Reports for Texas are not readily apparent on the website but can be located by typing "Annual Reports" into the site's search tool.

While dismissal rates are easily decipherable in many state Annual Reports, some state Annual Reports require careful review of the language and data to identify dismissal rates, and some reports appear to be intentionally misleading.

Other states like Arizona have changed the format of their report, making analysis of dismissal rates much less obvious to the general public. The Arizona Annual Report for 2013 was very simple to review and the dismissal rate for that year was easily calculated, but after the report format was changed in 2014, the dismissal rate became much less obvious, which may be especially true concerning the general public.

Of particular note, regarding historical reporting of the various agencies was the following excerpt from the New York 2014 Annual Report as follows:

> **The number of complaints received annually by the Commission in the past 10 years has substantially increased compared to the first two decades of the Commission's existence.**

3

This above statement is followed by the below graph:

This report covers Commission activity in the year 2013.



New Complaints (Left)    Preliminary Inquiries (Center)    Investigations (Right)

Considering the fact that the larger percentage of complaints against judicial officials arises out of Domestic Relations litigation, the above graph suggests a sharp rise in complaints against judges that can perhaps be attributed to the nation's "No-Fault" divorce legislation enacted by Ronald Reagan in 1969 which all by five states adopted in the early 1970s.

Respectfully Submitted,

John A Gentry

John Anthony Gentry, Active CPA
State of MD License No. 27062

4

# Judicial Oversight Agencies

**National Center for State Courts**
http://www.ncsc.org/Topics/Judicial-Officers/Ethics/State-Links.aspx

**Alabama Judicial Inquiry Commission**
http://judicial.alabama.gov/JIC/JIC.cfm

**Arizona Commission on Judicial Conduct**
http://www.azcourts.gov/azcjc/Annual-Reports/2010-2019

**California Commission on Judicial Performance**
https://cjp.ca.gov/annual_reports/

**Colorado Commission of Judicial Discipline**
http://www.coloradojudicialdiscipline.com/Annual_reports.html

**Connecticut Judicial Review Council**
http://www.ct.gov/jrc/cwp/view.asp?a=3020&q=394914&jrcNav=|

**Florida Judicial Qualifications Commission**
http://www.floridajqc.com/

**Georgia Judicial Qualifications Commission**
http://www.gajqc.com/annual_reports.cfm

**Kentucky Judicial Conduct Commission**
http://courts.ky.gov/commissionscommittees/JCC/Pages/publicinformation.aspx

**Maryland Commission on Judicial Disabilities**
http://www.courts.state.md.us/cjd/annualreport.html

**Michigan Judicial Tenure Commission**
http://jtc.courts.mi.gov/annual_report/index.php

**New Mexico Judicial Standards Commission**
https://www.nmjsc.org/resources/annual-reports/

**New York State Commission on Judicial Conduct**
http://cjc.ny.gov/Publications/AnnualReports.htm

**North Carolina Judicial Standards Commission**
http://www.nccourts.org/Courts/CRS/Councils/JudicialStandards/

# Judicial Oversight Agencies (Cont.)

**South Carolina Commission on Judicial Conduct**
http://m.sccourts.org/discCounsel/commissionJC.cfm

**Tennessee Board of Judicial Conduct**
https://www.tncourts.gov/board-of-judicial-conduct

**Texas State Commission on Judicial Conduct**
http://www.scjc.texas.gov/about/annual-reports.aspx

**Utah Judicial Conduct Commission**
http://jcc.utah.gov/reports/index.html

**Washington Commission on Judicial Conduct**

|                  | 2013   | 2014    | 2015    | 2016   | Dismissal Rate |
|------------------|--------|---------|---------|--------|----------------|
| **Alabama**      |        |         |         |        |                |
| Total Complaints |        |         |         | 204    |                |
| Dismissals       |        |         |         | 190    | Average        |
| Dismissal Rate   |        |         |         | 93.14% | 93.14%         |
| **Arizona**      |        |         |         |        |                |
| Total Complaints | 341    | 412     | 354     | 358    |                |
| Dismissals       | 311    | 399     | 342     | 343    | Average        |
| Dismissal Rate   | 91.20% | 96.84%  | 96.61%  | 95.81% | 95.12%         |
| **California**   |        |         |         |        |                |
| Total Complaints | 1,181  | 1,174   | 1,231   | 1,210  |                |
| Dismissals       | 1,151  | 1,149   | 1,190   | 1,165  | Average        |
| Dismissal Rate   | 97.46% | 97.87%  | 96.67%  | 96.28% | 97.07%         |
| **Colorado**     |        |         |         |        |                |
| Total Complaints | 189    | 172     | 175     |        |                |
| Dismissals       | 182    | 168     | 167     |        | Average        |
| Dismissal Rate   | 96.30% | 97.67%  | 95.43%  |        | 96.47%         |
| **Connecticut**  |        |         |         |        |                |
| Total Complaints | 134    | 171     | 93      |        |                |
| Dismissals       | 132    | 171     | 93      |        | Average        |
| Dismissal Rate   | 98.51% | 100.00% | 100.00% |        | 99.50%         |
| **Florida**      |        |         |         |        |                |
| Total Complaints | 625    | 680     | 771     |        |                |
| Dismissals       | 548    | 610     | 570     |        | Average        |
| Dismissal Rate   | 87.68% | 89.71%  | 73.93%  |        | 83.77%         |
| **Georgia**      |        |         |         |        |                |
| Total Complaints | 451    | 412     |         |        |                |
| Dismissals       | 444    | 410     |         |        | Average        |
| Dismissal Rate   | 98.45% | 99.51%  |         |        | 98.98%         |
| **Kentucky**     |        |         |         |        |                |
| Total Complaints | 234    | 192     | 266     | 208    |                |
| Dismissals       | 231    | 187     | 252     | 200    | Average        |
| Dismissal Rate   | 98.72% | 97.40%  | 94.74%  | 96.15% | 96.75%         |
| **Maryland**     |        |         |         |        |                |
| Total Complaints | 139    | 137     | 158     | 201    |                |
| Dismissals       | 135    | 134     | 151     | 193    | Average        |
| Dismissal Rate   | 97.12% | 97.81%  | 95.57%  | 96.02% | 96.63%         |

| | 2013 | 2014 | 2015 | 2016 | Dismissal Rate |
|---|---|---|---|---|---|
| **Michigan** | | | | | |
| Total Complaints | 595 | 568 | 512 | 587 | |
| Dismissals | | | | 570 | Average |
| Dismissal Rate | | | | 97.10% | 97.10% |
| | | | | | |
| **New Mexico** | | | | | |
| Total Complaints | 184 | 188 | 189 | | |
| Dismissals | 162 | 173 | 167 | | Average |
| Dismissal Rate | 88.04% | 92.02% | 88.36% | | 89.47% |
| | | | | | |
| **New York** | | | | | |
| Total Complaints | 1,770 | 1,767 | 1,959 | 1,944 | |
| Dismissals | 1,748 | 1,733 | 1,949 | 1,925 | Average |
| Dismissal Rate | 98.76% | 98.08% | 99.49% | 99.02% | 98.84% |
| | | | | | |
| **North Carolina** | | | | | |
| Total Complaints | 264 | 228 | 238 | 256 | |
| Dismissals | 253 | 215 | 225 | 240 | Average |
| Dismissal Rate | 95.83% | 94.30% | 94.54% | 93.75% | 94.60% |
| | | | | | |
| **South Carolina** | | | | | |
| Total Complaints | 298 | 293 | 302 | 290 | |
| Dismissals | 282 | 274 | 286 | 275 | Average |
| Dismissal Rate | 94.63% | 93.52% | 94.70% | 94.83% | 94.42% |
| | | | | | |
| **Tennessee** | | | | | |
| Total Complaints | 350 | 411 | 404 | 381 | |
| Dismissals | 335 | 396 | 391 | 362 | Average |
| Dismissal Rate | 95.71% | 96.35% | 96.78% | 95.01% | 95.96% |
| | | | | | |
| **Texas** | | | | | |
| Total Complaints | 1,109 | 1,080 | 1,242 | 1,049 | |
| Dismissals | 1,072 | 1,018 | 1,151 | 983 | Average |
| Dismissal Rate | 96.66% | 94.26% | 92.67% | 93.71% | 94.33% |
| | | | | | |
| **Utah** | | | | | |
| Total Complaints | 81 | 67 | 69 | 79 | |
| Dismissals | 78 | 65 | 69 | 79 | Average |
| Dismissal Rate | 96.30% | 97.01% | 100.00% | 100.00% | 98.33% |
| | | | | | |
| **Washington** | | | | | |
| Total Complaints | 319 | 335 | 310 | | |
| Dismissals | 313 | 330 | 305 | | Average |
| Dismissal Rate | 98.12% | 98.51% | 98.39% | | 98.34% |