# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | |
|---|---|
| **JOHN ANTHONY GENTRY, sui juris/pro se** ) | |
| ) | |
| Plaintiff ) | |
| ) | **CASE NO. 3:17-0020** |
| vs. ) | |
| ) | |
| **THE STATE OF TENNESSEE;** ) | |
| **PAMELA ANDERSON TAYLOR;** ) | |
| **BRENTON HALL LANKFORD;** ) | **JURY TRIAL DEMANDED(12)** |
| **SARAH RICHTER PERKY;** ) | |
| **UNNAMED LIABILITY INSURANCE** ) | |
| **CARRIER(S); Et al** ) | |
| ) | |
| Defendants ) | |

---

## MEMORANDUM SUPPORTING PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT

---

Pursuant to Local Rules, U.S. District Court, Middle District of Tennessee, Rule 7.01

(a), this memorandum of law is properly filed in support of Plaintiff's Motion For Leave Of

Court To Amend Complaint.

### TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 2

LEAVE OF COURT TO AMEND REGARDING DEFENDANT SARAH RICHTER PERKY......... 3

LEAVE OF COURT TO AMEND REGARDING DEFENDANTS PAMELA ANDERSON
TAYLOR AND BRENTON HALL LANKFORD ............................................................................ 17

LEAVE OF COURT TO AMEND REGARDING DEFENDANT STATE OF TENNESSEE ........... 29

CONCLUSION ............................................................................................................................. 33

1

Pursuant to Fed. R. Civ. P. Rule 15 (a) (2), Plaintiff requests leave to amend so as to ensure justice prevails in this matter. In the case, *Kottmyer v. Maas, 436 F. 3d 684 - Court of Appeals, (6th Cir. 2006)*, the 6th District Court of Appeals stated;

> Under Federal Rule of Civil Procedure 15(a), a district court should freely grant a plaintiff leave to amend a complaint "**when justice so requires**." Fed. R. Civ. Pro. 15(a) (at 692).

**INTRODUCTION**

As stated in Plaintiff's motion which this memorandum supports, Plaintiff alleges Defendants are "Racketeers" and "Confidence Men." "Confidence men are not "crooks" in the ordinary sense of the word. They are suave, slick and capable. **Their depredations are very much on the genteel side. Because of their high intelligence, their solid organization, the widespread convenience of the law**, and the fact that the victim [sometimes] must admit criminal intentions if he wishes to prosecute, **society has been neither willing nor able to avenge itself affectively**. (*See Docket Entry 86 EXHBIT 2 Scamming: The Misunderstood Confidence Man, Yale Journal of Law & the Humanities p. 250*)"

Due to the fact that Defendants are highly intelligent, solidly organized, and extremely proficient in their "corrupt racketeering activities" and "Confidence Games," this case requires that Plaintiff's Complaint include beyond more than substantial facts and supporting evidence so as to establish an undeniable set of facts, so that Plaintiff can prove his case and justice be served. In light of this simple fact, nature of the case (confidence game), and irrefutable logic, justice demands that Plaintiff be granted leave of court to amend and file his Third Amended

2

Complaint. This Court should not lose sight of the fact that "Confidence Men" are "suave, slick, and capable" which makes it all the more difficult for society and Plaintiff to receive redress of their gross violations of duty, constitutional rights, and federal laws.

## LEAVE OF COURT TO AMEND REGARDING DEFENDANT SARAH RICHTER PERKY

Plaintiff requests leave to amend regarding Defendant PERKY, so as to state additional facts further substantiating his cause of action against Defendant SARAH RICHTER PERKY, and her conspiracy with Defendants TAYLOR, LANKFORD and Judge Thompson to defraud Plaintiff of his income and property, and to deny Plaintiff his right of due process and equal protection under the law. Defendant has generally averred Plaintiff has failed to state a sufficiently factual based complaint (Docket Entry 50). Plaintiff should be granted leave to amend to include additional well-evidenced facts, so as to ensure justice is served. Certainly, this Court must agree, when an attorney is accused of turning predatory on her own client, and in so doing violates federal law, as did Defendant PERKY, a Plaintiff seeking redress in a matter as such, should be provided every opportunity to seek redress and certainly should be provided leave of court to amend pleadings.

In addition to further substantiating Plaintiff's cause of action, these additional facts evidence the harm, and Defendant PERKY'S knowledge of harm caused by her against Plaintiff. Defendant PERKY has asserted Plaintiff did not adequately state the harm he suffered (Docket Entry 50 p 25). Plaintiff should be granted leave to amend to include additional statement of facts that prove beyond doubt harm against Plaintiff, and Defendant PERKY'S

3

knowledge of the intentional harm which she caused Plaintiff to suffer. Plaintiff should be granted leave to amend to include these additional facts in his complaint as follows:

On March 10, 2015, Defendant SARAH RICHTER PERKY, represented Plaintiff during a Hearing of Plaintiff's "Petition for Contempt", "Pendente Lite Support" and "Partner Compensation" for his Wife's obvious violations of statutory injunction.

During the underlying litigation which was a divorce case, Plaintiff proved his ex-wife used her position as president of a company that Plaintiff made successful by creating a patent pending product, to harass Plaintiff during divorce proceedings by: cancelling his credit and bank cards, cancelling his benefits including health insurance, confiscating his sole source of transportation, and terminating his employment in the business he made successful; all in violation of statutory injunction.

On March 10, 2015, as stated in Plaintiff's Second Amended Complaint (Docket Entry 36 pages 21 – 24), Plaintiff alleges Defendant SARAH RICHTER PERKY, in conspiracy with Defendants PAMELA ANDERSON TAYLOR, BRENTON HALL LANKFORD and The Honorable Judge Joe H Thompson, intentionally failed to present arguments of law that Husband should not be denied partner income during pendency, causing Plaintiff great financial and emotional harm. This "failure to present arguments" was nothing more than a "Confidence Game" perpetrated by a "Corrupt Racketeering Enterprise" intended to harm Plaintiff. In addition to failing to present critical legal arguments, Defendant PERKY ignored and did not complain of obvious perjury as evidenced below.

4

Both the trial court and Defendant PERKY knew Wife gave perjurious testimony and had the ability to provide support as evidenced in the record as follows:

> Q. Ms. Gentry, **do you have the resources to pay support...**?
> A. **I don't.** I'm borrowing money from my parents as it is. (*Docket Entry 49, Exhibit 2 transcript p. 203*).

A few minutes later, the following dialogue also took place between the Court and Wife;

> THE COURT: .... Let me do this. **Ms. Gentry, have you replaced Mr. Gentry? ...**
> THE WITNESS: **He has not been replaced. We've actually found that between Dancho and I that we're able to handle the duties that he had.** (*Docket Entry 49, Exhibit 2 transcript p.204*).

**Even a layperson should recognize that if a business expense like Plaintiff's compensation and benefits were no longer being paid by the business,** then that was a cost savings to the business. Plaintiff's Wife asserted the business was her separate property, **therefore that cost savings creates income** for the business, which according to Plaintiff's Wife was her income. Thus she of **course she had the ability to provide support, and it is obvious that she perjured herself in an effort to cause Plaintiff financial harm.** It is obvious Plaintiff should not have been denied temporary support, especially since he lost his legal representation for non-payment. The Ninth Circuit Court of appeals recognized similar circumstances in the case, Hardwick v. County of Orange, Court of Appeals, 9th Circuit 2017.

> **"No official with an IQ greater than room temperature in Alaska could claim that he or she did not know that the conduct at the center of this case violated both state and federal law... ... Perjury is a crime under both federal and California state law, as is the knowing submission of false evidence to a court.** 18 U.S.C. § 1621; Cal. Penal Code § 118. Both crimes make no distinction between criminal and civil proceedings. **This malicious criminal behavior is hardly conduct for which qualified immunity is either justified or appropriate.** The doctrine exists to protect mistaken but reasonable

5

decisions, not purposeful criminal conduct. **As the Supreme Court repeated in Sheehan, officials who knowingly violate the law are not entitled to immunity**. 135 S. Ct. at 1774 (quoting Ashcroft, 131 S. Ct. 2085)." *Hardwick v. County of Orange, Court of Appeals, 9th Circuit 2017.*

Obviously, Defendant PERKY should have brought this obvious perjury to the Court's attention and obviously did not do so because she was in conspiracy with Judge Thompson and Defendants TAYLOR and LANKFORD to extort property from Plaintiff under color of law and to deny Plaintiff due process. Defendant Perky graduated from the University of Memphis School of Law *cum laude* (See Docket Entry 54 and exhibit 1 of that entry) which evidences her high level of intellect and that this was nothing less than a "Confidence Game" and "Racketeering Scheme" designed to deny Plaintiff due process under color of law and to deny him his rightful income and property.

Opposing counsel vehemently argued she should be allowed cross-examination and to present her own evidence and testimony (Docket Entry 49, Exhibit 2 transcript p. 181, 182). Defendant PERKY made no such arguments whatsoever demanding cross-examination.

Defendant TAYLOR, in violation of rules of procedure, moved for directed verdict and Defendant PERKY did not raise objection in any way whatsoever. According to Tenn. R. Civ. P. a party cannot call for directed verdict without cross-examination of witnesses presented by the movant. Obviously, this was nothing more than a "mock trial" with Defendants PERKY, TAYLOR, LANKFORD, and Judge Thompson all in conspiracy and collusion together to deny Plaintiff due process of law so as to defraud and extort him of his income and property under color of law.

6

At the end of that hearing, Judge Thompson stated he would rule on Pendente Lite

Support to be awarded to Plaintiff on or about March 23, 2015 (Docket Entry 49, Exhibit 2

transcript p. 211). During that hearing, Judge Thompson also stated he was "going to get

something in place" (Docket Entry 49, Exhibit 2 transcript p. 182) regarding temporary support

for Plaintiff. During that hearing Judge Thompson ordered both parties to submit objections to

income and expense statements by March 23, 2017 (Docket Entry 49, Exhibit 2 transcript p.

212) and then he would make a ruling on temporary support for Plaintiff.

Knowing that Judge Thompson had stated he was going to be attending a Judicial

Conference, and he "*had a prearranged thing*" he had to attend, and was going to be "*gone for*

*two weeks at the end of April and beginning of May*" (Docket Entry 49, Exhibit 2 transcript p.

182), Defendant SARAH RICHTER PERKY encouraged Plaintiff to agree to an order to delay

proceedings. Proof of this order is attached as EXHIBIT 1. Plaintiff will testify and the facts

will show that Plaintiff did not desire to agree to this order and only did so on advice of

Defendant PERKY despite it not being in his or her own best interests.

During the Hearing on March 10, 2015, Plaintiff's Wife was represented by both

Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD as well

as having a para legal on her legal team. Obviously, knowing Judge Thompson's upcoming

conflicting schedule, if Defendant PERKY were looking out for Plaintiff's best interests and

was not in conspiracy with Defendants PAMELA ANDERSON TAYLOR, BRENTON HALL

LANKFORD and The Honorable Judge Joe H Thompson, Defendant PERKY would not have

encouraged Plaintiff to agree to that order. Defendant PERKY knew Defendant LANKFORD

was present throughout proceedings and was more than capable of providing the ordered response by March 23, 2015. Defendant PAMELA ANDERSON TAYLOR'S "excuse" for requesting delay was "family issues" a frequent "excuse" of Defendant TAYLOR to perpetrate dilatory actions.

As evidenced in EXHIBIT 11, which is an excerpt of Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD'S client billing detail, it was in fact Defendant BRENTON HALL LANKFORD who was the attorney preparing the ordered objections to income and expense statements, which proves beyond any doubt that there was no need to delay proceedings evidencing conspiracy. This billing detail further evidences a one-half hour phone call between Defendant TAYLOR and PERKY. This begs the question, why would Defendant's need to a half-hour to discuss delaying proceedings for "family issues" further evidencing conspiracy. Very obviously, the facts prove there was no need to delay proceedings and Defendants were conspiring against Plaintiff to deny him due process.

As further evidence of this conspiracy, Plaintiff draws the court's attention to another email between Plaintiff and his former counsel's co-counsel Ryan Johnson EXHIBIT 12. Even as a young rookie attorney, Ryan Johnson knew Defendant's TAYLOR'S dilatory actions of claiming "family issues" was no reason for delaying proceedings. As evidenced in EXHIBIT 12, Mr. Johnson responded to Plaintiff stating: "*Pam Taylor has a family issue and cannot confirm a court date until after 1/28. **Accordingly, she's known about this court date for some time and has other attorneys in her office that can cover such a hearing, so everything is still set for Monday.**" Obviously, this young rookie attorney had not yet been indoctrinated into the

8

"Corrupt Racketeering Enterprise" yet, and was looking out for Plaintiff's interests. Unfortunately, for Plaintiff his counsel Rob Turner quickly schooled this young attorney in "vexatious litigation," and that hearing was ultimately delayed due to Defendant TAYLOR'S so called "family issues"

Again, this court should keep in mind *"Confidence men are not "crooks" in the ordinary sense of the word. They are suave, slick and capable*." Putting together the above facts, and those to follow, this is an obvious and common "Racketeering Scheme" designed to force a litigant into a pro se status so he can later be bullied, extorted from, denied due process and deprived of property.

As further evidence of Defendant PERKY's "trickery," Defendant Perky emailed Plaintiff asserting a "good argument that the entire business is marital property under an implied partnership theory." This email is attached as EXHIBIT 2. Plaintiff asserts Defendant PERKY was "testing the waters" to determine if Plaintiff had knowledge of the "legal theories" of commingling, transmutation, as well as statutory law that a spouse who makes significant contributions to the preservation and appreciation is entitled to the income and appreciation in value of separate property. Again, Defendant PERKY knew well these stronger doctrines as evidenced in Plaintiff's Second Amended Complaint (Docket Entry 36 p. 25 ¶ 74 – 77). Of course, not knowing these other stronger legal doctrines, Plaintiff placed his trust Defendant PERKY and entered into a legal agreement with her (Docket Entry 36 p. 25 ¶ 60 and EXHIBIT A).

9

On April 13, 2015, thirty-four (34) days post hearing, Plaintiff began emailing Defendant PERKY'S assistant Robyn Gornicki-Davis about when Judge Thompson was going to order Pendente Lite Support was going to be awarded, due to the fact he was destitute (Docket Entry 49, Exhibit 2 transcript p. 218). In this email, Plaintiff stated "*I'm so scared of losing my home*" and "*I'm afraid since it has taken so long, my case is off the radar, forgotten and buried.*" Defendant PERKY's assistant responded stating "*The Judge is out sick. His assistant advises that it is on his desk and that he has been working on it.*" Email is attached as EXHIBIT 3.

On April 17, 2015, Plaintiff again followed up with Defendant PERKY'S assistant and asked "*Is there any way to call and see if the Judge has been out sick all week without annoying him. It would ease my mind to know what is going on. My court date was 5 weeks ago and I was hoping to hear something by now. I am very concerned about losing my home.*" Ms. Gornicki-Davis responded stating: "*Sorry, No answer and no response from them today.*" This email is attached as EXHIBIT 4.

Plaintiff followed up on the above EXHIBIT 4 email and asked: "*Is it possible to speak with the Judge's secretary directly to see what is going on or is your only access voicemail and email. **I've been through a lot in life and this is by far the and most emotionally painful experience of my life. I would be grateful for any help in finding out what is going on**.*" This email is attached as EXHIBIT 5 and proves Defendant PERKY knew the harm she had caused to Plaintiff; both financial harm and emotional trauma. As evidenced, Defendant PERKY was in fact copied on these emails. Defendant PERKY's assistant responded and stated: "*I am attempting to speak with her. I have left her voicemail and sent her an email.*"

10

In not finding any relief from contacting Defendant PERKY'S assistant, Plaintiff contacted Defendant PERKY directly and asked her to confirm communications to the Judge's office. Defendant Perky responded stating *"I spoke with Robyn and she confirmed that she conveyed your **dire financial circumstances including that you were at risk of losing the marital residence** when she spoke with the Judge's secretary last week. Hopefully we will receive an order this week."* This email from Defendant PERKY is attached as EXHIBIT 6 and further proves Defendant PERKY knew the harm being suffered by Plaintiff as a result of her obvious conspiracy. Plaintiff reminds this Honorable Court, Defendants are "Confidence Men" perpetuating "Racketeering Schemes" and are "suave, slick and capable." and their scheme becomes more obvious in considering all of the facts above and further facts to follow.

Attached is EXHBIT 7 which is an email from Defendant PERKY and confirmation that a release form authorizing Plaintiff's Wife and her counsel Defendant TAYLOR to contact Plaintiff's mortgage lender to confirm Plaintiff's home was only ten days pending foreclosure.

EXHIBIT 8 attached is another email from Defendant PERKY to Plaintiff dated April 28, 2015, in which Defendant PERKY **advises Plaintiff as a CPA** to seek employment *"even it it is bagging groceries, cleaning houses, etc. in case the Court takes longer to issue its decision than you expect."* Incredulously, previously on March 16, 2015, Defendant PERKY advised Plaintiff not to accept a job. EXHIBIT 9. Obviously, Defendant PERKY was giving Plaintiff conflicting advice and not looking out for his best interests. The obvious "Confidence Game" and "Racketeering Scheme" here is to force a litigant into insolvency so they have no means to provide for their own legal representation, thus forcing litigants like Plaintiff into a

11

forced involuntary pro se status so they can then be bullied and deprived of rights and property and extorted from as Plaintiff was throughout proceeding "mock trails" and "mock hearings".

On May 21, 2015, Defendant PERKY filed a Motion to Withdraw for non-payment of attorney's fees by Plaintiff EXHIBIT 10. Even as Plaintiff's counsel withdrew for non-payment, Judge Thompson refused to issue ruling on Pendente Lite Support for Plaintiff. This **further proves the fact that a ruling on support for Plaintiff didn't merely "slip through the cracks" as falsely asserted by Judge Thompson, but was a malicious denial of due process (See p. 28- 29 below).**

With these facts now stated, let us consider this "suave and slick" "Confidence Game" and "Racketeering Scheme" designed to deprive plaintiff of due process, equal protection under the law, property, and income from property.

March 10, 2015 Plaintiff was subjected to a "mock trail." During this "mock trail" Defendant PERKY and Judge Thompson knew Plaintiff's ex wife perjured herself when she said she couldn't provide support while subsequently stating Plaintiff had not been replaced in the business creating a cost savings (income for Wife). Defendant Perky failed to make critical arguments of law that would "win the day" for Plaintiff providing him his rightful income during pendency. Plaintiff was advised by Defendant PERKY not to accept employment. Knowing Plaintiff is a CPA, Plaintiff was later advised to "bag groceries or clean houses." Plaintiff repeatedly inquired about a ruling on support, communicated the emotional pain and financial harm he was suffering and was effectively told he was at the mercy of the Court and court's schedule. Knowing Plaintiff should have been provided support, knowing Plaintiff

12

should not have been denied income from his business due to doctrines of commingling, transmutation, and statutory law, knowing Defendant PERKY would be paid, if Plaintiff were awarded Pendente Lite Support, or if his right to income were properly enforced by the court, instead of fighting for her client and her own income, Defendant PERKY instead withdrew.

Even a layperson can see the obvious "Confidence Game" and "Racketeering Scheme" inflicted upon Plaintiff. Most certainly a legal professional and any Judge can see what happened here was nothing less than a "Corrupt Racketeering Scheme" and "Confidence Game." Obviously if Defendant PERKY were looking out for Plaintiff's best interests as well as her own interests for getting paid, she would have filed a motion for status update or similar such motion which plainly would have been in her own best interests as well as Plaintiff's.

Case in point, this Court should consider the fact of a motion Plaintiff filed in state court in case number 16C2615 currently being heard before the Second Circuit Court for Davidson County EXHIBIT 11. That case is a lawsuit by Plaintiff against Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD for Fraud, Constructive Fraud, Abuse of Process, and Intentional Infliction of Emotional Distress. In that case, despite overwhelming and exhaustive higher court opinion and legal arguments proving Plaintiff's case should not be dismissed, that Court dismissed Plaintiff's complaint on the failed arguments of Litigation Privilege and Res Judicata in a "tongue in cheek" false application of law by the Honorable Judge McClendon.

As a result of that "erroneous dismissal", Plaintiff then filed a Motion to Alter that was heard on April 21, 2017. Again, Plaintiff proved his case should not be dismissed on false

13

application of the Litigation Privilege and res judicata doctrines. That court agreed to take the matter "under advisement" and would issue a ruling at a later date. Due to the fact that that court failed to issue timely ruling, Plaintiff filed "Plaintiff's Motion for Status of Ruling" **EXHIBIT 11.** In this motion, Plaintiff respectfully reminded that court as follows:

Tenn. Sup. Ct. Rule 10, Code of Judicial Conduct Canon 2, Rule 2.5 (A)states;

> A judge shall perform judicial and administrative duties competently, **promptly and diligently**.

TENN. SUP. CT. R. 10, Canon 2, Rule 2.5, Comments [1], [2] [3], [4] and [5] state;

> [1] Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.
>
> [2] **A judge should seek the necessary docket time, court staff, expertise, and resources to discharge all adjudicative and administrative responsibilities**.
>
> [3] **Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties,** to be punctual in attending court and **expeditious in determining matters under submission**, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end.
>
> [4] **In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay**. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

14

[5] **A judge is required by law to promptly dispose of cases.** *See, e.g.,* **Tenn. Code Ann. § 20-9-506 (in a non-jury case, judge must render decision and enter judgment within sixty days of completion of trial); Tenn. Code Ann. § 40-30-111(d) (court must rule within sixty days of conclusion of proof;** final disposition of capital case must be made within one year of filing of petition); S. Ct. R. 11, § III(c) (no case may be held under advisement for more than sixty days; motions or other decisions that delay trial or final disposition shall not be held under advisement for more than thirty days, absent most compelling of reasons).

Of course, Defendant PERKY could have filed a similar motion or even a complaint against Judge Thompson with the Board of Judicial Conduct for failure to perform judicial responsibilities timely. This begs the question: "Why would Defendant PERKY not file a motion for status update on ruling, knowing Plaintiff's financial suffering as well as non-payment of her own legal fees." Plaintiff alleges the only answer can be Defendant Perky breached her fiduciary duty to Plaintiff through conspiracy to deprive Plaintiff of due process, and equal protection under the law, property, and income from property.

On March 10, 2015 Defendant Perky knew Judge Thompson stated he would rule thirteen (13) days later on March 23, 2015 or soon thereafter. The evidence proves Plaintiff was complaining about Judge Thompson's failure to issue timely ruling thirty-five (35) days post hearing. Forty-nine (49) days post hearing instead of filing a motion for status update or otherwise demanding on behalf of her client that Judge Thompson issue a ruling, Defendant Perky instructs Plaintiff to see work "bagging groceries or cleaning houses." Knowing it is also in her best interest for the judge to issue a ruling so she could be paid, seventy-two (72) days

15

post hearing Defendant PERKY instead files a "Motion to Withdraw." On June 8, 2015, in conspiracy with Judge Thompson, Defendant PERKY'S "Motion to Withdraw" was granted.

> It was established **over a century ago** that trial courts have wide discretion in requiring a husband to pay for the reasonable necessities of his wife, including expenses of divorce litigation. ... ...**If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel** Fox v. Fox, 657 S.W.2d 747 (Tenn.1983).

It is appallingly obvious Defendant PERKY made a patently false statement asserting she had done "*extensive research*" which cannot possibly be true unless she is entirely inept. It cannot be true that Defendant PERKY is inept due to the fact she graduated cum laude (See Docket Entry 54 and exhibit 1 of that entry). Defendant PERKY is not inept. In fact, she is a "Corrupt Racketeer" and "Oath Breaker" who conspired against her own client she contracted to represent, knowing full well the harm she was causing him.

**Instead of considering whether or not this complaint should be dismissed, this Court should instead be considering whether or not to refer this matter to a U.S. Attorney for criminal charges**. Without doubt, justice requires Plaintiff should be granted leave of court to amend and state these facts in his Third Amended Complaint.

Moreover, this Court is required to accept Plaintiff's facts and allegations as true: Bell Atlantic Corp., 27 S.Ct. 1955 (slip op., at 8-9) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683,

16

40 L.Ed.2d 90 (1974). A jury should decide the facts of this case after reviewing the evidence, testimony, and arguments of law.

## LEAVE OF COURT TO AMEND REGARDING DEFENDANTS PAMELA ANDERSON TAYLOR AND BRENTON HALL LANKFORD

As evidenced and with facts stated in Plaintiff's TRO motion (Docket Entry 86) and supporting memorandum (Docket Entry 87) and "PLAINTIFF'S RESPONSE TO DEFENDANTS' "RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS PAMELA ANDERSON TAYLOR AND BRENTON HALL LANKFORD" to be filed on July 10, 2017, Defendants TAYLOR and LANKFORD continue to engage in acts of extortion under color of law. Plaintiff should be granted leave of court to amend and include these new facts further establishing a pattern of conspiracy between Defendants TAYLOR and LANKFORD and appellate court clerks and judges.

EXHIBIT 13 is a transcript of proceedings that occurred on July 1, 2017. These transcripts evidence beyond any doubt whatsoever that Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD conspired with Judge Thompson to: (1) deny Plaintiff due process, (2) extort money and property from Plaintiff, (3) suppress evidence, (4) witness tampering, and (5) case fixing to prevent Plaintiff from being heard.

At the outset of this hearing, in conspiracy, Judge Thompson and Defendant TAYLOR confer to agree in open court that the hearing that day was only regarding motion for control of

17

the business. Plaintiff is hearing impaired and as evidenced in the transcripts, the hearing assist device was not properly working (EXHIBIT 13 p. 2 line 21 – 25, page 3, and p 4 line 14-15, p. 6 line 11-24). As evidenced in the transcript Judge Thompson plainly stated "*All right. And today **I think we only have the motion for control of the business**. Is that correct*?" to which Defendant TAYLOR replied: "*Yes, Your Honor.*" Judge Thompson and Defendant TAYLOR are obviously "slick and suave" "Confidence Men" The hearing that day was actually a continuation of the hearing on Motion for **Pendente Lite Support** and Motion To Determine **Control of Business** And **Partner Compensation** And For Other Relief. Plaintiff did not hear what was being said and could not complain. Plaintiff asserts to take advantage of a hearing-impaired veteran and conspire against him using his hearing impairment to their advantage is beyond appalling behavior.

    EXHIBIT 14 is the cover pages of the actual motions to be heard and the court order evidencing the fact that the hearing was supposed to be regarding (1) Pendente Lite Support, (2) Partner Compensation, (3) Control of Business, and (4) Other Relief. These facts and evidence, and further facts evidenced below and in the transcripts, prove beyond doubt conspiracy between Judge Thompson and Defendants TAYLOR and LANKFORD.

    Further proof of this malicious conspiracy evidenced in the transcripts. On page five of the transcript, the judge obviously starts to state the actual purpose of the hearing but catches himself and reverts to his conspiracy as evidenced in the transcript as follows:

> THE COURT: All right. So today we're continuing the motion -- or going to finalize the hearing on the motion that we started, lo, many months ago, back *in* March, **on control of the business**. So we

18

began taking proof on March the 10th, 2015, and we are going to finish
that portion today. EXHIBIT 13 p. 5

In the above transcription, Plaintiff draws the court's attention to the hyphenation
indicating the Judge interrupting himself so he could corruptly state the purpose of the hearing
as only for Control of Business. This conspiracy becomes even more obvious in further
consideration of the transcripts. The same hesitation by Defendant TAYLOR occurs later in
the transcripts as follows:

> MS. TAYLOR: At the hearing on March the 10th, Mr. Gentry put on
> his proof about -- we had motions to compel. Those were resolved. We
> had the petition for contempt, which was dismissed. EXHIBIT 13 p. 8

Obviously, Defendant TAYLOR was going to state proof about partner compensation
and or pendente lite support and caught herself as well from evidencing their conspiracy.

> MS. TAYLOR: At that point in time, you asked us to come back on
> the motion for issues related to the **control of the business** and asked
> us to present research to you, which we did. We filed briefs and looked
> at the cases. EXHIBIT 13 p. 8

The above statement was most obviously a false statement made in conspiracy with
Judge Thompson. During the previous hearing, Judge Thompson ordered the parties to submit
objections to income and expense statements by March 23, 2015 as evidenced in those
transcripts.

> THE COURT: And then I want – if either one of you want **to file written
> objections to the other's income and expense statements,** get that done
> for me. Is ten days too quickly? (*Docket Entry 49, Exhibit 2 transcript
> p. 210*).

19

THE COURT: Right, the 23rd. And then I'll make a ruling -- I'm going to tell you right now, it's going to be as temporary support. (*Docket Entry 49, Exhibit 2 transcript p. 211*).

Plaintiff further points out to this Honorable Court, that Defendant PERKY should have been arguing that consideration of income and expense statements was ridiculous due to the fact of comingling and Plaintiff should not have been denied access to his business income. Even the Judge recognized the business was no longer separate property due to the doctrine of commingling.

THE COURT: **And so what's happened is we've had an utter and complete commingling of the personal life and the business life.** And I think for a finding of contempt, I have to find willful behavior with respect to specific conduct. And the problem that I have with respect to that standard is, I think the conduct of the parties -- I think if she had asked for some sort of contempt against him, she'd be in the same boat. They just -- there is no delineation between the two. And so I can't find her conduct willful when there was no bright-line distinction as far as how the parties operated with respect to their personal finances and their business finances. So I'm going to grant Ms. Taylor's motion on the contempt. **Now, that might have – this commingling may have some value, as far as the standard of living of the parties and things of that nature, on final hearing. But as far as contempt, I'm going to grant Ms. Taylor's directed verdict motion.** (*Docket Entry 49, Exhibit 2 transcript p. 217 - 218*).

Plaintiff asserts the above dialogue evidenced in the transcripts is a good example of Blacks Law Dictionary definitions of "Kangaroo Court" and "Mock Trial." Plaintiff then attempts to redirect the hearing so he can put on his proof as evidenced:

MR. GENTRY: Your Honor, may I respond to Ms. Taylor's comments just now?
THE COURT: You may, you may.

20

> MR. GENTRY: Regarding the issue of the contempt being dismissed in the last hearing, I haven't had an opportunity to cross-examine Ms. Gentry.
>
> THE COURT: That was decided in the last hearing. I have that in my notes. That petition for contempt was denied. **Today we're here on your motion to have control of the business. That's the only thing that's in front of me today.**
>
> MR. GENTRY: Okay. EXHIBIT 13 p. 12
>
> THE COURT: So that's what I'd like to hear argument from you on.

This Court must recognize that a ruling rendered without permitting cross-examination prior to a directed verdict motion is a violation of due process. Furthermore, Judge Thompson's statement: **"Today we're here on your motion to have control of the business. That's the only thing that's in front of me today."** is obviously a denial of Plaintiff's right to be heard on his motions before the court that day.

These case steering tactics by Judge Thompson become even more obvious as the hearing progresses.

> MR. GENTRY: So in response to Ms. Taylor's comments just now, I have not had any employment. We agreed on the January 22nd hearing that I would work on eStart, and so that was my sole focus.
>
> I was anticipating that Ms. Gentry would be found in contempt and that I would have my compensation reinstated. And I'm also an owner of Sweet Wise, and I can demonstrate that I have stock in the corporation equal to 50 percent of the business.
>
> So when she says that I wasn't working, I was working very diligently on eStart. And with absolutely no money in my pocket at all, I was able to successfully at least get started on eStart. It's not profitable, but it's been enough that it's allowed me to survive.
>
> **Your Honor, I became so destitute that I had no money for food. I was feeding my dogs squirrels because I couldn't afford dog food, killing them in my backyard. I was completely destitute.**
>
> Ms. Taylor mentioned that I have a three- or four-month contract job right now. Actually, it's a one-month contract job and it will end on July

10th. And from then, I'll be solely dependent upon income from eStart unless I'm rightfully awarded my compensation and earnings and share of profit in Sweet Wise.

So, first, I think the issue of implied partnership is irrelevant, because I have stock in the corporation that was properly issued, and I plan and can demonstrate that to the Court today clearly, with documentary evidence of that. So there's clear evidence of that, so the implied partnership issue is not relevant.

**If Your Honor isn't satisfied, looking at the evidence today, that I have stock ownership in the company, there certainly is grounds for an implied partnership. I worked in 2008 without any compensation, without any earnings. I worked most of -- most all of 2009, for a total of, I believe it was $3,800 that Sweet Wise paid me. My prior compensation had been $86,000 a year. So for me to go spend an entire year of my time working in a business to be paid $3800 clearly demonstrates that I was contributing with the intent of sharing profits in the company.**

**My compensation continued after that at around $30,000 a year. That was demonstrated in the compensation exhibit that we submitted during the last hearing.**

**I would never work for $30,000 a year. This contract job that I have right now, I'm underemployed, working as a staff accountant, and I'm making $30 an hour, which is the equivalent of $60,000 a year.**

**So there's absolutely no way, as a certified public accountant, that I would go to work for a small, mom-and- pop operation without the intent of sharing the profits of the business.**

With regards to Ms. Taylor's accu- -- with her comment that I had never put money into the business, that's absolutely not true. When Ms. Gentry and I met with Vic Alexanderhe' s the one that 's working on the valuation for the company -- Vic said when he was going to value the business that he would assign a license fee to our intellectual property, and he would subtract that profitability of the cost of that license fee in valuing the business. So he would lower the value of the business because he would make the assumption that the joint intellectual property owned by Ms. Gentry and myself would not be profit for the corporation.

MS. TAYLOR: Your Honor, I object to hearsay during the opening from Mr. Alexander, who is going to do the valuation. The Court can hear from him at the final hearing.

22

> THE COURT: **Well, and again, we're here on a motion hearing to determine control pending the final hearing.** This is not a final decision. **So I'm looking for a legal argument from you, Mr. Gentry, not testimony and not evidence, as much as what's your legal argument that pending the final hearing you should have control of the business?** EXHIBIT 13 p. 13 – 16

Again, as evidenced in the above dialogue, Judge Thompson keeps "steering" the case back to "so stated" "legal arguments" on the falsely stated "single issue" of "control of the business" Plaintiff assumes that this Honorable Court, as a legal professional, must know that there is no such thing as "legal arguments" pertaining to which spouse controls a business during pendency of a divorce proceeding. There is no statutory law upon which such legal arguments can be made. There is no higher court opinion pertaining to "legal arguments on control of business."

Such a determination is to be made based on evidenced facts and testimony about which spouse would do a better job running the business during pendency to ensure continued and secure income from the business. Incredulously, in making his determination on control of business, Judge Thompson states: **"So I'm looking for a legal argument from you, Mr. Gentry, not testimony and not evidence, as much as what's your legal argument that pending the final hearing you should have control of the business?"**

Such thinking as Judge Thompson's in this way defies logic and these actions were nothing less than bullying an involuntary pro se litigant, a blatant denial of due process, made with the intent to deprive Plaintiff of his income during pendency so as to extort his property and income from him under color of law.

23

This "legal argument for control of business" game played by Judge Thompson is no different than the "paper stretcher" game played by grade-school teachers. In the "paper stretcher" game, knowing there is no such thing as a "paper stretcher" a teacher will playfully ask a student to run over to another teacher's classroom to retrieve a "paper stretcher." The next teacher, being "in on the game," informs the student he doesn't have one and suggests the student check with yet another teacher and so on and so on.

Quite simply put, these actions by Judge Thompson were an appalling use of a "Corrupt Racketeering Scheme" and "Confidence Game" inflicted upon Plaintiff with the obvious intent to deprive him of his income and property. There is no doubt plaintiff should be allowed to include these fact in his complaint by the Court granting leave to amend. Justice demands that such actions be redressed and Plaintiff made whole. Instead of considering whether or not leave to amend should be granted, this Court should instead be considering referring this matter to the US Attorney for criminal prosecution.

This "mock trial" continues as follows:

> MR. GENTRY: Well, the first legal argument is that I have stock in the corporation. So I'm equally -- **Ms. Gentry has maliciously terminated my employment from the company without grounds for termination. And I can demonstrate that to the Court clearly today as well.** As far as running the business, I'm looking at the financials of the business, and there's a couple of problems that I see.
>
> THE COURT: **Well, I know. We're not talking about how she's running it. We're talking about who's going to be running the business between now and the final divorce hearing. That's the only issue that's in front of me.**
>
> MR. GENTRY: Well, she's been dissipating marital assets or dissipating the business assets --

24

> THE COURT: **But you don't have a motion in front of me on that. You have a motion for control of the business. So what I'm looking for from you is what is your legal argument that you should have control of the business pending the final hearing.** EXHIBIT 13 p. 16

Again, the above dialogue evidences more of the "paper stretcher" "Confidence Game" being inflicted upon Plaintiff. This "Confidence Game" is further continued as evidenced in the transcript pages 17.

Plaintiff then makes the following statement to which Judge Thompson responds as follows:

> MR. GENTRY: **Well, again, with the -- with the employment, because I was unemployed for so long and because of the legal bills that I've had in this case, I've gone into debt $50,000. My introductory interest rates on my credit cards are going to skyrocket in the next month or so, and I'm just not going to be able to survive on the income that I'm making from eStart.**
>
> THE COURT: Okay.
>
> **All right. Ms. Taylor, we had – when I'm looking here at the file, there may be an issue that I haven't resolved. And that is, there was a motion by Mr. Gentry for pendente lite support**, and it appears from my notes that I have not resolved that issue. I think I gave both parties until the end of March to file income and expense statements and then I was going to issue a decision, and I haven't done so. EXHIBIT 13 p. 18-19

Plaintiff asserts Judge Thompson knew all along that the matter of Pendente Lite Support was supposed to be heard. This assertion is obvious when consider the above facts and case steering tactics and "Confidence Game" inflicted upon Plaintiff. After subsequent false and unsupported statements are made by Defendant PAMELA ANDERSON TAYLOR, Plaintiff made the following statements:

25

MR. GENTRY: Yes. Thank you, Your Honor. The production of documents, they didn't provide that until April 10th, I believe, after the hearing. So I didn't have any of her credit card statements, so I could not properly object to her income and expense statement.

**Your Honor, I'm prepared to show today that she perjured herself in her income and expense statement to the Court.** There's numerous expenses on there that don't exist. There are expenses that she has on her income and expense statement that are paid by the company. There are income -- there are expenses on there that she's overinflated. **And clearly she has not shown the business income on her income and expense statement.** So for her to say it doesn't have any money is just ridiculous, Your Honor. EXHIBIT 13 p. 25 – 26

As evidenced above, Plaintiff plainly asserted perjury but Judge Thompson in conspiracy with Defendant TAYLOR refused to allow Plaintiff to present evidence in a plain violation of due process. Plaintiff then testified how he had been financially devastated by his ex-wife's malicious violation of statutory injunction as followsws:

**What I would ask the Court today, Your Honor, is in regards to support, I went six months without any income. Maxed out my credit card bills. I went with sleepless nights, my house going into foreclosure. I asked her for help in keeping my house from going into foreclosure, and she forsaked the house. Even when there's equity in the house, she was willing to forsake it just for the purpose of punishing me.**

THE COURT: All right.

MR. GENTRY: So where I'm at

MS. TAYLOR: Your Honor --

MR. GENTRY: If I may finish, Ms. Taylor. **So where I'm at, Your Honor, if I could get the retroactive support that would allow me to not be killed by interest rates, that I could pay back my credit card debt, that I could pay back my attorney --**

THE COURT: Okay.

26

MR. GENTRY: -- **I could care for myself now moving forward. But retroactively, with the debt that I have now, I'll be a train wreck, Your honor.**

You know, as far as trying to find a permanent position, my credit card is in a -- my credit rating is in shambles because my mortgage is going into Foreclosure, and my mortgage company has reported me as 90 days past due. **All right. I have with me today -- just for this contract job, I had to do a drug test and I had to do a background check for criminal. For a permanent position, they're going to ask for a credit check as well.**

THE COURT: All right. Thank you,

Mr. Gentry. I kind of know where I am. Okay. This is what I'm going to do. On the motion for control of the business, I'm going to deny that motion pending a final hearing. **So on the motion for pendente lite support, I want to go back and review the filings that each party made, taking into account Mr. Gentry 's testimony here today that moving forward he's probably okay, he just wants to get some retroactive support between the time of his request and now. And I just simply, quite frankly, need to look at what I've got on file before I rule on that.** So I know I gave until March 23rd for those income and expense affidavits to be submitted, and they have been submitted. So I'll review those and I' ll make a decision on that and issue

MR. GENTRY: Your Honor.

THE COURT: -- issue a ruling on that. If you'll do an order for me on the control of business; okay?

MS. TAYLOR: Yes, Your Honor, I'll do an order on that. On the temporary support, do you want to review what you have? Do you want us to submit additional information based on the updated facts or just leave it as it is?

THE COURT: No, I'm going review what I have. And if I need, based upon that review, if I feel like I need additional information, either from Ms. Gentry or from you, Mr. Gentry, we'll send out an order asking you to provide additional information. EXHIBIT 13 p. 28 – 30

As evidenced above, Plaintiff was involuntary pro se and should have been provided support or according to state law, not deprived of his rightful share of income so he could procure legal counsel. Plaintiff also testified that his current credit rating harmed his ability to

27

obtain permanent employment. The judge plainly indicated his intent and recognition that Plaintiff should at least be provided retroactive support. The transcript also shows that Plaintiff was trying to be heard but was effectively being ignored. This fact is further evidenced below.

> MR. GENTRY: Your Honor.
>
> MS. TAYLOR: -- draft the order.
>
> MR. GENTRY: Your Honor, may I respond to that?
>
> THE COURT: Well, there's not a whole lot to respond to. She's just wanting to make sure that I do what I said I would do last time, which is if I decide there's support that's in order, **I'll give her client an opportunity to finish her testimony.**
>
> MR. GENTRY: **Your Honor, now that I have received all of the production of documents, may I file an amended argument against the wife's income and expense?**
>
> MS. TAYLOR: Your Honor, I think that –
>
> MR. GENTRY: **Because she has clearly perjured herself in that document, Your Honor**
>
> THE COURT: Well, here's the thing. I just told Ms. Taylor that what I'm going to do is I'm going to make this -- you know, "pendente lite" means while the litigation is ongoing. It's not a final award of spousal support. That's for the final hearing. **So I'm going to make that decision based upon the filings that were made back in March. I said I would do that, and, for some reason, that slipped through the cracks and I'm going to correct that.** EXHIBIT 13 p. 32 – 33

As evidenced in the transcript, Plaintiff again complained that his ex-wife perjured herself and yet again the judge refused to allow Plaintiff's evidence and testimony. Obviously Judge Thompson stated Plaintiff's ex-wife would be provided an opportunity to "finish her testimony if support was in order, but refused to allow evidence proving perjury if support was to be denied.

28

Judge Thompson also states **"for some reason, that slipped through the cracks"** Plaintiff asserts Judge Thompson's ruling did not slip through the cracks as evidenced above but was intentionally not ruled upon in conspiracy with Defendants TAYLOR, LANKFORD, and PERKY. See pages 10 – 12 above, proving Plaintiff was repeatedly inquiring about support. Obviously Judge Thompson intentionally did not rule timely on support in an obvious denial of due process made with the intent to cause insolvency and emotional trauma so as to prevent Plaintiff seeking redress.

Plaintiff asserts Judge Thompson did intend to award retroactive support, but needed to get "permission" from Defendant PAMELA ANDERSON TAYLOR prior to doing so. In addition to the above facts well evidenced in the record, Plaintiff will present further facts at trial that suggest Judge Thompson was coerced by Defendant PAMELA ANDERSON TAYLOR to rule according to her whims and desires. These facts proving conspiracy are beyond contention. So as to ensure justice is served, this Court should grate leave of court for Plaintiff to state these additional facts proving conspiracy, denial of due process and extortion.

## LEAVE OF COURT TO AMEND REGARDING DEFENDANT STATE OF TENNESSEE

As a result of Plaintiff's further legal research, Plaintiff has identified 42 USC §1986 as an additional cause of action against the State of Tennessee and its agency, the Tennessee Board of Judicial Conduct. Very obviously, Plaintiff made the Tennessee Board of Judicial Conduct aware of rights violations made against him and the Tennessee Board of Judicial Conduct did

nothing to prevent wrongs conspired to be done against Plaintiff. Plaintiff should be granted

leave to amend to include this new cause of action.

> **42 U.S. Code § 1986 - Action for neglect to prevent**
> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

Plaintiff further requests leave to amend so as to add new allegations against the State

of Tennessee and further violations of the U.S. Constitution: Amendment VIII and Article I §

9. Furthermore, Since Defendant State of Tennessee has raised the argument that Amendment

IX U.S. Constitution prevents suits against the State, this raises the issue of unconstitutional

laws enacted by the State to protect corruption occurring in State courts.

The Constitution of the State of Tennessee grants its citizens the right to sue the state

and abrogates it Eleventh Amendment protection. *"Suits may be brought against the state in

such manner and in such courts as the Legislature may by law direct."* This state constitutional

provision served the state well since its ratification in 1835. In 2016 or thereabouts, in a clear

effort to protect corrupt interests and "Racketeering Enterprises" and "Racketeering Activities," the state enacted new legislation under the Government Tort and Liabilities Act. This act of the congress is enacted into state statute 29-20-205 and grants immunity to the state as follows: **(1)** The exercise or performance or the failure to exercise or perform a discretionary function, **whether or not the discretion is abused**; and **(5)** The institution or prosecution of any judicial or administrative proceeding, **even if malicious or without probable cause**. Plaintiff challenges these laws as unconstitutional on their face and intent. By definition, proceedings that are malicious or without cause are in violation of due process and the state cannot assert sovereignty over fourteenth amendment violations. Plaintiff further seeks to challenge the constitutionality of other state laws and court rules as unconstitutional as well.

Plaintiff further seeks to make allegations and present proof regarding the states violations of Amendment VIII and Article I § 9. These are very serious matters for the Court to consider as they affect not only the citizens of Tennessee, but they affect the Republic as a whole. And most certainly, Justice, not just for Plaintiff, but for all citizens, demands that the issues Plaintiff seeks to allege and evidence, be addressed in federal courts who are given the solemn responsibility of protecting against. Does not this Court at least desire to hear Plaintiff's allegations in this regard considering the importance of protecting the Constitution?

The injustices suffered under the Crown of England are what caused our founding fathers to define and protect our rights in our federal constitution. The same grievances suffered under the Crown, enumerated in the Declaration of Independence, are the same injustices inflicted upon citizens today. Plaintiff intends to prove these injustices are caused by the State

in violation of Article I § 9 of the U.S. Constitution. Surely this court does not desire to turn back the clock, to the same injustices that gave rise to our Declaration of Independence.

Plaintiff asserts that once the State recognizes that it has engaged in the same practices causing our independence from England, the State too, will desire to return to the fold and uphold the Constitution as our forefathers intended. Upon seeing the evidence and facts, Plaintiff believes this Court too will desire the same.

In the U.S. Supreme Court case, Mathews v. Eldridge, 424 US 319 - Supreme Court 1976, our Supreme Court stated;

> The **"right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."** Joint Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552 (1965). (at 333)

Until one suffers a "grievous loss" as Plaintiff did while being denied his right to be heard, the pain of emotional turmoil, mental anguish and financial hardship cannot fully be understood or appreciated. Plaintiff is an Honorably Discharged Veteran and hearing impaired caused by his service to country and wholeheartedly believes in our system of justice. It is Plaintiff's belief in our system of justice, that gives him strength to preserve the Constitution. As a patriot from a long line of family service to country, Plaintiff has "stood the wall" protecting and defending the Constitution and stands again today in defense of the same.

32

Federal Rules of Civil Procedure, Rule 15(a)(2) states; "…The court should freely give leave to amend when justice so requires. "Under Federal Rule of Civil Procedure 15(a), a district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. Pro. 15(a) *Kottmyer v. Maas, 436 F. 3d 684 - Court of Appeals, (6th Cir. 2006) at 692.*

In the Supreme Court case, Foman v. Davis, 371 US 178 - Supreme Court 1962, the Supreme Court stated:

> **…outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules**. (at 182)

## CONCLUSION

This Court should grant leave of court for Plaintiff to amend and file his Third Amended Complaint. Plaintiff should be granted thirty (30) days from date of order granting leave to amend in which to prepare and file his Third Amended Complaint.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

33

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

On this the 10th day of July, 2017

John Anthony Gentry, CPA

34