## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## CIVIL RIGHTS DIVISION

| | |
|---|---|
| JOHN ANTHONY GENTRY, sui juris/pro se ) | |
| ) | |
|     Plaintiff ) | |
| ) | **CASE NO. 3:17-0020** |
|       vs. ) | |
| ) | |
| THE STATE OF TENNESSEE; ) | |
| PAMELA ANDERSON TAYLOR; ) | |
| BRENTON HALL LANKFORD; ) | **JURY TRIAL DEMANDED(12)** |
| SARAH RICHTER PERKY; ) | |
| UNNAMED LIABILITY INSURANCE ) | |
| CARRIER(S); Et al ) | |
| ) | |
|     Defendants ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "RESPONSE IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS PAMELA
ANDERSON TAYLOR AND BRENTON HALL LANKFORD"**

---

Comes now the Plaintiff, John Anthony Gentry, in Response to Defendants PAMELA

ANDERSON TAYLOR, and BRENTON HALL LANKFORD'S Opposing Response to

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (TRO) and

supporting memorandum (Docket Entry 91). Defendant's Opposing Response is in response

to Plaintiff's TRO motion and supporting memorandum (Docket Entries 86 & 87).

Plaintiff begs this Honorable Court to perform its duty and stand guardian of his

constitutional right of due process and protect him from the tyranny of the Defendant State of

1

Tennessee in obvious conspiracy with Defendant's PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD before he suffers further and irreversible harm. If this Court does not perform its duty and interpose itself, Plaintiff will lose his home and will be forced to seek bankruptcy protection and will be subjected to abject poverty. Loss of Plaintiff's home and being forced to file bankruptcy are irreversible harms that cannot be undone. Plaintiff begs this Court's protection.

In the Supreme Court Case, Mitchum v. Foster, regarding enactment of 42 USC §1983, the Supreme Court stated §1983 was enacted to protect "The People" as follows:

> **Proponents of the legislation noted that state courts were being used to harass and injure individuals**, either because the state courts were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights**. (*Mitchum v. Foster, 407 US 225 - Supreme Court 1972*at 240)

Also, in the Mitchum case, the Supreme Court recognized that § 1983 was an "Act of Congress" permitting stay injunctions of state court proceedings.

> **The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law**, "whether that action be executive, legislative, or judicial." Mitchum v. Foster, 407 US 225 - Supreme Court 1972 (at 242)

Plaintiff first draws the Court's attention to the undeniable fact that not once, in any way whatsoever, in their Response (Docket Entry 91), did Defendant's attempt to justify their current "Racketeering Scheme" to extort money from Plaintiff under color of law. In Plaintiff's motion for TRO and supporting memorandum (Docket Entries 86 & 87), Plaintiff has alleged,

2

that Defendants seeking award of attorney's fees to their client, though "tongue in cheek" false application of law, is nothing less than a "Confidence Game," "Racketeering Scheme" and extortion under color of law. Defendant's do not attempt to justify their corrupt actions because there is no justification and they know it. They have been caught "red handed" and their "Confidence Game" exposed. They are found out, and yet again revealed as the "Confidence Men" they are. Their depredations laid bare. The question is not whether or not this is true. The question is what will be done about it and will this Honorable Court perform its duty and protect Plaintiff from irreparable harm.

Defendants current "Confidence Game" for which Plaintiff seeks restrain and enjoin is "textbook 101" for "Racketeering Schemes." The "Game" is this: Take whatever steps necessary to cause emotional destruction, abject poverty and complete financial insolvency of the "target litigant" ie. Plaintiff. It does not matter if the steps necessary to accomplish this "Goal of the Game" result in violation of professional rules, abuse of process, or even violation of constitutional rights or federal laws. This "Goal of the Game" must be obtained through whatever means necessary, so as to emotionally and financially destroy the "target litigant" so that the "target litigant" has no means whatsoever to seek redress.

Plaintiff feels compelled to remind the court, the Defendants in this case are nothing more, nothing less than "Confidence Men."

> Confidence men are not "crooks" in the ordinary sense of the word. They are suave, slick and capable. **Their depredations are very much on the genteel side. Because of their high intelligence, their solid organization, the widespread convenience of the law**, and the fact that the victim [sometimes] must admit criminal intentions if he wishes to prosecute, **society has been**

3

**neither willing nor able to avenge itself affectively**. (*See Docket Entry 86 EXHBIT 2 Scamming: The Misunderstood Confidence Man, Yale Journal of Law & the Humanities p. 250*)"

Defendants have no legal basis whatsoever to seek award of attorney fees on behalf of their client as proven below. Defendants obviously desire to ensure Plaintiff is so financially and emotionally devastated, that he cannot even afford to buy ink, nor possesses the will, with which to prepare and print pleadings and motions to file in federal court seeking redress for wrongs suffered. This too, causes Plaintiff irreparable harm further justifying this Court's intervention.

Plaintiff alleges Defendants' false assertion of state statute 36-5-103(c), seeking award of attorney fees will result in "tongue in cheek" awarding of attorney's fees by the state appellate court and Plaintiff will be extorted under color of law through false application of law. Plaintiff also alleges these attorney's fees will be "inflated" and will range somewhere between $30,000 to $50,000, and perhaps even more. Plaintiff further alleges, Defendants will use this false order and then rush to garnish his wages, resulting in loss of Plaintiff's home (already two months in default) and Plaintiff will be forced to seek bankruptcy protection. Plaintiff further fears, but does not know, that the state bankruptcy court will then refuse to discharge the garnishment, further forcing Plaintiff into abject poverty.

Let Defendants not be hopeful that these possible future events, will cause Plaintiff to abandon seeking redress in federal court. If necessary, and Plaintiff cannot afford internet access, Plaintiff will conduct his legal research at local libraries. If Plaintiff is made homeless and cannot afford ink for his printer, Plaintiff will scribble his pleadings and motions on scraps

4

of paper if necessary, and walk them into the clerk's office sweating and stinking of the street. Such is his resolve no matter the barriers placed in his way.

There is no doubt that Defendant do not have any legal basis whatsoever to request attorney's fees and false application of state statute 36-5-103(c) is extortion under color of law which is a federal crime.

Black's law dictionary defines "Extortion" as follows;

> **Any oppression by color or pretense of right, and particularly the exaction by an officer of money, by color of his office, either when none at all is due, or not so much is due**. or when it Is not yet due. Preston v. Bacon, 4 Conn. 4S0.**Extortion consists in any public officer unlawfully taking, by color of his office, from any person any money or thing of value that is not due to him. or more than his due.** *Black's Sec. Ed.*

18 USC § 1951(b)(2) defines extortion as follows;

> The term **"extortion" means the obtaining of property from another, with his consent,** induced by wrongful use of actual or threatened force, violence, or fear, **or under color of official right**.

18 USC § 1952 states (excerpts);

> (a) Whoever… **uses the mail**…, with intent to—
>     (1) **distribute** the **proceeds** of any unlawful activity;
> (b) As used in this section (i) "unlawful activity" means
>     (2) **extortion**

Twice in Brief of Appellee, Katherine Wise Gentry, pages 17 and 49 (See Docket Entry 86 EXHIBIT 1), Defendants seek award of attorney's fees and costs incurred on appeal, and twice reference Tenn. Code Ann. 36-5-103(c). Tenn. Code Ann. 36-5-103(c) in no way

whatsoever, provides any legal basis for Defendants to request for attorney's fees and costs she incurred on appeal.

That statute's title alone, tells us there is no legal basis to make request for attorney's fees and costs incurred on appeal. The title of 36-5-103 is "***Enforcement*** *of decree for alimony and support*." Very obviously, this statute pertains to "**Enforcement**" of alimony and support and does not provide for defense of an appeal. During divorce court proceedings, Plaintiff's ex-wife requested the court award her alimony in solido for $188,000 of attorney's fees she paid during divorce court proceedings which the trial court denied as evidenced in the transcript as follows:

> THE COURT: Okay. I think I heard you say I didn't address it. Yes, I did. I specifically addressed that. **I addressed their request for $188,000 in attorney's fees. I didn't grant them that.** (*Transcript July 20, 2016 p. 29 excerpt attached as* EXHIBIT 1 *to this memorandum*)

Plaintiff's ex-wife did not appeal that decision in any way whatsoever, and therefore, in no way can Defendants' request for attorney's fees and costs incurred on appeal be construed as "Enforcement" of decree for alimony and support. Furthermore, the first sentence of Tenn. Code Ann. § 36-5-103(c) states: "*The plaintiff spouse may recover from the defendant spouse, ...*" Plaintiff's ex-wife is neither Plaintiff nor Appellant in state appellate court and due to the fact that this statute pertains to enforcement of alimony and/or support, this statute is wholly inapplicable. Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD are intelligent and accomplished family court attorney and know this statute is a

6

completely inappropriate supporting authority for a request of attorney's fees and costs incurred on appeal and their action is a plain attempt to further extort money from Plaintiff.

Furthermore, due to the fact that Plaintiff's ex-wife could obviously afford not one but two attorneys throughout proceedings and due to the fact, Plaintiff proved his ex-wife submitted a fraudulent income and expense statement (*May 2, 2016 Tr. p. 214 – 231*), the trial court's final judgement reflects the fact that the trial court recognized her perjury and fraudulent income and expense statement. Plaintiff's ex-wife testified that based on her income and expense statement, she could not afford the attorney's fees she incurred during trial court proceedings, and asked the court to award her attorney's fees as evidenced in Wife's following testimony.

> BY MR. LANKFORD:
> Q. **Now, have you incurred attorney's fees**
> **and expenses in this case**? (May 2, 2016 Tr. p. 156)

> BY MR. LANKFORD:
> Q. **And you're asking the Court to either award that out of the**
> **marital assets or have him pay over time**?
> A. **Yes**. (May 2, 2016 Tr. p. 157)

In the Circuit Court Judge's "*Memorandum Opinion And Order*", regarding attorney fees requested by Plaintiff's ex-wife, the Circuit Court Judge ruled that she "*is not at an economic disadvantage and does not have a need for alimony*" EXHIBIT 2. There can be no doubt whatsoever Plaintiff proved her income and expense statement was fraudulent (*May 2, 2016 Tr. p. 214 – 231*). The trial court judge's order reflects the fact that there can be no doubt whatsoever, that the trial court judge knew she perjured herself and submitted a fraudulent income and expense statement.

Moreover, due to the fact, Plaintiff's ex-wife has not counter-appealed any of the trial court's decisions, Plaintiff appeal in state appellate court can in no way be misconstrued as "Enforcement" of alimony and or support and therefore Defendants TAYLOR and LANKFORD'S request for attorney's fees and costs incurred on appeal has no legal basis whatsoever and is obvious attempted extortion. Plaintiff begs this Court to perform its duty and stand guardian of Plaintiff's rights.

Although unnecessary, further consideration of the provisions of Tenn. Code Ann. § 36-5-103(c) cited by Defendants in requesting attorney's fees and costs incurred on appeal, further proves beyond any doubt that there is no legal basis to seek award of attorney's fees and costs. Tenn. Code Ann. § 36-5-103(c) states:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in **enforcing any decree for alimony and/or child support**, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Again, the language in T.C.A. 36-5-103(c) is plain and clear. **Congress plainly intended this statute for "Enforcement" of alimony and/or support and not as a mechanism to punish Appellants seeking justice or as reward for one of the parties**. *"These awards are not primarily for the benefit of the custodial parent but rather to facilitate a child's access to the courts"*. *Graham v. Graham, 140 Tenn. 328, 334-35, 204 S.W. 987, 989 (1918).*

8

Plainly this state statute is intended by state congress to protect children in custody and child support cases, and not to punish those seeking justice in appellate courts. In the case, Taylor v. Fezell, 158 SW 3d 352 - Tenn: Sup. Ct. 2005, the Tenn. Sup. Ct. stated: "*This Court has held that "[i]n cases involving the custody and support of children, ... it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate.*" Deas v. Deas, 774 S.W.2d 167, 169 (Tenn.1989)."

In determining whether an award for attorney's fees is warranted, "*we should consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith*". Parchman v. Parchman, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6 (Tenn.Ct.App. Nov. 17, 2004). Due to the fact of Plaintiff's ex-wife's perjury in trial court, and due to the fact Tenn. Code Ann. § 36-5-103(c) is an enforcement mechanism for child support, **it is obvious that Defendants request for attorney's fees and costs incurred on appeal is not only not in "good faith," there action is attempted extortion.**

Further consideration of Tenn. Code Ann. § 36-5-103(c) demonstrates even more just how ridiculous Defendants' request is. Plaintiff does not have children so obviously his appeal in state appellate court is not about custody or change in custody.

> **… or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties,** both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

9

In the case Sherrod v. Wix, 849 SW 2d 780 - Tenn: Court of Appeals, Middle Section 1992, this Middle Section Court of Appeals stated:

> Tenn. Code Ann. § 36-5-103(c) states that awarding legal expenses in custody and support proceedings is discretionary with the trial court. However, the appellate courts have not necessarily been consistent in identifying the considerations on which these discretionary decisions should be made. **Some panels follow the criteria used to award legal expenses in divorce proceedings and refuse to approve awards in the absence of proof that the party requesting the fees is unable to pay his or her lawyer.** Johnson v. Johnson, App. No. 01-A-01-9103-CV-00107, slip op. at 13, 16 T.A.M. 39-10, 1991 WL 169568 (Tenn. Ct. App. Sept. 4, 1991) (id at 785)

In this case, the requesting party (Wife), has already received a ruling that she is not at an "economic disadvantage" and she can in fact afford her own attorney's fees EXHIBIT 2.

The state appellate court further stated in the Sherrod v. Wix case as follows:

> **The purpose of these awards is to protect the children's, not the custodial parent's, legal remedies.** (id at 785)

Again, the intent of congress in Tenn. Code Ann. § 36-5-103(c) was plainly to protect the interest of the children in a custody or support case and not to punish an appellant seeking relief from judgement in appellate court. Plaintiff begs this Court's protection from a most obvious attempt at extortion under color of law.

Defendant further draws the court's attention to Defendants' false assertion that Plaintiff's Complaint arises "*out of his dissatisfaction with the results of his divorce proceeding*." Plaintiff is not merely dissatisfied. Defendants' statement here is nothing less than a cheap attempt to distract this Court from the fact that Plaintiff is complaining of grave

and gross violations of his constitutional rights and of federal crimes committed against him by Defendants.

Defendants then go on to say: "*Plaintiff has a misguided belief that Defendants' zealous representation of their client adverse to him amounts to racketeering and conspiracy.*" This Court must know that federal crimes of extortion, witness tampering, obstruction of justice, denial of due process, etc. do not in any way fall under the definition of "zealous representation." Plain and simple, these acts are multiple and repeated violations of constitutional and federal law, for which this Court has jurisdiction and duty to protect against. Despite the fact, that Plaintiff has already well-evidenced his allegations, this Court must accept Plaintiff's statement of facts as true: Bell Atlantic Corp., 27 S.Ct. 1955 (slip op., at 8-9) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Defendant's then falsely state: "*Plaintiff now seeks an order from this Court regulating Defendants' ability to represent Mrs. Gentry in the Tennessee Court of Appeals.*" Here Defendants' assertion is that they must have at their disposal, the tools of "Corrupt Racketeering Activities" in order to provide representation to their client. Surely, the tool of extortion is not necessary to their representation of their client. Such availability of the criminal tool of extortion causes chaos in state court proceedings which unfortunately is currently the state of affairs in Tennessee state court proceedings as evidenced by the facts of this case.

11

As evidenced in EXHIBIT 3, Plaintiff sought relief from the appellate court and asked the appellate court to consider post-judgement facts as provided for in Tenn. R. App. P. Rule 14. In this Motion, filed on June 26, 2017, Plaintiff begged the appellate court to consider the post-judgement facts that Plaintiff has become insolvent and must seek bankruptcy protection, and the further post judgement fact that Defendants TAYLOR and LANKFORD have no legal basis to request attorney fees incurred on appeal.

Plaintiff draws the Court's attention to EXHIBIT 4, which is a screen shot of the docket report of Plaintiff's divorce case in state appellate court, Case No. M2016-01765-COA-R3-CV. As evidenced in the highlighted row which reflects the EXHIBIT 3 document filed by Plaintiff in state appellate court, the document is titled "Filing-Miscellaneous" and is not available for download. Plaintiff alleges, this evidences a conspiracy between Defendants TAYLOR, LANKFORD, state appellate court judges and state appellate court clerks to conceal the record from public view. Plaintiff alleges this record is being concealed because it evidences the fact that their "Corrupt Racketeering Scheme," "Confidence Game" and attempted extortion has been found out and exposed for what it is.

Defendant's TAYLOR and LANKFORD filed a response in state appellate court on July 5, 2017. In their response, Defendants' did not in any way attempt to justify their attempted extortion of Plaintiff EXHIBIT 5. On the same day, July 5, 2017, Plaintiff filed a "Notice of Intent to Respond to Appellee's Response" EXHIBIT 6. Plaintiff filed his notice of intent to respond due to the fact that it is a common practice of biased or corrupt courts to issue lightning

fast rulings, without allowing a pro se the opportunity to respond, which is an obvious denial of due process.

Despite the fact, that Plaintiff filed a notice of intent to respond, the state appellate court judges rendered ORDER anyway without allowing Plaintiff an opportunity to respond, in a plain denial of due process, further evidencing conspiracy between state appellate court judges and Defendants TAYLOR and LANKFORD. That ORDER is attached as EXHIBIT 7.

With these facts now stated and evidenced in the record, Plaintiff has far exceeded any *"high burden to prove he is entitled to any injunctive relief."* Plaintiff has proven in fact, that Defendants TAYLOR and LANKFORD have no legal basis whatsoever to request attorney's fees on behalf of their client. Due to this undeniable fact, if granted by the appellate court, their request is plain and obvious extortion under color of law. Moreover, due to the fact of the appellate court refusing to provide Plaintiff an opportunity to respond, and the further fact of concealment of the record from public view, Plaintiff has proven beyond reasonable doubt that state appellate court judges and clerks are in conspiracy with Defendants TAYLOR and LANKFORD to deny Plaintiff due process and to extort money from him in violation of constitutionally guaranteed rights (due process) and in violation of federal laws (extortion, evidence tampering). Further considering the facts and evidence in Plaintiff's Second Amended Complaint (Docket Entry 36, pages 49 – 63), there can be no doubt of this conspiracy. This Court must therefore perform its solemn duty and restrain and enjoin Defendants PAMELA ANDERSON TAYLOR and BRENTON HALL LANKFORD, GRANT Plaintiff's TRO motion, and sign Plaintiff's proposed order.

Defendants further take issue with Plaintiff seeking "emergency" restrain and enjoin due to the fact he did not notice their attempted extortion and conspiracy until two months after the fact. Plaintiff again reminds this court, Defendants are "Confidence Men" "slick suave and capable" *Scamming: The Misunderstood Confidence Man, Yale Journal of Law & the Humanities p.250* (See Docket Entry 86 EXHIBIT 2). Despite Plaintiff being wary of their depredations, he did not immediately take notice their "Racketeering Scam." This is just more evidence of how "slick and suave" and well-practiced Defendants are at their "Confidence Games" that they were initially able to deceive a wary and informed pro se litigant. Regardless of it taking Plaintiff two months for Plaintiff to recognize and expose their "Confidence Game," they are now found out and revealed. Furthermore, this passage of time necessitates "emergency" restraint and enjoinment of Defendants by this Court because the appellate court is that much closer to executing this "Game" upon Defendant. Plaintiff begs this Court's "emergency" protection and for the court to perform its duty as provided for 42 USC § 1983 and Fed. R. Civ. P. Rule 65.

Pursuant to Fed. R. Civ. P. Rule 65, this Court has the authority to issue and grant the relief sought by Plaintiff, pursuant to its inherent equitable powers to enforce its Permanent Injunction. When, as here, the public interest is implicated, **this Court's equitable powers "assume an even broader and more flexible character** than when only a private controversy is at stake". FTC v. Gem Merch. Corp., 87 F.3d 466, 469 (11th Cir. 1996) (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946). Moreover, in considering an application for a TRO or preliminary injunction, the Court has the discretion to consider hearsay evidence. Flynt

14

Dist. Co., Inc. v. Harvey, 734 F .2d 1389, 1394 (9th Cir. 1984) (**even inadmissible evidence may be given some weight when to do so serves the purpose of preventing irreparable harm before trial**); see also Heideman v. S. Salt Lake City, 348 F. 3d 1182, 188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings."). In the case University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981), the Supreme Court stated;

> The purpose of a preliminary injunction is merely **to preserve the relative positions of the parties until a trial on the merits can be held**. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. University of Texas v. Camenisch, 451 US 390 - Supreme Court (1981) (at 395)

Plainly due process includes preserving the status quo, and protecting plaintiff from criminal actions being inflicted upon him that would cause irreparable harm.

Defendant falsely asserts Plaintiff failed to satisfy the burden under Fed. R. Civ. P. Rule 65 regarding (1) likelihood of success on the merits, (2) whether movant would suffer irreparable injury (3) whether injunction would harm others, and (4) whether the public interest would be served.

Regarding (1) likelihood of success on the merits, Plaintiff directs the Court's attention to Plaintiff's Second Amended Complaint (Docket Entry 36). In this compliant, Plaintiff included EXHIBITS A- W and his statement of facts detailed throughout the complaint evidenced by certified court reporter transcripts facts proving Plaintiff's allegations. In page 4,

Docket Entry 70, the Magistrate stated: "*Plaintiff's likelihood of success on his claims is no greater than that of Defendants...*" In making this statement, the Magistrate has acknowledged beyond any doubt whatsoever, that Plaintiff has alleged sufficient ground for civil suit. The Magistrate plainly states Plaintiff has an equal chance of success, and therefore, by default, states Plaintiff has sufficiently alleged grounds for civil suit in federal court and equal likelihood of success on the merits.

Regarding (2) whether movant would suffer irreparable injury, it must be obvious that Plaintiff will suffer irreparable harm if criminal actions are inflicted upon him that will result in bankruptcy and loss of his home. Bankruptcy cannot be erased, forever damaging Plaintiff's ability to obtain reasonable credit. Loss of Plaintiff's home cannot be recovered through payment of damages. The emotional attachment to one's home, the specific location cannot be replaced and can never be made whole again.

Regarding (3) whether injunction would harm others, there is no harm whatsoever to Defendants' client. None whatsoever. It is appropriate to enjoin Defendants charged with deception and preventing criminal actions would place no significant burden on them. See SEC v. Unifund SAL, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990). Defendants are audaciously asking this Court to condone or "look the other way" regarding their criminal intent. It would be no different for Defendants to argue that a law enforcement officer should take no action to stop an active bank robbery because in doing so the bank robber would be harmed by not being able to benefit from the stolen proceeds. Such argument is ludicrous.

Regarding (4) whether the public interest would be served, what greater "Public Interest" could be served than to retrain and enjoin corrupt attorneys from inflicting their "Confidence Games" and "Racketeering Schemes" upon unsuspecting and helpless litigants and in conspiracy with state court judges?

Defendants then turn to the "default state defense" and often "misconstrued doctrine" of Rooker-Feldman. As this court well knows, the Rooker-Feldman Doctrine applies only in cases attacking final state court judgements. Due to the fact state proceedings are still ongoing, and a decision has not been rendered, Rooker-Feldman does not apply. Due to the fact Plaintiff is complaining of the process and "tongue in cheek" false application of law, Plaintiff is clearly complaining of injury caused by the process achieved through conspiracy and extortion under color law. Since Plaintiff complains of the process and not the final judgement, Rooker Feldman cannot preclude jurisdiction of this court to intervene on behalf of Plaintiff and stand guardian of this rights and to prevent criminal actions perpetrated against him. *Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005 at 284 (at 283, 284), Alexander v. Rosen 804 F.3d 1203 6th Cir 2015 (at 1207).*

In the Supreme Court Case, Mitchum v. Foster, regarding enactment of 42 USC §1983, the Supreme Court stated §1983 was enacted to protect "The People" as follows:

> **Proponents of the legislation noted that state courts were being used to harass and injure individuals,** either because the state courts were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights**. (*Mitchum v. Foster, 407 US 225 - Supreme Court 1972*at 240)

Also, in the Mitchum case, the Supreme Court recognized that § 1983 was an "Act of Congress" permitting stay injunctions of state court proceedings.

> **The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law,** "whether that action be executive, legislative, or judicial." Mitchum v. Foster, 407 US 225 - Supreme Court 1972 (at 242)

Further considering the Mitchum Opinion, the Supreme Court referenced quotations of the legislators who enacted § 1983.

> This view was echoed by Senator Osborn: "**If the State courts had proven themselves competent** to suppress the local disorders, or **to maintain law and order, we should not have been called upon to legislate** . . . . We are driven by existing facts to provide for the several states in the South what they have been unable to fully provide for themselves; i. e., the full and complete administration of justice in the courts. And the courts with reference to which we legislate must be the United States courts." Id., at 653. And Representative Perry concluded: "Sheriffs, having eyes to see, see not; **judges, having ears to hear, hear not; witnesses conceal the truth or falsify it;** grand and petit juries act as if they might be accomplices . . . . [A]ll the apparatus and machinery of civil government, all the processes of justice, skulk away as if government and justice were crimes and feared detection. <u>**Among the most dangerous things an injured party can do is to appeal to justice.**</u>" Id., at App. 78. (id at 241)

The exact same circumstances described by Senator Osborn and Representative Perry, "*judges, having ears to hear, hear not*" and "*Among the most dangerous things an injured party can do is appeal to justice*" are the exact same circumstances that unfortunately occurred, and are yet to occur, if this Court does not perform its duty to restrain and enjoin Defendants and protect Plaintiff from being subjected to criminal extortion under color of law.

18

Our congress recognized how dangerous state courts had become and for that reason enacted § 1983. It is this Court's duty to interpret and enforce the law. As the United States, Supreme Court stated in ex parte Young, 209 US 123 (1908)

> "It is most true that this court will not take jurisdiction if it should not; but **it is equally true that it must take jurisdiction if it should.** The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. **We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty.**" (at 143)

Plaintiff begs this Honorable Court to protect him from criminal extortion and irreparable injuries of loss of home and forced bankruptcy, and to GRANT his TRO and sign the proposed order properly submitted with Plaintiff's TRO. Based upon the record, the stated facts of this case, supporting evidence, arguments of law, supporting authorities and in the "Public Interest," this Honorable Court should GRANT Plaintiff's TRO motion and sign the proposed order without delay.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

19

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and US Mail to;

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

On this the 10th day of July, 2017

John Anthony Gentry, CPA