FILED
2017 JUL 21 AM 9: 53
U.S. DISTRICT COURT
MIDDLE DISTRICT COURT
DISTRICT OF TN

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **JOHN ANTHONY GENTRY,**<br>    Plaintiff | )<br>)<br>) |
| | )      **CASE NO. 16C2615** |
| vs. | )<br>) |
| **PAMELA ANDERSON TAYLOR, and**<br>**BRENTON HALL LANKFORD**<br>    Defendants, Jointly and Separately | )<br>)      JURY DEMANDED (12)<br>)<br>)<br>)<br>) |

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE OR IN THE ALTERNATIVE MOTION TO RECUSE

---

**Attorney for Plaintiff**
Mr. John A. Gentry, CPA, Pro Se
208 Navajo Court
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

**Attorney for Defendants**
Lauren Paxton Roberts (Sup. Ct. No. 25049)
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN· 37219
(615) 244-5200
lauren.roberts@stites.com

# EXHIBIT 4

1

**Table of Contents**

INTRODUCTION AND STATEMENT OF FACTS .................................................................... 2

INFLAMMATORY AND DISCRIMINATORY LANGUAGE THAT SHOULD BE
STRIKEN FROM THE RECORD ........................................................................................ 5

   CURATIVE MEASURES NOT TAKEN SHOULD RESULT IN RECUSAL .................. 9

NO DEFENSE ASSERTED BY DEFENDANTS FOR ABUSE OF PROCESS ................ 13

LITIGATION PRIVILAGE NOT A DEFENSE ................................................................ 16

PLAINTIFFS CLAIMS OF FRAUD, ABUSE OF PROCESS, CONSTRUCTIVE FRAUD,
AND IIED ARE ALL ACTIONABLE TORTS ACCORDING TO LAW. ........................... 25

   RES JUDICATA IS NO DEFENSE FOR FRAUD AND SEPARATE CAUSES OF
ACTION .......................................................................................................................... 25

PLAINTIFF PROPERLY STATED WITH PARTICULARITY HIS CLAIM OF FRAUD .. 29

TENNESSEE RULES OF PROFESSIONAL RESPONSIBILITY NOT RELEVANT
ARGUMENT ....................................................................................................................... 33

CIVIL CONSPIRACY IS ESTABLISHED BY UNDERLYING PREDICATE TORT ........ 34

CIVIL CONSPIRACY NOT PROTECTED BY CORPORATE VEIL FOR PLLC .............. 35

PLAINTIFF PROPERLY STATES A CLAIM FOR INTENTIONAL INFLECTION OF
EMOTIONAL DISTRESS ...................................................................................................... 37

Plaintiff, John Anthony Gentry, as pro se counsel, hereby submits the following memorandum of law in support of his "Plaintiff's Response To Defendants' Motion to Dismiss and Plaintiff's Motion for Permission to Amend Complaint". Plaintiff further submits this memorandum of law in support of "Plaintiff's Motion to Strike Or In The Alternative Motion Recuse"

**INTRODUCTION AND STATEMENT OF FACTS**

This is a complaint that arises from the tortious actions of Defendants; including Fraud, Constructive Fraud, Abuse of Process, Civil Conspiracy, and Intentional Infliction of

2

Emotional Distress (IIED). Plaintiff's Complaint states with particularity his allegations, on all counts of Defendants' tortious actions pursuant to Tenn. R. Civ. P. Rule 9.02.

Plaintiff takes issue with Defendants so called "Memorandum In Support of Motion To Dismiss", in that their misleading document: (1) makes false statements that are plainly and obviously untrue, (2) ignores facts set forth in Plaintiff's Complaint, (3) includes an inappropriate remark that should be stricken from the record in its entirety, (4) misstates Plaintiff's allegations, (5) includes inappropriate case citations, and (6) ignores established case law precedence.

Plaintiff first points out, that Defendants' so called "Statement Of The Facts" in their memorandum **misstates Plaintiff's allegations set forth in his Complaint**. Furthermore, Defendants' so called "Statements Of The Facts" **makes the incorrect and untrue statements** that; (1) Plaintiff failed to properly plead any viable cause of action and (2) that the allegations set forth in Plaintiff's Compliant should have been addressed in the underlying divorce case.

The assertion that Plaintiff failed to plead a viable cause of action is quite simply an untrue statement. As stated with particularity in Plaintiff's Complaint: Abuse of Process is a tort for which Tennessee Courts have long recognized a remedy. Priest v. Union Agency, 174 Tenn. 304, 125 S.W.2d 142 (1939).

Plaintiff also stated in his Complaint: The two elements to recover for abuse of process includes; (1) the existence of an ulterior motive, and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" Id. (quoting Priest, 174 401*401 Tenn. at 307, 125 S.W.2d at 143); see also Donaldson, 557 S.W.2d at 62 (citation

3

omitted). Both elements are clear and present and substantiated by factual evidence in Plaintiff's Complaint. By this argument alone, Plaintiff obviously has a viable cause of action.

Plaintiff's further causes of action, that he stated with particularity, include fraud, civil conspiracy and IIED all of which are very obviously tortious causes of action for which relief can be sought. Accordingly, Defendants' statement that Plaintiff does not have a valid claim for which relief can be sought is a patently false statement.

Defendants make the false argument that Plaintiff should have sought relief for this complaint in the underlying divorce case litigation. This argument completely fails for any number of reasons. As referenced above, abuse of process is plainly a tortious cause of action just as fraud, civil conspiracy, and IIED, are all actionable causes. The underlying litigation was a divorce case with Plaintiff's ex-wife named as Plaintiff/Counter-Defendant. It is a ridiculous argument to say Plaintiff should have amended his divorce case to include or add Defendants in this case as Defendants in that case. Furthermore, whether or not the trial court did or did not correct the errors in the underlying litigation caused by Defendants' tortious actions is irrelevant and does not relieve their culpability. Their actions are still tortious and Plaintiff has a viable cause of action.

In their "Standard Of Review" section of "Defendants' Memorandum In Support Of Motion To Dismiss", Defendants cite Tennessee Rule 12.02(6) and they cite cases that set precedence that a case should be dismissed when (1) fails to state a claim for which relief can be granted, (2) must contain statements of facts showing plaintiff is entitled to relief, (3) must

4

not be entirely devoid of factual allegations (4) that plaintiff must prove a set of facts in support of the claim that would entitle plaintiff to relief.

Plaintiff's Complaint readily satisfies each and every one of these requirements beyond any doubt whatsoever. Moreover, in filing their Motion to Dismiss, pursuant to Tenn. R. Civ. P. 12.02(6), Defendants "admit the truth of all the relevant and material allegations contained in Plaintiff's Complaint, but assert that the allegations fail to establish a cause of action." Plaintiff's Complaint does in fact contain multiple causes of action, for which relief may be sought. Therefore, Defendants have thus admitted their culpability and guilt. Since Plaintiff plainly and obviously has a cause of action for which relief can be granted, and Defendants have admitted their guilt, this Honorable Court should issue a Summary Judgement in favor of Plaintiff.

## INFLAMMATORY AND DISCRIMINATORY LANGUAGE THAT SHOULD BE STRIKEN FROM THE RECORD

Plaintiff strongly objects to the inflammatory and discriminatory remark made in the first sentence of their so called "Statement of Facts". As stated in Plaintiff's "Motion To Strike Or In the Alternative Motion to Recuse" attempts to bias the court should not be tolerated. Plaintiff's "Motion To Strike Or In the Alternative Motion to Recuse" included the following excerpts:

> **It would be no different for Defendants to make a racially discriminatory statement like "This is a *black person's* complaint…" or a sexual orientation discriminatory statement like "This is a *gay person's* complaint…"** or any other discriminatory statement based on age, gender, social class, race, sexual orientation or religious affiliation.

Defendants' intent in using this discriminatory statement is obvious. It is intended to say Plaintiff's case is not worthy of being heard fairly because he is self-represented. It is intended to say; since Plaintiff is not paying attorney fees, he should not receive a fair hearing of his complaint. In its emphasis, it is intended as a 'buzz-word' to alert a sympathetic judge who is biased against pro se litigants, to know that the Plaintiff is pro se and that the judge should therefore be biased and not provide a fair hearing.

Defendants' misguided attempt to corrupt this Honorable Court is no different than if they had offered a bribe, or met with the court prior to and outside of proceedings in an effort to corrupt the court and bias the court against Plaintiff.

For Defendants to make this attempt to dishonor this Honorable Court in such a manner, **suggests their belief that they can in fact corrupt this Honorable Court with this type of bias.** To allow Defendants' motion and memorandum to remain in the record, would suggest that this court is accepting of this sort of inflammatory and discriminatory language. To allow Defendants' motion and memorandum to remain in the record, suggests that it is acceptable to this court, for litigants to make bribes, use discriminatory language or any other misguided or illegal method that might be used to influence the courts.

**Language, emphasis and negative inference such as that used by Defendants' should not be tolerated in any way whatsoever** and they should be severely admonished and sanctioned. **Plaintiff's Motion to Strike Pages 1 – 3**

In the case, State v. Goltz, 111 SW 3d 1 - Tenn: Court of Criminal Appeals 2003, the

Court of Criminal Appeals stated:

**Arguments which rely upon racial, religious, ethnic, political, economic or other prejudices of the jurors introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law.** Id. at § 5.8 Commentary c.

In the case Judge v. State, 539 SW 2d 340 - Tenn: Court of Criminal Appeals 1976, the Court of Criminal appeals referred to the case, Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965) and stated:

> Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965) sets out the test to be applied by the appellate court in reviewing instances of improper conduct, i.e., "whether the improper conduct could have affected the verdict to the prejudice of the defendant."
>
>> The courts and commentators seem to agree that there are some five factors which should be considered in making this determination:[1]
>> 1. **The conduct complained of viewed in context and in light of the facts and circumstances of the case.**
>> 2. **The curative measures undertaken by the court** and the prosecution.
>> 3. **The intent of the prosecutor in making the improper statement.**
>> 4. The **cumulative effect of the improper conduct and any other errors in the record.**
>> 5. **The relative strength or weakness of the case.**

In Judge v. State, the Tenn. Court of Criminal Appeals went on to state:

> In conclusion we have here an **improper statement of a very prejudicial nature concerning facts outside the record**, resting on the prosecutor's credibility, with repeated efforts to convey the thrust of the statement to the jury; **there was no retraction and the corrective statement by the court may not have been sufficient to be entirely curative**; the prosecutor's **statement cannot be said to have been made in good faith; and it occurred in a case which on the record can only be characterized as "weak," thereby increasing the likelihood of prejudice** in the determination of the guilt or innocence of this defendant. **Applying, as we must, the reasonable doubt standard to this question, we find that the improper statement could have affected the verdict to the prejudice of the defendant.** Harrington v. State, supra, 215 Tenn. at 340, 385 S.W.2d 758; Huffman v. State, 3 Tenn. Cr.App. 124, 458 S.W.2d 29 (1970); Chapman v. California, 386

7

U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Certainly we are unable to say beyond a reasonable doubt that it did not.

Furthermore, in this case the prejudicial statement went to the issue of the defendant's guilt or innocence, and was not of the inflammatory nature designed to affect the punishment alone, as was the case in the recent decision in Smith v. State, 527 S.W.2d 737 (Tenn. 1975). **Therefore the appropriate relief lies not in adjustment of the sentence, but by remand to the court below for a new trial.**

The intent of Defendants' statement is undeniably obvious. Their emphasized statement was plainly and obviously intended to draw the court's attention to Plaintiff's unrepresented status as a negative inference. This negative inference was plainly intended to say: (1) Plaintiff's case is not worthy of being heard fairly because he is self-represented, (2) since Plaintiff is not paying attorney fees, he should not receive a fair hearing of his complaint and (3) it is intended as a 'buzz-word' to alert a sympathetic judge who is biased against pro se litigants, to know that the Plaintiff is pro se and that the judge should therefore be biased and not provide a fair hearing.

If this court is biased at the outset of proceedings, that certainly affects the entire cumulative effect on the entire proceedings in this matter. In context and in the light of the facts, a biased court would likely be affected to dismiss a case, despite the weight of evidence, and despite the factual allegations set forth in Plaintiff's Complaint with particularity.

Defendants' defenses are not only weak; they are non-existent. In filing a Motion To Dismiss, Defendants have admitted their guilt. In fact, on page eight (8) of their memorandum, Defendants unabashedly admit their guilt. Therefore, they must rely on bias to affect the outcome of proceedings in this matter. They must attempt to prevent this matter being heard,

8

by the granting of a Motion To Dismiss by a court biased by such an inappropriate emphasized remark as that made by Defendants.

## CURATIVE MEASURES NOT TAKEN SHOULD RESULT IN RECUSAL

If this Honorable Court does not take any curative measure, specifically to strike the offending remark from the record, this is clear grounds for mistrial. As stated above, this inappropriate remark meets all the tests set out in the Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965) case as to "whether the improper conduct could have affected the verdict to the prejudice" of the Plaintiff in this case. Furthermore, if this Honorable Court does not take any curative measure, it suggests bias of the court and the court should recuse itself.

Plaintiff only hopes for a fair hearing of his cause of action and claim for relief. Plaintiff only hopes for a fair and impartial court to hear his arguments of law, review the facts and evidence of the case, and to render a decision based upon the rule of law. Plaintiff asserts these hopes as his basic right of due process as set forth in our federal constitution. Plaintiff respectfully asserts that if this Honorable Court is not offended by Defendants' attempt to bias this Honorable Court as Plaintiff is so offended, that this suggests a bias of the court. Whenever there is an appearance of bias, whether or not there is actual bias, a court should recuse itself.

It is well established that when there is a motion to recuse, whether or not there is actual bias, even if there is an appearance of bias, a judge should recuse him or herself.

> In an eloquent opinion by Justice Neil, the Supreme Court emphasized not only that justice be administered, but that there be no appearance that it is not administered. 151 S.W. at 76. *See Leighton v. Henderson,* **220**

Case 3:17-cv-00020   Document 104-4   Filed 07/21/17   Page 9 of 40 PageID #: 2366

Tenn. 91, 414 S.W.2d 419, 421 (1967) (quoting *Cameron* with approval).

In the case, Armstrong v. Manzo, 380 US 545 - Supreme Court 1965. the United States Supreme Court stated:

> A fundamental requirement of due process is "the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394. **It is an opportunity which must be granted** at a meaningful time and **in a meaningful manner.**

In the U.S. Supreme Court case, Mathews v. Eldridge, 424 US 319 - Supreme Court 1976, our Supreme Court stated:

> The "right to be heard before being condemned to suffer grievous loss of any kind, **even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.**" Joint Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 (1951) (Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552 (1965).

In the case, Williams v. Healthsouth No. W2015-00639-COA-110B-CV, the Appellate Court's opinion referenced numerous cases setting precedence that a judge should recuse himself when there is an appearance of bias whether or not there is actual bias. In its opinion, the Jackson Appellate Court stated:

> Williams v. Healthsouth Aristotle said: "The law is reason, free from passion." In the spirit of this famous quotation, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 states that "[a] **judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]** The right to a fair trial before an impartial tribunal is a fundamental constitutional right[.] **Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)).** and it remains "**important to preserve the public's confidence in a neutral and impartial judiciary.**" Id. As we have emphasized in the past, "the

10

preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial."); **Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Even when a judge sincerely believes that he can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). "It is an objective test designed to avoid actual bias and the appearance of bias**, since the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" **Shelby County Gov't v. City of Memphis, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at \*4 (Tenn. Ct. App. Jan. 8, 2015) (citation omitted).** In examining requests for recusals due to bias, it is important to keep in mind the fundamental protections that the rules on recusal are intended to provide. **The law on judicial bias is intended "to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor."**[2] Bean. 280 S.W.3d at 803 (citation omitted).

Based on the above arguments, evidence and facts, this Honorable Court should admonish Defendants severely for attempting to bias this court against an economically disadvantaged litigant who is unable to afford legal representation. This Honorable Court should strike from the record in its entirety, "Defendants' Motion to Dismiss" and "Defendants' Memorandum In Support Of Motion To Dismiss" as a curative measure to correct their discriminatory remark. In the Judge v. State case referenced above, the Court of Criminal Appeals further stated:

> The last and most serious question raised by this appeal is the allegation of prejudice to the defendant by improper remarks of the prosecutor during final argument. Not all of the statements complained of were in

11

fact improper, but on one occasion the prosecutor's comments were ruled improper by the trial judge, as seen in the following exchange:

> [PROSECUTING ATTORNEY]: ...
> And this Steve Hill, who I know peculiar things about —
> DEFENSE ATTORNEY: Object, Your Honor.
> THE COURT: Sustained. You will not consider that remark, Ladies and Gentlemen

While the prosecutor's statement was without question improper, the question before us is whether it was so prejudicial to the defendant as to invalidate his conviction. **We think that it was.**

**In conclusion we have here an improper statement of a very prejudicial nature concerning facts outside the record,** resting on the prosecutor's credibility, with repeated efforts to convey the thrust of the statement to the jury; **there was no retraction and the corrective statement by the court may not have been sufficient to be entirely curative;** the prosecutor's statement cannot be said to have been made in good faith; and **it occurred in a case which on the record can only be characterized as "weak," thereby increasing the likelihood of prejudice** in the determination of the guilt or innocence of this defendant. **Applying, as we must, the reasonable doubt standard to this question, we find that the improper statement could have affected the verdict to the prejudice of the defendant.** Harrington v. State, supra, 215 Tenn. at 340, 385 S.W.2d 758; Huffman v. State, 3 Tenn. Cr.App. 124, 458 S.W.2d 29 (1970); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Certainly we are unable to say beyond a reasonable doubt that it did not.
Furthermore, in this case the prejudicial statement went to the issue of the defendant's guilt or innocence, and was not of the inflammatory nature designed to affect the punishment alone, as was the case in the recent decision in Smith v. State, 527 S.W.2d 737 (Tenn. 1975). **Therefore the appropriate relief lies not in adjustment of the sentence, but by remand to the court below for a new trial.**

As noted in the trial court's sustain of objection, and the appellate court's analysis, the trial court's must take appropriate curative measures to correct inappropriate remarks such as the one made by Defendants in their memorandum and motion to dismiss. Accordingly, the

12

only appropriate curative measure in this case is to strike the entire motion and memorandum from the record. For the court to merely say "*My impartiality is not affected. Motion to Strike is denied*", is not a sufficient curative measure, since it calls into question the court's integrity in making a ruling on "Defendants' Motion to Dismiss", as the court has itself been subjected to bias by the inappropriate and discriminatory remark made by Defendants. If the court then further grants "Defendants' Motion to Dismiss", in contradiction of the weight of facts, evidence, and precedence, it calls into question whether Plaintiff's constitutional right of due process and his right to be heard have been violated as a result of bias. Accordingly, the only appropriate curative measure is to strike from the record, Defendants' pleadings, and as established above, this case should move to scheduling, a jury should be empaneled, and the case should move to trial. Or, based on Defendants' admission of guilt, this Honorable Court should issue a Summary Judgement in favor of Plaintiff.

If this Honorable Court, in its discretion, decides not to take proper curative measures, then the court should recuse itself based on the appearance of bias.

Based on the above prejudice, put forth by Defendants, because of their non-existent defenses as a result of their admission of guilt and prejudicial statement, and based on Plaintiff's arguments set forth above, Plaintiff should have no need to further argue why Defendants' Motion to Dismiss" should be denied. However, Plaintiff will irrefutably establish why this Honorable Court should deny "Defendants' Motion to Dismiss" as follows.

## NO DEFENSE ASSERTED BY DEFENDANTS FOR ABUSE OF PROCESS

13

Plaintiff points out and emphasizes to the court, that Defendants' did not in any way whatsoever, assert any kind of defense for Plaintiff's claim of Abuse of Process. While Defendants have attempted to present false arguments of 'Litigation Privilege' and other baseless defenses for their other tortious actions, based on irrelevant citations, and citations that actually strengthen Plaintiff's cause of action, they do not present any arguments whatsoever in their defense of Abuse of Process. This is because they have no defense. None whatsoever. Plaintiff's Complaint, plainly sets forth undeniable facts showing that Defendants tendered fraudulent orders to the trial court during the underlying litigation. Comp. ¶ 29 – 50, 51 – 52, 90 – 103. Plaintiff's Complaint, plainly sets forth undeniable facts showing that Defendants obstructed evidence through Abuse of Process. Comp. ¶ 60 – 81. Plaintiff's Complaint, plainly sets forth undeniable facts showing that they used their Abuse of Process to defraud Plaintiff of his monies. Comp. ¶ 104 – 106. Plaintiff's Complaint, plainly sets forth that Defendants used dilatory tactics to prevent Plaintiff from being heard not only evidencing Defendants' Abuse of Process, but also their violation of Plaintiff's civil right of due process. Comp. ¶ 107 – 120.

Defendants make no argument in defense of their Abuse of Process because they have none. Instead of attempting to find some sort of defense for their tortious acts of Abuse of Process, Defendants attempt to redirect the court's attention away by presenting false arguments supported by irrelevant and inappropriately cited cases for their other tortious acts.

Since Defendant's admit their guilt of Fraud, as evidenced by their own statements discussed below (see page 29 below) and since Defendants have filed a motion to dismiss admitting the facts of Plaintiff's Complaint, and because they assert no defense whatsoever for

14

their tortious Abuse of Process, this Honorable Court should issue a Summary Judgement in favor of Plaintiff or the case should move to scheduling, a jury should be empaneled and the case should go to trial and Defendants' Motion to Dismiss be denied.

In the case, Bell ex rel. Snyder v. ICARD, ETC., 986 SW 2d 550 - Tenn: Supreme Court 1999, the Supreme Court of Tennessee, at Knoxville stated:

> To establish a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." Priest, 174 Tenn. at 307, 125 S.W.2d at 143 (internal quotations and citations omitted); 1 Am.Jur.2d Abuse of Process § 5 (1994).

The Supreme Court further stated in the Bell v. ICARD case

> As this Court emphasized in Priest,
>
>> The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do. 174 Tenn. at 307, 125 S.W.2d at 144.
>
> Abuse of process does not occur unless the "process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided." Id. The mere existence of an ulterior motive in doing an act, proper in itself, is not sufficient. Id. An action for abuse of process cannot be sustained where the process was employed to perform no other function than that intended by law. Id. The bad intent must culminate in an actual abuse of the process "by perverting it to a use to obtain a result which the process was not intended by law to effect." Id. at 308, 125 S.W.2d at 144. **"The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process** as a threat or a club." Keeton et al., supra § 121 at 898.

15

Certainly, this court must agree, tendering falsified orders, quashing a subpoena for documents that should have been provided in discovery, obstructing evidence, abusing discovery are all perversions of processes established in Tenn. R. Civ. P. and local court rules.

## LITIGATION PRIVILAGE NOT A DEFENSE

Defendants falsely assert that 'Litigation Privilege' precludes attorney liability for acts undertaken during, and in the scope of, the attorney's representation of clients in litigation. This argument completely fails for a number of reasons.

It is never within the scope of an attorney's representation to commit acts of fraud, abuse of process, civil conspiracy or IIED. This is never true, or attorneys could act with impudence, even criminally, and then claim 'Litigation Privilege' for tortious or criminal behavior. Therefore, for very obvious reasons, 'Litigation Privilege' is not blanket protection for any liability arising out of acts by an attorney undertaken during representation of a client and acts of fraud, abuse of process, civil conspiracy or IIED are not within the scope of agency or legal representation. To assert acts of fraud, abuse of process, civil conspiracy and IIED are within the scope of agency not only incriminates themselves but their entire law firm.

As this Honorable Court knows, 'Litigation Privilege' applies to defamatory lawsuits arising from litigation. Plaintiff's Complaint in no way references defamation as a cause of action. The cases cited by Defendant are irrelevant to the present matter at hand and attempt to bring into this court's consideration, inapplicable cases from West Virginia, Missouri and Hawaii.

16

Defendants first cite, Simpson Strong-Tie v. STEWART, ESTES ETC., 232 SW 3d 18 - Tenn: Supreme Court 2007, asserting absolute privilege for statements made by attorneys in the course of litigation. This citation has no bearing, no relevance whatsoever, to the present matter at hand. Plaintiff's Complaint does not state a cause of action for statements made during proceedings by Defendants, thus this case citation by Defendants is wholly inapplicable and a waste of this Court's time to consider.

Plaintiff's Complaint, and causes of action, in part, are the tortious actions of tendering false and fraudulent orders of the trial court, not ruled upon by the trial court. Tendering a false and fraudulent ex parte statement of the trial court's reasons for denying recusal. Obstructing evidence in a plain abuse of process, etc. These tortious actions have nothing whatsoever to do with 'Protected Litigation' or statements made by Defendants during the course of the underlying litigation. Moreover, Defendants should be sanctioned for making false misrepresentations to this Honorable Court in misconstruing and misrepresenting the facts of Plaintiff's Complaint.

The Simpson Strong-Tie v. STEWART, ESTES ETC. case has no bearing and is wholly inappropriate to the present matter at hand. The factual background of this inappropriate case citation is as follows:

> This case involves the scope of the absolute litigation privilege applicable to attorneys… …certified a question of law to this Court concerning the applicability of the absolute litigation privilege to attorney solicitations directed at recipients who are, at the time of the allegedly defamatory communication, unconnected with the attorney's proposed lawsuit. The question has arisen in the context of a defamation action brought by the plaintiff, Simpson Strong-Tie Company, Inc..

Case 3:17-cv-00020   Document 104-4   Filed 07/21/17   Page 17 of 40 PageID #: 2374

In an apparent effort to solicit business, the defendant law firm announced in a newspaper and on an Internet website that it was investigating the screws manufactured by the plaintiff. Specifically, in January 2006, the defendant placed an advertisement in the Tennessean newspaper which stated:

> ATTENTION:
> WOOD DECK OWNERS
> If your deck was built after January 1, 2004 with galvanized screws manufactured by Phillips Fastener Products, Simpson Strong-Tie or Grip-Rite, you may have certain legal rights and be entitled to monetary compensation, and repair or replacement of your deck. Please call if you would like an attorney to investigate whether you have a potential claim. **Simpson Strong-Tie v. STEWART, ESTES ETC., 232 SW 3d 18 - Tenn: Supreme Court 2007**

In considering Plaintiff's complaint and this memorandum, it must be plainly obvious, that the Simpson Strong-Tie v. STEWART, ESTES ETC. case has no bearing and his wholly inappropriate to the present matter at hand. This begs the question, "why reference an inappropriate case like this?" Plaintiff asserts Defendants cite this case because they have no defense whatsoever for the tortious actions Plaintiff complains of. Plaintiff asserts Defendants are hopeful that this court will not do its due diligence and determine the irrelevance of this citation for itself and the court should be so offended.

Incredulously, Defendants then turn to West Virginia to support their false defense and cite Clark v. Druckman, 624 S.E.2d 864 (W. Va. 2005). Plaintiff first points out Defendants' incorrect citation and misspelling of "Druckman" as "Duckman". In the Clark v. Druckman case, the W. VA. Supreme Court's opinion stated the following:

> In Collins, we recognized that absolute privileges, such as the **litigation privilege, should only be permitted in limited circumstances.** Collins,

18

211 W.Va. at 461, 566 S.E.2d at 598. **Thus, we do not believe that a litigation privilege should apply to bar liability of an attorney in all circumstances.** In Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A., 892 P.2d 230, 235 (Colo.1995), **the Colorado Supreme court noted that "an attorney is not liable to a non-client absent a finding of fraud or malicious conduct by the attorney."** See also Baglini v. Lauletta, 338 N.J.Super. 282, 768 A.2d 825, 833-34 (2001) ("**The one tort excepted from the reach of the litigation privilege is malicious prosecution, or malicious use of process.**"). We believe such **exceptions to an absolute litigation privilege arising from conduct occurring during the litigation process are reasonable accommodations which preserve an attorney's duty of zealous advocacy while providing a deterrent to intentional conduct which is unrelated to legitimate litigation tactics and which harms an opposing party.** As recently noted by a California court:

> [a] fraud claim against a lawyer is no different from a fraud claim against anyone else. **If an attorney commits actual fraud in his dealings with a third party, the fact he did so in the capacity of attorney for a client does not relieve him of liability.** While an attorney's professional duty of care extends only to his own client and intended beneficiaries of his legal work, **the limitations on liability for negligence do not apply to liability for fraud.**

As noted above, we can find no reasonable justification for distinguishing conduct from communications for the purposes of the litigation privilege. **However, we also recognize the need for limited exceptions from application of the absolute litigation privilege for certain intentional actions.** Accordingly, we now hold that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney **if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action.**

## CONCLUSION

In the instant matter, we find that an attorney does not owe an opposing party a duty of care, the breach of which would subject the attorney to negligence liability. Further, the litigation privilege generally operates to preclude actions for civil damages arising from an attorney's conduct in the litigation process. **However, the litigation privilege does not apply to claims of malicious prosecution and fraud.**

19

Plaintiff is rather astounded that Defendants would cite a case like this and so to should this court be offended. The Clark v. Druckman case, plainly establishes that 'Litigation Privilege' does not apply to claims of fraud. Again, this begs the question, "Why would Defendants incorrectly and inappropriately cite a case like this from another jurisdiction?". The answer can only be that they expect this court to not do its due diligence and the court should be so offended as Plaintiff is offended.

Although Defendants' own case citations support Plaintiff's cause of action and claim for relief, Plaintiff directs the court's attention to a spot on and relevant case issued by the Tenn. Court of Appeals. In the case, Peerman v. Sidicane, 605 SW 2d 242 - Tenn: Court of Appeals, Middle Section 1980, the appellate court stated in its opinion as follows:

> We are compelled to agree with the conclusion of counsel for the plaintiff-appellee that defendant's [Attorneys] action is not one of defamation but is **an action for ... .. abuse of process and the fact that the defendant is an attorney does not afford him immunity**.

In the case Givens v. Mullikin ex rel. McElwaney, 75 SW 3d 383 - Tenn: Supreme Court 2002, our Supreme Court quoted the Court of Appeals of The State of New York as follows:

> **"when a party abuses process[,] his tortious conduct injures not only the intended target but offends the spirit of the legal procedure itself,"** id. 380 N.Y.S.2d 635, 343 N.E.2d at 281, the court further stated that [w]hile it is true that public policy mandates free access to the courts for redress of wrongs and our adversarial system cannot function without zealous advocacy, it is also true that legal procedure 402*402 must be utilized in a manner consonant with the purpose for which that procedure was designed. Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, **the tort of abuse of process will be available to the injured party**. Id. 380 N.Y.S.2d 635, 343 N.E.2d at 283 (citations omitted).

Case 3:17-cv-00020   Document 104-4   Filed 07/21/17   Page 20 of 40 PageID #: 2377

Accordingly, not only do Defendants' own citation prove Plaintiff's rightful cause of action, but Plaintiff's citations clearly demonstrate that he does in fact have a cause of action and proper claim for relief. Furthermore, both Defendants' and Plaintiff's citations plainly establish that fraud and abuse of process are not protected by the doctrine of 'Litigation Privilege'. Yet again, as already established above, this case should move to scheduling, a jury should be empaneled and the case should move to trial. Or, based on Defendants' admission of guilt, this Honorable Court should issue a Summary Judgement in favor of Plaintiff.

Defendants then go on to cite Macke Laundry Serv. Ltd. v. Jetz Serv. Co., 931 SW 2d 166 - Mo: Court of Appeals, Western Dist. 1996, yet another inapplicable case to Plaintiff's Complaint and Defendants' defense. The contention in the Macke case is as follows:

> Macke contends that the trial court erred by granting summary judgment on its claim that Mr. Byers conspired with his client, Jetz Service Co., Inc., to commit tortious interference with contract rights, champerty and maintenance of litigation, and malicious prosecution. **Specifically, Macke claims that it was error for the trial court to hold that, as a matter of law, an attorney is immune from liability for civil conspiracy with the attorney's client unless the attorney is individually liable for the underlying tort** or the attorney had a personal interest in the commission of the underlying tort.

This defense is wholly inapplicable in that Plaintiff does not assert that Defendants' conspired with their client. In fact, Plaintiff believes the opposite is true and that his ex-wife was ignorant of the tortious and conspiratorial actions of Defendants. Incredulously, Defendant's later contradict their own argument on page nine (9) of their memorandum and specifically recognize that Plaintiff does not assert Defendants conspired with their client.

21

Plaintiff asserts Defendants conspired between themselves to commit acts of fraud, abuse of process, and IIED without their client's knowledge. (Comp ¶ 122, 123, 124). Accordingly, Defendants find no protection in the Macke case for tortious action of Civil Conspiracy.

In the case Warwick v. Warwick, No E2011-01969-COA-R3-CV, Court of Appeals of Tennessee, at Knoxville, the Appellate Court referred to the Kincaid v. SouthTrust Bank case in defining a cause of action for civil conspiracy as follows:

> The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Conspiracy claims must be pled with some degree of specificity. Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim. **Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006**

As stated in the Kincaid v. SouthTrust case, an element determining civil conspiracy does not include the element of requiring personal gain by the perpetrator. Although an element of personal gain is not a required element of civil conspiracy, Plaintiff did state in his Complaint the benefits to Defendants of their civil conspiracy (Comp ¶ 56). So not only is personal gain not a required element of civil conspiracy, but Plaintiff did show and state the benefit they received and this false assertion of Defendants offers them no defense against Plaintiff's Complaint. Plaintiff will show at trial material facts that prove his claim of civil conspiracy.

In another wholly inapplicable case cited by Defendants, Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 151 P. 3d 732 - Haw: Supreme Court 2007, Defendants yet again themselves further substantiate Plaintiff's cause of action. The Kahala v Goodsill case is

22

regarding HCR and HPEA torts which are intentional interference business torts wholly inapplicable to Plaintiff's Complaint. Although inapplicable, the Hawaii Supreme Court yet again substantiates Plaintiff's cause of action and claim for relief in this case. In the Kahala v. Goodsill case, the Hawaii Supreme Court stated:

> **Absent a showing of fraud or collusion, or of a malicious or tortious act,** an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client") (citations omitted).

Plaintiff's complaint is plainly not absent a showing of fraud and tortious acts by Defendants. Although Plaintiff's have apparently searched all jurisdictions in a wasted effort to support their defense, they utterly fail to do so. Not only do Defendants fail to find a defense, but their own citations, after just brief due diligence, further substantiate Plaintiff's cause of action and claim for relief. Defendants citations show that in all jurisdictions, the tortious acts of fraud, abuse of process, civil conspiracy and IIED are actionable causes and claims for relief and are not protected by the doctrine of 'Litigation Privilege'.

Defendants then cite Unarco Material Handling, Inc. v. Liberato, 317 SW 3d 227 - Tenn: Court of Appeals, Middle Section, at Nashville. Unarco is a case about breach of confidentiality and yet again another wholly inapplicable case. In its opinion, the Court of Appeals stated:

> The issue on appeal is whether an attorney, while acting in the course of representation of his client when litigation was not pending, has immunity from a claim that he induced the former president of the plaintiff to breach a confidentiality agreement by disclosing confidential information in violation of the agreement.
>
> Unarco claims that Cohen induced Liberato to breach the confidentiality provisions of his agreement with Unarco for which Cohen is individually liable to Unarco. **Cohen, however, contends he is immune from any**

23

claims by Unarco, based upon the litigation privilege, for he was acting in the capacity as an attorney. Thus, Cohen contends he is entitled to summary judgment as a matter of law.

Having identified the public policy to be served by the privilege, the Court then turned its focus to determining whether the privilege encompassed statements — communications — made by an attorney prior to the commencement of an action to which the subject matter of statement pertained. Id. at 24. Following an analysis of the privilege as applied in Tennessee and other jurisdictions, the Court concluded that the litigation privileged applied if:

(1) The communication was made by an attorney acting in the capacity of counsel, (2) the communication was related to the subject matter of the proposed litigation, (3) the proposed proceeding must be under serious consideration by the attorney acting in good faith, and (4) the attorney must have a client or identifiable prospective client at the time the communication is published.

As referenced above, Defendants' argument and four (4) points referenced by Defendants apply to breach of contract issues and are not relevant to this case. Of greater consideration for this court though is found in the Court of Appeals further analysis:

The matters at issue here, however, do not pertain to communications by an attorney, as is the case in a defamation action. The issue here is conduct, specifically the tort of inducing a breach of contract. No Tennessee court has ruled on this issue in the context of the litigation privilege, though courts in other jurisdictions have. Accordingly, we will look to other jurisdictions for guidance, just as the Supreme Court did in Simpson.

The Supreme Court of Hawaii examined the litigation privilege defense in the context of claims and facts that are substantially similar to ours in Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, LLP, 113 Hawai'i 251, 151 P.3d 732 (2007). In that matter, former adversaries of the clients of the Jones Day law firm sued Jones Day and its clients for, inter alia, intentional interference with contractual relations, and inducing breaches of fiduciary, contractual, and other duties. Kahala, 151 P.3d at 742-43. In its defense of that action, Jones Day claimed immunity under the litigation privilege, contending that an attorney could not be held liable to the client's adversary on

24

> any theory other than malicious prosecution, fraud, or malice. Id. at 743. The plaintiffs replied insisting the litigation privilege was not available to Jones Day because it did not apply to intentional torts, which they asserted were "outside the scope of an attorney's legitimate representation and involve conduct, not mere advice." Id. at 747. The plaintiffs further contended that the immunity did not apply because the conduct alleged did not occur in litigation. Id. at 748.

In yet another case cited by Defendants', a Tennessee appellate court has held that the doctrine of 'Litigation Privilege' does not extend to Fraud, Abuse of Process, Civil Conspiracy or IIED torts. As noted above, in each and every case cited by Defendants, their citations are not only wholly inapplicable to the present matter at hand, Defendants own citations substantiate Plaintiff's causes of action and substantiate that their tortious acts are not protected by the doctrine of 'Litigation Privilege'. This Honorable Court should be so offended at such a waste of the court's time made by such frivolous and inappropriate citations and arguments.

## PLAINTIFFS CLAIMS OF FRAUD, ABUSE OF PROCESS, CONSTRUCTIVE FRAUD, AND IIED ARE ALL ACTIONABLE TORTS ACCORDING TO LAW.

## RES JUDICATA IS NO DEFENSE FOR FRAUD AND SEPARATE CAUSES OF ACTION

Defendants next make the false argument that this court does not have the right or authority to collaterally attack the handling of the underlying divorce case litigation which is untrue. Defendants somehow try to make the failing argument that they are protected by res judicata.

By their own argument as stated, *"... the doctrine of res judicata, which bars a second suit between the same parties or their privies **on the same cause of action** in respect to all*

25

*issues which were or could have been litigated in the former suit."*, their claim of res judicata fails completely. The underlying litigation was a complaint for divorce between his ex-wife and himself. Plaintiff's Complaint is a completely separate cause of action from his counter-complaint for divorce. A Complaint for Divorce and a Complaint for Fraud, Abuse of Process, Civil Conspiracy, and IIED are completely separate causes of action and the doctrine of res judicata does not apply.

Yet again, the cases cited by Defendants disprove their own arguments. Furthermore, many of the cases cited are from long ago, for example: 1956, 1965, 1977. Plaintiffs must reach back so far in time, because current case precedence quite simply does not support their false arguments and neither do the cases they inappropriately cite.. Furthermore, even while bringing such cases to the court's attention, their own citations further substantiate Plaintiff's causes of action and claims for relief.

Defendants cite, Carter v. Townsend, 1991 Tenn. App. LEXIS 976, at *3 (Tenn. Ct. App. Dec 18, 1991), falsely asserting res judicata provides them protection for their tortious actions which is not true. In this case, the appellate court went on to say:

> A party asserting a res judicata defense **must demonstrate that** the underlying judgment was rendered by a court of competent jurisdiction; **that the same parties were involved in both suits**; that **the same cause of action was involved in both suits** and that the underlying judgment was on the merits.

Plaintiff is rather astounded that Defendants would take a citation out of context and omit the true facts of the case substantiating Plaintiff has a cause of action and that res judicata is wholly not applicable in this present case as Plaintiff clearly has a different cause of action

from that of his Divorce Complaint. This appears to Plaintiff, to be a misrepresentation of facts to the court and another actionable tort by Plaintiff. This becomes further evident, as additional citations by Defendants' are considered for their true content.

Defendants cite AL Kornman Co. v. METROPOLITAN GOVERNMENT, ETC., 391 SW 2d 633 - Tenn: Supreme Court (1965) asserting res judicata protects them from liability for their tortious actions which it does not. In that case, the court stated as follows:

> In a leading Tennessee case, Pile v. Pile, 134 Tenn. 370, 183 S.W. 1004 (1915), this Court said:
>
> In order that a judgment may be effective as res adjudicata, it is essential that the party sought to be precluded thereby should have sued or been sued in both cases, in the same capacity or character and to enforce or have adjudged the same right, and **it must appear not only that the res affected by the two suits is the same, but that the proceedings were for the same object or purpose, the same point being directly in issue**. Bank v. Smith, 110 Tenn. [337], 338, 75 S.W. 1065; Melton v. Pace, 103 Tenn. 484, 53 S.W. 939.

Even as the Tenn. Sup. Ct. stated back in 1965, "*In order for res judicata to afford protection, it must appear not only the res affected by the two suits is the same, but that the proceedings were for the same object or purpose*" which is certainly untrue in the present matter. Again, the underlying litigation from which this case arose was a divorce complaint and Plaintiff's Complaint is a completely separate Complaint seeking damages with a completely separate purpose and are completely separate complaints from that of the divorce litigation.

In the next case cited by Defendants, reaching back to the 1956 case, New York Life Insurance Co. v. Nashville Trust Co., 292 SW 2d 749 - Tenn: Supreme Court 1956, the Tenn.

27

Sup. Ct. stated much the same, that the two suits must be the same in order for res judicata to apply. Incredulously, their own case citation proves their argument false and that res judicata does not apply in cases with fraud. For Defendants to cite this case in their favor is wholly inappropriate and further suggests Defendants just plug in whatever case, expecting the court will fail in its due diligence. In the case cited, the Supreme Court plainly states the doctrine of res judicata does not apply in that case. The Supreme Court stated as follows:

> **Clearly the plea of res judicata should have been overruled.** The issue in the case now is whether or not Tom Buntin by active extrinsic fraud has defrauded the Courts and the Insurance Company, thereby causing the Courts to say that money should be paid to the beneficiaries of Buntin.
>
> The issue in the law case decided twenty-odd years ago was "whether or not 755*755 Buntin had died prior to March 8, 1933, (the date the policy expired without value) was the issue in the previous trial". **It certainly seems to us that this is an independent action and does not involve any retrial of the issues disposed of in the former case.** We think this question is directly determined in Copeland v. Copeland, 180 Tenn. 609, 177 S.W.2d 555, wherein this Court, speaking through Mr. Chief Justice Green, said:
> "**A plea of res judicata is not available merely because the subject matter of two suits is the same. The cause of action in the two suits must be the same, Mr. Freeman expresses the rule thus:**
> "'As we have already seen, identity of subject matter is not essential to estoppel by judgment. So in determining whether causes of action are the same, the identity of the subject matter or of the transaction out of which they arise, is not a controlling factor. **The subject matter of an action must be distinguished from the cause of action, since the subject matter of the two actions may be the same and yet the causes of action may be entirely different.** New rights in the same subject matter may intervene between the two actions.' Freeman on Judgments, Fifth Edition, p. 1434."
>
> And then too, it is well said:
>
> > "* * * **it is generally held that the principles of res judicata may not be invoked to sustain fraud, and that a judgment**

28

> **obtained by fraud or collusion may not be used as a basis for the application of the doctrine of res judicata.**" 30 Am. Jur. (Judgments) 202, p. 941.

In the 1956 case cited by Defendants, the Supreme Court plainly states that the subject matter of an action must be distinguished from the cause of action and that in order for res judicata to apply, the causes of action must be the same as the underlying subject matter. In this case, Plaintiff's complaint is very obviously a separate cause of action from the subject case and underlying litigation. The Tenn. Sup. Ct. then further stated, in cases of fraud, res judicata does not apply. Therefore, by that argument alone, Defendants' assertion of protection from liability due to the doctrine of res judicata is an utterly failed argument.

The same is true in the final case Defendants cite asserting res judicata as a defense. In their cited case of Towe v. Brock, 1996 Tenn. App. LEXIS 431, at *8 (Tenn. Ct. App. July 26, 1996). In this case, the appellate court went to say:

> Res judicata does not apply in the present case because the former judgment did not dispose of the counterclaim which was distinct and separate from the possessory action that was adjudicated.

It must be obvious to this court, that Plaintiff's cause of action in this case is a wholly separate cause of action and that the Towe v. Brock case does not support their assertion of protection under the doctrine of res judicata.

## PLAINTIFF PROPERLY STATED WITH PARTICULARITY HIS CLAIM OF FRAUD

Defendants then make the false argument that Plaintiff failed to state with particularity his fraud-based claim as required by Tenn. R. Civ. P. Rule 9.02 which is untrue. Plaintiff did

29

state his claim of fraud with great particularity. Defendants then cite the U.S. Ct. of App. 6th Circuit case, Coffey v. Foamex L.P., 2 F. 3d 157, 161-62 (6th Cir. 1993)

> Fed.R.Civ.P. 9(b) requires that averments of fraud must be stated with particularity. **The Sixth Circuit reads this rule liberally**, however, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied…

> However, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." Id. **The threshold test is whether the complaint places the defendant on "sufficient notice of the misrepresentation," allowing the defendants to "answer, addressing in an informed way plaintiffs [sic] claim of fraud."**

As stated by the 6th Circuit U.S. Ct. of App., the intent of the rule is to provide the defendant "sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way, plaintiff's claim of fraud, which Plaintiff more than sufficiently accomplished in his Complaint in the present matter before this court. Furthermore, 6th Circuit U.S. Ct. of App., plainly stated that they read the rule "liberally" meaning favoring or permitting freedom of action in expression.

Plaintiff's Complaint and cause of action, does in fact state with particularity the facts supporting his claim of fraud. Comp ¶ 29 – 50, 51 – 52. One such instance of the multiple tortious acts committed by Defendants, which Plaintiff stated with particularity in his complaint is as follows:

> To falsely state the 'court's ruling' and with themselves 'awarding' escrowed attorney fees to their client, plainly evidences fraud in that it is an: (1) intentional misrepresentation of a material fact: the judge plainly did not make a ruling, (2) with knowledge of the representation's falsity: they knew the judge did not rule on the matter, (3) and an injury was caused by the trial court's reasonable reliance on the representation:

30

Plaintiff was defrauded of this monies, and (4) Defendant's misrepresentation knowingly involved a past or existing fact, the evidence shows the court did not rule, therefore it was an existing fact, **thus plainly demonstrating all the elements of fraud, pursuant to which, Plaintiff has a cause of action, against which Plaintiff has a rightful claim for relief. Comp. ¶ 36**

Defendants then make the false statement that Plaintiff's Complaint is "largely just complaints about the underlying lawsuit" which is untrue. Plaintiff's Complaint and cause of action is not about the "underlying lawsuit", Plaintiff's Complaint and causes of action are pertaining to Defendants' tortious acts of Fraud, Abuse of Process, Civil Conspiracy, and IIED.

Defendants next make the false argument that they are not guilty of fraud just because they didn't make a false misrepresentation to Plaintiff and they Plaintiff didn't rely on any such misrepresentation.

A fraud tort does not require that a false misrepresentation be directed at the Plaintiff nor does a fraud tort require a Plaintiff's reliance upon a false misrepresentation. Accordingly, this is a false argument by Defendants and does not relive their culpability of fraud. Citing Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006, the Appellate Court referenced several cases defining Constructive Fraud.

> Constructive fraud is **a breach of a legal or equitable duty which is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests,** Cornwell v. Hodge, C.A. No. 44, 1986 WL 5890, at *3 (Tenn.Ct.App. May 23, 1986) (citing Bank of Blount County v. Dunn, 10 Tenn.App. 95 (1929)). **Constructive frauds are acts, statements or omissions which operate as virtual frauds on individuals,** Cornwell, 1986 WL 5890, at *3 (citing Maxwell v. Land Developers, Inc., 485 S.W.2d 869 (Tenn.Ct.App.1972)). **They concern a breach of a legal or equitable duty, with or without fraudulent intent, and entail as an attribute of**

31

> **fraud, conduct which reasonably can be expected to influence the conduct of others.** Cornwell, 1986 WL 5890, at \*3 (citing Parks v. Alexander, 608 S.W.2d 881 (Tenn.Ct.App.1980)).

Therefore, according to the Tenn. Ct. of App., Defendants' actions most certainly constitute constructive fraud.

Further citing Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006, the Appellate Court also referred to Dobbs v. Guenther case to define the elements of Fraud.

> The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact. *Dobbs v. Guenther,* 846 S.W.2d 270, 274 (Tenn.Ct.App.1992) (citations omitted)

All of the elements of fraud, as stated by the Tenn. Ct. of App. are present in this case and stated with particularity in Plaintiff's Complaint. Comp ¶ 29 – 50, 51 – 52.

Defendants' arguments not only fail for the obvious reasons stated above, but Defendants plainly and obviously admit their own guilt. Without citing any precedence, Defendants attempt to absolve themselves of their admission of guilt by asserting that because the trial court judge did not correct his very obvious error, that they were then absolved which is untrue. The trial court judge very obviously signed their fraudulent order in error, but was unwilling to correct his error because he knew that would call into question all of the orders issued through him.

Defendants' argument completely fails because the failure of the trial court judge to correct his error, does not eliminate any of the factors constituting fraud stated above. (1)

32

Defendants intentionally tendered a false and fraudulent order to the court. (2) Defendants knew their fraudulent order was a false misrepresentation of fact. (3) Defendants' fraudulent action caused Plaintiff harm and he was defrauded of his money. (4) the trial court judge relied upon Defendants' false misrepresentation of fact and (5) Defendants' fraudulent misrepresentation of fact was a past fact of which the evidence shows, they had knowledge. Comp ¶ 40 – 50. Whether or not the Plaintiff objected to their fraudulent order, whether or not the trial court judge corrected his error of signing their fraudulent order are irrelevant considerations because their actions still constitute fraud. Furthermore, Plaintiff would draw the court's attention to Plaintiff's Comp ¶ 45,56 which states:

> 45. Not only is the evidence plain that the Court did not rule on matters included in the order tendered by Wife's counsel but the order is contradictory of the Court's own statements as well as contradictory to the Court's apparent intent. **Not only is Defendants' action in tendering this surreptitious order tortious fraud, but Defendant's actions also constitute abuse of process** in surreptitiously obtaining an order of the court plainly not ruled upon.
> 46. **The unfortunate fact that the trial court judge signed this surreptitious order does not relieve their culpability of fraud or abuse of process. To say this is true, flies in the face of all case law precedence where victims have been misled through fraud to enter into unconscionable contracts or legal agreements. Simply because the trial court judge was duped through misplaced trust, and or, a short memory, does not negate the fact of fraud nor abuse of process, just the same as a victim of fraud who was fraudulently induced does not relieve tortious fraud.**

## TENNESSEE RULES OF PROFESSIONAL RESPONSIBILITY NOT RELEVANT ARGUMENT

Surprisingly, Defendants try to then argue that Plaintiff's claim arises out of violation of the Tenn. Rules of Professional Conduct, which it does not. Plaintiff's cause of action is

33

based upon the long established common law torts of Fraud, Abuse of Process, Civil Conspiracy and IIED. Since Plaintiff's claim is in no way predicated upon the rules of conduct for attorneys, their entire argument here is irrelevant and does not relieve them of their tortious actions, nor does it invalidate Plaintiff's cause of action.

## CIVIL CONSPIRACY IS ESTABLISHED BY UNDERLYING PREDICATE TORT

Plaintiff's Complaint plainly states an assertion that Defendants conspired together to commit tortious actions of Fraud, Abuse of Process, Civil Conspiracy and IIED, against Plaintiff. Comp. ¶ 122.

In the case Warwick v Warwick, No E2011-01969-COA-R3-CV, Court of Appeals of Tennessee, at Knoxville, the Appellate Court referred to the Kincaid v. SouthTrust Bank case in defining a cause of action for civil conspiracy as follows:

> The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. Conspiracy claims must be pled with some degree of specificity. Conclusory allegations, however, unsupported by material facts will not be sufficient to state such a claim. **Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006**

Defendants make the assertion that Plaintiff must establish the existence of an underlying predicate tort, which is true. Defendants and this Honorable Court must plainly and obviously recognize that Plaintiff's Complaint is just that. Plaintiff's underlying torts and causes of action are plainly stated with particularity in his Complaint. To assert there is not an

34

underlying tort ignores the facts of Plaintiff's Compliant and their own motion and memorandum which is an astoundingly ridiculous and failed argument.

Plaintiff has not failed to plead actionable claims of Fraud, Abuse of Process, Civil Conspiracy and IIED. In considering all of Plaintiff's arguments above, considering Defendants' own admission of guilt, considering Defendants' irrelevant and inappropriate case citations, considering that Defendants' own case citations support Plaintiff's cause of action, this court should issue an order of Summary Judgement in favor of Plaintiff.

## CIVIL CONSPIRACY NOT PROTECTED BY CORPORATE VEIL FOR PLLC

Defendants then make the false argument that Defendants as co-counsel are essentially one and the same person. In an attempt to falsely support this false argument, Defendants cite Trau-Med of America, Inc. v. Allstate Ins., 71 SW 3d 691 - Tenn: Supreme Court 2002. In this case, the Supreme Court stated:

> **It has long been accepted in Tennessee that a corporation is capable of extra-corporate conspiracy; that is, a corporation becomes vicariously liable for the conduct of its agents who conspire with other corporations or with outside third persons.** See, e.g., Standard Oil Co. v. State, 117 Tenn. 618, 665, 100 S.W. 705, 716-17 (1907). **However, where each alleged co-conspirator is an agent or employee of the same corporate entity and is acting on the corporation's behalf, the conspiratorial liability of that corporation becomes less clear.**

As evidenced in the Supreme Court's statement above, conspiratorial liability between two co-conspiring agents employed by the same corporation becomes *less clear*. Plainly though, the Supreme Court does not state that "no conspiracy can exist" as Defendants falsely

35

asserted to this Honorable Court and the court should be offended by such a patently false statement.

The Supreme Court then goes on to state:

> We recognize the rule expressed by this doctrine as a sound one, and consequently, we hold that there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially 704*704 a single act by a single corporation acting through its officers, directors, employees, and other agents, ***each acting within the scope of his or her employment.***

Plaintiff would point out for the court, the Supreme Court's emphasis on the statement ***"each acting within the scope of his of his or her employment."*** It is never true that Fraud, Abuse of Process, Civil Conspiracy and IIED, are within the scope of agency. Since Defendants acted outside the scope of their agency in their tortious actions, their argument fails.

Furthermore, the foundation of this doctrine lies more specifically in protection afforded by the corporate veil and the doctrine that a corporation as a whole is a separate and legal entity in and of itself.

Defendant Pamela Anderson Taylor is a member partner of her law firm Stites & Harbison, PLLC. By definition, a professional limited liability company ("PLLC") is a business entity designed for licensed professionals, such as lawyers. One of the major reasons to form a PLLC is because it creates a separation between the individual and the entity. In most cases, if a PLLC is formed, the individual will not be personally liable for the business' debts or any lawsuits against the business as they are separate entities from one another.

36

Defendant Brenton Hall Lankford is an associate member of his law firm and since he is not a member partner, he is therefore an employee of the PLLC. Therefore, because Defendant Taylor is a member partner she plainly has a separation between her individual self and the PLLC and since Defendant Lankford is an associate employee of the PLLC, by definition, Defendants are not afforded the protection from civil conspiracy discussed by the Supreme Court in the Trau-Med case. Defendants' argument in this regard also fails utterly and completely; just as all their other arguments so fail.

## PLAINTIFF PROPERLY STATES A CLAIM FOR INTENTIONAL INFLECTION OF EMOTIONAL DISTRESS

Defendants falsely assert Plaintiff failed to state a claim for IIED, which is untrue. In Plaintiff's Complaint, he plainly stated:

> As a result of the actions by Defendants, Plaintiff became temporarily alcohol dependent for a period lasting several months as a means to dull the pain of injustice. Caused by Defendant's actions and their client's malicious actions, Plaintiff was left without healthcare and was unable to afford counseling or medical treatment **for his mental suffering.** Comp. ¶ 135

> **Plaintiff became obsessed** with finding justice in the court and because the trial court judge did not appear to have any knowledge of marital law, Plaintiff spent hours upon hours writing numerous Memorandums of Law that were never even read by the trial court. **This caused Plaintiff further mental anguish** in learning and knowing the law while being denied his rights under the law. Comp. ¶ 136

> As a result of Plaintiff's obsession with finding justice and proving his case, **Plaintiff was unable to carry out his responsibilities and duties necessary to his new business** causing him to lose clients. Comp. ¶ 137

37

> After being tobacco free, since 1998, Plaintiff began again to use tobacco as a means to defray his mental anguish and reduce his alcohol dependency. Comp. ¶ 138

As Plaintiff plainly stated in his Complaint, he did suffer mental anguish. Due to the tortious actions of Defendants, Plaintiff has been unable to afford medical care and has been without health insurance. Plaintiff is currently seeking out medical treatment for his mental affliction caused by Defendant's IIED. Plaintiff's symptoms, which he stated in his Complaint: substance abuse, obsession, inability to work are likely symptomatic of Post-Traumatic Stress Syndrome.

**CONCLUSION**

For all the reasons discussed herein, Plaintiff respectfully submits, that not only did Defendants utterly fail to provide any viable defense of their tortious actions, but they have so offended this Honorable Court by attempting to bias the court, and by misrepresenting and omitting material facts from their case citations and should be sanctioned accordingly and their motion to dismiss should not only denied but stricken from the record. Plaintiff also requests such other and further relief as the Court deems equitable and appropriate under the circumstances.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

38

## Cases

Pile v. Pile, 134 Tenn. 370, 183 S.W. 1004 (1915) ........................................................... 27

AL Kornman Co. v. METROPOLITAN GOVERNMENT, ETC., 391 SW 2d 633 - Tenn: Supreme
  Court (1965) ........................................................................................................... 27

Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) ........................................................... 10

Bell ex rel. Snyder v. ICARD, ETC., 986 SW 2d 550 - Tenn: Supreme Court 1999 ........... 15

Clark v. Druckman, 624 S.E.2d 864 (W. Va. 2005) ........................................................... 18

Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564-65 (Tenn. 2001) ............................... 11

Donaldson, 557 S.W.2d at 62 (citation omitted) ................................................................... 4

Givens v. Mullikin ex rel. McElwaney, 75 SW 3d 383 - Tenn: Supreme Court 2002 ......... 20

Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965) ............................................. 7, 9

Huffman v. State, 3 Tenn. Cr.App. 124, 458 S.W.2d 29 (1970) ......................................... 12

Judge v. State, 539 SW 2d 340 - Tenn: Court of Criminal Appeals 1976 ............................. 7

Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 151 P. 3d 732 - Haw: Supreme Court 2007
  ................................................................................................................................ 22

Kincaid v. SouthTrust Bank, 221 SW 3d 32 - Tenn: Court of Appeals, Middle Section 2006 .... 31

Leighton v. Henderson, 220 Tenn. 91, 414 S.W.2d 419, 421 (1967) ................................. 10

Macke Laundry Serv. Ltd. v. Jetz Serv. Co., 931 SW 2d 166 - Mo: Court of Appeals, Western Dist.
  1996 ........................................................................................................................ 21

Mathews v. Eldridge, 424 US 319 - Supreme Court 1976 ................................................. 10

New York Life Insurance Co. v. Nashville Trust Co., 292 SW 2d 749 - Tenn: Supreme Court 1956 .. 27

Peerman v. Sidicane, 605 SW 2d 242 - Tenn: Court of Appeals, Middle Section 1980 ....... 20

Priest v. Union Agency, 174 Tenn. 304, 125 S.W.2d 142 (1939) .......................................... 3

Shelby County Gov't v. City of Memphis, No. W2014-02197-COA-T10B-CV, 2015 WL 127895, at
  *4 (Tenn. Ct. App. Jan. 8, 2015) ............................................................................... 11

Simpson Strong-Tie v. STEWART, ESTES ETC., 232 SW 3d 18 - Tenn: Supreme Court 2007 ...... 17

Smith v. State, 527 S.W.2d 737 (Tenn. 1975) ................................................................... 12

State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002) ........................................................... 10

State v. Goltz, 111 SW 3d 1 - Tenn: Court of Criminal Appeals 2003 ................................. 6

Towe v. Brock, 1996 Tenn. App. LEXIS 431, at *8 (Tenn. Ct. App. July 26, 1996) ........... 29

Trau-Med of America, Inc. v. Allstate Ins., 71 SW 3d 691 - Tenn: Supreme Court 2002 ....... 35

U.S. Ct. of App. 6th Circuit case, Coffey v. Foamex L.P., 2 F. 3d 157, 161-62 (6th Cir. 1993) ..... 30

Unarco Material Handling, Inc. v. Liberato, 317 SW 3d 227 - Tenn: Court of Appeals, Middle Section,
  at Nashville .............................................................................................................. 23

Warwick v Warwick, No F2011-01969-COA-R3-CV ....................................................... 22

Williams v. Healthsouth No. W2015-00639-COA-T10B-CV ............................................ 10

## Rules

Tenn. R. Civ. P. 12.02(6) ..................................................................................................... 5

Tenn. R. Civ. P. Rule 9.02 ............................................................................................. 2, 28

Case 3:17-cv-00020   Document 104-4   Filed 07/21/17   Page 39 of 40 PageID #: 2396

**THIS HEARING IS SET TO BE HEARD ON FRIDAY, DECEMBER 2, 2016 AT 9:00 A.M.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and via First Class US Mail, postage prepaid to:

Lauren Paxton Roberts
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
Counsel for Defendants, Pamela A. Taylor and
Brenton H. Lankford

On this the 15th day of November, 2016

_____
John Anthony Gentry, CPA

40