IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

JOHN ANTHONY GENTRY,           )
                               )
    Plaintiff,                 )
                               )
v.                             )
                               )   CASE NO. 16C2615
PAMELA ANDERSON TAYLOR, and    )
BRENTON HALL LANKFORD,         )
                               )
    Defendants, Jointly and    )
    Separately.                )
                               )

COPY

FILED
2017 JUL 21 AM 9:53
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

PROCEEDINGS

BEFORE THE HONORABLE AMANDA MCCLENDON

December 9, 2016

---

HUSEBY, INC.
Court Reporting Services
207 Washington Square Building
214 Second Avenue North
Nashville, Tennessee 37201
(615) 256-1935

**Page 2**

APPEARANCES:
For the Plaintiff, pro se
    JOHN GENTRY
    208 Navajo Court
    Goodlettsville, Tennessee 37072
    johng@estartsolutions.co

For the Defendant:

    ERIKA R. BARNES, ESQ.
    Stites & Harbison, PLLC
    401 Commerce Street
    Suite 800
    Nashville, Tennessee 37219
    (615) 782-2252
    ebarnes@stites.com

                ~*~

**Page 3**

                I N D E X

PROCEEDINGS:                              Page

Motions . . . . . . . . . . . . . . . . . 04

                ~*~

**Page 4**

                P R O C E E D I N G S

        THE COURT: Gentry v. Taylor. This is the Defendants' motion to dismiss. So this is the Defendants' motion to dismiss, so Defendant goes first.
        MS. BARNES: Morning, Your Honor.
        THE COURT: Good morning.
        MS. BARNES: I'm Erica Barnes of the law firm Stites and Harbison, here on behalf of Defendants Pam Taylor, who is with us today, and Defendant Brent Lankford. And we have filed this motion to dismiss the complaint that was filed by Mr. Gentry. The Defendants, Ms. Taylor and Mr. Lankford, were the attorneys for Mr. Gentry's ex-wife in their divorce action in Sumner County.
        The Plaintiff appears to be dissatisfied with the results of the Sumner County divorce litigation, the proper course of which is to appeal that litigation to the Court of Appeals, which Mr. Gentry has done. The proper course of action is not to sue your ex-wife's lawyers in trial court in another county, which is what this case is all about.
        I know Your Honor has looked at everything, but I will run over the legal grounds quite quickly for the reasons why Ms. Taylor and

**Page 5**

Mr. Lankford should be dismissed from this litigation.
        THE COURT: Okay.
        MS. BARNES: The first is a litigation privilege. The acts that Ms. Taylor and Mr. Lankford took in the Sumner County action were solely in their capacity as counsel for Ms. Gentry. They did not take any actions on their individual behalf.
        On page 5 of the memorandum that we filed in support of the motion to dismiss, the Unarco (phonetic) case set forth the elements for when counsel are protected by litigation privilege. When counsel is acting in their capacity as counsel, they're acting in good faith for the benefit of their client, the conduct related to the subject matter of the litigation, and there's a nexus between the attorney's conduct and the litigation.
        The specific facts alleged in the complaint show that each of these elements is true, that all action taken by the Defendants related to their representation of Mrs. Gentry in the underlying divorce action [sic].
        There are complaints that there were unreasonable delays in the Sumner County action; there is a complaint about the Defendant seeking attorneys' fees on behalf of their client in the underlying

Page 6

1  Sumner County action, and there's a complaint about
2  Defendants filed a motion to quash a subpoena in the
3  underlying Sumner County Court action, and, likewise,
4  a complaint about the proposed orders submitted by the
5  Defendants on behalf of their client to the Sumner
6  County Court. Notably, the parties litigated that
7  issue in Sumner County, and the judge ultimately is
8  the one, of course, who signed the order. If the
9  judge believes that the terms of the order were
10 submitted to him incorrect or otherwise inconsistent
11 with his ruling, he would not have signed it.
12         All of these actions complained about
13 were actions taken by Ms. Taylor and Mr. Lankford in
14 the course of their representation solely to further
15 the representation of their client. This -- there's
16 no private cause of action to be brought against the
17 Defendants acting in their capacity as lawyers with
18 respect to the litigation privilege.
19         As a matter of law, these claims are
20 improperly brought. These claims -- on a
21 res judicata, these claims were already litigated.
22 They were litigated in Sumner County. They're being
23 litigated in the Court of Appeals. Everything
24 complained of are actions from the Sumner County
25 Court. They are not actions taken outside that

Page 7

1  litigation.
2         With respect to the fraud claims, we
3  submit that any fraud claims were not pled with
4  particularity pursuant to Rule 9.02. The complaint
5  does not allege any misstatements specific by the
6  Defendants, any reliance by the Plaintiff, or any
7  damages that he incurred as a result.
8         The abuse of process claims, we submit
9  that there is no private right of action provided by
10 the Tennessee Rules of Professional Conduct, which is
11 what the allegations are, is that there were
12 violations by Defendants of the Rules of Professional
13 Conduct. Those are disciplinary rules. They do not
14 give parties a private right of action.
15         With respect to the claims for a civil
16 conspiracy, in order to meet the initial threshold to
17 pursue a civil conspiracy claim, the Plaintiff would
18 have to prove successfully a tort claim of some sort;
19 for the reasons I've previously discussed, we believe
20 the tort claim has failed as a matter of law and
21 should not proceed.
22         Even if the Plaintiff were able to prove
23 a tort claim, a conspiracy could not be held by the
24 Defendants as lawyers in the same law firm. They're
25 not conspiring together, they're pursuing a single

Page 8

1  interest, the law firm's interest. The law firm
2  technically was the party representing Mrs. Gentry by
3  the lawyers Ms. Taylor and Mr. Lankford. And so the
4  law firm itself is a single entity and has a single
5  interest. There is nothing to conspire together.
6         Page 10 of the memorandum that I
7  submitted cites the Trau-Med case, holding that there
8  can be no actionable claim of conspiracy where the
9  conspiratorial conduct alleged is essentially a single
10 act by a single corporation acting through its
11 officers, directors, employees, and other agents, each
12 acting within the scope of his or her employment.
13 There simply is no basis for a conspiracy between two
14 individual employees or representatives of a law firm.
15        The final claim is an intentional
16 infliction of emotional distress claim, submit that
17 that claim fails for a number of reasons, primarily
18 that there has been no serious mental injury pled as
19 required by the elements for intentional infliction,
20 and, also, that any conduct alleged doesn't rise to
21 the level of outrageous, as would be required to
22 sustain a claim for intentional infliction of emotion
23 distress.
24        At the bottom -- bottom line, Ms. Taylor
25 and Mr. Lankford zealously represented their client,

Page 9

1  as they are obligated to do by the rules governing
2  them as lawyers. They acted in their capacity as
3  lawyers, and Mr. Gentry should not be permitted to
4  proceed with this cause of action against Ms. Taylor
5  and Mr. Lankford.
6         THE COURT: Thank you.
7         MS. BARNES: Thank you.
8         THE COURT: Response, please.
9         MR. GENTRY: Good morning, Your Honor.
10 The Defendants falsely assert that my complaint should
11 be dismissed based on litigation privilege
12 res judicata and a failure to state a claim with
13 particularity and that I'm attacking the rulings of
14 the underlying litigation, which is not true. And
15 their arguments for litigation privilege and
16 res judicata failed completely.
17        Litigation privilege does not apply to
18 complaints of malicious abuse of process or fraud.
19 Also, to sustain a defensive res, it must be true that
20 the res affected of two suits is the same, that the
21 proceedings were for the same object and the same
22 purpose, the point being directly an issue which is
23 not true in this case. The underlying litigation was
24 a divorce case.
25        This is a complaint for their abuse of

Page 10

1  process and for their actions of fraud. Defendants do
2  not anywhere represent or defend their abuse of
3  process. They -- they respond to the fraud, they
4  respond to the civil conspiracy, but they don't
5  respond to my tort of abuse of process anywhere in
6  their defense because they have no defense for it,
7  Your Honor.
8       I have some evidence that I could just
9  put up on the screen for Your Honor. I think I just
10 slip this under here; is that right?
11      THE CLERK: Yes, sir.
12      MR. GENTRY: Can I zoom that down a
13 little bit?
14      THE CLERK: (Assists.)
15      MR. GENTRY: Thank you, sir.
16      Your Honor, when they blatantly -- when
17 they blatantly abuse process and defy the Court and
18 they overrule the Court's instructions, they go too
19 far. When they say, I don't care what the judge says,
20 this is how it's going to be, they go too far.
21      In the final hearing of the divorce
22 case -- so you see here, the Court said, (as read)
23 Yeah, I think so, there's no reason to submit anything
24 other than findings of fact and conclusions of law.
25 The Court gave specific instruction to the Defendants

Page 11

1  not to tender any documents other than findings of
2  fact and conclusions of law. The Court said this four
3  times and gave very specific instructions, Your Honor.
4  The Court asked if there were any more questions, and
5  here I said, (as read) Just about the attorney fees,
6  Your Honor. And the Court said, I am not going to
7  make a decision on that, I'm going to go back and look
8  at my notes. The Court specifically said, I'm not
9  making a ruling on awarding of attorney fees.
10      So the Court went on to say, down here --
11 and it said, (as read) Mr. Lankford, if you want to
12 submit a divorce declaring the party's divorce today
13 reserving all other issues for the Court, we'll go
14 ahead and sign that. But I think I am simply going to
15 declare the parties divorced today. Nothing else.
16 The Court gave very specific instructions.
17      During this case, the Court was
18 tremendously biased against me. I was against a
19 topnotch legal team. I wasn't heard throughout the
20 proceedings of that case. When I finally had a chance
21 to present my evidence and present my sincere
22 testimony to the Court, I completely flip-flopped the
23 Court. And he came to my side, and he saw that he had
24 been deceived for over two years by Defendants and
25 their client. And the Court indicated it was going to

Page 12

1  return attorney fees to me, and he said that he was
2  going to treat my equitable distribution -- motion for
3  equitable distribution of assets as a proposed
4  division of assets. I completely turned this judge
5  over.
6       So the Court said, as noted in the
7  transcript, (as read) Go ahead and submit a final
8  decree, Mr. Lankford. And they did that in this
9  document. And I would draw the Court's attention to
10 the title of this document, which says, (as read)
11 Final Decree Granting Divorce and Reserving All Other
12 Issues. This order was prepared by the Defendants,
13 and they plainly recognized to reserve all other
14 issues for the Court.
15      I would also draw the Court's attention
16 to the final sentence, which says, (as read) There
17 will be another order forthcoming with respect to
18 property division, and all other -- and all other
19 matters shall issue. So this is their order, and they
20 were recognizing the Court's instructions and properly
21 doing what the Court was instructing them to do.
22      But then the Court had said, (as read)
23 I'm going to rule on attorney fees. I can do that
24 before you submit findings of fact. The Court ordered
25 findings of fact due in 30 days. The Court forgot

Page 13

1  about it, and the Court did not rule on the attorney
2  fees.
3       So 42 days later, in defiance of the
4  Court, they tendered this order. And in this order
5  they awarded themselves attorney fees. They denied my
6  motion for equitable distribution of marital assets.
7  And it's in the transcripts. I can present it to the
8  Court now if you need to see it, but the judge
9  specifically said, (as read) I'm going to treat that
10 as a proposed division, but they deny it in here.
11      The rest of this order can in no way, the
12 facts will show -- if we get to trial, the facts will
13 show that the items that they included in their order
14 do not in any way reflect the deliberations of
15 decisions of that court, no way whatsoever.
16      Sorry, Your Honor, I have a lot of papers
17 going on here.
18      And I would just point out, Your Honor,
19 when they tendered that order to the Court, they were
20 effectively saying to the Court, We don't care what
21 you said, this is how it's going to be.
22      THE COURT: That's not how that works,
23 judges refuse orders all the time.
24      MR. GENTRY: In -- on September 15th of
25 2015, they also tendered another fraudulent document

Page 14

to the Court. I have a copy of their transcript here. And I'll go over this in just a minute. The transcript evidence is that Defendant Lankford directly handed the judge an unsolicited basis of his recusal denial. I had asked that judge to recuse himself, and the judge -- an order prepared by Defendants -- just said, Motion denied. And the judge failed to state his basis for his decision pursuant to Rule 10B, Section 1.03.

The transcript evidence is that Mr. Lankford handed to the judge an unsigned document. The document shows a certificate of service coming from the court clerk to me. They were plainly and obviously circumventing rules of procedure, circumventing the Clerk's Office, and intentionally and fraudulently making -- attempting to make it appear as though the document came from the Court and not through them.

If it was even remotely okay for them to tender a document directly to the judge, which it is not, the certificate of service should have been from Defendants to me and not from the Court to me. The malicious intent and abuse of process is undeniable. They were putting themselves forth as though they were the Court.

Page 15

This is a copy of the unsigned document that they tendered to me. And you'll notice that the certificate of service says "Circuit Court Clerk." So they were presenting themselves as the Court, their intention was that this document was to come from the Court to me. The certificate of service should have been from the Defendant -- either Defendant Lankford or Defendant Taylor to me.

THE COURT: Not in all circumstances --

MR. GENTRY: I'm sorry, I'm hard of hearing, Your Honor.

THE COURT: I said, not in all circumstances. Mr. Brick signed a certificate of service this morning on slow pay. There are circumstances in which the deputy clerk signs the certificate of service.

MR. GENTRY: So here is the -- this is the signed copy of the document here, Your Honor. Oops, is that not showing up?

(Assistance provided by the clerk.)

MR. GENTRY: Thank you.

So this is a signed copy, and you can see that it crossed out "service from the Court" and wrote in his own name here. I received this two days later in e-mail from Defendants.

Page 16

During that hearing, Mr. Lankford had said, Mr. Gentry brought up -- I'm looking here in the transcript (indicating). It says, (as read) Mr. Gentry brought up issue of Rule 10 about findings of fact. We've drafted a response back. The Court has already entered the order, but just to lighten the mood. So you can plainly see that he's handed the judge an unsigned document.

Local rule, Sumner County 1.4 states, (as read) All pleadings, papers, orders, briefs shall be signed by the attorney of record. Local rule, Sumner County 1.12 states, (as read) All papers, including pleadings, motions, briefs, proposed judgments and orders shall be submitted to the appropriate clerk. The rule specifically states, (as read) Papers shall not be mailed to or left with the judge.

Tennessee f of Civil Procedure 11.01(a) state, (as read) Every pleading, motion, paper shall be signed by at least one attorney of record. So not only were they in violation of the local rules and abuse of process, they were in violation of Tennessee Rules of Procedure.

Rule 5.06, Tennessee Rules of Procedure state, (as read) The filing of pleadings and other

Page 17

papers shall be made with filing them with the clerk, except that the judge may permit the papers to be filed with the judge.

Now, if you notice in the transcript here, he went on to say, (as read) We have proposed -- he said, (as read) We have presented to the Court and we can provide that to the Court in a Word document. Which my assertion is is that it was for the Court to receive an electronic document so that they could make it appear as though it came from the Court and not from them. Rule 10B, Section 1.103 says, (as read) The judge shall state in writing his reasons for denial. They were plainly representing themselves as the Court, Your Honor.

The Court gave instruction then, said -- because I objected to it, I said -- you know, I didn't understand it was abuse of process at the time, but just, intuitively, something seemed wrong to me with them handing a document to the judge like that. So I was asked -- and, also, I'm hard of hearing. Mr. Lankford spoke very quietly, and I could hardly hear him.

So I said, I didn't hear that, what is this? And we were in a small court room. I was from here to Mr. Lankford (indicating), and I couldn't hear

Page 18

1  what he was saying. I said, I can't hear this, what
2  is this? And he said, We have this, and we can send
3  it in a Word document. And I said, I haven't gotten a
4  copy of this, have I? And he said, No, you have not.
5       I think it was only because I -- I
6  instinctively saw something wrong was going on here
7  that that document didn't go through the judge and
8  ended up getting signed. But the Court specifically
9  instructed and ordered the court officer to escort
10 Mr. Lankford to the Clerk's Office to file the
11 document. So, plainly, he did not have permission of
12 the judge to receive papers, so he was not only in
13 violation of the local rules of Sumner County in an
14 abuse of process, but he was in violation of the
15 Tennessee Rules of Civil Procedure as well, because he
16 did not have permission of the judge.
17      When Mr. Lankford stated, We've drafted
18 the response back, we have proposed findings and
19 conclusion of law, this document is not a response.
20 It is not proposed findings and conclusions. It's not
21 the title of the document. This document was an
22 unsolicited, fraudulent representation of themselves
23 as the Court. Defendants' statement -- and we've
24 drafted a response back -- was just a sneaky and
25 underhanded effort to slip the Court an ex parte

Page 19

1  fraudulent document while bypassing proper filing
2  procedure and service to me, Your Honor.
3       On September 16th -- on September 16th,
4  -- I have a copy of their affidavit for all the items
5  that they billed their client for. On September 16th,
6  in this document, the day after the hearing -- right
7  here, Your Honor, they billed time, (as read)
8  Conference with Pam Taylor, RE service proposed
9  findings of fact, motion to recuse. 9/16 is the day
10 after that hearing.
11      They are discussing service, Your Honor.
12 They're discussing service because they know they got
13 caught red-handed tendering a falsified ruling of the
14 Court in violation of multiple rules of procedure.
15 The Court can plainly see that they violated the local
16 rules and the Tennessee Rules of Procedure for filing
17 a document, and that is an abuse of process.
18      And when we get into whether I stated my
19 complaint of fraud in particularity, the fact that I
20 have an abuse of process and clear evidence of abuse
21 of process, the motion to dismiss of the Defendants
22 should be denied because there is no need to state
23 abuse of process with particularity, as there is that
24 requirement of Rule 9.02, but which I will show the
25 Court that I did satisfy.

Page 20

1       In the case, Bell Snyder v. ICARD, 986
2  SW 2d Volume, 550, Tennessee Supreme Court, 1999,
3  Supreme Court of Knoxville stated, (As read) To
4  establish a claim of abuse of process in Tennessee, as
5  in a majority of other jurisdictions, two elements
6  must exist: The existence of an ulterior motive, an
7  act of the process other than such as would be proper.
8       The Court emphasized in that case, citing
9  a Priest case from earlier, the test as to whether
10 abuse of process is whether the process had been used
11 to accomplish some end which is with -- which is
12 without regular purview of the process.
13      Abuse of process occurs when the process
14 is perverted. And, Your Honor, I think when they
15 tendered an unsigned document, violating multiple
16 rules of procedure, representing themselves as the
17 Court, I think that is about as perverse abuse of
18 process as you can get.
19      Defendants, in their motion to dismiss,
20 they falsely assert that litigation privilege
21 precludes an attorney for acts in scope of an
22 attorney's representation of clients in litigation.
23 Your Honor, fraud and abuse of process are never
24 within the scope of representation.
25      Defendants cites Simpson Strong, Stewart

Page 21

1  Estes, which is a case about a defamation suit, and in
2  a defamation suit litigation privilege does apply. My
3  case is not a defamation suit, and why they cited this
4  case is beyond me.
5       Defendants then turned to West Virginia
6  case to support their false defense. And the case is
7  Clark v. Druckman, 624, a West Virginia case. I cited
8  it in my compliant -- or in my response to their
9  motion to dismiss, excuse me.
10      I will first point out that they
11 misspelled "Druckman" as "Duckman" in their motion to
12 dismiss. But what I would really draw the Court's
13 opinion to -- or the Court's attention is the real
14 opinion of that case. In Clark v. Druckman, the West
15 Virginia state- -- the West Virginia court stated the
16 following -- this is their case citation in their
17 motion to dismiss, Your Honor. And the Court stated,
18 in West Virginia, (as read) In Collins, we recognize
19 that absolute privilege, such as litigation privilege,
20 should only be permitted in limited circumstances.
21 Thus, we do not believe that litigation privilege
22 should apply to bar liability of an attorney in all
23 circumstances. An attorney is not liable to a
24 non-client absent a finding of fraud or malicious
25 conduct by an attorney. The one tort accepted from a

Case 3:17-cv-00020   Document 104-5   Filed 07/21/17   Page 6 of 19 PageID #: 2403

Page 22

1 breach of litigation privilege is malicious
2 prosecution or malicious use of process. If an
3 attorney commits actual fraud in dealings with a third
4 party, the fact that he did so in a capacity for a
5 client does not relieve him.
6 And in conclusion, that West Virginia
7 court, they cited in their case again. In conclusion,
8 they said, (as read) However, the litigation privilege
9 does not apply to claims of malicious prosecution and
10 fraud. I think in not presenting the full opinion and
11 omitting the actual statements of that Court, I think
12 it's a misrepresentation of the opinion, Your Honor.
13 Defendants then cite Mackie Laundry, a
14 Missouri case, yet another inapplicable case to
15 their -- to their motion to dismiss, but, in fact,
16 also substantiates my cause of action. In Mackie, it
17 claims that it was in error to the Court to hold that,
18 as a matter of law, an attorney is immune from
19 liability for civil conspiracy with their client. I
20 do not assert in any way that they conspired with
21 their client. I think they did it in and of
22 themselves.
23 In their own argument, in their own
24 complaint they contradict this case citation in their
25 memorandum, and they specifically recognize that I do

Page 23

1 not cert (phonetic) conspiracy with their client. So
2 I don't know why they cited that case either. They
3 also cite a Hawaii case, Kahala/Goodsill, which also
4 further substantiates my cause of action.
5 And, Your Honor, may I ask a question?
6 THE COURT: Yes.
7 MR. GENTRY: These cases were not
8 attached to their motion to dismiss, and the rules for
9 Davidson County and your own court rules, you ask that
10 out of cite cases, federal jurisdiction cases be
11 attached to their motions. I have all of these cases
12 with me, would the Court like me to present copies so
13 you can have the full opinion for your reference?
14 THE COURT: Certainly.
15 MR. GENTRY: Thank you, Your Honor.
16 Should I go through this as I hit each case, or do you
17 want me to just stack them up.
18 THE COURT: Just stack them up, I think.
19 MR. GENTRY: Thank you, Your Honor. So
20 I'll lay out three copies, one for the Defendant and
21 one for myself and one for the Court. So that's the
22 Simpson case and the Snyder cases, and then here's the
23 Clark/Druckman case that we just went over that proved
24 my cause of action. And then this is the Matthew case
25 that's irrelevant. And here is the Kahala/Goodsill

Page 24

1 case that I just discussed for the Court. In -- I'm
2 drawing a blank, what was your name again?
3 MS. BARNES: Ms. Barnes.
4 MR. GENTRY: Thanks.
5 Ms. Barnes had mentioned the Unarco
6 (phonetic) case, Defendants completely misrepresent
7 the opinion of this case; I would say it's more abuse
8 of process, Your Honor, to misrepresent a case to the
9 Court. On page 5 of their memorandum in support of
10 motion to dismiss, they claim Tennessee has adopted a
11 new rule, which isn't true. They falsely claim that
12 litigation privilege applies to conduct during
13 litigation. That is not what the Court of Appeals
14 said in any way whatsoever in that opinion. The Court
15 of Appeals was referring to attorney conduct prior to
16 the commencement of litigation.
17 The Unarco case -- in the Unarco case,
18 the attorneys had put out an ad, Hey, if you bought --
19 I don't know what it was -- nails or screws from
20 Unarco, you may be entitled to a new deck, or
21 something. And so they later had some litigation, and
22 they were complaining abuse of process from -- or
23 fraud from -- from the attorney. And in the Unarco
24 case they said, prior to commencement of litigation --
25 and I'll specifically reference what they said in

Page 25

1 Unarco, (as read) The matters at issue here, however,
2 do not pertain to communications by an attorney. The
3 issue here is conduct, specifically the tort inducing
4 a breach of conduct. Accordingly, we look to other --
5 other jurisdictions for guidance, just as the Supreme
6 Court did in the Simpson case. And so here the Court
7 refers back to the Kahala/Goodsill case that I just
8 referred to the Court, which substantiates my cause of
9 action for abuse of process and that they're not
10 protected by litigation privilege.
11 So I really think that the -- the Unarco
12 case -- and, you know, if you would just -- can we
13 tender this to the Judge right now so you can see
14 this? Because I think this is an important
15 misrepresentation, Your Honor.
16 (Tenders document.)
17 (Sotto voce discussion between Mr. Gentry
18 and the Clerk.)
19 MR. GENTRY: So where I flag that case
20 there, Your Honor, you can specifically see that
21 it's -- the statement is prior to the commencement of
22 litigation. So their assertion that litigation
23 privilege applies to conduct, Your Honor, I think is a
24 misrepresentation to this Honorable Court.
25 In each and every case cited by

**Page 26**

Defendants, their citations are not only wholly inapplicable to the present matter at hand, their citations substantiate my cause of action and that they're not protected by litigation privilege.

I would direct the Court's attention to a spot-on case issued by the Tennessee Court of Appeals. In the case Peerman v. Sidicane, 605 SW 2d 242, Tennessee Court of Appeals, Middle Section, 1980. The Appellant Court stated on its opinion, (as read) We are compelled to agree with the conclusion of counsel for the plaintiff that defendant's action is not one of defamation but is an action for abuse of process and the fact that defendant is an attorney does not afford him immunity.

And here's the case for (inaudible).

In the case Givens/Mullikin, 75 SW 3d at 383, Tennessee Supreme Court 2002, (as read) When a party abuses process, his tortious conduct injuries not only the intended target but offends the spirit of legal procedure itself. And I think with that fraudulent order representing themselves as the Court in violation of multiple rules of procedure was just that.

These two examples that I gave you, Your Honor, are one of many. When we get into the facts,

**Page 27**

the abuse of process is absolutely astounding. These cases that I presented to the Court today, those two set of facts are just easy ones that I could quickly present to the Court. As we go through the other evidence, it just takes longer, and I didn't want to burden the Court's time with it. But I just wanted to present two simple instances that were easy for me to show the Court. Their abuse of process in this -- in this case -- there's just a lot of it, Your Honor, and I don't want to represent to the Court that those two cases are all of them. There's a lot more.

Defendants go on and cite that res judicata -- that they are protected because of res judicata. In their motion to dismiss, they stated (as read) Adopting of res judicata, which bars the second suit on the same cause of action with respect to all issues which were -- or could have been litigated in the former suit.

Their claim of res judicata fails in that regard. The underlying litigation was a complaint for divorce. This is a complaint for abuse of process and fraud, and they are wholly separate causes of action, and so res judicata does not apply.

Yet again, Defendants disprove their own argument and further substantiate my cause of action.

**Page 28**

Defendant cited Carter v. Townsend, I believe this was an unpublished case from 1991. In that case that they cited, a party asserting res defense must demonstrate that the same parties were involved in both suits and that the same cause of action was involved in both suits. This is a completely separate cause of action, Your Honor.

Defendants go on and cite -- do I have -- I have all of these cases filed for your reference, Your Honor. There's the Carter/Townsend case.

Defendants cite Coreman v. Metro Government (phonetic), a 1965 Tennessee Supreme Court case. But the Court, even back then, stated, (as read) It must appear that, not only the res affected by the two suits is the same but that the proceedings were for the same object or purpose, the same point being directly an issue, which is not true in this case, Your Honor. I have a copy here.

In the next case, Defendants reached back to 1956, New York Life Insurance v. Nashville Trust, Tennessee Supreme Court 56, stated much the same, (as read) That two suits must be the same in order for res judicata to apply. In New York Life, though -- this is their case citation -- and to read the full opinion for the Court -- and, again, I think it's a

**Page 29**

misrepresentation when they -- when they exclude pertinent parts of the opinion, and when that's excluded, it seems to me to be a misrepresentation to the Court. But in this New York Life v. Nashville Trust, the Tennessee Supreme Court stated, (as read) Clearly, the plea of res judicata should have been overruled. It certainly seems to us that this is an independent action and does not involve any retrial of the issues disposed in the former case.

I'm not asking for a retrial of my divorce, I'm asking for relief from the fraud and abuse of process and the incredible suffering that I suffered at the hands of them.

The Court went on to say, in this New York v. Nashville Trust, a plea of -- I'm sorry, I said that.

The Court went on to say, (as read) And then, too, it is well said, it is generally held that the principles of res judicata may not be invoked to sustain fraud and that judgment obtained by fraud or collusion may not be used as a basis for the application of the doctrine of res judicata. And I have a copy of that New York case here -- or it's New York Life versus Nashville Trust.

Defendants also cited another unpublished

Case 3:17-cv-00020   Document 104-5   Filed 07/21/17   Page 8 of 19 PageID #: 2405

Page 30

1  case from Tennessee Court of Appeals, 1996, and in
2  that case, Towe v. Brock, the Court stated
3  res judicata does not apply in the present case
4  because the former judgment did not dispose of the
5  counterclaim. And I have a copy of the Towe v. Brock
6  case.
7      So Defendants make the false argument
8  that I failed to state with particularity my claim of
9  fraud as required by Tennessee Rules of Civil
10 Procedure 9.02, which is untrue. I would first point
11 out the obvious fact that my complaint not only
12 contains a claim of fraud, but my claim contains an
13 abuse of process. There's no -- again, I stated this
14 earlier, there's no particularity requirement for
15 abuse of process, and my complete -- my cause of
16 action cannot be dismissed in its entirety based on a
17 failure to state a claim, but I did. I did state my
18 claim with great particularity.
19     Defendants cite U.S., a federal case,
20 another one that they did not attach to their -- to
21 their memorandum in violation of the local rules of
22 Davidson County, which requires that federal cases be
23 attached to briefs. Defendants cite U.S. Court of
24 Appeals, Sixth Circuit, Coffey v. Foamex. And in this
25 Coffey case, the Court of Appeals stated, (as read)

Page 31

1  Federal Rules of Civil Procedure 9(b) requires that
2  elements of fraud must be stated with particularity.
3  The Sixth Circuit reads this rule liberally, however,
4  requiring a plaintiff at a minimum to allege the time,
5  place, and content of the misrepresentation. And that
6  was a quote that Defendants included in their motion
7  to dismiss memorandum.
8      But the Court went on to say, (as read)
9  The threshold test is whether the complaint places the
10 defendant on sufficient notice of misrepresentation
11 allowing the defendants to answer, addressing in an
12 informed way, plaintiff's claim of fraud. And they
13 have done so and proved that my pleading of
14 particularity -- they proved it by responding to me,
15 Your Honor, in how they responded, I stated it
16 particularly.
17     Even assuming their assertion is true,
18 that I was -- that I had to state a specific date and
19 a specific time and a specific place, even if that is
20 true, I still accomplished that. One only need to
21 look to the fraudulent orders that I provided -- that
22 I referenced in my complaint. Those are date stamped,
23 and they were all filed in the Circuit County in the
24 Sumner Circuit County Court. So there is a time and
25 there is a date and there is a place stated.

Page 32

1      Case law shows us, though -- I apologize,
2  Your Honor, I wanted to get that copy case in here.
3  This is the federal court's case.
4      Case law shows us, though, that that the
5  interpretation and intent of Rules 9.02 and 12.02
6  regarding particularity on claims of fraud, in the
7  case Eledge v. Eledge, Tennessee Court of Appeals
8  2016, Case No. M -- as in Mike -- 2015-01055, Court of
9  Appeals Rule 3 Civil Appeal; the Court stated,
10 (as read) The particularity requirement means that any
11 averment sounding in fraud must relate to or designate
12 one thing, singled out among many.
13     And the Court went on to say, (as read)
14 In other words, particularity in pleadings requires
15 singularity of or pertaining to a single or specific
16 person, thing, group, or place. I very much
17 accomplished that, Your Honor. And I stated my claim
18 of fraud with particularity.
19     Defendants then make the statement that
20 my complaint is about the underlying divorce, which is
21 absolutely not true, Your Honor. My complaint is how
22 they tendered orders to the Court, how they practiced
23 dilatory behavior, how they ignored e-mails, and the
24 list goes on. That's what my complaint's about. I'm
25 addressing the underlying litigation with the Court of

Page 33

1  Appeals and with the federal court in a civil rights
2  violation complaint. Those matters are being
3  addressed there. The case before us today is one of
4  their abuse of process and of their fraud.
5      Defendants make the false argument that
6  they are not guilty of fraud because they didn't make
7  a false representation to me and that I didn't rely on
8  such a misrepresentation. A fraud tort does not
9  require a fraud representation be directed at the
10 plaintiff, nor does the fraud tort require a
11 plaintiff's reliance on a misrepresentation. Citing
12 Kincaid v. SouthTrust -- oh, let me get this Eledge
13 case, too, that I just mentioned, Your Honor.
14     And this is the case, Kincaid v.
15 SouthTrust. In Kincaid v. SouthTrust, Tennessee Court
16 of Appeals 221 SW 3d Volume 32, the Court of Appeals,
17 Middle Section, 2006, (as read) Constructive fraud is
18 a breach of duty legal or equitable duty deemed
19 fraudulent because of its tendency to deceive others.
20 Constructive frauds are acts, statements, or omissions
21 which operate as virtual frauds on individuals. They
22 concern a breach of legal or equitable duty with or
23 without fraudulent intent and entail as an attribute
24 of fraud conduct which reasonably can be expected to
25 influence the conduct of others.

Case 3:17-cv-00020   Document 104-5   Filed 07/21/17   Page 9 of 19 PageID #: 2406

Page 34

1  In the first example that I gave the
2  Court, where they defied the Court and tendered an
3  order in direct contradiction of the Court's
4  instructions, the Court said, Don't tender any other
5  documents, reserve all other matters for the Court.
6  I'm not ruling on attorney fees, I'm simply going to
7  declare them divorced. When they tendered that fraud
8  order to the Court, 42 days later, they knew that the
9  Court would be no longer mindful of the case that far
10 out.
11  As officers, sworn officers of the Court,
12 Your Honor, a judge is just going to trust that
13 they're representing his rulings and his
14 deliberations. And so I think the Court reasonably
15 relied on their representation for that order and
16 signed it. The transcripts show that the intent of
17 the Court was not what they ruled in that order. But,
18 you know, now the Court in that case is kind of stuck
19 in a [sic] rock and a hard place. He knew that he had
20 been deceived, and he knew that those attorney fees
21 should have come back to me.
22  And the other things that they ruled upon
23 did not reflect his deliberations. But he's stuck in
24 a [sic] rock and a hard place now because
25 he (inaudible) me and reverses his ruling, or he calls

Page 35

1  into question all of his orders. Because now you look
2  at his case and he's like, Well, you know, he just
3  seems to sign whatever is put in front of him. And
4  the Court cannot put himself in that position. So the
5  Court, I think, was just unable to admit that it was
6  in error in signing that fraudulent order.
7  I think the Court reasonably relied on
8  the representation of a sworn officer of the Court in
9  signing that order, and it's constructive fraud at a
10 minimum. Their actions, though, constitute actual
11 fraud.
12  Further citing Kincaid v. SouthTrust,
13 (as read) The elements of fraud are an intentional
14 misrepresentation of material fact, knowledge of the
15 representations' falsity, and injury caused by
16 reasonable reliance on the representation, and the
17 requirement that the representation involved the past.
18  The cases SouthTrust v. -- or Kincaid v.
19 SouthTrust, Dobbs v. Gunther, and the Eledge v. Eledge
20 case that I referred to all say the same thing, an
21 injury caused by reasonable reliance on the
22 representation. And they do not state that it must be
23 the plaintiff. So it had to be the person to rely on
24 that. But even if it is true, which it's not, but
25 even if it is true, that for actual fraud to have

Page 36

1  occurred, I must have personally relied on the
2  misrepresentation, this case still meets that
3  requirement. I was, in fact, required by the Court,
4  under duress, to rely on that false misrepresentation.
5  I was forced by the Court to accept it.
6  The statements made by the Court,
7  evidence and certified transcripts prove the Court had
8  every intent to return those escrowed attorney fees to
9  me. The transcripts show that I turned the Court in
10 my favor. The transcripts will prove that the Court
11 signed the document and in error. And it was under
12 dress. I was forced to rely -- that that was, in
13 fact, the Court's ruling when it was not. And that
14 would be my argument in that regard, and I think I was
15 forced to rely on it as a misrepresentation.
16  Further, the unfortunate fact that the
17 judge signed this fraudulent order does not relieve
18 their culpability of fraud or abuse of process.
19 Simply because the trial court judge was duped through
20 misplaced trust or short memory -- and I don't mean
21 any disrespect at all, Your Honor, but it doesn't
22 negate the fact of fraud or abuse of process.
23  Those elements are still there. The fact
24 that he signed it doesn't negate the facts that the
25 Court said, Don't do it, don't submit. I'm not ruling

Page 37

1  on these things, don't tender anything else. Those
2  elements of abuse of process and those elements of
3  fraud or constructive fraud, they're all still there.
4  Even though he signed it, the facts show that it was
5  an abuse of process.
6  The Courts should not have to look at
7  every order and say, Let me check my notes. Is this
8  exactly what I ruled? The time -- you know, the
9  process of tendering orders -- party prepared orders
10 to the Court is for the efficiency of the judiciary.
11 And if the Courts have to go back and look at every
12 single thing and say, Is that exactly what I said, it
13 disrupts the efficiency of the judiciary.
14  In fact, since they made their false
15 representation to a court of law in their capacity as
16 sworn officers, makes their act of fraud even more
17 malicious. If I had voluntari- -- if I had
18 voluntarily been the one to rely on the
19 misrepresentation -- their false misrepresentation to
20 the judge wasn't just a misrepresentation to the
21 judge, Your Honor, it was an attack and a perversion
22 of the legal process itself, and it should be
23 offensive to all the judiciary, including this Court.
24  And I would say that it's the act of the
25 judge relying on their misrepresentation that caused

**Page 38**

1  me injury. And injury is one of the four elements
2  necessary for fraud. So the fact that he signed it
3  turns it into fraud.
4           Defendants state that there can be no
5  civil conspiracy because they're members of the same
6  law firm. In the case Warwick v. Warwick, it's -- the
7  case number is E2011-01969, Court of Appeals, Rule 3,
8  Civil Appeal at Knoxville, in the Warwick v. Warwick
9  case, (as read) The elements for civil conspiracy are
10 a common design between two or more persons to
11 accomplish a concerted action, an unlawful purpose, or
12 a lawful purpose by unlawful means, an overt act in
13 furtherance of the conspiracy resulting in injury.
14          Defendants make the assertion that I must
15 establish the existence of an underlying predicate
16 tort, which is true. This Court must recognize their
17 abuse of process. That must be obvious to the Court.
18 And so there's certainly an underlying tort. And the
19 Court must recognize the constructive fraud, and the
20 fraud as well, and so certainly there is an underlying
21 tort.
22          Did somebody say -- oh, I'm sorry, I
23 apologize. I thought I heard somebody say something.
24 I'm really hard of hearing.
25          They make the false assertion that

**Page 39**

1  they're co-counsel and essentially one and the same
2  person. And you'll remember, Your Honor, they cited
3  Trau-Med, Trau-Med of America v. Allstate 71 SW 3d
4  691, Tennessee Supreme Court, 2002. In this case --
5  and I think this is another misrepresentation of the
6  case to this court. In this case, the Court stated
7  (as read) However, where the alleged coconspirator is
8  an agent or employee of the same corporate entity and
9  is acting on the corporation's behalf, the
10 conspiratorial liability of the corporation becomes
11 less clear. And that's a specific reference -- it's a
12 specific quote that, the Court, it becomes less clear.
13          Plainly, though, the Supreme Court does
14 not state that no conspiracy can exist as the
15 Defendants falsely asserted to. In their motion to
16 dismiss memorandum they said that no conspiracy can
17 exist, and that is not what the Supreme Court said.
18 They said that it becomes less clear.
19          The Supreme Court went on to say in that
20 case, (as read) We hold that there can be no
21 actionable claim of conspiracy -- or conspiratorial
22 conduct is essentially an act by a single corporation
23 acting through its officers and employees, each acting
24 within the scope of his or her employment.
25          And in the preceding case today, the

**Page 40**

1  Court just heard a case citation, that when they're
2  acting in fraud or abuse of process that they're not
3  acting within the scope of their agency. It's never
4  true that fraud and abuse of process are within the
5  scope of agencies. That's never true, Your Honor.
6           Furthermore, the foundation of this
7  doctrine lies more specifically in protection afforded
8  by the corporate vail and the doctrine that a
9  corporation as a whole is a separate and legal entity
10 in and of itself.
11          Defendant Taylor is a membered partner of
12 her law firm, Sties & Harbison, which is a PLLC, a
13 professional limited liability company. By
14 definition, a PLLC creates a separation between the
15 individual and the entity. Defendant Lankford is an
16 associate of his law firm and not a member partner.
17 He is, therefore, an employee of the PLLC. Since the
18 Defendant Lankford is a partner and Defendant Lankford
19 is an employee, they are not afforded protection under
20 the corporate vail, which is what the Court was
21 referring to in that case.
22          I think the Court has heard a lot in this
23 matter so far, does the Court need -- do you feel any
24 need to hear anything about intention infliction of
25 emotional distress?

**Page 41**

1           THE COURT: No, I don't. I will take
2  this under advisement --
3           MR. GENTRY: Your Honor, I'm so hard of
4  hearing --
5           THE COURT: I will take this under
6  advisement so I can read the various cases you've
7  referenced.
8           MR. GENTRY: I -- I would also like about
9  ten minutes -- seven minutes, I think I can do it in,
10 regarding my motion to strike.
11          THE COURT: That's fine.
12          MR. GENTRY: Thank you, Your Honor.
13          THE COURT: But let's first deal with the
14 response to what you've argued thus far. We'll handle
15 each motion separately.
16          MR. GENTRY: Can we pass up these cases
17 now?
18          THE CLERK: Sure.
19          MS. BARNES: Your Honor, all the actions
20 complained of are actions within the purview of the
21 Sumner County Circuit Court. Lawyers don't issue
22 orders, we make proposed orders to the Court. We may
23 provide suggests to the Court. The Court is free to
24 reject those suggestions at any point in time. The
25 Court is free to issues its own orders. And the Court

**Page 42**

is free to reject attorney orders. They do it all the time.

In this particular instance, the issue of whether the terms of this order were correct were already litigated. They were already litigated in the Sumner Circuit Court where the judge ultimately signed the order. There is no impropriety for the attorneys acting in the scope of their representation to submit orders to the Court.

I will point to the Court that there are two issues from the underlying divorce case that are currently before the Tennessee Court of Appeals: one involves the division of marital property, which is addressed in that order. The second issue before the Court of Appeals is the trial judge's refusal to recuse himself.

I'll also point to the Court that there is a pending lawsuit against the Sumner Circuit Court judge in the Middle District of Tennessee, Federal Court, in which the Plaintiff is also complaining about the impropriety of these orders. This is not the venue for those -- the Plaintiff's complaint.

To the extent the Sumner Circuit Court judge felt that Ms. Taylor and Mr. Lankford had acted improperly, it is within his power to sanction them,

**Page 43**

to reject orders, or to otherwise take action to maintain the priority of his own court. This is not the place to complain about it. The Plaintiff had his opportunity to complain about it. He did complain about it. The orders were, in fact, signed by the judge, and those orders are now on appeal before the Tennessee Court of Appeals.

Thank you.

THE COURT: Thank you.

Are you ready to proceed to your next motion, sir?

MR. GENTRY: I wasn't -- I wasn't prepared for that argument, but I know a case, and I'm trying to think of the case citation off of my head (sic). It was Phil (phonetic) something. But the Court recognized that party prepared orders are supposed to reflect the decisions and the deliberations of the Court. They are not supposed to contradict, and they are not supposed to defy the judge's instructions.

So these proposed orders -- and I would point out, the Defendants do not cite any cases. And if the Court would like, I can tender that order that -- or that case that I'm referring to with -- I believe it was the Court of Appeals, when they stated

**Page 44**

that, All orders -- actually, I think I -- I might have it here with me. I might have cut it out of the argument. I think I did. But the Supreme Court -- or Tennessee Court of Appeals stated that party prepared orders, while not recommended, are accepted. And they went on to say that they should reflect the decisions and the deliberations of the judge. And with that, we are all in agreement. And that was a specific quote from that case. When the orders that they tendered defy the Court, it's -- it's not the purpose. It's an abuse of process, and it's certainly constructive fraud.

I would point out that they do not provide any case citations to support that position, because there isn't going to be any case law precedence supporting fraudulent orders tendered to the Court.

They stated that I'm complaining to the federal court about the orders of the judge in the underlying litigation. I don't want to bring it into this venue, what happened in that venue, but it was a -- it was a plain civil rights violation. And I will just say, I'm so grateful to be heard today by this Court. And I think you've certainly allowed me to speak my case. And I want to express my

**Page 45**

appreciation to the Court for that.

In the underlying litigation, I wasn't even allowed to speak. I would make a two-sentence statement, opposing counsel would make a statement, and I would say, Can I respond to that, Your Honor? No, you may not. And they would say something else between opposing counsel and the judge, and I would say, Can I just briefly respond, Your Honor? No, you may not. This was in -- actually, I have the transcripts here for that September 15th hearing; if the Court is interested, I can tender that to the Court today?

THE COURT: No, thank you. That part doesn't have any bearing on this right now.

MR. GENTRY: But it -- that -- that case -- I'm not just running around complaining about the divorce. I'm complaining about their abuse of process, and I'm complaining about that judge's violation of my civil rights.

You know, and as part of the abuse of process in this complaint, I had requested discovery through my attorney, initially, and through abuse of process, they did not provide discovery. We went in -- the discovery was requested in November of 2014. We got into court on March 10th of 2015, several

Page 46

months later, and discovery had not been provided at all. And I had provided my discovery long ago, and they're filing a motion for me to update discovery when they have provided nothing, nothing.

And so the Court issued an order to comply with discovery. They ordered me to issue an update to my discovery, and they ordered Defendants -- or their client to provide discovery. And that was ordered to be tendered on March 25th.

Item 3 of that motion -- or Item 3 of the discovery request was for all evidence to be used, all documents, all photographs, everything that you're going to use in the divorce case against me, probably the -- that's the most important part of discovery, wouldn't you agree, Your Honor? They did not provide that to me. And at the time I was just starting out, learning law; prior to that, I had no experience, and I did not know the law. I did not know procedure -- didn't know the rules of procedure, and I didn't know what was happening to me with that.

In February of 2016, I requested discovery, and said, Hey, you guys are supposed to provide this back on March 25, the Court ordered you to. Can you extend me this Item 3 so I can start preparing my case for May? Ms. Taylor ignored my

Page 47

e-mails completely. She just -- I had filed an earlier complaint with the Board of Professional Responsibility because of Defendant Taylor's dilatory behavior and how she would pick and choose what e-mails she would respond to and how she would abuse process through communications with adverse counsel. And I complained to the Board of Responsibility for that.

And during the time of my complaint to the Board of Professional Responsibility, Ms. Taylor was very responsive. The next day, two days later, I hear from her. The case somehow, with the Board of Professional Responsibility, got reassigned to another attorney at the Board of Professional Responsibility. And the new attorney that the case was assigned to dismissed my complaint. My complaint was 40 pages thick, with lots of evidence showing her abuse of process, showing her violations of the Rules of Professional Responsibility.

And I want to make a point about that. They said that I'm complaining about Rules of Professional Responsibility, I am not. I will take that up with the Professional Board of Responsibility. So when they gave argument and they cited cases about Rules of Professional Responsibility, my case is not

Page 48

about that at all.

But anyway, after the case was reassigned with the Board of Professional Responsibility, my case was dismissed immediately. And Mrs. -- and Defendant Taylor immediately went back to being nonresponsive. And, in fact, she become completely unresponsive.

So I subpoenaed the documents that were supposed to be provided in discovery. I should have got them anyway, but she wouldn't e-mail me back, so I had a subpoena issued for them. Ms. Taylor went in and filed a motion to quash any and all subpoenas. First of all, that can't be legal, to quash all subpoenas. You cannot tie the hands of adverse counsel like that.

The judge signed it anyway. Well, we went into court -- and I guess this is why I brought this up for the Court's attention about the civil rights violation, we walked into court that day, and the judge said, What are we here for today? And Mr. Lankford said -- and this is in the transcripts, Your Honor. Mr. Lankford said, Well, I've got three, he's got four.

And I said I have a list, Your Honor, (indicating). I have a list of all of the motions to be heard today, including theirs. And he said, May I

Page 49

see it? And I passed it to the bailiff and handed it to the judge. And he said, Okay, wife's motion to quash the witness subpoena, that's granted. And I said, You don't want to hear arguments, Your Honor? No, I don't need to. Wife's motion to quash any and all subpoenas, that's granted. And I said, Your Honor, I don't get to present any oral argument? And he said, No, I get in here at six o'clock in the morning, I read all your motions. I don't need to -- I don't need to hear your arguments. I read all of your motions.

Then the Court says to Mr. Lankford, What's this one about? If he read them, why is he asking? And Mr. Lankford explained to him that one. And then he's like, Ah, Mr. Gentry has these other two. Do we need to look at these? He's asking adverse counsel if he needs to look at my motion, which is kind of -- seems goofy to me. But it was a complete violation of my civil rights. I wasn't allowed to present arguments.

And, you know, I just wanted the Court to understand, I'm not -- I'm not complaining of the judge's rulings. They were erroneous. They were ridiculous -- my assertion. I'm not challenging the rulings of the Court in that federal complaint. I'm

**Page 50**

1  challenging how I was treated in that case. And it's
2  a welcome change for me to come in here and be heard.
3          THE COURT: Okay. Does that conclude the
4  argument on the motion?
5          MR. GENTRY: I apologize, I can't hear.
6          THE COURT: Does that conclude the
7  argument on the motion to dismiss? Can we now go to
8  one of the other two motions?
9          MR. GENTRY: Yes. For the -- well, I
10  guess, really quickly, I have a motion that all orders
11  should come through the Court and no party prepared
12  orders, or, alternatively, that we only allow
13  agreed-upon orders, Your Honor. Because of what
14  happened in the other case, I'm just -- and I don't
15  mean any disrespect to this Court, but I would just
16  ask that any orders that come from parties are signed
17  by both of us or that none of them come from us. And
18  I think we can just --
19          MS. BARNES: We did not file an objection
20  to that motion. We are happy for the Court to prepare
21  all orders in the case, given the history between the
22  parties.
23          THE COURT: That's fine. So that
24  order -- well, let me see, Mr. Gentry, why don't we
25  have you draft the order on this motion.

**Page 51**

1          MR. GENTRY: I've never done that. Thank
2  you, Your Honor. I would love that.
3          THE COURT: So that's granted.
4          MR. GENTRY: And I will tender that to
5  Defendants' attorney of counsel for an agreed-upon
6  order.
7          THE COURT: You can do it agreed-upon, or
8  you submit it and I will sign it if it's correct.
9          MR. GENTRY: Okay. Thank you, Your
10  Honor.
11          THE COURT: Okay. Next is the motion to
12  strike and alternative to recuse.
13          MR. GENTRY: So on November 7th,
14  Defendants tendered their memorandum supporting their
15  motion to dismiss. And this memorandum included
16  prejudicial, discriminatory statements, made an
17  attempt to bias this court, I think. Their motion to
18  dismiss included inappropriate, irrelevant citations
19  that admitted the facts of those rulings and
20  misrepresented the opinions of the cases cited. It
21  included misspelled case citations, and it violated
22  the local rules of Davidson County.
23          The first sentence of Defendants'
24  memorandum in their motion to dismiss states,
25  (as read) This is a pro se complaint that arises from

**Page 52**

1  Defendants' representation of Plaintiff's ex-wife.
2  Your Honor, I'm a very well educated person, and I
3  understand the proper use of italics. I'm sure that
4  we can waste plenty of the Court's time debating
5  grammar. The Chicago Manual of Style, 14th Edition,
6  commonly used by college professors, suggests the use
7  of italics for foreign word and emphasis if a word is
8  familiar, like "APRI" (phonetic) or "pro se." Such
9  phrases may then be considered to be adopted into the
10  English language and therefore not needing to be --
11  not need to be italicized.
12          I don't want to argue grammar in front of
13  this Court. Let's cut to the chase, though. Would
14  they start a brief and say, This is a represented
15  litigant's case? No, they would not. And so when
16  they say, This is a pro se litigant's complaint, it's
17  a negative inference, Your Honor. It would be no
18  different for the Defendants to make a racially
19  discriminatory statement like, This is a black
20  person's complaint, or a sexually discriminatory
21  statement like, This is a gay person's complaint, or
22  any other discriminatory statement based on age,
23  gender, social class, race, sexual orientation, or
24  religious affiliation. It's unnecessary, Your Honor,
25  and I think it was intended to bias this Court.

**Page 53**

1          In the case State v. Goltz, 111 SW
2  Reporter, 3d Volume, Tennessee criminal -- Court of
3  Criminal Appeals, 2003, (as read) Arguments which rely
4  on racial, religious, ethnic, political, economic, or
5  other prejudices of the jurors introduced elements of
6  irrelevance and irrationality into the trial, which
7  cannot be tolerated in a society based upon the
8  equality of all citizens before the law.
9          Defendants' intent in using this
10  discriminatory statement is obvious, it's intended to
11  state my case is not worthy of being heard because I'm
12  self-represented. It's intended to say, since I'm not
13  paying attorney fees, I should not receive a fair
14  hearing, and it's intended as a buzz word to alert a
15  sympathetic judge who is biased against pro ses. I
16  think their attempt to corrupt this court is no
17  different than if they had offered a bribe.
18          As detailed and as I presented today and
19  as I detailed in my memorandum and support of my
20  motion to deny their motion to dismiss, I proved that
21  the case -- the case citations that they included were
22  misrepresentations of the opinions of those Courts. I
23  think I proved that quite well, Your Honor.
24          Violation of local rules of Davidson
25  County court of record, it is my assertion that the

**Page 54**

Plaintiffs [sic] knowingly and intentionally refused to comply with local rules of Davidson County 26.04. When a memorandum cites an unrecorded Tennessee decision or a decision of a court of another state or a federal jurisdiction, counsel shall attach a copy of the opinion to the memorandum. It's a local rule for Sumner County, and they knew about this rule. The evidence will show that they knew about this rule.

I think, and it's my assertion to this Court, Defendants knowingly and intentionally ignored this rule and failed to include an attached complete copy of the opinion cited. It's an undeniable, irrefutable fact that Defendants failed to adhere to the reasonable rules of Davidson County. They did not attach those briefs, undeniable.

It's my assertion that they failed to comply with this rule intentionally, because the cases that they cited were wholly inappropriate and were an intentional misrepresentation to this Court. I just proved that in what I presented to the Court today. And if you took the time to look at my -- Plaintiff's motion to deny, their motion to dismiss my memorandum, I further substantiated in writing -- in that document that they misrepresented these cases.

Exhibit 2 of that document, is an e-mail

**Page 55**

exchange between myself -- and Ms. Barnes is step-in counsel for Counsel Lauren Paxton Roberts. But Ms. Roberts and I had an e-mail exchange where I had asked her for these cases because I couldn't find them, because several of them are unreported cases. And because they misspelled cases, I couldn't find these cases. So I sent her an e-mail and said, Hey, can you send me these cases?

And so Ms. Barnes responded and said, Pursuant to Rule 26.04, I have to give you these cases, but I don't have to give you these cases, which she was mistaken, because she said she didn't have to give me the federal case. I found the copy case anyway, but she stated she didn't have to. Rule 26.04 specifically states that you're supposed to attach federal rule jurisdictions and you're supposed to provide a copy to opposing counsel.

Even when I requested that federal case, Ms. Paxton still denied me that in violation of Rule 26.04. And the Coffey case that we looked at very nicely proved that I satisfied stating my claim of fraud with particularity. That was the Coffey case that we talked about, the Federal District Court, where they said, you know, It just has to be stated enough that they can respond to.

**Page 56**

I think they intentionally didn't provide that case because it substantiates, with their own citation, that I did state my cause of action with particularity.

Your Honor has the same rule specific to your court. I have a copy of it -- actually --

THE COURT: I'm focusing on your motion to strike or, in the alternative, the motion to recuse, so . . .

MR. GENTRY: I missed the last part, Your Honor.

THE COURT: I'm trying -- wanting you to focus on the argument for the motion to strike or, in the alternative --

MR. GENTRY: Your Honor, I have --

THE COURT: -- your motion to recuse.

MR. GENTRY: There's an amended motion that I filed with the Court.

THE COURT: I haven't seen that.

MR. GENTRY: I spoke with your --

THE COURT: Okay.

MR. GENTRY: I spoke with your assistant, whose got that Randy Travis smooth-sounding voice, kind of deep --

THE COURT: So --

**Page 57**

MR. GENTRY: Is that the amended one, Your Honor?

THE COURT: So this is amended, then I disregard this one (indicating)?

MR. GENTRY: Yes, ma'am.

THE COURT: Okay.

MR. GENTRY: Is it appropriate to say "yes, ma'am" or, "Your Honor"?

THE COURT: That's fine.

MR. GENTRY: Thank you. Well, as part of my motion to strike, I think they ignored the rules of Davidson County and didn't attach briefs. I think they used inflammatory and prejudicial and discriminatory language in their complaints. I think that they intentionally did not attach case law citations because there's case law citations -- I think they were just expecting the Court not to do its due diligence and to not look at what the cases actually said. And I think that's why they did not attach those citations to their case.

And it's -- appears to me to be a misrepresentation of this Court -- I think it is a misrepresentation to this Court. And for that -- and for those reasons I'm asking the Court to strike their motion to dismiss from the record in it's entirety.

**Page 58**

1 It should never be appropriate for an attorney of
2 adverse counsel to attempt to bias the Court because I
3 can't afford representation and I have to represent
4 myself. You should never attempt to prejudice a court
5 based on a statement like that. They should have
6 complied with the rules of procedure.
7     I would also point out, with respect to
8 the local rules, Rule No. 5, (as read) In all matters
9 I'll conduct myself with dignity and refrain from
10 engaging in acts of rudeness or disrespect. I think
11 it was disrespectful when they referred to me as
12 "pro se" the way that they did.
13     I will refrain from commentary, that
14 with -- this is Rule 5, paragraph 10, (as read) I will
15 refrain from commentary that reflects references,
16 race, religion, national origin, or any other
17 demeaning fashion. And I think that when they made
18 that representation to the Court, they were in
19 violation of that rule as well.
20     And with respect to adverse counsel, I
21 will endeavor to consult with adverse counsel before
22 making scheduling decisions and before any required
23 rescheduling. And I will cooperate with adverse
24 counsel when scheduling changes are required. Your
25 Honor, they didn't even bother to give me a phone call

**Page 59**

1 and say, Hey, is this date good for you? And I just
2 think they just ignore the rules of procedure, which
3 is systematic of their abuses of process that are
4 pertinent to my complaint, Your Honor.
5     And so I would ask the Court to strike
6 from the record their motion to dismiss. And if the
7 Court strikes their motion to dismiss, then I would
8 ask for a judgment in default because they failed to
9 respond to my complaint.
10     THE COURT: Okay. Thank you.
11     MR. GENTRY: Thank you, Your Honor.
12     THE COURT: Thank you.
13     MS. BARNES: Your Honor, there was
14 nothing inflammatory or discriminatory meant by the
15 statement, This is a pro se complaint. If you would
16 look at the complaint filed by the Plaintiff, in the
17 very first sentence he says he's pro se counsel. His
18 amended motion to strike states, (as read) Plaintiff,
19 John Anthony Gentry, as pro se counsel. It is
20 commonly stated between both Plaintiff and Defendant
21 in this case that Mr. Gentry is representing himself.
22     It was placed in italics. We believed
23 that the grammatical rules of the Blue Book required
24 it. We were incorrect, it would not be the first I've
25 made a grammar error. But there was nothing

**Page 60**

1 intentional or inflammatory meant by the statement,
2 This is pro se.
3     With respect to the complaints about
4 compliance with the local rules, I believe
5 Ms. Roberts, who's on maternity leave -- and I've
6 stepped in for her -- believed she was fully complying
7 with the local rules by providing the unpublished
8 cases upon request. We do not normally attach every
9 single case we cite. The case files would be
10 enormous, and a lot of trees would be killed. So we
11 generally do not attach all cases; certainly, provided
12 the unpublished cases to Mr. Gentry promptly when he
13 requested.
14     With respect to his request for a default
15 judgment, even if the Court strikes the motion to
16 dismiss, the civil rules provide that we get 15 days
17 to answer the complaint after a motion to dismiss is
18 denied. At this point, the motion to dismiss is still
19 pending. There is no answer deadline in place, and
20 there is no default that has occurred.
21     The thing I would like to focus on is the
22 alternative request, which is for Your Honor to recuse
23 herself. The motion appears to say, If you disagree
24 with me and do not strike the motion, then the Court
25 must be biased, and so it should be recused. I

**Page 61**

1 believe Your Honor is aware from the pleadings and
2 prior argument that Counsel asked for the Sumner
3 County judge to be recused as well. He has asked the
4 Court of appeals to recuse themselves. Losing a
5 motion is not grounds for a judge to recuse herself or
6 does not imply bias without something more. And the
7 judge simply ruling against a party on a motion is not
8 a reason for the judge to recuse herself, and
9 Mr. Gentry has not pointed to any allegations of bias
10 or other reasons why Your Honor should be recused.
11     THE COURT: Thank you.
12     MS. BARNES: Thank you.
13     THE COURT: A brief response?
14     MR. GENTRY: Yes, Your Honor.
15     THE COURT: Or reply.
16     MR. GENTRY: Ms. Barnes is correct, it
17 does state in my complaint that I'm pro se and all the
18 other places that she referenced, therefore it was
19 completely unnecessary for them to include that
20 statement. And I stand by the position that that was
21 a discriminatory statement, and it has no place.
22     She stated that upon request they
23 provided me the cases that I asked for. Do you have,
24 Your Honor, Exhibit 2 attached to my amended motion to
25 strike? There should be an e-mail attached to that.

Page 62

1  THE COURT: Which one, Exhibit 1 or --
2  MR. GENTRY: I believe it was Exhibit 1.
3  There's an e-mail attached to it, Your Honor?
4  THE COURT: There is Exhibit 1, there's
5  an Exhibit 2.
6  MR. GENTRY: Let me find my copy.
7  THE COURT: The e-mails appear to be
8  Exhibit 2.
9  MR. GENTRY: I'm pretty sure it's
10 Exhibit 2. It's an e-mail between Lauren Paxton
11 Roberts and myself.
12 THE COURT: I'm looking at this.
13 MR. GENTRY: Oh, so you'll see in there I
14 requested the cases, and she said that she didn't have
15 to provide the federal case to me. It's in that
16 e-mail. And that's the copy case that I was referring
17 to. But the issue that I have with this, Your Honor,
18 is not that they -- whether they provided the cases to
19 me or not, which they -- I would say since she denied
20 me the federal case that they still didn't comply.
21 But the local Rule of Sumner County states that they
22 are to attach their cases to it. And they failed to
23 do that -- or the local rule for Davidson County
24 states that.
25 About the recusals, I would like for the

Page 63

1  Court to understand, because I think this is just
2  another attempt to bias this Court against me, I
3  stated in my -- in that amended motion to strike that
4  if this Court could provide me with assurance, I would
5  withdraw my motion to recuse. I stated that in my --
6  that if I -- if I could be made to understand why
7  their motion should not be stricken from the record.
8  And I wanted that -- to know, out of respect for this
9  Court, that I'm not just asking you to recuse yourself
10 on a baseless matter.
11 I think by them not complying with the
12 rules, I think with them citing irrelevant cases and
13 with them misrepresenting the citations, I think it
14 should be offensive to this the Court. And I think
15 that the Court should take curative measures for the
16 discriminatory statement that they said.
17 Now, in the previous case, you know, the
18 judge would just say to me, Mr. Gentry, you don't know
19 the law, you don't understand, and that's it. And
20 they wouldn't give me any explanation as to why. And
21 so if the Court could just say, Well, your motion to
22 strike is invalid because of this and because of that,
23 and it -- and it -- and it's in the rules and that's
24 the way it is, I would be okay with that. I would.
25 But if you just say, you know, Mr. Gentry, you don't

Page 64

1  understand the law, and I'm going to defy your motion
2  to strike, then, you know, I -- I hope the Court will
3  understand, I've suffered greatly through the
4  Defendants and through civil rights violations by the
5  judge in the underlying case. And it's not lightly
6  that I take a case to the federal court.
7  And my complaint with the federal
8  court -- with the federal court in that case is to --
9  you know, hopefully that the judge will become a
10 better judge because of it and not violate rights the
11 way he did mine.
12 In the appellate court, I -- I filed a
13 motion to recuse with the trial court judge, and I --
14 and the trial judge did not state his reasons denying
15 my motion for recusal. So after the final hearing,
16 and a motion to alter, I listed off eight pages of
17 evidence of why that judge should recuse himself, when
18 he says, Motion to quash, denied -- or granted for
19 them, and motion for written subpoena, that's quashed.
20 And then he goes through that list of things like
21 that, it seems to me like a violation of my civil
22 rights, and it also -- it seems like a bias of the
23 Court to me. That's what it looked like to me. I
24 think this Court would agree it is.
25 And so I listed out eight pages of stuff

Page 65

1  like that. He -- you know, the judge, he manipulated
2  proceedings. In the -- in the September hearing, I
3  said, you know, Mrs. Gentry, my ex-wife, she perjured
4  herself, I would like a chance to reconvene so that I
5  could show proof of that. And the judge said, And you
6  don't think you're going to get to do that in the
7  final hearing? And out of respect, I just didn't
8  respond.
9  But when we got to the final hearing and
10 I wanted to show him proof of their perjury, he
11 manipulated the proceedings, and he would not allow me
12 to present evidence. He would not allow me that line
13 of questioning. The judge was manipulating
14 proceedings against me. So I listed all these things
15 off, and I said -- and -- in my final motion to alter,
16 and I said, you know, Again, I would ask you to recuse
17 yourself from these pleadings -- from these
18 proceedings based and appearance of bias, and, if not,
19 I would ask you to state in writing your reasons for
20 denying my motion for recusal. And I think -- you
21 know, all of that stuff, where he's denying my
22 motions, where he's manipulating proceedings, I think
23 that's all a perfectly reasonable basis for an
24 appearance of bias.
25 So that was -- I forget the exact date,

Page 66

but when the Court entered the final ruling and denied my motion to recuse, ten days later I filed a recusal appeal, Rule 10B, recusal appeal with the appellate court. The appellate clerk came back and they said, Your petition for recusal appeal appears to be untimely and is therefore denied. How hard is it -- there's a -- there's a day one and day two, and you calculate the days between, is it timely or is it not timely? Right? But the Court -- the appellate court said it appears to be filed untimely.

So the Court went on -- the appellate court went on to say that the appellant has filed a Rule 3 appeal, which is true. And he said, Therefore, that's the proper avenue for him to address his recusal issues, is in my Rule 3 appeal. Because this appears timely and because I filed a Rule 3, my motion for recusal appeal was denied. It seems a little biased to me at this point. So I'm like, Okay, maybe something happened.

My recusal appeal was 53 pages long, and the -- I have 33 issues to address with the Court for equitable distribution of assets, 33 issues that I think are errors by the Court.

Tennessee Rules of Appellant Procedure only allow a 50-page limit to an appellant brief, I've

Page 67

got 53 pages just for the recusal issues. And I have 33 issues, I need at least another page for them, for each issue, to argue it to the appellate court. So I filed a motion to exceed page limitations, saying, Well, you told me that this was the proper venue to bring it up, I need more pages. He said, Motion denied, and two days later, dismissed that motion.

The argument that because I filed a Rule 3 appeal and that precludes a Rule 10B appeal is ridiculous. You're required to file a notice of appeal or a Rule 3 appeal 30 days after the final hearing. We all know this. The Court is not going to rule on a Rule 10B appeal within 30 days. The appellate court is not.

So according to the appellate court judge's opinion, I would have had to either choose to abandon my Rule 3 appeal or choose to allow my Rule 10B to continue and run its course. And we know that ain't the way it is.

So when the appellate court comes up with flawed logic, that I have a Rule 3 and now I'm precluded from a Rule 10 and that my motion for recusal appears to be filed untimely and that, No, you cannot exceed your page limitations, you know, it's a violation of my civil rights, I think, also, in that

Page 68

case. And so I've asked the appellate court judge -- I -- I just wanted to explain to this Court. I'm not being frivolous with this stuff.

THE COURT: Normally, on motions to recuse, I'm supposed to fast-track the decision, but your motion to recuse is really prefaced on me doing other things first in how I respond. So what I wanted you to know, typically, I would act on the motion to recuse, but I haven't done anything yet to cause me to even consider recusal. So I'm going to rule on these other things, and I'm taking under advisement.

MR. GENTRY: Could I just interject --

THE COURT: Typically, a motion to dismiss must be decided -- as a dispositive motion, must be decided by me in 30 days. Because of the Christmas holidays coming up, I don't think I'll make the 30-day deadline. I'm just letting you know. Then I will work through and then deal with the motion to -- well, motion to strike will be done with the motion to dismiss. But then I'll deal with the motion to recuse. So I'm going to kind of do it backwards and just give you a heads up on that.

MR. GENTRY: I would -- I would ask the Court -- or make a motion to the Court, I will withdraw that motion to recuse part of that amended

Page 69

motion to strike at this time, if I may.

THE COURT: Okay. What I'm going to ask then is, I want you to draft another order stating that you orally stated in court that you are striking your motion to recuse. So that leaves me with the amended motion to strike and motion for default or summary judgment, as well as a motion to dismiss.

MR. GENTRY: Thank you, Your Honor.

THE COURT: Okay. Are there any supplemental opinions or argument that needs to be made before I take this under advisement by either side?

MS. BARNES: No, Your Honor.

THE COURT: Thank you.

By yourself?

MR. GENTRY: No. And thank you again, Your Honor.

THE COURT: Like I said, it's going to be more than 30 days, and I apologize for that. My law clerk is a new mother, and we have Christmas coming up with two little boys, so it will be January.

Happy holidays everyone. Thank you.

(Proceedings adjourned at 11:20 a.m.)

Case 3:17-cv-00020   Document 104-5   Filed 07/21/17   Page 18 of 19 PageID #: 2415

Page 70

1  C E R T I F I C A T E
2
3  STATE OF TENNESSEE )
4  COUNTY OF DAVIDSON )
5
6  I, Deborah M. Fernau, a shorthand reporter, do
7  hereby certify that the foregoing proceedings were
8  taken down and transcribed under my direction to the
9  best of my ability.
10
11  Signed on December 21, 2016.
12
13
14
15
16
17
18
19
20
21
22
23
24  Deborah M. Fernau, LCR No. 306
    Expiration Date: 06/30/2018
25

