# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | | |
|---|---|---|
| JOHN ANTHONY GENTRY, sui juris/pro se | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CASE NO. 3:17-0020 |
| vs. | ) | |
| | ) | |
| THE STATE OF TENNESSEE; | ) | |
| PAMELA ANDERSON TAYLOR; | ) | |
| BRENTON HALL LANKFORD; | ) | JURY TRIAL DEMANDED(12) |
| SARAH RICHTER PERKY; | ) | |
| UNNAMED LIABILITY INSURANCE | ) | |
| CARRIER(S); Et al | ) | |
| | ) | |
| Defendants | ) | |

---

## MEMORANDUM OF LAW PROVING STATE OF TENNESSEE WAIVES AMENDMENT XI US CONSTITUTION IMMUNITY AND CHALLENGE OF UNCONSTITUTIONAL STATE LAW

---

Defendant, State of Tennessee inaccurately asserts the Eleventh Amendment bars Plaintiff's claims against the state, its agencies and agents (Docket Entries 22, 23, 51, and 52). Said Defendant also inaccurately asserts ability to pass judgement in this case with respect to the following: (1) the State has not consented to suit, (2) Ex Parte Young exception does not apply, (3) and congress did not override a state's Eleventh Amendment immunity by enacting 42 USC § 1983, 1985, or RICO statutes. [see *Article 1, Section 9, Clause 8, and Warnock v. Pecos County, 88 F.3d 341 (5th Cir. 07/08/1996), Ex parte Young, 209 U.S. 123, 155-56, 52 L. Ed. 714, 28 S. Ct. 441 (1908); Edelman v. Jordan, 415 U.S. 651, 664, 39 L. Ed. 2d 662, 94 S.*

1

*Ct. 1347 (1974); Brennan v. Stewart, 834 F.2d 1248, 1252 (5th Cir. 1988)]* SCOTUS has definitively concluded, on multiple occasions, the Eleventh Amendment never usurps the Fourteenth Amendment. *Deceptis, non decipientibus, jura subveniunt*

## THE STATE OF TENNESSEE HAS CONSENTED TO SUIT

In Plaintiff's Second Amended Complaint (Docket Entry 36), Plaintiff has expressly sought reform of the State of Tennessee to reinstitute constitutionally guaranteed rights back into state court proceedings. Specifically, Plaintiff begs relief: *"For the federal court to issue order upon the State to put in place proper legislation and oversight of the Board of Professional Responsibility, Board of Judicial Conduct, and the Court of Appeals"* and *"For the federal court to issue order causing dissolution or reorganization of the State's corrupt racketeering enterprises"* and *"For the federal court to issue order upon the Defendant State of Tennessee to Provide Equal Protection under the law, and provide litigants due process in fair and impartial courts"* (Docket Entry 36 p. 101 ¶¶ 9, 10 and 11).

**Clearly, Plaintiff seeks reform of the State legal system.** What could be a more wholesome endeavor? Plaintiff is astounded that the State and Office of Attorney General do not desire to join Plaintiff in this effort under Rule 13, but instead claim state sovereignty has the authority to dissolve our federal constitution, and the state can do as it pleases without regard for constitutionally guaranteed rights. Yet another inaccurate assessment, as this Defendant receives funding subsidies from the Federal Government nullifying this assertion.

Regardless of this appalling assertion by the State, long ago the State of Tennessee abrogated state sovereignty, and expressly granted citizens of the state, the right to reform the

2

state government in any manner they see fit. Article I § 1 of The Constitution of the State of Tennessee states:

> That all **power is inherent in the people**, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; **for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.**

Plaintiff has previously brought this fact to the Court's attention in his supplemental response to the State's motion to dismiss (Docket Entry 47). Again, as plainly stated in Article 1 § 1, citizens of the state of Tennessee have an "**unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper**". [*see also The Declaration of Independence, and EO. 13781*] What could be a more proper manner to seek reform than though our federal courts?

Moreover, Article I § 17 of The Constitution of the State of Tennessee states:

> That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. **Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct.**

Clearly, the founding fathers of Tennessee saw fit to abrogate state sovereignty at the time of ratification of our state constitution. Considering the final clause of § 17 *"in such courts as the Legislature may by law direct"*, we must then look to the state's statutes to determine how the state legislature has directed that suits against the state be brought. Plaintiff asserts that the state statute that is pertinent is Tennessee Code Annotated (TCA) Chapter 20 Government Tort Liability. TCA 29-20-305 states "a claimant **may institute** an action in the

3

circuit court against the governmental entity **in those circumstances where immunity from suit has been removed** as provided for in this chapter." [*see Article 1, Section 9, Clause 8, anyone holding a Title of Nobility has no immunity under this clause.*]

The phrases in bold font just above are important to note. First, **"may institute"** is not preclusive of other venues. Obviously, a claimant "may institute" in state courts but it is important to note federal courts are not precluded. Plaintiff "may institute" in state court just as he "may institute" in federal court. More importantly though, is the last phrase **"in those circumstances where immunity from suit has been removed"**

For removal of immunity, we must then look to TCA 29-20-201 and 29-20-205. TCA 29-20-201 states:

> (a) Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.
>
> (b) (1) **The general assembly finds and declares that the services of governmental entity boards, commissions, authorities and other governing agencies are critical to the efficient conduct and management of the public affairs of the citizens of this state**. Complete and absolute immunity is required for the free exercise and discharge of the duties of such boards, commissions, authorities and other governing agencies. Members of boards, commissions, authorities, and other governing agencies must be permitted to operate without concern for the possibility of litigation arising from the faithful discharge of their duties.
>
> (2) All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission,

4

agency, authority, or other governing body. **Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.**

Pursuant to TCA 29-20-201, immunity from suit is removed when such conduct amounts to willful, wanton, or gross negligence. Plaintiff has specifically alleged willful and wanton conduct that is not only grossly negligent, but that is also criminal (Docket Entry 36 p. 49 – 82). See also *29 U.S. Code § 1109, 15 U.S.C. § 16(b)-(h)*.

## THE STATE OF TENNESSEE GOVERNMENT AND TORT LIABILITY ACT IS UNCONSTITUTIONAL

Subparagraph (b) noted above states: "***Complete and absolute immunity*** *is required for the free exercise and discharge of the duties of such boards, commissions, authorities and other governing agencies.*"

Plaintiff alleges "*Complete and absolute immunity*" is nothing less than the establishment of a new Aristocracy which is expressly forbidden in our federal constitution (*U.S Constitution, Article 1, Section 9*). "*Complete and absolute immunity*" is most certainly not necessary to "faithful discharge" of duties. To the contrary, "*Complete and absolute immunity*" only becomes necessary to protect a "*Corrupt Racketeering Enterprise.*" Tennessee prospered just fine for more than one-hundred years without this unconstitutional law. This law only became necessary when the State strayed from the path of ensuring the general well-being of THE PEOPLE, and instead became a tyrannical government bent on abrogating rights.

Of course, due to the fact that the state legislature has been infiltrated and corrupted by the "Corrupt Racketeering Enterprise" that is the Tennessee legal system, state statute removing

5

immunity does not stop at TCA 29-20-201, and false and unconstitutional immunity is

reasserted in TCA 29-20-205 as follows:

> **29-20-205. Removal of immunity for injury caused by negligent act or omission of employees -- Exceptions -- Immunity for year 2000 computer calculation errors.**
>
> **Immunity from suit of all governmental entities is removed** for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> **(1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;**
>
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, **malicious prosecution**, intentional trespass, **abuse of process,** libel, slander, **deceit**, interference with contract rights, **infliction of mental anguish, invasion of right of privacy, or civil rights**;
>
> (3) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;
>
> (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;
>
> (5) **The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;**
>
> (6) Misrepresentation by an employee whether or not such is negligent or intentional;
>
> (7) Or results from riots, unlawful assemblies, public demonstrations, mob violence and civil disturbances;
>
> (8) Or in connection with the assessment, levy or collection of taxes; or
>
> (9) Or in connection with any failure occurring before January 1, 2005, which is caused directly or indirectly by the failure of computer software or any device containing a computer processor to accurately or properly recognize, calculate, display, sort, or otherwise process dates or times, if, and only if, the failure or malfunction causing the loss was unforeseeable or if the failure or malfunction causing the loss was foreseeable but a reasonable plan or design or both for identifying and preventing the failure or malfunction was adopted and reasonably implemented complying with generally accepted computer and

6

information system design standards. Notwithstanding any other law, nothing in this subdivision (9) shall in any way limit the liability of a third party, direct or indirect, who is negligent. Further, a person who is injured by the negligence of a third party contractor, direct or indirect, shall have a cause of action against the contractor.

Plaintiff draws this Court's attention to the first paragraph proceeding the nine enumerated exclusions listed above. At first glance, this statute seems wholesome and in the interest of THE PEOPLE providing for their general welfare and well-being. Unfortunately, this law is nothing more than *"bait and switch"* in considering the final clause *"except if the injury arises out of:"* nine enumerated exceptions. We can see evidence that the statute appears wholesome at first glance considering the State of Tennessee, Court of Appeals decision in the case, Hold v. City of Fayetteville M2014-02573-COA-R3-CV. In this case, the Court of Appeals at Nashville stated:

> As a municipality, the City is entitled to the immunity granted by the GTLA. Tenn. Code Ann. § 29-20-102(3)(a) (Supp. 2015). The GTLA provides general immunity from tort liability to municipalities when engaged in governmental or proprietary functions. Tenn. Code Ann. § 29-20-201 (2012); Kirby v. Macon Cty., 892 S.W.2d 403, 406 (Tenn. 1994). **The Act then waives immunity for injuries caused by:** (1) negligent operation of motor vehicles by employees; (2) defective or dangerous roadways; (3) defective or dangerous public improvements; **and (4) negligent acts of employees, with nine enumerated exceptions.** Tenn. Code Ann. §§ 29-20-202 to -204 (2012)

Delving carefully into the language of TCA, we can see in fact that immunity is not waived for the nine enumerated exceptions: but is in fact asserted and claimed. Holt v. Fayetteville was a 2015 case, so it is not likely the TCA 29-20-205 has been re-codified since that opinion was rendered. As evidenced above, that Ct. of App. opinion references TCA §§

7

29-20-202 to 204. Obviously, the nine enumerated exceptions are not listed in TCA §§ 29-20-202 to 204, the nine enumerated exceptions are listed in TCA § 29-20-205.

Plaintiff reminds this Honorable Court, the Defendant State of Tennessee and its agents who are judges in the Tennessee Court of Appeals are *"Confidence Men."* As stated in Docket Entry 86 Exhibit 2: "Confidence men are not "crooks" in the ordinary sense of the word. They are suave, slick and capable. **Their depredations are very much on the genteel side. Because of their high intelligence, their solid organization, the widespread convenience of the law,** and the fact that the victim [sometimes] must admit criminal intentions if he wishes to prosecute, society has been neither willing nor able to avenge itself affectively. (*Scamming: The Misunderstood Confidence Man, Yale Journal of Law & the Humanities p.250*)"

Plaintiff asserts that in that opinion the Tennessee Court of Appeals intentionally did not reference TCA § 29-20-205 because TCA § 29-20-205 is plainly unconstitutional. As noted above, the opening paragraph of TCA § 29-20-205 states:

> **Immunity from suit of all governmental entities is removed** for injury proximately caused by a negligent act or omission of any employee within the scope of his employment **except if the injury arises out of**:

Obviously, this law was written by *"Confidence Men."* Plaintiff wonders if the state legislatures who enacted this law were duped, or if they willingly played along with the *"Confidence Game"* intended to abrogate constitutionally guaranteed rights. Careful reading of this statute proves the *"trickery"* of the language. *"Immunity from suit... is removed... **except if the injury arises out of**:"* It is plain for all to see, assuming they want to see, that this law was enacted to protect state court corruption and corruption of oversight agencies.

TCA 29-20-205 (1) *The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;"* is clearly intended to pave the way for the Tennessee Board of Judicial Conduct, Tennessee Court of Appeals, and Tennessee Board of Professional Responsibility to perform their functions grossly negligent with complete immunity from suit, even while aiding and abetting violation of constitutional rights. *Actus repugnans non potest in esse produci.*

Most disturbing though is TCA 29-20-205 (2) *False imprisonment pursuant to a mittimus from a court, false arrest,* **malicious prosecution,** *intentional trespass,* **abuse of process,** *libel, slander,* **deceit,** *interference with contract rights,* **infliction of mental anguish, invasion of right of privacy, or civil rights*; which is nothing more than an unconstitutional attempt to provide immunity for malicious rights violations causing mental anguish. ***Malitiis hominum est obviandum.***

Moreover, TCA 29-20-205 seeks to nullify the 42 USC § 1983 and very obviously state law cannot nullify federal law, especially § 1983 which was enacted to curtail state court corruption. As stated in Docket Entry 94: In the Supreme Court Case, Mitchum v. Foster, regarding enactment of 42 USC §1983, the Supreme Court stated §1983 was enacted to protect "The People" as follows:

> **Proponents of the legislation noted that state courts were being used to harass and injure individuals,** either because the state courts were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights.** (*Mitchum v. Foster, 407 US 225 - Supreme Court 1972*at 240)

TCA 29-20-205 is nothing less than an attempt to establish tyranny of the State over THE PEOPLE. Plaintiff cannot imagine a more evil and unconstitutional law that flies in the face of the principles upon which our great nation was founded upon. A new "Aristocracy" has infiltrated the Great State of Tennessee's government and entrenched itself in every level of government. This cannot stand. It must not stand. Again, As President Trump stated in his recent historic Warsaw speech:

> **And above all, we value the dignity of every human life, protect the rights of every person, and share the hope of every soul to live in freedom. That is who we are. Those are the priceless ties that bind us together as nations, as allies, and as a civilization.**
> What we have, what we inherited from our -- and you know this better than anybody, and you see it today with this incredible group of people -- what we've inherited from our ancestors has never existed to this extent before. **And if we fail to preserve it, it will never, ever exist again. So we cannot fail.** (*President Donald Trump, Warsaw Poland, July 6, 2017*)

If we do not fight to preserve our way of life now, and protect the principles upon which our country was founded, "... *if we fail to preserve it, it will never ever exist again. So we cannot fail.*"

Plaintiff begs this Court to stand with him and stand guardian of the Constitution as you swore to do. **Plaintiff hereby, unequivocally challenges this law as unconstitutional.** Plaintiff begs this Court to perform its solemn duty and strike down this unconstitutional law, make it void as if it never existed, because in fact it never should have existed, as provided for in our federal constitution. Our founding fathers foresaw unfortunate circumstances like this and afforded us protection from tyranny. It is now this Court's duty to protect THE PEOPLE

10

from this tyranny being so made fully aware, or the need for this Government becomes extinguished. Quoted from THE DECLARATION OF INDEPENDECE:

> "Governments are instituted among Men, deriving their just powers from the consent of the governed, that whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and institute new Government, laying its Foundation on such Principles, and organizing its Powers in such Form, as to them shall seem most likely to effect their Safety and Happiness."

Due to the fact that Defendant State of Tennessee has asserted Amendment XI as a defense, Plaintiff now has a right to challenge that defense and the underlying unconstitutional state law providing for that defense. This Court must now render decision as to whether Tennessee Code Annotated Chapter 20 is unconstitutional or not. It is Plaintiff's contention that the answer to that question is undeniably affirmative: TCA 20 is unconstitutional.

Regardless of the fact that the Defendant State of Tennessee long ago abrogated state sovereignty and has recently enacted corrupt legislation in an attempt to reassert sovereignty in rights violations suits, the fact remains that Amendment XI U.S. Constitution does not trump Amendment XIV U.S. Constitution. The U.S. Supreme Court has affirmed and reaffirmed that fact time and again.

One of the most recent decisions proving that fact was another case with the State of Tennessee as Defendant: Tennessee v. Lane, 541 US 509 - Supreme Court 2004. In that case the U.S. Supreme Court reaffirmed

> **In Fitzpatrick v. Bitzer, 427 U. S. 445 (1976), we held that Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the**

11

**substantive guarantees of that Amendment.** Id., at 456. **This enforcement power, as we have often acknowledged, is a "broad power indeed."** Mississippi Univ. for Women v. Hogan, 458 U. S. 718, 732 (1982), citing Ex parte Virginia, 100 U. S. 339, 346 (1880). **It includes "the authority both to remedy and to deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."** Kimel, 528 U. S., at 81. We have thus repeatedly affirmed that **"Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct."** Nevada Dept. of Human Resources v. Hibbs, 538 U. S. 721, 727-728 (2003). See also City of Boerne v. Flores, 521 U. S. 507, 518 (1997**). The most recent affirmation of the breadth of Congress' § 5 power came in Hibbs, in which we considered whether a male state employee could recover money damages against the State for its failure to comply with the family-care leave provision of the Family and Medical Leave Act of 1993** (FMLA), 107 Stat. 6, 29 U. S. C. § 2601 et seq. **We upheld the FMLA as a valid exercise of Congress' § 5 power to combat unconstitutional sex discrimination, even though there was no suggestion that the State's leave policy was adopted or applied with a discriminatory purpose that would render it unconstitutional under the rule of Personnel Administrator** of Mass. v. Feeney, 442 U. S. 256 520*520 (1979). **When Congress seeks to remedy or prevent unconstitutional discrimination, § 5 authorizes it to enact prophylactic legislation proscribing practices that are discriminatory in effect, if not in intent, to carry out the basic objectives of the Equal Protection Clause.**

With this in mind, the only pertinent question needing answered now is: Have we come "Full Circle", and returned to our Parliamentary Practices as opposed to those instituted in the Constitution? Because from the vantage point from which Plaintiff stands, we have.

Due to the fact that Plaintiff seeks equitable relief, and the further fact that state receives funding from the federal government, the state cannot assert Amendment XI sovereignty as a defense from suit. Defendant State of Tennessee cites *Berndt v. State, 796 F.2d 879, 881 (6th Cir. 1986) (Tenn. Code Ann. § "20-13-102(a) of the Tennessee Code,* and falsely asserts this

"*expressly prohibits any suits in state court against the state or where state treasury funds are potentially involved, also extends impliedly to suits brought in federal court.*" Even if it were true that TCA 20-13-102 can constitutionally prohibit suits with a view to reach the state, its treasury, Plaintiff clearly seeks equitable relief as well as redress for harms caused by Defendant State of Tennessee. Moreover, a Plaintiff can in fact seek redress against the state: *See Tennessee v. Lane, 541 US 509 - Supreme Court 2004, Hutto v. Finney, 437 US 678 - Supreme Court 1978, Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976.*

Defendant further falsely asserts "*The Ex Parte Young exception does not apply here since the State of Tennessee is the defendant,*" and cites *Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 74 (1996).* The Seminole Tribe of Florida v. State of Florida makes no such conclusion and such was not the matter before the court. In this case, the matter before the court was as follows:

> Petitioner sought our review of the Eleventh Circuit's decision,[5] and we granted certiorari, 513 **U. S.** 1125 (1995), in order to consider two questions: (1) **Does the Eleventh Amendment prevent Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause?**; and (2) **Does the doctrine of *Ex parte Young* permit suits against a State's Governor** for prospective injunctive relief to enforce the good-faith bargaining requirement of the Act? We answer the first question in the affirmative, the second in the negative, and we therefore affirm the Eleventh Circuit's dismissal of petitioner's suit. (at 53)

Clearly the issue before the court in the Seminole case was whether Amendment XI prevents congress from authorizing suites against states to **enforce the Indian Commerce Clause** and whether Ex parte Young permits suits against a State's Governor. This case does

not in any way demonstrate preclusion of suits against states for abrogation of constitutionally guaranteed rights. In fact in the Seminole Tribe case, the U.S. Supreme Court went on to clarify that in fact private parties are authorized to bring suit against the state to enforce the Fourteenth Amendment. Defendant state of Tennessee's own citation proves Plaintiff has right to bring suit against the state.

> Thus our inquiry into whether Congress has the power to abrogate unilaterally the States' immunity from suit is narrowly focused on one question: **Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?** See, *e. g., Fitzpatrick* v. *Bitzer,* 427 U. S. 445, 452-456 (1976). **Previously, in conducting that inquiry, we have found authority to abrogate under only two provisions of the Constitution. In *Fitzpatrick,* we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution.** *Id.,* **at 455. We noted that § 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that § 5 of the Amendment expressly provided that "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."** See *id.,* at 453 (internal quotation marks omitted). **We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity from suit guaranteed by that Amendment.** (at 59)

Still further in the Seminole Tribe case, the court also found Amendment XI immunity is abrogated when enforcing the Interstate Commerce Clause, Art. 1 § 8, cl. 3 (id at 60). In this case, Plaintiff was extorted his property which was a patent pending product sold internationally and hereto the state again loses immunity (See Docket Entry 36, p. 16 – 20). Accordingly, the states loses its immunity not only as pertaining to the Fourteenth Amendment but also according to the Interstate Commerce Clause.

14

The Defendant State of Tennessee further cites: Will v. Michigan Dept. of State Police, 491 US 58 - Supreme Court 1989, and asserts § 1983 does not override Amendment XI immunity.  In that case, the court clearly stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. **The Eleventh Amendment bars such suits <u>unless the State has waived its immunity</u>**, Welch v. Texas Dept. of Highways and Public Transportation, 483 U. S. 468, 472-473 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.  (at 66)

Despite the fact that Amendment XI does not trump Amendment XIV, long ago the state abrogated its sovereignty in deference to the rights of THE PEOPLE.  With TCA 29-20-205, the state has unconstitutionally attempted to reassert sovereignty and malevolently seeks to establish an aristocracy that is completely immune to suit from rights violations.  Plaintiff calls upon this Court to perform its duty and strike down this unconstitutional law.  Plaintiff further calls upon this Honorable Court to asserts its authority in defense of constitutional rights and abrogate state sovereignty in deference to Amendment XIV, U.S. Constitution.

Plaintiff further argues and begs the Court to consider, the "Corrupt Racketeering Enterprise" in Tennessee has so entrenched itself in state government at every level, the state is no longer a sovereign entity but rather a collection of "bad actors."  This becomes obvious considering the many laws and court rules obviously enacted to nullify constitutional rights and protect corruption.  State Statute 29-20-205 is but one clear example as is State Statute 28-3-104 which is plainly intended to protect corrupt attorneys from malpractice suits.   Other

15

examples are (1) the state statute that judges sued in their personal capacity can recover attorney fees (2) Tenn. R. Civ. P. that a litigant cannot file a motion to recuse while represented by counsel, (3) the short 10 day windows for appealing recusal denials and many other state laws and court rules are all designed to stack the deck against persons' enforcement of constitutional rights. Due to these facts, the State is no longer acting for the benefit and well-being of its citizens and has transformed itself from a sovereign entity into "Corrupt Racketeering Enterprise" made up of various "bad actor" persons. Again, *Deceptis, non decipientibus, jura subveniunt.*

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed with the Court Clerk's Office personally, and will be filed electronically by the Court Clerk's Office, and served through the electronic filing system on this the 26th day of July 2017 to:

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

and served by email and first-class mail, postage prepaid on this the 26th day of July, 2017 to:

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

John Anthony Gentry, CPA

17