# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### CIVIL RIGHTS DIVISION

| | | |
|---|---|---|
| **JOHN ANTHONY GENTRY, sui juris/pro se** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **CASE NO. 3:17-0020** |
| vs. | ) | |
| | ) | |
| **THE STATE OF TENNESSEE;** | ) | |
| **PAMELA ANDERSON TAYLOR;** | ) | |
| **BRENTON HALL LANKFORD;** | ) | **JURY TRIAL DEMANDED(12)** |
| **SARAH RICHTER PERKY;** | ) | |
| **UNNAMED LIABILITY INSURANCE** | ) | |
| **CARRIER(S); Et al** | ) | |
| | ) | |
| Defendants | ) | |

---

### PLAINTIFF'S MOTION TO ALTER JULY 18, 2017 MEMORANDUM & ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

---

Comes now your Plaintiff, John Anthony Gentry, pursuant to Fed. R. Civ. P. Rule 59 (e),

respectfully moving this Honorable Court to Alter or Amend the Memorandum & Order (Docket

Entry 102) dated July 18, 2017 for good cause. Pursuant to Local Rule 7.01, Plaintiff's motion

incorporates a memorandum of law citing supporting authorities.

Pursuant to Fed. R. Civ. P. Rule 59 (e) as amended, "*A motion to alter or amend a

judgement must be filed no later than 28 days after the entry of judgement*". This Court's Order

was entered into the record on July 18, 2017. Plaintiff's Motion to Alter and Incorporated

1

Memorandum of Law is properly filed on August 7, 2017, which is twenty (20) days after entry of the Court's Order. Therefore, Plaintiff's motion is filed timely.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 2

THE COURT NEED NOT ENJOIN OR ENTER INJUNCTION AGAINST NON- PARTY ..... 4

PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS..................................... 5

PLAINTIFF WILL SUFFER IRREPERABLE HARM ............................................................. 7

FOR THE GOOD OF THE PEOPLE AND IN PUBLIC INTEREST ....................................... 13

CONCLUSION............................................................................................................... 21

**Cases**
Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997) ................................ 4
Arthur Andersen LLP v. United States, 544 US 696 – Sup. Ct. 2005......................... 10
Erickson v. Pardus, 551 US 89 – Sup. Ct. 2007 ........................................................... 5
Estelle v. Gamble, 429 US 97 – Sup. Ct. 1976............................................................. 4
Howlett v. Rose, 496 U.S. 356, 365 (1990).................................................................. 4
Northeastern Florida Chapter of the Associated General Contractors of America v. City of
   Jacksonville, FL 508 U.S. 656 (1993)..................................................................... 11
SEC v. Unifund SAL, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990) ................................. 12
Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ................................... 4

**Rules**
Fed. R. Civ. P. Rule 59 (e)............................................................................................. 1
Local Rule 7.01 ............................................................................................................. 1
Rules of Practice And Procedure of the Board of Judicial Conduct............................. 7

## INTRODUCTION

Plaintiff respectfully requests the court to reconsider its decision, and amend or alter the Court's ruling based on the additional facts stated below, new docket entries filed subsequent to

issuance of the Court's Memorandum and Order and further arguments of law. **Plaintiff further begs the Court to alter or amend for the good of THE PEOPLE**.

With this present case before the Court, this Honorable Court has a unique opportunity to reform OUR legal system, not only here in Tennessee but that of our entire country. Make no mistake: the outcome of this case can either preserve the status quo of rampant rights violations, corruption, and racketeering schemes inflicted upon THE PEOPLE, or this Court can preserve the intent of our founding fathers. **This Court has an opportunity to reinstitute constitutional rights back into state court proceedings, and in so doing, save countless lives and preserve the well-being of generations to come**. The outcome of this case can literally change history and preserve our great experiment in democracy. Such is the grave responsibility before the Court in this case. Plaintiff begs this Honorable Court to shoulder this great responsibility and stand guardian of The Constitution Of The United States. (See section below: FOR THE GOOD OF THE PEOPLE AND IN PUBLIC INTERST)

In the Court's Memorandum and Order (Docket Entry 102), the Court denied Plaintiff's TRO motion on the follows basis:

1. A federal court generally may not enter an injunction against a person who is not a party to the case before it.
2. Plaintiff has not shown he has greater chance of success on the merits.
3. Plaintiff has not shown he will suffer irreparable harm and his concern about destruction of evidence is "rank speculation".
4. Plaintiff has not shown evidence that entry of an injunction will have an effect one way or the other on the public interest.

3

In the sections to follow, Plaintiff respectfully requests this Court to reconsider its findings with respect to each basis of denial of Plaintiff's TRO motion.

## THE COURT NEED NOT ENJOIN OR ENTER INJUNCTION AGAINST NON- PARTY

In Plaintiff's TRO Motion (Docket Entry 19), Plaintiff sought the Court's protection of his evidence and asked the Court to enjoin and issue injunction upon: "Defendants; Tennessee Board of Judicial Conduct, The Honorable Judge Chris Craft, Timothy R. Discenza, and all persons acting on behalf of the Tennessee Board of Judicial Conduct..." (Docket Entry 19 p. 1 ¶ 1). Plaintiff respectfully reminds this Honorable Court: A document filed pro se is to be liberally construed, and however inartfully pleaded, **must be** held to less stringent standard. *Estelle v. Gamble, 429 US 97 – Sup. Ct. 1976, Erickson v. Pardus, 551 US 89 – Sup. Ct. 2007.*

In Defendant State of Tennessee's "*Memorandum of Law in Support of Defendants' Motion to Dismiss*" (Docket Entry 23), Defendant argued that the TBJC and its members are "*arms of the state*" and stated "*Therefore, "§ 1983 creates no remedy against a State.*" **Accordingly, by Defendant's own argument, Plaintiff's TRO cannot be construed as enjoining and issuing injunction against non-party persons.** Specifically, Defendant State of Tennessee stated:

> Under 42 U.S.C. § 1983, "[e]very person who, under the color of any statute . . . causes . . . the deprivation of any rights . . . shall be liable to the party injured in an action at law." **A state, arms of the state, and state officials acting in their official capacity are not "persons" under § 1983.** Howlett By and Through *Howlett v. Rose, 496 U.S. 356, 365 (1990)*; *Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).* Therefore, "§ 1983 creates no remedy against a State." *Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997).*

> Plaintiff has named as Defendants the State, the Board, and its members. (Compl. 2-4.) **The Board and its members are arms of the state**. See Tenn. Code Ann. § 17-5-101 et seq. Therefore, the State, the Board, and any Defendants in their official capacity are not "persons" under § 1983. (Docket Entry 23 p. 6 ¶ C)

Obviously, Plaintiff seeks to preserve evidence held by the Tennessee Board of Judicial Conduct (TBJC). The TBJC is an agency of Defendant State of Tennessee. This Court may "liberally construe" Plaintiff's TRO motion as a motion to enjoin and issue injunction against the Defendant State of Tennessee, and need not enjoin and issue injunction against the "non-parties" Judge Chris Craft and Timothy R. Discenza, despite the fact Defendant has already asserted they are arms of the state and not "persons". For the Court's convenience in this regard, Plaintiff has attached a modified Proposed Order reflecting restrain and enjoin against Defendant State of Tennessee and its agency TBJC.

## PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff directs the Court's attention to Docket Entries 51 and 52 which is Defendant "*State of Tennessee's Motion To Dismiss The Amended Complaint*" and supporting memorandum, respectively. Defendant does not in any way deny the facts of the case and merely falsely asserts state sovereignty under Amendment XI U.S. Constitution as their only effective defense.

Plaintiff further directs the Court's attention to Docket Entry 106 which is Plaintiff's "*Memorandum of Law Proving State of Tennessee Waives Amendment XI US Constitution Immunity and Challenge of Unconstitutional State Law.*" This document proves beyond any doubt that the state long ago waived state sovereignty in deference to rights of THE PEOPLE. State sovereignty was waived in our state constitution because the wounds caused by tyranny of the

Crown of England were still freshly remembered. Having forgotten the lessons of our past, or more likely, in attempt to establish a new Aristocracy, the state unconstitutionally enacted the Government and Tort Liability act encoded in state statute Tennessee Code Annotated Chapter 20, in a poorly veiled attempt to re-establish state sovereignty as a means to protect the state's "Corrupt Racketeering Enterprise." As stated in Docket Entry 106, this evil and unconstitutional law must be struck down by this Honorable Court. The state in no way has authority to grant immunity for **false arrest, malicious prosecution, intentional trespass, abuse of process,** libel, slander, deceit, interference with contract rights, **infliction of mental anguish, invasion of right of privacy,** or **civil rights** [See TCA 29-20-205(2)]. **Plaintiff begs this court to read Docket Entry 106 and strike down this unconstitutional law at the earliest opportunity.** *Actus repugnans non potest in esse produci.*

With state sovereign immunity out of the way as a complete and utter failed defense, the Court must then consider the facts of the case in determining Plaintiff's likelihood of success on the merits. As stated above, none of the Defendants in this case have disputed the facts. The facts in this case proving repeated rights violations and federal crimes committed against Plaintiff are already well presented and evidenced in the record. See Plaintiff's Second Amended Complaint (Docket Entry 36) and Plaintiff's motion for leave to amend and supporting memorandum (Docket Entries 92 and 93 and attached exhibits). There is no doubt the facts establish multiple causes of action and Plaintiff will succeed on the merits. To hold otherwise is to ignore the facts.

## PLAINTIFF WILL SUFFER IRREPERABLE HARM

On February 27, 2017, Plaintiff filed a TRO Motion and supporting memorandum, requesting that the Court enjoin and restrain the TBJC (Docket Entries 19 and 20). On March 13, 2017, Defendant State of Tennessee filed an opposing response to Plaintiff's TRO (Docket Entry 29). In Defendant's opposing response, Defendant stated: *"The motion is moot because Defendants are complying with their obligation to preserve **relevant information.**"* Defendant further stated: *"In addition, the Tennessee Board of Judicial Conduct ("Board") retains an electronic file that is never destroyed of the **relevant portions** of all complaints and documentation, including correspondence. R. Prac. And Proc. of the Bd. Of Judicial Conduct 10."* For the Court's convenience, the current Rules of Practice And Procedure of the Board of Judicial Conduct, available on the Board's website are attached as EXHIBIT 1 and Rule 10 of that document is as follows:

> **Rule 10: Records Retention Policy**
> When a complaint is received from an outside source or is created internally, both a physical and an electronic file shall be created. **The physical file shall contain the complaint and all relevant documentation and correspondence pertaining to the complaint.** <u>Relevant portions of all complaints and documentation, including correspondence, shall be scanned and maintained in the electronic file</u>. Correspondence generated by the office to either the complainant or the subject judge shall also be maintained in an electronic file by copying to the electronic file the correspondence in word processing format without the necessity of scanning the printed letterhead document. **Voluminous public records such as transcripts, court dockets or pleadings filed in any court which are retrievable by other means need not be scanned into the electronic file.** Disciplinary Counsel shall maintain a backup copy of all electronic files that shall be backed up daily and kept on storage media apart from the computer internal hard drive. **A physical file may be destroyed by an appropriately secure method such as commercial shredding no sooner**

7

**than one year after the closing and final action taken on that file, but the electronic file shall never be destroyed, regardless of the disposition of the case.**

As evidenced in Rule 10, the physical file *"shall contain the complaint"* and *"all relevant documentation and correspondence."* Regarding the *"physical file,"* the rule begs the question: "How is "relevant documentation" defined?" Plaintiff reminds this Honorable Court, Defendants in this case are "Confidence Men"

> Confidence men are not "crooks" in the ordinary sense of the word. They are suave, slick and capable. **Their depredations are very much on the genteel side. Because of their high intelligence, their solid organization, the widespread convenience of the law**, and the fact that the victim [sometimes] must admit criminal intentions if he wishes to prosecute, **society has been neither willing nor able to avenge itself affectively.** (*See Docket Entry 86 EXHBIT 2 Scamming: The Misunderstood Confidence Man, Yale Journal of Law & the Humanities p. 250*)"

Due to the fact of their solid organization and high intelligence, Plaintiff asserts the language of Rule 10 is *"bad actor"* language that permits them to destroy evidence while at the same time remaining in compliance with record retention policy. Delving into the language of R. Prac. And Proc. of the Bd. Of Judicial Conduct Rule 10, the *"crafty language"* is clearly constructed to permit destruction of evidence so as to hide and conceal judicial corruption. (see Constitutional Fact Doctrine, Constitutional Doubt Canon, and Freedom of Information Act)

The following language: **"The physical file shall contain the complaint and all relevant documentation and correspondence pertaining to the complaint"** plainly allows corrupt members of the TBJC to determine what is **"relevant documentation and correspondence."** As

"Corrupt Racketeers," it would be easy for these "bad actors" to deem documentation critical to Plaintiff's case as "irrelevant" and simply not include that documentation in the physical file.

Plaintiff next draws the Court's attention to the following "crafty language": **"The physical file shall contain the complaint"** and the following language, **"Relevant portions of all complaints and documentation, including correspondence, shall be scanned and maintained in the electronic file."** Clearly the physical file *"shall contain the complaint"* but the electronic file need only contain *"relevant portions of all complaints and documentation."* Clearly this "bad actor" language allows them destroy the physical file and not include the actual complaint in the electronic file. It would be easy for these "bad actors" to assert: *"well... we dismissed the complaint... so the complaint itself is not a "relevant portion"... only the letter dismissing the complaint and our internal files are relevant."*

Plaintiff next draws the Court's attention to the following "crafty language": **"Voluminous public records such as transcripts, court dockets or pleadings filed in any court which are retrievable by other means need not be scanned into the electronic file."** Again this language is nothing more than "bad actor" language that allows them exclude evidence supporting the complaint from the electronic file.

Even worse is the final sentence of Rule 10 which states: **"A physical file may be destroyed by an appropriately secure method such as commercial shredding no sooner than one year after the closing and final action taken on that file, but the electronic file shall never be destroyed, regardless of the disposition of the case."** Obviously, the physical files are being

destroyed to hide judicial corruption and only the "Corrupt Racketeers" know what are "relevant portions" are that are included in the electronic file.

Plaintiff further draws attention to the fact that Defendant State of Tennessee did not include a copy of *R. Prac. And Proc. of the Bd. Of Judicial Conduct 10* in their response, so as to hide the "crafty language" of Rule 10 from this Honorable Court. The Defendant State of Tennessee, through "crafty language" of their Rules of Practice and Procedure, deftly avoid criminal behavior while at the same time being permitted to destroy Plaintiff's evidence as evidenced in the following US Supreme Court opinion.

> A "knowingly . . . corrup[t] persaude[r]" cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material. *Arthur Andersen LLP v. United States, 544 US 696 – Sup. Ct. 2005 (at 708)*

In the Court's Memorandum & Order (Docket Entry 102), the Court stated: "*The plaintiff simply has no evidence, **aside from rank speculation**, that the Board might destroy evidence the plaintiff needs in order to pursue his lawsuit*."

As evidenced above and herein, it is not "rank speculation" that Defendant State of Tennessee might destroy evidence. In fact, it is a matter of fact and the state's policy and procedure to destroy Plaintiff's evidence after one year. Moreover, the "crafty language" is obviously written by "Confidence Men" bent on destroying, and or, excluding evidence of judicial corruption. The destruction of Plaintiff's evidence is not "rank speculation," it is a fact as evidenced in their own Rules of Practice and Procedure. Clearly these "Confidence Men" constructed Rule 10 to permit

"bad actors" to pick and choose what records and portions of records to retain or destroy. (see Fruits of a Crime (1854))

Despite the fact of the TBJC's gross negligence in dismissing Plaintiff's complaint submitted to them against the Honorable Judge Joe H Thompson, which makes TBJC guilty of aiding and abetting rights and federal law violations made against Plaintiff, Plaintiff has also alleged that Defendant State of Tennessee, and its agency TBJC violated Plaintiff's right of Equal Protection.

It is an already well evidenced fact that the TBJC effectively dismisses one-hundred percent (100%) of complaints filed by non-legal professionals and only acts on complaints filed by members of the legal profession. [*See Docket Entry 90, Exhibit 1, Auditor's Compilation Report*]. Legal professionals are a distinct class of persons from non-legal professionals and the TBJC's practice of dismissing effectively all complaints filed by non-legal professionals is discriminatory, and in violation of the Equal Protection Clause. As stated in Docket Entry 38, p. 3-4:

> **In and of itself, that failure to provide Equal Protection is sufficient harm to give Plaintiff standing**. Plaintiff's assertion is proven as true in the Supreme Court Opinion issued in the case, *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, FL 508 U.S. 656 (1993)*. In this Opinion, the Supreme court stated;
>
>> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, **a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal**

11

**treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit**. (at 666).

In order to further prove this assertion, it is critical to Plaintiff's case that he be provided in discovery all complaints, **including all portions**, and not just portions "deemed relevant" by "bad actor" members of the TBJC. At a minimum, Plaintiff requires three years of data to establish beyond any doubt, the TBJC's discriminatory pattern of behavior. **As statutes of limitations have yet to commence due to the fact this case remains open, willful destruction of evidence is a felony under the rules of evidence, Fed. R. Civ. P. 12(b)(6), and Fed. R. Crim. P. 7(b))**. Plaintiff asserts this Court should enforce rules of evidence and protect his evidence and enjoin and issue injunction against Defendant State of Tennessee to not destroy Plaintiff's evidence.

Furthermore, due to the fact that *R. Prac. And Proc. of the Bd. Of Judicial Conduct 10* authorizes the TBJC to destroy evidence such as "*transcripts, court dockets, or pleadings*" that evidence and prove judicial corruption, Plaintiff should not be subjected to the undue burden and costs of procuring those documents, when this Court can simply order Defendant to retain and preserve that evidence. Preservation of such records is innocuous and causes Defendant no harm other than exposing their corruption *SEC v. Unifund SAL, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990)*

Plaintiff further complains that because the "electronic file" may or may not contain the actual complaints filed, in addition to supporting evidence that may or may not be preserved at the whim of "corrupt racketeers," all of this evidence is critical to Plaintiff's case evidencing conspiracy to aid and abet rights and federal law violations by the TBJC against Plaintiff and other Tennessee litigants. To not preserve evidence in this case, causes not only irreparable harm to

12

Plaintiff, but to all future litigants in the State of Tennessee which brings us to the next critically important matter for this Court to consider.

## FOR THE GOOD OF THE PEOPLE AND IN PUBLIC INTEREST

Plaintiff begs the Court's indulgence for just a few paragraphs in "setting the stage" as follows:

As an initial point of consideration in protecting public interest, and preserving and protecting the welfare of THE PEOPLE, it is necessary to understand, just briefly, how individual intelligence affects perceptions of present and future events. Plaintiff, as a businessman and long-time student of leadership, has studied in-depth and throughout his career, leadership traits critical to long-term success of business. One such trait, is to be able to look forward and consider the future impact of decisions made today: *Built to Last*, *Collins and Porras*, *Leadership the inner side of Greatness*, *Koestenbaum*, *Principle Centered Leadership*, *Covey*, *First Break All The Rules*, *Buckingham and Coffman*, to name a few "supporting authorities."

Put in the simplest terms, consider a person living in poverty. The future vision of person's living in poverty, is often limited to days, weeks, months at most… "How am I going to put food on my family's table next week. How am I going to pay next month rent…, and so on." A good small business owner may look forward months and perhaps even a few years… "How am I going to finance this new product line. How am I going to replace obsolete equipment…, and so on." Contrastingly, the future vision of leaders of large and multi-national corporations looks forward many years in considering opportunities and threats faced by their organizations.

13

Considering these thoughts, it should be common sense that a person's intellect is evidenced by how far out they consider the effects of decisions made today, and in this way, shape the future according to carefully made plans. In other analogy, consider the game of Chess, and that how many moves ahead a player is able to consider, greatly affects the outcome of the game. **Plaintiff asks the Court to look forward (visionary if you will) in shaping the course of our nation, be it five years, twenty-five years, perhaps more.**

With "the stage now set" and these thoughts in mind, **Plaintiff asserts the outcome of this case, and the decisions made by this Court, can dramatically shape future events.** Plaintiff begs this Court to consider how its decisions in this case can either preserve the status quo of rampant rights and federal law violations against THE PEOPLE by a "Corrupt Racketeering Enterprise" or alternatively how this case can return our great country to the principles upon which it was founded, thus proving our great experiment in democracy a successful endeavor, and potentially preserving our great Republic. How this Court handles this case can affect many generations yet to come.

The already well-evidenced facts of this case show that the TBJC receives 1.48 complaints per day (See Docket Entry 36 p. 54 ¶ 179 and Docket Entry 90, Exhibit 1, Auditor's Compilation Report). This is an undeniable proven fact, based on the TBJC's own Annual Reports calculated through the basic arithmetic functions of addition and subtraction. Of these 1.48 complaints received per day, it is also a proven fact that effectively one-hundred percent (100%) of complaints made against judges by non-legal professionals, received by the TBJC, are dismissed without any

14

action taken, which Plaintiff asserts, and common-sense demands, is a statistical impossibility. **Plaintiff's evidence should be preserved so he can prove this assertion.**

Clearly Plaintiff's complaint against Honorable Judge Joe H Thompson, evidenced in the record, should not have been dismissed (See Plaintiff's complaint filed with the TBJC, entered into the record in Docket Entry 19 exhibit 2 [1] ). **In wrongfully dismissing complaints made against judges, Plaintiff asserts this is no different than a law enforcement officer watching a gang-rape and taking no action to stop such abhorrent judicial behavior.** Indeed, Plaintiff suffered many of the same symptoms of rape himself as a result of rights and federal law violations perpetrated against him.

Plaintiff alleges and the facts will show that complaints made against judges are not filed lightly nor are they filed after only one rights or federal law violation. Plaintiff alleges these complaints are filed as a "last resort" after repeated rights and federal law violations causing great suffering amongst THE PEOPLE. Moreover, this is not just a problem inherent in the Tennessee legal system, but it is a "national problem". *See Plaintiff's Docket Entry 90, Exhibit 1, Auditor's Compilation Report, which is a report on eighteen (18) state judicial oversight agencies.* (see Treatis on Federal Impeachment)

This "national problem" is further evidenced in the attached EXHIBIT 2 which is a Department of Justice (DOJ) letter apparently sent to all chief justices across the country. Clearly

---

[1] As an aside issue, Plaintiff draws attention to the fact that this document was titled by the Clerk's office as "Preliminary Statement" when it should have been titled "Formal Complaint of Judicial Misconduct by Judge Joe H. Thompson." The title "Preliminary Statement" is misleading and evidences why Plaintiff should be granted PACER access to file his own pleadings and motions.

the DOJ recognizes that state courts have become "revenue centers" for the state and legal profession. In State Equity Court Proceedings, decisions are made and the documents are prepared "before" entering into the Court Room. The "Hearings" are merely to present the "Appearance of Due Process" and as a means of "Creating Billable Hours". Not actual Due Process itself as in most of these State cases, unbeknownst to at least one party as that party has been either betrayed by counsel, or is unrepresented by counsel as is true in this case, as Plaintiff was clearly betrayed by his own counsel and was forced into involuntary pro se status. (See Plaintiff's First Cause of Action Docket Entry 36).

**With these facts and allegations in mind, the court should now consider the public interest of preserving Plaintiff's evidence.** Imagine a perfect world "if you will", where judicial misconduct is immediately sanctioned and corrected by various judicial oversight agencies. If these various state judicial oversight agencies were doing their job, judicial misconduct would immediately cease to exist, and THE PEOPLE would not be harmed and subjected to suffer tyranny of the state's "Corrupt Racketeering Enterprise" (see Fruits of a Crime (1854) and Fruit of the Poisonous Tree Doctrine (1956))

It is because of these grossly negligent, breach of fiduciary duty, aiding and abetting of rights and federal law violations by judicial oversight agencies, that judicial misconduct is permitted to run rampant and inflict harm upon THE PEOPLE. If this problem were fixed, all the problems of judicial misconduct would go away. The TBJC and similar state agencies are the "heart of the problem" and the federal courts have within their power and jurisdiction the ability to correct this incredible problem. 18 U.S.C. § 1964 provides this power to the federal courts.

16

a) **The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to:** ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or **ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons**.

Further imagine successful resolution of this case, and this Court reorganizing the TBJC and finding the conduct of certain members of the TBJC "seriously culpable" in violation of 18 U.S.C. § 1346 and calling for criminal indictment. If that happened, and it should, other state judicial oversight agencies would most certainly take notice and start doing their jobs. This court has within it power and jurisdiction the ability to change the course of the nation and reinstitute constitutionally guaranteed rights back into state court proceedings with little to no effort expended.

Our Declaration of Independence states;

The history of the present King of Great Britain is a history of repeated injuries and usurpations, all having in direct object the establishment of an absolute Tyranny over these States. To prove this, let Facts be submitted to a candid world. (Nul prendra advantage de son tort demesne. No one shall take advantage of his own wrong)

Many of the grievances…, facts submitted to a "candid world", stated by our founding fathers in our Declaration of Independence, are the same harms inflicted upon helpless victims in state courts across the country today. The case before the court today is just one of many which

are mostly never heard in federal courts due to numerous self-protection mechanisms like the Tennessee Government Tort and Liabilities Act and various "Racketeering Schemes"

This case is symptomatic of a much larger problem causing great harm to our entire country and puts at risk our great republic. The target litigants in cases like this are typically high earners who create jobs and innovate businesses. The mental anguish suffered by these target litigants often incapacitates them mentally, and leaves them unable to remain productive members of the workforce and society, i.e. mental castration. Plaintiff will present further facts and customer testimony proving Plaintiff suffered such mental incapacitation/castration. These legal abuses often result in substance abuse and in many cases, without any hope, some of the so inflicted, resort to suicide, sometimes unintentionally. Plaintiff will present facts and first-hand testimony proving these sobering assertions.

To put this in context, brief consideration of world events is necessary. As this Court likely knows through studying history, corruption is always a present factor contributing to the failure of nation states. Of course, there are other factors that play a more significant role, such as an overextended military that led to the downfall of the Roman and British Empires. Regardless, corruption of public officials is always a present and contributing factor.

> And above all, we value the dignity of every human life, protect the rights of every person, and share the hope of every soul to live in freedom. That is who we are. Those are the priceless ties that bind us together as nations, as allies, and as a civilization.
>
> **...And if we fail to preserve it, it will never, ever exist again. So we cannot fail.** (*President Donald Trump, Warsaw Poland, July 6, 2017*)

Our President recognizes that we must protect the dignity and rights of **every person**. Moreover, it is this Court's duty to do so. (Nec curia deficeret in justitia exhibenda, Nor should the court be deficient in showing justice)

To place greater focus on this issue, we should consider the words of Richard Haass who is the president of the Council on Foreign Relations (CFR). The CFR has been the hub of thought and discourse on what relation our country should have with foreign nations for more than one hundred years. Mr. Haass has served in senior cabinet positions under Carter, Raegan, and both of the Bush administrations.

Mr. Haass contends the world is in much greater disarray now than during the cold war. During the cold war, we had two primary concentrations of power, the US and USSR. During the cold war, it was understood between the superpowers that conflict needed to be avoided to prevent escalation to nuclear conflict. A World in Disarray: American Foreign Policy and the Crisis of the Old Order, Richard Haas. The N.Y. Times describes Mr. Haass' work as follows:

> **"A valuable primer on foreign policy: a primer that concerned citizens of all political persuasions—not to mention the president and his advisers—could benefit from reading."** —*The New York Times*

As Mr. Haass states in his book: today we are faced with a much greater disarray of world powers and the US is struggling to maintain its place at the helm of world order. Power today is much more widely distributed, and we are also faced with many issues of globalization.

In 1991 HW Bush set the tone in his state of the union address defining the role of the US in a new world order. He stated:

19

> "I come to this house of the people, to speak to you and all Americans,
> certain that we stand at a defining hour"

President Bush was laying out the vision of American Moral Preeminence.

> "It is a big idea: a new world order, where diverse nations are drawn
> together in common cause to achieve the universal aspirations of mankind
> - Peace and Security, Freedom and the Rule of Law" *State of the Union
> Jan. 29, 1991 HW Bush*

President Bush was laying down the foundation that what the US does, or does not do, sets the tone for world order backed up by US military preeminence.

The 9/11 attack exposed our vulnerability, and today our country faces many challenges not only from terrorism, but from a rising power in the East, North Korea, the assertiveness of Russia in the Ukraine, Eastern Europe and the Middle East. We face economic challenges as many of our products are manufactured overseas, and many US companies outsource labor and build factories in other countries.

Now add to these dire circumstances, destruction of ourselves from within, by debilitating the best and brightest amongst us and destroying families through rights violations rampant in family court, and we find ourselves on a path that weakens the fabric of our great country at a time we need to be strengthening it.

Consider the fact of 1.48 complaints per day made against judges in the State of Tennessee, and the average of 386 complaints annually, and that effectively one-hundred percent of these cases when filed by a non-legal professional are automatically dismissed. This means one and one-half persons per day are suffering rights violations with many of those violations resulting in mental incapacitation. For this to happen to a single American Citizen is unconscionable, as is

20

true of Plaintiff. For this to happen to hundreds of citizens every year is beyond unconscionable, it is horrifying tyranny of the state destroying the very fabric of our nation. Nationally, this is happening to thousands of our fellow citizens. This causes a huge negative impact on our GDP, affecting the country as whole.

As this Court must now recognize, preservation of Plaintiff's evidence is not only critical to his case but is paramount to the well-being and general welfare of THE PEOPLE. Plaintiff begs this court to abandon the preservation of the status quo, recognize the rampant rights violations, abandon deference to preserve "judicial integrity" and false "public trust" and instead stand guardian of the constitution.

Plaintiff's case clearly requires "all portions" of complaints made against judges be retained and preserved by the TBJC, and not just those parts deemed "relevant" by alleged "bad actors" of the Defendant State of Tennessee.

This Court has the power and jurisdiction to literally change the course of our great Republic, and preserving Plaintiff's evidence is a good first step.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter the proposed Temporary Restraining Order and Preliminary Injunction to halt Defendants' violations of the Fourteenth Amendment of United States Constitution.

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
john.a.gentry@comcast.net

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed with the Court Clerk's Office personally, and will be filed electronically by the Court Clerk's Office, and notice served through the electronic filing system on this the 7th day of August 2017 to:

Lauren Paxton Roberts
Erika R. Barnes
Stites & Harbison
401 Commerce Street, Suite 800
Nashville, TN 37219
lauren.roberts@stites.com

William S. Walton
Butler Snow, LLP
The Pinnacle at Symphony Place
150 Third Avenue South
Nashville, TN 37201
bill.walton@butlersnow.com

Stephanie A. Bergmeyer
Office of the Atty. Gen. and Reporter
P.O. Box 20207
Nashville, TN 37202-0207
Stephanie.bertmeyer@ag.tn.gov

John Anthony Gentry, CPA