IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN ANTHONY GENTRY            )
                               )
   v.                          )    NO. 3:17-cv-00020
                               )
THE TENNESSEE BOARD OF         )
JUDICIAL CONDUCT, et al.       )

**M E M O R A N D U M**

Pending before the court is the Motion to Dismiss of defendants Pamela Taylor and Brenton Lankford (Docket Entry No. 45), the Motion to Dismiss of defendant Sarah Richter Perky (Docket Entry No. 49), and the Motion to Dismiss of defendant State of Tennessee (Docket Entry No. 51). For the reasons discussed herein, the motions will be granted.

**I. Background**

During 2014 through 2016, John Anthony Gentry ("plaintiff"), a resident of Goodletsville, Tennessee, was involved in divorce proceedings with his ex-wife ("Ms. Gentry") in the Circuit Court for Sumner County, Tennessee ("the Divorce Proceeding(s)"). The Honorable Judge Joe H. Thompson ("Judge Thompson") presided over the Divorce Proceedings. The Gentrys were declared divorced in May 2016, *see* Docket Entry No. 36-1 at 37-38, and Judge Thompson thereafter entered an order in July 2016 as to the division of marital property. *See* Docket Entry No. 49-3. Although Judge Thompson declined to grant Ms. Gentry attorney's fees in the July 2016 order, Judge Thompson had previously awarded attorney's fees to her in the amount of $4,134.21[1], and he denied plaintiff's motion to reconsider this award. *Id.* The plaintiff thereafter filed a *pro se* appeal of the Divorce Proceedings. The appeal is currently pending before the Tennessee Court of Appeals. *See Gentry v. Gentry*, 2016 WL 7176981 (Tenn. Ct. App. Dec. 9, 2016).

---

[1] *See* Second Amended Complaint (Docket Entry No. 36) at ¶ 36.

The plaintiff was represented in the Divorce Proceedings by Sarah Richter Perky ("Perky") for a short period of time, from February through June 15, 2015, when she withdrew from the case. *See* Docket Entry No. 49-1. The plaintiff appears to have acted *pro se* in the Divorce Proceeding subsequent to Ms. Perky's withdrawal. Ms. Gentry was, and continues to be, represented by Pamela Anderson Taylor ("Taylor") and Brenton Hall Lankford ("Lankford') for matters related to the divorce.

The plaintiff was not pleased with numerous aspects of the Divorce Proceedings and expressed that displeasure by filing two administrative actions during the pendency of the proceedings. On September 18, 2015, he filed a lengthy complaint of professional misconduct against Taylor with the Tennessee Board of Professional Responsibility ("TBPR"), alleging that Taylor violated several Rules of Professional Conduct during the Divorce Proceedings. *See* Docket Entry No. 36-1 at 75-99. That complaint was dismissed on March 23, 2016, without action being taken against Taylor. *Id.* at 101. On February 26, 2016, he filed a lengthy complaint of judicial misconduct against Judge Thompson with the Tennessee Board of Judicial Conduct ("Judicial Board"), alleging that, during the course of the Divorce Proceedings, Judge Thompson had made false statements and had violated due process, the Code of Judicial Conduct, and statutory provisions. *See* Amended Complaint at ¶ 188. That complaint was dismissed on March 11, 2016, without action being taken against Judge Thompson. *Id*. at ¶ 189.

Plaintiff did not confine his attempts to seek redress to filing administrative complaints. He also filed two *pro se* civil lawsuits on October 3, 2016, for matters occurring in the Divorce Proceedings. He brought a civil lawsuit against Taylor and Lankford in the Circuit Court for Davidson County, Tennessee ("Davidson County Case"), seeking compensatory and punitive damages and asserting claims of constructive fraud, fraud, abuse of process, civil conspiracy, and intentional infliction of emotional distress based upon their alleged wrongful conduct. *See* Docket Entry No. 45-2. On January 26, 2017, that lawsuit was dismissed with prejudice upon the motion of Taylor and Lankford. *See* Docket Entry No. 45-3. He also filed a lawsuit in this court against

Judge Thompson under 42 U.S.C. § 1983 for alleged federal civil rights violations committed during the Divorce Proceedings. *See John Anthony Gentry v. John H. Thompson*, 3:16-2617. By Order entered January 27, 2017, that lawsuit was dismissed with prejudice on the basis that the court did not have jurisdiction to hear the case under the *Rooker-Feldman* doctrine. *See* Docket Entry No, 27 in *Gentry v. Thompson*. On September 14, 2017, the Sixth Circuit Court of Appeals affirmed the dismissal, finding that absolute judicial immunity barred any claims against Judge Thompson in his individual capacity and that Eleventh Amendment sovereign immunity barred any claims against him in his official capacity. *See* Docket Entry No. 42 in *Gentry v. Thompson*.

A few months after filing his lawsuits, plaintiff filed the instant action *pro se* on January 9, 2017, naming as defendants: the State of Tennessee; the Judicial Board; Judge Chris Craft ("Craft"), the Chairperson of the Judicial Board; Timothy R. Discenza ("Discenza"), Disciplinary Counsel for the Judicial Board; "unnamed members of investigative panel;" and "unnamed liability insurance carriers." *See* Complaint (Docket Entry No. 1) at 2-5. Plaintiff alleged that these defendants violated his federal constitutional rights by failing to fulfill their responsibilities and duties with respect to his administrative complaint against Judge Thompson and, further, that his equal protection rights were violated because, "as a matter of practice, Defendants routinely dismiss effectively one-hundred percent of the cases filed by non-members of legal profession." *Id*. at 14, ¶ 44.

After the originally named defendants filed a joint motion to dismiss, plaintiff filed two amended complaints in which he dropped Craft, Discenza, and the Judicial Board from the lawsuit but added Taylor, Lankford, and Perky as defendants. *See* Amended Complaint (Docket Entry No. 32) and Second Amended Complaint (Docket Entry No. 36).[2] In the Second Amended Complaint, the plaintiff alleges that he has been the victim of extortion, deprivation of honest services, racketeering, fraud, breaches of fiduciary duties, witness tampering, obstruction of justice,

---

[2] Although the plaintiff did not seek leave of the court to file his Second Amended complaint, the court permitted the Second Amended Complaint and, thus, it is the operative pleading in this lawsuit. *See* Order entered April 26, 2017 (Docket Entry No. 55). The plaintiff was denied leave to file a third amended complaint. *See* Orders entered May 15 and 31, 2017 (Docket Entry Nos. 60 and 69), and September 13, 2017 (Docket Entry No. 118).

3

and a conspiracy, as well having had his due process and equal protection rights violated by the defendants. *See* Second Amended Complaint at 21, 28, and 49. The plaintiff asserts specific violations of several criminal statutes – 18 U.S.C. §§ 2(a) & (b), 1341, 1346, 1512, 1951, 1952, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*. ("RICO"), 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Fourteenth Amendment. *Id*. As relief, he seeks $3,458,095.00 in compensatory damages and an award of punitive damages. *Id*. at p. 100 and ¶ 297. He also seeks injunctive relief in the form of: 1) orders to the State of Tennessee "to put in place proper legislation and oversight of the Board of Professional Responsibility, Board of Judicial Conduct, and Court of Appeals" and "to provide equal protection under the law, and provide litigants due process in fair and impartial courts;" 2) an order "causing dissolution or reorganization of the State's corrupt racketeering enterprises;" and 3) an order, if appropriate, for criminal investigation and grand jury review. *Id*. at p. 101.

The underlying factual allegations set out in the 103-page Second Amended Complaint center around the Divorce Proceedings and the plaintiff's belief that Perky, Taylor, and Lankford engaged in unlawful conduct during the Divorce Proceedings and conspired together, along with Judge Thompson, to engage in "racketeering activities" in order to deprive him of his property and his constitutional rights, to commit federal crimes, and to benefit themselves. *Id*. at ¶¶ 57-162. The plaintiff further expands upon his allegations against the State of Tennessee to allege that, not only is the State of Tennessee failing to ensure that the TBPR and Judicial Board are functioning to protect the rights of Tennessee's citizens, but the State of Tennessee's judicial system is itself corrupt and in need of reform in order to ensure that the constitutional and statutory rights of Tennessee's citizens are protected. *Id*. at pp. 3-4 and ¶¶ 169-177 and 295. Additionally, the plaintiff contends that the Tennessee Court of Appeals, through its judges and clerks, has acted to deny him his property, due process, and equal protection under the law and has intentionally taken steps to deny him a fair appeal of the Divorce Proceedings by: wrongfully dismissing his petition for recusal appeal; attempting to have his Rule 3 appeal dismissed; concealing court records; ignoring and

4

encouraging attorney misconduct; issuing an order with a misleading title; and attempting to entrap him for contempt of court. *Id*. at ¶¶ 178-296.

## II. Standard of Review

A. Rule 12(b)(1)

The State of Tennessee seeks dismissal, in part, for lack of subject-matter jurisdiction under Rule 12(b)(1) by raising a facial attack to the plaintiff's lawsuit. A facial attack "questions merely the sufficiency of the pleadings." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In reviewing such a challenge, the court will accept the allegations in the complaint as true. *Id*.

B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must contain sufficient facts for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, Rule 12(b)(6) requires more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While *Twombly* does not require "detailed factual allegations," it does require "more than labels and conclusions." *Id*. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Iqbal*, 556 U.S. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

In its review of a Rule 12(b)(6) motion, the court must accept as true all of the well-pleaded allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the *pro se* plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir.

5

2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). Although the court is required to liberally construe the *pro se* pleadings, this does not require the court to apply a more lenient application of the substantive law. *See Bennett v. Batchik*, 1991 WL 110385 at *6 (6th Cir. 1991) (citing *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983)); *Lyons v. Thompson*, 2006 WL 463111 at *4 (E.D. Tenn. Feb. 24, 2006).

The court has appropriately considered filings from the relevant state and federal legal and administrative proceedings in review of the motions to dismiss. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (in ruling on a Rule 12(b)(6) motion, the court may "consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies"); *Vaughn v. Metro. Gov't of Nashville & Davidson Cty.*, 2014 WL 234200, at *3 (M.D. Tenn. Jan. 22, 2014); *Lee v. Dell Products, L.P.*, 236 F.R.D. 358, 361 (M.D. Tenn. 2006).

### III. Analysis

A. Jurisdiction/Abstention

The *Rooker–Feldman*[3] doctrine bars federal district courts from hearing "cases brought by state-court losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Fieger v. Ferry*, 471 F.3d 637, 642 (6th Cir.2006) (citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). As an initial matter, the court notes that, although the application of the *Rooker-Feldman* doctrine to the type of convoluted lawsuit brought by the plaintiff is a thorny matter, *see Alexander v. Rosen,* 804 F.3d 1203, 1206-07 (6th Cir. 2015), and although the plaintiff has taken great steps to craft his lawsuit in a manner so as to bypass

---

[3] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

6

application of the *Rooker-Feldman* doctrine, the alleged injuries complained about by the plaintiff are, at their essence, ones that resulted from the state court judgments made by Judge Thompson, judgments which the plaintiff contends are tainted by "corrupt racketeering activities." Specifically, the assessment of attorney's fees against him, the finding that he is not entitled to certain marital assets, and the rulings made by Judge Thompson on procedural and evidentiary matters in the course of the Divorce Proceedings. Indeed, the plaintiff's damage summary reflects this focus. *See* Second Amended Complaint at ¶ 297.

The Sixth Circuit has explained that the *Rooker-Feldman* doctrine applies not only when a party attempts to expressly appeal a state court decision to a lower federal court, but also whenever the issues raised in the federal action implicate the validity of the state court proceedings. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2007). In the court's view, that is exactly the scenario raised by the plaintiff in the instant lawsuit. The plaintiff contends that the judgments made by Judge Thompson were not based upon the law, but were instead based upon "corrupt racketeering activities" that were violations of federal law and of the plaintiff's constitutional rights. Any decision by the court in the plaintiff's favor on his claims would necessarily invalidate the underlying judgements made by Judge Thompson in the Divorce Proceedings. Such a situation is barred by *Rooker-Feldman*. *Mcmormick*, 451 F.3d at 394 (*Rooker-Feldman* applies "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action.").

Further, it is apparent that what the plaintiff also seeks is for the court to intrude upon the state court appeal in the Divorce Proceeding that is currently before the Tennessee Court of Appeals and to halt the appeal.[4] However, the state has an important interest in the area of family law and in the enforcement of the divorce court orders. S*ee e.g. Shafizadeh v. Bowles*, 476 Fed.App'x 71,

---

[4] *See* the plaintiff's Emergency Motion for a Temporary Restraining Order (Docket Entry No. 86); Emergency Motion to Stay State Court Proceedings (Docket Entry No. 122); and Emergency Motion to Alter Judgment (Docket Entry No. 128).

7

73 (6th Cir. 2012) (requested federal injunctive relief would grossly and impermissibly interfere with divorce proceedings in state court). The plaintiff's arguments for why the court should intrude in the state court appeal are unpersuasive, and his allegation that a conspiracy now exists at the state appellate level to commit crimes against him and to deprive him of his constitutional rights is entirely conclusory and unsupported by factual allegations. While the plaintiff is correct that an exception to the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits a federal court from issuing an injunction to stay proceedings in a state court, exists when a plaintiff pursues claims under 42 U.S.C. § 1983 for constitutional violations, *Mitchum v. Foster*, 407 U.S. 225, 242-43, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), as set out below, the plaintiff has not set forth any plausible and viable claims against the defendants. In the absence of plausible legal claims, the plaintiff has no basis upon which to seek intrusive and extraordinary injunctive relief directed at the state court appeal.

B. The Motion to Dismiss of the State of Tennessee

The State of Tennessee raises several grounds for dismissal. However, the court need not address each of the defenses because the State of Tennessee's assertion of sovereign immunity from suit under the Eleventh Amendment is a threshold defense and an entirely sufficient basis for its dismissal from this action.

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of a Foreign State.

U.S. Const. Amend. XI. As the Sixth Circuit succinctly stated in *Thiokol Corp. v. Dep't. of Treasury, State of Mich, Revenue Div.*, 987 F.2d 376 (6th Cir. 1993):

> This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), by citizens of another state, foreigners or its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

987 F.2d at 381. *E.g. Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); *Pennhurst State Schs. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). For the purposes of the instant lawsuit, the immunity provided to a state by the Eleventh Amendment is abrogated in only two circumstances: 1) where the state has itself waived its immunity from federal suit; and 2) where Congress has acted to abrogate the state's immunity. *See Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).[5] Although the plaintiff set out 17 pages of arguments as to why the Eleventh Amendment's grant of sovereign immunity should not apply, *see* Memorandum of Law (Docket Entry No. 106), his arguments lack merit and fail to negate the valid defense raised by the defendant.

The plaintiff argues that the State of Tennessee has consented to being sued in federal court and has, thus, waived its sovereign immunity. *See* Memorandum of Law at 2-11. This argument is legally baseless. The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one, and, in order for a state statute or constitutional provision to waive Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985). A State will be deemed to have waived its immunity "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Id*. at 239-249 (quoting *Edelman v. Jordan*, supra, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The plaintiff has not pointed to any such waiver by the State of Tennessee. The two Tennessee Constitutional provisions that he refers to in his memorandum, Article I, § 1 and Article I, § 17 simply do not set forth a wavier of sovereign

---

[5]In some circumstances, the Eleventh Amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, because a state official is not named as a defendant in this action, this exception is not relevant.

9

immunity. Indeed, the Supreme Court in *Atascadero State Hospital* found that language in the California Constitution[6] that is largely identical to the language of Article 1, § 17 did not set out an express waiver of sovereign immunity but merely authorized the state legislature to waive the state's sovereign immunity if it chose to do so. 472 U.S. at 241. *See also Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000). Further, the Sixth Circuit found many years ago that the Tennessee legislature, by virtue of Tenn. Code. Ann. § 20-13-102(a), has retained the sovereign immunity of the State of Tennessee for lawsuits brought against it in federal court. *Berndt v. State*, 796 F.2d 879, 881 (6th Cir. 1986). Finally, the plaintiff contends that provisions of the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. §§ 29-20-101 *et seq.*, specifically Tenn. Code Ann. §§ 29-20-201 and 29-20-205, are both, 1) an express a waiver of Eleventh Amendment immunity, and, 2) unconstitutional. This contention is meritless. The TGTLA certainly does not expressly or implicitly waive Eleventh Amendment sovereign immunity. Additionally, the TGTLA applies to cities and counties within the State of Tennessee, but not the State of Tennessee itself. *Chapman v. Sullivan County*, 508 S.W.2d 580, 582 (Tenn. 1980); *Tennessee Dep't of Mental Health and Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975). Plaintiff's arguments about the constitutionality of the TGTLA are simply irrelevant to the case at hand.

The plaintiff also asserts that Eleventh Amendment immunity is somehow abrogated in his case because: 1) he is asserting violations of due process and equal protection, and Section 5 of the Fourteenth Amendment can be enforced to protect this right despite the Eleventh Amendment; 2) the State of Tennessee receives "funding from the federal government;" 3) his claims implicate the Interstate Commerce Clause, and, thus, are not subject to Eleventh Amendment immunity; and 4) the State of Tennessee should no longer be entitled to the protection of Eleventh Amendment immunity because it is corrupt and not protecting the rights of its citizens. *See* Memorandum of Law at 11-17. These arguments are based upon a faulty and incorrect reading of the law. Abrogation of a state's

---

[6] The language of Article III, § 5 of the California Constitution at issue in *Atascadero State Hospital* stated "Suits may be brought against the State in such manner and in such courts as shall be directed by law."

10

Case 3:17-cv-00020   Document 129   Filed 09/26/17   Page 10 of 18 PageID #: 2941

Eleventh Amendment immunity does not arise from the type or nature of the claims brought by the party attempting to sue a state in federal court. Abrogation can only arise from an unequivocal expression from Congress of its intent to abrogate Eleventh Amendment immunity – an intent that must be obvious from a clear legislative statement. *Seminole Tribe of Florida*, 517 U.S. 44 at 55. The plaintiff has not shown that a Congressional abrogation of Eleventh Immunity exists for any of the claims he brings against the State of Tennessee. In the absence of a clear abrogation of immunity by Congress for these claims, his argument that Section 5 of the Fourteenth Amendment and the Interstate Commerce Clause can provide the constitutional underpinning for a Congressional abrogation of Eleventh Amendment immunity is one that simply misses the mark.

C. The Motion to Dismiss of Sarah Richter Perky

Defendant Perky contends that a claim against her for legal malpractice under Tennessee law is barred by the applicable statute of limitations and is further lacking on its merits because the plaintiff's allegations fail to show legal malpractice that caused him actionable harm. *See* Memorandum in Support of Motion to Dismiss (Docket Entry No. 50) at 5-6. However, the plaintiff specifically disavows that he is bringing such a claim. *See* Response in Opposition (Docket Entry No. 54) at 4. Accordingly, a claim for legal malpractice under state law is not a part of this action.

With respect to the plaintiff's assertion of federal claims, Perky contends that: 1) she is not a state actor for the purposes of a claim under 42 U.S.C. § 1983 and that a Section 1983 claim is also barred by the applicable statute of limitations; 2) the plaintiff's allegations fail to state a cause of action under 42 U.S.C. § 1985; 3) private causes of action do not exist under 18 U.S.C. §§ 2, 1341, 1346, 1512, 1951 and 1952; and 4) the plaintiff's allegations against her based upon her limited representation of the plaintiff in the Divorce Proceedings are insufficient to state a RICO claim against her. *Id*. at 6-7.

The plaintiff does not state a viable claim against Perky under Section 1983. A necessary showing for a claim under Section 1983 is that the defendant acted under color of state law. *Handy*

11

*Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539, 96 (6th Cir. 2012). However, it is well-settled that a attorney representing a client is not a state actor who has acted under the color of state law within the meaning of Section 1983 merely by representing a client in a court proceeding. *Dallas v. Holmes*, 137 Fed.App'x 746, 752 (6th Cir. 2005); *Otworth v. Vanderploeg*, 61 Fed.App'x 163, 165 (6th Cir. 2003). The plaintiff's argument that Perky should be deemed to be a state actor because she is cloaked with the authority of the state by virtue of being licensed to practice law in Tennessee and by having a "relationship" with the state judicial system, *see* Response in Opposition (Docket Entry No. 54) at 11-14, lacks merit under the well-established principle set out in *Dallas*. *See Polk County v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 70 L.Ed.2d 509 (1981). The plaintiff's contention that Perky acted under color of state law because she was part of a conspiracy and because she engaged in "corrupt racketeering activities" in the Divorce Proceeding, *id*. at 14-16, is conclusory and is unsupported by any factual allegations.

The plaintiff also does not state a viable claim against Perky under Section 1985(3). To establish a claim under Section 1985(3), the plaintiff must show that Perky was involved in misconduct that was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir.2000) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)); *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992). The Second Amended Complaint contains no factual allegations that Perky acted because of any racial or class-based animus. *See Keppler v. Haslam*, 2013 WL 1668254 at *4 (M.D. Tenn. Apr. 17, 2013).

Additionally, the plaintiff's claims against Perky under Sections 1983 and 1985(3) are barred by the statute of limitations. It is well-settled that the one-year statute of limitations set out at Tenn. Code Ann. § 28-3-104(a)(3) is the applicable statute of limitations for civil rights claims arising in Tennessee that are brought under Section 1983, *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578 (6th Cir. 1992); *Berndt*, 796 F.2d at 883, as well as under Section 1985(3). *See Carver v. U-Haul Co.*, 830 F.2d 193 (6th Cir.

1987); *Brown v. Metro. Gov't of Nashville*, 2011 WL 465855 at *7 (M.D. Tenn. Feb. 3, 2011) (Haynes, J.). The Section 1983 and Section 1985 claims against Perky must have been brought within one year of when the claims accrued. *See Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); *Merriweather*, *supra*. Perky's representation of the plaintiff ended in June 2015, and thus he had until June 2016 to pursue a claim against Perky under Sections 1983 and 1985. However, this lawsuit was not filed until January 9, 2017, and Perky was not named a defendant until March 16, 2017, well beyond the one-year statute of limitations. The plaintiff's argument that Tenn. Code. Ann. § 28-3-104 is unconstitutional, *see* Docket Entry No. 54 at 5-10 has no legal merit, and he otherwise fails to show why his Section 1983 and 1985 claims are not barred by the one-year statute of limitations.

To the extent that the plaintiff seeks to state independent claims for relief against Perky under 18 U.S.C. §§ 2(a) & (b), 1341, 1346, 1512, 1951 and 1952, s*ee* Second Amended Complaint at 21 and ¶¶ 17-18 and 20-23, he fails to state viable claims for relief. Although criminal statutes may be relied upon to establish predicate acts for a RICO claim, unless there is a clear congressional intent to provide a civil remedy, a plaintiff cannot generally recover civil damages for an alleged violation of a criminal statute. *See Ryan v. Ohio Edison Co.*, 611 F.2d 1170 (6th Cir. 1979); *Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137-38 (4th Cir. 1987). The plaintiff has not shown that these criminal statutes provide for private causes of action,[7] and such a conclusion would be against the prevailing law. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) (18 U.S.C. § 2); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (18 U.S.C. § 1341); *Ward v. Thompson*, 2015 WL 3948190 at *15 (W.D. Mich. June 29, 2015) (18 U.S.C. § 1346); *In re Morris*, 2010 WL 4272868 at *4 (Bankr. M.D. Tenn. Oct. 22, 2010) (18 U.S.C. § 1346); *Parton v. Smoky Mountain Knife Works, Inc.*, 2011 WL 4036959 at *12 (E.D. Tenn. Sept. 12, 2011) (18 U.S.C. § 1512); *Drake*

---

[7] In his Response in Opposition, the plaintiff appears to acknowledge this shortcoming for at least some of these statutes. *See* Docket Entry No. 54 at 26.

13

*v. Enyart*, 2006 WL 3524109 at *5 (W.D. Ky. Dec. 4, 2006)*(*18 U.S.C. § 1512*)*; Command v. Bank of Am., N.A.*, 2014 WL 4104719 at *13 (W.D. Mich. Aug. 19, 2014) (collecting cases) (18 U.S.C. § 1951); *Barrett v. City of Allentown*, 152 F.R.D. 50, 55-56 (E.D. Pa. 1993) (18 U.S.C. § 1952).

The plaintiff's remaining claims against Perky are based on allegations that she is liable for damages under the RICO provisions of 18 U.S.C. §§ 1962(a)-(c). The plaintiff alleges that: 1) Perky made weak and "false" legal arguments and statements and intentionally withheld strong legal arguments during a March 10, 2015, hearing in the Divorce Proceedings concerning his interest in marital property; and 2) Perky failed to properly issue a subpoena for evidence pertinent to the Divorce Proceeding, leading to a motion to quash the subpoena being filed. S*ee* Second Amended Complaint at ¶¶ 40-85. Based upon these acts, the plaintiff contends that Perky intentionally acted to his detriment and colluded with opposing counsel as part of a scheme to defraud him out of his property and his right to due process and that the "scheme therefore, must by default, include some form of pecuniary return involving kickbacks, be they in the form of actual financial gain or in the form of 'you win this case, I get to win the next case.'" *Id*. at ¶¶ 62 and 83.

To state a RICO claim under 18 U.S.C. § 1962(c), the plaintiff must set out sufficient factual allegations to show the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012). In order to establish the existence of an "enterprise," the plaintiff is required to show: (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *Id*. at 793. The "pattern of racketeering activity" element requires allegations showing at least two predicate acts of racketeering activity that are related and that amount to or pose a threat of continued criminal activity. *Id.* at 795. Furthermore, a Section 1962(a) claim requires a showing of an injury that is distinct from any injury caused by the predicate acts of racketeering and that is directly related to the investment or use of tainted money in the RICO enterprise, *see*

14

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990); *Eby v. Producers Co-op, Inc.*, 959 Fed.Supp. 428, 432 (W.D. Mich. 1997), and a Section 1962(b) claim requires a showing that the plaintiff was injured by reason of the defendant's acquisition or maintenance of an interest in or control of the enterprise. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999).

Even when given a liberal construction, the court finds no support for a plausible RICO claim against Perky based on the plaintiff's allegations. There is no factual support provided for the allegations that Perky was involved in intentional fraud, collusion with opposing counsel, a scheme to defraud the plaintiff, and the receipt of unlawful pecuniary returns. These allegations are speculative and conclusory. Further, to find that the actions of Perky at issue constitute unlawful predicate acts supporting a RICO claim requires a strained and tortuous interpretation of the facts, which is inconsistent with the principles of *Iqbal* and *Twombly*. The plaintiff may not have been happy with Perky's representation of him for the four short months that she was involved in the Divorce Proceedings, but his contention that her actions amounted to criminal behavior and a pattern of racketeering activity supporting a RICO action is baseless and self-serving. Similarly, there are no facts alleged that even plausibly show that Perky was engaged in the conduct of a RICO enterprise. Finally, although the plaintiff appears to acknowledge the unique nature of the showings required for claims under Sections 1962(a) and 1962(b), *see* Second Amended Complaint at ¶¶ 40-56, he fails to set forth any factual allegations that plausibly satisfy these requirements.

D. The Motion to Dismiss of Pamela Taylor and Brenton Lankford

Taylor and Lankford move the Court to dismiss the Second Amended Complaint on the grounds of *res judicata,* application of the *Rooker-Feldman* doctrine, and litigation privilege. The plaintiff responds in opposition to each of these arguments. *See* Response in Opposition (Docket Entry No. 46).

15

The court finds that the assertion of *res judicata* by Defendants Taylor and Lankford is a sufficient basis to grant their motion to dismiss and dismiss the claims brought against them in this action. The doctrine of *res judicata* provides that a final judgment on the merits of an action precludes the "parties or their privies from relitigating issues that were or could have been raised" in the prior action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigations, and conserves judicial resources. *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). *See also Moulton v. Ford Motor Co.*, 533 S.W.3d 295, 296 (Tenn. 1976) ("[R]es judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation.").

When, as in this lawsuit, a party raises *res judicata* based upon a prior state court action, a federal court must give the same preclusive effect to the state court judgment as the judgment would receive in courts of the rendering state. *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Davis v. JPMorgan Chase Bank*, 2015 WL 4422687 at * 3 (M.D. Tenn. July 16, 2015). In Tennessee, a party asserting res judicata must show that: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was final and on the merits; (3) the same parties or their privies were involved in both proceedings; and, (4) both proceedings involved the same cause of action. *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998).

In the instant lawsuit, there is no real dispute that the Davidson County Circuit Court is a court of competent jurisdiction, that the judgment entered in the Davidson County Case was final and on the merits, and that the plaintiff and Taylor and Lankford were involved in both the Davidson County Case and the instant lawsuit. Although Plaintiff argues that his allegations of a conspiracy invalidate any conclusion that the Davidson County Circuit Court is a court of competent jurisdiction, *see* Docket Entry No. 46 at 5, this argument lacks merit. The state court's jurisdictional

16

competency to render decisions on the matters before it is simply not negated by the plaintiff's allegations. Likewise, the plaintiff has not shown how the dismissal of his action in the Davidson County Case was not rendered on the merits. The order by the Davidson County Circuit Court was a dismissal with prejudice on the merits of the plaintiff's claims and resolved the case. Such a decision is clearly on the merits. *See Creech v. Addington*, 281 S.W.3d 363, 378 (Tenn. 2009); *In re Estate of Ridley*, 270 S.W.3d 37, 40 (Tenn. 2008).

With respect to the final element, requiring that both proceedings involve the same cause of action, the plaintiff argues that this element cannot be satisfied because the causes of action brought against Taylor and Lankford in the Davidson County Case were for fraud, constructive fraud, abuse of process, and intentional infliction of emotional distress,[8] which he contends are completely separate causes of action from the ones he brings in the instant lawsuit. *See* Docket Entry No. 46 at 5. He further asserts that "it does not matter that the same set of facts pertain to multiple causes of action and in different jurisdictions of state and federal courts. *Id*. at 6.

Plaintiff's argument lacks merit. The Tennessee Supreme Court has stated that, *res judicta* bars "a second suit between the same parties or their privies on the same cause of action with respect to all of the issues *which were or could have been litigated in the former suit.*" *Creech*, 281 S.W.3d at 376 (emphasis added). Two suits will be deemed the same cause of action for purposes of *res judicata* where they arise out of the same transaction or a series of connected transactions. *Id*. at 381; *Roberts v. Vaughn*, 2009 WL 1608981,*5 (Tenn.Ct.App. June 10, 2009). Although the plaintiff's causes of action against Taylor and Lankford in the instant lawsuit are undisputedly based upon different legal theories and upon principles of federal, not state, law, these causes of action nonetheless arise out of the same series of operative facts and events that were at issue in the Davidson County Case; namely, the Divorce Proceedings that occurred in Sumner County and the

---

[8] The plaintiff also alleged a count for civil conspiracy in the Davidson County Case. *See* Docket Entry No. 45-2 at 30.

alleged wrongful conduct of Taylor and Lankford in the Divorce Proceeding. *Res judicata* is intended to prevent exactly the situation at hand.

The plaintiff also contends that he could not bring suit in the state court for violations of 18 U.S.C. §§ 1341, 1346, 1512, 1951, 1952, 1961 and 1962, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the Fourteenth Amendment because those are matters of federal jurisdiction, not state court jurisdiction. *Id.* This argument is legally baseless. Initially, as the court has already noted herein, there are no viable causes of action under the several criminal statutes referred to by Plaintiff. Further, the Plaintiff has not shown any legal support for his assertion that he could not proceed in state court on claims brought under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and RICO, statutes for which concurrent jurisdiction exists. *See Tafflin v. Levitt*, 493 U.S. 455, 467, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990); *Maine v. Thiboutot*, 448 U.S. 1, 3, n. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

The court need not address the defendants' assertion of a litigation privilege defense because *res judicata* is a sufficient basis upon which to dismiss the claims against Taylor and Lankford.

## CONCLUSION

Based of the foregoing, the court shall grant the defendants' motions to dismiss and dismiss this action in its entirety as to all claims. An appropriate order will enter.

It is so ORDERED.

ENTER this 26th day of September 2017.

                                              _____
                                              ALETA A. TRAUGER
                                              United States District Judge